IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **KEN and NAOMI SCHWIEKER,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No.: 3:06-CV-838-MEF |
| ) | |
| **OLDCASTLE MATERIALS SOUTHEAST,** ) | |
| **INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFFS' MOTION REGARDING ADDING PARTIES

Plaintiff moves this Honorable Court to hold a hearing on the issue whether additional parties must be added in this matter. As grounds for this Motion, Plaintiffs say:

1. This lawsuit is related to litigation pending in the Circuit Court of Lee County, Alabama, since February of 2002 (*Davis, et al. vs. Hanson & Oldcastle*, CV-02-85). Accordingly, to understand this Motion, Plaintiffs necessarily must describe the other litigation in some detail. Plaintiffs apologize for the length of this Motion, but believe a proper decision requires a complete understanding of the Lee County litigation and positions taken by the parties in the Lee County litigation.

2. Plaintiffs own property on Spring Villa Road south of Opelika, Alabama. Plaintiffs own a farm consisting of around 60 acres of land on the north side of Spring Villa Road (aka Lee Road 148), just northwest of the historic Spring Villa Spring and Spring Villa Park. For the Court's information, a copy of a portion of the Lee County Highway map showing the quarry and Roads around it, is attached as Exhibit 1. The relevant roads are highlighted.

3. Plaintiffs sued the Defendant, Oldcastle Materials Southeast, Inc., because Defendant Oldcastle is the company that operates a limestone quarry a little over a mile

away in Lee County, Alabama. The quarry is located in the "triangle" formed by State Highway 169 on the north-northeast-east, Lee Road 166 on the west, and Lee Road 147 on the south.

4. The quarry is a limestone quarry. Limestone is water-soluble over time. Water moves easily and relatively rapidly through fractures, voids, caves, and conduits formed in the limestone. In the process of mining its limestone, the Defendant dewaters the pit by pumping out millions of gallons of water each day that flows into the pit. The pit is now some 180 feet or more in depth below the original ground surface, and in the process of dewatering the pit, Defendant "pirates" (a term of art) water from other persons' lands. Some of the water pirated and pumped out of the pit comes from the Spring Villa area, including from the Schwiekers' lands. By pirating the water, Defendant Oldcastle has caused the groundwater table to drop 60' or more in the Spring Villa area where the Schwiekers' farm is located. When the water is removed from voids and caves in the limestone, the roof of the cave eventually collapses due to the loss of buoyant support of the groundwater filling the void. As a result, sinkholes form on the surface. Sinkholes have, therefore, as a direct result of Oldcastle's pumping and lowering of the water table, formed all over the Schwiekers' land. Additionally, Spring Villa Road was caused to collapse and was closed, the Spring Villa Spring dried up, the Spring Villa Park was damaged, and multiple other persons' lands have been riddled with sinkholes. The Schwiekers have been damaged the most in the area, and their land literally looks like a bombed-out area in many places.

5. The Schwiekers joined in the *Davis vs. Hanson* litigation against the quarry by suing the prior quarry operator, Hanson Aggregates Southeast, Inc., and the current quarry operator, Oldcastle Material Southeast, Inc. The Schwiekers' claims were tried to a jury

in Lee County in August, 2004. In early September, 2004, the jury returned a verdict in favor of the Schwiekers and awarded them $150,000.00 ($75,000.00 against each Defendant) for damages to their lands. At that time, the Schwiekers had 12 sinkholes of 15' or less in diameter.

6. During the post-trial proceedings after the 2004 trial, the Schwiekers settled with Hanson. Oldcastle did not, however, settle or appeal the verdict. Instead, Defendant Oldcastle paid the verdict, with interest. Therefore, there has been a binding adjudication after trial on the merits that Oldcastle is responsible for the sinkhole formation on the Schwiekers' lands.

