## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| KEN and NAOMI SCHWIEKER, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) |
| OLDCASTLE MATERIALS SOUTHEAST, | )    Case No.: **3:06-CV-838** |
| INC., | ) |
| | ) |
| **Defendant.** | ) |

RECEIVED

2007 APR 12 P 2: 5b

DACKETT, CLK
ST DIRICT COURT
MIDDLE DISTRICT ALA

### PLAINTIFFS' NOTICE OF FILING EXHIBITS
### IN SUPPORT OF MOTION REGARDING ADDING PARTIES

Plaintiffs submit the following Exhibits in support of their Motion Regarding Adding Parties. These exhibits were listed in the Motion electronically filed on April 10, 2007. At that time, Counsel indicated that the exhibits would be e-filed or hand-filed on April 11. Due to problems scanning the documents, hard copies are herewith filed with the Court and served upon counsel for Defendant.

Respectfully submitted this the 12th day of April, 2007.

_____
**CHARLES E. VERCELLI, JR.** (VER003)
One of the Attorneys for Plaintiffs

**OF COUNSEL:**
LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
TEL:   (334) 821-7100
FAX:   (334) 821-7101
jsprayberry-spraylaw@charter.net

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
TEL:   (334) 834-8805
FAX:   (334) 834-8807
cvercelli@vercelli-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2007, I placed a copy of the foregoing Notice in the United States Mail, postage prepaid and properly addressed, to the following attorneys:

Phillip E. Adams, Jr.
Rick Davidson
Matthew W. White
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

W. F. Horsley
SAMSON & DENSON, LLP
P. O. Box 2345
Opelika, AL 36803-2345


_____
Of Counsel

500-06\P Notice of filing Exhibits.1.wpd

2



Exhibit 1

EXHIBIT 1

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**LEE COUNTY, ALABAMA,**
**Plaintiff,**

**vs.**

                             **CASE NO. CV-02-85-A**

**OLDCASTLE MATERIALS**
**SOUTHEAST, INC., et al.,**
**Defendants.**

## SETTLEMENT AGREEMENT

**WHEREAS,** some or all of the following entities: CRH, plc; Oldcastle, Inc.; Oldcastle Products and Distribution; Oldcastle Materials, Inc.; Oldcastle Materials Southeast, Inc.; and SRM Aggregates, Inc. (hereinafter referred to jointly and severally as "Oldcastle") operate a quarry located on Alabama Highway 169 in Lee County, Alabama; and

**WHEREAS,** Lee Road 148, also known as Spring Villa Road, has suffered extensive sinkhole or sinkhole-related damage to the point that it was necessary for Neal Hall, Lee County Engineer, to close Lee Road 148 to the traveling public on May 16, 2005 because he deemed it unsafe for travel; and

**WHEREAS,** the County Commission of Lee County, Alabama (hereinafter referred to as "Lee County") and Oldcastle are involved in an ongoing controversy concerning the cause of undisputed damages to the public roads and rights-of-way in Lee County; and

Exhibit 2

**WHEREAS,** Lee County asserts and contends that Oldcastle is responsible and liable for said damages, and Oldcastle asserts and contends that it is not responsible or liable for said damages; and

**WHEREAS,** Lee County asserts and contends that Oldcastle's quarry and its operations constitute a public nuisance, and Oldcastle asserts and contends that neither the quarry nor its operations constitute a public nuisance; and

**WHEREAS,** various options have been discussed and considered by the parties for the repair of Lee Road 148, including repair of sub-surface conditions, the foundation or support for the road, and re-paving the surface of the road; and

**WHEREAS,** Lee County believes that a structural slab or bridge concept is the solution to repair Lee Road 148, and Oldcastle believes that Lee Road 148 can be repaired by the "inverse filter method", as more fully described in the report dated December 24, 2006 from Bob St. John of J2F, Inc., said report being Plaintiff's Exhibit 30.47 to Mr. St. John's deposition; and

**WHEREAS,** Lee County agrees to allow Oldcastle to try the "inverse filter method" for the initial repair of Lee Road 148, with the understanding and agreement that Oldcastle will be fully and solely responsible and liable, except as more particularly set out herein, for all costs, fees, and expenses in connection with the design, engineering, and construction of Lee Road 148 by that method; and

**WHEREAS,** in the event that the "inverse filter method" does not stabilize the road, as determined by Neal Hall, Lee County Engineer, or his successor, Oldcastle guarantees that it will make, at its own expense, except as more particularly set out herein, any and all further repairs necessary to the road, as determined by Neal Hall, Lee County Engineer, or his successor; and

2

**WHEREAS,** there is an issue as to which governmental entity, Lee County or the City of Opelika, Alabama, has the claim for undisputed damages to that portion of Lee Road 148 which is in the City of Opelika, but which has been continuously maintained by Lee County before and after its annexation by the City of Opelika, and the parties wish to resolve this dispute; and

**WHEREAS,** Louise Young O'Brien, Virginia Young Priest, Virginia Hart Young, Claude John Young, Charles W. Gilmer, Sr., Alice C. Gilmer, Charles W. Gilmer, Jr., Kammy Gilmer, Barbara Gilmer, Matthew Ruttledge Gilmer, Lelia Wilder Gilmer, and Gilmer Properties, LTD., an Alabama limited partnership, hereinafter referred to as "the Young and Gilmer families", are the owners of the land where the quarry is located, which land is leased to Oldcastle, and there is an issue in the case as to their dismissal with prejudice from the case and the effect of that dismissal, particularly as to the jurisdiction, power, or authority of the Circuit Court to enter any injunctive relief at this point; and

**WHEREAS,** it is necessary and appropriate that the City of Opelika and the Young and Gilmer families also join in and approve this Settlement Agreement, so that they are bound by the terms herein; and

**WHEREAS,** Lee County, Oldcastle, the City of Opelika, and the Young and Gilmer families specifically agree that the Circuit Court shall retain continuing jurisdiction, power, and authority in this matter to enter injunctive relief, including the closing of the quarry, without a jury or Circuit Court finding of public nuisance; and

**WHEREAS,** Lee County, the City of Opelika, the Young and Gilmer families, and Oldcastle are willing, through this Settlement Agreement, to contract away certain valuable rights; and

WHEREAS, Lee County, Oldcastle, the City of Opelika, and the Young and Gilmer families have agreed on terms and conditions set forth below in this Settlement Agreement, and they ask the Circuit Court to approve this Settlement Agreement.

COME NOW Lee County, Oldcastle, the City of Opelika, and the Young and Gilmer families, along with their respective attorneys of record, and jointly stipulate and agree that this case is hereby resolved on and subject to the following terms and conditions:

1.  **STRICT LIABILITY FOR REPAIR OF SINKHOLES AND SINKHOLE-RELATED DAMAGE.** Oldcastle understands and agrees to repair, at its own expense, all existing and future sinkholes and sinkhole-related damage to real and personal property within the specific area as determined by Neal Hall, Lee County Engineer, and as shown on Exhibit "A", attached hereto, whether on public or private property. Oldcastle and Lee County understand and agree that the final determination of whether any surface and/or sub-surface irregularity or problem is classified as a "sinkhole or sinkhole-related damage" will be made by Neal Hall, Lee County Engineer, or his successor. Should Neal Hall leave the employment of Lee County, Lee County agrees to maintain a licensed Professional Engineer (P.E.) in good standing in the position of Lee County Engineer. Oldcastle and Lee County understand and agree that in the event that Neal Hall, Lee County Engineer, is still employed but temporarily unavailable for duty, any and all of his rights and responsibilities under this Settlement Agreement may be performed by the Assistant Lee County Engineer, so long as the Assistant Lee County Engineer is a licensed Professional Engineer. If any person other than Neal Hall, P.E. or Justin Hardee, P.E., fulfill any of the rights or responsibilities of the Lee County Engineer contemplated in this Settlement Agreement in a manner objectionable to Oldcastle, Oldcastle reserves the right to file a Motion with the Circuit Court asking the Court to approve a third party licensed Professional Engineer at Oldcastle's expense.

Oldcastle and Lee County further understand and agree that this obligation to repair is a "strict liability" on Oldcastle that will be fulfilled by Oldcastle "no questions asked" and without litigation. The obligation to repair specifically includes, but is not

4

limited to, all existing and future sinkholes and sinkhole-related damage on any and all city or county roads and city or county "rights-of-way" along and within the boundaries shown in Exhibit "A". Lee County reserves the right to file a Motion with the Circuit Court to increase the area defined in Exhibit "A", upon any change in circumstances.

Oldcastle also understands and agrees to repair, at its own expense, all existing and future sinkholes and sinkhole-related damage to private property, whether real or personal, for any landowner (except not while a Plaintiff in any pending action against Oldcastle) whose property lies wholly or partially within the defined area shown on Exhibit "A".

Oldcastle agrees to commence all repairs to sinkholes and sinkhole-related damage located on all such city or county roads and city or county rights-of-way within twenty-four (24) hours following receipt of written notice of said sinkholes or sinkhole-related damage and to diligently continue all reasonable efforts to finish said repairs until completed to the satisfaction of Lee County Engineer Neal Hall or his successor. Oldcastle further agrees to coordinate said repairs through the Lee County Engineer's office. The Lee County Engineer or his successor shall determine a reasonable period of time necessary to complete any repair contemplated by this Settlement Agreement, and Oldcastle agrees to complete all repairs within the time periods specified by the Lee County Engineer.

In the event a repair requires emergency attention, Lee County may make the repair with its own personnel, equipment, and materials. Lee County agrees to acquire as much of the materials necessary for said repairs from Oldcastle as reasonably possible, which shall be furnished by Oldcastle to Lee County without charge. Lee County will provide Oldcastle with invoices for all of the work performed and materials reasonably necessary to make said emergency repairs. Oldcastle further agrees to reimburse Lee County for any such emergency expenses incurred within forty-five (45) days of receipt of the invoice(s).

Oldcastle agrees to commence all repairs to sinkholes and sinkhole-related damage on the property, whether real or personal, of any individual landowner (except not while a Plaintiff in any pending litigation against Oldcastle) whose property lies wholly or partially within the defined area on Exhibit "A", within seven (7) days of receipt of written notice of said sinkholes or sinkhole-related damage and to diligently continue all reasonable efforts to finish said repairs until completed to the satisfaction of Lee County Engineer Neal Hall or his successor. Oldcastle further agrees to coordinate said repairs through the Lee County Engineer's office. The Lee County Engineer or his successor shall determine a reasonable period of time necessary to complete any repair contemplated by this Settlement Agreement, and Oldcastle agrees to complete all repairs within those time periods.

Oldcastle shall notify Lee County of any repairs to be performed under this Settlement Agreement prior to the commencement of any repair work by Oldcastle. All repairs shall be documented in writing and shall be reported quarterly to the Circuit Court or more frequently, if requested by Lee County.

2.    **ROAD REPAIRS ON LEE ROAD 148 WEST OF THE BRIDGE.** Oldcastle agrees to repair, at its own expense, all existing sinkholes and sinkhole-related damage under, in, and on portions of Lee Road 148, also known as Spring Villa Road, and its right-of-way, including, but not limited to, the sub-surface conditions, the foundation or support for the road, and re-paving the surface of the road within the defined area on Exhibit "A". Oldcastle and Lee County agree that the approximate length of said initial repair to Lee Road 148 is one thousand feet (1000') located to the west of the bridge over Little Uchee Creek, the exact location and overall scope of the initial repair to Lee Road 148 west of the bridge is to be determined by Lee County Engineer Neal Hall or his successor.

Oldcastle agrees that said initial repair shall be done in accordance with engineering plans and specifications prepared, approved, and stamped by Professional Engineers from Barge Waggoner Sumner & Cannon, Inc. ("BWSC"), solely at

6

Oldcastle's expense. Once said engineering plans and specifications are reviewed by Neal Hall, Lee County Engineer, or his successor, BWSC shall also be employed at Oldcastle's expense to supervise the construction of said initial repair, so as to ensure that said repairs are done in accordance with the approved engineering plans and specifications. The re-paving of Lee Road 148 shall be by a certified Alabama Department of Transportation approved asphalt company.

It is agreed that Oldcastle shall pay all costs of engineering, construction, and other related expenses associated with said initial repair to Lee Road 148, not to exceed a total cost of One Million, Six Hundred Thousand Dollars ($1,600,000.00). In the event the costs of this initial repair of Lee Road 148 west of the bridge exceed One Million, Six Hundred Thousand Dollars ($1,600,000.00), Lee County shall have the option of reducing the scope of the project to be within $1,600,000.00. To allow the design phase of this initial repair to be completed, repairs provided for herein shall commence within 90 days after the Circuit Court's Order approving this Settlement Agreement. Once the construction phase of this initial repair begins, the initial repair shall be completed within 180 days thereafter. The decision to re-open Lee Road 148 rests solely with the Lee County Engineer, Neal Hall, or his successor. In addition, Oldcastle agrees to provide Lee County with certified copies of any and all invoices from any entity, including Oldcastle, supplying any labor, materials, use of equipment, or other services in furtherance of said initial repair.

