IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

KEN and NAOMI SCHWIEKER,                 )
                                         )
          Plaintiffs,                    )
                                         )
v.                                       )        Case No.: 3:06-CV-838
                                         )
OLDCASTLE MATERIALS SOUTHEAST,           )
INC.,                                    )
                                         )
          Defendant.                     )

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Ken and Naomi Schwieker move this Honorable Court to enter partial summary judgment in their favor. Plaintiffs ask the Court to enter an order that the Defendant is liable to the Plaintiffs for the damages caused by continuing sinkhole formation on their property. In essence, this Motion is based upon a prior jury verdict returned on September 4, 2004, in which a jury in Lee County, Alabama, found Defendant Oldcastle liable for causing sinkholes to form on the Plaintiffs' property. That jury awarded $150,000 in damages ($75,000 of which was against this Defendant, Oldcastle). In further support of this Motion, the Plaintiffs say:

## STATEMENT OF UNDISPUTED FACTS[1]

1.      Plaintiffs filed suit in Lee County Circuit Court against the Defendant Hanson.

---

[1] This case is unusual in that it is essentially a continuation of litigation filed in 2002 in the Lee County Circuit Court. That case was tried in part in August-September of 2004. Parts of that case were appealed to the Alabama Supreme Court. The Alabama Supreme Court issued an opinion on June 9, 2006. A copy of that opinion is attached as Exhibit 1. Because the facts are outlined well in that opinion, and are essentially undisputed as stated in that opinion, many of the factual references in this Motion for Partial Summary Judgment will not be supported by reference to depositions or trial testimony. Instead, this Supreme Court Opinion outlines the facts in a much more concise manner than would be possible were we to attach a discrete piece of evidence for every fact alleged. Again, the facts alleged to be undisputed are just that, and we do not believe Oldcastle will object to any of these statements. If they do, we can then easily attach the supporting documents.

2.      The Plaintiffs' property is on Spring Villa Road north-northeast of the Defendant's limestone quarry.  The quarry is south of Opelika near Spring Villa in Lee County.  *See* Map of Lee County attached as Exh. 2 (the Schwieker property is on the "la" in "Villa" on Lee Road 148 on this map).  On this map, part of the City of Opelika is shown in the upper left of the map, as is I-85.  The Schwieker' lands lie on the north side of Lee Road 148, immediately west of and including parts of Little Uchee Creek where the Creek crosses Spring Villa Road (aka Lee Road 148).  The quarry is located in the triangle between State Hwy 169 (running NW-SE), Lee Road 166 (running N-S) and Lee Road 147 (running W-E).  The quarry is right under the word "church" in "Shiloh Church".

3.      Defendant Oldcastle, as part of its operation of the limestone quarry, has for several years been pumping increasingly large amounts of water from the groundwater. This pumping has caused the depression of the groundwater table throughout the area and, more particularly, including the property belonging to the Plaintiffs.  This is attested by Plaintiffs' geologists/hydro geologists, Woody Hicks and Tom Aley.  Mr. Aley has been deposed 6 times and Mr. Hicks has been deposed 3 times.  In addition, each testified at the 2004 trial.  Rather than attach their depositions (several hundred pages each), we attach their trial testimony, as follows:  Exhibit 3 which includes the 2004 Trial Transcript Vol. 8 (see Hicks testimony at pp. 1708-end; Vol. 9 (Hicks testimony at pp. 1801-1886); Vol. 10 (Aley testimony at pp. 2171-2209); Vol. 11 (Aley testimony entire volume, pp. 2210-2349); Vol. 12 (Aley testimony pp. 2350-2562). [2]

---

[2]

We will attempt to e-file these transcripts, which are in adobe/.pdf format.  However, they are large files and probably will not be accepted by the court's computers.  If not, they will be copied and filed in the traditional manner on Friday, September 7, 2007.  Defendant already has these exhibits, and in light of their size, unless the Court or the Defendant's attorneys object, they will not be mailed to the Defendant.

4.      As a result of the groundwater withdrawals, the Plaintiffs' land has suffered the formation of numerous sinkholes. *Id.*

5.      During the August, 2004-September, 2004 trial of the Defendant Oldcastle was adjudicated by the jury to be liable for causing damages to the Schwiekers as a result of the formation of sinkholes on their property, because that was the Schwieker' only claim in that trial. At that time, the Schwiekers had only about a dozen relatively small sinkholes on their land. *See* Mr. Schwieker's trial testimony, Exhibit 4 attached hereto (Trial transcript Vol. 14, pp. 2913 to end, and Vol 15 through page 3008).

6.      The jury returned a verdict of $75,000.00 against Defendant Oldcastle and specifically found that Oldcastle was liable for causing the sinkholes. Oldcastle did not appeal and paid the judgment. *See* Exhibit 5 (page 3 of the Jury Verdicts on Case Action Summary); Exhibit 6 (Oldcastle's Notice of Cross Appeal which did not include the Schwieker verdict).

7.      Since the trial in 2004, the Schwiekers' allege that their farm land has suffered the collapse of numerous very large sinkholes, many of which have formed by the merging of smaller sinkholes into larger ones. Defendant's attorneys and witnesses have seen all or most of these new sinkholes. The December 10, 2007, trial of this case by this Court deals with the Schwiekers' damages for the new sinkholes. There are now somewhere in the vicinity of 75 sinkholes (depending on how you count the sinkholes that merged into others). Moreover, whole areas of their property, particularly along the Little Uchee Creek and the tributary to the Little Uchee Creek, are collapsing into giant sinkholes, causing destruction of the property belonging to the Plaintiffs. This destruction includes the falling and death of large, old healthy trees worth thousands of dollars in raw timber.

3

8.      Plaintiffs allege in this case that Defendant Oldcastle has specific knowledge that these damages are continuing, and has done nothing to stop the damages despite the jury's verdict adjudicating it to be liable for causing sinkholes to the Schwiekers' land.

9.      Plaintiffs allege that Defendant Oldcastle's conduct in continuing its operation, and in fact in continuing the operation with ever greater volumes of water pumped out of the groundwater system, has caused extreme damage to the Schwiekers' property, as well as substantial damage to the surrounding landowners' property. In point of fact, Spring Villa Road was forced to close because of the collapse of the roadway into numerous sinkholes. The pumping has caused septic systems to fail, has endangered the lives of innocent people by potential electrocution from a 115,000 volt power line, and threatens to rupture the high-pressure West-to-East LP Gas pipeline known as the Dixie Pipeline.

10.     Defendant Oldcastle has with malice and with conscious and reckless disregard of the public's and the Schwiekers' rights, continued to operate its quarry with no regard for the safety of the public, no regard for the Schwiekers' land or the damages being caused to the Schwiekers, and with no regard for the serious damages being imposed on other landowners who are not plaintiffs in this litigation.

11.     Plaintiffs allege that the Schwiekers have suffered mental and emotional distress, damages to their land, and have been forced to incur other costs associated with the sinkhole formation caused by Defendant Oldcastle.

12.     Finally, Plaintiffs allege that the Defendant's quarry operation is a public and private nuisance that should be enjoined from further operation.

## ARGUMENT

As noted in the facts above, it is undisputed that the jury returned a verdict in favor of the Schwiekers finding Defendant Oldcastle liable to the Schwiekers for causing sinkholes to form on their land. The jury awarded $75,000 against Defendant Oldcastle for the damages, which at that time were for approximately 12 relatively small sinkholes. Since the time of the verdict in September, 2004, the Schwiekers' land has suffered several dozen additional sinkholes, some of which are, literally, 150 feet or more in at least one of the directions of the sinkhole (typically they are elongated).

Principles of *res judicata* and/or collateral estoppel[3] clearly compel the conclusion that the jury in this case need not re-litigate the question whether the quarry is responsible for the sinkholes, but only needs to litigate the question of what are the Plaintiffs' continuing damages and whether the quarry is now a public and/or private nuisance. The Court, thereafter, and if the jury finds the quarry to be a nuisance, should determine whether and how to stop the nuisance by, for example, shutting down the quarry.

*Res Judicata* applies if four "elements" are shown:

(1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits [or those in privity with them] substantially identical; and (4) same cause of action present in both suits.

*Campbell v. Campbell*, 561 So.2d 1060, 1061 (Ala 1990) (citation omitted). All elements of *res judicata* are present.

---

3

The elements of collateral estoppel are similar to *res judicata*. The elements of collateral estoppel that must be shown include: "(1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment." *Campbell v. Campbell* 561 So.2d 1060, 1061 (Ala 1990) (citation omitted). We will argue only *res judicata* in this brief, although much of the argument applies equally to a claim of collateral estoppel, if the Court believes collateral estoppel to be the controlling question of law.

1.    **The Court Did Exercise Its Jurisdiction.**

The trial court in 2004 specifically elected to and did exercise its jurisdiction over the claims of the Schwiekers against Oldcastle. Accordingly, this element is certainly satisfied.