7. Two years later and within the statute of limitation time frame (and as allowed by Alabama's nuisance and negligence laws), the Schwiekers filed the current lawsuit against Oldcastle for damages that occurred after the 2004 trial. Oldcastle removed the case to this Court on the basis of diversity of citizenship. Before the 2004 trial, the Schwiekers had 12 sinkholes on their land. They now have in excess of 70 or 80 sinkholes, although counting them is difficult because as they form, they sometimes merge, forming even larger sinkholes. Some of these sinkholes or areas of merged sinkholes are over 100 feet long and some are 20' or more deep. In 2004, the biggest sinkholes were 10 to 15 feet in diameter and 5-10' deep.

8. The Schwiekers now, in this litigation, seek a jury trial on damages for the new sinkholes that have formed on their land, and are asking this Court to enter an injunction prohibiting Defendant Oldcastle from continuing to dewater the quarry pit and thus pirating the water from their lands. When the quarry stops dewatering the pit, the expert evidence is that eventually the groundwater table will return to normal (within a few feet of ground surface), and the buoyant support in the many voids below ground will

return, so that the sinkholes will stop forming and damaging the Schwiekers' property and the properties of dozens of other persons in the area around the quarry. As mentioned above, the groundwater table now in this area is, according to data recovered from monitoring wells in the area, 60 to 70 feet below the surface so that Defendant Oldcastle has in fact lowered the groundwater table in this community some 60 feet or more.

9. We now turn to the relief sought in this Motion: the quarry is operated on land leased from two families, the Gilmers and the Youngs. These families participated in the *Davis vs. Hanson* 2004 trial but were dismissed during the post-trial process. The Plaintiffs in this litigation in this Court did not sue the Gilmers or the Youngs believing that they are not necessary or indispensable parties. However, in the litigation pending in Lee County, *Davis v. Hanson*, CV-02-85A, Defendant Oldcastle took the position that the landowners were necessary and indispensable parties. Plaintiffs believe that the landowners are not necessary or indispensable until and unless this Court, at a non-jury, injunction phase of this litigation, determines whether or not to shut down the quarry. Defendant Oldcastle represented to the Court in Lee County to the contrary, and asserted that they are necessary parties at all times, even in the liability and damages phases. In the Lee County litigation, Oldcastle took the position that if the Youngs and Gilmers were not added, then the case had to be dismissed.

10. In the litigation pending before this Court, the Schwiekers will prove that since the August, 2004 trial, the situation in the Spring Villa area and other areas around the quarry have become so bad that the quarry is in fact a severe nuisance that should be shut down. In this respect, the Court should consider that somewhere in excess of 200 sinkholes and hundreds of piping holes have formed on lands south, west, north, northeast, and east of the quarry on lands belonging to at least 17 different landowners;

that the Little Uchee Creek on the Schwiekers' property and on the City of Opelika's property has had so many sinkholes to form that the entire creek goes into the ground and pollutes the groundwater system in the area; that a 115,000 volt power line owned by the Alabama Electric Cooperative is in danger of collapsing and power transmission support structures have already been relocated because of giant sinkholes near those structures; that the Dixie LP Gas Pipeline, a major east-west high-pressure LP gas pipeline, is in danger of collapse, rupture, and explosion because of sinkhole formation (including one 25' wide, 15' deep sinkhole that formed on October 4, 2005, directly under the pipeline); and that roads in the area, including Spring Villa Road and Lee Road 704, have collapsed, and further collapses are almost certain to occur unless the groundwater table returns to normal.

11.     It is the Plaintiffs' position that the quarry is the cause of all these problems, that they and the public are in danger due to the near certainty of continued sinkhole collapses, and that because of all of the problems caused by the quarry, it should be shut down.