In the event that the "inverse filter" method does not stabilize the road, as determined by Neal Hall, Lee County Engineer, or his successor, Oldcastle guarantees that it will make, at its own expense, any and all further repairs necessary to successfully stabilize the road, as determined by Neal Hall, Lee County Engineer, or his successor. Any such further repairs to Lee Road 148 west of the bridge are not contemplated to include a structural slab or bridge concept under the terms of this Settlement Agreement; however, any such further repairs contemplate any other repair methods necessary to successfully stabilize the road, as determined by Neal Hall, Lee County Engineer, or his successor.

7

**3. ROAD REPAIRS ON LEE ROAD 148 EAST OF THE BRIDGE AND ROAD REPAIRS ON LEE ROAD 704.** In addition, Oldcastle agrees to repair, at its own expense, all existing sinkholes and sinkhole-related damage under, in, and on Lee Road 148 and its right-of-way east of the bridge (being the bridge over Little Uchee Creek), and under, in, and on Lee Road 704 and its right-of-way, the exact location and scope of the repair to Lee Road 148 east of the bridge and the exact location and scope of the repair to Lee Road 704 are to be determined by Lee County Engineer Neal Hall or his successor.

**4. INSPECTIONS AND TESTING.** Oldcastle agrees to complete, at its own expense, weekly inspections of all city or county roads within the defined area on Exhibit "A", beginning immediately upon the execution of this Settlement Agreement and to keep written logs of said inspections, including the time, date, and name of the person making such inspection. Oldcastle agrees to report immediately to Neal Hall, Lee County Engineer, or his successor, any and all indications of sinkholes or sinkhole-related activity discovered during such inspections. These logs will be furnished weekly to Lee County Engineer Neal Hall or his successor. These logs will be furnished to the Circuit Court as often as requested by Lee County, but not less than monthly.

Oldcastle further agrees to conduct a sinkhole susceptibility survey on all roads within the defined area on Exhibit "A", which may include ground penetrating radar and/or other sensing techniques within ninety (90) days of execution of this Settlement Agreement and provide the results of the survey, both in raw data form and as compiled, to Lee County. Additionally, Oldcastle, with the approval of Neal Hall, Lee County Engineer or his successor, may make repairs to any county or city road or county or city right-of-way where the same are indicated based on the sinkhole susceptibility survey. Lee County hereby agrees to cooperate with Oldcastle with any and all repairs contemplated in this paragraph; however, Oldcastle shall pay for all costs incurred with said repairs.

8

Oldcastle further agrees to allow Lee County the right to come onto and enter and inspect any and all premises under Oldcastle's control, with the right and for the purpose of inspecting the quarry, any pumps, any water flow recording equipment to verify that it is accurate, testing of water, testing of soil, and assessment of quarry operations generally. Lee County agrees to give Oldcastle twenty-four (24) hours' written notice of Lee County's intent to enter upon any of Oldcastle's property.

5. **DEFENSE AND INDEMNIFICATION**. Oldcastle agrees to fully defend, indemnify, and hold harmless Lee County, members of the Lee County Commission, Probate Judge and Chairman of the Lee County Commission Bill English, Lee County Engineer Neal Hall, Assistant Lee County Engineer Justin Hardee, their agents, servants, commissioners, officials, representatives, attorneys, engineers, and employees, and the successors or assigns of any of them, from and against any and all claims of any sort by any person, firm, corporation, governmental entity, any other entity, or anyone else for any injury, including personal injury, bodily injury, loss of consortium, death, or any other type of injury or damage of any sort, whether personal property, real property, or any other type of property, from any alleged sinkhole, piping hole, road or right-of-way collapse or failure, or any road issue, from any and all claims relating in any way to existing or future sinkholes or sinkhole-related damage, or from any claims relating in any way to quarry operations at the quarry located on Alabama Highway 169 in Lee County, Alabama, being the quarry involved in this litigation. This defense and indemnification provision is to be construed as liberally as possible in favor of Lee County. For example, if a claim is made for injury and/or damage outside the defined area in Exhibit "A" and the claimant alleges that the quarry caused or contributed to the injury or damage, yet Lee County is sued or a claim made against Lee County, then Oldcastle shall still defend and indemnify Lee County, even though the claim arose outside of the defined area. Full defense and indemnification includes the payment of any and all legal fees, expert fees, Court costs, any other costs, fees, or expenses and the full payment of any settlement, verdict, or Judgment. Lee County shall have no liability, exposure, or monetary loss of any sort. Oldcastle also agrees to defend and indemnify the Young and Gilmer families as stated above. Nothing herein modifies, alters, or

9

otherwise limits or changes the obligations existing in the respective lease agreements between the Young and Gilmer families and Oldcastle.

**6.  CONTINUING JURISDICTION OF THE LEE COUNTY CIRCUIT COURT.**  Oldcastle, Lee County, the City of Opelika, and the Young and Gilmer families further understand and agree that the Circuit Court shall retain continuing jurisdiction of this case for the following purposes and reasons:

a) To approve the terms of this Settlement Agreement; and

b) To enforce the terms of this Settlement Agreement; and

c) To determine, and, if deemed appropriate, to impose, appropriate remedies for any violation of the terms of this Settlement Agreement; and

d) To determine, and, if deemed appropriate, to impose, any additional limitations or operational restrictions on Oldcastle, including, but not limited to, restrictions as to the maximum depth of mining, the maximum depth of the quarry pit, volume of water discharge, or other quarry operations up to and including complete closure of the quarry, or any other such injunctive relief as the Circuit Court deems appropriate after giving notice of each hearing, hearing testimony and receiving evidence in this matter; and

e) To hold semi-annual or more frequent status conferences to consider evidence relating to the performance of the parties to this Settlement Agreement and such other matters relating to quarry operations as the Circuit Court deems appropriate.  Each party at such status conference or such other hearing as determined by the Circuit Court reserves the right and shall have the right to present such evidence, including, but not limited to, evidence of facts, opinions, tests, documents, or events that occurred prior to the execution of this Settlement Agreement, as may be relevant to the issue being heard, and each party reserves all rights of appeal under the Alabama Rules of Civil Procedure and the Alabama Rules of Appellate Procedure; and

f) To issue and enforce any such Orders as may be necessary to accomplish or enforce the terms of this Settlement Agreement.  Lee County and Oldcastle specifically agree that it is their intent to give the Circuit Court wide latitude and authority to broadly interpret this Settlement Agreement.

Oldcastle and the Young and Gilmer families specifically agree that the Circuit Court retains jurisdiction of this matter with full power and authority to enter injunctive relief as stated above, including closing the quarry, without any jury or other finding by the Circuit Court that the quarry is a public nuisance. Oldcastle and the Young and Gilmer families specifically waive any right to a jury finding or other finding by the Circuit Court that the quarry or the quarry operations are a public nuisance. Oldcastle and the Young and Gilmer families further specifically waive any defense or contention that the Young and Gilmer families have been dismissed with prejudice and also waive any defense or contention that the Circuit Court thereby does not have jurisdiction, power, or authority to enter any injunctive relief. Oldcastle and the Young and Gilmer families also waive any right of appeal on this issue in the Lee County case only. Oldcastle and the Young and Gilmer families do not waive these defenses or contentions in any other litigation pending against them. The Young and Gilmer families also join in and agree to the terms of this Settlement Agreement, and the Young and Gilmer families further agree that the same shall apply to their heirs, executors, administrators, successors, or assigns by acknowledging that this Settlement Agreement constitutes a restrictive covenant that shall "run with the land".

7. **QUARRY OPERATING RESTRICTIONS.** Oldcastle has furnished and Lee County acknowledges receipt of quarry "operating restrictions" outlined in Exhibit "B", attached hereto. Oldcastle agrees to strictly comply with all such "operating restrictions", and Lee County reserves the right to file a Motion with the Circuit Court to alter or amend those restrictions upon any change in circumstances. Oldcastle also agrees to strictly comply with all state and federal regulations relating to the discharge of water from its operations (including, but not limited to, those contained in its Alabama Department of Environmental Management (hereinafter "ADEM") water discharge permit), and to prepare daily logs of such water discharges, using actual data from properly calibrated automatic water flow metering devices approved by Neal Hall, Lee County Engineer, or his successor, and placed on any and all pipes discharging water from the quarry, and to make such daily logs available to Lee County upon request, but not less than monthly. It is specifically agreed that such logs will not contain any

11

"estimated" or "averaged" flows. Lee County reserves the right to file a Motion with the Circuit Court to alter or amend Oldcastle's ADEM water discharge permit(s) upon any change in circumstances.

8. **CITY OF OPELIKA.** The City of Opelika, without waiving, releasing, dismissing, or affecting any of its claims in Civil Action No. CV 02-85-B in the Circuit Court, agrees that it has no claim for any damage to any portion of Lee Road 148, also known as Spring Villa Road, because Lee County has continuously maintained all portions of Lee Road 148, except the bridge over Little Uchee Creek, with the consent of the City of Opelika, before and after its annexation. The City of Opelika reserves any claim for sinkhole-related damage to said bridge. The City of Opelika understands and agrees with Lee County and Oldcastle that, under the terms of this Settlement Agreement, Oldcastle has the continuing liability, obligation, and responsibility to repair, at Oldcastle's expense, all existing and future sinkholes and sinkhole-related damage to Lee Road 148, as determined by Neal Hall, Lee County Engineer, or his successor. The City of Opelika, Lee County, and Oldcastle all agree that one of the purposes of this Settlement Agreement is to keep and maintain Lee Road 148, whether owned by Lee County or the City of Opelika, in a state of good repair, so that Lee Road 148 can be open and safe to the traveling public. Oldcastle further agrees that the defense and indemnification provisions of paragraph 5 herein also extend to the City of Opelika, in the event there is any claim relating to portions of Lee Road 148 owned by the City of Opelika. Nothing in this paragraph or this Settlement Agreement has any effect whatsoever on any claims, contentions, or defenses in Civil Action No. CV 02-85-B.

9. **BINDING EFFECT AND PERFORMANCE BOND.** The terms of this Settlement Agreement shall be binding upon Oldcastle and any related companies, subsidiaries, successors, or assigns of Oldcastle. Further, Oldcastle agrees to make the terms of this Settlement Agreement known to any owner, purchaser, or future operator of the quarry, to inform Lee County and the Circuit Court prior to any sale, assignment, lease, or substantial change of ownership occurring. Oldcastle hereby agrees that any purchaser of the quarry or any assignee, lessee, or operator of the quarry under any

12

contract or other arrangement will sign and acknowledge receipt of this Settlement Agreement, including the Exhibits hereto, and will sign and acknowledge receipt of the Circuit Court Order approving this Settlement Agreement and any other Orders regarding this matter entered after the Order approving this Settlement Agreement, which receipt will confirm that the subsequent operator understands and agrees that they shall be bound by the terms stated herein, and the same will be filed with Lee County and the Circuit Court upon completion of any sale or any form of assignment of the operations by Oldcastle. Oldcastle shall purchase a performance bond in favor of Lee County which shall provide for performance of all of its obligations under this Settlement Agreement and for any defense and indemnification of Lee County, the Lee County Commission, Probate Judge and Chairman of the Lee County Commission Bill English, Lee County Engineer Neal Hall, Assistant Lee County Engineer Justin Hardee, their agents, servants, commissioners, officials, representatives, attorneys, engineers, and employees, as provided herein, in an amount not less than Five Million Dollars ($5,000,000.00). The terms of the performance bond shall be those acceptable to Lee County. Such bond shall be purchased from an A-rated bonding company and shall be filed with the Circuit Court and Lee County. It is specifically understood that the sale, assignment, transfer, lease, abandonment, voluntary or involuntary closure, or any change in ownership, right, title, or interest by Oldcastle of the quarry or the right to operate the quarry does not affect, impair, release, or diminish in any way any obligation, liability, or responsibility of Oldcastle under the terms of this Settlement Agreement.

**10. REIMBURSEMENT AND RELEASE.** In consideration of and subject to the terms herein and the reimbursement and payment by Oldcastle of fees, costs, and expenses to Lee County in the sum of Two Million Dollars ($2,000,000.00), which shall be paid by Oldcastle to Lee County within thirty (30) days of date of the filing of the signed Settlement Agreement, Lee County agrees to release Oldcastle and the Young and Gilmer families from and against any and all claims, demands, damages (compensatory or punitive), actions, causes of actions, and statutory actions (including, but not limited to, claims of public and private nuisance), on account of any injuries or damages relating to the present claims being asserted by Lee County in this case between August 21, 2002

13

and the date of execution of this Settlement Agreement. This release is not intended in any way to release any claims of Lee County after the date of execution of this Settlement Agreement. This release also in no way affects the provisions of Paragraph 6 above as to the continuing jurisdiction of the Circuit Court or the introduction of any evidence before the execution of this Settlement Agreement at any hearing by the Circuit Court.

Lee County and Oldcastle agree that the release of Oldcastle contemplated by this Settlement Agreement will not become effective until such time as all said repairs to Lee Road 148 west of the bridge have been completed to the satisfaction of Lee County Engineer Neal Hall or his successor and all monetary sums due to Lee County have been paid by Oldcastle.