2.    **The Prior Judgment Was On the Merits.**

The 2004 jury verdict and judgment thereon was certainly on the merits of the Schwiekers' claim that the quarry in fact caused the sinkholes to form on their lands. That was the only issue presented to the jury on the Schwiekers' behalf. Therefore, this element of *res judicata* is clearly satisfied.

3.    **The Parties Are Identical, Not Just "Substantially" Identical.**

The parties to both the 2004 trial and this lawsuit are the Schwiekers and Defendant Oldcastle. Therefore, this element is satisfied.

4.    **The Same Cause of Action Was Presented or Decided.**

In the first trial, the Schwiekers' only claims were for causation of sinkholes and damages as a result thereof. Therefore, the very same cause of action was decided in the 2004 trial. For purposes of this partial motion for summary judgment, in this trial, the jury will only be asked to measure and award damages to the Schwiekers. Therefore, the fourth element of *res judicata* is satisfied.

## CONCLUSION

For the reasons shown above, the Plaintiffs need not re-try the issue of liability. A jury has already determined that Defendant Oldcastle is liable to the Plaintiffs for the causation of sinkholes on their property. Plaintiff respectfully request this Honorable Court to enter a partial summary judgment in their favor that Oldcastle is and has been

determined to be liable for their damages as a result of sinkholes forming on their property, and to submit this matter to the jury for the purpose of determining their damages. In addition, the Plaintiffs remind the Court that the Plaintiffs have asked the Court to enjoin the quarry from further operation as a method of stopping the substantial damages and life-threatening problems caused by the quarry operation. Although this issue is not ripe for summary judgment, Plaintiffs do intend to litigate in the injunctive relief portion of this matter so that the Court will have before it the question whether the quarry should be enjoined from further operation and further endangerment of the Plaintiffs' lives and property, as well as the lives and property of countless other persons in the community around the quarry.

Respectfully submitted this the 6th day of September, 2007.

_____
**CHARLES E. VERCELLI, JR.** (VER003)
One of the Attorneys for Plaintiffs

**OF COUNSEL:**
LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
TEL: (334) 821-7100
FAX: (334) 821-7101
jsprayberry-spraylaw@charter.net

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
TEL: (334) 834-8805
FAX: (334) 834-8807
cvercelli@vercelli-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of September, 2007, I electronically filed the foregoing with the Clerk of the United States District Court for the Middle District of Alabama, using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Phillip E. Adams, Jr.
Rick Davidson
Matthew W. White
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

I also hereby certify that a copy of the foregoing will be served upon:

W. F. Horsley
SAMSON & DENSON, LLP
P. O. Box 2345
Opelika, AL 36803-2345

counsel for the landowners, by placing a copy of the same in the United States Mail,
postage prepaid and properly addressed on the 6th day of September, 2007.

_____
Of Counsel

500-06\P MPSJ.4.wpd

8



RELEASED

JUN  9 2006

CLERK
SUPREME COURT OF ALABAMA

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 242-4621), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2005-2006

---

### 1040857

---

### Mike Davis et al.

### v.

### Hanson Aggregates Southeast, Inc., et al.

---

### 1040940

---

### Hanson Aggregates Southeast, Inc.

### v.

### City of Opelika et al.

---

### 1040945

---

**Oldcastle Materials Southeast, Inc.**

**v.**

**City of Opelika et al.**

**Appeals from Lee Circuit Court**
**(CV-02-85)**

NABERS, Chief Justice.

These three appeals are from two judgments -- one entered on a jury verdict, the other a summary judgment. In case no. 1040857, we affirm in part, reverse in part, and remand. In cases no. 1040940 and no. 1040945, the cross-appeals from the judgment entered on the jury verdict, we affirm.

## I.  Facts and Procedural History

Hanson Aggregates Southeast, Inc. ("Hanson"), operated, and Oldcastle Materials Southeast, Inc. ("Oldcastle"), now operates, a quarry in Lee County.[1]  The plaintiffs include approximately 70 residents of Lee County, as well as the City of Opelika ("the City"), the City of Opelika Utilities Board ("the Utilities Board"), and the Beauregard Water Authority. In addition to Hanson and Oldcastle, the defendants at trial

---

[1]Hanson operated the quarry until July 2003; Oldcastle has operated the quarry from July 2003 to the present.

1040857; 1040940; 1040945

included members of the Gilmer and Young families, who owned

the land on which the quarry is located.  The Gilmer and Young

defendants have since been dismissed from the action, and the

plaintiffs do not challenge the dismissal.

The quarry allegedly damaged the plaintiffs and their

property by emitting noise, dust, vibration, and pollution;

dewatering the subsoil; and causing sinkholes to form in the

area.  The plaintiffs sued on theories of public and private

nuisance, trespass, negligence, and wantonness.  They also

sought a permanent injunction to prevent the defendants from

continuing to operate the quarry.

Because of the number of plaintiffs and the complexity of

the case, the parties and the trial court sought to break the

action into separate trials pursuant to Rule 42(b), Ala. R.

Civ. P.  The two sides submitted competing trial plans, each

of which recommended separating the plaintiffs into groups and

holding a separate trial for each group.

The first group of plaintiffs tried their claims to a

jury in August and September 2004.  This group included the

City, the Utilities Board, and 18 individual plaintiffs

(collectively "the trial plaintiffs").  In relevant part, the

jury found that 1) the quarry was not a nuisance;  2) Hanson

1040857; 1040940; 1040945

and Oldcastle had operated the quarry negligently; and 3)
Oldcastle had committed a trespass.  The jury returned a
verdict awarding damages to 5 of the 18 individual plaintiffs.
The jury also returned a verdict stating that the City and the
Utilities Board had met their burden of proof with respect to
both Hanson and Oldcastle, but awarding those plaintiffs no
damages.  Finally, the trial court concluded that the verdict
for the defense on the nuisance claim precluded it from
considering the plaintiffs' request for an injunction.

     Hanson and Oldcastle then moved for a judgment as a
matter of law or for a remittitur of the damages award; the
plaintiffs moved for a new trial or an additur.  On February
1, 2005, the trial court denied both motions and entered a
judgment on the jury's verdict.

     The second trial was scheduled for April 2005.  Before
that trial took place, however, Hanson and Oldcastle moved for
a summary judgment.  They argued that because the jury in the
first trial found that the quarry was not a nuisance, the
nuisance claims of the remaining plaintiffs and injunctive
relief as to the remaining plaintiffs were barred by the
doctrines of res judicata and collateral estoppel.

1040857; 1040940; 1040945

The trial court agreed.  On March 7, 2005, it entered a partial summary judgment for Hanson and Oldcastle:

> "The claims of the remaining plaintiffs that the quarry is a public nuisance due to noise, dust, blasting, and/or dewatering, based on quarry operations up to and including the August 2004 trial of this case, are barred.  The claims of the remaining plaintiffs for injunctive relief, based on quarry operations up to and including the August 2004 trial of this case, are barred.  The claims of the remaining plaintiffs, to recover money damages for specific injury to their person or property based on quarry operations are <u>not</u> barred."

(Emphasis in original.) The trial court certified both the judgment entered on the jury's verdict in the first trial and the summary judgment as final under Rule 54(b), Ala. R. Civ. P.  The plaintiffs appealed, and Hanson and Oldcastle cross-appealed.[2]

## II.  Analysis

On appeal, the plaintiffs challenge both the jury verdict and the summary judgment.  First, the trial plaintiffs argue that part of the jury's verdict was contrary to the evidence; we afford that verdict the typical presumption of correctness.

---

[2]Hanson and Oldcastle cross-appealed in cases no. 1040940 and no. 1040945.  However, after reviewing the issues as framed by the appellants in case no. 1040857, they have chosen not to pursue those cross-appeals.  (Joint Brief of Hanson and Oldcastle at p. 3.)

5

1040857; 1040940; 1040945

SouthTrust Bank v. Donely, 925 So. 2d 934, 943 (Ala. 2005).
The second issue -- the trial court's decision to exclude
certain evidence -- we review only to determine if in
excluding the evidence the trial court exceeded its
discretion.  Bowers v. Wal-Mart Stores, Inc., 827 So. 2d 63,
71 (Ala. 2003).  The remaining issues are questions of law,
which we review de novo.  E.g., Alabama Republican Party v.
McGinley, 893 So. 2d 337, 342 (Ala. 2004).

### A.  Issues Arising from the First Trial

### 1.  Verdict against the individual plaintiffs

The jury found that Hanson and Oldcastle were not liable
to any of the individual plaintiffs except the members of the
Parker family and the Schwieker family, comprising 5
individuals.  The remaining 13 individual plaintiffs argue
that these findings were inconsistent and contrary to the
great weight of the evidence.

This Court will not disturb a jury's verdict unless "the
evidence against the verdict is so much more credible and
convincing to the mind than the evidence supporting the
verdict that it clearly indicates that the jury's verdict was
wrong and unjust."  Campbell v. Burns, 512 So. 2d 1341, 1343
(Ala. 1987).  Moreover, "'denial of a motion for a new trial

1040857; 1040940; 1040945

strengthens the presumption of correctness afforded to a jury verdict.'"  Keibler-Thompson Co. v. Steading, 907 So. 2d 435, 440 (Ala. 2005)(quoting Bowers, 827 So. 2d at 73).