12.     For the Court's information, copies of the following documents used in or filed in the Circuit Court of Lee County in the lawsuit by Lee County, Alabama, against Old castle, will be filed with the Court in support of this Motion  (Counsel could not file these documents electronically because they were not in .pdf format; counsel will either convert them all and file the electronically on April 11, or will hard copies of these Exhibits with the Clerk's office on April 11, 2007):[1]

---

[1] We need to explain a little about the Lee County Litigation.  In the Lee County litigation, one lawsuit was filed initially in 2002 by numerous homeowners around the quarry.  The City of Opelika, the Utilities Board for the City of Opelika, and the Beauregard Water Authority subsequently joined in that suit.  Subsequently still, in the summer of 2004, Lee

(1) Exhibit 3, Defendant Oldcastle's Motion to Dismiss Claims for Injunctive Relief, filed on October 24, 2006. This Motion claims in essence that the case could not proceed without the Youngs and Gilmers being added as parties Defendant, on a theory that they are necessary and indispensable under Rule 19 of the Alabama Rules of Civil Procedure (which is very similar, if not identical in relevant part, to Federal Rule of Civil Procedure 19).

(2) Exhibit 4, Lee County's Response to Oldcastle's Motion to Dismiss Claims for Injunctive Relief, filed on October 31, 2006. This Response sets forth Lee County's position that the Young and Gilmer families are not necessary or indispensable at least until a trial was held determining whether the quarry is a nuisance.

(3) Exhibit 5, Defendant Oldcastle's Reply to Lee County's Response to Oldcastle's Motion to Dismiss Claims for Injunctive Relief, filed November 9, 2006.

---

County, Alabama, joined the lawsuit against Oldcastle and Hanson. The 2004 trial did not include Lee County's claims. After the appeal of the 2004 trial, Hanson settled Lee County's claims against it by the payment of money to Lee County, Alabama. Oldcastle did not settle with Lee County. The Circuit Court of Lee County, Judge Walker, bifurcated the claims in that litigation into at least three different trials, not counting the trial that occurred in 2004, and which was appealed. Part of the 2004 verdict was reversed for a new trial based, in part, on inconsistency of the jury's verdict. The first of the three trials of the remaining claims in the Lee County litigation was the claims of Lee County, Alabama, solely, against Oldcastle, solely. That case was to be tried on January 29, 2007, for three weeks. During the first week of trial, Oldcastle and Lee County, Alabama, settled their claims, and the trial was cancelled. Lee County, Alabama, has since been dismissed from the Lee County litigation. However, during that litigation, Oldcastle clearly took the position that the Youngs and Gilmers were necessary and indispensable parties, as outlined in the attachments described in paragraph 12 of this Motion. Exhibit 2 to this motion will be a copy of the Settlement Agreement between Lee County, Alabama, and Oldcastle Materials Southeast, Inc. The Schwiekers, Plaintiffs in this case, are not happy with the settlement agreement and believe that it does not in any way protect their rights, and does not assure the safety of others citizens of Lee County. While Lee County settled its claims on the basis that it felt proper, that settlement will in effect guarantee that the Schwiekers' lands will continue to be damaged by Oldcastle's pumping–unless this Court enjoins further pumping.

This document pled essentially the same thing and cited various cases that Defendant Oldcastle suggests supports its position.

(4)     Exhibit 6, Plaintiffs' Supplemental Response to Defendant Oldcastle's Motion to Dismiss Claims for Injunctive Relief, filed December 5, 2006.  As before, this Response indicates that the Youngs and Gilmers are not required to be added to the January, 2007 trial.

(5)     Exhibit 7, Order of the Lee County Circuit Court dated December 22, 2006, stating:

> "A pre-trial conference was held on today's date.  Attorneys for the parties appeared regarding the motion to dismiss on the issue of injunctive relief filed by Oldcastle.  Oldcastle argues that since the property owners are not parties, the Court cannot proceed with injunctive relief.  The Court is of the opinion that this issue is not ripe.  It is the Court's plan to try this matter before a jury.  The jury will then determine whether or not there is a nuisance.  If a jury determines that there is a nuisance, then the Court, at another hearing will address the issue of injunctive relief.  Until such time as there is a finding that the operation of Oldcastle is a nuisance the issues raised by Oldcastle in their motion to dismiss are not yet before the Court.  Furthermore, the parties are reminded that at the last trial the jury found that the quarry was not a nuisance therefore; the issue of injunctive relief was never reached.  Furthermore, since Oldcastle is asserting this motion essentially on behalf of the owners of the real estate, the Gilmer and Young families, the Court is of the opinion that Oldcastle, possibly, does not have standing to raise this issue.  Oldcastle cannot demonstrate how it will be damaged if the Gilmer and Young families are not joined."