It is further stipulated by Oldcastle and Lee County that this Settlement Agreement is not an admission of wrongdoing or liability on the part of Oldcastle and is in fact a compromise economic settlement of disputed claims made for the purpose of avoiding a lengthy trial, litigation expenses, and the uncertainties of litigation. It is expressly understood by and between the parties that this Settlement Agreement does not preclude or prevent Lee County or Oldcastle from bringing further legal action against each other for conduct or events that occur subsequent to the execution of this Settlement Agreement. The parties acknowledge and agree that evidence existing prior to the execution of this Settlement Agreement may be introduced in such legal action. Nothing in this Settlement Agreement precludes or otherwise limits either party from offering evidence of facts, opinions, conditions, tests, documents, or events that occurred prior to or subsequent to the execution of this Settlement Agreement in such legal action or at any hearing on any Motion filed with the Circuit Court to enforce any of the provisions of paragraph 6 above. This Settlement Agreement shall remain in full force and effect so long as the quarry is being mined as a commercial mining operation and for a period of seven (7) years thereafter, solely upon the condition that all claims made by Lee County under this Settlement Agreement have been resolved to the satisfaction of Lee County. However, Oldcastle's obligations to defend and indemnify Lee County and the Young

14

and Gilmer families expressed in paragraph 5 of this Settlement Agreement shall not be affected or limited in any way by the terms of this paragraph.

**11. ENTIRE AGREEMENT.** The parties agree to file a Motion with the Circuit Court reflecting that this Settlement Agreement is the entire agreement of the parties and requesting that the Circuit Court enter an Order approving the terms of this Settlement Agreement, thereby making this Settlement Agreement the Order of the Circuit Court.

Executed this the ____8____ day of ____February____, 2007.


STANLEY A. MARTIN
Attorney for Lee County

JAMES B. SPRAYBERRY
Attorney for Lee County


CHARLES E. VERCELLI, JR.
Attorney for Lee County

GUY F. GUNTER, III
Attorney for the City of Opelika


PHILLIP E. ADAMS, JR.
Attorney for Oldcastle Materials
Southeast, Inc., and all other
Oldcastle entities

WILLIAM F. HORSLEY
Attorney for the Young and Gilmer families

15

LEE COUNTY, ALABAMA:

By: _Bill English_____
Bill English, Chairman,
Lee County Commission


SEAL


ATTEST:
By: _Alice Hodge_____
       Alice Hodge
Its:    Deputy Administrator

OLDCASTLE MATERIALS GROUP, INC.

By: _Mark Towe_

Mark Towe, President,
Oldcastle Materials Group, Inc.
on behalf of Oldcastle Materials Southeast, Inc.,
Oldcastle Materials Group, Inc.,
and all other Oldcastle entities

STATE OF CONNECTICUT
_Hartford_ COUNTY

I, _Doreen L. Monoskey_, a Notary Public in and for the City of _Bristol_, in said State of Connecticut, hereby certify that Mark Towe, as President of Oldcastle Materials Group, Inc. and on behalf of Oldcastle Materials Group, Inc., Oldcastle Materials Southeast, Inc., and all other Oldcastle entities, whose name is signed to the foregoing Settlement Agreement and who is known to me, acknowledged before me on this day that, being informed of the contents of said Settlement Agreement, he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal of office this the _1ST_ day of _February_, 2007.

_Doreen L. Monoskey_
Notary Public

SEAL

My Commission Expires:

_10-31-2011_

17

CITY OF OPELIKA, ALABAMA:
a municipal corporation

By: _____
      Gary Fuller, Mayor,
      City of Opelika, Alabama


SEAL


ATTEST:

BY: _____
      Robert G. Shuman, City Clerk,
      City of Opelika, Alabama

18

YOUNG FAMILY:

_Virginia Hart Young by_
Virginia Hart Young by
Margaret Brown, as her Attorney in Fact

STATE OF ALABAMA

LEE COUNTY

    I, _Carman S. Long_____, a Notary Public in and for said County, in said State, hereby certify that Margaret Brown, as Attorney in Fact for Virginia Hart Young, whose name is signed to the foregoing Settlement Agreement and who is known to me, acknowledged before me on this day that, being informed of the contents of said Settlement Agreement, she executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal of office this the _6th_ day of _February_ 2007.

_Carmen S. Long_
Notary Public

My Commission Expires:

_March 30, 2008_____

_Louise Young O'Brien_
Louise Young O'Brien


_Virginia Young Priest_
Virginia Young Priest


_Claude John Young_
Claude John Young     _by Virginia Young Priest_
_Power of attorney in fact_


STATE OF  Alabama

 Lee _____ COUNTY

    I, Laura L. Anglea , a Notary Public in and for said County, in said State, hereby certify that Louise Young O'Brien, Virginia Young Priest, and Claude John Young, whose names are signed to the foregoing Settlement Agreement and who are known to me, acknowledged before me on this day that, being informed of the contents of said Settlement Agreement, they executed the same voluntarily on the day the same bears date.

Given under my hand and official seal of office this the  2  day of February 2007.

_Laura L. Anglea_
Notary Public

My Commission Expires:

MY COMMISSION EXPIRES MAY 11, 2010

STATE OF ALABAMA

LEE COUNTY

    I, Laura L. Anglea, a Notary Public in and for said County, in said State, hereby certify that Virginia Young Priest, as Attorney in Fact for Claude John Young, whose name is signed to the foregoing Settlement Agreement and who is known to me, acknowledged before me on this day that, being informed of the contents of said Settlement Agreement, she executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal of office this the 2nd day of February, 2007.


_____
Notary Public

My Commission Expires:

MY COMMISSION EXPIRES MAY 11, 2010
_____

20-A

**GILMER FAMILY:**

Gilmer Properties, LTD., an Alabama limited partnership.

By:     Gilmer Family, Inc., an Alabama Corporation as general partner

*Charles W. Gilmer Sr.*

Charles W. Gilmer, Sr., as President of Gilmer Family, Inc.

**STATE OF ALABAMA**

**LEE COUNTY**

I, _Laura L. Anglea_, a Notary Public in and for said County, in said State, hereby certify that Charles W. Gilmer, Sr., as President of Gilmer Family, Inc., as General Partner of Gilmer Properties, LTD, an Alabama limited partnership, whose name is signed to the foregoing Settlement Agreement and who is known to me, acknowledged before me on this day that, being informed of the contents of said Settlement Agreement, he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal of office this the __2__ day of __February__, 2007.

_Laura L. Anglea_
Notary Public

SEAL

My Commission Expires:

_____ MY COMMISSION EXPIRES MAY 11, 2010 _____

Charles W. Gilmer, Sr.

Alice C. Gilmer

Charles W. Gilmer, Jr.

Kammy Gilmer

Barbara Gilmer

Lelia Wilder Gilmer

Matthew Ruttledge Gilmer

22

STATE OF ALABAMA

LEE COUNTY

I, _LAURA L. Anglea_, a Notary Public in and for said County, in said
State, hereby certify that Charles W. Gilmer, Sr., Alice C. Gilmer, Charles W. Gilmer,
Jr., Kammy Gilmer, Barbara Gilmer, Lelia Wilder Gilmer, and Matthew Ruttledge
Gilmer, whose names are signed to the foregoing Settlement Agreement and who are
known to me, acknowledged before me on this day that, being informed of the contents
of said Settlement Agreement, they executed the same voluntarily on the day the same
bears date.

Given under my hand and official seal of office this the _2_ day of _February_, 2007.

_Laura L. Anglea_
Notary Public

SEAL

My Commission Expires:

MY COMMISSION EXPIRES MAY 11, 2010

23



EXHIBIT "A"

Exhibit "B"

<u>OPERATING RESTRICTIONS AND LIMITATIONS</u>

| | |
|---|---|
| Hours, Operational Activity<br>(*Except for job-specific requirements) | 6 AM - 9 PM, Mon - Fri*<br>6 AM - 9 PM, Sat* |
| Hours, Sales Activity (except for flood emergencies) | 6 AM - 9 PM, Mon - Fri*<br>6 AM - 9 PM, Sat* |
| Hours, Maintenance Activity | Unlimited |
| Hours, Blasting (except for emergencies) | 9 AM - 4 PM, Mon - Fri<br>None          Sat |
| Blasting Limits: | |
|     Maximum Pounds Per Blast<br>    Seismograph Monitoring | 100,000 # per blast<br>As At Present |
| Pumping & Quarry Drainage | NTE ADEM Permit Limits |
| Dust | No Fed/State exceedances |
| Noise | No Fed/State exceedances |
| Entrance & Adjacent Roadway Maintenance | Water/sweep, Min. 1 / hour<br>during Optg./Sales hours |

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| LEE COUNTY, ALABAMA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Civil Action No. CV-20 02-85-A |
| | ) |
| OLDCASTLE MATERIALS | ) |
| SOUTHEAST, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER APPROVING SETTLEMENT AGREEMENT

Before the Court is the Joint Motion to Approve Settlement Agreement submitted by Plaintiff Lee County, Alabama, Defendant Oldcastle Materials Southeast, Inc., City of Opelika, and the Young and Gilmer families.

Upon consideration of the Settlement Agreement and fully understanding and considering the same, it is the **Order, Judgment, and Decree** of the Court as follows:

1.      The Settlement Agreement signed by the attorneys of record and attached hereto as Exhibit 1 is hereby approved, accepted, and adopted by this Court.

2.      This Court retains continuing jurisdiction of this matter as set forth in the Settlement Agreement. This case is not dismissed.

3.      Except as expressly set forth in the Settlement Agreement, all claims and defenses asserted by all other parties are not affected by this Order in any manner, and all other scheduling orders, scheduled trials, and other Orders of the Court remain in full force and effect.

4.      The Clerk of Court shall mail or deliver copies of this Order and Exhibit 1 to all attorneys of record.

Done on this the _____ day of February, 2007.


_____
Circuit Judge

cc:    All counsel of record

# SAMFORD & DENSON, LLP
## ATTORNEYS AT LAW

Yetta G. Samford, Jr.
W.F. Horsley
Robert H. Pettey
Christopher J. Hughes
Joshua J. Jackson

709 Avenue A
Opelika, Alabama 36801
Mailing Address:
Post Office Box 2345
Opelika, Alabama 36803-2345
Telephone (334) 745-3504
FAX (334) 745-3506
jackson@samfordlaw.com
Direct Fax – (334) 749-2871

N.D. Denson (1856-1927)
John V. Denson (1885-1940)
N.D. Denson, Jr. (1887-1958)

February 2, 2007

Stanley A. Martin
P.O. Box 2526
Opelika, Alabama 36803-2526

Phillip E. Adams, Jr.
P.O. Box 2069
Opelika, Alabama 36803-2069

Re:    Mike Davis, et al. v. Hanson Aggregates Southeast, Inc., et al.
       In the Circuit Court of Lee County, Alabama
       Case No: CV-02-85

Dear Stan and Phil:

This letter is to follow-up on our several telephone discussions concerning your clients' requests that our clients sign the proposed Settlement Agreement of the claims of Lee County against Oldcastle. Our clients have requested that Lee County and Oldcastle agree to the following language, which will serve as an addendum to the Settlement Agreement:

The Young and Gilmer families, heirs and assigns will have no monetary liability in any way, shape or form in connection with Lee County's case or with the Settlement Agreement entered into between Lee County, Oldcastle, the City of Opelika, and the Young and Gilmer families. The term "monetary liability" as referred to above shall not include loss of revenue in the event the quarry is restricted or closed as a result of the Settlement Agreement or any other litigation. Any indemnity to the Young and Gilmer families shall be from Oldcastle, not Lee County.

By signing below, the undersigned on behalf of Lee County, Alabama and Oldcastle Materials Southeast, Inc. bind each respective entity to the terms stated above as an addendum to the Settlement Agreement between Lee County, Alabama, the City of Opelika, Alabama, Oldcastle Materials Southeast, Inc., and the Young and Gilmer families in Lee County case number CV-02-85-A.

_____
BRIAN K. FOWLER
On behalf of Oldcastle Materials Southeast, Inc.

_____
BILL ENGLISH
Chairman, Lee County, Commission

_____
PHILLIP E. ADAMS, JR.

_____
STANLEY A. MARTIN

Thank you very much for your attention to this matter.