The plaintiffs have failed to show that the jury's verdict as to these remaining 13 plaintiffs should be set aside.  A reasonable jury could have concluded from the evidence that the Parkers and the Schwiekers were damaged by Hanson and Oldcastle's actions, but that the other 13 individual plaintiffs were not.[3]  The verdict as to these remaining 13 plaintiffs was not plainly wrong or unjust, and it must stand.

### 2.  Verdict in favor of the City and the Utilities Board on the negligence claim

[3]For example, the jury could have believed the Parkers' and the Schwiekers' testimony, but disbelieved testimony from the other individual plaintiffs.  There was also evidence that the damages claimed by some of the individual plaintiffs were not caused by the quarry.  For example, Mike Broadwater testified that he was damaged by dust from the quarry. However, he admitted that he had an unusual sensitivity to dust as a result of a double lung transplant.  Broadwater also testified that blasting at the quarry caused cracks in his house.  However, he admitted that this house was more than 50 years old and that concrete can crack from normal wear and tear.  A reasonable juror could have concluded from this evidence that the quarry was not the proximate cause of any of Broadwater's injuries.

1040857; 1040940; 1040945

With respect to the City and the Utilities Board, the jury found Hanson and Oldcastle liable for negligence but awarded no damages. The City and the Utilities Board argue that this verdict is inconsistent and requires a new trial. We agree.

Damages are an essential element of the tort of negligence. "'"[P]roof of damage [is] an essential part of the plaintiff's case.'"" Ex parte Stonebrook Dev., L.L.C., 854 So. 2d 584, 589 (Ala. 2003)(quoting Matthews Bros. Constr. Co. v. Stonebrook Dev., L.L.C., 854 So. 2d 573, 578 (Ala. Civ. App. 2001), quoting in turn William C. Prosser, Handbook of the Law of Torts § 30 (4th ed. 1971)). As a result, a finding that a defendant is liable to a plaintiff for negligence is inconsistent with an award of no damages.

> "The jury's finding for each of the Plaintiffs, which is clear and unequivocal, necessarily embraced all of the elements of the tort claim, including the element of injury and resultant damages. To so find, and then award no damages, is inconsistent on its face as a matter of law.
>
> "....
>
> "[This] compels a decision that the trial court should have afforded Appellants a new trial on the basis of the inadequacy of the award, or, as we see

1040857; 1040940; 1040945

> it, the inconsistency of the award of no damages,
> when such award is juxtaposed with the jury's
> finding of Defendants' liability."

Stinson v. Acme Propane Gas Co., 391 So. 2d 659, 661 (Ala.

1980); accord Thompson v. Cooper, 551 So. 2d 1030, 1030 (Ala.

1989); Moore v. Clark, 548 So. 2d 1352 (Ala. 1989); and

Clements v. Lanley Heat Processsing Equip., 548 So. 2d 1345

(Ala. 1989).

Hanson and Oldcastle do not concede that the verdict for

the City and the Utilities Board was inconsistent.  However,

they fail to present any substantial argument that this Court

should not apply the Alabama rule on inconsistent verdicts in

this case.   Instead, in their argument they assume an

inconsistent verdict but maintain that the inconsistency does

not require reversal.   The focus of Hanson and Oldcastle's

argument that the verdict does not require a reversal is that

the City and the Utilities Board either 1) invited the error

of an inconsistent verdict, 2) consented to the inconsistent

verdict, or 3) waived their right to challenge the verdict.

Immediately following the verdict, the trial court noted

the possibility that the verdict was inconsistent.   The

1040857; 1040940; 1040945

parties and the court then discussed how the verdict could be

corrected.  This began with the following exchange:

> "Trial court: On the two verdict forms to the City
> of Opelika and the Utilit[ies] Board where they
> found in favor of the Plaintiff and awarded zero
> [damages], I would consider that an award of nominal
> damages.  <u>Do you want any clarification form the
> jury on that point</u>?
>
> "Mr. Vercelli [counsel for the City and the
> Utilities Board]: I think it's inconsistent to award
> nothing and find them liable.  I think nominal
> damages should have been awarded.  <u>So, yes</u>."

(Emphasis added.)  At this point, it is clear that counsel for

the City and the Utilities Board wanted clarification from the

jury on the inconsistent verdict.  The colloquy continues:

> "Trial court: Well, what I am asking is: Do y'all
> agree -- that -- that's what I would think.  I can
> -- I can come back and recharge them on the nominal
> damage[s] charge that was presented by Hanson and --
> and just see what they come up with, or I can just
> plain ask them if that was your intent in front of
> everyone.  Or y'all can just accept it as an award
> of nominal damages and -- just let them go.
>
> "Mr. Byram [defense counsel]: We are satisfied.
>
> "Mr. Adams [defense counsel]: Satisfied.
>
> "Mr. Denson [defense counsel]: Satisfied.
>
> "Mr. Vercelli: Which means what?
>
> "Trial court: That they are agreeing that it's an
> award for nominal damages.  I mean, essentially it
> would be the same thing as saying they awarded one
> dollar.

10

1040857; 1040940; 1040945

> "Mr. Vercelli: Is that what the defendants are
> saying?  That they agree it would be the same as
> awarding a dollar?

> "Mr. Adams: Well, what is the -- what is the
> Plaintiffs' response, Your Honor, to the verdict?
> I don't know that there is a procedure by which the
> Defendant gets to be asked questions by Plaintiffs'
> counsel.

> "Trial court: Well, there is -- there is --

> "Mr. Adams: We are saying that we are satisfied with
> the verdict and -- as recorded and as explained by
> the Court.

> "Trial court: All right.

> Mr. Vercelli: <u>It appears to me to be an inconsistent
> verdict.  I don't see how they can award zero and
> find them at fault and then award nothing</u>."

(Emphasis added.)  It is clear that to this point, the City

and the Utilities Board have not invited the court to do

anything, consented to the verdict, or waived any objection to

the verdict.

The colloquy then turned to whether the jury's verdict

was based on a finding of nuisance or of negligence.  Defense

counsel stated that the jury had found that the quarry created

a nuisance.  In fact, the jury had indicated by special

interrogatory that its verdict was based on negligence.

> "Mr. Byram: It's a claim for public nuisance.

11

1040857; 1040940; 1040945

> "Trial court: Well, that would be my interpretation, that they found that the burden of proof was met; they just didn't award any damages. ...
>
> "Mr. Vercelli: So that is a finding of public nuisance; we would be satisfied with nominal damages.
>
> "Trial court: Okay. If y'all are satisfied, I will bring [the jury] back in and let them go."

Here, the City and the Utilities Board agreed that the verdict could be interpreted as one awarding nominal damages, and therefore valid, but only if it was based on a theory of nuisance.  Hanson and Oldcastle argue that the City and the Utilities Board then "chose to accept the verdict" and "prompted the court to accept the verdicts and discharge the jury."  The record, however, does not support this conclusion. The conference continues:

> "Mr. Vercelli: Smith and Schwieker appear inconsistent.[4]  I guess negligence is what it is.
>
> "Trial court: Hum?
>
> "Mr. Adams: That's a verdict on negligence.
>
> "Mr. Vercelli: We will talk about it post-trial.
>
> "Trial court: Yes, I mean --

---

[4]This was a separate objection to an alleged inconsistency between the finding of liability with respect to members of the Schwieker family (as discussed in part II.A.1), but no liability with respect to members of the Smith family.

12

1040857; 1040940; 1040945

"Mr. Adams: That's a verdict on the negligence --

"Mr. Byram: Yes, I would.  I may have misspoke, too.
It's the negligence one that's checked here.

"Mr. Adams: -- theory, Your Honor.

"Trial court: Correct.

"Mr. Adams: That's right.

"Trial court: Okay.  Bring [the jury] in."

At that point, the trial court discharged the jury.  Contrary
to Hanson and Oldcastle's assertion, the City and the
Utilities Board did not express satisfaction with an
inconsistent verdict on their negligence claim.  Nor did they
"prompt" the trial court to discharge the jury.

     The record indicates that counsel for the City and the
Utilities Board, defense counsel, and the trial court all
understood that if the verdict was based on negligence (as
opposed to nuisance), it was inconsistent, and some corrective
action was necessary.  The trial court suggested three ways to
resolve the inconsistency:  1) recharge the jury, 2) poll the
jury in open court, or 3) have the parties agree to treat the
verdict as one for nominal damages.  The trial court was
trying to fix the problem created by the inconsistent verdict,
and counsel for the City and the Utilities Board insisted that

1040857; 1040940; 1040945

there was a problem.  In the ensuing confusion, for which the
City and the Utilities Board cannot be held responsible, the
jury was discharged without any of the court's proposed
solutions having been put in place.