12.     Under these circumstances, the Schwiekers ask this Honorable Court to hold a hearing, to require Defendant Oldcastle to state its position whether the Youngs and Gilmers are required to be parties in this litigation, and to enter such orders as are necessary or proper to bring before this Court all necessary and indispensable parties, as

soon as possible, if adding parties is necessary, so that the trial of this case will not be delayed beyond its current trial setting in December, 2007. In that respect, the Schwiekers note that the trial of this case may take as much as three weeks depending upon the rulings of this Court whether the prior jury verdict is *res judicata* on the issue whether Oldcastle causes and is responsible for the damages to the Schwiekers' land. That issue will be addressed on summary judgment in short order.

13. For the Court's information, as a result of the ongoing litigation between Lee County, Alabama, and Oldcastle, and the continuing litigation between the City of Opelika, the Utilities Board of the City of Opelika, and numerous other landowners against both Oldcastle and the prior quarry operator, Hanson, substantial amounts of discovery have been exchanged between the parties, and, with the exception of damages issues in this litigation, all discovery has been exchanged between the parties as it relates to the Schwiekers' claims against Oldcastle. Although there are some exceptions to this statement, Plaintiffs believe that much of the discovery in this case is complete and that most of the depositions taken and documents produced in the Lee County litigation are applicable to the Schwiekers' claims against Oldcastle.

14. Finally, for the Court's information, the attorney for the Young and Gilmer families, Mr. Bill Horsley of Opelika, has been copied with all pleadings in the Lee County litigation, even though his clients are not now parties to that litigation. Mr. Horsley has attended every hearing before the Lee County Circuit Court, even though his clients have not been formal parties to that litigation since the post-trial proceedings in early 2005. Moreover, the Schwiekers served a copy of the Complaint in this case on Mr. Horsley, and are now mailing and e-mailing a copy of this Motion to Mr. Horsley

**WHEREFORE,** for good cause shown, Plaintiffs Ken and Naomi Schwieker move this Honorable Court (1) to enter an order requiring Defendant Oldcastle Materials Southeast, Inc. to set forth, in writing, its position whether the Youngs and Gilmers, the landowners from whom the quarry property is leased, should be added to this case or must be added to this case as either necessary or indispensable parties; (2) to enter an order setting this matter for hearing and requiring briefing of the parties in advance thereof; and (3) to enter such other orders as are necessary or appropriate, to and including, if determined by the Court to be necessary, adding the Young and Gilmer families as parties Defendant, whether voluntarily or involuntarily.

s/ C. E. Vercelli, Jr.
**CHARLES E. VERCELLI, JR.** (VER003)
One of the Attorneys for Plaintiffs

**OF COUNSEL:**

LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
TEL: (334) 821-7100
FAX: (334) 821-7101
jsprayberry-spraylaw@charter.net

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
TEL: (334) 834-8805
FAX: (334) 834-8807
cvercelli@vercelli-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of April, 2007, I electronically filed the foregoing with the Clerk of the United States District Court for the Middle District of Alabama, using the CM/ECF system, which will send notification of such filing to the following counsel of record.

Phillip E. Adams, Jr.
Rick Davidson

Matthew W. White
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

I also hereby certify that a copy of the foregoing will be served upon:

W. F. Horsley
SAMSON & DENSON, LLP
P. O. Box 2345
Opelika, AL 36803-2345

counsel for the landowners, by placing a copy of the same in the United States Mail, postage prepaid and properly addressed on the 11th day of April, 2007.

                                                      **/s/ C. E. Vercelli, Jr.**
                                                      Of Counsel

155-00\M-Hearing Re Parties.5.wpd