Very truly yours,

FOR THE FIRM

Joshua J. Jackson

JJJ/lla

STATE OF ALABAMA
COUNTY OF LEE

## DURABLE POWER OF ATTORNEY

KNOW ALL MEN AND WOMEN BY THESE PRESENTS, that I, Claude John Young, have made, constituted and by these presents do make, constitute and appoint my sister, Virginia Young Priest, and/or my sister, Louise Young O'Brien, as my true and lawful attorney(s) in fact. In case of death, resignation or failure of either my sister, Virginia Young Priest, or my sister, Louise Young O'Brien, to act as my true and lawful attorney in fact, I make, constitute and appoint the survivor, as my true and lawful attorney in fact to act in, manage, and conduct all of my estate and property and all of my affairs, and for that purpose for me and in my name, place and stead, and for my use and benefit, and as my act and deed, to do and execute or to concur with persons jointly interested with me therein in the doing or executing of all or any of the following acts, deeds, and things, that is to say:

1.      To exercise, do, or perform any act, right, power, duty, or obligation whatsoever, that I now have or may acquire the legal right, power, or capacity to exercise, do, or perform in connection with, arising out of, or relating to any person, item, thing, transaction, property (real or personal, tangible or intangible), or matter whatsoever; and

2.      To ask, demand, sue for, recover, collect, receive, hold and possess all sums of money, debts due, bonds, notes, checks, drafts, accounts, deposits, legacies, bequests, devises, interest, dividends, stock certificates of deposit, annuities, pensions and retirement benefits, insurance benefits and proceeds, documents of title, choses in action, personal and real property, intangible and tangible property and property rights, and demands whatsoever, liquidated or unliquidated, as are now, or shall hereafter become due, owing, payable, owned, or belonging to or by me in which I have or may acquire an interest and to have, use, and take all lawful ways and means and legal and equitable remedies, procedures, and writs in my name, all endorsements, acquittance, releases, receipts, or other sufficient discharges for the same; and

3.      To bargain, contract and agree for, to purchase, receive, and take possession of, and to lease, let, demise, transfer, sell, exchange, assign, convey, encumber, and hypothecate, lands, tenements, and hereditaments of whatever kind and nature, or any interest therein, upon such terms

and conditions, and under such covenants, as he shall deem fit; and

4.    To enter upon and take possession of such lands, buildings, tenements, and other structure, or parts thereof, and collect and receive the rents, profits or income therefrom, and to manage, repair, alter, or reconstruct all such buildings or structures; and

5.    To bargain and agree for; to buy, sell, exchange, mortgage, and hypothecate; and to deal in or with goods, wares, merchandise, choses in action and any other property in possession, or in action, or any interest therein; and

6.    To execute, sign, endorse, acknowledge, and deliver deeds, leases, assignments, transfers, covenants, agreements, proxies, hypothecations, mortgages, deeds of trust, releases and satisfaction of mortgages, judgments, and other debts, escrow instructions, notices, receipts, commercial paper, investment securities, bills of lading, warehouse receipts, and other documents of title, security agreements and evidences of debt, and such other instruments, including tax returns of every kind whatsoever in writing of whatever kind and nature as he may deem necessary and proper; and

7.    To insure or cause insurance to be taken on buildings, structures, goods, merchandise, and other commodities, or any part thereof, at such premiums and for such risk as he may deem proper; and

8.    To deposit and withdraw for the purpose hereof, in either my said attorney's name or my name or jointly in both our names, in or from any banking institution, any funds, negotiable paper, or moneys which may come into my said attorney's hands as such attorney or which I now or hereafter may have on deposit or be entitled to; and

9.    To institute, prosecute, defend, compromise, arbitrate, and dispose of legal, equitable, or administrative hearings, actions, suits, attachments, arrests, distresses or other proceedings, or otherwise engage in litigation in connection with the premises; and

10.    To engage and dismiss agents, counsel, and employees and to appoint and remove at pleasure any substitute for or agent of my said attorney, in respect to all or any of the matters or things herein mentioned and upon such terms as my attorney shall think fit; and

11.    To make gifts of my property within the limits of the annual exclusion permitted by Internal Revenue Service rules and regulations.

GIVING AND GRANTING unto my said attorney full power and authority to do and perform all and every act, deed, matter and thing whatsoever in and about my estate, property, and affairs in Lee County, Alabama, and elsewhere, as fully and to all intents and purposes as I might or could do in my own proper person if personally present, the above especially enumerated powers being in aid and exemplification of the full and complete and general power herein granted and not in limitation or definition thereof; and hereby ratifying all that my said attorney shall lawfully do or cause to be done by virtue of these presents.

THIS POWER OF ATTORNEY SHALL NOT BE AFFECTED BY DISABILITY, INCOMPETENCY OR INCAPACITY OF THE PRINCIPAL.

This power of attorney shall remain in full force and effect until revoked by a written revocation thereof filed in the Office of the Judge of Probate of Lee County, Alabama, or until my death, whichever event occurs sooner.

This instrument is to be construed and interpreted as a durable general power of attorney. The enumeration of specific items, acts, rights, or powers herein does not limit or restrict, and is not to be construed or interpreted as limiting or restricting the general powers granted to my attorney herein.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this the _____ day of February, 2001.

_____
Claude John Young

STATE OF ALABAMA
COUNTY OF LEE

I, the undersigned authority, a Notary Public in and for said County and State, hereby certify that Claude John Young, whose name is signed to the foregoing instrument, and who is known to me, acknowledge before me on the day, that, being informed of the contents of this instrument, did execute the same voluntarily on the day the same bears date.

Sworn and subscribed to before me this ___ day of February, 2001.

_____
Notary Public
My commission expires: 1/9/2004

THIS INSTRUMENT PREPARED BY
DAVIS & McLAUGHLIN
ATTORNEYS AT LAW
324 EAST MAGNOLIA AVENUE
AUBURN, ALABAMA 36830
334/821-1908

Page 3 of 3

## DURABLE POWER OF ATTORNEY

I, **VIRGINIA YOUNG**, being of sound mind and body, hereby appoint and empower my daughter, **MARGARET Y. BROWN**, as my true and lawful attorney-in-fact, to act for me and in my name and on my behalf to:

A. Collect, receive and receipt for any and all sums of money or payments due or to become due to me.

B. Sue in my name and behalf for the recovery of any and all sums of money or payments due or to become due to me and to collect on any judgments recovered by me and execute satisfactions of the same.

C. Initiate, defend, continue, or settle suits on my behalf or to enforce the exercise of these powers granted to my attorney-in-fact.

D. Hire or discharge (with or without cause) employees including, but not limited to, physicians, nurses, attorneys, and domestics.

E. Deposit to or withdraw from, or draw checks or drafts upon, any and all savings or checking accounts, money market funds or any other type of account in my name; open any new such accounts in my name in any bank or financial institution or with any insurance or brokerage firm; and endorse my name to any and all negotiable instruments.

F. Pay any and all bills, accounts, claims, and demands now or hereafter payable by me.

G. Receive and endorse for deposit in any account any payments that I receive from any branch or department of the United States or other government, including without limitation, Social Security payments, Veteran's Administration payments or grants, Medicare of Medicaid payments, and tax refunds.

H. To represent me before any office of the Internal Revenue Service or any state agency; prepare and sign any tax return on my behalf; receive confidential information regarding tax matters (SSN _____) for all periods, whether before or after the execution of this instrument; and to make any tax elections on my behalf.

I.    Borrow money and to otherwise incur or guarantee indebtedness for which I will be liable, and to secure any such indebtedness by mortgage or other security interest encumbering my assets.

J.    Act for me in any business or enterprise in which I am now or have been engaged or interested or with respect to any trust in which I have a beneficial interest.

K.    Manage all assets and properties belonging to me or in which I have any interest, and to expend whatever funds my attorney-in-fact deems proper for the preservation, maintenance, or improvement of those assets or properties.

L.    Compromise, arbitrate, or otherwise adjust claims in favor of or against me or any assets or entity in which I have an interest, and to agree to any rescission or modification of any contract or agreement.

M.    Participate in any type of liquidation or reorganization of any enterprise.

N.    Join with other persons with whom I own property as joint tenants with right of survivorship in any transaction regarding that property.

O.    Vote and exercise all rights and options, or empower another to vote and exercise those rights and options, concerning any corporate stock, securities, or other assets; to enter into or approve agreements for merger, reorganization or equivalent transactions with respect to any company or enterprise; to delegate those rights to an agent; and to enter into voting trusts and other agreements or subscriptions.

P.    Exercise all rights and options, or empower another to exercise those rights and options, concerning sole proprietorships, general or limited partnerships, joint ventures, business trusts, land trusts, limited liability companies, and other domestic and foreign forms or organizations.

Q.    Buy, sell, exchange, lease, convey, and grant options with respect to any real or personal property, and to negotiate for and to enter into contracts and agreements of every nature, concerning real or personal property, including homestead or exempt property. Any such contract, agreement, or lease will be valid and binding for its full term even if it extends beyond my lifetime or the duration of this power of attorney.

R.    To exercise all powers even though my attorney-in-fact may also be acting individually or on behalf of any other

person or entity interested in the same matters.

S.  Transact all business, make, execute and acknowledge all contracts, orders, deeds, bills of sale, assurances, promissory notes, mortgages and other instruments of any nature which may be requisite or proper to effectuate any matter or things pertaining to or belonging to me.

T.  Make gifts for estate planning purposes, including gifts to my attorney-in-fact; change the beneficiaries of any life insurance policies or other qualified or nonqualified benefit plans; create revocable or irrevocable trusts for the benefit of myself or of other persons; and consent to the creation or extension of trusts established by other persons for my benefit.

U.  Buy U.S. Treasury Bonds redeemable at par in payment of estate taxes, and to purchase, sell, or redeem U. S. Savings Bonds.

V.  Employ and compensate any investment management service, financial institution, or similar organization to advise my attorney-in-fact and to handle all investments and to render all accountings of funds held on my behalf under custodial, agency, or other agreements.

W.  Enter into any safe deposit box for which I am a lessee and add or remove items;

X.  Disclaim any property interest that 1 would otherwise receive;

Y.  Demand, obtain, review, and release to others medical records or other documents protected by the patient-physician privilege, attorney-client privilege or any similar privilege.

Z.  File or process claims for any medical bills with all insurance companies through which I have coverage, including but not limited to Medicare and Medicaid and to receive from Blue Cross/Blue Shield or any other insurer information obtained in the adjudication of any claim in regard to services furnished to me under Title 18 of the Social Security Act.

AA.  Nominate on my behalf a person (including my attorney-in-fact) or entity to be appointed by a court of appropriate jurisdiction as guardian of my person or property, or both, or as custodian for my property during the pendency of any proceedings to determine my competency.

BB.  Invest in assets, securities, or interests in securities of any nature, including (without limit) commodities,

options, futures, precious metals, currencies, and in domestic and foreign markets or investment funds, including common trust funds; to trade on credit or margin accounts (whether secured or unsecured); and to pledge assets for that purpose.

I further authorize my attorney-in-fact to take all other actions as may be necessary or appropriate for my personal well-being and the management of my affairs, as fully and as effectively as if made or done by me personally.

Any third party to whom this power of attorney is presented may rely upon an affidavit by my attorney-in-fact stating, to the best of my attorney-in-fact's knowledge and belief, that this power has not been revoked and that I am then living and have not been adjudicated incompetent. No third party relying on this power and that affidavit will be liable for any losses, damages, or claims caused by compliance with the action requested by my attorney-in-fact, unless that third party has actual knowledge of my death or the revocation of this power.

This durable power of attorney will not be affected by my disability except as provided by statute. It is my specific intent that the power conferred on my attorney-in-fact will be exercisable from the date of this instrument, notwithstanding my later disability or incapacity, except as otherwise provided by statute.

In witness whereof, I have executed this **DURABLE POWER OF ATTORNEY** on this 3rd day of June, 2004.

Signed in the presence of:

_Kristy Lee_

_Michelle Harbor_

_Virginia Young_
**VIRGINIA YOUNG**

State of Florida
County of Gulf

    The foregoing instrument was acknowledged before me by **VIRGINIA YOUNG**, who signed in the presence of these witnesses on this _3rd_ day of June, 2004.



KRISTY M. LEE
MY COMMISSION # DD 280054
EXPIRES: January 25, 2008
Bonded Thru Notary Public Underwriters

_Kristy M. Lee_
Notary Public
My Commission expires:

### NOTIFICATION OF
### EXECUTION OF DURABLE POWER OF ATTORNEY

    I, **VIRGINIA YOUNG**, a resident of Gulf County, Florida, executed a Durable Power of Attorney on June _3rd_, 2004, appointing you as my attorney-in-fact.

    You are entitled to notification of the execution of this power pursuant to Chapter 709 of the Florida Statutes (or any similar or successor statute in this or any other jurisdiction). Therefore, I hereby send to you via the U. S. Mail notification of the execution of the above-described Durable Power of Attorney.

    Executed at Port St. Joe, Florida this _3rd_ day of June, 2004.

Signed in the presence of:

_Kristy Lee_

_Michelle Harbor_

_Virginia Young_
**VIRGINIA YOUNG**

State of Florida
County of Gulf

    Subscribed and sworn to before me by **VIRGINIA YOUNG**, who signed in the presence of these witnesses on June ___3___, 2004.



Notary Public
My Commission Expires:

### ACKNOWLEDGMENT

    I acknowledge receiving this _____ day of June, 2004, via the U. S. Mail, notification of the execution of a Durable Power of Attorney by **VIRGINIA YOUNG** naming me as her attorney-in-fact.