The only statement that even comes close to an agreement
by the City and the Utilities Board to discharge the jury is
Mr. Vercelli's statement that "[w]e will talk about it post-
trial."  This statement, however, cannot be characterized as
a waiver of the right to challenge an inconsistent verdict.
Instead, the statement declared that the City and the
Utilities Board were not abandoning the issue but would raise
it in a later motion.

We conclude that the City and the Utilities Board did not
consent to an inconsistent verdict or invite the court to
commit error and that their motion for a new trial was
sufficient to preserve the inconsistent-verdict issue for
review.[5]  The trial court erred in denying that motion, and

_____

[5]The City and the Utilities Board were permitted to raise
this issue in a motion for a new trial:

"Appellants' asserted objection [on inconsistency]
is not grounded on the 'form,' 'irregularity,' or
'informality' of the verdict; rather, it is grounded
on the 'inadequacy' or 'inconsistency' thereof.
Likewise, Appellants' failure 'to object' is not

14

1040857; 1040940; 1040945

the City and the Utilities Board are entitled to a new trial

on their negligence claim.

### 3. Evidentiary rulings

The trial plaintiffs argue that the trial court erred by

excluding four pieces of evidence:

> "This evidence included (1) testimony, with
> supporting documentation by the Lee County Engineer,
> Neal Hall, that the County was required to spend a
> quarter of a million dollars to repair less than
> 1,000' of one road that was damaged by the quarry,
> (2) testimony from Mr. Hall that the bridge over the
> Little Uchee Creek, which was within a few hundred
> feet of multiple large sinkhole collapses in the
> Little Uchee and on or near the Spring Villa Road
> right-of-way, could fail if a sinkhole developed on
> one of its supports, (3) testimony from a qualified
> civil engineer, Derek Barrentine, that if a sinkhole
> formed under the Dixie LP Gas Pipeline, then due to
> the weight of the earth above and the pipeline
> itself, the pipeline sag and crack [sic], causing an
> explosion, and (4) testimony and supporting
> documentary evidence (in the form of a certified
> ADEM [Alabama Department of Environmental
> Management] record) that the quarry intended to
> increase pumping from 4.5 mgd to 10 mgd."

(Brief of Appellants at pp. 62-63.)

––––––––––––––––

> within the purview of Appellees' cited authority and
> did not constitute nonfeasance on Appellants' part.
> Appellants' challenge to the jury's verdict on
> grounds of 'inadequacy' and 'inconsistency' was
> properly made in their motion for a new trial."

Stinson, 391 So. 2d at 662.

1040857; 1040940; 1040945

The objections to the exclusion of items (2), (3), and (4) have not been properly preserved for review. The record shows that the trial plaintiffs failed to present the substance of item (2) to the trial court.[6] As to item (3), Derek Barrentine, a civil engineer, was to testify about what might have happened if a sinkhole appeared near the liquified-petroleum gas pipeline. The trial court stated that it would allow this testimony "as far as the injunctive relief portion of the case." The trial plaintiffs' counsel responded: "And that's all we have -- that's the only reason we are offering it." Because the question of injunctive relief was to be decided (if necessary) by the court, not the jury, this statement by plaintiffs' counsel waived any objection to the trial court's decision to keep that evidence from the jury. Finally, the trial plaintiffs have failed to identify the testimony or documents constituting item (4). As a result,

---

[6]At trial, Neal Hall, the county engineer for Lee County, was asked if sinkholes could "cause concern about the safety of that bridge." Defense counsel immediately objected, and the trial court sustained the objection. The trial plaintiffs failed to proffer how Hall would have answered the question. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected and ... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Rule 103(a)(2), Ala. R. Evid.

1040857; 1040940; 1040945

our analysis is limited to whether the trial court exceeded its discretion by excluding the testimony of Neal Hall, the county engineer for Lee County, about the road-repair expenses Lee County would incur as a result of the quarry's operation.

According to the trial plaintiffs' brief, the trial court kept Hall's testimony from the jury because 1) Lee County was not a party to the litigation, and 2) evidence of a non-party's expenditures might confuse the jury on the issue of damages.  A trial court has discretion to exclude otherwise admissible evidence in order to avoid misleading the jury. Rule 403, Ala. R. Evid.  The trial plaintiffs' conclusory response -- that "such problems were either nominal or could have been resolved by an appropriate instruction rather than not admitting the evidence" -- is insufficient to show that the trial court exceeded that discretion.  The trial plaintiffs' arguments regarding the exclusion of evidence do not require a new trial.

### 4.  Injunctive relief

Finally -- and despite the jury's verdict that the quarry was not a nuisance -- the trial plaintiffs argue that the trial court erred by failing to enjoin the quarry's continued operation.    They cite City of Birmingham v. City of

17

1040857; 1040940; 1040945

<u>Fairfield</u>, 375 So. 2d 438 (Ala. 1979), and <u>McClung v.</u>
<u>Louisville & Nashville Ry.</u>, 255 Ala. 302, 51 So. 2d 371
(1951), as examples of cases in which "this Court has
previously held that a finding of negligence can support
injunctive relief."

Both <u>City of Birmingham</u> and <u>McClung</u> support the
proposition that "a nuisance may result from acts or omissions
that constitute negligence." <u>City of Birmingham</u>, 375 So. 2d
at 441.  Neither case, however, stands for the proposition
that a trial court may enjoin conduct that does not constitute
a nuisance.

In this case, the factual issue whether the quarry was a
nuisance was inextricably linked with the plaintiffs' request
for injunctive relief.  <u>See</u> <u>Wootten v. Ivey</u>, 877 So. 2d 585,
589 (Ala. 2003).  Because the jury found no nuisance, the
trial court properly refused to consider whether the trial
plaintiffs were entitled to an injunction.

<u>B.  Issues Arising from the Summary Judgment</u>

In the first trial, the jury found that the quarry did
not constitute a nuisance.  The trial court then ordered that
the claims of all the remaining plaintiffs alleging a public
nuisance and/or seeking injunctive relief were barred.  The

1040857; 1040940; 1040945

remaining plaintiffs argue that this order deprived them of
their day in court on those issues; Hanson and Oldcastle
respond that the trial court's order is justified either under
the doctrine of res judicata or collateral estoppel  or
because of an agreement between the parties.

Res judicata bars relitigation of a claim <u>only in a
subsequent action</u>.  <u>Interstate Truck Leasing, Inc. v. Bender</u>,
608 So. 2d 716, 718 (Ala. 1992), <u>overruled on other grounds</u>,
<u>State Farm Fire & Cas. Co. v. Owen</u>, 729 So. 2d 834 (Ala.
1998).   When a case is divided into separate trials pursuant
to Rule 42, Ala. R. Civ. P, those trials remain part of a
single action and the doctrine of res judicata does not apply
to the later trials.  608 So. 2d at 718.

Neither does collateral estoppel apply:

> "[S]ince separate trials do not individually produce
> final judgments, any attempt to apply collateral
> estoppel to the remaining ... trials would be
> invalid under a Rule 42(b) regime."

<u>Acevedo-Garcia v. Monroig</u>, 351 F.3d 547, 560 (1st Cir. 2003).[7]
The approach in <u>Acevedo-Garcia</u> is consistent with our approach
in <u>Interstate Truck Leasing</u>, as well as with hornbook law

---

[7]<u>Acevedo-Garcia</u> applied Rule 42(b), Fed. R. Civ. P.  Rule
42(b), Ala. R. Civ. P., is identical to the federal rule.

19

1040857; 1040940; 1040945

stating that collateral estoppel bars relitigation "in a subsequent action."  Restatement (Second) of Judgments § 27; see also 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2387 (1995)("Rule 42(b) allows the court to order a separate trial of any claim .... Separate trials usually will result in one judgment ....").

    As a result, in a single action involving separate trials under Rule 42(b), Ala. R. Civ. P., a result in one trial will typically not be binding on parties not involved that trial, absent an agreement of the parties or an order of the court. In this regard, Hanson and Oldcastle argue that all the plaintiffs agreed to be bound by the jury's verdict in the first trial as to whether the quarry constituted a public nuisance.  The parties, with the trial court's approval, certainly could have agreed to structure the case that way. The trial court, by order, could also have so structured the case.  However, the record does not reveal such an agreement or order.

    During pretrial conferences, the parties made a number of statements concerning what effect a verdict in the first trial might have on subsequent trials.  Interestingly, the parties' pretrial positions were essentially the opposite of their

20

1040857; 1040940; 1040945

positions on appeal: the plaintiffs suggested that the first trial might have a preclusive effect on subsequent trials, and Hanson disagreed (Oldcastle had not yet been joined as a defendant). The parties were unable to agree, and these statements thus amount to nothing more than ideas about how the case might have been tried.

The parties also submitted competing written trial plans. The plaintiffs' proposed trial plan summarizes the scope of the first trial as follows:

> "1.    Plaintiffs will identify 6-8 families as Parties Plaintiff to the first trial.  In addition, the City of Opelika, the Opelika Utilities Board, and the Beauregard Water Authority[8] will be Plaintiffs during the first trial.  Therefore, <u>the jury will only have to consider the claims of between 9 and 11 Plaintiffs rather than 64</u>.
>
> "....
>
> "4.    The jury would be informed that <u>another 20 families have the same or similar claims, that those families [sic] claims will be tried separately</u>, and that some of those homeowners would be allowed to testify -- especially those that have complained in writing or in person to Hanson."