_____
**MARGARET Y. BROWN**

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA
## FAMILY COURT DIVISION

IN RE: THE MARRIAGE OF:                        *
                                               *
BARBARA G. ~~GILMER~~ SMITH                     *
    PLAINTIFF,                 *
VS.                                            *       CASE NO. DR-03- 463
                                               *
                                               *
GARY E. SMITH                                  *
    DEFENDANT.                  *

### JUDGEMENT OF DIVORCE

    This action coming on to be heard, attorneys for the parties did announce to the Court that the issues had been settled and an agreement of the parties filed with the Court, and upon consideration thereof, the Court is of the opinion and finds that the Court has jurisdiction of the parties and of the action and the Court is of the opinion that:

    IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT:

    1. That the bonds of matrimony heretofore existing between the Plaintiff, BARBARA G. SMITH, and the Defendant, GARY E. SMITH be and the same are hereby dissolved and the said BARBARA G. SMITH is forever divorced from the said GARY E. SMITH.

    2. That neither party shall marry again except to each other until sixty (60) days after the date of this Judgement of Divorce, and if an appeal is taken (which must be instituted within Forty-two (42) days from this Judgement, or from the date that a post-trial motion is denied), then neither party shall again marry except to each other during the pendency of the appeal.

    3. That the costs of Court accrued herein are hereby taxed against the Plaintiff for the collection of which let execution issue.

    4. That the Separation Agreement between the parties dated the 31 day of OCT., 2003 be incorporated herein and made a part hereof and enforceable as if written herein.

    5. That the Plaintiffs maiden name of Gilmer be restored to her.

    DONE THIS THE 16TH DAY OF December, 2003.

FILED
DEC 1 5 2003

_____
Circuit Judge

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

STATE OF ALABAMA
LEE COUNTY
    I, CORINNE T. HURST do hereby certify that this is a true and correct copy of the original on file in this office.
Witness my hand and seal of Court this 16 day
of December 2003

_____
CORINNE T. HURST, Circuit Clerk

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA
## FAMILY COURT DIVISION

BARBARA G. SMITH                           *

     PLAINTIFF,                           *

VS.                                        *          CASE NO. DR-03- 463

GARY E. SMITH                          *

     DEFENDANT.                          *

**F I L E D**

NOV 0 7 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## SETTLEMENT AGREEMENT

Comes now the parties hereto, BARBARA G. SMITH, hereinafter referred to as Plaintiff, and GARY E. SMITH, hereinafter referred to as Defendant, and do agree as follows:

     Whereas, the Parties were married on or about the 28th day of August, 1997, and were separated on or about the 22ND day of August, 2002, and:

Whereas, the parties can no longer live together as husband and wife due to marital differences:

Whereas, the parties do agree that they should no longer be husband and wife:

Whereas, a Complaint for Divorce will be filed with this Settlement Agreement;

The Parties have reached a mutual agreement as to the division of all assets and debts and to all other aspects of the marital relationship the Parties do hereby agree as follows:

### JURISDICTION

That the Court should take jurisdiction of this matter and divorce the parties by entering a Judgment of Divorce in this matter.

### TERMS OF THE JUDGMENT OF DIVORCE

That the Parties do agree that the Court should adopt the terms of this agreement as the terms of the Judgment of Divorce and make the terms of this agreement enforceable as if set forth in the Judgment of Divorce.

                         _BGS_       _GES_

                         BGS       GES

## DEBTS

That each party shall be responsible for debt in their own name and shall hold harmless and indemnify the other party from any liability thereon unless set forth otherwise herein.

## REAL PROPERTY

That the Plaintiff shall retain ownership and the full possession and control of the home place which she owned prior to the time of the marriage. The Plaintiff shall be responsible for any debt upon the said home place of the parties and shall hold harmless and indemnify the Defendant from any liability hereon. Ownership and title of the home place are divested from the Defendant and vested into the Plaintiff.

## PERSONAL PROPERTY

That all the personal property of the parties has been previously divided at the time of the signing of this agreement. Defendant has thirty (30) days from the date of judgment to remove any personal property now remaining at said homeplace.

## PROPERTY SETTLEMENT OF ALL OTHER PROPERTY OF THE PARTIES

The Parties during the term of the marriage were included by Plaintiff's father, Charles Waters Gilmer, Sr. into Gilmer Properties, LTD. and therefore Defendant relinquishes all rights to said Gilmer Properties, LTD.

## FINANCIAL ACCOUNTS AND PAYMENTS

Each party maintains their own banking accountants and both parties do waive the right to claim any portion of any monies, stocks, bonds, certificates of deposit or any other financial asset of the other party.

## AUTOMOBILES

That the Plaintiff shall retain the exclusive use of her automobiles and shall be liable for any debt thereon and shall hold harmless and indemnify the Defendant from any liability thereon. .

That the Defendant shall retain the exclusive use of his automobile and shall be responsible for the debt thereon and shall hold harmless and indemnify the Plaintiff from any liability hereon.

The titles are already vested into appropriate parties. No transfer of titles are necessary.

BGS                GES

## AGREEMENT TO SIGN ALL NECESSARY DOCUMENTS

That the parties do agree and understand that certain documents may need to be signed by the parties in order to make the terms herein effective. That each party hereto does agree that they will sign all necessary documents to effectuate the terms set forth herein and that failure to sign said documents immediately upon the request of the other party shall constitute a breach of the terms as set forth herein and the non-breaching party shall have all remedies as set forth in the Enforcement Paragraph here below and the breaching party shall also be responsible for cost, expenses or other damages the non-breaching party incurs in effectuating the terms herein without the cooperation of the breaching party.

## ENFORCEMENT OF THE TERMS HEREIN

That should either party breach any term of this agreement then they shall pay all cost and expenses incurred by the non-breaching party for the enforcement of these terms, those cost and expenses include court cost and attorney's fees. Said attorney's fees are due and payable regardless of if the said attorney has to go to Court to enforce the terms herein.

## TERMS VALID UPON SIGNATURE

That the parties do agree that the terms of this Settlement Agreement are enforceable upon the signing of this agreement and become binding immediately upon the signing of this agreement.

Done this the 31 day of October. 2003.


_____
BARBARA G. SMITH

_____
GARY E. SMITH

STATE OF ALABAMA

COUNTY OF LEE

 Comes now the undersigned Notary Public and does certify that BARBARA G. SMITH, being known unto me, did appear before me on this date and having been duly sworn, did swear and affirm that she was over the age of nineteen years, of sound mind and that she had read and understood the terms of this Settlement Agreement and that she was in agreement therewith and that she was signing the same voluntarily and of her own free will and accord.

 Done this the _____ day of October, 2003.

          _____

(SEAL)         Notary Public
           My Commission Expires:


STATE OF ALABAMA

COUNTY OF LEE

 Comes now the undersigned Notary Public and does certify that GARY E. SMITH, being known unto me, did appear before me on this date and having been duly sworn, did swear and affirm that he was over the age of nineteen years, of sound mind and that he had read and understood the terms of this Settlement Agreement and that he was in agreement therewith and that he was signing the same voluntarily and of her own free will and accord.

 Done this the _____ day of October, 2003.

          _____

(SEAL)         Notary Public
           My Commission Expires:

ELECTRONICALLY FILED
10/24/2006 12:12 PM
CIRCUIT COURT OF
LEE COUNTY, ALABAMA
CORINNE T. HURST, CLERK

## IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE DAVIS, et al., )<br><br>Plaintiffs, )<br><br>VS. )<br><br>HANSON AGGREGATES )<br>SOUTHEAST, INC., et al., )<br><br>Defendants. ) | CASE NO. CV-02-85(A) |

### DEFENDANT OLDCASTLE'S MOTION TO DISMISS CLAIMS FOR INJUNCTIVE RELIEF

Comes now the Defendant, Oldcastle Materials Southeast, Inc. ("Oldcastle"), by and through the undersigned counsel, and respectfully moves this Court to dismiss Plaintiffs' claims for injunctive relief pursuant to Rule 12(b)(7) and Rule 19 of the *Alabama Rules of Civil Procedure*. As grounds for this motion, Oldcastle says and states as follows:

1. Plaintiffs seek equitable or injunctive relief in their action against Oldcastle. *See* Complaint; *see also* Lee County's Pre-Trial Contentions for January 2007 Trial at p. 7 (stating that Plaintiff Lee County demands "an order enjoining Oldcastle from operating any quarry on the Gilmer and/or Young properties or anywhere in the vicinity of the current quarry" and "for such other legal or equitable relief to which it is entitled").

2. Virginia Young Priest, Claude John Young, c/o Virginia Young Priest, Louise Young O'Brien, Virginia Hart Young, and Gilmer Properties, Ltd. (hereinafter referred to as the "Young and Gilmer Defendants") were originally named defendants in this action.

*Exhibit 3*

3.  The Young and Gilmer Defendants clearly have legally protected interests in their property, which the Plaintiffs seek to diminish. The quarry in question is operated on the properties of the Youngs and Gilmers. Both the Young and Gilmer families receive royalties from the operation of the quarry, which would be diminished by any injunctive or equitable relief granted to Plaintiffs.

4.  Based on the foregoing, the Young and Gilmer Defendants are necessary and indispensable parties to this action. *See Holland v. City of Alabaster*, 566 So. 2d 224 (Ala. 1990) (explaining that a party is indispensable where legally protected interests are at issue and specifically that a city, as the owner of property, was a necessary party in the nuisance suit and was indispensable because a legally protected interest was at issue). Plaintiffs themselves agree that the Young and Gilmer Defendants' rights will be affected by any injunctive relief granted and that they should be parties to this action. *See, e.g.,* Transcript of Proceedings of July 13, 2005 at p. 28 line 21 - p. 29 line 13. The legally protected interests of the Young and Gilmer Defendants in the use of their property would be directly affected by a trial concerning the equitable and/or injunctive relief claims of Plaintiffs. However, the Young and Gilmer Defendants have been dismissed from this action with prejudice.

5.  On March 7, 2005, this Honorable Court entered an Order dismissing the Young and Gilmer Defendants from this action with prejudice. Plaintiffs did

2

not appeal that dismissal to the Alabama Supreme Court. *See* June 9, 2006 Order and Opinion of the Alabama Supreme Court at p. 3 (stating that "[t]he Gilmer and Young defendants have since been dismissed from the action, and the plaintiffs do not challenge the dismissal"). Thus, the Young and Gilmer Defendants are no longer a party to this action and the Plaintiffs cannot join them in this action.

6.      Because the Young and Gilmer Defendants are no longer a party to this action and the Plaintiffs cannot now join them in this action as they have been dismissed from this action with prejudice, Plaintiffs have failed to join a necessary and indispensable party. *See* Ala. R. Civ. P. 19(a); *see also Long v. Vielle*, 549 So. 2d 968, 972 (Ala. 1989) (explaining that it is the plaintiff's duty to join as a party anyone required to be joined).

7.      Therefore, any injunctive relief granted in the absence of the necessary Young and Gilmer Defendants would require reversal and would be void. *See Holland*, 566 So. 2d at 227; *see also Morris v. Owens*, 290 So. 2d 646 (Ala. 1974) (holding that trial proceedings in which boundary lines were fixed were void because a necessary and indispensable party had not been a party to the action); *City of Mobile v. Gulf Development Co.*, 171 So. 2d 247, 256-257 (Ala. 1965).

8.      Injunctive and/or equitable relief cannot be granted in the absence of the Young and Gilmer Defendants as they are necessary parties. The Young and

3

Gilmer Defendants' legally protected interests in the use of their property would be directly affected by a trial concerning the equitable and/or injunctive relief claims of Plaintiffs. Moreover, Plaintiffs cannot now join the Young and Gilmer Defendants because they have been dismissed from this action with prejudice. Accordingly, Plaintiffs may not seek injunctive and/or equitable relief from Oldcastle and their injunctive and/or equitable relief claims should be dismissed for failure to join a necessary and indispensable party.

WHEREFORE, premises considered, Oldcastle respectfully requests this Honorable Court to dismiss Plaintiffs' claims for injunctive relief because the Young and Gilmer Defendants are not parties to this action and cannot be made parties to this action as they were dismissed from this action with prejudice, although they are indispensable parties to any ruling affecting their legally protected rights.

RESPECTFULLY SUBMITTED this the 24th day of October, 2006.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

/s/ Matthew W. White
PHILLIP E. ADAMS, JR. (ADA025)
PATRICK C. (RICK) DAVIDSON (DAV025)
MATTHEW W. WHITE (WHI086)
Attorney for Defendant Oldcastle
P.O. Box 2069
Opelika, Alabama 36803-2069
(334) 745-6466

4

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 24th day of October, 2006:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL 36803-0409

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101

Stanley A. Martin, Esq.
P. O. Box 2526
Opelika, AL 36803-2526

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049

William F. Horsley, Esq.
Samford Denson
P. O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears, Esq.
Phears & Moldovan
3399 Peachtree Road, Ste. 2050
Atlanta, Georgia 30326

_/s/Matthew W. White_____
Of Counsel

5

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                        ※
          Plaintiff,                ※
                             ※

(v)                                        ※    CASE NO.: CV-02-85(a)
                                           ※
HANSON AGGREGATES SOUTHEAST,               ※
INC., et al.                               ※
          Defendant.                 ※


## LEE COUNTY'S RESPONSE TO OLDCASTLE'S
## MOTION TO DISMISS CLAIMS FOR INJUNCTIVE RELIEF

Lee County would show this Court that:

1.    Oldcastle is correct in that the Youngs and Gilmers were originally named as Defendant in this action. For that reason, their motion is due to be overruled as set out below.