(Emphasis added.) Hanson's proposed trial plan stated:

> "Hanson submits that plaintiffs' attorneys should select one family unit from each geographic area and

_____

[8]The Beauregard Water Authority was not one of the plaintiffs in the first trial.

1040857; 1040940; 1040945

> that the defendants' attorneys jointly should select
> one family unit from each geographic area for trial
> of their damages and injunctive relief claims based
> on quarry operations (noise, dust, blasting).  Thus,
> <u>the first trial would resolve the claims of six of
> the 27 family units.</u>  The results in this first
> trial would serve as a benchmark for the possible
> resolution of the quarry operations claims of the
> remaining individual plaintiffs.  <u>As stated, there
> would be little, if any overlap between the two
> phases</u>."

(Emphasis added.)  Neither of the proposed trial plans shows

an agreement to bind all plaintiffs in subsequent trials to

the verdict in the first trial.  According to the plaintiffs'

plan, the jury would consider the claims of between 9 and 11

plaintiffs; the claims of the remaining plaintiffs would "be

tried separately."  According to Hanson, the jury would hear

the claims of six "family units," leading to "possible

resolution" of the remaining claims.

The parties failed to agree on how the case should

proceed, and the trial court entered the following scheduling

order:

> "Regarding the Proposed Trial Plan submitted by the
> parties, it is the Court's decision that the Water
> Authorities along with (6) other Plaintiffs' cases
> will be tried in July.  The parties are to meet and
> determine whether or not they can agree as to which

1040857; 1040940; 1040945

> six (6) individual Plaintiffs should be tried at
> that time."[9]

This order did nothing more than identify which plaintiffs
would participate in the first trial. It did not state that
the first trial would dispose of all public-nuisance claims;
nor did it state that any other plaintiff would be bound by
any part of the result of the first trial. Because the trial
court's scheduling order "shall control the subsequent course
of the action unless modified by a subsequent order," Rule
16(e), Ala. R. Civ. P, Hanson and Oldcastle's argument -- that
plaintiffs who did not participate in the first trial are
bound by the verdict in that trial finding that the quarry is
not a nuisance -- is unpersuasive. That verdict cannot bar
the nuisance claims of the remaining plaintiffs, and the
summary judgment therefore must be reversed.[10]

---

[9]It appears that the court meant six families, as opposed
to six individuals. The reference to the "Water Authorities"
seems to be a reference to the City and the Utilities Board.
The Beauregard Water Authority was not included in the first
trial.

[10]At oral argument before this Court, counsel for
Oldcastle argued that without preclusion of the nuisance
claims and injunctive relief, Oldcastle may face a number of
separate trials, each of which would subject it to the
possibility of injunctive relief. Of course, the decision to
grant or deny injunctive relief is in the discretion of the
trial court. Should a future jury find that the quarry is a

23

1040857; 1040940; 1040945

### C.  Statutory Damages Under § 33-7-4

Finally, the plaintiffs have asked the Court to provide "guidance" on the correct measure of damages under § 33-7-4, Ala. Code 1975.  They concede, however, that "this cause of action was dropped from the 2004 trial."  Although the plaintiffs argue that the issue will inevitably arise in a future trial, it is not now ripe for review.

### III.  Conclusion

Because the jury's verdict on the negligence claim was inconsistent as to the City and the Utilities Board, in case no. 1040857 we reverse the judgment as to those plaintiffs, but only on the negligence claim.  In all other respects, the judgment entered on the jury's verdict is affirmed.  We also reverse the summary judgment in favor of Hanson and Oldcastle. The case is remanded for further proceedings consistent with this opinion.  In cases no. 1040940 and no. 1040945, Hanson and Oldcastle's cross-appeals, we affirm.

1040857 -- AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

1040940 -- AFFIRMED.

---

nuisance, it will be up to the trial court to determine whether injunctive relief is appropriate.

24

1040857; 1040940; 1040945

    1040945 -- AFFIRMED.

    Lyons, Harwood, Woodall, Stuart, Smith, Bolin, and Parker, JJ., concur.

    See, J., concurs specially.

1040857; 1040940; 1040945
SEE, Justice (concurring specially).

I concur in the main opinion.

I write specially to note that in this proceeding, broken
into separate trials pursuant to Rule 42(b), Ala. R. Civ. P.,
the parties disagreed as to whether they intended the first
trial to have a preclusive effect on claims or issues that
arose in the second trial, and the trial court did not resolve
that disagreement before the first trial.  The trial court can
provide in a Rule 42(b) proceeding that the resolution of
certain issues in a first trial will preclude litigation of
those issues in a subsequent trial; however, I believe that it
must do so in accord with the admonition in Rule 42(b) that an
order of separate trials must "always preserv[e] inviolate the
right of trial by jury as declared by Article 1, Section 11 of
the Alabama Constitution of 1901."  For this reason, the
understanding that a first trial will be binding on
participants in a subsequent trial who were not participants
in the first trial must be clear.  See Dodge v. Cotter Corp.,
203 F.3d 1190, 1200 (10th Cir. 2000) ("If the parties intended
to bind subsequent litigation with the results of prior test
trials, the record must clearly memorialize that agreement.
Their failure to do that here leaves important substantive

1040857; 1040940; 1040945

rights at the mercy of trial tactics."), and <u>In re TMI Litig.</u>, 193 F.3d 613, 725 (3d Cir. 1999) ("However, absent a positive manifestation of agreement by Non-Trial Plaintiffs, we cannot conclude that their Seventh Amendment right is not compromised by extending a summary judgment against the Trial Plaintiffs to the non-participating, non-trial plaintiff.").[11]

When there is a reasonable basis for dispute as to whether there was a clear pretrial understanding as to the effect of the first trial on a later trial, and, if there was, as to the nature of that understanding, this Court should, I believe, give proper deference to the trial judge. Here the trial judge concluded, in relevant part:

> "The claims of the remaining plaintiffs that the quarry is a public nuisance due to noise, dust, blasting, and/or dewatering, based on quarry operations up to and including the August 2004 trial of this case, are barred. The claims of the remaining plaintiffs for injunctive relief, based on quarry operations up to and including the August 2004 trial of this case, are barred. The claims of the remaining plaintiffs, to recover money damages for specific injury to their person or property based on quarry operations are <u>not</u> barred."

---

[11]Consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." <u>Johnson v. Manhattan Ry.</u>, 289 U.S. 479, 496-97 (1933) (footnote omitted).

1040857; 1040940; 1040945

(Emphasis in original.)   Thus, if there were a reasonable basis for dispute as to whether there was a clear understanding and as to what that understanding was, I would give due weight to the conclusion of the trial judge that the first trial was to have had a preclusive effect on the claims asserted in the second trial.   However, I agree with the characterization of the record as it is presented in the main opinion -- that there was actual disagreement between the parties and that the trial judge did not resolve that disagreement before the first trial.   Therefore, in light of the admonition of Rule 42(b) that the right to trial by jury be preserved, I concur in the main opinion.



State of Alabama
Unified Judicial System

Form C-7 Rev. 2/79

**CASE ACTION SUMMARY**
CONTINUATION

Case Number

CV 02 085
ID    YR    Number

Style:

DAVIS, et al. v. HANSON & OLDCASTLE          Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 09-04-02 | On this day in open Court came the parties with their respective Attorneys and this cause having been set for trial on **AUGUST 16, 2004**, and this cause coming on to be heard and issue having been joined between the Plaintiffs and Defendants. In open court on this day in the presence of both the parties with their Attorneys, came a jury of good and lawful men and women, who having been first duly impaneled and sworn according to law, and who having heard the evidence in this case and the charge of the Court, upon their oaths, in open Court on this day and in the presence of the Plaintiffs, Defendants and their respective Attorneys, do say as to each Plaintiff in this portion of the trial of this case: |

Plaintiffs:     RANDALL PARKER, WANDA PARKER and AMBUR
                PARKER:

        "We, the jury, find that the Plaintiffs, RANDALL PARKER,
        WANDA PARKER and AMBUR PARKER, have met their
        burden of proof by preponderance of the evidence, as it
        pertains to Defendant, HANSON AGGREGATES SOUTHEAST,
        INC., and award Compensatory Damages in the amount of
        $72,000.00.
                        /s/ Foreperson

        "We, the jury, find that the Plaintiffs, RANDALL PARKER,
        WANDA PARKER and AMBUR PARKER, have met their
        burden of clear of and convincing evidence as it pertains to
        Defendant HANSON AGGREGATES SOUTHEAST, INC.,
        and award Punitive Damages in the amount of $750,000.00."