2.    The Young and Gilmer Defendants were dismissed from this case in March 2005 by this Court, over the objection of the Plaintiff. Neither the Plaintiff nor Oldcastle appealed that dismissal. Obviously the Young and Gilmer Defendants are no longer parties to this action, but they can be rejoined to this litigation if necessary. In addition, their attorney, William F. Horsley, has requested copies of all pleadings and notices of all depositions. He also attends all hearings.

3.    Other factors for this Court to consider include the extent to which any Judgement rendered in their absence might be prejudicial to them or to those already parties. Clearly there would be no prejudice to the remaining parties when obviously none has been claimed by Oldcastle. Another question would be whether the Plaintiff would have an adequate Judgement and remedy if the action was dismissed. Since the safety of the citizens of Lee County and the motoring public is one of the crucial issues, the lack of an injunction would have a definite prejudicial effect on Lee County and the public.

4.    Rule 20 and Rule 21 make joinder of parties virtually unlimited and gives this Court ample powers to ensure that the trial is conducted in the least prejudicial manner.

5.    One option would be for the Young and Gilmer Defendants to intervene in the action. On June 19, 2006 the Plaintiff gave notice to the Young and Gilmer Defendants that the litigation was continuing and that the Plaintiff had no objection if they wished to again be parties in this action. Oldcastle failed to respond to this notice.

6.    Another option would be to determine whether the Young and Gilmer Defendants should be added as a party for any hearing on injunctive relief, if Oldcastle is determined to be a nuisance. This would be allowed by Rule 20, Rule 21 and Rule 42. They could be added as Plaintiff for any hearing on injunctive relief as one of the issues may be what restrictions, if any, including closure of the quarry, should be imposed. Misjoinder, under Rule 21, is not grounds for dismissal of any action.

*Exhibit 4*

7.  Based on their motion, Oldcastle now has no grounds to object to such a joinder. Wherefore, Oldcastle's Motion to Dismiss Claims for Injunctive Relief is due to be denied.


JAMES B. SPRAYBERRY (SPR008)


OF COUNSEL:


For All Plaintiffs:

LAW OFFICE OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100
Fax (334) 821-7101

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805
Fax (33) 834-8807

Stanley Martin
ATTORNEY AT LAW
400 Second Avenue
P.O. Box 2526
Opelika, Alabama 36803
(334) 749-4142

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

W. F. Horsley
SAMFORD & DENSON
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
PHEARS & MOLDOVAN
3399 Peachtree Road, Suite 2050
Atlanta, Georgia 30326

by U.S. Mail, postage pre-paid this the ___31___ day of ___Oct_____, 2006.

OF COUNSEL



ELECTRONICALLY FILED
11/9/2006 3:35 PM
CIRCUIT COURT OF
LEE COUNTY, ALABAMA
CORINNE T. HURST, CLERK

## IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,          )
                       )
       Plaintiffs,       )
                       )
VS.                     )     CASE NO. CV-02-85(A)
                       )
HANSON AGGREGATES    )
SOUTHEAST, INC., et al.,    )
                       )
       Defendants.    )

### DEFENDANT OLDCASTLE'S REPLY TO LEE COUNTY'S RESPONSE TO OLDCASTLE'S MOTION TO DISMISS CLAIMS FOR INJUNCTIVE RELIEF

Comes now the Defendant, Oldcastle Materials Southeast, Inc. ("Oldcastle"), by and through the undersigned counsel, and respectfully replies to Lee County's Response to Oldcastle's Motion to Dismiss Claims for Injunctive Relief.

The question before this Court is very simply what is the meaning of "with prejudice." In March 2005, the Young and Gilmer Defendants were dismissed from this action with prejudice. "'A dismissal of an action with prejudice constitutes and adjudication on the merits that *bars any subsequent litigation*.'" *Alfa Life Ins. Corp. v. Jackson*, 906 So. 2d 143, 154 (Ala. 2005) (emphasis added) (quoting *Calhoun v. Pennsylvania Nat'l Mutual Cas. Ins. Co.*, 676 So. 2d 1332, 1334 (Ala. Civ. App. 1996)). Because the Young and Gilmers were dismissed from this action with prejudice, Lee County is barred from litigating the same issues with the Young and Gilmer Defendants. *See id.* Therefore, no matter how liberal the joinder rules might be, the Young and Gilmers may not be brought back into this action. They have been dismissed from this action with prejudice. They may not be rejoined because subsequent litigation on the same cause is barred.

*Exhibit 5*

Although Plaintiffs are correct in their assertion that the Young and Gilmer Defendants' attorney has attended all of the hearings and received copies of all pleadings, his presence does not indicate that the Young and Gilmer are or may be made parties to this action again. This Court previously indicated that the Young and Gilmer Defendants would be a part of a trial on Lee County's claims when the case was originally scheduled in the fall of 2005. In all subsequent pleadings filed by the Young and Gilmer Defendants, they asserted that this Court lacked jurisdiction over them because of the dismissal with prejudice. The Defendants also argued lack of jurisdiction over the Young and Gilmer Defendants in their Petition for Writ of Mandamus arguing that this Court's order setting trial in the Fall of 2005 was erroneous. The Supreme Court of Alabama then acknowledged that the Young and Gilmer Defendants have indeed been dismissed from this action with prejudice and that the issue was not appealed. *See* June 9, 2006 Order and Opinion of the Alabama Supreme Court.

Moreover, Plaintiffs make a nonsensical argument that Oldcastle should have appealed the dismissal of the Young and Gilmer Defendants. Defendants requested dismissal from this action. It is both absurd and illogical to assert that Oldcastle would have or should have appealed a ruling that was in its favor.

Finally, Plaintiffs argue that the Young and Gilmer Defendants could be added as a party for any hearing on injunctive relief if Oldcastle is determined to be a nuisance. As stated numerous times above, the Young and Gilmer Defendants have been dismissed from this action with prejudice. Any litigation on this matter is barred. *See Alfa Life Ins. Corp.,*

2

906 So. 2d at 154. Despite the joinder rules, they may not be added as a party because they have already been dismissed from this action **with prejudice**. Furthermore, Plaintiffs' injunctive relief claims should be dismissed prior to trial. It would be extremely prejudicial to allow Plaintiffs to assert that injunctive relief could be granted in this matter to a jury when injunctive relief is not an available remedy for the Plaintiffs as all necessary parties are not joined in this action.

It is clearly Plaintiffs' responsibility to join as a party anyone required to be joined in an action. *See Long v. Vielle*, 549 So. 2d 968, 972 (Ala. 1989). The Young and Gilmer Defendants are necessary and indispensable parties to this action because they have property rights that will be affected by any injunctive relief granted in this case. *See Holland v. City of Alabaster*, 566 So. 2d 224 (Ala. 1990). Plaintiffs have offered no authority contradicting the controlling authority Oldcastle cited in its Motion to Dismiss evidencing the fact that the Young and Gilmer Defendants are necessary and indispensable parties to this matter. Plaintiffs cannot now rejoin the Young and Gilmer Defendants because the dismissal with prejudice bars any further litigation on this matter. Any injunctive relief granted in the absence of the Young and Gilmer Defendants would require a reversal and would be void. *See Holland*, 566 So. 2d at 227; *Morris v. Owens*, 290 So. 2d 646 (Ala. 1974). Therefore, Plaintiffs' injunctive relief claims are due to be dismissed.

Based on the foregoing and Oldcastle's previously submitted Motion to Dismiss, Oldcastle respectfully requests this Honorable Court to dismiss Plaintiffs' claims for injunctive relief because the Young and Gilmer Defendants are necessary, indispensable

3

parties to any ruling affecting their legally protected rights and they cannot be made

parties to this action as they were dismissed from this action with prejudice.

RESPECTFULLY SUBMITTED this the 9th day of November, 2006.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

/s/Matthew W. White
PHILLIP E. ADAMS, JR. (ADA025)
PATRICK C. (RICK) DAVIDSON (DAV025)
MATTHEW W. WHITE (WHI086)
Attorney for Defendant Oldcastle
P.O. Box 2069
Opelika, Alabama 36803-2069
(334) 745-6466

4

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 9th  day of November, 2006:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101

Stanley A. Martin, Esq.
P. O. Box 2526
Opelika, AL 36803-2526

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049

William F. Horsley, Esq.
Samford Denson
P. O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears, Esq.
Phears & Moldovan
3399 Peachtree Road, Ste. 2050
Atlanta, Georgia 30326


      /s/ Matthew W. White
Of Counsel

5

ELECTRONICALLY FILED
12/5/2006 11:54 AM
CIRCUIT COURT OF
LEE COUNTY, ALABAMA
CORINNE T. HURST, CLERK

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )    Civil Action No. CV-20 02-85-A |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC., et al., | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT OLDCASTLE'S MOTION TO DISMISS CLAIMS FOR INJUNCTIVE RELIEF

Plaintiffs supplementally respond to Oldcastle's Motion to Dismiss Claims for Injunctive Relief, as requested by the Court in its order of November 29, 2006, as follows:

1. On October 24, 2006, Oldcastle filed a Motion to Dismiss Plaintiffs' injunctive relief claims on the basis that the Gilmer and Young families were dismissed from the case and are necessary and indispensable parties. Oldcastle claims that even though Plaintiffs did join these families (the landowners), and even though Plaintiffs objected to the dismissal of the Gilmer and Young families, because the Gilmers and Youngs are indispensable parties, their absence compels denial of any injunctive relief against Oldcastle.

2. Plaintiffs responded initially on October 31, 2006, to which Defendant Oldcastle replied on November 9, 2006.

3. During the hearing on November 20, 2006, the Court advised the Plaintiffs to submit supplemental briefs within 14 days. This Response is therefore filed in support of the opposition to Oldcastle's Motion.

4. In considering this issue, the Court should realize that, in accordance with the Plaintiffs' Pretrial Contentions for the January, 2007 trial, the Plaintiffs seek (1) money damages from Oldcastle only, and (2) to enjoin Oldcastle only from further operation of the quarry located south of Highway 169, south of Opelika in Lee County, Alabama. Plaintiffs have not asked to enjoin the Gilmers or the Youngs. Plaintiffs seek no relief from them.

Exhibit 6

I.    **BACKGROUND**

      Plaintiffs filed this suit in 2002. Plaintiffs at that time sought to enjoin the operation of the quarry. The Gilmers and the Youngs were joined in the lawsuit in approximately 2003. They participated in the first trial of this case in August-September, 2004. Thereafter, and despite knowing that the Plaintiffs fully intended to continue with their efforts to shut down the quarry, the Gilmers and Youngs moved this Court to dismiss them from the case. Over Plaintiffs' objection, the Court entered an Order dismissing the Gilmers and Youngs at their request. Therefore, it is undisputed (1) that the Plaintiffs did in fact join the Gilmers and Youngs (all the landowners of the quarry lands) as Defendants, (2) that the Gilmers and Youngs themselves, and not the Plaintiffs, procured their dismissal from the suit over Plaintiffs' objections.

      Since that time, the Gilmers' and Youngs' attorneys have received every pleading, and have been kept advised of the progress on this suit. In fact, their attorney still attends all of the hearings and status conferences held in this matter. Moreover, on or about June 19, 2006, the Plaintiffs served upon the Gilmers' and Youngs' attorney a pleading styled "Plaintiffs' Notice to Young and Gilmer Defendants". That pleading stated:

>       "The Plaintiffs hereby give notice to the Young and Gilmer Defendants, through their attorney of record, Bill Horsley, that although the Circuit Court of Lee County dismissed them from this action, the Plaintiffs intend to have further trials in this matter designed with the purpose in mind and intent of obtaining injunctive relief to shut down the quarry.
>
>       "The rights of the Youngs and the Gilmers may be affected by the proceedings in this matter, and will be affected by the proceedings in any injunction phase of any trial or hearing in this matter, the purpose of which is designed to enjoin any further quarry operations on the Young and Gilmer property in Lee County where the Oldcastle quarry is currently in operation.
>
>       "In addition, as you know, your attorneys have attended every deposition, every hearing, and have participated in the appeal of this underlying action in the Alabama Supreme Court, including the mandamus action. Accordingly, you have actual notice of every proceeding that has occurred to date.

"You are hereby given notice of these allegations and the Plaintiffs' intent. If you choose to intervene in this action, the Plaintiffs have no objection."