                        /s/ Foreperson

        "We, the jury, find that the Plaintiffs, RANDALL PARKER,
        WANDA PARKER and AMBUR PARKER, have met their
        burden of proof by preponderance of the evidence, as it pertains
        to Defendant, OLDCASTLE MATERIALS SOUTHEAST, INC.,
        and award Compensatory Damages in the amount of $18,000.00."

                        /s/ Foreperson

FILED IN OFFICE   SEP 08 2004

| State of Alabama Unified Judicial System | **CASE ACTION SUMMARY** CONTINUATION | Case Number |
|---|---|---|
| Form C-7 Rev 2/79 | | CC 02 085 ID   YR   Number |

Style: Davis v. Oldcastle + Hanson

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| | "We, the jury, find that the Plaintiffs, RANDALL PARKER, WANDA PARKER and AMBUR PARKER, have met their burden of proof by clear and convincing evidence as it pertains to Defendant OLDCASTLE MATERIALS SOUTHEAST, INC., and award Punitive Damages in the amount of $150,000.00." |
| | /s/ Foreperson        FILED IN OFFICE   SEP 08 2004 |
| | Plaintiffs:    MIKE BROADWATER and ANN BROADWATER |
| | "We, the jury, find that the Plaintiffs, MIKE BROADWATER and ANN BROADWATER, have failed to meet their burden of proof and find Defendant, HANSON AGGREGATES SOUTHEAST, INC., Not Liable." |
| | /s/ Foreperson        FILED IN OFFICE   SEP 08 2004 |
| | "We, the jury, find that the Plaintiffs, MIKE BROADWATER and ANN BROADWATER, have failed to meet their burden of proof and find Defendant OLDCASTLE MATERIALS SOUTHEAST, INC., Not Liable." |
| | /s/ Foreperson |
| | Plaintiffs:    ANTHONY CLARK, CAROL CLARK and COURTNEY CLARK:        FILED IN OFFICE   SEP 08 2004 |
| | "We, the jury, find that the Plaintiffs, ANTHONY CLARK, CAROL CLARK and COURTNEY CLARK, have failed to meet their burden of proof and find Defendant, HANSON AGGREGATES SOUTHEAST, INC., Not Liable." |
| | /s/ Foreperson        FILED IN OFFICE   SEP 08 2004 |
| | "We, the jury, find that the Plaintiffs, ANTHONY CLARK, CAROL CLARK and COURTNEY CLARK, have failed to meet their burden of proof and find Defendant OLDCASTLE MATERIALS SOUTHEAST, INC., Not Liable." |
| | /s/ Foreperson        FILED IN OFFICE   SEP 08 2004 |

| State of Alabama<br>Unified Judicial System<br><br>Form C-7  Rev. 2/79 | **CASE ACTION SUMMARY**<br>CONTINUATION | Case Number<br><br>CR/ 03 085<br>ID    YR    Number |
|---|---|---|

Style:
Davis v. Hanson, & OldCastle

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| | Plaintiffs:      KEN SCHWEIKER and NAOMI SCHWEIKER |

"We, the jury, find that the Plaintiffs, KEN SCHWEIKER and NAOMI SCHWEIKER, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant HANSON AGGREGATES SOUTHEAST, INC., and award Compensatory Damages in the amount of $75,000.00."

/s/ Foreperson

FILED IN OFFICE   SEP 0 8 2004

"We, the jury, fin that the Plaintiffs, KEN SCHWEIKER and NAOMI SCHWEIKER, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, OLDCASTLE MATERIALS SOUTHEAST, INC. and award Compensatory Damages in the amount of $75,000.00.

/s/ Foreperson

FILED IN OFFICE   SEP 0 8 2004

Plaintiff:      DONNIE SMITH:

"We, the jury, find that the Plaintiff, DONNIE SMITH, has failed to meet his burden of proof and find Defendant, HANSON AGGREGATES SOUTHEAST, INC., Not Liable."

/s/ Foreperson

FILED IN OFFICE   SEP 0 8 2004

"We, the jury, find that the Plaintiff, DONNIE SMITH, has failed to meet his burden of proof and find Defendant OLDCASTLE MATERIALS SOUTHEAST, INC., Not Liable."

/s/ Foreperson

Plaintiff:      CITY OF OPELIKA

FILED IN OFFICE   SEP 0 8 2004

"We, the jury, find that the Plaintiff, CITY OF OPELIKA, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, HANSON AGGREGATES SOUTHEAST, INC., and award Compensatory Damages in the amount of $-0-."

/s/ Foreperson

FILED IN OFFICE   SEP 0 8 2004

| State of Alabama<br>Unified Judicial System | **CASE ACTION SUMMARY**<br>CONTINUATION | Case Number |
|---|---|---|
| Form C-7 Rev. 2/79 | | CV _02_ 0&5<br>ID    YR    Number |

Style:

Davis, v. Hanson + Old Castle

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|

Plaintiffs:    RONNIE GRIGGS and DOROTHY GRIGGS

"We, the jury, find that the Plaintiffs, RONNIE GRIGGS and DOROTHY GRIGGS, have failed to meet their burden of proof and find Defendant, HANSON AGGREGATES SOUTHEAST, INC., Not Liable."

/s/ Foreperson

FILED IN OFFICE    SEP 0 8 2004

"We, the jury, find that the Plaintiffs, RONNIE GRIGGS and DOROTHY GRIGGS, have failed to meet their burden of proof and find Defendant OLDCASTLE MATERIALS SOUTHEAST, INC., Not Liable."

/s/ Foreperson

FILED IN OFFICE    SEP 0 8 2004

Plaintiffs:    Stanley Ledbetter and Jackie Ledbetter.

"We, the jury, find that the Plaintiffs, STANLEY LEDBETTER and JACKIE LEDBETTER, have failed to meet their burden of proof and find Defendant, HANSON AGGREGATES SOUTHEAST, INC., Not Liable."

/s/ Foreperson

FILED IN OFFICE    SEP 0 8 2004

"We, the jury, find that the Plaintiffs, STANLEY LEDBETTER and JACKIE LEDBETTER, have failed to meet their burden of proof and find Defendant OLDCASTLE MATERIALS SOUTHEAST, INC., Not Liable."

/s/ Foreperson

Plaintiffs:    DAVID SUMNER, JULIE SUMNER and TODD SUMNER.

"We, the jury, find that the Plaintiffs, DAVID SUMNER. JULIE SUMNER and TODD SUMNER, failed to meet their burden of proof and find Defendant, HANSON AGGREGATES SOUTHEAST, INC., Not Liable."

/s/ Foreperson

FILED IN OFFICE    SEP 0 8 2004

"We, the jury, find that the Plaintiffs, DAVID SUMNER, JULIE SUMNER, and TODD SUMNER, have failed to meet their burden of proof and find Defendant OLDCASTLE MATERIALS SOUTHEAST, INC., Not Liable."

/s/ Foreperson

FILED IN OFFICE    SEP 0 8 2004

State of Alabama
Unified Judicial System

**CASE ACTION SUMMARY**
CONTINUATION

Form C-7 Rev. 2/79

Case Number

CV  02  085
 ID   YR   Number

Style:
Davis v. Hanson + Old Castle

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| | "We, the jury, find that the Plaintiff, CITY OF OPELIKA, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, OLDCASTLE MATERIALS SOUTHEAST, INC., and award Compensatory Damages in the amount of $-0-." |
| | /s/ Foreperson    FILED IN OFFICE  SEP 0 8 2004 |
| | Plaintiff:    CITY OF OPELIKA UTILITIES BOARD |
| | "We, the jury, find that the Plaintiff, CITY OF OPELIKA UTILITIES BOARD, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, HANSON AGGREGATES SOUTHEAST, INC., and award Compensatory Damages in the amount of $-0-." |
| | /s/ Foreperson    FILED IN OFFICE  SEP 0 8 2004 |
| | "We, the jury, find that the Plaintiff, CITY OF OPELIKA UTILITIES BOARD, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, OLDCASTLE MATERIALS SOUTHEAST, INC., and award Compensatory Damages in the amount of $-0-." |
| | /s/ Foreperson    FILED IN OFFICE  SEP 0 8 2004 |
| | IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED BY THE COURT that the jury in this case found for the Plaintiffs, as shown above, and the Court orders the findings be placed upon the record of the Court and let execution lie. |
| | FILED IN OFFICE  SEP 0 8 2004 |
| 9-8-04 | ORDER SETTING CASE FOR STATUS CONFERENCE ON SEPTEMBER 21, 2004 AT 9:00AM. |
| 9/10/04 | RONNIE SMITH AND SHIRLEY SMITH DYSON'S EIGHTH AMENDED AND RESTATED COMPLAINT |
| | |
| | |
| | |
| | |
| | |
| | |

File - # pldgs as

| State of Alabama<br>Unified Judicial System<br><br>orm ARAP-1 (front) | NOTICE OF CROSS-APPEAL TO THE (Check appropriate block)<br>☒ SUPREME COURT OF ALABAMA (ARAP Rule 4(a)(2)<br>☐ COURT OF CIVIL APPEALS OF ALABAMA | Civil Action Number:<br>CV-02-085 |
| --- | --- | --- |

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

APPELLANT (CROSS)

**Oldcastle Materials Southeast, Inc.** (Defendant/Appellee/Cross-Appellant)

v. APPELLEE

**City of Opelika; City of Opelika Utilities Board; Stanley and Jackie Ledbetter; David, Julie and Todd Sumner; Mike and Ann Broadwater; Anthony, Carol and Courtney Clark**

| TRIAL JUDGE<br>Hon. Jacob A. Walker, III | |
| --- | --- |
| DATE OF JUDGMENT: February 1, 2005 | DATE OF POST-JUDGMENT ORDER: N/A |

NOTICE IS HEREBY GIVEN THAT Defendant/Appellee/Cross-Appellant Oldcastle Materials Southeast, Inc. appeal(s) to the above-named court from the ☒Final Judgment entered in this cause on February 1, 2005. (Rule 54(b), Ala.R.Civ.P.)