After the Supreme Court reversed the case for retrial, the Plaintiffs served notice on all the Defendants, including the Gilmers and Youngs, that they intended to attempt to enjoin any further operation of the quarry based upon events that occurred after the August-September 2004 trial. Notwithstanding, the Gilmers and the Youngs have not formally intervened but have instead sent their attorney to all the status conferences and court hearings, as mentioned above. It is apparent that the Gilmers and Youngs do not consider this litigation sufficiently injurious to their rights to require their intervention, even after the Supreme Court reversed the jury's verdict and remanded this matter for retrial. Accordingly, it should weigh heavily in the Court's consideration of this matter that the very parties that Oldcastle claims to be necessary and indispensable have voluntarily chosen not to intervene to protect their interests even though they clearly have the right to intervene under Ala. R. Civ. P. 24(a) "Intervention of right,"[1] or 24(b) "Permissive intervention."[2]

---

[1] ARCP 24(a) provides: "Upon timely application, anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

[2] ARCP 24(b) provides: "Upon timely application anyone may be permitted to intervene in an action: . . ., or (2) when an applicants' claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

## II.    ARGUMENT

During the hearing on November 20, 2006, the Court asked the parties to determine if there were a case where the defendant has been dismissed and then was rejoined as a party. The Plaintiffs have not found a case answering this question either way. That is, Plaintiffs have not found such a case and know of no case that says they can or cannot be re-joined later. Instead, Plaintiffs have located a number of decisions that, Plaintiffs aver, are controlling on this question, though not on all-fours. These cases, and Rule 19, are discussed in detail below.

### A.    *Ross v. Luton*, 456 So. 2d 249 (Ala. 1984).

The seminal Alabama case on Rule 19, which virtually all others quote and interpret, is *Ross v. Luton*, 456 So. 2d 249 (Ala. 1984). *Ross* is also very similar and we contend controlling. There, defendant Ross bought land in order to install a well and sell water to Smiths Water Authority in Russell County. When Ross began pumping, he dried up other landowners' wells, and they sued for an injunction for private nuisance. The Circuit Court enjoined the pumping because it in fact dried up the Plaintiffs' wells. Afterward, the parties entered into a settlement agreement that left the injunction intact. After allegedly breaching the settlement agreement, the Plaintiffs sued to enforce the injunction. The Circuit Court did in fact enforce the injunction preventing Ross from further pumping and selling of the water to Smiths Water Authority. Ross defended alleging that Smiths was a necessary and indispensable party. *Id.* at 253, 256-58.

The Supreme Court held that Smiths "by entering into a contract to purchase water from Ross, has a legally protected interest relating to the subject matter of this case and is so situated that the disposition of this case in its absence may as a practical matter impair or impede its ability to protect that interest. Smiths is a party that should have been joined if feasible under Rule 19(a), ...." *Id.* at 256. The Court went further, though, to the second part of the indispensable-party analysis, and found that Smiths was not indispensable

4

because "Ross and Smiths, as a result of the contract between them, share the same interests, and there is no reason to believe that either parties to this case or Smiths would be prejudiced if the action proceeded with the present array." *Id.* at 257 (citations omitted).

Importantly, the Court quoted Rule 19, and enunciated the well-known analysis for determining if a party is necessary and indispensable or whether the case can proceed without the party.  Its analysis included the following, all of which apply to our case precisely:

> Ross alleges that Smiths and Phenix City have interests relating to the subject of the action and are so situated that the disposition of the action in their absence may as a practical matter impair or impede their ability to protect their interests.  "The 'interest relating to the subject matter of the action' that makes an absent person a party needed for just adjudication must be a legally protected interest, not merely a financial interest or interest of convenience." 3A J. Moore & J. Lucas, *Moore's Federal Practice* sec. 19.07-1[2] at 19-129 (2d ed. 1982); *Realty Growth Investors v. Commercial & Industrial Bank of Memphis, Tennessee*, 370 So. 2d 297, 304 (Ala. Civ. App.), *cert. denied*, 370 So. 2d 306 (Ala. 1979).
>
> Phenix City, as the operator of a competing utility system, has merely a financial interest relating to the subject matter of this case and is not a party that should have been joined under Rule 19(a).  Smiths, by entering into a contract to purchase water from Ross, has a legally protected interest relating to the subject matter of this case and is so situated that the disposition of this case in its absence may as a practical matter impair or impede  its ability to protect that interest. Smiths is a party that should have been joined if feasible under Rule 19(a), so we must proceed with the analysis required by Rule 19 and determine whether Smiths is an indispensable party under Rule 19(b).
>
> The determination of whether a party is indispensable under Rule 19(b) is based on equitable and pragmatic considerations, *Toney v. White* 476 F.2d 203, 207 (5th Cir. 1973), and includes the examination of the following factors provided in the rule:
>
>> "first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *Mead Corp. [v. City of Birmingham,]* 350 So.2d [419,] at 421-22 [(Ala. 1977)].

*Ross v. Luton*, 456 So. 2d at 257.

5

The Court reviewed those facts, which are remarkably analogous to ours, and concluded that Smiths was not an indispensable party because (1) Ross and Smiths had similar interests, (2) Ross was already defending, and (3) Smiths could intervene if it feared otherwise:

> "[E]ven a party whose interest may be affected by a court action may not be indispensable if its interest is adequately represented by a party already before the court." *H.H. Robertson Co. v. Lumbermen's Mutual Casualty Co.*, 94 F.R.D. 578, 580 (W.D. Pa. 1982). Ross and Smiths, as a result of the contract between them, share the same interests, and there is no reason to believe that either the parties to this case or Smiths would be prejudiced if the action proceeded with the present array. *Nationwide Auto Transporters, Inc. v. Morgan Driveaway, Inc.*, 441 F. Supp. 755, 757 (S.D.N.Y. 1977). The interests of Smiths are adequately represented by Ross, and if Smiths feared otherwise, it could easily intervene. ... There is no reason why the trial court can not give meaningful relief to the parties in the absence of Smiths.

*Ross v. Luton*, 456 So. 2d at 256-58 (citations omitted at end).

In our case as in *Ross*, the complaint is that the pumping of water by one party dries up the land of others, to the others' damage. Further, in *Ross* the trial court enjoined the pumper, and the pumper argued that the person whom it was going to provide a financial benefit to, Smiths, should have been joined but was not. Here, similarly, Oldcastle is arguing that the persons that will receive a financial benefit from its operation of the quarry, the Gilmers and Youngs, should be parties but are not. In *Ross*, the financial interest of the non-party did not make the non-party indispensable. Here, the financial interest of the Gilmers and Youngs cannot make them indispensable. As Smiths was in *Ross*, the Gilmers and Youngs may be necessary parties,[3] but they are certainly not indispensable. Just as in *Ross*, the interests of the Gilmers and Youngs are adequately and completely represented by Oldcastle, whose interest is virtually identical. Moreover, and as importantly given that the current litigation seeks to prove new facts and claims of

---

[3] Plaintiffs do not concede that the Gilmers and Youngs are even parties who should be joined if feasible, as complete relief can be afforded without them. No relief is sought against them; the relief is to enjoin Oldcastle's operation. If enjoined, Oldcastle will have to close, but another quarry may be able to mine the lands in a non-injurious manner.

6

nuisance not presented in the first trial, the Gilmers and Youngs have the right to intervene if they think the quarry is not representing their interests adequately. Yet, despite clear notice of the case and the Plaintiffs' intentions, they have chosen not to intervene. This fact alone shows conclusively that their interests are adequately represented by Oldcastle.

## B.    Rule 19(a) Analysis.

This analysis must begin at Rule 19(a), "Persons to be joined if feasible." Rule 19(a) provides that a person who is subject to jurisdiction of the court shall be joined as a party in the action if "(2) the person claims an interest relating tho the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect hat interest . . . . " Will the Gilmers' and Youngs' absence impair or impede their ability to protect their interests? No. The injunctive relief sought will not occur until after the January 2007 trial, during a hearing on the request for injunctive relief, but if and only if the jury in January finds that the quarry is a nuisance or that it is operated negligently. The jury's other job, to determine plaintiffs' damages, does not affect the Gilmers or Youngs in any way. Therefore, at least at this stage of this case, the Gilmers and Youngs are not persons to be joined if feasible, and no further analysis is even required.

Even if the Court disagrees and thinks the Gilmers and Youngs should be joined if feasible, the Court certainly can in fact join them as parties at this point. Their attorney has attended all hearings, has received all pleadings, and participated in the first trial. Therefore, although Plaintiffs do not think it necessary to join them, the Court certainly can if it thinks proper. This is because, contrary to the Defendant's assertion, the January 2007 trial is about a lot more than that which had occurred by August of 2004. The claims asserted were not litigated in the first action, and the dismissal of the Gilmers and Youngs does not operate as a bar to their joinder in the case that now exists. To think otherwise

would mean that once dismissed with prejudice based on events that had occurred before a certain time, a party could never again be sued for nuisance or negligence based on subsequent events. Obviously, that is not the law of the state and no case or authority so holds.

In this respect, the Court should also consider that the Gilmers and Youngs evidently believe either (1) that their interests are not sufficiently affected by this trial to warrant their intervention despite notice, or (2) that the quarry is adequately representing their interests.

### C.    Rule 19(b) Analysis.

Assuming the Court thinks the Gilmers and Youngs should be joined if feasible, the next question under Rule 19(b), as explained by *Ross*, is to determine whether the case can proceed without joining them as parties. This is a determination whether the parties are indispensable. An indispensable-party analysis requires more analysis than just finding that the person's interests may be impaired or impeded in his absence. As explained by *Ross*, once the court determines that a person should be joined if feasible, the next step is to determine, "based on equitable and pragmatic considerations"

> "first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *Mead Corp.* [*v. City of Birmingham*,] 350 So.2d [419,] at 421-22 [(Ala. 1977)].

*Ross*, 456 So. 2d at 257 (essentially quoting Rule 19(b)). We turn now to those four factors.

### 1.    Will a Judgment rendered without the Gilmers and Youngs be Prejudicial to them?

No. The judgment to be rendered in this trial is whether Oldcastle, not the Gilmers and Youngs, are operating the quarry in a negligent manner or whether its operation

8

constitutes a public or private nuisance. The Gilmers and Youngs will not be affected by the jury's decision. The jury will also decide what damages, if any Lee County suffered, and whether to award damages against the quarry. The jury will not award damages against the Gilmers or the Youngs. Therefore, the judgment will not be prejudicial to their interests.

### 2.    Even if prejudicial to them, can the Court fashion relief to avoid the prejudice?

Yes. Even if the Court thinks the Gilmers and Youngs might be prejudiced by the verdict, the fact is that the Gilmers and Youngs will not be affected until and unless the Court later enjoins the operation in some manner. Then and only then will the Gilmers' and Youngs' financial interests be affected. Accordingly, the Court can easily join them after the verdict (to see whether the need for an injunction even exists). Alternatively, the Court could join them now. Either way, their interests, if any, can be protected.

Although Plaintiffs do not think the Gilmers and Youngs should be joined, they ask the Court to enter an order joining them at this juncture, just to be sure they cannot claim prejudice later.[4] That the Court has jurisdiction over them and that the venue is proper cannot reasonably be disputed. And, if disputed, then the next two questions are answered even more fully in Plaintiffs' favor.

### 3.    Will a Judgment without the Gilmers and Youngs be adequate?

Yes. Here, the judgment sought is that the quarry is negligently operated or that its operation is a nuisance. The verdict will be complete and will afford the Plaintiffs and the quarry with an adequate and enforceable right regardless whether the Gilmers and Youngs are sitting at counsel table. In fact, just what would the Gilmers and Youngs seek to prove

---

[4] Plaintiffs do not consent to nor do they believe that any continuance should be granted in this event, as the Gilmers and Youngs attorney has been fully advised of the progress of these proceedings. Moreover, they have had the clear right to intervene all along, and have chosen not to do so, so that continuing the case would only hurt the Plaintiffs while, not continuing it will not hurt the Gilmers and Youngs.

9

that the quarry will not seek to prove? This factor clearly favors the Plaintiffs and nonjoinder of the Gilmers and Youngs, at least not until after the January trial.

### 4. Will the Plaintiffs have an adequate remedy if the case is dismissed for the nonjoinder of the Gilmers and the Youngs?

No. There is no doubt, if the Plaintiffs are correct and that the quarry operation is causing a serious threat to the safety of the public and to numerous landowners not party to the litigation who have suffered hundreds of sinkholes and piping holes to form on their properties, that dismissing the action will leave the Plaintiffs without any remedy, let alone an adequate remedy. The safety of the public, the destruction of public property, and the closure of public roads due to the quarry's misconduct are serious issues that must be adjudicated. Dismissal would purely and simply be a windfall to the quarry and would effectively deny the public, through its representative, Lee County, the right to adjudicate whether the quarry operation is causing the sinkholes, the closure of the roads, the destruction of the Spring Villa park, the sinkholes to form on private property, the clear and certain dangers to the public by endangerment of the 115,000 volt power line (as attested to in the depositions recently taken of the Alabama Electric Cooperative representatives) and by endangerment of the integrity of the Dixie Pipeline (by the 25' sinkhole that formed directly under the pipeline, which can endanger the public as attested by the Dixie representative whose deposition was recently taken). There is no means to avoid this denial of the plaintiffs' remedy if the court dismisses the action. Therefore, this factor, more than any other, favors not dismissing the case and finding that the Gilmers and Youngs are not indispensable parties.