CHECK THE PROPER DESCRIPTION OF THE APPEALED CASE UNDER THE APPROPRIATE COURT:

| SUPREME COURT | COURT OF CIVIL APPEALS |
| --- | --- |
| 1. ☐ Summary Judgment, amount claimed more than $50,000 | 1. ☐ Summary Judgment, amount claimed $10,000 or less |
| 2. ☐ Judgment Amount exceeds $50,000 | 2. ☐ Judgment Amount $10,000 or less |
| 3. ☐ Amount Sought in trial court more than $50,000, judgment for defendant | 3. ☐ Amount Sought $10,000 or less, judgment for defendant |
| 4. ☐ Equitable Relief, except for domestic relations | 4. ☐ Workmens Compensation |
| 5. ☒ Other: Cross-Appeal | 5. ☐ Domestic Relations |
| | 6. ☐ Other: [Click Here and Type] |

PPELLANT FILES WITH THIS NOTICE OF APPEAL.

| 1. ☐ Security for costs of appeal<br>2. ☐ A supersedeas bond in the amount of $ [Click Here and Type]<br>3. ☐ Deposited cash security in the amount of $ [Click Here and Type] | 4. ☐ Is exempted by law from giving security for costs of appeal<br>by virtue of [Click Here and Type]<br>[Click Here and Type] |
| --- | --- |

Filed [Click Here and Type]
          (Date)

CERTIFIED AS A TRUE COPY:

_____
Circuit Clerk
(Amended                , 1991.)

Adams, Umbach, Davidson & White LLP
Address
205 S. 9th St., Opelika, AL 36801          (334) 745-6466
                                                             Telephone Number

_Phillip E Adams_
Attorney for Cross-Appellant/Oldcastle Materials Southeast, Inc.

## SECURITY FOR COSTS

We hereby acknowledge ourselves security for costs of appeal. For the payment of all costs secured by this undertaking, we hereby waive our right of exemption as to personal property under the Constitution and laws of the State of Alabama.

Executed with our seals this _____ day of _____, 2005

Filed and approved: _____
                                      (Date)

Adams, Umbach, Davidson & White LLP _____ (L.S.)
Appellant-Principal

Phillip E. Adams, Jr. _____ (L.S.)
Surety

C _____

_____ (L.S.)
Surety

Circuit Clerk
(Amended November 9, 1976; October 1, 1991.)

## SUPERSEDEAS BOND

We, the undersigned principal and sureties, hereby acknowledge ourselves bound unto _____ In m of _____ Dollars, for the payment of which we bind ourselves, and each other, our heirs, executors, (for amount of bond see (a)) and administrators, jointly and severally, and as part of this undertaking we hereby waive our rights of exemption as to personal property under the Constitution and of the State of Alabama.

(35441 1

| Form ARAP-1 (back) | Rev. 9/91 | **NOTICE OF APPEAL TO THE** □ Supreme Court of Alabama & Court of Civil Appeals of Alabama |

WHEREAS, the above-named appellee(s) recovered a judgment against appellant(s) for the sum of _____ Dollars (and the further acts or duty

ily) _____ Dollars, the costs in that behalf expended. _____ ) and [describing judgment in addition to or other than for money

NOW, therefore, the condition of the foregoing obligation is such that, if the appellant shall prosecute this appeal to effect, and satisfy such judgment, penalties, and costs, including costs of appeal as may be rendered in this case, then the said obligation to be null and void, otherwise to remain in full force and effect.

Executed with our seals this _____ day of March, 2005.

Filed and approved: _____
                        (Date)

_____ (L.S.)
Appellant-Principal

_____ (L.S.)
Surety

Circuit Clerk _____

_____ (L.S.)
Surety

**EXECUTION OF JUDGMENT STAYED:**
Bond fixed at: $ _____
(Not required for money judgment only.)

Circuit Judge _____

## DESIGNATION OF RECORD ON APPEAL

DESIGNATION OF CLERK'S RECORD: Appellant requests the clerk of include the following checked materials in the clerk's record:

PLAINTIFFS/APPELLANTS HAVE DESIGNATED THE RECORD ON APPEAL.

1. □ Complaint
2. □ Answer
3. □ Counterclaim
4. □ Cross-Claim
5. □ Third-party Complaint
6. □ Third-party Answer
7. □ Motion to dismiss
8. □ Pretrial order

9. □ Entire record (less those items set forth in Rule 10(a))
10. □ Motion for summary judgment
11. □ Opposition to motion for summary judgment
12. □ Final (Judgment) (Order)
13. □ Motion for New Trial
14. □ Ruling on Motion
15. □ Others: [Click Here and Type]
16. □ Exhibit Number: [Click Here and Type]

## TRANSCRIPT STATUS

— Transcript will not be ordered. [See Rule 10(b), ARAP.]   PLAINTIFFS/APPELLANTS HAVE ORDERED THE TRANSCRIPT.

□ Transcript will be ordered. [See Rules 10(b)(2) and 11(a)(2), ARAP.
Form 1A or 1B.] Court reporter(s):
[Click Here and Type]
NOTE: If more than one court reporter was involved in this case, you must file a Transcript Purchase Order Form in compliance with Rules 10(b) and 11 (c), Form 1A or 1B of the ARAP, for each court reporter.
(Amended October 1, 1991.)   Transcript Purchase Order form to be submitted as required by Ala. R. App. P 10(b)(2)

## CERTIFICATE OF FILING

I certify that I have this date filed with the clerk of the trial court the original and six (6) copies of the foregoing notices of appeal (along with $100 docket fee), and such other instruments as have been completed and included herein. A true copy of each of these items will be served by the clerk of the trial court on each of the following:

1) Clerk of the appellate court, (the $100 docket fee shall be transmitted with this filing).
2) Court reporter.
3) Counsel for cross-appellee:

Charles E. Vercelli, Jr. , Vercelli & Associates, P.C., 1019 South Perry Street, Montgomery, Alabama  36104;  und James B. Sprayberry, Post Office Drawer 2429, Auburn, Alabama 36830

DATED this 24 day of March, 2005

_____
Attorney for Cross-Appellant, Oldcastle Materials Southeast, Inc.

(Amended October 1, 1991.)

| State of Alabama<br>Unified Judicial System<br><br>Form ARAP-24 (front) Rev. 1/97 | **DOCKETING STATEMENT**<br>**Appeal to the Supreme Court of Alabama**<br>*NOTE: Completed Cvil Case Cover Sheet must be attached*<br>**CROSS APPEAL** | **Supreme Court Case Number**<br>(To be filled in by Supreme Court.) |
|---|---|---|
| **COUNTY**<br><br>E | **CIVIL ACTION NUMBER**<br><br>CV-02-085 | **TRIAL JUDGE**<br><br>Hon. Jacob A. Walker, III |

**I. PARTY/PARTIES FILING**

APPEAL (Appellant): <u>Defendant/Appellee/Cross-Appellant Oldcastle Materials Southeast, Inc.</u>

**APPELLANT'S**

ATTORNEY: <u>Phillip E. Adams, Jr., Adams, Umbach, Davidson & White LLP</u>      (334) 269-3159

<u>205 South 9th St., Post Office Box 2069, Opelika, Alabama 36803-2069</u>

*Address*          *City*     *State*     *Zip Code*

**II. PARTY/PARTIES APPEALED**

AGAINST (Appellee): <u>City of Opelika; City of Opelika Utilities Board; Stanley and Jackie Ledbetter; David, Julie and Todd Sumner; Mike and Ann Broadwater; Anthony, Carol and Courtney Clark</u>

**APPELLEE'S**

ATTORNEYS: <u>Charles E. Vercelli, Jr., Vercelli & Associates, P.C. (334) 834-8805</u>

<u>1019 South Perry Street, Montgomery, Alabama 36104-5049 and James B. Sprayberry, Jr. (334) 821-7100</u>

*Address*      *City*     *State*     *Zip Code*

<u>Post Office Drawer 2429, Auburn, Alabama 36830</u>

*Address*      *City*     *State*     *Zip Code*

**III. APPELLANT IS THE TRIAL COURT:** ☐ Plaintiff   ☒ Defendant   ☐ Other     **IV. IS THIS A CROSS-APPEAL?** ☒ Yes   ☐ No

**V. RELIEF AWARDED/REQUESTED:**   Please check the appropriate block(s):

A. \_\_\_\_ Monetary damages were either sought or awarded, as set out below;

    1. Compensatory damages were:
      (a) ☐ awarded in the amount of $\_\_\_\_\_
      (b) ☐ not awarded, but sought in the amount of $\_\_\_\_\_;
      (c) ☐ sought, but not awarded - the amount sought was not specified in the complaint.