### D. *Long v. Vielle*, 549 So. 2d 968 (Ala. 1989).

A second useful case is *Long v. Vielle*, 549 So. 2d 968 (Ala. 1989). The seller (Athalie Long) and buyer (Vielle) of a lot were litigating whether to reform a deed to include that

10

lot in a conveyance. As it turned out, the Plaintiff's daughter-in-law, Sharon Long, had

bought the lot at a tax sale. Sharon Long was not made a party to the suit. After adverse

judgment, Athalie Long argued that the court's failure to join Sharon Long as an

indispensable party deprived the court of jurisdiction. The Alabama Supreme Court,

extending *Ross'* logic, disagreed, holding:

> The law regarding indispensable parties is quite clear, but it is not inflexible.
> In *Moody v. Moody*, 339 So.2d 1030, 1034 (Ala. Civ. App.), *cert denied*, 339 So.
> 2d 1035 (Ala. 1976), the Court of Civil Appeals described one instance of
> flexibility:
>
>> "A close examination of Rule 19, ARCP, implies that a person
>> should be joined as a party, in the first instance, if he is absent
>> and, further, that the failure to so join is prejudicial to such
>> person. In this instance, [the non-party] was not absent within
>> the contemplation of the rule and to this court was not
>> prejudiced by the failure to be added as a party.
>>
>> "According to Moore, *Moore's Federal Practice* sec 0.411(6) 2ND
>> Ed. (1974), at 1552:
>>
>> " 'If a non-party who thus participates in litigation has an
>> interest sufficiently close to the subject matter in litigation, and
>> has adequate opportunity to litigate in support of or in defense
>> against the cause of action own which the suit is based, the
>> policies . . . require that the participating non-party should be
>> bound by the resulting judgment to the same extent as though
>> he were a party to the action ....' "
>
> In the case at bar, the evidence is undisputed that Sharon Long [the non-
> party] purchased the property from the State of Alabama for back taxes. It
> is also without dispute that Sharon Long lived directly across the street from
> the property in dispute. Furthermore at all times subsequent to 1979, Sharon
> Long had knowledge of Vielle's claim to the property. In fact, Sharon Long
> was present and actually testified at the trial of this matter. Accordingly, she
> had ample opportunity to be heard on issues pertinent to a determination of
> proper title to the property n question. Therefore, Sharon Long is not within
> that class of parties who are guaranteed protection by Rule 19. . . . Sharon
> Long was not "absent" within the contemplation of Rule 19(a), Ala. R. Civ.
> P.

*Long v. Vielle*, 549 So. 2d 968, 973 (Ala. 1989). The logic of Long is compelling in our case.

Here, the Gilmers and the Youngs had actual knowledge by being sued in the case, that the

Plaintiffs intend to shut down the quarry. Mr. Gilmer testified at the trial. Many of the

Gilmers live on or close to the quarry property. Moreover, at the time they moved for

11

summary judgment, they knew the Plaintiffs intended to continue their efforts to shut down the quarry based on events subsequent to the first trial. Notwithstanding, they willingly caused this court to dismiss them from the action. Even so, the Plaintiffs gave notice of their intent to shut down the quarry to the Gilmers and Youngs through their attorney (*see* June 19, 2006, Notice To Gilmer and Young Defendants), and have continued to give all pleadings to their attorney, who appears and represents them at all hearings subsequent to the dismissal. Under these circumstances, as in *Long*, the Gilmers and the Youngs cannot be said to be absent. They have full knowledge of the litigation and have willfully chosen to ignore it. They have done so, almost certainly, on the belief that the quarry will protect their rights. Were they not to believe this, they have the absolute right to intervene-which they have chosen not to do.[5]

### E. *J.R. McClenney & Son, Inc. v. Reimer*, 435 So. 2d 50 (Ala. 1983).

This case dealt with a boundary line dispute. The judge ordered a survey, and entered a judgment contrary to the defendant. After the appeal time passed, the defendant moved to dismiss the case on the basis that its mortgagee was not joined and was an indispensable party. Although not on point, the Supreme's Court's handling of that claim is instructive. It affirmed the trial court's denial of the motion to dismiss, stating:

> As the trial court noted, should the bank feel its interests to have been prejudiced by its not having ben made a party, it may assert any claims it has by an independent action.

> There is no prescribed formula to be mechanically applied in every case to determine whether a party is an indispensable party or merely a proper or necessary one. This is a question to be decided in the context of the particular case. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S. Ct. 733, 19 L.Ed.2d 936 (1968). The issue is one to be decided by

---

[5] Very interestingly, the Gilmers and Youngs were even served with Oldcastle's Motion to Dismiss Claims for Injunctive Relief on October 24, 2006, yet they have still chosen not to intervene. Under these circumstances, it cannot possibly be said that they are absent from this litigation or that the quarry is not adequately representing their interests.

applying equitable principles and, under the circumstances of this case, it would be inequitable to vacate this judgment on motion of the defendant, which has so blatantly ignored the rules under which its mortgagee bank could have so easily been made a party.

*J.R. McClenney & Son, Inc. v. Reimer*, 435 So. 2d at 52.

As in *J.R. McClenney & Son*, it would simply be inequitable to dismiss this case, especially given that the Gilmers and Youngs have voluntarily chosen to ignore this trial and have clearly decided not to intervene, when they know they can.

### E.  *Moody v. Moody*, 339 So. 2d 1030 (Ala. 1976).

This case is interesting and raises another reason that the Gilmers and Youngs' non-joinder should not cause dismissal of the case. In addition to the obvious (that they can be made parties if needed), their voluntary decision not to join, despite full knowledge of the proceedings and participation by their attorney in all pretrial matters counsels against dismissal. This is shown by the somewhat analogous case of *Moody v. Moody*, 339 So. 2d 1030 (Ala. 1976). In that case, an attorney claimed an interest in a cabin on the realty that was subject to litigation. He even represented the defendant in the dispute. He did not join. The Supreme Court made this relevant point:

Piel [the attorney] cannot claim lack of notice with respect to the disposition of the claimed interest in the cabin. He has represented appellant Moody throughout the proceedings below. Nor can he claim that he has not been heard. Indeed, he was physically present at the two principal hearings ... in which matters pertinent to a determination of proper title to the cabin and lot were heard. Moreover, Peil himself gave testimony at the December 12, 1975, hearing. A close examination of Rule 19, ARCP, implies that a person should be joined as a party, in the first instance, if he is absent and, further, that the failure to so join is prejudicial to such person. In this instance, Piel was not absent within the contemplation of the rule and to this court was not prejudiced by the failure to be added as a party.

According to Moore, 1B Moore's Federal Practice s 0.411(6) 2nd Ed. (1974) at 1552:

"If a non-party who thus participates in litigation has an interest sufficiently close to the matter in litigation, and has adequate opportunity to litigate in support of or in defense against the cause of action on which the suit is based, the

13

> policies . . . require that the participating non-party should be bound by the resulting judgment to the same extent as though he were a party to the action. . . . "
>
> Thus, the fact that one has not been technically joined as a party of record does not preclude his being bound by a judgment, if he had a sufficient interest in the suit and participated in and controlled litigation.

*Moody v. Moody*, 339 So. 2d at 1033-34. So, as in *Moody*, the Gilmers and Youngs have interests sufficiently close to this litigation, and they have had adequate opportunity to litigate in favor of the quarry and against the Plaintiffs' claims. Therefore, they are not indispensable parties.

**F.    *Randall v. Water Works & Sewer Board of the City of Birmingham*, 885 So. 2d 757 (Ala. 2004).**

In this rather convoluted dispute over the validity of an ordinance affecting the Water Works Board, the City of Birmingham, which had an interest, chose not to intervene. Here, the Gilmers and Youngs chose not to intervene. In *Randall*, the Supreme Court said: "If the Birmingham City Council wished to intervene in this action, it certainly had the option to seek to do so." Similarly, if the Gilmers and Youngs want to intervene, they can. Their failure to do so does not mean the case must be dismissed under Rule 19(b), just as the City of Birmingham's failure to join did not require dismissal of the *Randall* litigation.

**III.    CONCLUSION**

As we have shown, there is no valid reason to believe that the Gilmers and Youngs must be joined at this stage of the litigation. They have the right to intervene. They have been placed on notice of the proceeding, have received all pleadings, have an attorney representing them who has monitored the case, and will not be directly affected by the January 2007 jury's verdict. They are not indispensable parties, and even if they are, their interests are being adequately protected by Oldcastle, as shown by their decision not to intervene and allow the quarry to protect whatever interests they have.

14

Oldcastle's motion to dismiss should be denied.

Respectfully submitted this the 4[h] day of December, 2006.

s/ C E Vercelli, Jr.
**Charles E. Vercelli, Jr.**
One of the Attorneys for Plaintiff Lee County

**OF COUNSEL:**

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805
cvercelli@vercelli-law.com

James B. Sprayberry
Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100
jsprayberry-spraylaw@charter.net

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Stanley A. Martin
P. O. Box 2526
Opelika, AL 36805-2526
334-749-4142
smartin@stanmartinlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been e-filed with the Circuit Court of Lee County, Alabama, and has been served upon:

James A. Byram, Jr.
Paul A. Clark
BALCH & BINGHAM, LLP
P.O. Box 78
Montgomery, AL 36101

Phillip E. Adams, Jr.
Matthew W. White
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

H. Wayne Phears
PHEARS & MOLDOVAN
Suite 2050
3399 Peachtree Road
Atlanta, GA 30326

W. F. Horsley
SAMFORD & DENSON, LLP
P.O. Box 2345
Opelika, AL 36803-2345

via notice of electronic filing, this the 4[h] day of December, 2006.

s/ C E Vercelli, Jr.
OF COUNSEL

155-00/Ps' Resp-OC-Mot-Dis-Claims-Inj-Relief.6.wpd

15



12/22/2006 2:33 PM
CIRCUIT COURT OF
LEE COUNTY, ALABAMA
CORINNE T. HURST, CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| LEE COUNTY., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. CV 02-085-A |
| | * | |
| OLDCASTLE, et al., | * | |
| | * | |
| Defendants. | * | |

## Order

A pre-trial conference was held on today's date. Attorneys for the parties appeared regarding the motion to dismiss on the issue of injunctive relief filed by Oldcastle. Oldcastle argues that since the property owners are not parties, the Court cannot proceed with injunctive relief. The Court is of the opinion that this issue is not ripe. It is the Court's plan to try this matter before a jury. The jury will then determine whether or not there is a nuisance. If a jury determines that there is a nuisance, then the Court, at another hearing will address the issue of injunctive relief. Until such time as there is a finding that the operation of Oldcastle is a nuisance the issues raised by Oldcastle in their motion to dismiss are not yet before the Court. Furthermore, the parties are reminded that at the last trial the jury found that the quarry was not a nuisance therefore; the issue of injunctive relief was never reached. Furthermore, since Oldcastle is asserting this motion essentially on behalf of the owners of the real estate, the Gilmer and Young families, the Court is of the opinion that Oldcastle, possibly, does not have standing to raise this issue. Oldcastle cannot demonstrate how it will be damaged if the Gilmer and Young families are not joined.

The Defense motion to have the trial stayed to allow a permissive appeal or writ of mandamus to be filed is denied. However, if a writ of mandamus is filed, the Court will await the ruling of the Alabama Supreme Court to determine whether or not this matter should be stayed.

The issue of whether or not witness, Pete Andersen, should be stricken as an expert is set for a hearing on January 5, 2007 at 1:30 PM. The parties are to review the attached pre-trial order. The motion for summary judgment remains set for January 12, 2007 at 8:30 AM in courtroom #3 of the Lee County Justice Center.

The Clerk of Court is ordered to mail by ordinary mail or deliver a copy of this Order to the following:

*Exhibit 7*

Hon. Jimmy Sprayberry
P O Box 2429
Auburn, AL 36831-2429

Hon. James Byram, Jr.
Hon. Paul Clark
P O Box 78
Montgomery, AL 36101

Hon. Guy Gunter
P O Box 409
Opelika, AL 36803-0409

Patricia Campbell
2311 Gateway Drive
Opelika, Alabama 36801

Hon. Stan Martin
P O Box 2526
Opelika, AL 36803-2526

Hon. Charles Vercelli, Jr.
1019 S. Perry Street
Montgomery, AL 36104

Hon. W. F. Horsley
P O Box 2345
Opelika, AL 36803-2345

Hon. Phillip E. Adams, Jr.
P O Box 2069
Opelika, AL 36803-2069

Hon. Corrine Hurst
2311 Gateway Drive
Opelika, AL 36801

Hon. H. Wayne Phears
4725 Peachtree Corner Circle, Suite 375
Norcross, GA 30092-3000

DONE this the 20th day of December, 2006.

*s/ Jacob A. Walker, III*

Jacob A. Walker, III
Circuit Judge