    2. Punitive damages were:
      (a) ☐ awarded in the **amount of** $\_\_\_\_\_;
      (b) ☐ not awarded, but sought in the amount of $\_\_\_\_\_;
      (c) ☐ sought, but not awarded - the amount sought was not specified in the complaint.

    3. A general award of damages (not differentiating between compensatory and punitive) was:
      (a) ☐ made in the amount of $\_\_\_\_\_;
      (b) ☐ not made, but sought in the amount of $\_\_\_\_\_;
      (c) ☐ sought, but not made - the amount sought was not specified in the complaint.

    4. Other monetary damages (*Type:*
      _____) were:
      (a) ☐ awarded in the amount of $\_\_\_\_\_;
      (b) ☐ not awarded, but sought in the amount of $\_\_\_\_\_;
      (c) ☐ sought, but not awarded - the amount sought was not specified in the complaint.

    5. Was there a remittitur or additur at issue in the trial court?    ☐ Yes    ☐ No
    *(If yes, please provide the details in the "FACTS" section on the lack of this form.)*

B. \_\_\_\_ Equitable and/or declaratory relief was sought in the trial court.

C. \_\_X\_\_ Other (Motion for Judgment as Matter of Law)
    *(Please provide the details of the issue(s) before the Court in the "ISSUES" section on the back of this form.)*

<u>F I L E D</u>
MAR 2 4 2005
IN OFFICE
CORINNE T. HURST
G I Dismissed CIRCUIT CLERK

**VI. TYPE OF JUDGMENT OR ORDER APPEALED.** (Please check one):

| | |
|---|---|
| A ☐ Judgment based on a Jury Verdict | D ☐ Order granting a New Trial |
| B ☐ Judgment based on a Non-Jury Decision | E ☐ Judgment as a Matter of Law |
| C ☐ Judgment Notwithstanding the Verdict (JNOV) | F ☐ Summary Judgment |
| | G ☐ Dismissed |
| | H ☐ Default Judgment |
| | I ☐ Other |

**VII. IF THE CASE WENT TO TRIAL, HOW MANY DAYS DID THE TRIAL TAKE?** 16

**VIII. FINALITY OF JUDGMENT:** Date of entry of judgment or order appealed from: <u>February</u>   <u>01,</u>   <u>2005</u>
            Month        Day       Year

1. Is the judgment or order appealed from in compliance with Rule 58, A.R.Civ.P.?    ☒ Yes   ☐ No
2. Does the order appealed from constitute a disposition of all claims as to all parties?    ☐ Yes   ☒ No
3. If not, did the trial court enter an order intended to make the order final pursuant to Rule 54(b)?    ☒ Yes   ☐ No
4. If the trial court intended to make the order appealed from final pursuant to Rule 54(b), did the court in the Rule 54(b) order expressly determine that there was no just reason for delay and expressly direct that final judgment be entered?    ☒ Yes   ☐ No
5. If the answer to question 2 is "NO" and the trial court did not make the order final by full compliance with Rule 54(b), please explain the basis for seeking appellate review and cite the authority for this appeal.

**IX. POST-JUDGMENT MOTIONS:** List all post-judgment motions by date of filing, type, and date of disposition (whether by trial court order or by the provisions of Rule 59.1, A.R.Civ.P):

| DATE OF FILING | | | TYPE OF POST-JUDGMENT MOTION | DATE OF DISPOSITION | | |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Month | Day | Year |
| Oct. | 7 | 2004 | Motion for Judgment as a Matter of Law | Feb. | 1 | 2005 |
| | | | | | | |

[55445.1]

---

**Form AR \P-24 (back) Rev. 1/97**

**DOCKETING STATEMENT** Appeal to the Supreme Court of Alabama

---

**X. CONSTITUTIONAL ISSUES:**

1. Are the provisions of Rule 44, A.R.App.P., applicable to this appeal? ☐ Yes ☒ No

2. If so, have the provisions been complied with? ☐ Yes ☒ No

**NATURE OF CASE ON APPEAL:** In the left column of boxes preceding the categories listed below, check the box (check only one) that best describes or categorizes the basis or theory of the primary issue on appeal. In the right column of boxes, check any secondary theories that are applicable to the suit.

| TORTS: | | | |
|---|---|---|---|
| 01 ☐☐ Bad Faith | 10 ☐☐ Real Property | 31 ☐☐ Personal | 44 ☐☐ Declaratory Judgment |
| 02 ☐☐ Fraud | 11 ☐☐ Wrongful Death (All Types) | 32 ☐☐ Pension | 45 ☐☐ Injunction (Commercial) |
| 03 ☐☐ Legal Malpractice | 12 ☒☐ Wantonness | 33 ☐☐ Insurance | 46 ☐☐ Injunction (Employment) |
| 04 ☐☐ Medical Malpractice | 13 ☐☐ Conversion | 34 ☐☐ Employment | 47 ☐☐ Injunction (Other) |
| 05 ☐☐ Other Malpractice | 14 ☐☐ Wrongful Employ. Termination | 39 ☐☐ Other:_____ | 48 ☐☐ Extraordinary Writ |
| 06 ☐☐ Products/AEMLD | 15 ☐☐ Premises Liability | OTHER: | 49 ☐☐ Pub.Service Comm |
| 07 ☐☐ Negligence (Vehicular) | 16 ☐☐ Outrage | 40 ☐☐ Real Property | 50 ☐☐ RR/Seaman(FELA) |
| 08 ☒☒ Negligence (General/Other) | 29 ☒☐ Other Nuisance | 41 ☐☐ Civil Rights (Prisoner) | 51 ☐☐ RICO |
| 09 ☐☐ Personal Property | CONTRACTS: | 42 ☐☐ Civil Rights (Other) | 99 ☐☐ Other _____ |
| | 30 ☐☐ Commercial | 43 ☐☐ Wills/Trusts/Estates | |

---

**XII. APPELLATE REVIEW:** Please take notice that your case may be initially reviewed by the Court of Civil Appeals. Pursuant to § 12-2-7, *Code of Alabama 1975*, the Supreme Court has the authority to transfer any civil case within its jurisdiction to the Court of Civil Appeals, except cases presenting a substantial question of federal or state constitutional law; cases involving a novel legal question, the resolution of which will have significant statewide impact; utility rate cases appealed pursuant to § 37-1-140, *Code of Alabama 1975*; bond validation cases appealed pursuant to § 6-6-754, *Code of Alabama 1975*; or Alabama State Bar disciplinary proceedings.

If you believe this case should not be transferred to the Court of Civil Appeals, please state with specificity the reason(s) why it should not be transferred, referring to pertinent sections of § 12-2-7. Reasons should be supported in the ISSUES and FACTS sections of this docketing statement

---

**XIII. ISSUES:** Briefly summarize the issue(s) on appeal.

This is a cross-appeal. Appellee Oldcastle submits that the appeal of the plaintiffs-appellants is in all respects without merit, and that the judgment below is due to be affirmed. In the alternative, as a cross-appeal only, Oldcastle files this cross appeal to reserve briefing error below in the trial court's denials of Oldcastle's plaintiff-specific and count-specific motions for judgment as a matter of law, as relevant to any issues that may be argued by the plaintiffs/appellants in support of reversal and remand.

---

**XIV. FACTS:** Without argument, briefly summarize the facts to inform the court of the nature of the case.

Defendant/appellee/cross-appellant Oldcastle operates a crushed stone quarry in Lee County Alabama. Multiple plaintiffs joined in this action claim property damages and/or personal injuries due to quarry noise, dust, blasting, and/or de-watering. Their complaint included claims for nce, negligence, wantonness, and sought compensatory and punitive damages. The claims of 10 groups of plaintiffs were tried in August-mber, 2004. The jury returned 10 verdicts, one for each group. Six of the ten verdicts were for the defendants. Two of the ten verdicts were nominal damages only. Two verdicts awarded damages, and those verdicts have been settled by Oldcastle. Post-verdict motions were denied. The trial court entered a Rule 54(b) judgment as to the verdicts and the post-verdict motions. Some of the losing plaintiffs, and the plaintiffs who were awarded nominal damages only, are appealing. Oldcastle submits that these appeals are without merit, and the judgment below is due to be affirmed. This cross-appeal, raising the denial by the trial court of Oldcastle's motions for judgment as a matter of law, is filed in the alternative, to preserve review of issues possibly relevant to a trial after remand.

---

March 24 2005
Date

Signature of Attorney/Party Filing this Form

FILED

MAR 2 4 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

155445.1