## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **KEN and NAOMI SCHWIEKER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:06-CV-838** |
| | ) | |
| **OLDCASTLE MATERIALS SOUTHEAST, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFFS' EVIDENTIARY SUBMISSION IN
### SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs hereby file the following exhibits in support of the Motion for Partial Summary Judgment e-filed on the evening of September 6, 2007. These exhibits were too large to e-file on September 6, but per discussion with the Clerk's Office, the exhibits were split into smaller electronic sizes so that they are now capable of submission electronically.

The exhibits electronically filed herewith are:

P MPSJ Exh 3 Vol 8

P MPSJ Exh 3 Vol 9 part 1

P MPSJ Exh 3 Vol 9 part 2

P MPSJ Exh 3 Vol 9 part 3

P MPSJ Exh 3 Vol 10 part 1

P MPSJ Exh 3 Vol 10 part 2

P MPSJ Exh 3 Vol 10 part 3

P MPSJ Exh 3 Vol 10 part 4

P MPSJ Exh 3 Vol 11 part 1

P MPSJ Exh 3 Vol 12 part 1

P MPSJ Exh 3 Vol 12 part 2

P MPSJ Exh 3 Vol 12 part 3

P MPSJ Exh 4 Vol 14 part 1

P MPSJ Exh 4 Vol 14 part 2

P MPSJ Exh 4 Vol 14 part 3

P MPSJ Exh 4 Vol 14 part 4

P MPSJ Exh 4 Vol 14 part 5

P MPSJ Exh 4 Vol 14 part 6

P MPSJ Exh 4 Vol 15 part 1

P MPSJ Exh 4 Vol 15 part 2

P MPSJ Exh 4 Vol 15 part 3

P MPSJ Exh 4 Vol 15 part 4

P MPSJ Exh 4 Vol 15 part 5

P MPSJ Exh 4 Vol 15 part 6

P MPSJ Exh 4 Vol 15 part 7

Respectfully submitted this the 7th day of September, 2007.


s/ C. E. Vercelli, Jr.
**CHARLES E. VERCELLI, JR.** (VER003)
One of the Attorneys for Plaintiffs


**OF COUNSEL:**

LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
TEL:   (334) 821-7100
FAX:   (334) 821-7101
jsprayberry-spraylaw@charter.net

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
TEL:   (334) 834-8805
FAX:   (334) 834-8807
cvercelli@vercelli-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September, 2007, I electronically filed the foregoing with the Clerk of the United States District Court for the Middle District of Alabama, using the CM/ECF system, which will send notification of such filing to the following counsel of record:

    Phillip E. Adams, Jr.
    Rick Davidson
    Matthew W. White
    ADAMS, UMBACH, DAVIDSON & WHITE, LLP
    P. O. Box 2069
    Opelika, AL 36803-2069

I also hereby certify that a copy of the foregoing will be served upon:

    W. F. Horsley
    SAMSON & DENSON, LLP
    P. O. Box 2345
    Opelika, AL 36803-2345

counsel for the landowners, by placing a copy of the same in the United States Mail, postage prepaid and properly addressed on the 7th day of September, 2007.

                        **/s/  C. E. Vercelli, Jr.**
                        Of Counsel

500-06\P MPSJ Evid Sub.1.wpd

1559

3.    Hanson respectfully requests a hearing before this Court regarding the merits of the Plaintiffs' motion to amend at the August 1, 2003 status conference.

Respectfully submitted this 25th day of July, 2003.

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

134181.1                                    2

1551

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 25th day of July, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

_____
Of Counsel

1552

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | F I L E D |
| Plaintiffs, | ) | |
| | ) | JUL 2 8 2003 |
| vs. | ) | CASE NO. CV-02-85   IN OFFICE |
| | ) | CORINNE T. HURST |
| HANSON AGGREGATES | ) | CIRCUIT CLERK |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## HANSON'S OBJECTION TO PLAINTIFFS' EMERGENCY MOTION TO PRODUCE SALES AGREEMENT

Hanson Aggregates Southeast, Inc. ("Hanson") hereby objects to Plaintiffs' Emergency

Motion to Produce Sales Agreement filed on July 10, 2003, as follows.

1.       Plaintiffs' "emergency" motion requests the Court to order the production of

certain documents relating to the transfer of the Opelika quarry from Hanson to Oldcastle

Materials Southeast, Inc.  At the time this motion was filed, the Plaintiffs had not yet requested

these documents from the Defendant under the provisions set forth in the *Alabama Rules of Civil*

*Procedure* regarding the production of documents during the course of discovery.  In light of this

failure, any motion requesting the Court to order such production is premature and should be

denied.

2.       Subsequent to the filing of Plaintiffs' "emergency" motion, Plaintiffs served their

Fourth Interrogatories and Requests for Production of Documents.  This request for production

of documents encompasses the very same documents as requested in Plaintiffs' "emergency"

motion.  As such, Plaintiffs' motion has been rendered moot, and Hanson should be allowed to

respond to Plaintiffs' fourth discovery requests within the time frame set forth in *Ala.R.Civ.P.*

34(b).

1555

3.    Hanson requests Plaintiffs' "emergency" motion be set for hearing at the August

1, 2003, status conference.

Respectfully submitted this 25th day of July, 2003.

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

1554

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this 25th day of July, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

Of Counsel

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED 1555

JUL 2 9 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Civil Action No. CV-20 02-0085 |
| | ) |
| HANSON AGGREGATES SOUTHEAST, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF BAGGETT'S SUPPLEMENTAL
## RESPONSE TO DISCOVERY

Plaintiff Baggett supplements her prior discovery responses as follows:

1.     I was deposed on March 10, 2003.

2.     After reading my deposition recently, I felt that I may have left some things out when I got sidetracked during the deposition.  I therefore want to describe my problems better.

3.     I have allergies real bad, and may not have mentioned those in the deposition.  I take over-the-counter antihistamines for allergies and for sinusitis. This year has been the worst year ever for my allergies, and I am really suffering with this.  I started to wheeze and cough a lot and I am afraid I might be developing asthma.  I use an inhaler frequently at night when I am laying down.  I feel like I am not getting enough air.  I do not need to be home breathing this dust all of the time, but I am not working right now so I cannot do anything about it.

_____
JANETTE BAGGETT

1555

STATE OF ALABAMA
COUNTY OF _Lee_____

    Personally appeared before me, the undersigned Notary Public in and for the State and County aforesaid, the within named **Janette Baggett**, who, after first being duly sworn, and having read and fully understanding the foregoing document, states under oath that the facts and matters stated therein are true to the best of her knowledge, information and belief.

    SWORN TO AND SUBSCRIBED BEFORE me this 28 day of July, 2003.

Notary Public

[SEAL]

My Commission Expires: July 18, 2007

CHARLES E. VERCELLI, JR. (VER003)
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

2

1557

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _28_ day of _____July_____, 2003.

_____
OF COUNSEL

155-00\BaggettSuppResp.1.wpd

3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA **F I L E D** 1658

MIKE DAVIS, et al.,                              )
                                                 )                    JUL 2 9 2003
                      Plaintiffs,                )
                                                 )                      IN OFFICE
                                                 )                  CORINNE T. HURST
                                                 )                   CIRCUIT CLERK
vs.                                              )       Civil Action No. CV-20 02-0085
                                                 )
HANSON AGGREGATES SOUTHEAST,                     )
INC., et al.,                                    )
                                                 )
                      Defendants.                )

## PLAINTIFFS' MOTION TO SHORTEN TIME

Plaintiffs move this Honorable Court to shorten the time to respond to Plaintiffs' Fourth Interrogatories and Requests for Production to Defendant Hanson and Third Interrogatories and Requests for Production to the Young and Gilmer Defendants. As grounds for this motion, Plaintiffs say:

1. Plaintiffs learned, one week before the trial, that Hanson sold the quarry to Oldcastle Materials.

2. To date, Hanson has not admitted the name of the person to whom the quarry was sold, despite Plaintiffs' request at the Hearing on July 11th, and despite the pendency of the Emergency Motion. Therefore, Plaintiffs do not positively know the identity of the new owner of the quarry.

3. In an effort to discover the name of the new owner, the terms of its ownership, the agreements as to indemnity and defense costs, and the knowledge of the new owner of the existence of the lawsuit, among other things, Plaintiffs originally filed the Emergency Motion and have since filed Fourth Interrogatories and Requests for Production to Hanson and Third Interrogatories and Requests for Production to the Young and Gilmer Defendants.

4. If the Court does not order the immediate responses to these discovery requests, and the Defendants are given 30 days to respond–and doubtless they will respond

with an objection in order to delay the October 20th trial setting– then it is likely the Plaintiffs will not discover this important evidence sufficiently far in advance of the trial to be able to conduct such additional discovery as is necessary to properly prepare their case against Hanson and Oldcastle.

5.    The documents requested are easily produced by the Defendants. The Youngs and Gilmers, if they have had any written negotiations with Oldcastle and/or Hanson regarding the sale/transfer of the quarry, have these documents in their immediate possession. Producing the documents and responding to the Interrogatories would be relatively quick and easy.

6.    The same is true for Hanson: the documents are easily within the possession and control of Hanson and whatever lawyers or corporate officials negotiated the sale/transfer for Hanson.

7.    To require the immediate production of the documents and responses to the Interrogatories would not, therefore, be burdensome or unreasonable.

**Wherefore,** Plaintiffs move this Honorable Court to enter an order requiring Hanson to fully respond to the Fourth Interrogatories and Requests for Production by 3:00 p.m. Monday, August 4th, and to enter an order requiring the Young and Gilmer defendants to fully respond to the Third Interrogatories and Requests for Production by 3:00 p.m. on Friday, August 8th.

_C E Vercelly_

_____
**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

2

1500

**OF COUNSEL:**

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey &
        Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by faxing a copy of the same ti each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _29th_ day of ___July___, 2003.

_C E Vercelli_

OF COUNSEL

135-00\P M-Shorten Time.1.wpd

3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' FOURTH INTERROGATORIES AND REQUESTS FOR PRODUCTION TO ALL DEFENDANTS

Plaintiffs request Defendant Hanson to answer the following Interrogatories in writing and under oath pursuant to Rule 33 of the Alabama Rules of Civil Procedure, and to produce the following documents and things pursuant to Rule 34 of the Alabama Rules of Civil Procedure.

### I.  INSTRUCTIONS

Plaintiffs incorporate by reference the instructions stated in their First Interrogatories and Requests for Production to the Defendants.

### II.  DEFINITIONS

Plaintiffs incorporate by reference the definitions stated in their First Interrogatories and Requests for Production to the Defendants.

### III.  INTERROGATORIES AND REQUESTS FOR PRODUCTION

1.    Describe in detail the reason that Hanson sold, swapped, or otherwise transferred the Lee County Quarry to Oldcastle (or whomever it was sold or transferred to).

1562

2.      With respect to the sale, swap, or other transfer of the Lee County Quarry, describe

in detail every step Hanson took

(1) to ensure that the Plaintiffs' complaints about the spoil piles will be

resolved, and describe in detail when the Plaintiffs' complaints will be resolved;

(2) to ensure that the Plaintiffs' complaints about noise will be resolved or

alleviated in some manner;

(3) to ensure that the Plaintiffs' complaints about dust will be resolved or

alleviated in some manner;

(4) to ensure that the Plaintiffs' complaints about blasting will be resolved or

alleviated in some manner; and

(5) to ensure that the Plaintiffs' complaints about the quarry dewatering the

area and causing sinkholes to form will be resolved or alleviated in some manner.

1563

3.    Produce every document in your possession or subject to your control that relates in any way to your answers to interrogatories 2(1) to 2(5).

4.    Produce every document in your possession or subject to your control regarding the sale, swap, or other transfer of the Lee County Quarry to Oldcastle (or to whomever the purchaser or transferee is).

5.    Do you contend that the dye trace conducted by Mr. Aley and/or the testing conducted by Mr. Aley was flawed in any way, was inaccurate in any way, or was conducted in any respect in an erroneous, negligent or unprofessional manner?  If your answer is in the affirmative, describe in great detail your contentions and the bases therefor.

6.    Do you contend that the manner in which Alan Lee placed dye collection charcoal packs, or retrieved them, or shipped them to Tom Aley/Ozark Underground Laboratories was done improperly or in such a manner as to be unreliable, improper, or negligent? If your answer is in the affirmative, describe in great detail your contentions and the bases therefor.

3

1564

7.    Do you contend that the manner in which the charcoal packs were shipped to Mr. Aley is in some manner erroneous or that the manner of shipping affected adversely the proper analyses of those charcoal packs by Mr. Aley and/or his laboratory personnel? If your answer is in the affirmative, describe in detail your contentions and every fact known to you in support of your contentions.

8.    Describe in detail your efforts to test or otherwise determine the validity *vel non* of Mr. Aley's dye trace testing or results, and produce every document in your possession or subject to your control that relates in any way to your efforts in this regard.

9.    Since January 1, 2002, have you conducted any type of dye trace or dye testing, or sampling for any dye, on any portion of the quarry property, the quarry discharge, or elsewhere that relates to the operation of the Hanson Lee County Quarry? If your answer is in the affirmative, please describe such testing in great detail and produce a copy of all documents related to such testing and the results thereof.

4

10.    Once Hanson became aware of the Dye Trace being conducted by Mr. Aley, did

Hanson, its attorneys, its agents, employees, consultants, or any other person known

to Hanson attempt in any way to alter or modify the results of that test, or to

interfere with the Dye Trace results?  If your answer is in the affirmative, describe

in detail such actions and identify the person most familiar with such actions.

11.    Describe in detail the manner in which Hanson and/or its attorneys obtained the

two letters attached to Defendant's Second Motion In Limine regarding Mr. Tom

Aley.

12.    Produce all documents including letters, e-mails, memoranda, notes of telephone

conversations or other documents relating to the manner in which Hanson and/or

its attorneys obtained the two letters attached to Defendant's Second Motion In

Limine regarding Mr. Tom Aley.

1566

13. Produce all documents including, without limitation, contracts, correspondence, memoranda, e-mails, to or from Oldcastle Materials Southeast, Inc., regarding any purchase or sale, "swap", transfer, or assignment of the Lee County Quarry.

14. Produce all correspondence, e-mails, memoranda, records of telephone conversations, faxes or other documents of any type or description relating to any communication with the Alabama Board of Licensure for Professional Geologists, Keith Warren, or any employee or agent thereof, as it relates to Hanson Aggregates Southeast, Inc., the Lee County Quarry, or Thomas J. Aley.

15. Defendant hired a consultant (believed to be Jerry Ingram) to conduct a telephone survey relating to alleged adverse pretrial publicity in Lee County. The results of such survey were offered in part to Judge Walker in support of Defendant's motion to change or transfer venue. *See* May 2, 2002, Affidavit of Mr. Ingram. Describe in detail the manner in which this survey was conducted, how the persons contacted were determined, each and every question asked, and the "script" or other document used in conducting the telephone surveys.

16. Produce all documents in the possession or control of Jerry Ingram as it relates to this telephone survey, including, without limitation, any document purporting to

memorialize in any manner the responses of the persons contacted and the questions asked.

17.    Produce all documents of any type or description (including without limitation any documents relating to assignment or renegotiation of any lease agreements) exchanged between any one or more of the named defendants (whether served or not).

18.    Has Hanson or anyone else on its behalf (or on behalf of Oldcastle or any other company) installed or attempted to install any type of dust monitoring equipment (whether automated, semi-automated, or requiring human intervention) within the past 12 months? If your answer is in the affirmative, please produce all documents relating to the installation of such equipment (including without limitation all invoices and cost of installation documents) and all results obtained from such equipment.

19.    In early 2003, there was an earthquake in Northeast Alabama.  At the time, there were three seismographs permanently installed near the quarry. Please produce the seismograph readings from these seismographs at the time of the earthquake.  If you contend these readings are not available, please explain the reason these readings are not available.

1503

*[signature]*

**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by faxing a copy of the same ti each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _22nd_ day of _july_, 2003.

*[signature]*

OF COUNSEL

155-00\Ps4thIRPD.4.wpd

8

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

1569

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )    Civil Action No. CV-20 02-0085 |
| | ) |
| HANSON AGGREGATES SOUTHEAST, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFFS' THIRD INTERROGATORIES AND REQUESTS
### FOR PRODUCTION TO THE GILMER & YOUNG DEFENDANTS

Plaintiffs request the Gilmer Defendants to answer the following Interrogatories in writing and under oath pursuant to Rule 33 of the Alabama Rules of Civil Procedure, and to produce the following documents and things pursuant to Rule 34 of the Alabama Rules of Civil Procedure.

### I.  INSTRUCTIONS

Plaintiffs incorporate by reference the instructions stated in their First and Second Interrogatories and Requests for Production to the Defendants.

### II. DEFINITIONS

Plaintiffs incorporate by reference the definitions stated in their First and Second Interrogatories and Requests for Production to the Defendants.

### III.  INTERROGATORIES AND REQUESTS FOR PRODUCTION

1.    Please produce all documents in your possession or subject to your control that relate in any way to the sale, transfer, lease, assignment, or other negotiation regarding the Hanson Lee County Quarry to any company, including but not limited to Oldcastle Materials Southeast, Inc.

2.    When did you first learn of any pending sale or transfer of the quarry?                1570

3.    Please describe in detail your knowledge of sale, transfer or assignment of the

Hanson Lee County Quarry to another person or entity.

4.    What is the correct name of the entity that purchased or otherwise obtained control

or ownership of the Hanson Lee County Quarry.


_____
**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

2

1571

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                    H. Wayne Phears
Matt Parnell                           Phears & Moldovan
Balch & Bingham, LLP                   Suite 375
P.O. Box 78                            4725 Peachtree Corner Circle
Montgomery, AL 36101                   Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey &
        Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by faxing a copy of the same ti each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _29th_ day of _____July_____, 2003.

_C E Vuœuf_
OF COUNSEL

155-00\3rdIRPD-Gilmer-Young1.1.wpd

3

FILED

JUL 3 0 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,           )
                                    )
           Plaintiffs,     )
                                    )
vs.                             )    Civil Action No. CV-20 02-0085
                                    )
HANSON AGGREGATES SOUTHEAST,   )
INC., et al.,               )
                                    )
          Defendants.     )

## PLAINTIFFS' RESPONSE TO HANSON'S OBJECTION TO MOTION TO AMEND COMPLAINT

Plaintiffs respond to Hanson's Objection to Plaintiffs' Motion to Amend Complaint and Add a Defendant as follows:

1.    This Response should be read in conjunction with Plaintiffs' response to Hanson's objection to Plaintiffs' Emergency Motion to Produce Sales Agreement. As the Court knows, immediately upon learning that Hanson was selling the quarry less than one week before trial, Plaintiffs moved the Court to order the production of the sales agreement. Hanson objected, citing (without any supporting authority therefor) that "confidentiality" and "SEC rules" would not allow them to tell if the quarry was being sold the very next day. This, despite the fact that everyone in the community knew of the sale to Oldcastle.

2.    Hanson now objects to the Emergency Motion because it was not a "proper" Interrogatory and Request for Production (which would give them another 30 days before they would have to produce it, which, they well know, would give the new Defendant only 30 days before trial once they were finally served). Thus, the objection can be seen for what it is: another of Hanson's delaying tactics.

3.    Turning to the merits of the Objection, Plaintiffs filed a Rule 15(a) Motion to Amend the Complaint to allow them to add a Defendant – the new owner of the quarry to whom Hanson sold its nuisance.

4.    Rule 15(a) provides, in pertinent part:  "... Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause."

5.    **Alabama** Rule 15(a) does not require, or appear to contemplate the filing of, the amended Complaint sought to be filed. Indeed, filing the Amended Complaint prior to the Court granting the Motion would appear contrary to the intent of the Rule.

6.  Hanson's motion, therefore, should be denied: Plaintiffs have rightfully and for good cause shown moved the Court to allow them to amend the complaint for the sole purpose of adding a new Defendant, as Hanson sold the quarry to the new tortfeasor, Oldcastle, and Plaintiffs moved to join the new tortfeasor within days of learning of its existence and ownership.

7.  Regardless, Plaintiffs attach hereto, as Exhibit A, the proposed Fourth Amended and Restated Complaint, which simply adds new paragraphs at the end of the Complaint asserting claims against the new owner of the quarry.

8.  Additionally, Rule 25(c), "Substitution of Parties", clearly provides that Oldcastle can and should be joined immediately in the case:

> "(c) **Transfer of Interest**.  In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.  Service of the motion shall be made as provided in subdivision (a) of this rule."

Accordingly, it is very proper that the Court should immediately order that the new owner of the quarry be **joined** (not substituted) as an additional party, as the transfer of ownership does not in any way absolve Hanson of complete responsibility for all past and future damages to the Plaintiffs.

**Wherefore**, for good cause shown, Plaintiffs move this Honorable Court to deny Hanson's objection and to enter an order granting leave to amend the complaint against Oldcastle.

JAMES B. SPRAYBERRY (SPR008)
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

2

1694

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                           H. Wayne Phears
Matt Parnell                                  Phears & Moldovan
Balch & Bingham, LLP                          Suite 375
P.O. Box 78                                   4725 Peachtree Corner Circle
Montgomery, AL 36101                          Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by faxing a copy of the same to each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the ___30___ day of July, 2003.

_____
OF COUNSEL

L55-00\Resp H Obj to M-Amend.2.wpd

3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**FILED**

JUL 3 0 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S RESPONSE TO HANSON'S OBJECTION TO PLAINTIFFS' EMERGENCY MOTION TO PRODUCE SALES AGREEMENT

1.  Hanson actually objects to giving the Sales Agreement to the Plaintiffs. It does so on two grounds: (1) that Plaintiffs did not file a Rule 33 or Rule 34 discovery request in the first place, and (2) since Plaintiffs have now filed Interrogatories and Requests, the Emergency Motion is moot and Hanson should have 30 more days to give up the documents.

2.  The response is, in all candor, nothing but a meritless delaying tactic.

3.  Plaintiffs learned through the local citizens, not through counsel for Hanson (who had a duty–*de facto* if not *de jure*– to advise the Court and Counsel for the Plaintiffs of the sale), only one week before the scheduled 2-week trial of the case.

4.  As the Court knows, to have tried the case without the new owner would have been a monstrous waste of (1) the Court's time and resources, and (2) Plaintiffs' time and resources. Moreover, and worse, the Court might not have had the power to enjoin the new owner.

5.  Apparently, Hanson was going to wait until the day of the trial to advise the Court and Plaintiffs of this minor fact.

6.  In any event, with one week before trial (9 calendar days), Plaintiffs could not realistically file a Rule 33/34 discovery request, which Hanson would not have to answer until 21 days after the trial began. Therefore, to assert that Plaintiffs should have filed a discovery request is absurd.

7.  Hanson's second ground for denial is that since the Plaintiffs now filed "proper" discovery requests (on July 22) seeking this same information, it should get 30 more days to respond.

8.  The case is set for trial on October 20th, 102 days after the filing of the emergency motion, and 90 days after service of the new Interrogatories and Requests for Production. If Hanson answers on time with no delay (it will likely object on the 30th day, requiring a motion to compel, a subsequent hearing, and more delay), then Plaintiffs will not be told who owns the

1576

quarry (proper names, etc.) or what the terms of the sale are until at best just 60 days before the trial.

9. More importantly, if Hanson's objection is granted, Plaintiffs may not get any discovery from the new owner (including depositions of the new plant manager, the new Corporate Representatives, etc.) until literally days before the trial.

10. Hanson has had, since July 10th, full knowledge that Plaintiffs want the properly discoverable, complete and unredacted sales or other transfer agreement(s). To delay at this point is unreasonable, unfair to the Plaintiffs, and would reward Hanson by essentially ensuring another continuance.

11. Hanson's motion should be denied summarily and the Emergency Motion granted under the circumstances.

12. If necessary, the Plaintiffs move this Honorable Court to treat the Emergency Motion as a motion to shorten time to respond to Plaintiffs' discovery request filed on July 22nd, and to order that Hanson produce the complete and unredacted sales agreement(s) by Monday, August 4th – which would be 25 days after filing the Emergency Motion.

13. Finally, given that (1) Hanson has not otherwise objected to producing the sales agreement(s) despite having the Emergency Motion for over 19 days and (2) that Hanson requested a hearing on the Motion on August 1 without otherwise objecting to the production, the Court should hold the hearing and immediately order production of each and every document relevant to the sale of the quarry by Hanson to Oldcastle.

**Wherefore,** for good cause shown, Plaintiffs move the Court to (1) overrule Hanson's disingenous objection, and (2) order Hanson to produce the complete and unredacted sales agreement(s) or other documents by whatever name not later than 3:00 p.m. on Monday August 4, to the offices of the undersigned.

JAMES B. SPRAYBERRY (SPR008)
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

2

1577

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                          H. Wayne Phears
Matt Parnell                                 Phears & Moldovan
Balch & Bingham, LLP                         Suite 375
P.O. Box 78                                  4725 Peachtree Corner Circle
Montgomery, AL 36101                         Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey &
    Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by faxing a copy of the same to each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the ____30____ day of ____July_____, 2003.

OF COUNSEL

155-00\Resp H Obj to Emerg M Produce Sales Agr.2.wpd

3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED

JUL 30 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

|  |  |  |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO RECONSIDER ORDER DENYING JOINDER OF ADDITIONAL PLAINTIFFS AND MOTION TO JOIN NEW PLAINTIFF

Plaintiffs move this Honorable Court to reconsider its Order of May 27, 2003, denying Plaintiffs' Motion to add as Plaintiffs in this litigation, Donnie Smith and Mr. and Mrs. David Tankersly, and further move this Honorable Court to Add Mr. Ken Schwiecker as a Plaintiff. As grounds for this Motion, Plaintiffs say:

1. On May 16, 2003, Plaintiffs moved this Honorable Court for leave to add Donnie Smith and Mr. and Mrs. David Tankersly as Plaintiffs in this case.

2. Donnie Smith owns property on which numerous sinkholes have formed. His property is located on Spring Villa Road, immediately adjacent to the power line right-of-way and the properties owned by the Utilities Board of the City of the Opelika.Mr. Smith's properties have suffered numerous sinkholes and other collapses caused by Hanson's dewatering of the area including his property.

3. Hanson's experts and attorneys have several times traveled to Mr. Smith's properties to examine the sinkholes and they have had discussions with him prior to his request to be added as a Plaintiff. Mr. Smith does not complain of noise, dust, or damage due to blasting – only that the quarry has caused sinkholes on his land that makes his land unsafe, and that

the sinkholes continue to appear, making it dangerous to walk or ride on substantial portions of his land.  Therefore, aside from deposing Mr. Smith, little needs to be done by the Defendants to discover their case against Mr. Smith.

4.    Mr. and Mrs. David Tankersly live close to Mr. Smith, on Highway 148 (Spring Villa Road).  Numerous sinkholes have developed on their property, which is somewhat west of the Smith and Spring Villa properties.  Mr. Tankersly's well has also gone dry.  As before, the Tankerslys do not complain of noise, dust, or blasting damage.  They complain that Hanson's dewatering has caused sinkholes to form on their land, making it unsafe and jeopardizing their home (a sinkhole has formed near the corner of their home).  Hanson's experts have already spoken with Mr. Tankersly, and Hanson's experts (and possibly its attorneys) have visited the Tankerslys' lands and photographed and otherwise recorded information about the sinkholes and the well water levels (dry except immediately after a heavy rain).  Therefore, there is little left for Hanson to do except to depose the Tankerslys.

5.    Plaintiffs note that Mr. Smith and Mr. Tankersly have long been listed as witnesses on their trial witness list, so that Hanson has long known of these persons' complaints.

6.    Since the Court denied the motion initially, the case has been continued for three more months.  In the interim, Hanson's experts have regularly examined these putative Plaintiffs' properties, have recorded readings from the Tankersly well, and have otherwise "discovered" these persons' claims.

7.    In the interests of judicial economy, it only makes sense to include the Smith and Tankersly claims in this same litigation now.

2

1569

8.    Plaintiffs do not intend to have Mr. Smith and Mr. and Mrs. Tankersly's claims litigated in the first trial of the case. Rather, they are (and have long been) scheduled to be witnesses in the first trial, and will be witnesses regardless whether they are or are not parties to this litigation. However, by adding them as parties now, neither they nor the Defendants will have to re-litigate the exact same issues with the exact same witnesses, the exact same testimony, and the exact same experts. In short, if the Court does not allow the joinder of these parties and claims at this time, there will be another two or three week long trial at some point one or two years down the road, with all of the same parties as Defendants, with all the same facts as related to the geological evidence, and with all the same and witnesses.

9.    It is significant that the Defendants have already fully investigated the Smith and Tankersly lands and the sinkholes thereon. Therefore, Defendants cannot claim an inability to prepare to defend their case. This is especially true since neither parties' claims would actually be litigated in October. Rather, as with the remaining 50-odd plaintiffs, their claims would either be settled after the October trial, or they would go to trial much later than October.

10.   Since Hanson and its experts have already spoken with these Plaintiffs they have already taken GPS coordinates on the sinkholes, they have already examined Mr. Tankersly's dry well (the only dry well in the county), and they have, therefore, already substantially developed whatever factual arguments are necessary to defend their case, there is no reason to delay adding these persons as parties. In point of fact, by adding them as parties, the Defendants would have a better basis (bias and interest in the outcome) to impugn their trial testimony.

3

11.    In addition, another person, Mr. Ken Schwieker, has contacted the Plaintiffs' attorneys about joining this lawsuit.  Mr. Schwieker owns land north of Donnie Smith and adjacent to Little Uchee Creek and the Utilities Board property on the north side of Spring Villa Road. Numerous (at least six major sinkholes) sinkholes have formed on Mr. Schwieker's property, and he feels that it is no longer safe to walk or ride horseback on large portions of his property.

12.    Although Mr. Schwieker would now be added as a plaintiff, his claims for damages would not be presented to the October jury.  Rather, as with the other plaintiffs, the Tankerslys and Mr. Smith, his claim would wait until another portion of the trial of this case after October.

13.    Also as before, Mr. Schwieker does not claim damages for dust, noise or blasting—only the creation of sinkholes on his lands.

14.    Therefore, Hanson will not be prejudiced by adding Mr. Schwieker as a party, Hanson has plenty of time to depose him should it so desire (he will now be listed as an additional trial witness to authenticate and locate the sinkholes on his lands), and Hanson would not be prejudiced by this joinder at this time.

15.    Finally, it would make sense to allow this landowner to also join this case in order to avoid the necessity of having a second or third trial at some point in the future.

16.    The interests of judicial economy, as well as costs to the parties, strongly compels the conclusion that these parties should be allowed to join the current lawsuit, although they should not be added as "parties" whose claims will be adjudicated on October 20th.

4

1582

**WHEREFORE,** for good cause shown, Plaintiffs move this Honorable Court to reconsider

its Order denying the Motion to add Donnie Smith and Mr. and Mrs. Tankersly as parties Plaintiff

and to allow the same, and to enter an order joining Mr. Ken Schwieker as a plaintiff.

_____

**JAMES B. SPRAYBERRY (SPR008)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

1583

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Dorman Walker
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

by faxing a copy of the same to each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the 30 day of July, 2003.

OF COUNSEL

155-00\Ps'Mot-OrderDenyJoinder.2.wpd

6

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

1584

| | | |
|---|---|---|
| **MIKE DAVIS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| **HANSON AGGREGATES SOUTHEAST,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' MOTION TO RETAIN EXHIBIT

Plaintiffs move this Honorable Court to retain a complete copy of the Skelly & Loy report that the Court examined in-camera, for use during the trial of the case.   In support of this Motion, Plaintiffs say:

1.     Plaintiffs filed a Motion to Compel production of several documents, one of which was the Skelly & Loy Phase I report.

2.     On June 13, 2003, the Court entered an Order requiring Hanson to produce parts of that report to the Plaintiffs.

3.     Plaintiffs maintain that the entire document is discoverable.

4.     The Court, at the time of reviewing the document, did not have the benefit of hearing the evidence at trial.

5.     Plaintiffs move the Court to have an unredacted copy of the report available for its review during the trial to determine whether additional portions of the report are, based upon the evidence adduced at trial, relevant, material and discoverable.

**Wherefore,** for good cause shown, Plaintiffs move this Honorable Court to retain a complete copy of the Skelly & Loy Phase I report during the trial so that the Court could, during the trial, determine if additional portions thereof should be produced to the Plaintiffs.

**JAMES B. SPRAYBERRY (SPR008)**
One of the Attorneys for the Plaintiffs

1585

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Dorman Walker
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

by Faxing a copy of the same to each and by placing a copy of the same in the United States mail,
properly addressed and postage prepaid, this the 31 day of July, 2003.

OF COUNSEL

155-00\PsMot-RetainExh.2.wpd

FILED

JUL 31 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

2

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED 1586
AUG 0 1 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, et al.,                    )
                                       )
        Plaintiffs,                    )
                                       )
v.                                     )     Case No.:   CV-02-85
                                       )
HANSON AGGREGATES,                     )
SOUTHEAST, INC., et al.,               )
                                       )
        Defendants.                    )

## NOTICE OF TAKING DEPOSITION

TO:   **Jim Byram, Esq.**                    **John Denson, Esq.**
      **Dorman Walker, Esq.**                P.O. Box 2345
      P.O. Box 78                            Opelika, Alabama 36803-2345
      Montgomery, Alabama 36101-0078

      **H. Wayne Phears, Esq.**
      **Phears & Moldovan**
      Suite 375
      4725 Peachtree Corner Circle
      Norcross, Georgia 30092

        Please take notice that at the time, date and place indicated below, Plaintiff shall
take the testimony by deposition upon oral examination of **The Corporate Representative
of Defendant Oldcastle Materials Southeast, Inc.** who is requested to give testimony
and produce documents related to the following matters:

    1.   The negotiation of the purchase or other transfer of the Hanson Aggregates
         Southeast, Inc., Lee County Quarry to Oldcastle Materials Southeast, Inc.

    2.   The terms and conditions of any agreements or other documents of any type
         or description related to the purchase, transfer, or other assumption of the
         Hanson Aggregates Southeast, Inc., Lee County Quarry to Oldcastle
         Materials Southeast, Inc.

    3.   Any and all negotiations, discussions, or other agreements between
         Oldcastle Materials Southeast, Inc. and any representative of the Gilmer
         Defendants.

Page 1 of 3

4.   Any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Young Defendants.

Such deposition shall be taken for the purpose of discovery or for use as evidence in this action pursuant to the Alabama Rules of Civil Procedure.

**TIME:**   Said deposition shall be taken on Friday, September 5, 2003 commencing at 9:00 A.M. and from time to time thereafter as said deposition may be continued for completion.

**PLACE:**   Said deposition shall be taken in the office of James B. Sprayberry, 225 North Gay Street, Auburn, Alabama 36830.

**TAKEN BEFORE:**   Said deposition shall be taken before someone who is authorized to administer oaths by the laws of the State of Alabama.

Deponent is requested to bring to the deposition all documents related to the following:

1.   The negotiation of the purchase or other transfer of the Hanson Aggregates Southeast, Inc., Lee County Quarry to Oldcastle Materials Southeast, Inc.

2.   The terms and conditions of any agreements or other documents of any type or description related to the purchase, transfer, or other assumption of the Hanson Aggregates Southeast, Inc., Lee County Quarry to Oldcastle Materials Southeast, Inc.

3.   Any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Gilmer Defendants.

4.   Any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Young Defendants.

Charles E. Vercelli, Jr.
One of the Plaintiffs' Attorneys

1588

**OF COUNSEL:**

**CHARLES VERCELLI, JR.**, (VER004)
*Co-Council for Property Owners*
1019 South Perry Street
Montgomery, AL 36104
(334) 834-8807

**JAMES B. SPRAYBERRY** (SPR008)
*Co-Council for Property Owners*
Post Office Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

**GUY GUNTER**
*Council for City of Opelika/ Opelika Water Board*
P.O. Box 409
Opelika, Alabama 36801
(334) 745-6288

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the _1_ day of August , 2003.

James A. Byram, Jr., Esq.
Dorman Walker, Esq.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

Rick Tyler
Montgomery Court Reporting
P.O. Box 1761
Montgomery, Alabama 36102

John Denson, Esq.
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

James Haygood, Esq.
Haygood, Cleveland & Pierce
P.O. Box 3310
Auburn, Alabama 36831-3310

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

_____
Charles E. Vercelli, Jr.

Page 3 of 3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

1589

MIKE & DONNA DAVIS; MIKE & ANN BROADWATER;            )
MITTIE BROADWATER; CITY OF OPELIKA, a Municipal       )
Corporation; THE UTILITIES BOARD OF THE CITY OF       )
OPELIKA, a public corporation; BEAUREGARD WATER       )
AUTHORITY, a public coporation; ANTHONY & CAROL       )
CLARK; CAROL CLARK, as Mother and Next Friend of      )
COURTNEY CLARK; ELAINE EDWARDS; MARY SUE              )
EILAND; MEDENA FRIZZEL; MEDENA FRIZZEL, as            )
Mother and Next Friend of KARLA FRIZZELL and          )
BRIANNA YOUGREN; RONNIE & DOROTHY GRIGGS;             )
MIKE & STACEY HAGENS; HOWARD & LISA HARMON            )
LISA HARMON, as Mother and Next Friend of JUDSON &    )
BRIA HARMON; HAYWARD & NORA JACKSON; MIKE &           )
SHELIA LaMACCHIA; SHELIA LaMACCHIA, as Mother         )
and Next Friend of RUSSELL LaMACCHIA;    STANLEY &    )
JACKIE LEDBETTER; TERRY & CAROL LONG; TIM &           )
ADA MANNING; DAVID & JANETTE BAGGETT; JAMES           )
& SHIRLEY PARKER; RANDALL & WANDA PARKER;             )
WANDA PARKER, as Mother and Next Friend of AMBUR      )
& BRANDON PARKER; JEFF & MARIA RICHARDSON;            )
MARIA RICHARDSON, as Mother and Next Friend of        )
NATASHA RICHARDSON; DAVID & AMANDA                    )
SUMNER; AMANDA SUMNER, as Mother and Next Friend      )
of TODD SUMNER; LARRY & RITA SUMNER; MARTHA           )
TREADWAY; MARTHA TREADWAY, as Guardian and Next       )
Friend of JASMIN, MICHAEL, HAZEL & JOSEPH KING;       )
BILLY &  SHERRY WALLACE; SHERRY WALLACE, as           )
Mother and Next Friend of AARON WALLACE;              )
MICHELE WILKES; SHIRLEY WILSON; BETTY J.              )
PFINGSTON; BETTY J. PFINGSTON, as Guardian and        )
Next Friend of JESSICA PFINGSTON; and WONDA           )
BRIGHT,                                               )
                                                      )
                          Plaintiffs,                 )
                                                      )     Civil Action No.
vs.                                                   )
                                                      )     CV-20 02-85
HANSON AGGREGATES SOUTHEAST, INC.; LOUISE             )
YOUNG O'BRIEN; VIRGINIA YOUNG PRIEST; VIRGINIA        )
HART YOUNG; CLAUDE JOHN YOUNG;CHARLES W.              )
GILMER, SR.; ALICE C. GILMER; CHARLES W. GILMER,      )
JR.; KAMMY GILMER; BARBARA GILMER SMITH; GARY         )
SMITH; MATTHEW RUTTLEDGE GILMER; LELIA                )
WILDER GILMER; GILMER PROPERTIES, LTD.; and           )
OLDCASTLE MATERIALS SOUTHEAST, INC.,                  )
                                                      )
                          Defendants.                 )

FILED

AUG 0 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

**THIRD AMENDED AND RESTATED COMPLAINT**

1500

1. Plaintiffs Mike and Donna Davis, who reside at 149 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Davises aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: cracks have formed in the basement and in the fireplace; the tiles in the ceiling of the basement are falling out; their boat and boathouse are forever covered by a thick coat of dust; Donna Davis has developed allergy and sinus problems within the last two years, caused by the Defendants; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

2. Plaintiffs Mike and Ann Broadwater, who reside at 610 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Broadwaters aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: a cracked foundation; cracked ceilings; a cracked fireplace; unlevel floors; Plaintiff Mike Broadwater has had a lung transplant and the never ending dust, noise and shaking of the home have greatly aggravated his condition; and other known and unknown damages.

3. Plaintiff Mittie Broadwater, who resides at 574 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Broadwater avers that as a result of Defendants' actions her home and property have sustained the following damages, among others: the blocks under her mobile home have cracked and are falling apart; the front and back doors of her home are hanging up on the bottom of the doorway; the windows of her home are cracked; and there are other known and unknown problems with her home and property.

4. Plaintiff City of Opelika is a municipal corporation organized under the laws of the state of Alabama, situated in Lee County, Alabama.

5. Plaintiff The Utilities Board of the City of Opelika, is a public corporation that operates a public water supply and distribution system on behalf of the City of Opelika and surrounding areas of Lee County, Alabama.

6. Plaintiff, the Beauregard Water Authority, is a public corporation that operates a public water supply and distribution system on behalf of the Beauregard community and surrounding areas of Lee County, Alabama.

7.      Plaintiffs Anthony and Carol Clark, who reside at 1740 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Clarks aver that as a result of the Defendants' actions their home, property and families have sustained the following damages, among others: cracked walls and ceilings; cracks in the foundation of the home; cracked windshields in their vehicles; sink holes have formed on their property; the allergies and asthma suffered by certain family members have been aggravated and their medical conditions will continue to deteriorate; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

8.      Plaintiff Courtney Clark is a minor citizen of Lee County, Alabama, who resides with his parents Anthony and Carol Clark. Plaintiff Courtney Clark avers that as a result of the Defendants' actions, he has developed asthma, suffers from this disease daily, and will continue to suffer from this condition. He may have other known and unknown damages.

9.      Plaintiff Elaine Edwards, who resides at 3274 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Edwards avers that as a result of the Defendants' actions, her homes and the home of her mother have sustained the following damages, among others: her home vibrates; cracks in the sidewalks; the concrete steps have pulled away from her concrete porch; her renal condition has been aggravated by the constant vibrations and dust; she has incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

10.     Plaintiff Mary Sue Eiland, who resides at 2853 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Eiland avers that as a result of the Defendants' actions her home and property have sustained the following damages, among others: cracked windshields; cracks in the concrete; walls cracked in every room of her home; tiles falling from the bathroom ceilings; and other known and unknown problems with her home and property.

11.     Plaintiff Medena Frizzel, who resides at 3173 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Plaintiff Medena Frizzell avers that as a result of the Defendants' actions her home, property, and family have sustained the following damages: cracked windshield on her vehicle; cracked windows in her home; cracked mirrors; ceiling leaks; cracked ceilings; trim falling off walls; pictures falling off

1592

walls; her home is unlevel; the electricity and power blink off and on when blasting occurs; Plaintiff Medena Frizzell has suffered a recurrence of her childhood asthma within the last three years; she has incurred medical expenses; and other known and unknown problems with her home and property.

12.   Plaintiff Karla Frizzel is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Karla Frizzel avers that as a result of the Defendants' actions she has developed an asthmatic condition and will continue to suffer from this condition.

13.   Plaintiff Brianna Yougren is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Brianna Yougren avers that as a result of the Defendants' actions she has  has developed an asthmatic condition and will continue to suffer from this condition.

14.   Plaintiffs Ronnie and Dorothy Griggs, who reside  at 3256 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Griggs aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages, among others: cracked foundation; cracked sidewalks; cracks in the bathroom tile; flower boxes are pulling away from the walls of the house; Plaintiff Dorothy Griggs has developed allergy and sinus problems due to the constant presence of quarry dust in her home and on her property; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

15.   Plaintiffs Mike and Stacy Hagans, who reside at 1668 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Hagans aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages: cracked windshields on their vehicles; sinkholes have formed on their property; their house is unlevel; cabinets are separating from the walls of their home; cracked windows; the allergies suffered by certain family members have been aggravated; Plaintiff Stacy Hagans suffers from inflamed and infected sinuses; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

16.    Plaintiffs Howard and Lisa Harmon, who reside at 145 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Harmons aver that as a result of the Defendants' actions their home, property, and family have sustained the following damages, among others; their home vibrates during blasting activities; cracked bricks on the exterior of the home; cracks in fireplace; Plaintiff Howard Harmon has developed chronic sinusitis ; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

17.    Plaintiff Judson Harmon is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Lisa Harmon. Plaintiff Judson Harmon avers that as a result of the Defendants' actions he has developed allergic rhinitis and will continue to suffer from this condition.

18.    Plaintiff Bria Harmon is a minor resident citizen of Lee County who resides with her parents, and who brings this action by and through her mother and next friend, Lisa Harmon. Plaintiff Bria Harmon avers that as a result of the Defendants' actions she has developed chronic allergies and sinus problems and she will continue to suffer from this condition.

19.    Plaintiffs Hayward and Nora Jackson, who reside at 1141 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Jacksons aver that as result of the Defendants' actions, their home, property and family have been damaged as follows: mud and water constantly stands on their property inviting the presence of swarms of insects, frogs, snakes and other pests; Plaintiff Nora Jackson has developed chronic bronchitis, inflammatory lung disease, atypical pneumonia, and acute respiratory distress syndrome; the family has incurred medical expenses; and other known and unknown damages.

20.    Plaintiffs Mike and Shelia LaMacchia, who reside at 1355 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The LaMacchias aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: their backyard underground spring has gone dry; the foundation of their home is cracked; they have incurred medical expenses as of result of their child's illnesses; and other known and unknown problems with their home and property.

1594

21.    Plaintiff Russell LaMacchia, is a minor resident citizen of Lee County, Alabama, who resides with his parents, and who brings this action by and through his mother and next friend, Shelia LaMacchia.   Plaintiff Russell LaMacchia avers that as a result of the Defendants' actions, he has developed otitis media and will continue to suffer from this condition.

22.    Plaintiffs Stanley and Jackie Ledbetter, who reside at 1330 Lee Road 166, and also own rental properties located across the street at 1333 Lee Road 166, Lots #2-9, 1377 Lee Road 166, 1332 Lee Road 166, 1334 Lee Road 166, 1336 Lee Road 166, and 1340 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.  The Ledbetters aver that as a result of the Defendants' actions, their homes, properties and family have sustained the following damages, among others:  cracked windows; foundation cracks; cracked ceilings; unlevel mobile homes; and other known and unknown problems with their home and properties.

23.    Plaintiffs Terry and Carol Long, who reside at 3379 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.  The Longs aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracks in cement sidewalks; cracks in cement around swimming pool; cracks around windows; cracks in trim work; recent cracks forming in three year old addition to home; and other known and unknown problems with their home and property.

24.    Plaintiffs Tim and Ada Manning, who reside at 3226 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.  The Mannings aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: chipped paint on their vehicles as result of blasting debris landing in their yard; cracked windshields; a cracked foundation on their home; cracks in  driveway and in cement area around their swimming pool; crack in swimming pool; and other known and unknown problems with their home and property.

25.    Plaintiffs David and Janette Baggett, who reside at 1198 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.  The Baggetts aver that as a result of the Defendants' actions, their homes, property, and family have sustained the following damages, among others: leaks in their ceilings; cracks in

ceilings; cracks in walls; mobile homes are unlevel; Plaintiff Janette Baggett's depression and nervous condition has been greatly aggravated by the constant noise, blasting and shaking that occurs in her home; Plaintiff David Nash has developed allergy and sinus problems within the last two years; they have incurred medical expenses; and other known and unknown problems with their homes and property.

26.    Plaintiffs James and Shirley Parker, who reside at 3039 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. James and Shirley Parker aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: cracked windows; a cracked foundation; cracks in the walls and ceilings of their home; due to the constant presence of quarry dust, Plaintiff Shirley Parker has developed asthma within the last two years; and other known and unknown damages.

27.    Plaintiff Randall and Wanda Parker, who reside at 1229 Lee Road 166, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs' Randall and Wanda Parker are riparian owners south of Spring Villa Park who own part of Little Uchee Creek. Randall and Wanda Parker aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked foundation; cracked chimney; cracked sheet rock; cabinets pulling away from the walls; light fixtures are loose and fall when blasting occurs; Plaintiff Wanda Parker developed asthma approximately 1 year ago; they have incurred medical expenses and will continue to do so; and other known and unknown damages. Furthermore the Randall and Wanda Parker aver that the past and future actions of the Defendants will irreparably harm their family's interests in and to Little Uchee Creek, as well as the interests of many other citizens of Lee County, Alabama, who use the creek as they do.

28.    Plaintiff Ambur Parker is a minor resident citizen of Lee County who resides with her parents James and Wanda Parker, and who brings this action by and through her mother and next friend, Wanda Parker. Plaintiff Ambur Parker avers that as a result of the Defendants' actions, she has developed asthma within the last year and will continue to suffer from this condition.

29.    Plaintiff Brandon Parker is a minor resident citizen of Lee County who resides with his parents James and Wanda Parker, and who brings this action by and through his mother and

7

next friend, Wanda Parker. Plaintiff Brandon Parker avers that as a result of the Defendants' actions, he has developed allergy and sinus problems that include nose bleeds and will continue to suffer from this condition.

30. Plaintiffs Maria and Jeff Richardson, who reside at 265 Lee Road 705, are over the age of nineteen years and are residents of Lee County, Alabama. The Richardsons aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: cracked foundation; cracks in the ceiling; Plaintiff Jeff Richardson has developed allergic sinus problems; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

31. Plaintiff Natasha Richardson is a minor resident citizen of Lee County who resides with his parents and who brings this action by and through her mother and next friend, Maria Richardson. Plaintiff Natasha Richardson avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

32. Plaintiffs David and Amanda Sumner, who reside at 164 Lee Road 148, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. David and Amanda Sumner aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others; cracked foundation; crack in the ceilings; crack in the concrete surrounding the swimming pool; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

33. Plaintiff Todd Sumner, is a is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Amanda Sumner. Plaintiff Todd Sumner avers that as a result of the Defendants' actions, he developed asthma at the age of three months and will continue to suffer from this condition.

34. Plaintiffs Larry and Rita Sumner, who reside at 1100 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs Larry and Rita Sumner aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked windshields; house is unlevel; cracked roof; cracked ceilings; cracked walls; slit roof beams; and other known and unknown damages.

35. Plaintiff Martha Treadway, who resides at 3177 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Treadway avers that as result

of the Defendants' actions, her home, property and family have sustained the following damages, among others: destroyed field lines; cracked ceilings; cabinets pulling away from the walls; she has developed chronic pulmonary disease, a serious problem with her lung, in the last three years; bricks falling off the frame of the house; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

36.   Plaintiff Jasmine King, is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Martha Treadway.  Plaintiff Jasmine King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

37.   Plaintiff Michael King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway.  Plaintiff Michael King avers that as a result of the Defendants' actions, he  has developed asthma and will continue to suffer from this condition.

38.   Plaintiff Hazel King is a minor resident citizen of Lee County who resides with her grandmother, and who brings this action by and through her grandmother and next friend, Martha Treadway. Plaintiff Hazel King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

39.   Plaintiff Joseph King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway. Plaintiff Joseph King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

40.   Plaintiffs Billy and Sherry Wallace, who reside at 1692 Lee road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.  The Wallaces aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others:  pictures are  being knocked off walls and destroyed; cracked ceilings; windows knocked out of the home; cracked fireplace stones; cracked windows; their older child suffers from asthma but has been in remission since leaving the family home; Plaintiff Billy Wallace has developed a cavitary lung disease; the family has incurred medical expenses and will continue to do so; and other known and unknown damages.

41.    Plaintiff Aaron Wallace is a minor resident citizen of Lee County who resides with is parents, and who brings this action by and through his mother and next friend, Sherry Wallace. Aaron Wallace avers that as a result of the Defendants' actions he has developed asthma, chronic allegeries, sinuitis; that he is forced to sleep under a cold air humidifer; and will continue to suffer from these conditions, and other known and unknown damages.

42.    Plaintiff Michele Wilkes, who resides at 148 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Wilkes avers that as the result of Defendants' actions, her home and property have sustained the following damages, among others: a cracked foundation; bricks separating from a concrete porch; water leakage in her basement; concrete blocks in basement separating; concrete pad and step s pulling away from the house; she has developed sinus problems in the last three years; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

43.    Plaintiff Shirley Wilson, who resides at 64 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Wilson avers that as a result of the Defendants' actions, her home and property have sustained the following damages, among others: the well located on her property is filling in; cracked walls; cracked foundation; she has developed an allergy to dust that was worsened over the last year; and other known and unknown damages.

44.    Plaintiff Betty J. Pfingston, who resides in one of the mobile homes owned by Stanley Ledbetter off of Highway 166 in Lee County, and is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Pfingston avers that as a result of the Defendants' actions, the mobile home in which she lives has been damaged; she has to put up with the noise, vibration, dust, and other irritations caused by the quarry, to her great inconvenience and harm; and she has suffered other known and unknown damages.

45.    Plaintiff Jessica Pfingston is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Betty J. Pfingston. Jessica Pfingston avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition, and other known and unknown damages.

46.    Plaintiff Wonda Bright resides at 245 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Bright avers that as a result of the Defendants'

actions, she has suffered the following damages: she cannot escape the noise, truck traffic noise, blasting noise and vibration, dust, and her home has suffered cracks on the concrete porches. Additionally, she has developed allergies and must now take allergy medication, and she has been unable to sell her house and move away from the nuisance.

47. Defendant Hanson Aggregates Southeast, Inc. (hereinafter "Hanson") is a foreign corporation doing business in Lee County, Alabama. It owns and operates a limestone quarry, equipment terminal and an explosives holding area on the property belonging to the Young Defendants and the Gilmer Defendants.

48. Defendants Louise Young O'Brien, Virginia Young Priest, Virginia Hart Young, and Claude John Young (hereinafter "the Young Defendants") are either members of a limited partnership or a general partnership. The Young Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Opelika Materials, Inc., and ultimately to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Young Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Young Defendants.

49. Defendants Charles W. Gilmer, Sr., Alice C. Gilmer, Charles W. Gilmer, Jr., Kammy Gilmer, Barbara Gilmer Smith, Gary Smith, Matthew Ruttledge Gilmer, Lelia Wilder Gilmer, and Gilmer Properties, Ltd. (hereinafter "the Gilmer Defendants") are either members of a limited partnership or a general partnership. The Gilmer Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Gilmer Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Gilmer Defendants.

## STATEMENT OF FACTS

50.  The individual Plaintiffs all reside within a mile or so of the Defendants' properties, near Lee County Road 166 and Alabama Highway 169, and all own property that is in close proximity to the quarry owned and/or operated by Defendants Hanson.

51.  The Beauregard Water Authority operates water wells in or near the same "chewacla marble" terrain. The Plaintiff believes the water table has been effected and that this adverse impact will increase in the future if the quarry continues to operate. They also believe the repetitive blasting has caused damage to its water lines and will continue to do so in the future.

52.  The City of Opelika owns Spring Villa Park and swimming pool, and The Utilities Board owns and operates properties surrounding Spring Villa Park, including a natural spring that has flowed, non-stop, for generations. The spring ceased to flow in the spring of 2000, within a few years after the quarry began pumping millions of gallons of water per day out of the quarry pit. The quarry pit and the spring are in the same "chewacla marble" (aka limestone) terrain, which is highly fractured, and through which water migrates easily. Plaintiffs aver that the quarrying activities of the Defendants have in fact caused the spring to go dry.

53.  The Spring Villa Park swimming pool was fed by the spring water, so that the swimming pool is now dry and has been since the spring of 2000. Therefore, both the City of Opelika and The Utilities Board have suffered various damages. Although the Utilities Board does not now rely upon the spring for a source of public drinking water, it may do so in the future, so that the Defendants' actions in drying the spring have and will cause damage to the City and to The Utilities Board. The City of Opelika has also now lost the opportunity to construct a recreational lake on and upon the Spring Villa Park property, for use by the public for recreational purposes. The land owned by the City and The Utilities Board have, therefore, been devalued by the actions of the quarry.

54.  Were the Court to enjoin the quarry from pumping water from the aquifers in the area, and require it to allow the quarry pit to fill, it is probable that the "cone of depression" caused by pumping such large quantities of water from the quarry pit will gradually disappear, and it is probable that the spring would again flow.

55.  The Defendants' operation of a limestone quarry constitutes a nuisance.

56.  The actions of the Defendants have caused a de-watering of the subsoil in a large area surrounding the quarry.

57.  The Hanson quarry operation is immediately adjacent to the Dixie Pipeline, a very large transcontinental liquid propane gas pipeline. The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within as little as 100 feet of the pit created by the Defendants' operations.

58.  There is a substantial likelihood that the operations of the Defendants in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry. This result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

59.  An example of one such sinkhole is a 25 feet in diameter, 20 feet deep sinkhole that developed within the last two months, 34 feet east of the pavement of Highway 166, and only 233 feet north of the center of the Dixie Pipeline easement that crosses Highway 166.

60.  Sinkholes have also formed on the Plaintiffs' lands, including a large sinkhole in the driveway of the Clarks, which was filled with many dumptruck loads of dirt. This sinkhole, and others, formed only a few hundred feet south of the Dixie Pipeline easement and within a few hundred feet of the quarry pit.

61.  The operations of the quarry in causing sinkholes to form now and in the future will in fact endanger the viability of the Dixie Pipeline. It is entirely possible, and indeed foreseeable, that if the ground beneath the Dixie Pipeline were to give way, particularly at a welded joint, the Dixie Pipeline would then rupture. A rupture of the pipeline could very well cause an explosion of devastating proportions. An explosion from the Dixie Pipeline could literally incinerate an area hundreds of yards in diameter, including Plaintiffs' homes and/or passing motorists on Highway 166.

62.  Many of the Plaintiffs' homes are located within a few hundred yards of the Dixie Pipeline and the Defendants' quarry.

63.  In recent depositions of Hanson corporate representatives, it was also learned that Hanson has violated several of the terms and conditions of Dixie Pipelines' "blasting guidelines", which Dixie relied upon in granting Hanson permission to blast so close to the pipeline. These violations included using too many pounds of explosives too close to the pipeline and failing to notify Dixie Pipeline personnel of their intentions to blast so that Dixie could

reduce the operating pressure on the pipeline–a safety measure designed to protect the integrity of the pipeline and to avoid damage to the pipeline.

64.     Hanson necessarily uses thousands of pounds of explosives each week in blasting at the quarry. The blasting obviously throws thousands of pounds of earth, including rock, dust, and fine particulate, into the air in and around the quarry.

65.     The blasting causes shaking of the earth, shaking of the Plaintiffs' homes, and the throwing of rock, dirt and dust onto and about the lands of the Plaintiffs.

66.     As part of its operations, Hanson necessarily contracts with trucking companies and tractor-trailer and dump-truck operators to remove their product from the quarry site and onto the roads and highways in Lee County, including Highways 169 and 166, among others. This causes from dozens to hundreds of trucks daily to enter and exit from the quarry. These trucks are loaded to weights substantially in excess of the design criteria for the roads and highways, and cause substantial amounts of dust and debris to be deposited on the public roads and upon the lands of many of the plaintiffs.

67.     As part of its operations, Hanson necessarily moves large quantities of overburden to a "spoil pile" area that is immediately adjacent to several of the Plaintiffs' lands, including the Davises, the Harmons, Ms. Wilkes, and the Jacksons.

68.     The quarrying activities from this pit inevitably cause substantial, objectionable, and unceasing noise during most hours of the day and many hours of the night, as the plant generally operates from 6:00 a.m. until 6:00 p.m. and often thereafter. This noise also occurs commonly on the weekends, sometimes including Sundays. This noise comes from rock crushers, explosions, loud machinery operating many hours during the day and night, whistles, backup bells on heavy equipment, large trucks traveling up and down the roads and highways, and other such noises.

69.     The quarrying causes dust and other pollutants to accumulate on the Plaintiffs' property, including inside their homes, and in the air on their property and near their property, thereby causing damage to the Plaintiffs personally and to their real property.

70.     Hanson has, for several years, had actual and constructive knowledge that sediment and erosion floods onto Plaintiff Jackson's lands and onto Plaintiff Randall Parker's lands. Despite requests to stop the erosion and flooding, Hanson has ignored the problem and has failed to take any corrective action whatsoever.

71. The quarrying causes such a constant noise and vibration to the Plaintiffs' property, including their homes, that they cannot peaceably enjoy their land.

72. Defendants' operations are so loud and annoying that at many times, it is impossible for some of the Plaintiffs to sleep – especially those who work at night and must sleep during the day, such as Mr. Davis.

## COUNT ONE
### (Private and Public Nuisance)

73. Plaintiffs reallege paragraphs 1 through 70 of the Complaint as if set out here in full.

74. Defendant Hanson's quarrying operations have caused and are causing a private and/or public nuisance to exist, as described above. The quarrying is harmful to the public and adversely affects people of ordinary sensibilities.

75. Hanson's operations create unreasonably loud noises, vibrations, dust, and pollution, and cause a tremendous increase in traffic from dangerously loaded heavy trucks. These and other damages alleged in this Complaint harm the public generally.

76. The Plaintiffs have suffered and continue to suffer hurt, inconvenience, and other damages that are different in kind and degree than the damages suffered by the general population of Lee County. Moreover, the Plaintiffs have suffered damages due to Defendants' conduct that would affect any ordinary, reasonable person, and such damages are not such as would be fanciful or as would affect only a person of fastidious taste. Plaintiffs have the right to file this claim under Alabama Code Sections 6-5-120, 6-5-123, 6-5-124, 6-5-125 and 6-5-127.

77. The damages caused to the individual Plaintiffs include, but are not limited to:

   a. lack of quiet enjoyment of their property, which includes, at times, a complete inability to use or enjoy their property;

   b. noise generated by machinery operating virtually twenty-four hours per day;

c.  pollution of the air by dust generated from blasting, diggings, movement of equipment and operation of heavy machinery and manufacturing plants;

d.  permanent devaluation of the Plaintiffs' land and homes by the above mentioned nuisance;

e.  noise, vibration, and damage to their homes and property caused by the Defendants' use of explosives and the blasting in the quarry;

f.  increase in pollution (air, noise, garbage) caused by the increase in traffic volume of heavy and dangerous trucks;

g.  broken windshields and damaged automobiles caused by the trucks going to and from the quarry at all hours;

h.  mental anguish and mental suffering of these Plaintiffs as they worry about the safety and value of their loved ones, their homes, and their lands; and

i.  Personal injury, including causing some plaintiffs to develop asthma and other breathing/pulmonary problems, and exacerbating other plaintiffs' existing asthmatic and other breathing/pulmonary problems.

78.  Hanson's actions have been repetitive, willful, wanton and aggravated. Hanson has ignored and violated the important "blasting guidelines" of the Dixie Pipeline (which are designed to ensure the integrity of the pipeline, and, therefore, the safety of the community), and Hanson has continued to blast even though inside the Opelika police jurisdiction and even though it was requested by Plaintiffs to refrain from blasting.

79.  Moreover, despite actual knowledge that the spoil pile is sloped very steeply, was never planted with any type of vegetation to arrest erosion and runoff, and that, therefore, large quantities of dirt and sediment migrate onto the Plaintiffs' properties, Hanson has taken

absolutely no steps to limit or stop the erosion and continuing trespasses. This conduct justifies the imposition of punitive damages.

80.  Hanson has continued to process and manufacture rock and rock by-products. Moreover, the Defendants continued their operations with full knowledge of the damages being forced upon the individual Plaintiffs, as well as the public at large, and Defendants have not abated their nuisance despite demand to do so.

81.  Defendants' actions constitute a private and public nuisance, and their actions are or can be abated, so that the nuisance created and maintained by the Defendants is abatable.

82.  The damages suffered by the City of Opelika and The Utilities Board of the City of Opelika include loss of public property, recreational uses and benefits to the public generally, loss in value of public property, and loss of water to be used as a backup source of clean drinking water for citizens of Opelika and Lee County.

83.  If Hanson is allowed to continue pumping water from the quarry pit, further dewatering of the area will occur, the cone of depression will enlarge, and eventually more private, and quite possibly public, water wells will go dry or be reduced in capacity.

**WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable, and in addition, request this Honorable Court to enter injunctive relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT TWO
### (Negligence and Wantonness)

84.  Plaintiffs reallege paragraphs 1 through 81 of the Second Amended and Restated Complaint as if set out here in full.

17

85. Defendant Hanson has a duty to operate the quarry in a manner that will not cause unreasonable injury to adjacent and/or nearby landowners.

86. Defendant Hanson breached its duty by damaging the Plaintiffs as stated above.

87. As described above, Plaintiffs suffered damages due to the negligent and wanton and willful manner in which Defendant Hanson operates the quarry.

88. Defendant Hanson has actual knowledge that the manner in which it is operating its quarry was causing the very damages (both public and private) stated above in this Complaint. Despite such actual knowledge (made known to them by oral and written notice), the Defendant continues to cause the damages stated above. Moreover, the Plaintiffs from time to time protested the manner in which Defendant operates the quarry, yet Defendants refused to change or alter their practices, all to the continued detriment of the Plaintiffs.

89. The manner in which Defendant Hanson ignored the Plaintiffs' complaints constitutes rude, wanton, outrageous, and/or reckless conduct for which Hanson should be punished by the imposition of punitive damages.

**WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable, and in addition, request this Honorable Court to enter injunctive relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT THREE
### (Trespass)

90. Plaintiffs reallege paragraphs 1 through 87 of the Second Amended and Restated Complaint as if set out here in full.

91. The manner in which Defendant Hanson operates the quarry has caused noxious fumes, dust, particulate matter, and garbage to enter upon Plaintiffs' lands without their consent and

*Circuit Court No.* CV02-85 *Supreme Court No.* 1040857

# APPEAL

TO

# Supreme Court of Alabama

## FROM

MIKE & DONNA DAVIS ETAL-OLDCASTLE MATERIALS SOUTHEAST, INC. & HANSON AGGREGATES SOUTHEAST, INC.

*Appellant*

## vs.

HANSON AGGREGATES SOUTHEAST, INC ETAL. & CITY OF OPELIKA, CITY OF OPELIKA UTILITIES BOARD ETAL

*Appellee*

1607

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                          *
                    Plaintiff,               *
                                             *       CASE NUMBER: CV-02-85
v.                                           *
                                             *
                                             *
HANSON AGGREGATES SOUTHEAST,                 *
INC., et al.                                 *
                    Defendants.         *

### ORDER

Before the Court is the Plaintiffs, motion for leave to amend the complaint to add

Oldcastle Materials Southeast, Inc. as a Defendant. Upon consideration of the same and

for good cause shown the motion is granted and Plaintiffs are instructed to forwith issue

process to Defendant Oldcastle Materials Southeast, Inc.

_____
Circuit Judge

cc:    James B. Sprayberry
       Charles E. Vercelli, Jr.
       Guy F. Gunter, III
       James A. Byram, Jr.
       H. Wayne Phears
       John Denson

FILED

AUG 0 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK



FILED

AUG 0 1 2003

IN OFFICE 1608
CORINNE T. HURST
CIRCUIT CLERK

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,  \*
      **Plaintiff,**  \*
                                     \*      **CASE NUMBER: CV-02-85**
**v.**  \*
                                        \*
**HANSON AGGREGATES SOUTHEAST,**  \*
**INC., et al.**  \*
      **Defendants.**  \*

### PLAINTIFFS' MOTION TO APPOINT PROCESS SERVER

       Plaintiffs moves this Honorable Court pursuant to rule 4.1(b)(2) to designate William Bradley Neighbors as designated agent to serve process upon Oldcastle Materials Southeast, Inc. at its Lee County Quarry, Highway 169, Opelika, Alabama.

**OF COUNSEL:**

_C E Vucilly_
_____
**CHARLES VERCELLI, JR.,** (VER004)
*Co-Council for Property Owners*
1019 South Perry Street
Montgomery, AL 36104
(334) 834-8807

**JAMES B. SPRAYBERRY** (SPR008)
*Co-Council for Property Owners*
Post Office Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

**GUY GUNTER**
*Council for City of Opelika/ Opelika Water Board*
P.O. Box 409
Opelika, Alabama 36801
(334) 745-6288

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the _1st_ day of August, 2003.

James A. Byram, Jr., Esq.
Dorman Walker, Esq.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078


John Denson, Esq.
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

H. Wayne Phears
Phears & Moudovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092

CHARLES E. VERCELLI, JR.

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                *
        Plaintiff,         *
                                     *      CASE NUMBER: CV-02-85
v.                           *
                                     *

HANSON AGGREGATES SOUTHEAST,  *
INC., et al.                  *
        Defendants.         *

## ORDER

      Before the Court is Plaintiffs' motion to appoint William Bradley Neighbors as agent to serve process upon Oldcastle Materials Southeast, Inc.  Upon consideration of the same, the motion is granted and William Bradley Neighbors is appointed as designated agent for service of process upon Defendant Oldcastle Materials Southeast, Inc.

                                            Circuit Court Judge

cc:    James B. Sprayberry
        Charles E. Vercelli, Jr.
        Guy F. Gunter, III
        James A. Byram, Jr.
        H. Wayne Phears
        John Denson

FILED
AUG 0 1 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**F I L E D**

AUG - 4 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. CV-02-85 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## HANSON'S RESPONSE TO PLAINTIFFS' MOTION TO SHORTEN TIME

Hanson Aggregates Southeast, Inc. ("Hanson") responds to Plaintiffs' Motion to Shorten Time, as follows:

1.     Plaintiffs' motion, filed on July 29, 2003, requests this Court to order Hanson to respond to Plaintiffs' Fourth Interrogatories and Requests for Production by 3:00 p.m. on Monday, August 4, 2003, and to order the Young and Gilmer Defendants to respond to Plaintiffs' Third Interrogatories and Requests for Production by 3:00 p.m. on Friday, August 8, 2003. Plaintiffs assert that such orders are required to discover the identity of the new owner of the quarry.

2.     Plaintiffs' Fourth Interrogatories and Requests for Production to Defendant Hanson contain 19 separate discovery requests. Of those 19 requests, only five seek information regarding the new owner of the quarry or information regarding the sale of the quarry. Of the remaining 14 discovery requests, nine pertain to Plaintiffs' dye trace study and dye trace expert, two pertain to the public opinion survey performed by Dr. Jerry Ingram, and the final three seek information on air monitoring, seismograph readings, and lease negotiations. Contrary to the distinct implications of Plaintiffs' Motion to Shorten time, the focus of Plaintiffs' fourth

discovery requests is neither the identity of the new owner nor information regarding the sale of the quarry.

3.     It is wholly unnecessary to shorten the time in which Hanson is required to respond to Plaintiffs' fourth discovery requests, and the entry of such an Order would be a waste of judicial resources.  Incredulously, Plaintiffs assert in paragraph 2 of their Motion to Shorten Time that, "Plaintiffs do not positively know the identity of the new owner of the quarry." However, in the paragraph immediately preceding this statement, Plaintiffs assert that they "learned, one week before the trial, that Hanson sold the quarry to Oldcastle Materials." Further, Plaintiffs have affirmatively stated in a letter to this Court on July 16, 2003, that "in point of fact, we already knew the quarry was sold and to whom." In fact, Plaintiffs' July 16th letter states that, "It is public knowledge in the community that the quarry was sold to Oldcastle . . . ." By filing its Motion to Shorten Time, Plaintiffs have effectively asked this Court to spend its valuable judicial resources in ordering the immediate production of information Plaintiffs say they already know.

WHEREFORE, THE PREMISES CONSIDERED, Defendant Hanson requests this Court to deny Plaintiffs' Motion to Shorten Time.

Respectfully submitted this 31st day of July, 2003.

One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 31st day of July, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

Of Counsel

1614

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,

        Plaintiff,

v.

HANSON AGGREGATES SOUTHEAST, et al.,

        Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*

**CASE NUMBER: CV-02-85**

### SUMMONS

NOTICE TO:      Oldcastle Materials Southeast, Inc
                       Highway 169
                       Opelika, AL 36801

       The Complaint and Third Amended and Restated Complaint, which is attached to this Summons, is important and you must take immediate action to protect your rights. You or your attorney are required to file the original of your written Answer, either admitting or denying each allegation in the Complaint with the Clerk of this Court. A copy of your Answer must be mailed or hand delivered by you or your attorney to James B. Sprayberry, Attorney for the Plaintiff, whose address is Post Office Box 2429, Auburn, Alabama 36831-2429.

       This Answer must be mailed or delivered within 30 days after this Summons and Complaint were delivered to you, or a Judgment by default may be entered against you for the money or other things demanded in the Complaint.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rule of Civil Procedure:

[ xxx ]    You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant.

[ ]       Service by Certified Mail of this Summons is initiated upon the written request of the Plaintiff, pursuant to the Alabama Rules of Civil Procedure.

Date 8-1-03

By: _Sg_                     _Corinne J. Hurst_

                               CLERK

[ ]       Certified mail is hereby requested.

RETURN ON SERVICE:

[ ]       Return receipt of certified mail received in this office on _____.

[X]       I certify that I personally delivered a copy of the Summons and Complaint to the Defendant in _Lee_ County, Alabama on _August 1 2003_.

_8-1-03_
Date

_77 Lunker Ct. Dadeville, AL 36853_
Address of Server

_William Bisby_
Server's Signature

_Designated Agent_
Type of Process Server

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | CASE NUMBER: CV-02-85 |
| | * | |
| HANSON AGGREGATES SOUTHEAST, et al., | * | |
| | * | |
| Defendant. | * | |

## SUMMONS

NOTICE TO:        Oldcastle Materials Southeast, Inc.
                 The Corporation
                 2000 Interstate Park Drive
                 STE 204
                 Montgomery, AL. 36109

The Complaint and Third Amended and Restated Complaint, which is attached to this Summons, is important and you must take immediate action to protect your rights. You or your attorney are required to file the original of your written Answer, either admitting or denying each allegation in the Complaint with the Clerk of this Court. A copy of your Answer must be mailed or hand delivered by you or your attorney to James B. Sprayberry, Attorney for the Plaintiff, whose address is Post Office Box 2429, Auburn, Alabama 36831-2429.

This Answer must be mailed or delivered within 30 days after this Summons and Complaint were delivered to you, or a Judgment by default may be entered against you for the money or other things demanded in the Complaint.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rule of Civil Procedure:

[ ]        You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant.

[xxx]        Service by Certified Mail of this Summons is initiated upon the written request of the Plaintiff, pursuant to the Alabama Rules of Civil Procedure.

Date  8-1-03
By: _____                    _Corinne J. Hurst_
                                        CLERK

[ ]        Certified mail is hereby requested.

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To
THE CORPORATION COMPANY
2000 INTERSTATE PARK DR., SUITE 204
City, State, ZIP+4
MONTGOMERY, ALABAMA  36109

PS Form 3800, January 2001        See Reverse for Instructions

...ved in this office on _____.

copy of the Summons and Complaint to the Defendant in
on _____.

_____
Server's Signature

_____
Type of Process Server

1618

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                          *
                                             *
                 Plaintiff,                  *
                                             *
v.                                           *          CASE NUMBER: CV-02-85
                                             *
HANSON AGGREGATES SOUTHEAST, et al.,         *
                                             *
                 Defendant.                  *

### SUMMONS

NOTICE TO:         Oldcastle Materials Southeast, Inc
                   Highway 169
                   Opelika, AL 36801

     The Complaint and Third Amended and Restated Complaint, which is attached to this Summons, is important and you must take immediate action to protect your rights. You or your attorney are required to file the original of your written Answer, either admitting or denying each allegation in the Complaint with the Clerk of this Court. A copy of your Answer must be mailed or hand delivered by you or your attorney to James B. Sprayberry, Attorney for the Plaintiff, whose address is Post Office Box 2429, Auburn, Alabama 36831-2429.

     This Answer must be mailed or delivered within 30 days after this Summons and Complaint were delivered to you, or a Judgment by default may be entered against you for the money or other things demanded in the Complaint.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rule of Civil Procedure:

[ xxx ]   You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant.

[ ]   Service by Certified Mail of this Summons is initiated upon the written request of the Plaintiff, pursuant to the Alabama Rules of Civil Procedure.

Date _8-1-03_____

By:_Sg_____                         _Corinne J. Hurst____

                                      CLERK

[ ]   Certified mail is hereby requested.

         _____

RETURN ON SERVICE:

[ ]   Return receipt of certified mail received in this office on _____.

[ ]   I certify that I personally delivered a copy of the Summons and Complaint to the Defendant in _____ County, Alabama on _____.

_____

Date                               Server's Signature

_____

Address of Server                  Type of Process Server

1817

## ALABAMA STATE BAR

415 Dexter Avenue • Post Office Box 671 • Montgomery, Alabama 36101
Telephone: 334 / 269-1515 • Fax: 334 / 261-6310
www.alabar.org

## STATEMENT

The following information, in response to the application of petitioner, is furnished in compliance with Rule VII, Rules Governing Admission to the Alabama State Bar *(Pro HacVice)*:

**PETITIONER:**   Mr. H. Wayne Phears
Phears & Moldovan
4725 Peachtree Corners Cir, #375
Norcross, GA    30092-0000

**CURRENT APPLICATION:**

| | |
|---|---|
| Date Application Received: | June 20, 2003 |
| Case No.: | CV02-0085 |
| Style: | Mike Davis, et al., v. Hanson Aggregates Southeast Inc., et al., |
| Court/Agency: | Circuit Court of Lee County |
| Date of Hearing: | June 30, 0200 |

**LOCAL COUNSEL:**  Mr. James Asberry Byram Jr.
Balch & Bingham LLP
PO Box 78
Montgomery, AL    36101-0078

APPLICATIONS FOR RULE VII ADMISSION HAVE BEEN MADE BY ABOVE PETITIONER OR OTHER ATTORNEY MEMBERS OF PETITIONER'S FIRM IN THE PRECEDING 365 DAYS AS LISTED:

No record of Previous Applications

*Myrna C. McHenry*

PHV Admissions
June 20, 2003

## FILED

AUG 1 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

LAWYERS RENDER SERVICE

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. CV 02-085 |
| | * | |
| HANSON AGGREGATES | *. | |
| SOUTHEAST, INC., et al, | * | |
| | * | |
| Defendants. | * | |

## ORDER

A Status Conference was held in the above-styled case on August 1, 2003. The Attorneys for the parties in this case were present. Various Motions were heard on this date. At the conclusion of the hearing the Court took the following action:

1. The trial of this case is set for October 20, 2003, at 8:30 A.M.

2. The Pretrial Conference in this case is set for September 22, 2003, at 9:00 A.M.

3. A Status Conference is set in this case for September 5, 2003, at 11:00 A.M.

4. All discovery will be "cut-off" and concluded by September 22, 2003.

5. Plaintiffs Tankesley, Swearington and Smith may be added as parties. However, they are not be included as part of the Plaintiffs' cases that are scheduled for October 20, 2003.

6. If Plaintiffs intend to amend their Complaint and serve Old Castle Ltd. they should do as soon as possible.

7. Defendant Hanson's Motion to Strike Claim of Damages for a new "swimming pool" to be located at Springvilla Recreation Center is DENIED.

8. The County Engineer, Mr. Hall, will be allowed to testify at trial. However, he will not be allowed to testify as to the costs of "repairs" of the roadways.

The Clerk of Court is ordered to mail by ordinary mail are deliver a copy of this Order to the following:

Hon. Jimmy Sprayberry
Post Office Box 2429
Auburn, AL 36831-2429

Hon. James Byram, Jr.
Hon. Dorman Walker
Hon. Matt Parnell
Post Office Box 78
Montgomery, AL 36101

Hon. Charles Vercelli, Jr.
1019 S. Perry Street
Montgomery, AL 36104

Hon. John V. Denson
Post Office Box 2345
Opelika, AL 36803-2345

Hon. Guy Gunter
Post Office Box 409
Opelika, AL 36803-0409

DONE this the 11th day of August, 2003.

JACOB A. WALKER, III
Circuit Judge

F I L E D

AUG 1 2 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK



IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

AUG 1 3 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, *et al.*,           §
                                §
            Plaintiffs,         §
vs.                             §        Civil Action No.: CV-2002-85
                                §
HANSON AGGREGATES               §
SOUTHEAST, INC., *et al.*,       §
                                §
            Defendants.         §

## NOTICE OF SERVICE OF DISCOVERY DOCUMENT

To:    Clerk
       Lee County Circuit Court
       Justice Center, Room 104
       2311 Gateway Drive
       Opelika, AL

Please take notice that the following discovery document has been served on behalf of

defendant Hanson Aggregates Southeast, Inc.:

( X )    Hanson's Disclosure of Rebuttal Expert:  Dr. Ralph O. Ewers

Respectfully submitted this 11th day of August, 2003.

_____
One of the attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
PAUL A. CLARK (CLA076)
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, AL  36101-0078
(334) 834-6500

134759.1

1821

H. Wayne Phears, Esq.
**PHEARS & MOLDOVAN**
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 11th day of August, 2003, a copy of the foregoing was served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

John Denson, Esq.
Samford, Denson, Horsley, Pettey & Bridges
P. O. Box 2345
Opelika, Alabama 36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, Alabama 36803-0409

Of Counsel

134759.1                                    2

1622

## IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
    Plaintiffs,                 )
                                       )
vs.                                    )          CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC., et al.,               )
                                       )
    Defendants.                 )

FILED

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF APPEARANCE

COMES now Phillip E. Adams, Jr., and files herein his notice of appearance as attorney for

Oldcastle Materials Southeast, Inc.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

BY: _____

PHILLIP E. ADAMS, JR. (ADA025)
Attorney for Defendant
P. O. Box 2069
Opelika, AL 36803-2069
Tel. (334) 745-6466

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 15th day of August, 2003:

JAMES B. SPRAYBERRY, ESQ.
POST OFFICE DRAWER 2429
AUBURN, ALABAMA 36831-2429

CHIP VERCELLI, ESQ.
VERCELLI & ASSOCIATES, P.C.
1019 S. PERRY STREET
MONTGOMERY, ALABAMA 36104-5049

GUY F. GUNTER, III, ESQ.
MELTON, GUNTER & MELTON
P. O. BOX 409
OPELIKA, AL 36803-0409

JOHN DENSON, ESQ.
SAMFORD, DENSON, HORSLEY,
PETTEY, BRIDGES & HUGHES
P. O. BOX 2345
OPELIKA, ALABAMA 36803-2345

JAMES A. BYRAM, JR., ESQ.
PAUL A. CLARK, ESQ.
BALCH & BINGHAM LLP
POST OFFICE BOX 78
MONTGOMERY, ALABAMA 36101

H. WAYNE PHEARS, ESQ.
PHEARS & MOLDOVAN
SUITE 375
4725 PEACHTREE CORNER CIRCLE
NORCROSS, GEORGIA 30092

OF COUNSEL

## IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,          )
                        )
     Plaintiffs,        )
                        )
vs.                   )     CASE NO. CV-02-85
                        )
HANSON AGGREGATES    )
SOUTHEAST, INC., et al.,   )
                        )
     Defendants.     )

FILED
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## MOTION TO CONTINUE AND FOR AN ALTERNATE TRIAL PLAN

Defendant Oldcastle, added by amendment on August 1, 2003, moves the Court to continue the trial of this case, which is currently set for October 20, 2003, and shows the Court as follows:

1.   Oldcastle purchased the assets of the Opelika quarry on July 11, 2003.  Under applicable law, Oldcastle is in no way liable for Hanson's operation of the quarry. *Asher v. KCS International, Inc.*, 659 So. 2d 598, 599 (Ala. 1995) ("As a general rule, a purchasing corporation is not liable for the debts and liabilities of the selling corporation."); *Brown v. Economy Baler Co.*, 599 So. 2d 1 (Ala. 1992); *Andrews v. John E. Smith's Sons Co.*, 369 So. 2d 781 (1979).

2.   On August 1, 2003 the local quarry office was served, and on August 4, 2003. Oldcastle's agent for service of process was served with the Third Amended and Restated Complaint (the "amended complaint").  The undersigned was retained to represent Oldcastle on August 12, 2003.

3.  The amended complaint appears to seek injunctive relief against Oldcastle, as well as Hanson and the individual defendants, under counts 1 (nuisance), 2 (negligence), 4 (injunction]), and damages and

injunctive relief against Oldcastle and the other defendants under count 5 (diversion of water). The amended complaint alleges that Oldcastle "is intending to and will continue the operations of the quarry under the same or similar conditions" as Hanson employed when it operated the quarry. The claims alleged in the amended complaint put Oldcastle in the position of having to evaluate factually and legally and potentially to defend numerous aspects of Hanson's operation of the quarry at issue in this litigation, yet Oldcastle did not participated in Hanson's operations, nor has Oldcastle been involved in any of the substantial fact and expert discovery conducted in this complex case.

4.    In addition, the amended complaint adds count 6 against Oldcastle, which seeks (1) injunctive relief to shut down the quarry, (2) compensatory damages for Oldcastle's operation of the quarry, and (3) punitive damages for Oldcastle's operation of the quarry. Since acquiring the quarry assets, Oldcastle has conducted very limited operations on the property consisting of the sale of crushed stone out of existing inventory and conducting preliminary evaluations of the site and equipment to assist it in formulating a plan of operation on the site. Surely, Oldcastle is entitled to discovery from the plaintiffs concerning their claims against Oldcastle and to develop its factual and legal defenses to those claims. Yet, based on the current schedule, it is virtually impossible to complete this discovery by the September 22, 2003 deadline, not to mention preparing and filing motions for summary judgment, and other pre-trial and trial preparation.

5.    From a limited review of the court file, and discussions with the attorneys of record, it is clear that this is an extraordinarily complex case. The undersigned is advised that this case is scheduled for 3-weeks of trial time for liability and damages issues, plus another, as of yet unscheduled, trial for the equitable remedy issues. The trial will involve:

- 12 individual plaintiffs

- 12 individual plaintiffs

- 7 other individual plaintiff/witnesses

- 2 or more witnesses for the City of Opelika

- 2 or more witnesses for the Opelika Utilities Board

- 1 or more witnesses for the Beauregard Water Authority

- 7 expert witnesses for the plaintiffs, including geology, hydrogeology, meteorology, blasting/construction, and medical fields.

- 8 or more non-party witnesses for the plaintiffs

- 2 or more representatives of Hanson

- 1 or more representatives of the Gilmer family defendants

- 1 or more representatives of the Young family defendants

- 9 expert witnesses for Hanson

- 7 or more non-party witnesses for defendants

6.  The undersigned is advised that this case involves extensive deposition and documentary discovery, including

- 5,724 pages of documents produced by Hanson

- 219 pages of documents produced by Beauregard

- 116 pages of documents produced by the Opelika defendants

- 42 depositions of parties and witnesses scheduled for the first trial

- hundreds of pages of documents produced by various non-parties

- interrogatory answers from all parties

- expert reports

1027

Oldcastle did not participate in the depositions of any of these witnesses (including numerous expert witnesses) and is entitled to a fair opportunity to question witnesses who may be expected to testify at trial. In the limited time since it was served with the amended complaint and has engaged counsel to represent it in this action, Oldcastle has had no opportunity to review the voluminous discovery materials in the case or even to determine which of the anticipated witnesses it may wish to depose. Oldcastle also requires time to propound and receive responses to written discovery requests (including requests for the production of documents in order that it may have a fair opportunity to conduct any necessary depositions and otherwise prepare for trial.

7.  The undersigned has now seen this court's order of August 11, 2003. This order provides that additional parties (Smith, Tankersly, and Swearington), additional theories of recovery (cost of new pool), and additional witnesses (Neil Hall) will be added to the case. This will obviously require more discovery between now and the September 22 discovery deadline. The undersigned is further advised that the lawyers for the plaintiffs and Hanson have identified at least 11 depositions that they desire to take before the September 22 discovery deadline.

8.  In addition to the impossibility of preparing for a trial of this magnitude between now and October 20, Oldcastle is virtually precluded by the current setting from obtaining its own expert witnesses for trial or for technical expertise in preparing its defense. Moreover, the undersigned has seen the dye test report of Dr. Ralph Ewers, expert witness for Hanson, which concludes that plaintiffs' dye test was "improperly designed and executed" and that the purported results of plaintiffs' dye test "are not meaningful or reliable". Dr. Ewers' letter recommends that "[t]he dye test should be repeated, with proper and thorough design and implementation." Plaintiffs' dye test was conducted for 6 months before their expert

134934.1                                    4

claimed a link between Little Uchee Creek and the quarry, in June 2002, and that test has never shown a connection between the spring and the quarry. Clearly Oldcastle needs more time to decide whether to conduct a dye test, and if so, to conduct the test.

9.  Although this case has been pending since February 2002, the Opelika and Beauregard plaintiffs were not added until October 2002, and, as shown, additional plaintiffs and this defendant have only recently been added to this case.

10.  Oldcastle submits for all of the foregoing reasons that it will be extremely prejudiced and will be denied due process of law if required to go forward with the trial of this case on October 20.

11.  Moreover, Oldcastle respectfully submits that the Court under Rule 42(b), A. R. Civ. P. could structure the trial of this case in such a way as to minimize the prejudice to Oldcastle, and still continue with the trial of some of the issues scheduled for October 20:

- a trial on October 20 of the individual plaintiffs' damage claims against Hanson for damages occurring up to the closing date of July 11, 2003. Oldcastle is not liable for these claims, and has no reason to be a party regarding these issues.

- a severance and separate trial date for the quarry dewatering claims, including the claims of the Opelika and Beauregard plaintiffs

Wherefore, premises considered, Oldcastle respectfully moves the court to continue the trial of this case, or, alternatively, to order separate trials of the individual plaintiffs' damage claims against Hanson and the injunctive relief and quarry dewatering claims against all defendants.

PHILLIP E. ADAMS, JR.
One of the attorneys for defendant
Oldcastle

**OF COUNSEL:**

**ADAMS, UMBACH, DAVIDSON & WHITE, LLP**
**P. O. BOX 2069**
**OPELIKA, AL 36803-2069**
Tel. (334) 745-6466
Fax (3340 749-3238

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the _15th_ day of August, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
 Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

Of Counsel

134934.1

6

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

F I L E D

AUG 2 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | |
|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    CIVIL ACTION NUMBER: CV-02-085 |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC.; et al. | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

TO:    Corinne T. Hurst, Clerk
Lee County Circuit Court
2311 Gateway Drive
Opelika, Alabama 36801

Please take notice that the following discovery documents have been filed on behalf of

Defendants, **VIRGINIA YOUNG PRIEST; JOHN CLAUDE YOUNG, C/O VIRGINIA**

**YOUNG PRIEST; LOUISE YOUNG O'BRIEN, VIRGINIA HART YOUNG AND GILMER**

**PROPERTIES, LTD. in the above-styled case**

( X )    Response to Plaintiffs' Third Interrogatories and Request for Production and
Plaintiffs' Fourth Interrogatories and Request for Production to all Defendants

DONE this _21st_ day of ____August____, 2003

Respectfully submitted,

**OF COUNSEL FOR DEFENDANTS:**
**VIRGINIA YOUNG PRIEST; JOHN CLAUDE**
**YOUNG, C/O VIRGINIA YOUNG PRIEST;**
**LOUISE YOUNG O'BRIEN; VIRGINIA HART**
**YOUNG; GILMER PROPERTIES, LTD.**
SAMFORD, DENSON, HORSLEY,
  PETTEY, BRIDGES & HUGHES
P.O. Box 2345
Opelika, AL 36803-2345
(334) 745-3504
FAX (334) 745-3506

JOHN V. DENSON
DEN007

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all Attorneys of Record in the above-styled cause, by mailing the same in U.S. Mail, postage prepaid, on this the  21st  day of   August  , 2003, as follows:


James A. Byram, Jr.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

M. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia  30092-3000

Guy F. Gunter, III
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0409

Mr. Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Charles E. Vercelli, Jr.
Suite 214, Union Station
300-B Water Street
Montgomery, Alabama 36104

James B. Sprayberry
Post Office Drawer 2429
Auburn, Alabama 36831-2429


John V. Denson

1632

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS; DONNA DAVIS; , et al    )
                                       )

Plaintiffs,                      )
                                       )

v.                                 )     CIVIL ACTION NUMBER: CV-02-085
                                       )

HANSON AGGREGATES           )
  SOUTHEAST, INC.; et al.        )
                                       )

Defendants.                  )

## RESPONSE OF YOUNG AND GILMER DEFENDANTS
## TO PLAINTIFFS' THIRD INTERROGATORIES
## AND REQUEST FOR PRODUCTION AND PLAINTIFFS' FOURTH
## INTERROGATORIES AND REQUEST FOR PRODUCTION TO ALL DEFENDANTS

## GENERAL OBJECTIONS

COME NOW, the Defendants, Virginia Young Priest;  John Claude Young, c/o Virginia

Young Priest; Louise Young O'Brien; Virginia Hart Young and Gilmer Properties, Ltd.

(hereinafter referred to collectively as the **"Young and Gilmer Defendants"**) and subject to any

protective Order entered in the case, responds to the Plaintiffs' Third Interrogatories and Request

for Production to the Young and Gilmer Defendants and the Plaintiffs' Fourth Interrogatories and

Request for Production to All Defendants as follows:

    1.     The Young and Gilmer Defendants object to the definitions, instructions,

interrogatories and request for production  to the extent they call for privileged information or

documents protected by the attorney-client privilege.

1

IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

MIKE DAVIS, *et al.*,                    §
                                          §
              Plaintiffs,                 §
vs.                                       §        Civil Action No.: CV-2002-85
                                          §
HANSON AGGREGATES                         §
SOUTHEAST, INC., *et al.*,                §
                                          §
              Defendants.                 §

F I L E D

AUG 2 2 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## NOTICE OF SERVICE OF DISCOVERY DOCUMENT

To:    Clerk
       Lee County Circuit Court
       Justice Center, Room 104
       2311 Gateway Drive
       Opelika, AL


Please take notice that the following discovery document has been served on behalf of

defendant Hanson Aggregates Southeast, Inc.:

    ( X )    Defendant Hanson's Response to Plaintiff's Fourth Interrogatories and
             Requests for Production

Respectfully submitted this 21st day of August, 2003.

One of the attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
PAUL A. CLARK (CLA076)
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, AL  36101-0078
(334) 834-6500

135194.1

H. Wayne Phears, Esq.
**PHEARS & MOLDOVAN**
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on the 21st day of August, 2003, a copy of the foregoing was served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

John Denson, Esq.
Samford, Denson, Horsley, Pettey & Bridges
P. O. Box 2345
Opelika, Alabama 36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, Alabama 36803-0409

Of Counsel

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

1685

| | |
|---|---|
| MIKE & DONNA DAVIS; MIKE & ANN BROADWATER; MITTIE BROADWATER; CITY OF OPELIKA, a Municipal Corporation; THE UTILITIES BOARD OF THE CITY OF OPELIKA, a public corporation; BEAUREGARD WATER AUTHORITY, a public coporation; ANTHONY & CAROL CLARK; CAROL CLARK, as Mother and Next Friend of COURTNEY CLARK; ELAINE EDWARDS; MARY SUE EILAND; MEDENA FRIZZEL; MEDENA FRIZZEL, as Mother and Next Friend of KARLA FRIZZELL & BRIANNA YOUGREN; RONNIE & DOROTHY GRIGGS; MIKE & STACEY HAGENS;  HOWARD & LISA HARMON; LISA HARMON, as Mother and Next Friend of JUDSON & BRIA HARMON; HAYWARD & NORA JACKSON; MIKE & SHELIA LaMACCHIA; SHELIA LaMACCHIA, as Mother and Next Friend of RUSSELL LaMACCHIA; STANLEY & JACKIE LEDBETTER; TERRY & CAROL LONG; TIM & ADA MANNING; DAVID & JANETTE BAGGETT; JAMES & SHIRLEY PARKER; RANDALL & WANDA PARKER; WANDA PARKER, as Mother and Next Friend of AMBUR & BRANDON PARKER; JEFF & MARIA RICHARDSON; MARIA RICHARDSON, as Mother and Next Friend of NATASHA RICHARDSON; DAVID & AMANDA SUMNER; AMANDA SUMNER, as Mother and Next Friend of TODD SUMNER; LARRY & RITA SUMNER; MARTHA TREADWAY; MARTHA TREADWAY, as Guardian and Next Friend of JASMIN, MICHAEL, HAZEL & JOSEPH KING; BILLY &  SHERRY WALLACE; SHERRY WALLACE, as Mother and Next Friend of AARON WALLACE; MICHELE WILKES; SHIRLEY WILSON; BETTY J. PFINGSTON; BETTY J. PFINGSTON, as Guardian and Next Friend of JESSICA PFINGSTON;  WONDA BRIGHT; DONNIE SMITH; DAVID & TANYA TANKERSLEY; and KEN & NAOMI SCHWIEKER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

F I L E D

AUG 2 5 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

Plaintiffs,

) ) ) **Civil Action No.**

vs.

) ) **CV-20 02-85**

HANSON AGGREGATES SOUTHEAST, INC.; LOUISE YOUNG O'BRIEN; VIRGINIA YOUNG PRIEST; VIRGINIA HART YOUNG; CLAUDE JOHN YOUNG; CHARLES W. GILMER, SR.; ALICE C. GILMER; CHARLES W. GILMER, JR.; KAMMY GILMER; BARBARA GILMER SMITH; GARY SMITH; MATTHEW RUTTLEDGE GILMER; LELIA WILDER GILMER; GILMER PROPERTIES, LTD.; and OLDCASTLE MATERIALS SOUTHEAST, INC.,

Defendants.

## FOURTH AMENDED AND RESTATED COMPLAINT

1.  Plaintiffs Mike and Donna Davis, who reside at 149 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Davises aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: cracks have formed in the basement and in the fireplace; the tiles in the ceiling of the basement are falling out; their boat and boathouse are forever covered by a thick coat of dust; Donna Davis has developed allergy and sinus problems within the last two years, caused by the Defendants; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

2.  Plaintiffs Mike and Ann Broadwater, who reside at 610 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Broadwaters aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: a cracked foundation; cracked ceilings; a cracked fireplace; unlevel floors; Plaintiff Mike Broadwater has had a lung transplant and the never ending dust, noise and shaking of the home have greatly aggravated his condition; and other known and unknown damages.

3.  Plaintiff Mittie Broadwater, who resides at 574 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Broadwater avers that as a result of Defendants' actions her home and property have sustained the following damages, among others: the blocks under her mobile home have cracked and are falling apart; the front and back doors of her home are hanging up on the bottom of the doorway; the windows of her home are cracked; and there are other known and unknown problems with her home and property.

4.  Plaintiff City of Opelika is a municipal corporation organized under the laws of the state of Alabama, situated in Lee County, Alabama.

5.  Plaintiff The Utilities Board of the City of Opelika, is a public corporation that operates a public water supply and distribution system on behalf of the City of Opelika and surrounding areas of Lee County, Alabama.

6.  Plaintiff, the Beauregard Water Authority, is a public corporation that operates a public water supply and distribution system on behalf of the Beauregard community and surrounding areas of Lee County, Alabama.

7.  Plaintiffs Anthony and Carol Clark, who reside at 1740 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Clarks aver that as a result of the Defendants' actions their home, property and families have sustained the following damages, among others: cracked walls and ceilings; cracks in the foundation of the home; cracked windshields in their vehicles; sink holes have formed on their property; the allergies and asthma suffered by certain family members have been aggravated and their medical conditions will continue to deteriorate; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

8.  Plaintiff Courtney Clark is a minor citizen of Lee County, Alabama, who resides with his parents Anthony and Carol Clark. Plaintiff Courtney Clark avers that as a result of the Defendants' actions, he has developed asthma, suffers from this disease daily, and will continue to suffer from this condition. He may have other known and unknown damages.

9.  Plaintiff Elaine Edwards, who resides at 3274 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Edwards avers that as a result of the Defendants' actions, her homes and the home of her mother have sustained the following damages, among others: her home vibrates; cracks in the sidewalks; the concrete steps have pulled away from her concrete porch; her renal condition has been aggravated by the constant vibrations and dust; she has incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

3

10. Plaintiff Mary Sue Eiland, who resides at 2853 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Eiland avers that as a result of the Defendants' actions her home and property have sustained the following damages, among others: cracked windshields; cracks in the concrete; walls cracked in every room of her home; tiles falling from the bathroom ceilings; and other known and unknown problems with her home and property.

11. Plaintiff Medena Frizzel, who resides at 3173 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Plaintiff Medena Frizzell avers that as a result of the Defendants' actions her home, property, and family have sustained the following damages: cracked windshield on her vehicle; cracked windows in her home; cracked mirrors; ceiling leaks; cracked ceilings; trim falling off walls; pictures falling off walls; her home is unlevel; the electricity and power blink off and on when blasting occurs; Plaintiff Medena Frizzell has suffered a recurrence of her childhood asthma within the last three years; she has incurred medical expenses; and other known and unknown problems with her home and property.

12. Plaintiff Karla Frizzel is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Karla Frizzel avers that as a result of the Defendants' actions she has developed an asthmatic condition and will continue to suffer from this condition.

13. Plaintiff Brianna Yougren is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Brianna Yougren avers that as a result of the Defendants' actions she has has developed an asthmatic condition and will continue to suffer from this condition.

14. Plaintiffs Ronnie and Dorothy Griggs, who reside at 3256 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Griggs aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages, among others: cracked foundation; cracked sidewalks; cracks in the bathroom tile; flower boxes are pulling away from the walls of the house; Plaintiff Dorothy Griggs has developed

allergy and sinus problems due to the constant presence of quarry dust in her home and on her property; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

15. Plaintiffs Mike and Stacy Hagans, who reside at 1668 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Hagans aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages: cracked windshields on their vehicles; sinkholes have formed on their property; their house is unlevel; cabinets are separating from the walls of their home; cracked windows; the allergies suffered by certain family members have been aggravated; Plaintiff Stacy Hagans suffers from inflamed and infected sinuses; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

16. Plaintiffs Howard and Lisa Harmon, who reside at 145 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Harmons aver that as a result of the Defendants' actions their home, property, and family have sustained the following damages, among others; their home vibrates during blasting activities; cracked bricks on the exterior of the home; cracks in fireplace; Plaintiff Howard Harmon has developed chronic sinusitis ; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

17. Plaintiff Judson Harmon is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Lisa Harmon. Plaintiff Judson Harmon avers that as a result of the Defendants' actions he has developed allergic rhinitis and will continue to suffer from this condition.

18. Plaintiff Bria Harmon is a minor resident citizen of Lee County who resides with her parents, and who brings this action by and through her mother and next friend, Lisa Harmon. Plaintiff Bria Harmon avers that as a result of the Defendants' actions she

has developed chronic allergies and sinus problems and she will continue to suffer from this condition.

19.    Plaintiffs Hayward and Nora Jackson, who reside at 1141 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Jacksons aver that as result of the Defendants' actions, their home, property and family have been damaged as follows: mud and water constantly stands on their property inviting the presence of swarms of insects, frogs, snakes and other pests; Plaintiff Nora Jackson has developed chronic bronchitis, inflammatory lung disease, atypical pneumonia, and acute respiratory distress syndrome; the family has incurred medical expenses; and other known and unknown damages.

20.    Plaintiffs Mike and Shelia LaMacchia, who reside at 1355 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The LaMacchias aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: their backyard underground spring has gone dry; the foundation of their home is cracked; they have incurred medical expenses as of result of their child's illnesses; and other known and unknown problems with their home and property.

21.    Plaintiff Russell LaMacchia, is a minor resident citizen of Lee County, Alabama, who resides with his parents, and who brings this action by and through his mother and next friend, Shelia LaMacchia. Plaintiff Russell LaMacchia avers that as a result of the Defendants' actions, he has developed otitis media and will continue to suffer from this condition.

22.    Plaintiffs Stanley and Jackie Ledbetter, who reside at 1330 Lee Road 166, and also own rental properties located across the street at 1333 Lee Road 166, Lots #2-9, 1377 Lee Road 166, 1332 Lee Road 166, 1334 Lee Road 166, 1336 Lee Road 166, and 1340 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Ledbetters aver that as a result of the Defendants' actions, their homes, properties and family have sustained the following damages, among others: cracked windows; foundation cracks; cracked

ceilings; unlevel mobile homes; and other known and unknown problems with their home and properties.

23. Plaintiffs Terry and Carol Long, who reside at 3379 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Longs aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracks in cement sidewalks; cracks in cement around swimming pool; cracks around windows; cracks in trim work; recent cracks forming in three year old addition to home; and other known and unknown problems with their home and property.

24. Plaintiffs Tim and Ada Manning, who reside at 3226 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Mannings aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: chipped paint on their vehicles as result of blasting debris landing in their yard; cracked windshields; a cracked foundation on their home; cracks in driveway and in cement area around their swimming pool; crack in swimming pool; and other known and unknown problems with their home and property.

25. Plaintiffs David and Janette Baggett, who reside at 1198 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Baggetts aver that as a result of the Defendants' actions, their homes, property, and family have sustained the following damages, among others: leaks in their ceilings; cracks in ceilings; cracks in walls; mobile homes are unlevel; Plaintiff Janette Baggett's depression and nervous condition has been greatly aggravated by the constant noise, blasting and shaking that occurs in her home; Plaintiff David Nash has developed allergy and sinus problems within the last two years; they have incurred medical expenses; and other known and unknown problems with their homes and property.

26. Plaintiffs James and Shirley Parker, who reside at 3039 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. James and Shirley Parker aver that as a result of the Defendants'

actions, their home, property and family have sustained the following damages, among others: cracked windows; a cracked foundation; cracks in the walls and ceilings of their home; due to the constant presence of quarry dust, Plaintiff Shirley Parker has developed asthma within the last two years; and other known and unknown damages.

27. Plaintiff Randall and Wanda Parker, who reside at 1229 Lee Road 166, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs' Randall and Wanda Parker are riparian owners south of Spring Villa Park who own part of Little Uchee Creek. Randall and Wanda Parker aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked foundation; cracked chimney; cracked sheet rock; cabinets pulling away from the walls; light fixtures are loose and fall when blasting occurs; Plaintiff Wanda Parker developed asthma approximately 1 year ago; they have incurred medical expenses and will continue to do so; and other known and unknown damages. Furthermore the Randall and Wanda Parker aver that the past and future actions of the Defendants will irreparably harm their family's interests in and to Little Uchee Creek, as well as the interests of many other citizens of Lee County, Alabama, who use the creek as they do.

28. Plaintiff Ambur Parker is a minor resident citizen of Lee County who resides with her parents James and Wanda Parker, and who brings this action by and through her mother and next friend, Wanda Parker. Plaintiff Ambur Parker avers that as a result of the Defendants' actions, she has developed asthma within the last year and will continue to suffer from this condition.

29. Plaintiff Brandon Parker is a minor resident citizen of Lee County who resides with his parents James and Wanda Parker, and who brings this action by and through his mother and next friend, Wanda Parker. Plaintiff Brandon Parker avers that as a result of the Defendants' actions, he has developed allergy and sinus problems that include nose bleeds and will continue to suffer from this condition.

30. Plaintiffs Maria and Jeff Richardson, who reside at 265 Lee Road 705, are over the age of nineteen years and are residents of Lee County, Alabama. The Richardsons

aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: cracked foundation; cracks in the ceiling; Plaintiff Jeff Richardson has developed allergic sinus problems; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

31. Plaintiff Natasha Richardson is a minor resident citizen of Lee County who resides with his parents and who brings this action by and through her mother and next friend, Maria Richardson. Plaintiff Natasha Richardson avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

32. Plaintiffs David and Amanda Sumner, who reside at 164 Lee Road 148, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. David and Amanda Sumner aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others; cracked foundation; crack in the ceilings; crack in the concrete surrounding the swimming pool; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

33. Plaintiff Todd Sumner, is a is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Amanda Sumner. Plaintiff Todd Sumner avers that as a result of the Defendants' actions, he developed asthma at the age of three months and will continue to suffer from this condition.

34. Plaintiffs Larry and Rita Sumner, who reside at 1100 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs Larry and Rita Sumner aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked windshields; house is unlevel; cracked roof; cracked ceilings; cracked walls; slit roof beams; and other known and unknown damages.

35. Plaintiff Martha Treadway, who resides at 3177 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Treadway

avers that as result of the Defendants' actions, her home, property and family have sustained the following damages, among others: destroyed field lines; cracked ceilings; cabinets pulling away from the walls; she has developed chronic pulmonary disease, a serious problem with her lung, in the last three years; bricks falling off the frame of the house; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

36.   Plaintiff Jasmine King, is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Martha Treadway. Plaintiff Jasmine King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

37.   Plaintiff Michael King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway. Plaintiff Michael King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

38.   Plaintiff Hazel King is a minor resident citizen of Lee County who resides with her grandmother, and who brings this action by and through her grandmother and next friend, Martha Treadway. Plaintiff Hazel King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

39.   Plaintiff Joseph King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway. Plaintiff Joseph King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

40.   Plaintiffs Billy and Sherry Wallace, who reside at 1692 Lee road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Wallaces aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: pictures

are being knocked off walls and destroyed; cracked ceilings; windows knocked out of the home; cracked fireplace stones; cracked windows; their older child suffers from asthma but has been in remission since leaving the family home; Plaintiff Billy Wallace has developed a cavitary lung disease; the family has incurred medical expenses and will continue to do so; and other known and unknown damages.

41.   Plaintiff Aaron Wallace is a minor resident citizen of Lee County who resides with is parents, and who brings this action by and through his mother and next friend, Sherry Wallace.  Aaron Wallace avers that as a result of the Defendants' actions he has developed asthma, chronic allegeries, sinuitis; that he is forced to sleep under a cold air humidifer; and will continue to suffer from these conditions, and other known and unknown damages.

42.   Plaintiff Michele Wilkes, who resides at 148 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama.  Ms. Wilkes avers that as the result of Defendants' actions, her home and property have sustained the following damages, among others: a cracked foundation; bricks separating from a concrete porch; water leakage in her basement; concrete blocks in basement separating; concrete pad and step s pulling away from the house; she has developed sinus problems in the last three years; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

43.   Plaintiff Shirley Wilson, who resides at 64 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama.  Ms. Wilson avers that as a result of the Defendants' actions, her home and property have sustained the following damages, among others: the well located on her property is filling in; cracked walls; cracked foundation; she has developed an allergy to dust that was worsened over the last year; and other known and unknown damages.

44.   Plaintiff Betty J. Pfingston, who resides in one of the mobile homes owned by Stanley Ledbetter off of Highway 166 in Lee County, and is over the age of nineteen years and is a resident of Lee County, Alabama.  Ms. Pfingston avers that as a result of the Defendants' actions, the mobile home in which she lives has been damaged; she has to put up with the noise, vibration, dust, and other irritations caused by the

11

quarry, to her great inconvenience and harm; and she has suffered other known and unknown damages.

45. Plaintiff Jessica Pfingston is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Betty J. Pfingston. Jessica Pfingston avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition, and other known and unknown damages.

46. Plaintiff Wonda Bright resides at 245 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Bright avers that as a result of the Defendants' actions, she has suffered the following damages: she cannot escape the noise, truck traffic noise, blasting noise and vibration, dust, and her home has suffered cracks on the concrete porches. Additionally, she has developed allergies and must now take allergy medication, and she has been unable to sell her house and move away from the nuisance.

47. Defendant Hanson Aggregates Southeast, Inc. (hereinafter "Hanson") is a foreign corporation doing business in Lee County, Alabama. It owns and operates a limestone quarry, equipment terminal and an explosives holding area on the property belonging to the Young Defendants and the Gilmer Defendants.

48. Defendants Louise Young O'Brien, Virginia Young Priest, Virginia Hart Young, and Claude John Young (hereinafter "the Young Defendants") are either members of a limited partnership or a general partnership. The Young Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Opelika Materials, Inc., and ultimately to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Young Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Young Defendants.

49. Defendants Charles W. Gilmer, Sr., Alice C. Gilmer, Charles W. Gilmer, Jr., Kammy Gilmer, Barbara Gilmer Smith, Gary Smith, Matthew Ruttledge Gilmer, Lelia Wilder Gilmer, and Gilmer Properties, Ltd. (hereinafter "the Gilmer Defendants") are either members of a limited partnership or a general partnership. The Gilmer Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Gilmer Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Gilmer Defendants.

## STATEMENT OF FACTS

50. The individual Plaintiffs all reside within a mile or so of the Defendants' properties, near Lee County Road 166 and Alabama Highway 169, and all own property that is in close proximity to the quarry owned and/or operated by Defendants Hanson.

51. The Beauregard Water Authority operates water wells in or near the same "chewacla marble" terrain. The Plaintiff believes the water table has been effected and that this adverse impact will increase in the future if the quarry continues to operate. They also believe the repetitive blasting has caused damage to its water lines and will continue to do so in the future.

52. The City of Opelika owns Spring Villa Park and swimming pool, and The Utilities Board owns and operates properties surrounding Spring Villa Park, including a natural spring that has flowed, non-stop, for generations. The spring ceased to flow in the spring of 2000, within a few years after the quarry began pumping millions of gallons of water per day out of the quarry pit. The quarry pit and the spring are in the same "chewacla marble" (aka limestone) terrain, which is highly fractured, and through which water migrates easily. Plaintiffs aver that the quarrying activities of the Defendants have in fact caused the spring to go dry.

13

53. The Spring Villa Park swimming pool was fed by the spring water, so that the swimming pool is now dry and has been since the spring of 2000. Therefore, both the City of Opelika and The Utilities Board have suffered various damages. Although the Utilities Board does not now rely upon the spring for a source of public drinking water, it may do so in the future, so that the Defendants' actions in drying the spring have and will cause damage to the City and to The Utilities Board. The City of Opelika has also now lost the opportunity to construct a recreational lake on and upon the Spring Villa Park property, for use by the public for recreational purposes. The land owned by the City and The Utilities Board have, therefore, been devalued by the actions of the quarry.

54. Were the Court to enjoin the quarry from pumping water from the aquifers in the area, and require it to allow the quarry pit to fill, it is probable that the "cone of depression" caused by pumping such large quantities of water from the quarry pit will gradually disappear, and it is probable that the spring would again flow.

55. The Defendants' operation of a limestone quarry constitutes a nuisance.

56. The actions of the Defendants have caused a de-watering of the subsoil in a large area surrounding the quarry.

57. The Hanson quarry operation is immediately adjacent to the Dixie Pipeline, a very large transcontinental liquid propane gas pipeline. The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within as little as 100 feet of the pit created by the Defendants' operations.

58. There is a substantial likelihood that the operations of the Defendants in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry. This result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

59. An example of one such sinkhole is a 25 feet in diameter, 20 feet deep sinkhole that developed within the last two months, 34 feet east of the pavement of Highway 166,

1649

and only 233 feet north of the center of the Dixie Pipeline easement that crosses Highway 166.

60. Sinkholes have also formed on the Plaintiffs' lands, including a large sinkhole in the driveway of the Clarks, which was filled with many dumptruck loads of dirt. This sinkhole, and others, formed only a few hundred feet south of the Dixie Pipeline easement and within a few hundred feet of the quarry pit.

61. The operations of the quarry in causing sinkholes to form now and in the future will in fact endanger the viability of the Dixie Pipeline. It is entirely possible, and indeed foreseeable, that if the ground beneath the Dixie Pipeline were to give way, particularly at a welded joint, the Dixie Pipeline would then rupture. A rupture of the pipeline could very well cause an explosion of devastating proportions. An explosion from the Dixie Pipeline could literally incinerate an area hundreds of yards in diameter, including Plaintiffs' homes and/or passing motorists on Highway 166.

62. Many of the Plaintiffs' homes are located within a few hundred yards of the Dixie Pipeline and the Defendants' quarry.

63. In recent depositions of Hanson corporate representatives, it was also learned that Hanson has violated several of the terms and conditions of Dixie Pipelines' "blasting guidelines", which Dixie relied upon in granting Hanson permission to blast so close to the pipeline. These violations included using too many pounds of explosives too close to the pipeline and failing to notify Dixie Pipeline personnel of their intentions to blast so that Dixie could reduce the operating pressure on the pipeline–a safety measure designed to protect the integrity of the pipeline and to avoid damage to the pipeline.

64. Hanson necessarily uses thousands of pounds of explosives each week in blasting at the quarry. The blasting obviously throws thousands of pounds of earth, including rock, dust, and fine particulate, into the air in and around the quarry.

65. The blasting causes shaking of the earth, shaking of the Plaintiffs' homes, and the throwing of rock, dirt and dust onto and about the lands of the Plaintiffs.

66.   As part of its operations, Hanson necessarily contracts with trucking companies and tractor-trailer and dump-truck operators to remove their product from the quarry site and onto the roads and highways in Lee County, including Highways 169 and 166, among others. This causes from dozens to hundreds of trucks daily to enter and exit from the quarry. These trucks are loaded to weights substantially in excess of the design criteria for the roads and highways, and cause substantial amounts of dust and debris to be deposited on the public roads and upon the lands of many of the plaintiffs.

67.   As part of its operations, Hanson necessarily moves large quantities of overburden to a "spoil pile" area that is immediately adjacent to several of the Plaintiffs' lands, including the Davises, the Harmons, Ms. Wilkes, and the Jacksons.

68.   The quarrying activities from this pit inevitably cause substantial, objectionable, and unceasing noise during most hours of the day and many hours of the night, as the plant generally operates from 6:00 a.m. until 6:00 p.m. and often thereafter. This noise also occurs commonly on the weekends, sometimes including Sundays. This noise comes from rock crushers, explosions, loud machinery operating many hours during the day and night, whistles, backup bells on heavy equipment, large trucks traveling up and down the roads and highways, and other such noises.

69.   The quarrying causes dust and other pollutants to accumulate on the Plaintiffs' property, including inside their homes, and in the air on their property and near their property, thereby causing damage to the Plaintiffs personally and to their real property.

70.   Hanson has, for several years, had actual and constructive knowledge that sediment and erosion floods onto Plaintiff Jackson's lands and onto Plaintiff Randall Parker's lands. Despite requests to stop the erosion and flooding, Hanson has ignored the problem and has failed to take any corrective action whatsoever.

71.   The quarrying causes such a constant noise and vibration to the Plaintiffs' property, including their homes, that they cannot peaceably enjoy their land.

16

72.  Defendants' operations are so loud and annoying that at many times, it is impossible for some of the Plaintiffs to sleep – especially those who work at night and must sleep during the day, such as Mr. Davis.

<u>COUNT ONE</u>
<u>(Private and Public Nuisance)</u>

73.  Plaintiffs reallege paragraphs 1 through 70 of the Complaint as if set out here in full.

74.  Defendant Hanson's quarrying operations have caused and are causing a private and/or public nuisance to exist, as described above. The quarrying is harmful to the public and adversely affects people of ordinary sensibilities.

75.  Hanson's operations create unreasonably loud noises, vibrations, dust, and pollution, and cause a tremendous increase in traffic from dangerously loaded heavy trucks. These and other damages alleged in this Complaint harm the public generally.

76.  The Plaintiffs have suffered and continue to suffer hurt, inconvenience, and other damages that are different in kind and degree than the damages suffered by the general population of Lee County. Moreover, the Plaintiffs have suffered damages due to Defendants' conduct that would affect any ordinary, reasonable person, and such damages are not such as would be fanciful or as would affect only a person of fastidious taste. Plaintiffs have the right to file this claim under Alabama Code Sections 6-5-120, 6-5-123, 6-5-124, 6-5-125 and 6-5-127.

77.  The damages caused to the individual Plaintiffs include, but are not limited to:

a.  lack of quiet enjoyment of their property, which includes, at times, a complete inability to use or enjoy their property;

b.  noise generated by machinery operating virtually twenty-four hours per day;

17

c.  pollution of the air by dust generated from blasting, diggings, movement of equipment and operation of heavy machinery and manufacturing plants;

d.  permanent devaluation of the Plaintiffs' land and homes by the above mentioned nuisance;

e.  noise, vibration, and damage to their homes and property caused by the Defendants' use of explosives and the blasting in the quarry;

f.  increase in pollution (air, noise, garbage) caused by the increase in traffic volume of heavy and dangerous trucks;

g.  broken windshields and damaged automobiles caused by the trucks going to and from the quarry at all hours;

h.  mental anguish and mental suffering of these Plaintiffs as they worry about the safety and value of their loved ones, their homes, and their lands; and

i.  Personal injury, including causing some plaintiffs to develop asthma and other breathing/pulmonary problems, and exacerbating other plaintiffs' existing asthmatic and other breathing/pulmonary problems.

78.  Hanson's actions have been repetitive, willful, wanton and aggravated. Hanson has ignored and violated the important "blasting guidelines" of the Dixie Pipeline (which are designed to ensure the integrity of the pipeline, and, therefore, the safety of the community), and Hanson has continued to blast even though inside the Opelika police jurisdiction and even though it was requested by Plaintiffs to refrain from blasting.

79.    Moreover, despite actual knowledge that the spoil pile is sloped very steeply, was never planted with any type of vegetation to arrest erosion and runoff, and that, therefore, large quantities of dirt and sediment migrate onto the Plaintiffs' properties, Hanson has taken absolutely no steps to limit or stop the erosion and continuing trespasses. This conduct justifies the imposition of punitive damages.

80.    Hanson has continued to process and manufacture rock and rock by-products. Moreover, the Defendants continued their operations with full knowledge of the damages being forced upon the individual Plaintiffs, as well as the public at large, and Defendants have not abated their nuisance despite demand to do so.

81.    Defendants' actions constitute a private and public nuisance, and their actions are or can be abated, so that the nuisance created and maintained by the Defendants is abatable.

82.    The damages suffered by the City of Opelika and The Utilities Board of the City of Opelika include loss of public property, recreational uses and benefits to the public generally, loss in value of public property, and loss of water to be used as a backup source of clean drinking water for citizens of Opelika and Lee County.

83.    If Hanson is allowed to continue pumping water from the quarry pit, further dewatering of the area will occur, the cone of depression will enlarge, and eventually more private, and quite possibly public, water wells will go dry or be reduced in capacity.

**WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the

1654

jury finds reasonable, and in addition, request this Honorable Court to enter injunctive

relief preventing all of the Defendants from continuing to cause the damages stated above.

**COUNT TWO**
**(Negligence and Wantonness)**

84.    Plaintiffs reallege paragraphs 1 through 81 of the Second Amended and Restated

Complaint as if set out here in full.

85.    Defendant Hanson has a duty to operate the quarry in a manner that will not cause

unreasonable injury to adjacent and/or nearby landowners.

86.    Defendant Hanson breached its duty by damaging the Plaintiffs as stated above.

87.    As described above, Plaintiffs suffered damages due to the negligent and wanton

and willful manner in which Defendant Hanson operates the quarry.

88.    Defendant Hanson has actual knowledge that the manner in which it is operating

its quarry was causing the very damages (both public and private) stated above in

this Complaint.  Despite such actual knowledge (made known to them by oral and

written notice), the Defendant continues to cause the damages stated above.

Moreover, the Plaintiffs from time to time protested the manner in which Defendant

operates the quarry, yet Defendants refused to change or alter their practices, all to

the continued detriment of the Plaintiffs.

89.    The manner in which Defendant Hanson ignored the Plaintiffs' complaints

constitutes rude, wanton, outrageous, and/or reckless conduct for which Hanson

should be punished by the imposition of punitive damages.

**WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive

damages, costs of this action, attorneys' fees, interest and such other further relief as the

jury finds reasonable, and in addition, request this Honorable Court to enter injunctive

relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT THREE
## (Trespass)

90.    Plaintiffs reallege paragraphs 1 through 87 of the Second Amended and Restated

Complaint as if set out here in full.

91.    The manner in which Defendant Hanson operates the quarry has caused noxious

fumes, dust, particulate matter, and garbage to enter upon Plaintiffs' lands without

their consent and despite their repeated objections.    Moreover, the repeated,

continuous, long-term blasting using high explosives has caused additional

unwanted and unconsented-to damages to the Plaintiffs' lands, and possibly to the

Dixie Pipeline, thereby endangering the Plaintiffs and the public generally.

92.    Plaintiffs lands have been damaged as set forth above.

93.    Defendant Hanson operates the quarry as described with full knowledge that its

activities were causing trespasses to Plaintiffs' lands, yet continued to engage in

such activity despite actual knowledge that the Plaintiffs were being damaged.

94.    Defendant Hanson has engaged in repetitive trespasses upon the Plaintiffs' lands,

all without Plaintiffs' consent and over their express and frequently communicated

objection. Hence, the imposition of punitive damages is appropriate and necessary

to punish and deter Defendant Hanson from engaging in such conduct in the future.

**WHEREFORE** Plaintiffs claim from Defendant Hanson compensatory and punitive

damages, costs of this action, attorneys' fees, interest and such other further relief as the

jury finds reasonable, and injunctive relief requiring Defendant Hanson to take all necessary measures to stop the continuing trespasses and to remedy the prior trespasses.

**COUNT FOUR**
**(Injunctive Relief)**

95.    Plaintiffs reallege paragraphs 1 through 92 of the Complaint as if set out here in full.

96.    The continued operation of the quarry has caused and will continue to cause the damages stated above.

97.    The actions of Defendant Hanson in pumping water from the quarry pit have caused such a substantial de-watering of the area that the spring at Spring Villa has been caused to go dry as a direct result of the pumping of water from the ground from the quarry.

98.    The quarry operations are immediately adjacent to the Dixie Pipeline, a very large transcontinental propane gas pipeline.  The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within 200 feet of the pit created by the Defendants' operations.

99.    There is a substantial likelihood that the operations of the Defendants in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry, and this result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

100.   In fact, a large sinkhole, 25 feet in diameter and over 20 feet deep, recently formed only 233 feet from the center of the Dixie Pipeline easement.  This sinkhole

developed due to Hanson's pumping of water from the quarry and the concomitant dewatering of the surrounding area.

101. This sinkhole is only 34 feet from the public Highway 166, and Highway 166 now appears to "dip" or sag near the sinkhole, so that there is a real possibility that a sinkhole or sinkholes may be forming under the roadbed.

102. If the roadbed caves in, members of the traveling public, including the Plaintiffs, may well be in danger of serious injury or death.

103. The operations of the quarry in causing sinkholes to form now and in the future will in fact endanger the viability of the Dixie Pipeline. It is entirely possible, and indeed foreseeable, that if the ground beneath the Dixie Pipeline were to give way, particularly at a welded joint, the Dixie Pipeline would then rupture. A rupture of the pipeline could very well cause an explosion of devastating proportions. An explosion from the Dixie Pipeline could literally incinerate an area hundreds of yards in diameter.

104. Several of the Plaintiffs live less than 200 yards from the Dixie Pipeline and, therefore, their lives are in danger by Hanson's continued operation.

105. It is in the public's best interest to stop the continued operation of the quarry.

106. The quarry cannot be operated in such a manner as to prevent the serious and continued damages to the public, the Plaintiffs and the Public's interests.

**WHEREFORE**, the Plaintiffs demand judgment enjoining all of the Defendants from operating this or any quarry on the Youngs' and Gilmer's lands, and for such other legal or equitable relief to which they are entitled.

23

## COUNT FIVE
### (Statutory Damages for Diversion of Water)

107. Plaintiffs adopt by reference the allegations of paragraphs 1-104 above.

108. Pursuant to Alabama Code section 33-7-4, Defendants are liable to the Plaintiffs Randall and Wanda Parker for diversion of water from Little Uchee Creek, and to the City of Opelika and The Utilities Board of the City of Opelika for the diversion of water from the underground aquifers to the surface in and near the Spring Villa spring.

**WHEREFORE**, Plaintiffs Randall and Wanda Parker, the City of Opelika, and The Utilities Board of the City of Opelika demand that the Court enjoin all of the Defendants from their pumping operations and to stop diverting and dewatering the Little Uchee Creek and the aquifer feeding the Spring Villa spring, and further demand such compensatory and punitive damages to which they are entitled, together with costs, attorneys fees, interest and such other further relief as the jury finds reasonable.

## COUNT SIX
### (Claims Against Oldcastle)

109. Defendant Oldcastle Materials Southeast, Inc. is a foreign corporation organized and existing under the laws of the state of Delaware, which is qualified to do business in Alabama.

110. Defendant Oldcastle has assumed control of the Lee County Quarry at issue in this litigation. Despite request therefor, Defendant Hanson has refused to provide to Plaintiffs the agreement, sales or assignment documents relating to Oldcastle's assumption of the quarry operation.

111.   On information and belief, Defendant Oldcastle is intending to and will continue the operations of the quarry under the same or similar conditions so that each and every cause of action pleaded against Defendant Hanson is hereby pleaded against Defendant Oldcastle.

112.   Defendant Oldcastle has continued to operate the quarry and will continue to operate the quarry unless and until restrained by this Court.

113.   Defendant Oldcastle's continued operation will be done in a negligent and wanton manner causing the damages and continuing damages to the Plaintiffs as stated earlier in this Complaint.

114.   All damages and harms pleaded in this Complaint will continue if Defendant Oldcastle continues to operate the quarry. Moreover, any blasting and discharging of water by Oldcastle will cause continuing damages to the Plaintiffs as alleged above in this 3rd Amended and Restated Complaint.

115.   Defendant Oldcastle either purchased or otherwise assumed control of the Lee County Quarry with the full knowledge and information about this pending lawsuit and with full knowledge and information about the Plaintiffs' claims and the fact that the quarry is in fact damaging the Plaintiffs, dewatering the community, causing sinkholes, endangering the public highways and the integrity of the pipeline, and destroyed Spring Villa spring and park.

**Wherefore** Plaintiffs demand judgment against Defendant Oldcastle: (1) enjoining all of the Defendants, including Defendant Oldcastle, from operating this or any quarry on the Youngs' and Gilmer's lands, and for such other legal or equitable relief to which they

are entitled; (2) for all compensatory damages to which they are entitled based upon Defendant Oldcastle's continuation of the nuisance and continued negligent and wanton operation of the quarry; (3) for such punitive damages as the jury deems appropriate to punish and deter Defendant Oldcastle and others similarly situated; and (4) for costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable.

## COUNT SEVEN
### (Additional Parties Plaintiff)

116.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 115.

117.    Plaintiffs add as a Plaintiff, pursuant to authorization from the Court, Mr. Donnie Smith. Mr. Smith owns the property adjacent to Spring Villa Road and on the south side thereof next to the Utility Board property and very close to Spring Villa spring. Sinkholes are forming on Mr. Smith's property in numerous places. His property is no longer safe, sinkholes have formed in several places in his fields, and he has two ponds that have dried up due to sinkhole development. The Smith property is, therefore, unsafe, has suffered a depreciation in value, and, therefore, Mr. Smith seeks compensatory and punitive damages against the Defendants.

118.    Plaintiffs add as Plaintiffs, pursuant to authorization from the Court, David Tankersley and his wife, Tanya. The Tankersleys own land on the south side of Spring Villa Road and reside at 756 Lee Road 148, Opelika, Alabama 36804. Numerous sinkholes have formed on the Tankersleys' property as a result of Defendants' actions. Their property is no longer safe, has been devalued, their well has gone dry, and the 12" slab in Mr. Tankersley's shop/barn has cracked

completely across. The Tankersleys therefore seek compensatory and punitive damages from the Defendants.

119. Plaintiffs add as a Plaintiff, pursuant to authorization from the Court, Mr. Ken Schwieker, and his wife, Naomi Schwieker. The Schwiekers own the property north of Spring Villa Road and adjacent to the Utilities Board property and Little Uchee Creek in the vicinity of the sinkholes that have formed at Little Uchee Creek. Defendants' expert, Tom Joiner & Associates (specifically Mr. Wood) has already examined the Schwiekers' property. Numerous sinkholes have formed on the Schwiekers' property, and they do not now feel that their fields are safe to bushhog or to enjoy in any respect. They are afraid that if they take horses on their property, the horses' legs will be broken and people may fall and be severely hurt. The Schwiekers claim damages of the Defendants for the loss and value of their property, for the formation of the sinkholes that have devalued and made their property dangerous, and for sinkholes that have formed causing a cracking of the foundation on their old family farmhouse foundation. The Tankersleys also seek punitive damages for Defendants' wrongful conduct.

**Wherefore** Plaintiffs Smith, Tankersley, and Schwieker demand damages against the Defendants for the devaluation of their land, for the formation of sinkholes on their land, and the costs to repair and replace all sinkholes forming on their land, for any damages to structures on their premises, and for all such other damages to which they are entitled, including punitive damages.

27

CHARLES E. VERCELLI, JR. (VER003)

**OF COUNSEL:**
**For All Plaintiffs:**
LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100
Fax (334) 821-7101

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805
Fax (33) 834-8807

**For Plaintiffs City of Opelika and Water Works Board of the City of Opelika Only:**
Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334)745-6244
Fax (334) 745-6288

1003

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                    John V. Denson
Dorman Walker                          Samford, Denson, Horsley, Pettey & Bridges
Matt Parnell                           P.O. Box 2345
Balch & Bingham, LLP                   Opelika, AL 36803-2345
P.O. Box 78
Montgomery, AL 36101


H. Wayne Phears                        Phillip E. Adams, Jr.
Phears & Moldovan                      Adams, Umbach, Davidson & White, LLP
Suite 375                              P. O. Box 2069
4725 Peachtree Corner Circle           Opelika, AL 36803-2069
Norcross, GA 30092-3000

by placing a copy of the same in the United States mail, properly addressed and postage
prepaid, this the _21st_ day of _August_, 2003.

_____
OF COUNSEL


## ALL PLAINTIFFS DEMAND TRIAL BY JURY IN LEE COUNTY, ALABAMA

155-00\4th-Amend-Complaint1.3.wpd

29

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
        Plaintiffs,                    )
                                       )
vs.                                    )          CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC., et al.,               )
                                       )
        Defendants.                    )

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") moves the Court to dismiss Plaintiffs' claims for injunctive relief against Hanson pursuant to Rules 12 (b)(1) and 12(b)(6) of the *Alabama Rules of Civil Procedure*. In the alternative, Hanson moves the Court to enter summary judgment in favor of Hanson as to Plaintiffs' claims for injunctive relief under *Ala .R .Civ. P.* 56. As grounds for this motion, Hanson avers that the Plaintiffs' claims for injunctive relief against Hanson are now moot, and states as follows:

1.      Plaintiffs' Third Amended and Restated Complaint ("Plaintiffs' Complaint) seeks injunctive relief against Hanson based upon the alleged negligent operation of the quarry. Each claim asserted by Plaintiffs' against Hanson requests the Court to enjoin Hanson from "continuing to cause the damages" asserted in the Complaint. *See* Complaint at the "Wherefore" paragraphs following paragraphs 83, 89, 94, 108, and 116. Additionally, Count Four specifically asserts that the pumping of water from the quarry, the alleged effect of the quarry's operation on



FILED

AUG 25 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

135244.1

nearby roadbeds, and the possible dangers of and its operation near the Dixie Pipeline[1] are sufficient grounds for this Court to find that "[i]t is in the public's best interest to stop the continued operation of the quarry;" and "[t]hat the quarry cannot be operated in a manner as to prevent the serious and continued damages to the public, the Plaintiffs and the Public's interest." Upon these assertions, Plaintiffs demand a judgment permanently enjoining Hanson from operating the quarry on the Young and Gilmer properties. *See* Complaint at the "Wherefore" paragraph following paragraph 106.

2.     Count Six of Plaintiffs' Complaint recognizes that Oldcastle Materials Southeast, Inc. ("Oldcastle") purchased the operational assets of the quarry. *See* Complaint at paragraph 110. Count Six also recognizes that Oldcastle is now responsible for the quarry's day-to-day operations. *See* Complaint at paragraph 112.

3.     Plaintiffs' claims against Hanson for injunctive relief based upon the operation of the quarry are now moot, as Hanson has not been responsible for the operation of the quarry since July 11, 2003 and has no remaining interest in the quarry. As such, no justiciable case or controversy exists regarding Plaintiffs' requests for injunctive relief against Defendant Hanson.

4.     Because Plaintiffs' claims for injunctive relief against Defendant Hanson are now moot, the Court does not have subject matter jurisdiction over Plaintiffs' claims for injunctive relief. *See Ala. R. Civ. P.* 12(b)(1). The lack of a justiciable case or controversy may properly be addressed in a motion to dismiss. *See Smith v. Alabama Dry Dock & Shipping Co.*, 293 Ala. 644, 309 So. 2d 424 (Ala. 1975). Further, Plaintiffs' claims for injunctive relief fails to state a claim upon which relief can be granted. *See Ala. R. Civ. P.* 12(b)(6). Hanson's motion to dismiss may be properly granted as it is beyond doubt that Plaintiffs cannot prove any set of facts

---

[1] Although the Court has already granted Hanson's Motion for Summary Judgment regarding the Dixie Pipeline claims, Plaintiffs reassert these previously dismissed claims in their Third Amended and Restated Complaint.

in support of its claims for injunctive relief regarding the closure of the quarry against Defendant

Hanson. *See Patton v. Black*, 646 So. 2d 8 (Ala. 1994). Further, the inadequacy of Plaintiffs'

claims are clearly apparent on the face of Plaintiffs' Third Amended and Restated Complaint.

*See Braggs v. Jim Skinner Ford, Inc.*, 396 So. 2d 1055 (Ala. 1981).

     5.    Should this Court find it necessary to entertain evidence not contained within the

pleadings, as amended, Hanson requests that the Court enter summary judgment in favor of

Hanson pursuant to *Ala. R. Civ. P.* 56 as contemplated in *Ala. R. Civ. P.* 12(b).

     WHEREFORE, the premises considered, Hanson moves the enter an Order dismissing all

of Plaintiffs' claims for injunctive relief asserted in Plaintiffs' Third Amended and Restated

Complaint under *Ala. R. Civ. P.* 12(b)(1) and/or *Ala. R. Civ. P.* 12(b)(6). In the alternative,

Hanson requests that the Court enter an order granting Hanson's summary judgment with regard

to Plaintiffs' injunctive relief claims under *Ala. R. Civ. P.* 56.

     Respectfully submitted this 25th day of August, 2003.

 

 

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

1667

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 25th day of August, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
  & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL 36803-0409

Of Counsel

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. CV-02-85 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SUBMISSION STATEMENT IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") submits the following evidentiary materials in support of its motion filed August 25, 2003:

1.    Hanson's answers to plaintiffs' fourth discovery requests, Nos. 2, 3, and 4, copy attached at Tab 1;

2.    Asset Purchase Agreement between Hanson and Oldcastle. This document is attached at Tab 2 and filed under seal pursuant to the Stipulated Protective Order entered May 2, 2002.

Dated this 25th day of August, 2003.

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101



FILED
AUG 25 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

135244.1

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 25th day of August, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
 & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL 36803-0409

Of Counsel

1

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. CV-02-85 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT HANSON'S RESPONSE TO PLAINTIFFS' FOURTH INTERROGATORIES AND REQUESTS FOR PRODUCTION

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") responds to plaintiffs' fourth interrogatories and requests for production as follows:

#### I. GENERAL OBJECTIONS

1.      Hanson objects to the interrogatories and requests for production to the extent they call for privileged information or documents protected by the attorney client privilege and/or the work product doctrine.

2.      Hanson objects to the interrogatories and requests for production to the extent they seek to require defendant to comply with requirements outside the scope of or contrary to the Alabama Rules of Civil Procedure.

3.      Hanson objects to the interrogatories and requests for production to the extent they seek information or documents not relevant to the subject matter of this action or not reasonably calculated to lead to the discovery of admissible evidence.

4.      Hanson objects to the interrogatories and requests for production to the extent they are vague, overly broad, and/or unduly burdensome, or not appropriately limited geographically by subject matter, or by time, or to the extent they seek information concerning trade secrets and/or private financial affairs.

#### II. SPECIFIC RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

1.      Describe in detail the reason that Hanson sold, swapped, or otherwise transferred the Lee County Quarry to Oldcastle (or whomever it was sold or transferred to).

**RESPONSE:**

See objections 3 and 4.

2.    With respect to the sale, swap, or other transfer of the Lee County Quarry, describe in detail every step Hanson took

(1)    to ensure that the Plaintiffs' complaints about the spoil piles will be resolved, and describe in detail when the Plaintiffs' complaints will be resolved;

(2)    to ensure that the Plaintiffs' complaints about noise will be resolved or alleviated in some manner;

(3)    to ensure that the Plaintiffs' complaints about dust will be resolved or alleviated in some manner;

(4)    to ensure that the Plaintiffs' complaints about blasting will be resolved or alleviated in some manner; and

(5)    to ensure that the Plaintiffs' complaints about the quarry dewatering the area and causing sinkholes to form will be resolved or alleviated in some manner.

**RESPONSE:**

See objections 3 and 4. Hanson sold the quarry assets, and did not retain any interest in

the property.

3.    Produce every document in your possession or subject to your control that relates in any way to your answers to interrogatories 2(1) to 2(5).

**RESPONSE:**

Subject to general objections 1, 3 and 4, see the Asset Purchase Agreement produced

August 11, 2003.

4.     Produce every document in your possession or subject to your control regarding the sale, swap, or other transfer of the Lee County Quarry to Oldcastle (or to whomever the purchaser or transferee is).

RESPONSE:

Subject to general objections 1, 3 and 4, see the Asset Purchase Agreement produced August 11, 2003.

5.     Do you contend that the dye trace conducted by Mr. Aley and/or the testing conducted by Mr. Aley was flawed in any way, was inaccurate in any way, or was conducted in any respect in an erroneous, negligent or unprofessional manner? If your answer is in the affirmative, describe in great detail your contentions and the bases therefor.

RESPONSE:

Yes.  Subject to general objection 2 and Rules 26(b)(4)(A), *Ala.R.Civ.P.*, see the Dr. Ralph Ewers expert disclosure dated August 11, 2003.

6.     Do you contend that the manner in which Alan Lee placed dye collection charcoal packs, or retrieved them, or shipped them to Tom Aley/Ozark Underground Laboratories was done improperly or in such a manner as to be unreliable, improper, or negligent? If your answer is in the affirmative, describe in great detail your contentions and the bases therefor.

RESPONSE:

See general objection 2, and Rule 33(b), *Ala.R.Civ.P.*.  Alan Lee has not been deposed. This interrogatory is premature.

7.     Do you contend that the manner in which the charcoal packs were shipped to Mr. Aley is in some manner erroneous or that the manner of shipping affected adversely the proper analyses of those charcoal packs by Mr. Aley and/or his laboratory personnel? If your answer is

STATE OF GEORGIA

COUNTY OF Henry

    Before me, the undersigned notary public, did personally appear Nigel Wills who, after being first duly sworn on oath, did depose and say as follows:

    My name is Nigel Wills. I am employed by Hanson Aggregates Southeast, Inc. as the Environmental Manager, Southeast Region. In that capacity, I am authorized to verify that I have read over the foregoing answers to plaintiffs' fourth interrogatories and requests for production, which include information provided by others, and the facts stated therein are true and correct according to my present information, knowledge and belief.

                                    Nigel Wills

Sworn to and subscribed before me on this 19th day of August, 2003.

(Seal)

                        Notary Public

                        My Commission Expires

                              Notary Public, Henry County, Georgia
                              My Commission Expires September 9, 2004

_One of the Attorneys for Defendant_
Hanson Aggregates Southeast, Inc.

OF COUNSEL:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the _21_ day of August, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL 36803-0409

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Of Counsel

2

**FILED UNDER SEAL**
Subject to Stipulated Protective Order

Davis, et al. v. Hanson Aggregates Southeast, Inc., et al.
Case No. CV-02-85
Lee County Circuit Court

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS; DONNA DAVIS; , et al )
                                  )

Plaintiffs,                 )
                                  )

v.                             )     CIVIL ACTION NUMBER: CV-02-085
                                  )

HANSON AGGREGATES      )
SOUTHEAST, INC.; et al.     )
                                  )

Defendants.             )

F I L E D

AUG 2 7 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## ANSWER OF YOUNG AND GILMER DEFENDANTS
## TO PLAINTIFFS' THIRD AMENDED AND RESTATED COMPLAINT

COME NOW, the Young and Gilmer Defendants in the above-styled case and resubmit their

last Answer and Counterclaim to the Plaintiffs Third Amended and Restated Complaint.

Respectfully submitted,

OF COUNSEL FOR DEFENDANTS:
VIRGINIA YOUNG PRIEST; JOHN CLAUDE
YOUNG, C/O VIRGINIA YOUNG PRIEST;
LOUISE YOUNG O'BRIEN; VIRGINIA HART
YOUNG; GILMER PROPERTIES, LTD.
SAMFORD, DENSON, HORSLEY,
 PETTEY, BRIDGES & HUGHES
P.O. Box 2345
Opelika, AL 36803-2345
(334) 745-3504
FAX (334) 745-3506

JOHN V. DENSON
DEN007

1

1677

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all Attorneys of Record in the above-styled cause, by mailing the same in U.S. Mail, postage prepaid, on this the __27th__ day of __August__, 2003, as follows:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

M. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092-3000

Guy F. Gunter, III
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0409

Mr. Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Charles E. Vercelli, Jr.
Suite 214, Union Station
300-B Water Street
Montgomery, Alabama 36104

James B. Sprayberry
Post Office Drawer 2429
Auburn, Alabama 36831-2429

John V. Denson

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,              )
                                )
        Plaintiffs,             )
                                )
vs.                             )        CASE NO. CV-02-85
                                )
HANSON AGGREGATES               )
SOUTHEAST, INC., et al.,        )
                                )
        Defendants.             )

## RENEWED MOTION FOR SEPARATE TRIAL AND TO CONTINUE

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") moves the Court pursuant to *Ala.R.Civ.P.* 42(b) to order a separate trial of the hydrogeology claims, and to continue the trial of the hydrogeology claims. In support of this motion, Hanson shows the Court as follows:

1.      The claims of the individual plaintiffs for damages relating to quarry noise, dust, blasting, etc. are wholly unrelated to the hydrogeology claims.

2.      Oldcastle, which purchased the quarry assets as of July 11, 2003, is not liable for any damages the plaintiffs claim for quarry operations prior to that date, and for that reason, there is no reason for Oldcastle to be a party to the trial of the damage claims of those individual plaintiffs.

3.      As explained in the renewed motion for separate trial filed July 18, 2003, the plaintiffs' dye test has never revealed any connection between Spring Villa spring and the Hanson quarry, and did not purport to show any connection between the Little Uchee Creek and the Hanson quarry until June 24, 2003, less than a month before the scheduled trial. Hanson has retained a dye test expert, Dr. Ralph Ewers of Eastern Kentucky University. His preliminary report is attached as Exhibit A and incorporated by reference. In Dr. Ewers' opinion, the

plaintiffs' dye test was "improperly designed and executed" and the purported results of plaintiffs' dye test "are not meaningful or reliable." Dr. Ewers recommends that the "dye test should be repeated, with proper and thorough design and implementation." Obviously, this cannot be done before the scheduled October 20 trial date. Indeed, plaintiffs' dye test was conducted for six months before the dye injected in Little Uchee Creek was allegedly discovered in the quarry discharge. Further, plaintiffs' dye test expert, when asked "how long do you think that these receptors should be monitored," said that dye "travel time could be a year or more." (Aley Depo. at 204)

4.      Another reason to sever the hydrogeology claims is that the Court recently allowed the plaintiffs to add three additional plaintiffs who only have hydrogeology claims. These plaintiffs are Donnie Smith, Mr. and Mrs. David Tankersly and  Ken Schwiecker. (August 12, 2003 Order, ¶ 5)

5.      Also, the Court has decided to allow Lee County's Road Engineer to be a witness for the trial of the hydrogeology claims. (August 12, 2003 Order, ¶ 8)   Lee County is a party which should be joined pursuant to *Ala.R.Civ.P.* 19, <u>if</u> Lee County has a claim about the cost of repairing Spring Villa Road located near the Spring Villa Park and the property of newly added plaintiff Donnie Smith. Lee County  is a necessary party if it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [Lee County's] absence may . . . (ii) leave [Hanson] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

6.      Moreover, the Court has now ruled that the City of Opelika may change its hydrogeology damage claim to increase that claim from $700,000 to nearly $4,000,000. (August 12, 2003 Order, ¶ 7) It is only fair that Hanson be given an opportunity to have discovery about

this new claim, and to have the opportunity to obtain rebuttal evidence concerning this enormous damage claim.

7.     The hydrogeology case is wholly unrelated to the quarry blasting, dust, noise, etc. claims, and involves very complex scientific testimony. The plaintiffs have at least three geology or hydrogeology experts (Aley, Saunders, and Hicks), and Hanson has three geology or hydrogeology experts (Wood, Cook, and Ewers). As stated, the dye test expert for Hanson, Dr. Ralph Ewers, strongly believes that the dye test should be performed again.

8.     Oldcastle also has the right to participate in the trial of the hydrogeology issues and to obtain evidence, discovery and independent expert advice regarding these claims.

9.     Hanson respectfully submits that all the hydrogeology claims should be resolved in one proceeding with all necessary parties. The expense and risk of inconsistent verdicts from multiple trials of these issues is simply too great to proceed on October 20.

WHEREFORE, premises considered, Hanson moves the Court to sever and continue the hydrogeology claims and to proceed at the October 20 setting, if at all, with the individual plaintiffs' quarry blasting, dust, noise, etc. damage claims as of July 11, 2003.

Respectfully submitted,

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

### CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 26th day of August, 2003:

James B. Sprayberry, Esq.
Attorney at Law
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
 & White, LLP
Post Office Box 2069
Opelika, Alabama  36803-2069

Of Counsel

# EWC *Ewers Water Consultants Inc.*



160 Redwood Drive, Richmond, Kentucky 40475
Phone & Fax (859) 623-8464    E-mail Address ewc@mis.net

July 10, 2003

James A. Byram, Jr.
Balch & Bingham LLP
P.O. Box 78 Montgomery, Al. 36106

By fax to 866-736-3863

Re: Davis, et al. v. Hanson, et al., Lee County, Alabama Circuit Court case no. CV 2002-0085

Dear Mr. Byram:

At your request I have reviewed the reports dated March 13, 2003 and June 24, 2003 and supporting information concerning Mr. Tom Aley's dye test relating to the Hanson Quarry, and I have also visited the site. According to Mr. Aley, three tracer dyes were injected on December 17, 2002:

(1,) rhodamine-WT (RWT) at the "sinkhole" on highway 166 west of the quarry;
(2.) fluorescein at the Spring Villa spring site; and
(3.) eosine into a "sinkhole" in the channel of Little Uchee Creek about 800 feet northwest of
      Spring Villa, both located northeast of the quarry.

Mr. Aley reported that sampling was suspended on March 27, 2003. At that time the only dye that had been detected was the RWT. Aley states that sampling was resumed on June 5, and when these samplers were pulled on June 12, eosine was detected for the first time, and RWT was also detected, both in the quarry discharge. The fluorescein dye was not detected.

You contacted me on June 30. I visited the site on July 7, and I have completed one analysis of a charcoal sampler that had been placed downstream of the quarry discharge for a period of one week.

In my professional opinion, Mr. Aley is premature and very possibly incorrect in concluding that eosine was detected by the June 5 sampling. It is well established that RWT will breakdown over time and produce a false eosine reading. That is especially likely given the amount of time since December 17, and the strong presence of RWT in the quarry discharge. I cannot conclude, based on my analysis of the charcoal sampler, that the dye is in fact eosine. Continued sampling and monitoring is required.

In addition, the dye test was improperly designed. It is entirely possible that the fluorescein dye injected at Spring Villa, and most or all of the eosine dye, went somewhere else. According to the topographic map produced by Mr. Aley showing his dye monitoring locations, he was not checking for the dyes at any place where the elevation was as low as the quarry, or indeed at any location, except the quarry, that was significantly lower than the water level in the throat of the Spring Villa at the time of the dye injection there. Thus, under the conditions at the time of the injection, water and dye would have had to travel uphill to reach any location except the quarry. Even if it is in fact eosine that was detected by Aley after June 5, that does not prove that the quarry captured the entire flow of the spring, it only means that some portion of the flow went to the quarry. The failure to recover fluorescein, the most dependable and most easily detectable of the groundwater tracing dyes, is most likely due to the experimental design. The failure to have sufficient properly located dye samplers is a critical problem making it impossible to know with reasonable certainty where the ground water travels.

It was also a critical error to have suspended monitoring from March 27 to June 5. This results in a significant lack of relevant data.

In my opinion the dye study was improperly designed and executed, and, accordingly, the results are not meaningful or reliable. The dye test should be repeated, with proper and thorough design and implementation.

I am fully qualified to give these opinions. A brief selected listing of my credentials is attached.

Very truly yours,

Ralph O. Ewers Ph.D.

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                       *
                                          *
            Plaintiff,                    *
                                          *
vs.                                       *        CIVIL ACTION NO. CV 02-085
                                          *
HANSON AGGREGATES                         *
SOUTHEAST, INC., et al,                   *
                                          *
            Defendants.                   *

## **ORDER**

    The Court has received a Motion to Continue in the above-styled case filed by Attorney Phillip E. Adams, Jr.  All pending Motions will be heard on **SEPTEMBER 5, 2003, at 11:00 A.M. in Courtroom Three of the Lee County Justice Center, Opelika, Alabama.**

    The Clerk of Court is ordered to mail by ordinary mail are deliver a copy of this Order to the following:

Hon. Jimmy Sprayberry
Post Office Box 2429
Auburn, AL 36831-2429

Hon. James Byram, Jr.
Hon. Dorman Walker
Hon. Matt Parnell
Post Office Box 78
Montgomery, AL 36101

Hon. Guy Gunter
Post Office Box 409
Opelika, AL 36803-0409

Hon. Charles Vercelli, Jr.
1019 S. Perry Street
Montgomery, AL 36104

Hon. John V. Denson
Post Office Box 2345
Opelika, AL 36803-2345

Hon. Phillip E. Adams, Jr.
Post Office Box 2069
Opelika, AL 36803-2069

DONE this the 21st day of August, 2003.

JACOB A. WALKER, III
Circuit Judge

FILED

AUG 2 8 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED

AUG 2 8 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER: CV-02-085 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC.; et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER OF YOUNG AND GILMER DEFENDANTS
## TO PLAINTIFFS' FOURTH AMENDED AND RESTATED COMPLAINT

COME NOW, the Young and Gilmer Defendants in the above-styled case and resubmit their

last Answer and Counterclaim to the Plaintiffs Fourth Amended and Restated Complaint.

Respectfully submitted,

**OF COUNSEL FOR DEFENDANTS:**
**VIRGINIA YOUNG PRIEST; JOHN CLAUDE**
**YOUNG, C/O VIRGINIA YOUNG PRIEST;**
**LOUISE YOUNG O'BRIEN; VIRGINIA HART**
**YOUNG; GILMER PROPERTIES, LTD.**
SAMFORD, DENSON, HORSLEY,
 PETTEY,  BRIDGES & HUGHES
P.O. Box 2345
Opelika, AL  36803-2345
(334) 745-3504
FAX (334) 745-3506

JOHN V. DENSON
DEN007

1

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all Attorneys of Record in the above-styled cause, by mailing the same in U.S. Mail, postage prepaid, on this the _27th_ day of _August_, 2003, as follows:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

M. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092-3000

Guy F. Gunter, III
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0409

Mr. Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Charles E. Vercelli, Jr.
Suite 214, Union Station
300-B Water Street
Montgomery, Alabama 36104

James B. Sprayberry
Post Office Drawer 2429
Auburn, Alabama 36831-2429

John V. Denson

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**F I L E D**

MIKE DAVIS, et al.,
        Plaintiff,

v.

HANSON AGGREGATES SOUTHEAST,
INC., et al.
        Defendants.

\*
\*
\*
\*
\*
\*
\*
\*
\*

AUG 2 8 2003

IN OFFICE
CASE NUMBER: CV-02-85T. HURST
CIRCUIT CLERK

## PLAINTIFF RANDALL PARKER'S SUPPLEMENTAL RESPONSE TO DEFENDANTS INTERROGATORIES AND DEPOSITION QUESTIONS

Plaintiff Randall Parker supplements his prior responses to Defendant's Interrogatories and his deposition responses by adding the following:

Since Spring Villa dried up I have noticed that the water flow in the creek has been down dramatically, even in the wet times. This has changed the character of the creek. It takes only a few days after a rain for the creek level to drop down abnormally again, where as even in dry weather it used to stay at certain levels. This has caused several problems. First, in a couple of spots the creek used to act as a fence for the cows, but now at the low levels of the creek the cows can walk over the sandbars to my neighbors property. In the spot where there used to be water backed up by a beaver dam, the beavers moved out, the cows walked out onto my neighbors property. Second, the creek flow used to add to the beauty of the property. Third, now we have mosquito pools because of the lack of flow or current which also used to keep the water clear. In the past the creek was always clear and flowing. Now it is murky and stagnant. In the past we had a swimming hole and a rope swing, but now the creek is too shallow to dive in or swim in.

1688

"Also, the mud is still coming over on me by the Hanson spoil pile. The mud still comes onto my property and Hanson still has done nothing to fix it."


*Randall Parker*
RANDALL PARKER


STATE OF ALABAMA   }
                         }
COUNTY OF LEE      }


Personally appeared before me, the undersigned Notary Public in and for the State and County aforesaid, the name within Randall Parker, who, after being duly sworn, and having read and fully understanding the foregoing document, states under oath that the facts and matters stated therein are true to the best of his knowledge, information and belief.

SWORN AND SUBSCRIBED BEFORE me this _20th_ day of _Aug._, 2003.


*Terese Tyson*
Notary Public


[SEAL]                                 My Commission Expires: _1-18-07_


OF COUNSEL:


CHARLES VERCELLI, JR., (VER003)
*Co-Council for Property Owners*
1019 South Perry Street
Montgomery, AL 36104
(334) 834-8807

JAMES B. SPRAYBERRY (SPR008)
*Co-Council for Property Owners*
Post Office Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

**GUY GUNTER**
*Council for City of Opelika/ Opelika Water Board*
P.O. Box 409
Opelika, Alabama 36801
(334) 745-6288

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the ___ day of August, 2003.

James A. Byram, Jr., Esq.
Dorman Walker, Esq.
Balch & Bingham, LLP
P.O. Box 78
Montgomery,   Alabama   36101-0078

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA   30092-3000

John Denson, Esq.
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

James B. Sprayberry

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**FILED**
AUG 2 8 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER: CV-02-085 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC.; VIRGINIA | ) | |
| YOUNG PRIEST, AND GILMER | ) | |
| PROPERTIES, LTD., etc. | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO JOIN HANSON'S AND OLDCASTLE'S MOTIONS
## FOR CONTINUANCE

COME NOW, the Defendants, Virginia Young Priest; John Claude Young, c/o Virginia Young Priest; Louise Young O'Brien; Virginia Hart Young and Gilmer Properties, Ltd. (hereinafter "**Young and Gilmer Defendants**") and join with the Defendant, Hanson Aggregates Southeast, Inc., (hereinafter "Hanson") and Defendant, Oldcastle Materials, Inc., (hereinafter "Oldcastle") in their respective Motions as follows:

1.    The Defendant Oldcastle filed a Motion to Continue and for an Alternate Trial Plan on August 15, 2003, (See Exhibit "A" attached hereto).

2.    Defendants, Young and Gilmer join with Oldcastle and support their Motion in light of the short time that Oldcastle has been in the case, and therefore would be prejudiced in its preparation for trial for the present setting on October 20, 2003. Defendants Young and Gilmer have a material interest in whether or not the quarry is closed down or limited in its

1

1550

3.    Hanson respectfully requests a hearing before this Court regarding the merits of the Plaintiffs' motion to amend at the August 1, 2003 status conference.

Respectfully submitted this 25th day of July, 2003.

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

1551

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 25th day of July, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

_____
Of Counsel

1552

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | FILED |
| Plaintiffs, | ) | JUL 2 8 2003 |
| | ) | IN OFFICE |
| vs. | ) | CASE NO. CV-02-85   CORINNE T. HURST |
| | ) | CIRCUIT CLERK |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## HANSON'S OBJECTION TO PLAINTIFFS' EMERGENCY MOTION TO PRODUCE SALES AGREEMENT

Hanson Aggregates Southeast, Inc. ("Hanson") hereby objects to Plaintiffs' Emergency Motion to Produce Sales Agreement filed on July 10, 2003, as follows.

1.     Plaintiffs' "emergency" motion requests the Court to order the production of certain documents relating to the transfer of the Opelika quarry from Hanson to Oldcastle Materials Southeast, Inc. At the time this motion was filed, the Plaintiffs had not yet requested these documents from the Defendant under the provisions set forth in the *Alabama Rules of Civil Procedure* regarding the production of documents during the course of discovery. In light of this failure, any motion requesting the Court to order such production is premature and should be denied.

2.     Subsequent to the filing of Plaintiffs' "emergency" motion, Plaintiffs served their Fourth Interrogatories and Requests for Production of Documents. This request for production of documents encompasses the very same documents as requested in Plaintiffs' "emergency" motion. As such, Plaintiffs' motion has been rendered moot, and Hanson should be allowed to respond to Plaintiffs' fourth discovery requests within the time frame set forth in *Ala.R.Civ.P.* 34(b).

1553

3. Hanson requests Plaintiffs' "emergency" motion be set for hearing at the August

1, 2003, status conference.

Respectfully submitted this 25th day of July, 2003.

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

1554

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this 25th day of July, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL 36803-0409

Of Counsel

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED 1555

JUL 29 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Civil Action No. CV-20 02-0085 |
| | ) |
| HANSON AGGREGATES SOUTHEAST, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF BAGGETT'S SUPPLEMENTAL
## RESPONSE TO DISCOVERY

Plaintiff Baggett supplements her prior discovery responses as follows:

1.     I was deposed on March 10, 2003.

2.     After reading my deposition recently, I felt that I may have left some things out when I got sidetracked during the deposition. I therefore want to describe my problems better.

3.     I have allergies real bad, and may not have mentioned those in the deposition. I take over-the-counter antihistamines for allergies and for sinusitis. This year has been the worst year ever for my allergies, and I am really suffering with this. I started to wheeze and cough a lot and I am afraid I might be developing asthma. I use an inhaler frequently at night when I am laying down. I feel like I am not getting enough air. I do not need to be home breathing this dust all of the time, but I am not working right now so I cannot do anything about it.

_Janette Baggett_
JANETTE BAGGETT

1555

STATE OF ALABAMA
COUNTY OF _Lee_

Personally appeared before me, the undersigned Notary Public in and for the State and County aforesaid, the within named **Janette Baggett**, who, after first being duly sworn, and having read and fully understanding the foregoing document, states under oath that the facts and matters stated therein are true to the best of her knowledge, information and belief.

SWORN TO AND SUBSCRIBED BEFORE me this 28 day of July, 2003.

Notary Public

[SEAL]

My Commission Expires: July 18, 2007

Charles E. Vercelli Jr.

**CHARLES E. VERCELLI, JR. (VER003)** by JS
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

2

1557

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                    H. Wayne Phears
Matt Parnell                          Phears & Moldovan
Balch & Bingham, LLP                  Suite 375
P.O. Box 78                           4725 Peachtree Corner Circle
Montgomery, AL 36101                  Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _28_ day of _____July_____, 2003.

_____
OF COUNSEL

155-00\BaggettSuppResp.1.wpd

3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

F I L E D

JUL 2 9 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO SHORTEN TIME

Plaintiffs move this Honorable Court to shorten the time to respond to Plaintiffs'

Fourth Interrogatories and Requests for Production to Defendant Hanson and Third

Interrogatories and Requests for Production to the Young and Gilmer Defendants. As

grounds for this motion, Plaintiffs say:

1.     Plaintiffs learned, one week before the trial, that Hanson sold the quarry to

Oldcastle Materials.

2.     To date, Hanson has not admitted the name of the person to whom the quarry was

sold, despite Plaintiffs' request at the Hearing on July 11th, and despite the pendency

of the Emergency Motion. Therefore, Plaintiffs do not positively know the identity

of the new owner of the quarry.

3.     In an effort to discover the name of the new owner, the terms of its ownership, the

agreements as to indemnity and defense costs, and the knowledge of the new owner

of the existence of the lawsuit, among other things, Plaintiffs originally filed the

Emergency Motion and have since filed Fourth Interrogatories and Requests for

Production to Hanson and Third Interrogatories and Requests for Production to the

Young and Gilmer Defendants.

4.     If the Court does not order the immediate responses to these discovery requests,

and the Defendants are given 30 days to respond–and doubtless they will respond

with an objection in order to delay the October 20th trial setting– then it is likely the Plaintiffs will not discover this important evidence sufficiently far in advance of the trial to be able to conduct such additional discovery as is necessary to properly prepare their case against Hanson and Oldcastle.

5.   The documents requested are easily produced by the Defendants. The Youngs and Gilmers, if they have had any written negotiations with Oldcastle and/or Hanson regarding the sale/transfer of the quarry, have these documents in their immediate possession. Producing the documents and responding to the Interrogatories would be relatively quick and easy.

6.   The same is true for Hanson: the documents are easily within the possession and control of Hanson and whatever lawyers or corporate officials negotiated the sale/transfer for Hanson.

7.   To require the immediate production of the documents and responses to the Interrogatories would not, therefore, be burdensome or unreasonable.

**Wherefore,** Plaintiffs move this Honorable Court to enter an order requiring Hanson to fully respond to the Fourth Interrogatories and Requests for Production by 3:00 p.m. Monday, August 4th, and to enter an order requiring the Young and Gilmer defendants to fully respond to the Third Interrogatories and Requests for Production by 3:00 p.m. on Friday, August 8th.

_C E Vercelli_

_____
**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

2

1500

**OF COUNSEL:**

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey &
    Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by faxing a copy of the same ti each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the ___29th___ day of _____, 2003.

OF COUNSEL

135-00\P M-Shorten Time.1.wpd

3

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' FOURTH INTERROGATORIES AND REQUESTS FOR PRODUCTION TO ALL DEFENDANTS

Plaintiffs request Defendant Hanson to answer the following Interrogatories in writing and under oath pursuant to Rule 33 of the Alabama Rules of Civil Procedure, and to produce the following documents and things pursuant to Rule 34 of the Alabama Rules of Civil Procedure.

### I.  INSTRUCTIONS

Plaintiffs incorporate by reference the instructions stated in their First Interrogatories and Requests for Production to the Defendants.

### II. DEFINITIONS

Plaintiffs incorporate by reference the definitions stated in their First Interrogatories and Requests for Production to the Defendants.

### III.  INTERROGATORIES AND REQUESTS FOR PRODUCTION

1.    Describe in detail the reason that Hanson sold, swapped, or otherwise transferred the Lee County Quarry to Oldcastle (or whomever it was sold or transferred to).

1562

2.    With respect to the sale, swap, or other transfer of the Lee County Quarry, describe in detail every step Hanson took

(1) to ensure that the Plaintiffs' complaints about the spoil piles will be resolved, and describe in detail when the Plaintiffs' complaints will be resolved;

(2) to ensure that the Plaintiffs' complaints about noise will be resolved or alleviated in some manner;

(3) to ensure that the Plaintiffs' complaints about dust will be resolved or alleviated in some manner;

(4) to ensure that the Plaintiffs' complaints about blasting will be resolved or alleviated in some manner; and

(5) to ensure that the Plaintiffs' complaints about the quarry dewatering the area and causing sinkholes to form will be resolved or alleviated in some manner.

2

*1503*

3.    Produce every document in your possession or subject to your control that relates in any way to your answers to interrogatories 2(1) to 2(5).

4.    Produce every document in your possession or subject to your control regarding the sale, swap, or other transfer of the Lee County Quarry to Oldcastle (or to whomever the purchaser or transferee is).

5.    Do you contend that the dye trace conducted by Mr. Aley and/or the testing conducted by Mr. Aley was flawed in any way, was inaccurate in any way, or was conducted in any respect in an erroneous, negligent or unprofessional manner?  If your answer is in the affirmative, describe in great detail your contentions and the bases therefor.

6.    Do you contend that the manner in which Alan Lee placed dye collection charcoal packs, or retrieved them, or shipped them to Tom Aley/Ozark Underground Laboratories was done improperly or in such a manner as to be unreliable, improper, or negligent? If your answer is in the affirmative, describe in great detail your contentions and the bases therefor.

1584

7.   Do you contend that the manner in which the charcoal packs were shipped to Mr. Aley is in some manner erroneous or that the manner of shipping affected adversely the proper analyses of those charcoal packs by Mr. Aley and/or his laboratory personnel? If your answer is in the affirmative, describe in detail your contentions and every fact known to you in support of your contentions.

8.   Describe in detail your efforts to test or otherwise determine the validity *vel non* of Mr. Aley's dye trace testing or results, and produce every document in your possession or subject to your control that relates in any way to your efforts in this regard.

9.   Since January 1, 2002, have you conducted any type of dye trace or dye testing, or sampling for any dye, on any portion of the quarry property, the quarry discharge, or elsewhere that relates to the operation of the Hanson Lee County Quarry? If your answer is in the affirmative, please describe such testing in great detail and produce a copy of all documents related to such testing and the results thereof.

4

10.  Once Hanson became aware of the Dye Trace being conducted by Mr. Aley, did Hanson, its attorneys, its agents, employees, consultants, or any other person known to Hanson attempt in any way to alter or modify the results of that test, or to interfere with the Dye Trace results?  If your answer is in the affirmative, describe in detail such actions and identify the person most familiar with such actions.

11.  Describe in detail the manner in which Hanson and/or its attorneys obtained the two letters attached to Defendant's Second Motion In Limine regarding Mr. Tom Aley.

12.  Produce all documents including letters, e-mails, memoranda, notes of telephone conversations or other documents relating to the manner in which Hanson and/or its attorneys obtained the two letters attached to Defendant's Second Motion In Limine regarding Mr. Tom Aley.

5

1566

13. Produce all documents including, without limitation, contracts, correspondence, memoranda, e-mails, to or from Oldcastle Materials Southeast, Inc., regarding any purchase or sale, "swap", transfer, or assignment of the Lee County Quarry.

14. Produce all correspondence, e-mails, memoranda, records of telephone conversations, faxes or other documents of any type or description relating to any communication with the Alabama Board of Licensure for Professional Geologists, Keith Warren, or any employee or agent thereof, as it relates to Hanson Aggregates Southeast, Inc., the Lee County Quarry, or Thomas J. Aley.

15. Defendant hired a consultant (believed to be Jerry Ingram) to conduct a telephone survey relating to alleged adverse pretrial publicity in Lee County. The results of such survey were offered in part to Judge Walker in support of Defendant's motion to change or transfer venue. *See* May 2, 2002, Affidavit of Mr. Ingram. Describe in detail the manner in which this survey was conducted, how the persons contacted were determined, each and every question asked, and the "script" or other document used in conducting the telephone surveys.

16. Produce all documents in the possession or control of Jerry Ingram as it relates to this telephone survey, including, without limitation, any document purporting to

memorialize in any manner the responses of the persons contacted and the questions asked.

17.    Produce all documents of any type or description (including without limitation any documents relating to assignment or renegotiation of any lease agreements) exchanged between any one or more of the named defendants (whether served or not).

18.    Has Hanson or anyone else on its behalf (or on behalf of Oldcastle or any other company) installed or attempted to install any type of dust monitoring equipment (whether automated, semi-automated, or requiring human intervention) within the past 12 months? If your answer is in the affirmative, please produce all documents relating to the installation of such equipment (including without limitation all invoices and cost of installation documents) and all results obtained from such equipment.

19.    In early 2003, there was an earthquake in Northeast Alabama. At the time, there were three seismographs permanently installed near the quarry. Please produce the seismograph readings from these seismographs at the time of the earthquake. If you contend these readings are not available, please explain the reason these readings are not available.

1568

_C. E. Vercelli_

**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by faxing a copy of the same ti each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _22nd_ day of _July_, 2003.

_C. E. Vercelli_

OF COUNSEL

155-00\Ps4thIRPD.4.wpd

8

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

1569

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )     Civil Action No. CV-20 02-0085 |
| | ) |
| HANSON AGGREGATES SOUTHEAST, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFFS' THIRD INTERROGATORIES AND REQUESTS
### FOR PRODUCTION TO THE GILMER & YOUNG  DEFENDANTS

Plaintiffs request the Gilmer Defendants to answer the following Interrogatories in writing and under oath pursuant to Rule 33 of the Alabama Rules of Civil Procedure, and to produce the following documents and things pursuant to Rule 34 of the Alabama Rules of Civil Procedure.

### I.   INSTRUCTIONS

Plaintiffs incorporate by reference the instructions stated in their First and Second Interrogatories and Requests for Production to the Defendants.

### II. DEFINITIONS

Plaintiffs incorporate by reference the definitions stated in their First and Second Interrogatories and Requests for Production to the Defendants.

### III.   INTERROGATORIES AND REQUESTS FOR PRODUCTION

1.   Please produce all documents in your possession or subject to your control that relate in any way to the sale, transfer, lease, assignment, or other negotiation regarding the Hanson Lee County Quarry to any company, including but not limited to Oldcastle Materials Southeast, Inc.

2.    When did you first learn of any pending sale or transfer of the quarry?    1570

3.    Please describe in detail your knowledge of sale, transfer or assignment of the

Hanson Lee County Quarry to another person or entity.

4.    What is the correct name of the entity that purchased or otherwise obtained control

or ownership of the Hanson Lee County Quarry.

_CE Vercelli_
_____
**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

2

1571

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                              H. Wayne Phears
Matt Parnell                                     Phears & Moldovan
Balch & Bingham, LLP                             Suite 375
P.O. Box 78                                      4725 Peachtree Corner Circle
Montgomery, AL 36101                             Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey &
      Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by faxing a copy of the same ti each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _29th_ day of _____, 2003.

_C E Vucelly_
OF COUNSEL

155-00\3rdIRPD-Gilmer-Young1.1.wpd

3

FILED

JUL 30 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' RESPONSE TO HANSON'S OBJECTION TO
### MOTION TO AMEND COMPLAINT

Plaintiffs respond to Hanson's Objection to Plaintiffs' Motion to Amend Complaint and Add a Defendant as follows:

1. This Response should be read in conjunction with Plaintiffs' response to Hanson's objection to Plaintiffs' Emergency Motion to Produce Sales Agreement. As the Court knows, immediately upon learning that Hanson was selling the quarry less than one week before trial, Plaintiffs moved the Court to order the production of the sales agreement. Hanson objected, citing (without any supporting authority therefor) that "confidentiality" and "SEC rules" would not allow them to tell if the quarry was being sold the very next day. This, despite the fact that everyone in the community knew of the sale to Oldcastle.

2. Hanson now objects to the Emergency Motion because it was not a "proper" Interrogatory and Request for Production (which would give them another 30 days before they would have to produce it, which, they well know, would give the new Defendant only 30 days before trial once they were finally served). Thus, the objection can be seen for what it is: another of Hanson's delaying tactics.

3. Turning to the merits of the Objection, Plaintiffs filed a Rule 15(a) Motion to Amend the Complaint to allow them to add a Defendant – the new owner of the quarry to whom Hanson sold its nuisance.

4. Rule 15(a) provides, in pertinent part: "... Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause."

5. **Alabama** Rule 15(a) does not require, or appear to contemplate the filing of, the amended Complaint sought to be filed. Indeed, filing the Amended Complaint prior to the Court granting the Motion would appear contrary to the intent of the Rule.

6.    Hanson's motion, therefore, should be denied: Plaintiffs have rightfully and for good cause shown moved the Court to allow them to amend the complaint for the sole purpose of adding a new Defendant, as Hanson sold the quarry to the new tortfeasor, Oldcastle, and Plaintiffs moved to join the new tortfeasor within days of learning of its existence and ownership.

7.    Regardless, Plaintiffs attach hereto, as Exhibit A, the proposed Fourth Amended and Restated Complaint, which simply adds new paragraphs at the end of the Complaint asserting claims against the new owner of the quarry.

8.    Additionally, Rule 25(c), "Substitution of Parties", clearly provides that Oldcastle can and should be joined immediately in the case:

> "(c) **Transfer of Interest.** In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule."

Accordingly, it is very proper that the Court should immediately order that the new owner of the quarry be **joined** (not substituted) as an additional party, as the transfer of ownership does not in any way absolve Hanson of complete responsibility for all past and future damages to the Plaintiffs.

**Wherefore**, for good cause shown, Plaintiffs move this Honorable Court to deny Hanson's objection and to enter an order granting leave to amend the complaint against Oldcastle.

JAMES B. SPRAYBERRY (SPR008)
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

2

1674

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                        H. Wayne Phears
Matt Parnell                               Phears & Moldovan
Balch & Bingham, LLP                       Suite 375
P.O. Box 78                                4725 Peachtree Corner Circle
Montgomery, AL 36101                       Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by faxing a copy of the same to each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the 30 day of July, 2003.

OF COUNSEL

155-00\Resp H Obj to M-Amend.2.wpd

3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**FILED**

JUL 3 0 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO HANSON'S OBJECTION TO PLAINTIFFS' EMERGENCY MOTION TO PRODUCE SALES AGREEMENT

1.  Hanson actually objects to giving the Sales Agreement to the Plaintiffs. It does so on two grounds: (1) that Plaintiffs did not file a Rule 33 or Rule 34 discovery request in the first place, and (2) since Plaintiffs have now filed Interrogatories and Requests, the Emergency Motion is moot and Hanson should have 30 more days to give up the documents.

2.  The response is, in all candor, nothing but a meritless delaying tactic.

3.  Plaintiffs learned through the local citizens, not through counsel for Hanson (who had a duty–*de facto* if not *de jure*– to advise the Court and Counsel for the Plaintiffs of the sale), only one week before the scheduled 2-week trial of the case.

4.  As the Court knows, to have tried the case without the new owner would have been a monstrous waste of (1) the Court's time and resources, and (2) Plaintiffs' time and resources. Moreover, and worse, the Court might not have had the power to enjoin the new owner.

5.  Apparently, Hanson was going to wait until the day of the trial to advise the Court and Plaintiffs of this minor fact.

6.  In any event, with one week before trial (9 calendar days), Plaintiffs could not realistically file a Rule 33/34 discovery request, which Hanson would not have to answer until 21 days after the trial began. Therefore, to assert that Plaintiffs should have filed a discovery request is absurd.

7.  Hanson's second ground for denial is that since the Plaintiffs now filed "proper" discovery requests (on July 22) seeking this same information, it should get 30 more days to respond.

8.  The case is set for trial on October 20th, 102 days after the filing of the emergency motion, and 90 days after service of the new Interrogatories and Requests for Production. If Hanson answers on time with no delay (it will likely object on the 30th day, requiring a motion to compel, a subsequent hearing, and more delay), then Plaintiffs will not be told who owns the

1575

quarry (proper names, etc.) or what the terms of the sale are until at best just 60 days before the trial.

9.    More importantly, if Hanson's objection is granted, Plaintiffs may not get any discovery from the new owner (including depositions of the new plant manager, the new Corporate Representatives, etc.) until literally days before the trial.

10.    Hanson has had, since July 10th, full knowledge that Plaintiffs want the properly discoverable, complete and unredacted sales or other transfer agreement(s). To delay at this point is unreasonable, unfair to the Plaintiffs, and would reward Hanson by essentially ensuring another continuance.

11.    Hanson's motion should be denied summarily and the Emergency Motion granted under the circumstances.

12.    If necessary, the Plaintiffs move this Honorable Court to treat the Emergency Motion as a motion to shorten time to respond to Plaintiffs' discovery request filed on July 22nd, and to order that Hanson produce the complete and unredacted sales agreement(s) by Monday, August 4th – which would be 25 days after filing the Emergency Motion.

13.    Finally, given that (1) Hanson has not otherwise objected to producing the sales agreement(s) despite having the Emergency Motion for over 19 days and (2) that Hanson requested a hearing on the Motion on August 1 without otherwise objecting to the production, the Court should hold the hearing and immediately order production of each and every document relevant to the sale of the quarry by Hanson to Oldcastle.

**Wherefore,** for good cause shown, Plaintiffs move the Court to (1) overrule Hanson's disingenous objection, and (2) order Hanson to produce the complete and unredacted sales agreement(s) or other documents by whatever name not later than 3:00 p.m. on Monday August 4, to the offices of the undersigned.

**JAMES B. SPRAYBERRY (SPR008)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

2

1577

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

John V. Denson
Samford, Denson, Horsley, Pettey &
        Bridges
P.O. Box 2345
Opelika, AL 36803-2345

by faxing a copy of the same to each and by placing a copy of the same in the United States mail,
properly addressed and postage prepaid, this the  30  day of  July  , 2003.

OF COUNSEL

155-00\Resp H Obj to Emerg M Produce Sales Agr.2.wpd

3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**FILED**

JUL 3 0 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' MOTION TO RECONSIDER ORDER DENYING JOINDER OF ADDITIONAL PLAINTIFFS AND MOTION TO JOIN NEW PLAINTIFF

Plaintiffs move this Honorable Court to reconsider its Order of May 27, 2003, denying Plaintiffs' Motion to add as Plaintiffs in this litigation, Donnie Smith and Mr. and Mrs. David Tankersly, and further move this Honorable Court to Add Mr. Ken Schwiecker as a Plaintiff. As grounds for this Motion, Plaintiffs say:

1.  On May 16, 2003, Plaintiffs moved this Honorable Court for leave to add Donnie Smith and Mr. and Mrs. David Tankersly as Plaintiffs in this case.

2.  Donnie Smith owns property on which numerous sinkholes have formed. His property is located on Spring Villa Road, immediately adjacent to the power line right-of-way and the properties owned by the Utilities Board of the City of the Opelika.Mr. Smith's properties have suffered numerous sinkholes and other collapses caused by Hanson's dewatering of the area including his property.

3.  Hanson's experts and attorneys have several times traveled to Mr. Smith's properties to examine the sinkholes and they have had discussions with him prior to his request to be added as a Plaintiff. Mr. Smith does not complain of noise, dust, or damage due to blasting – only that the quarry has caused sinkholes on his land that makes his land unsafe, and that

1579

the sinkholes continue to appear, making it dangerous to walk or ride on substantial portions of his land. Therefore, aside from deposing Mr. Smith, little needs to be done by the Defendants to discover their case against Mr. Smith.

4.   Mr. and Mrs. David Tankersly live close to Mr. Smith, on Highway 148 (Spring Villa Road). Numerous sinkholes have developed on their property, which is somewhat west of the Smith and Spring Villa properties. Mr. Tankersly's well has also gone dry. As before, the Tankerslys do not complain of noise, dust, or blasting damage. They complain that Hanson's dewatering has caused sinkholes to form on their land, making it unsafe and jeopardizing their home (a sinkhole has formed near the corner of their home). Hanson's experts have already spoken with Mr. Tankersly, and Hanson's experts (and possibly its attorneys) have visited the Tankerslys' lands and photographed and otherwise recorded information about the sinkholes and the well water levels (dry except immediately after a heavy rain). Therefore, there is little left for Hanson to do except to depose the Tankerslys.

5.   Plaintiffs note that Mr. Smith and Mr. Tankersly have long been listed as witnesses on their trial witness list, so that Hanson has long known of these persons' complaints.

6.   Since the Court denied the motion initially, the case has been continued for three more months. In the interim, Hanson's experts have regularly examined these putative Plaintiffs' properties, have recorded readings from the Tankersly well, and have otherwise "discovered" these persons' claims.

7.   In the interests of judicial economy, it only makes sense to include the Smith and Tankersly claims in this same litigation now.

2

8.      Plaintiffs do not intend to have Mr. Smith and Mr. and Mrs. Tankersly's claims litigated in the first trial of the case. Rather, they are (and have long been) scheduled to be witnesses in the first trial, and will be witnesses regardless whether they are or are not parties to this litigation. However, by adding them as parties now, neither they nor the Defendants will have to re-litigate the exact same issues with the exact same witnesses, the exact same testimony, and the exact same experts. In short, if the Court does not allow the joinder of these parties and claims at this time, there will be another two or three week long trial at some point one or two years down the road, with all of the same parties as Defendants, with all the same facts as related to the geological evidence, and with all the same and witnesses.

9.      It is significant that the Defendants have already fully investigated the Smith and Tankersly lands and the sinkholes thereon. Therefore, Defendants cannot claim an inability to prepare to defend their case. This is especially true since neither parties' claims would actually be litigated in October. Rather, as with the remaining 50-odd plaintiffs, their claims would either be settled after the October trial, or they would go to trial much later than October.

10.     Since Hanson and its experts have already spoken with these Plaintiffs they have already taken GPS coordinates on the sinkholes, they have already examined Mr. Tankersly's dry well (the only dry well in the county), and they have, therefore, already substantially developed whatever factual arguments are necessary to defend their case, there is no reason to delay adding these persons as parties. In point of fact, by adding them as parties, the Defendants would have a better basis (bias and interest in the outcome) to impugn their trial testimony.

3

180

11.     In addition, another person, Mr. Ken Schwieker, has contacted the Plaintiffs' attorneys about joining this lawsuit. Mr. Schwieker owns land north of Donnie Smith and adjacent to Little Uchee Creek and the Utilities Board property on the north side of Spring Villa Road. Numerous (at least six major sinkholes) sinkholes have formed on Mr. Schwieker's property, and he feels that it is no longer safe to walk or ride horseback on large portions of his property.

12.     Although Mr. Schwieker would now be added as a plaintiff, his claims for damages would not be presented to the October jury. Rather, as with the other plaintiffs, the Tankerslys and Mr. Smith, his claim would wait until another portion of the trial of this case after October.

13.     Also as before, Mr. Schwieker does not claim damages for dust, noise or blasting–only the creation of sinkholes on his lands.

14.     Therefore, Hanson will not be prejudiced by adding Mr. Schwieker as a party, Hanson has plenty of time to depose him should it so desire (he will now be listed as an additional trial witness to authenticate and locate the sinkholes on his lands), and Hanson would not be prejudiced by this joinder at this time.

15.     Finally, it would make sense to allow this landowner to also join this case in order to avoid the necessity of having a second or third trial at some point in the future.

16.     The interests of judicial economy, as well as costs to the parties, strongly compels the conclusion that these parties should be allowed to join the current lawsuit, although they should not be added as "parties" whose claims will be adjudicated on October 20th.

**WHEREFORE,** for good cause shown, Plaintiffs move this Honorable Court to reconsider

its Order denying the Motion to add Donnie Smith and Mr. and Mrs. Tankersly as parties Plaintiff

and to allow the same, and to enter an order joining Mr. Ken Schwieker as a plaintiff.


**JAMES B. SPRAYBERRY (SPR008)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

1583

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                John V. Denson
Dorman Walker                     Samford, Denson, Horsley, Pettey & Bridges
Matt Parnell                      P.O. Box 2345
Balch & Bingham, LLP              Opelika, AL 36803-2345
P.O. Box 78
Montgomery, AL 36101

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

by faxing a copy of the same to each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the 3O  day of July, 2003.

OF COUNSEL

155-00\Ps'Mot-OrderDenyJoinder.2.wpd

6

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

1584

| | | |
|---|---|---|
| **MIKE DAVIS, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| **HANSON AGGREGATES SOUTHEAST,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO RETAIN EXHIBIT

Plaintiffs move this Honorable Court to retain a complete copy of the Skelly & Loy report that the Court examined in-camera, for use during the trial of the case.   In support of this Motion, Plaintiffs say:

1.    Plaintiffs filed a Motion to Compel production of several documents, one of which was the Skelly & Loy Phase I report.

2.    On June 13, 2003, the Court entered an Order requiring Hanson to produce parts of that report to the Plaintiffs.

3.    Plaintiffs maintain that the entire document is discoverable.

4.    The Court, at the time of reviewing the document, did not have the benefit of hearing the evidence at trial.

5.    Plaintiffs move the Court to have an unredacted copy of the report available for its review during the trial to determine whether additional portions of the report are, based upon the evidence adduced at trial, relevant, material and discoverable.

**Wherefore,** for good cause shown, Plaintiffs move this Honorable Court to retain a complete copy of the Skelly & Loy Phase I report during the trial so that the Court could, during the trial, determine if additional portions thereof should be produced to the Plaintiffs.

**JAMES B. SPRAYBERRY (SPR008)**
One of the Attorneys for the Plaintiffs

1585

OF COUNSEL:
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Dorman Walker
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

by Faxing a copy of the same to each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the 31 day of July, 2003.

OF COUNSEL

155-00\PsMot-RetainExh.2.wpd

F I L E D

JUL 31 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

2

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED 1586

AUG 0 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.:  CV-02-85 |
| | ) | |
| HANSON AGGREGATES, | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF TAKING DEPOSITION

TO:  **Jim Byram, Esq.**                          **John Denson, Esq.**
**Dorman Walker, Esq.**                      P.O. Box 2345
P.O. Box 78                                          Opelika, Alabama 36803-2345
Montgomery, Alabama 36101-0078

**H. Wayne Phears, Esq.**
**Phears & Moldovan**
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

Please take notice that at the time, date and place indicated below, Plaintiff shall take the testimony by deposition upon oral examination of **The Corporate Representative of Defendant Oldcastle Materials Southeast, Inc.** who is requested to give testimony and produce documents related to the following matters:

1.    The negotiation of the purchase or other transfer of the Hanson Aggregates Southeast, Inc., Lee County Quarry to Oldcastle Materials Southeast, Inc.

2.    The terms and conditions of any agreements or other documents of any type or description related to the purchase, transfer, or other assumption of the Hanson Aggregates Southeast, Inc., Lee County Quarry to Oldcastle Materials Southeast, Inc.

3.    Any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Gilmer Defendants.

Page 1 of 3

1587

4.  Any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Young Defendants.

Such deposition shall be taken for the purpose of discovery or for use as evidence in this action pursuant to the Alabama Rules of Civil Procedure.

**TIME:**  Said deposition shall be taken on Friday, September 5, 2003 commencing at 9:00 A.M. and from time to time thereafter as said deposition may be continued for completion.

**PLACE:**  Said deposition shall be taken in the office of James B. Sprayberry, 225 North Gay Street, Auburn, Alabama 36830.

**TAKEN BEFORE:**  Said deposition shall be taken before someone who is authorized to administer oaths by the laws of the State of Alabama.

Deponent is requested to bring to the deposition all documents related to the following:

1.  The negotiation of the purchase or other transfer of the Hanson Aggregates Southeast, Inc., Lee County Quarry to Oldcastle Materials Southeast, Inc.

2.  The terms and conditions of any agreements or other documents of any type or description related to the purchase, transfer, or other assumption of the Hanson Aggregates Southeast, Inc., Lee County Quarry to Oldcastle Materials Southeast, Inc.

3.  Any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Gilmer Defendants.

4.  Any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Young Defendants.

Charles E. Vercelli, Jr.
One of the Plaintiffs' Attorneys

Page 2 of 3

1588

**OF COUNSEL:**

**CHARLES VERCELLI, JR.,** (VER004)
*Co-Council for Property Owners*
1019 South Perry Street
Montgomery, AL 36104
(334) 834-8807

**JAMES B. SPRAYBERRY** (SPR008)
*Co-Council for Property Owners*
Post Office Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

**GUY GUNTER**
*Council for City of Opelika/ Opelika Water Board*
P.O. Box 409
Opelika, Alabama 36801
(334) 745-6288

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the _1_ day of August , 2003.

James A. Byram, Jr., Esq.
Dorman Walker, Esq.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

Rick Tyler
Montgomery Court Reporting
P.O. Box 1761
Montgomery, Alabama 36102

John Denson, Esq.
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

James Haygood, Esq.
Haygood, Cleveland & Pierce
P.O. Box 3310
Auburn, Alabama 36831-3310

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

Charles E. Vercelli, Jr.

Page 3 of 3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

1589

MIKE & DONNA DAVIS; MIKE & ANN BROADWATER;      )
MITTIE BROADWATER; CITY OF OPELIKA, a Municipal      )
Corporation; THE UTILITIES BOARD OF THE CITY OF      )
OPELIKA, a public corporation; BEAUREGARD WATER      )
AUTHORITY, a public coporation; ANTHONY & CAROL      )
CLARK; CAROL CLARK, as Mother and Next Friend of      )
COURTNEY CLARK; ELAINE EDWARDS; MARY SUE      )
EILAND; MEDENA FRIZZEL; MEDENA FRIZZEL, as      )
Mother and Next Friend of KARLA FRIZZELL and      )
BRIANNA YOUGREN; RONNIE & DOROTHY GRIGGS;      )
MIKE & STACEY HAGENS; HOWARD & LISA HARMON      )
LISA HARMON, as Mother and Next Friend of JUDSON &      )
BRIA HARMON; HAYWARD & NORA JACKSON; MIKE &      )
SHELIA LaMACCHIA; SHELIA LaMACCHIA, as Mother      )
and Next Friend of RUSSELL LaMACCHIA;      STANLEY &      )
JACKIE LEDBETTER; TERRY & CAROL LONG; TIM &      )
ADA MANNING; DAVID & JANETTE BAGGETT; JAMES      )
& SHIRLEY PARKER; RANDALL & WANDA PARKER;      )
WANDA PARKER, as Mother and Next Friend of AMBUR      )
& BRANDON PARKER; JEFF & MARIA RICHARDSON;      )
MARIA RICHARDSON, as Mother and Next Friend of      )
NATASHA RICHARDSON; DAVID & AMANDA      )
SUMNER; AMANDA SUMNER, as Mother and Next Friend      )
of TODD SUMNER; LARRY & RITA SUMNER; MARTHA      )
TREADWAY; MARTHA TREADWAY, as Guardian and Next      )
Friend of JASMIN, MICHAEL, HAZEL & JOSEPH KING;      )
BILLY & SHERRY WALLACE; SHERRY WALLACE, as      )
Mother and Next Friend of AARON WALLACE;      )
MICHELE WILKES; SHIRLEY WILSON; BETTY J.      )
PFINGSTON; BETTY J. PFINGSTON, as Guardian and      )
Next Friend of JESSICA PFINGSTON; and WONDA      )
BRIGHT,      )
)
        Plaintiffs,      )
)
vs.      )
)
HANSON AGGREGATES SOUTHEAST, INC.; LOUISE      )
YOUNG O'BRIEN; VIRGINIA YOUNG PRIEST; VIRGINIA      )
HART YOUNG; CLAUDE JOHN YOUNG;CHARLES W.      )
GILMER, SR.; ALICE C. GILMER; CHARLES W. GILMER,      )
JR.; KAMMY GILMER; BARBARA GILMER SMITH; GARY      )
SMITH; MATTHEW RUTTLEDGE GILMER; LELIA      )
WILDER GILMER; GILMER PROPERTIES, LTD.; and      )
OLDCASTLE MATERIALS SOUTHEAST, INC.,      )
)
        Defendants.      )

FILED

AUG 0 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

Civil Action No.

CV-20 02-85

## THIRD AMENDED AND RESTATED COMPLAINT

1500

1. Plaintiffs Mike and Donna Davis, who reside at 149 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Davises aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: cracks have formed in the basement and in the fireplace; the tiles in the ceiling of the basement are falling out; their boat and boathouse are forever covered by a thick coat of dust; Donna Davis has developed allergy and sinus problems within the last two years, caused by the Defendants; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

2. Plaintiffs Mike and Ann Broadwater, who reside at 610 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Broadwaters aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: a cracked foundation; cracked ceilings; a cracked fireplace; unlevel floors; Plaintiff Mike Broadwater has had a lung transplant and the never ending dust, noise and shaking of the home have greatly aggravated his condition; and other known and unknown damages.

3. Plaintiff Mittie Broadwater, who resides at 574 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Broadwater avers that as a result of Defendants' actions her home and property have sustained the following damages, among others: the blocks under her mobile home have cracked and are falling apart; the front and back doors of her home are hanging up on the bottom of the doorway; the windows of her home are cracked; and there are other known and unknown problems with her home and property.

4. Plaintiff City of Opelika is a municipal corporation organized under the laws of the state of Alabama, situated in Lee County, Alabama.

5. Plaintiff The Utilities Board of the City of Opelika, is a public corporation that operates a public water supply and distribution system on behalf of the City of Opelika and surrounding areas of Lee County, Alabama.

6. Plaintiff, the Beauregard Water Authority, is a public corporation that operates a public water supply and distribution system on behalf of the Beauregard community and surrounding areas of Lee County, Alabama.

1591

7.  Plaintiffs Anthony and Carol Clark, who reside at 1740 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Clarks aver that as a result of the Defendants' actions their home, property and families have sustained the following damages, among others: cracked walls and ceilings; cracks in the foundation of the home; cracked windshields in their vehicles; sink holes have formed on their property; the allergies and asthma suffered by certain family members have been aggravated and their medical conditions will continue to deteriorate; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

8.  Plaintiff Courtney Clark is a minor citizen of Lee County, Alabama, who resides with his parents Anthony and Carol Clark. Plaintiff Courtney Clark avers that as a result of the Defendants' actions, he has developed asthma, suffers from this disease daily, and will continue to suffer from this condition. He may have other known and unknown damages.

9.  Plaintiff Elaine Edwards, who resides at 3274 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Edwards avers that as a result of the Defendants' actions, her homes and the home of her mother have sustained the following damages, among others: her home vibrates; cracks in the sidewalks; the concrete steps have pulled away from her concrete porch; her renal condition has been aggravated by the constant vibrations and dust; she has incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

10. Plaintiff Mary Sue Eiland, who resides at 2853 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Eiland avers that as a result of the Defendants' actions her home and property have sustained the following damages, among others: cracked windshields; cracks in the concrete; walls cracked in every room of her home; tiles falling from the bathroom ceilings; and other known and unknown problems with her home and property.

11. Plaintiff Medena Frizzel, who resides at 3173 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Plaintiff Medena Frizzell avers that as a result of the Defendants' actions her home, property, and family have sustained the following damages: cracked windshield on her vehicle; cracked windows in her home; cracked mirrors; ceiling leaks; cracked ceilings; trim falling off walls; pictures falling off

3

walls; her home is unlevel; the electricity and power blink off and on when blasting occurs; Plaintiff Medena Frizzell has suffered a recurrence of her childhood asthma within the last three years; she has incurred medical expenses; and other known and unknown problems with her home and property.

12.     Plaintiff Karla Frizzel is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Karla Frizzel avers that as a result of the Defendants' actions she has developed an asthmatic condition and will continue to suffer from this condition.

13.     Plaintiff Brianna Yougren is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Brianna Yougren avers that as a result of the Defendants' actions she has  has developed an asthmatic condition and will continue to suffer from this condition.

14.     Plaintiffs Ronnie and Dorothy Griggs, who reside  at 3256 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Griggs aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages, among others: cracked foundation; cracked sidewalks; cracks in the bathroom tile; flower boxes are pulling away from the walls of the house; Plaintiff Dorothy Griggs has developed allergy and sinus problems due to the constant presence of quarry dust in her home and on her property; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

15.     Plaintiffs Mike and Stacy Hagans, who reside at 1668 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Hagans aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages: cracked windshields on their vehicles; sinkholes have formed on their property; their house is unlevel; cabinets are separating from the walls of their home; cracked windows; the allergies suffered by certain family members have been aggravated; Plaintiff Stacy Hagans suffers from inflamed and infected sinuses; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

16.    Plaintiffs Howard and Lisa Harmon, who reside at 145 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Harmons aver that as a result of the Defendants' actions their home, property, and family have sustained the following damages, among others; their home vibrates during blasting activities; cracked bricks on the exterior of the home; cracks in fireplace; Plaintiff Howard Harmon has developed chronic sinusitis ; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

17.    Plaintiff Judson Harmon is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Lisa Harmon. Plaintiff Judson Harmon avers that as a result of the Defendants' actions he has developed allergic rhinitis and will continue to suffer from this condition.

18.    Plaintiff Bria Harmon is a minor resident citizen of Lee County who resides with her parents, and who brings this action by and through her mother and next friend, Lisa Harmon. Plaintiff Bria Harmon avers that as a result of the Defendants' actions she has developed chronic allergies and sinus problems and she will continue to suffer from this condition.

19.    Plaintiffs Hayward and Nora Jackson, who reside at 1141 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Jacksons aver that as result of the Defendants' actions, their home, property and family have been damaged as follows: mud and water constantly stands on their property inviting the presence of swarms of insects, frogs, snakes and other pests; Plaintiff Nora Jackson has developed chronic bronchitis, inflammatory lung disease, atypical pneumonia, and acute respiratory distress syndrome; the family has incurred medical expenses; and other known and unknown damages.

20.    Plaintiffs Mike and Shelia LaMacchia, who reside at 1355 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The LaMacchias aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: their backyard underground spring has gone dry; the foundation of their home is cracked; they have incurred medical expenses as of result of their child's illnesses; and other known and unknown problems with their home and property.

1594

21.    Plaintiff Russell LaMacchia, is a minor resident citizen of Lee County, Alabama, who resides with his parents, and who brings this action by and through his mother and next friend, Shelia LaMacchia.    Plaintiff Russell LaMacchia avers that as a result of the Defendants' actions, he has developed otitis media and will continue to suffer from this condition.

22.    Plaintiffs Stanley and Jackie Ledbetter, who reside at 1330 Lee Road 166, and also own rental properties located across the street at 1333 Lee Road 166, Lots #2-9, 1377 Lee Road 166, 1332 Lee Road 166, 1334 Lee Road 166, 1336 Lee Road 166, and 1340 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.    The Ledbetters aver that as a result of the Defendants' actions, their homes, properties and family have sustained the following damages, among others: cracked windows; foundation cracks; cracked ceilings; unlevel mobile homes; and other known and unknown problems with their home and properties.

23.    Plaintiffs Terry and Carol Long, who reside at 3379 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.    The Longs aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracks in cement sidewalks; cracks in cement around swimming pool; cracks around windows; cracks in trim work; recent cracks forming in three year old addition to home; and other known and unknown problems with their home and property.

24.    Plaintiffs Tim and Ada Manning, who reside at 3226 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.    The Mannings aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: chipped paint on their vehicles as result of blasting debris landing in their yard; cracked windshields; a cracked foundation on their home; cracks in  driveway and in cement area around their swimming pool; crack in swimming pool; and other known and unknown problems with their home and property.

25.    Plaintiffs David and Janette Baggett, who reside at 1198 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.    The Baggetts aver that as a result of the Defendants' actions, their homes, property, and family have sustained the following damages, among others: leaks in their ceilings; cracks in

ceilings; cracks in walls; mobile homes are unlevel; Plaintiff Janette Baggett's depression and nervous condition has been greatly aggravated by the constant noise, blasting and shaking that occurs in her home; Plaintiff David Nash has developed allergy and sinus problems within the last two years; they have incurred medical expenses; and other known and unknown problems with their homes and property.

26.    Plaintiffs James and Shirley Parker, who reside at 3039 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. James and Shirley Parker aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: cracked windows; a cracked foundation; cracks in the walls and ceilings of their home; due to the constant presence of quarry dust, Plaintiff Shirley Parker has developed asthma within the last two years; and other known and unknown damages.

27.    Plaintiff Randall and Wanda Parker, who reside at 1229 Lee Road 166, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs' Randall and Wanda Parker are riparian owners south of Spring Villa Park who own part of Little Uchee Creek. Randall and Wanda Parker aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked foundation; cracked chimney; cracked sheet rock; cabinets pulling away from the walls; light fixtures are loose and fall when blasting occurs; Plaintiff Wanda Parker developed asthma approximately 1 year ago; they have incurred medical expenses and will continue to do so; and other known and unknown damages. Furthermore the Randall and Wanda Parker aver that the past and future actions of the Defendants will irreparably harm their family's interests in and to Little Uchee Creek, as well as the interests of many other citizens of Lee County, Alabama, who use the creek as they do.

28.    Plaintiff Ambur Parker is a minor resident citizen of Lee County who resides with her parents James and Wanda Parker, and who brings this action by and through her mother and next friend, Wanda Parker. Plaintiff Ambur Parker avers that as a result of the Defendants' actions, she has developed asthma within the last year and will continue to suffer from this condition.

29.    Plaintiff Brandon Parker is a minor resident citizen of Lee County who resides with his parents James and Wanda Parker, and who brings this action by and through his mother and

1598

next friend, Wanda Parker. Plaintiff Brandon Parker avers that as a result of the Defendants' actions, he has developed allergy and sinus problems that include nose bleeds and will continue to suffer from this condition.

30. Plaintiffs Maria and Jeff Richardson, who reside at 265 Lee Road 705, are over the age of nineteen years and are residents of Lee County, Alabama. The Richardsons aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: cracked foundation; cracks in the ceiling; Plaintiff Jeff Richardson has developed allergic sinus problems; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

31. Plaintiff Natasha Richardson is a minor resident citizen of Lee County who resides with his parents and who brings this action by and through her mother and next friend, Maria Richardson. Plaintiff Natasha Richardson avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

32. Plaintiffs David and Amanda Sumner, who reside at 164 Lee Road 148, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. David and Amanda Sumner aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others; cracked foundation; crack in the ceilings; crack in the concrete surrounding the swimming pool; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

33. Plaintiff Todd Sumner, is a is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Amanda Sumner. Plaintiff Todd Sumner avers that as a result of the Defendants' actions, he developed asthma at the age of three months and will continue to suffer from this condition.

34. Plaintiffs Larry and Rita Sumner, who reside at 1100 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs Larry and Rita Sumner aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked windshields; house is unlevel; cracked roof; cracked ceilings; cracked walls; slit roof beams; and other known and unknown damages.

35. Plaintiff Martha Treadway, who resides at 3177 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Treadway avers that as result

of the Defendants' actions, her home, property and family have sustained the following damages, among others: destroyed field lines; cracked ceilings; cabinets pulling away from the walls; she has developed chronic pulmonary disease, a serious problem with her lung, in the last three years; bricks falling off the frame of the house; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

36.  Plaintiff Jasmine King, is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Martha Treadway.  Plaintiff Jasmine King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

37.  Plaintiff Michael King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway.  Plaintiff Michael King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

38.  Plaintiff Hazel King is a minor resident citizen of Lee County who resides with her grandmother, and who brings this action by and through her grandmother and next friend, Martha Treadway. Plaintiff Hazel King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

39.  Plaintiff Joseph King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway. Plaintiff Joseph King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

40.  Plaintiffs Billy and Sherry Wallace, who reside at 1692 Lee road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.  The Wallaces aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: pictures are being knocked off walls and destroyed; cracked ceilings; windows knocked out of the home; cracked fireplace stones; cracked windows; their older child suffers from asthma but has been in remission since leaving the family home; Plaintiff Billy Wallace has developed a cavitary lung disease; the family has incurred medical expenses and will continue to do so; and other known and unknown damages.

1508

41. Plaintiff Aaron Wallace is a minor resident citizen of Lee County who resides with is parents, and who brings this action by and through his mother and next friend, Sherry Wallace. Aaron Wallace avers that as a result of the Defendants' actions he has developed asthma, chronic allegeries, sinuitis; that he is forced to sleep under a cold air humidifer; and will continue to suffer from these conditions, and other known and unknown damages.

42. Plaintiff Michele Wilkes, who resides at 148 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Wilkes avers that as the result of Defendants' actions, her home and property have sustained the following damages, among others: a cracked foundation; bricks separating from a concrete porch; water leakage in her basement; concrete blocks in basement separating; concrete pad and step s pulling away from the house; she has developed sinus problems in the last three years; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

43. Plaintiff Shirley Wilson, who resides at 64 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Wilson avers that as a result of the Defendants' actions, her home and property have sustained the following damages, among others: the well located on her property is filling in; cracked walls; cracked foundation; she has developed an allergy to dust that was worsened over the last year; and other known and unknown damages.

44. Plaintiff Betty J. Pfingston, who resides in one of the mobile homes owned by Stanley Ledbetter off of Highway 166 in Lee County, and is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Pfingston avers that as a result of the Defendants' actions, the mobile home in which she lives has been damaged; she has to put up with the noise, vibration, dust, and other irritations caused by the quarry, to her great inconvenience and harm; and she has suffered other known and unknown damages.

45. Plaintiff Jessica Pfingston is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Betty J. Pfingston. Jessica Pfingston avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition, and other known and unknown damages.

46. Plaintiff Wonda Bright resides at 245 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Bright avers that as a result of the Defendants'

actions, she has suffered the following damages: she cannot escape the noise, truck traffic noise, blasting noise and vibration, dust, and her home has suffered cracks on the concrete porches. Additionally, she has developed allergies and must now take allergy medication, and she has been unable to sell her house and move away from the nuisance.

47.    Defendant Hanson Aggregates Southeast, Inc. (hereinafter "Hanson") is a foreign corporation doing business in Lee County, Alabama. It owns and operates a limestone quarry, equipment terminal and an explosives holding area on the property belonging to the Young Defendants and the Gilmer Defendants.

48.    Defendants Louise Young O'Brien, Virginia Young Priest, Virginia Hart Young, and Claude John Young (hereinafter "the Young Defendants") are either members of a limited partnership or a general partnership. The Young Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Opelika Materials, Inc., and ultimately to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Young Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Young Defendants.

49.    Defendants Charles W. Gilmer, Sr., Alice C. Gilmer, Charles W. Gilmer, Jr., Kammy Gilmer, Barbara Gilmer Smith, Gary Smith, Matthew Ruttledge Gilmer, Lelia Wilder Gilmer, and Gilmer Properties, Ltd. (hereinafter "the Gilmer Defendants") are either members of a limited partnership or a general partnership. The Gilmer Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Gilmer Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Gilmer Defendants.

## STATEMENT OF FACTS

11

50. The individual Plaintiffs all reside within a mile or so of the Defendants' properties, near Lee County Road 166 and Alabama Highway 169, and all own property that is in close proximity to the quarry owned and/or operated by Defendants Hanson.

51. The Beauregard Water Authority operates water wells in or near the same "chewacla marble" terrain. The Plaintiff believes the water table has been effected and that this adverse impact will increase in the future if the quarry continues to operate. They also believe the repetitive blasting has caused damage to its water lines and will continue to do so in the future.

52. The City of Opelika owns Spring Villa Park and swimming pool, and The Utilities Board owns and operates properties surrounding Spring Villa Park, including a natural spring that has flowed, non-stop, for generations. The spring ceased to flow in the spring of 2000, within a few years after the quarry began pumping millions of gallons of water per day out of the quarry pit. The quarry pit and the spring are in the same "chewacla marble" (aka limestone) terrain, which is highly fractured, and through which water migrates easily. Plaintiffs aver that the quarrying activities of the Defendants have in fact caused the spring to go dry.

53. The Spring Villa Park swimming pool was fed by the spring water, so that the swimming pool is now dry and has been since the spring of 2000. Therefore, both the City of Opelika and The Utilities Board have suffered various damages. Although the Utilities Board does not now rely upon the spring for a source of public drinking water, it may do so in the future, so that the Defendants' actions in drying the spring have and will cause damage to the City and to The Utilities Board. The City of Opelika has also now lost the opportunity to construct a recreational lake on and upon the Spring Villa Park property, for use by the public for recreational purposes. The land owned by the City and The Utilities Board have, therefore, been devalued by the actions of the quarry.

54. Were the Court to enjoin the quarry from pumping water from the aquifers in the area, and require it to allow the quarry pit to fill, it is probable that the "cone of depression" caused by pumping such large quantities of water from the quarry pit will gradually disappear, and it is probable that the spring would again flow.

55. The Defendants' operation of a limestone quarry constitutes a nuisance.

56. The actions of the Defendants have caused a de-watering of the subsoil in a large area surrounding the quarry.

57. The Hanson quarry operation is immediately adjacent to the Dixie Pipeline, a very large transcontinental liquid propane gas pipeline. The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within as little as 100 feet of the pit created by the Defendants' operations.

58. There is a substantial likelihood that the operations of the Defendants in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry. This result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

59. An example of one such sinkhole is a 25 feet in diameter, 20 feet deep sinkhole that developed within the last two months, 34 feet east of the pavement of Highway 166, and only 233 feet north of the center of the Dixie Pipeline easement that crosses Highway 166.

60. Sinkholes have also formed on the Plaintiffs' lands, including a large sinkhole in the driveway of the Clarks, which was filled with many dumptruck loads of dirt. This sinkhole, and others, formed only a few hundred feet south of the Dixie Pipeline easement and within a few hundred feet of the quarry pit.

61. The operations of the quarry in causing sinkholes to form now and in the future will in fact endanger the viability of the Dixie Pipeline. It is entirely possible, and indeed foreseeable, that if the ground beneath the Dixie Pipeline were to give way, particularly at a welded joint, the Dixie Pipeline would then rupture. A rupture of the pipeline could very well cause an explosion of devastating proportions. An explosion from the Dixie Pipeline could literally incinerate an area hundreds of yards in diameter, including Plaintiffs' homes and/or passing motorists on Highway 166.

62. Many of the Plaintiffs' homes are located within a few hundred yards of the Dixie Pipeline and the Defendants' quarry.

63. In recent depositions of Hanson corporate representatives, it was also learned that Hanson has violated several of the terms and conditions of Dixie Pipelines' "blasting guidelines", which Dixie relied upon in granting Hanson permission to blast so close to the pipeline. These violations included using too many pounds of explosives too close to the pipeline and failing to notify Dixie Pipeline personnel of their intentions to blast so that Dixie could

13

reduce the operating pressure on the pipeline–a safety measure designed to protect the integrity of the pipeline and to avoid damage to the pipeline.

64. Hanson necessarily uses thousands of pounds of explosives each week in blasting at the quarry. The blasting obviously throws thousands of pounds of earth, including rock, dust, and fine particulate, into the air in and around the quarry.

65. The blasting causes shaking of the earth, shaking of the Plaintiffs' homes, and the throwing of rock, dirt and dust onto and about the lands of the Plaintiffs.

66. As part of its operations, Hanson necessarily contracts with trucking companies and tractor-trailer and dump-truck operators to remove their product from the quarry site and onto the roads and highways in Lee County, including Highways 169 and 166, among others. This causes from dozens to hundreds of trucks daily to enter and exit from the quarry. These trucks are loaded to weights substantially in excess of the design criteria for the roads and highways, and cause substantial amounts of dust and debris to be deposited on the public roads and upon the lands of many of the plaintiffs.

67. As part of its operations, Hanson necessarily moves large quantities of overburden to a "spoil pile" area that is immediately adjacent to several of the Plaintiffs' lands, including the Davises, the Harmons, Ms. Wilkes, and the Jacksons.

68. The quarrying activities from this pit inevitably cause substantial, objectionable, and unceasing noise during most hours of the day and many hours of the night, as the plant generally operates from 6:00 a.m. until 6:00 p.m. and often thereafter. This noise also occurs commonly on the weekends, sometimes including Sundays. This noise comes from rock crushers, explosions, loud machinery operating many hours during the day and night, whistles, backup bells on heavy equipment, large trucks traveling up and down the roads and highways, and other such noises.

69. The quarrying causes dust and other pollutants to accumulate on the Plaintiffs' property, including inside their homes, and in the air on their property and near their property, thereby causing damage to the Plaintiffs personally and to their real property.

70. Hanson has, for several years, had actual and constructive knowledge that sediment and erosion floods onto Plaintiff Jackson's lands and onto Plaintiff Randall Parker's lands. Despite requests to stop the erosion and flooding, Hanson has ignored the problem and has failed to take any corrective action whatsoever.

14

71. The quarrying causes such a constant noise and vibration to the Plaintiffs' property, including their homes, that they cannot peaceably enjoy their land.

72. Defendants' operations are so loud and annoying that at many times, it is impossible for some of the Plaintiffs to sleep – especially those who work at night and must sleep during the day, such as Mr. Davis.

## COUNT ONE
### (Private and Public Nuisance)

73. Plaintiffs reallege paragraphs 1 through 70 of the Complaint as if set out here in full.

74. Defendant Hanson's quarrying operations have caused and are causing a private and/or public nuisance to exist, as described above. The quarrying is harmful to the public and adversely affects people of ordinary sensibilities.

75. Hanson's operations create unreasonably loud noises, vibrations, dust, and pollution, and cause a tremendous increase in traffic from dangerously loaded heavy trucks. These and other damages alleged in this Complaint harm the public generally.

76. The Plaintiffs have suffered and continue to suffer hurt, inconvenience, and other damages that are different in kind and degree than the damages suffered by the general population of Lee County. Moreover, the Plaintiffs have suffered damages due to Defendants' conduct that would affect any ordinary, reasonable person, and such damages are not such as would be fanciful or as would affect only a person of fastidious taste. Plaintiffs have the right to file this claim under Alabama Code Sections 6-5-120, 6-5-123, 6-5-124, 6-5-125 and 6-5-127.

77. The damages caused to the individual Plaintiffs include, but are not limited to:

    a. lack of quiet enjoyment of their property, which includes, at times, a complete inability to use or enjoy their property;

    b. noise generated by machinery operating virtually twenty-four hours per day;

15

c.  pollution of the air by dust generated from blasting, diggings, movement of equipment and operation of heavy machinery and manufacturing plants;

d.  permanent devaluation of the Plaintiffs' land and homes by the above mentioned nuisance;

e.  noise, vibration, and damage to their homes and property caused by the Defendants' use of explosives and the blasting in the quarry;

f.  increase in pollution (air, noise, garbage) caused by the increase in traffic volume of heavy and dangerous trucks;

g.  broken windshields and damaged automobiles caused by the trucks going to and from the quarry at all hours;

h.  mental anguish and mental suffering of these Plaintiffs as they worry about the safety and value of their loved ones, their homes, and their lands; and

i.  Personal injury, including causing some plaintiffs to develop asthma and other breathing/pulmonary problems, and exacerbating other plaintiffs' existing asthmatic and other breathing/pulmonary problems.

78.  Hanson's actions have been repetitive, willful, wanton and aggravated. Hanson has ignored and violated the important "blasting guidelines" of the Dixie Pipeline (which are designed to ensure the integrity of the pipeline, and, therefore, the safety of the community), and Hanson has continued to blast even though inside the Opelika police jurisdiction and even though it was requested by Plaintiffs to refrain from blasting.

79.  Moreover, despite actual knowledge that the spoil pile is sloped very steeply, was never planted with any type of vegetation to arrest erosion and runoff, and that, therefore, large quantities of dirt and sediment migrate onto the Plaintiffs' properties, Hanson has taken

16

absolutely no steps to limit or stop the erosion and continuing trespasses. This conduct justifies the imposition of punitive damages.

80.   Hanson has continued to process and manufacture rock and rock by-products. Moreover, the Defendants continued their operations with full knowledge of the damages being forced upon the individual Plaintiffs, as well as the public at large, and Defendants have not abated their nuisance despite demand to do so.

81.   Defendants' actions constitute a private and public nuisance, and their actions are or can be abated, so that the nuisance created and maintained by the Defendants is abatable.

82.   The damages suffered by the City of Opelika and The Utilities Board of the City of Opelika include loss of public property, recreational uses and benefits to the public generally, loss in value of public property, and loss of water to be used as a backup source of clean drinking water for citizens of Opelika and Lee County.

83.   If Hanson is allowed to continue pumping water from the quarry pit, further dewatering of the area will occur, the cone of depression will enlarge, and eventually more private, and quite possibly public, water wells will go dry or be reduced in capacity.

**WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable, and in addition, request this Honorable Court to enter injunctive relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT TWO
### (Negligence and Wantonness)

84.   Plaintiffs reallege paragraphs 1 through 81 of the Second Amended and Restated Complaint as if set out here in full.

17

85. Defendant Hanson has a duty to operate the quarry in a manner that will not cause unreasonable injury to adjacent and/or nearby landowners.

86. Defendant Hanson breached its duty by damaging the Plaintiffs as stated above.

87. As described above, Plaintiffs suffered damages due to the negligent and wanton and willful manner in which Defendant Hanson operates the quarry.

88. Defendant Hanson has actual knowledge that the manner in which it is operating its quarry was causing the very damages (both public and private) stated above in this Complaint. Despite such actual knowledge (made known to them by oral and written notice), the Defendant continues to cause the damages stated above. Moreover, the Plaintiffs from time to time protested the manner in which Defendant operates the quarry, yet Defendants refused to change or alter their practices, all to the continued detriment of the Plaintiffs.

89. The manner in which Defendant Hanson ignored the Plaintiffs' complaints constitutes rude, wanton, outrageous, and/or reckless conduct for which Hanson should be punished by the imposition of punitive damages.

**WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable, and in addition, request this Honorable Court to enter injunctive relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT THREE
### (Trespass)

90. Plaintiffs reallege paragraphs 1 through 87 of the Second Amended and Restated Complaint as if set out here in full.

91. The manner in which Defendant Hanson operates the quarry has caused noxious fumes, dust, particulate matter, and garbage to enter upon Plaintiffs' lands without their consent and

*Circuit Court. No.* CV02-85 *Supreme Court. No.* 1040857

# APPEAL

TO

# Supreme Court of Alabama

FROM

MIKE & DONNA DAVIS ETAL—OLDCASTLE MATERIALS SOUTHEAST, INC. & HANSON
AGGREGATES SOUTHEAST, INC. *Appellant*

vs.

HANSON AGGREGATES SOUTHEAST, INC ETAL. & CITY OF OPELIKA, CITY OF
OPELIKA UTILITIES BOARD ETAL *Appellee*

1607

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    *
                Plaintiff,             *
                                       *    CASE NUMBER: CV-02-85
v.                                     *
                                       *
                                       *
HANSON AGGREGATES SOUTHEAST,           *
INC., et al.                           *
                Defendants.        *

## ORDER

Before the Court is the Plaintiffs, motion for leave to amend the complaint to add

Oldcastle Materials Southeast, Inc. as a Defendant. Upon consideration of the same and

for good cause shown the motion is granted and Plaintiffs are instructed to forwith issue

process to Defendant Oldcastle Materials Southeast, Inc.

_____
Circuit Judge

cc:    James B. Sprayberry
       Charles E. Vercelli, Jr.
       Guy F. Gunter, III
       James A. Byram, Jr.
       H. Wayne Phears
       John Denson

F I L E D

AUG 0 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK



FILED

AUG 0 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,          *
      Plaintiff,          *
                  *     **CASE NUMBER: CV-02-85**
v.          *
                  *
                  *
HANSON AGGREGATES SOUTHEAST,          *
INC., et al.          *
      Defendants.          *

### PLAINTIFFS' MOTION TO APPOINT PROCESS SERVER

      Plaintiffs moves this Honorable Court pursuant to rule 4.1(b)(2) to designate William Bradley Neighbors as designated agent to serve process upon Oldcastle Materials Southeast, Inc. at its Lee County Quarry, Highway 169, Opelika, Alabama.

**OF COUNSEL:**

_____
**CHARLES VERCELLI, JR.,** (VER004)
*Co-Council for Property Owners*
1019 South Perry Street
Montgomery, AL 36104
(334) 834-8807

**JAMES B. SPRAYBERRY** (SPR008)
*Co-Council for Property Owners*
Post Office Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

**GUY GUNTER**
*Council for City of Opelika/ Opelika Water Board*
P.O. Box 409
Opelika, Alabama 36801
(334) 745-6288

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the _1st_ day of August, 2003.

James A. Byram, Jr., Esq.
Dorman Walker, Esq.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078


John Denson, Esq.
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

H. Wayne Phears
Phears & Moudovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092

_C. E. Vercelli_

CHARLES E. VERCELLI, JR.

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,  
   Plaintiff,  
v.  

HANSON AGGREGATES SOUTHEAST,  
INC., et al.  
   Defendants.

\*  
\*  
\*  
\*  
\*  
\*  
\*  
  \*

CASE NUMBER: CV-02-85

## ORDER

  Before the Court is Plaintiffs' motion to appoint William Bradley Neighbors as agent to serve process upon Oldcastle Materials Southeast, Inc.  Upon consideration of the same, the motion is granted and William Bradley Neighbors is appointed as designated agent for service of process upon Defendant Oldcastle Materials Southeast, Inc.

        _____  
        Circuit Court Judge

cc: James B. Sprayberry  
  Charles E. Vercelli, Jr.  
  Guy F. Gunter, III  
  James A. Byram, Jr.  
  H. Wayne Phears  
  John Denson

FILED

AUG 0 1 2003

IN OFFICE  
CORINNE T. HURST  
CIRCUIT CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED

AUG - 4 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. CV-02-85 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### HANSON'S RESPONSE TO PLAINTIFFS' MOTION TO SHORTEN TIME

Hanson Aggregates Southeast, Inc. ("Hanson") responds to Plaintiffs' Motion to Shorten Time, as follows:

1.     Plaintiffs' motion, filed on July 29, 2003, requests this Court to order Hanson to respond to Plaintiffs' Fourth Interrogatories and Requests for Production by 3:00 p.m. on Monday, August 4, 2003, and to order the Young and Gilmer Defendants to respond to Plaintiffs' Third Interrogatories and Requests for Production by 3:00 p.m. on Friday, August 8, 2003. Plaintiffs assert that such orders are required to discover the identity of the new owner of the quarry.

2.     Plaintiffs' Fourth Interrogatories and Requests for Production to Defendant Hanson contain 19 separate discovery requests. Of those 19 requests, only five seek information regarding the new owner of the quarry or information regarding the sale of the quarry. Of the remaining 14 discovery requests, nine pertain to Plaintiffs' dye trace study and dye trace expert, two pertain to the public opinion survey performed by Dr. Jerry Ingram, and the final three seek information on air monitoring, seismograph readings, and lease negotiations. Contrary to the distinct implications of Plaintiffs' Motion to Shorten time, the focus of Plaintiffs' fourth

discovery requests is neither the identity of the new owner nor information regarding the sale of the quarry.

3.       It is wholly unnecessary to shorten the time in which Hanson is required to respond to Plaintiffs' fourth discovery requests, and the entry of such an Order would be a waste of judicial resources.  Incredulously, Plaintiffs assert in paragraph 2 of their Motion to Shorten Time that, "Plaintiffs do not positively know the identity of the new owner of the quarry." However, in the paragraph immediately preceding this statement, Plaintiffs assert that they "learned, one week before the trial, that Hanson sold the quarry to Oldcastle Materials." Further, Plaintiffs have affirmatively stated in a letter to this Court on July 16, 2003, that "in point of fact, we already knew the quarry was sold and to _whom_." In fact, Plaintiffs' July 16th letter states that, "It is public knowledge in the community that the quarry was sold to Oldcastle . . . ." By filing its Motion to Shorten Time, Plaintiffs have effectively asked this Court to spend its valuable judicial resources in ordering the immediate production of information Plaintiffs say they already know.

WHEREFORE, THE PREMISES CONSIDERED, Defendant Hanson requests this Court to deny Plaintiffs' Motion to Shorten Time.

Respectfully submitted this 31st day of July, 2003.

One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 31st day of July, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

Of Counsel

1614

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                          *
                                             *
              Plaintiff,                      *
                                             *     CASE NUMBER: CV-02-85
v.                                           *
                                             *
HANSON AGGREGATES SOUTHEAST, et al.,         *
                                             *
              Defendant.                      *

### <u>SUMMONS</u>

NOTICE TO:        Oldcastle Materials Southeast, Inc
                  Highway 169
                  Opelika, AL 36801

    The Complaint and Third Amended and Restated  Complaint, which is attached to this Summons, is important and you must take immediate action to protect your rights.  You or your attorney are required to file the original of your written Answer, either admitting or denying each allegation in the Complaint with the Clerk of this Court.  A copy of your Answer must be mailed or hand delivered by you or your attorney to James B. Sprayberry, Attorney for the Plaintiff, whose address is Post Office Box 2429, Auburn, Alabama  36831-2429.

    This Answer must be mailed or delivered within 30 days after this Summons and Complaint were delivered to you, or a Judgment by default may be entered against you for the money or other things demanded in the Complaint.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rule of Civil Procedure:

[ xxx ]   You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant.

[ ]        Service by Certified Mail of this Summons is initiated upon the written request of the Plaintiff, pursuant to the Alabama Rules of Civil Procedure.

Date 8-1-03

By: _Sq_                                    _Corinne S. Hurst_
                                            CLERK

[ ]        Certified mail is hereby requested.
                                            _____

RETURN ON SERVICE:

[ ]        Return receipt of certified mail received in this office on _____.

[X]        I certify that I personally delivered a copy of the Summons and Complaint to the Defendant in _Lee_ County, Alabama on _August 1 2003_ .

_8-1-03_                                    _William Bixby Nix_
Date                                        Server's Signature

_77 Lunker Ct. Dadeville, AL 36853_          _Designated Agent_
Address of Server                            Type of Process Server

1610

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                                           *
                                                              *
        Plaintiff,                            *
                                                              *    CASE NUMBER: CV-02-85
v.                                                            *
                                                              *
HANSON AGGREGATES SOUTHEAST, et al.,                          *
                                                              *
        Defendant.                            *

### SUMMONS

NOTICE TO:        Oldcastle Materials Southeast, Inc.
                The Corporation
                2000 Interstate Park Drive
                STE 204
                Montgomery, AL. 36109

        The Complaint and Third Amended and Restated Complaint, which is attached to this Summons, is important and you must take immediate action to protect your rights. You or your attorney are required to file the original of your written Answer, either admitting or denying each allegation in the Complaint with the Clerk of this Court. A copy of your Answer must be mailed or hand delivered by you or your attorney to James B. Sprayberry, Attorney for the Plaintiff, whose address is Post Office Box 2429, Auburn, Alabama 36831-2429.

        This Answer must be mailed or delivered within 30 days after this Summons and Complaint were delivered to you, or a Judgment by default may be entered against you for the money or other things demanded in the Complaint.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rule of Civil Procedure:

[ ]     You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant.

[xxx]   Service by Certified Mail of this Summons is initiated upon the written request of the Plaintiff, pursuant to the Alabama Rules of Civil Procedure.

Date  8-1-03
By: _____            Corinne J. Hurst
                                    CLERK

[ ]     Certified mail is hereby requested.

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7002 2510 0000 6965 5382

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To
THE CORPORATION COMPANY
2000 INTERSTATE PARK DR., SUITE 204
City, State, ZIP+4
MONTGOMERY, ALABAMA  36109

PS Form 3800, January 2001       See Reverse for Instructions

_____ved in this office on _____.

_____copy of the Summons and Complaint to the Defendant in
_____on _____.

_____
Server's Signature

_____
Type of Process Server

1616

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                              *
                                                 *
                    Plaintiff,                   *
v.                                               *        CASE NUMBER: CV-02-85
                                                 *
HANSON AGGREGATES SOUTHEAST, et al.,             *
                                                 *
                    Defendant.                   *

### SUMMONS

NOTICE TO:          Oldcastle Materials Southeast, Inc
                    Highway 169
                    Opelika, AL 36801

     The Complaint and Third Amended and Restated Complaint, which is attached to this Summons, is important and you must take immediate action to protect your rights. You or your attorney are required to file the original of your written Answer, either admitting or denying each allegation in the Complaint with the Clerk of this Court. A copy of your Answer must be mailed or hand delivered by you or your attorney to James B. Sprayberry, Attorney for the Plaintiff, whose address is Post Office Box 2429, Auburn, Alabama 36831-2429.

     This Answer must be mailed or delivered within 30 days after this Summons and Complaint were delivered to you, or a Judgment by default may be entered against you for the money or other things demanded in the Complaint.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rule of Civil Procedure:

[ xxx ]   You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the Defendant.

[ ]       Service by Certified Mail of this Summons is initiated upon the written request of the Plaintiff, pursuant to the Alabama Rules of Civil Procedure.

Date _8-1-03_____

By: _Sg_____                     _Corinne J. Hurst_
                                      CLERK

[ ]       Certified mail is hereby requested.

                                      _____

**RETURN ON SERVICE:**

[ ]       Return receipt of certified mail received in this office on _____.

[ ]       I certify that I personally delivered a copy of the Summons and Complaint to the Defendant in
          _____ County, Alabama on _____.


_____              _____
Date                                 Server's Signature


_____              _____
Address of Server                    Type of Process Server



# ALABAMA STATE BAR

415 Dexter Avenue • Post Office Box 671 • Montgomery, Alabama 36101
Telephone: 334 / 269-1515 • Fax: 334 / 261-6310
www.alabar.org

## STATEMENT

The following information, in response to the application of petitioner, is furnished in compliance with Rule VII, Rules Governing Admission to the Alabama State Bar *(Pro HacVice)*:

**PETITIONER:**    Mr. H. Wayne Phears
Phears & Moldovan
4725 Peachtree Corners Cir, #375
Norcross, GA    30092-0000

**CURRENT APPLICATION:**

| | |
|---|---|
| Date Application Received: | June 20, 2003 |
| Case No.: | CV02-0085 |
| Style: | Mike Davis, et al., v. Hanson Aggregates Southeast Inc., et al., |
| Court/Agency: | Circuit Court of Lee County |
| Date of Hearing: | June 30, 0200 |

**LOCAL COUNSEL:**   Mr. James Asberry Byram Jr.
Balch & Bingham LLP
PO Box 78
Montgomery, AL    36101-0078

APPLICATIONS FOR RULE VII ADMISSION HAVE BEEN MADE BY ABOVE PETITIONER OR OTHER ATTORNEY MEMBERS OF PETITIONER'S FIRM IN THE PRECEDING 365 DAYS AS LISTED:

No record of Previous Applications

PHV Admissions
June 20, 2003

FILED
AUG 1 1 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

LAWYERS RENDER SERVICE

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. CV 02-085 |
| | * | |
| HANSON AGGREGATES | * | |
| SOUTHEAST, INC., et al, | * | |
| | * | |
| Defendants. | * | |

## ORDER

A Status Conference was held in the above-styled case on August 1, 2003. The Attorneys for the parties in this case were present. Various Motions were heard on this date. At the conclusion of the hearing the Court took the following action:

1. The trial of this case is set for October 20, 2003, at 8:30 A.M.

2. The Pretrial Conference in this case is set for September 22, 2003, at 9:00 A.M.

3. A Status Conference is set in this case for September 5, 2003, at 11:00 A.M.

4. All discovery will be "cut-off" and concluded by September 22, 2003.

5. Plaintiffs Tankesley, Swearington and Smith may be added as parties. However, they are not be included as part of the Plaintiffs' cases that are scheduled for October 20, 2003.

6. If Plaintiffs intend to amend their Complaint and serve Old Castle Ltd. they should do as soon as possible.

7. Defendant Hanson's Motion to Strike Claim of Damages for a new "swimming pool" to be located at Springvilla Recreation Center is DENIED.

8. The County Engineer, Mr. Hall, will be allowed to testify at trial. However, he will not be allowed to testify as to the costs of "repairs" of the roadways.

The Clerk of Court is ordered to mail by ordinary mail are deliver a copy of this Order to the following:

Hon. Jimmy Sprayberry
Post Office Box 2429
Auburn, AL 36831-2429

Hon. James Byram, Jr.
Hon. Dorman Walker
Hon. Matt Parnell
Post Office Box 78
Montgomery, AL 36101

Hon. Charles Vercelli, Jr.
1019 S. Perry Street
Montgomery, AL 36104

Hon. John V. Denson
Post Office Box 2345
Opelika, AL 36803-2345

1619

Hon. Guy Gunter
Post Office Box 409
Opelika, AL 36803-0409

DONE this the 11th day of August, 2003.

JACOB A. WALKER, III
Circuit Judge

F I L E D

AUG 1 2 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK



1620

IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, *et al.*,                      §
                                           §
                    Plaintiffs,            §
                                           §    Civil Action No.: CV-2002-85
vs.                                        §
                                           §
HANSON AGGREGATES                          §
SOUTHEAST, INC., *et al.*,                 §
                                           §
                    Defendants.            §

## NOTICE OF SERVICE OF DISCOVERY DOCUMENT

To:    Clerk
       Lee County Circuit Court
       Justice Center, Room 104
       2311 Gateway Drive
       Opelika, AL

       Please take notice that the following discovery document has been served on behalf of

defendant Hanson Aggregates Southeast, Inc.:

       ( X )   Hanson's Disclosure of Rebuttal Expert: Dr. Ralph O. Ewers

       Respectfully submitted this 11th day of August, 2003.

                                           _____
                                           One of the attorneys for Defendant
                                           Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
PAUL A. CLARK (CLA076)
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, AL 36101-0078
(334) 834-6500

134759.1

1621

H. Wayne Phears, Esq.
**PHEARS & MOLDOVAN**
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on the 11th day of August, 2003, a copy of the foregoing was served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

John Denson, Esq.
Samford, Denson, Horsley, Pettey & Bridges
P. O. Box 2345
Opelika, Alabama  36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, Alabama 36803-0409

_____
Of Counsel

1622

## IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CASE NO. CV-02-85 |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC., et al., | ) |
| | ) |
| Defendants. | ) |

FILED

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF APPEARANCE

COMES now Phillip E. Adams, Jr., and files herein his notice of appearance as attorney for

Oldcastle Materials Southeast, Inc.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

BY: _____

PHILLIP E. ADAMS, JR. (ADA025)
Attorney for Defendant
P. O. Box 2069
Opelika, AL 36803-2069
Tel. (334) 745-6466

1323

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 15th day of August, 2003:

JAMES B. SPRAYBERRY, ESQ.
POST OFFICE DRAWER 2429
AUBURN, ALABAMA 36831-2429

CHIP VERCELLI, ESQ.
VERCELLI & ASSOCIATES, P.C.
1019 S. PERRY STREET
MONTGOMERY, ALABAMA 36104-5049

GUY F. GUNTER, III, ESQ.
MELTON, GUNTER & MELTON
P. O. BOX 409
OPELIKA, AL 36803-0409

JOHN DENSON, ESQ.
SAMFORD, DENSON, HORSLEY,
PETTEY, BRIDGES & HUGHES
P. O. BOX 2345
OPELIKA, ALABAMA 36803-2345

JAMES A. BYRAM, JR., ESQ.
PAUL A. CLARK, ESQ.
BALCH & BINGHAM LLP
POST OFFICE BOX 78
MONTGOMERY, ALABAMA 36101

H. WAYNE PHEARS, ESQ.
PHEARS & MOLDOVAN
SUITE 375
4725 PEACHTREE CORNER CIRCLE
NORCROSS, GEORGIA 30092

_____
OF COUNSEL

## IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                )
                                   )
    Plaintiffs,                    )
                                   )
vs.                                )    CASE NO. CV-02-85
                                   )
HANSON AGGREGATES                  )
SOUTHEAST, INC., et al.,           )
                                   )
    Defendants.                    )

F I L E D

IN OFFICE
COPINNIE T HURST
CIRCUIT CLERK

## MOTION TO CONTINUE AND FOR AN ALTERNATE TRIAL PLAN

Defendant Oldcastle, added by amendment on August 1, 2003, moves the Court to continue the

trial of this case, which is currently set for October 20, 2003, and shows the Court as follows:

1.    Oldcastle purchased the assets of the Opelika quarry on July 11, 2003. Under applicable

law, Oldcastle is in no way liable for Hanson's operation of the quarry. *Asher v. KCS International, Inc.,*

659 So. 2d 598, 599 (Ala. 1995) ("As a general rule, a purchasing corporation is not liable for the debts

and liabilities of the selling corporation."); *Brown v. Economy Baler Co.,* 599 So. 2d 1 (Ala. 1992);

*Andrews v. John E. Smith's Sons Co.,* 369 So. 2d 781 (1979).

2.    On August 1, 2003 the local quarry office was served, and on August 4, 2003. Oldcastle's

agent for service of process was served with the Third Amended and Restated Complaint (the "amended

complaint"). The undersigned was retained to represent Oldcastle on August 12, 2003.

3.    The amended complaint appears to seek injunctive relief against Oldcastle, as well as Hanson

and the individual defendants, under counts 1 (nuisance), 2 (negligence), 4 (injunction]), and damages and

injunctive relief against Oldcastle and the other defendants under count 5 (diversion of water). The amended complaint alleges that Oldcastle "is intending to and will continue the operations of the quarry under the same or similar conditions" as Hanson employed when it operated the quarry. The claims alleged in the amended complaint put Oldcastle in the position of having to evaluate factually and legally and potentially to defend numerous aspects of Hanson's operation of the quarry at issue in this litigation, yet Oldcastle did not participated in Hanson's operations, nor has Oldcastle been involved in any of the substantial fact and expert discovery conducted in this complex case.

4.   In addition, the amended complaint adds count 6 against Oldcastle, which seeks (1) injunctive relief to shut down the quarry, (2) compensatory damages for Oldcastle's operation of the quarry, and (3) punitive damages for Oldcastle's operation of the quarry. Since acquiring the quarry assets, Oldcastle has conducted very limited operations on the property consisting of the sale of crushed stone out of existing inventory and conducting preliminary evaluations of the site and equipment to assist it in formulating a plan of operation on the site. Surely, Oldcastle is entitled to discovery from the plaintiffs concerning their claims against Oldcastle and to develop its factual and legal defenses to those claims. Yet, based on the current schedule, it is virtually impossible to complete this discovery by the September 22, 2003 deadline, not to mention preparing and filing motions for summary judgment, and other pre-trial and trial preparation.

5.   From a limited review of the court file, and discussions with the attorneys of record, it is clear that this is an extraordinarily complex case. The undersigned is advised that this case is scheduled for 3-weeks of trial time for liability and damages issues, plus another, as of yet unscheduled, trial for the equitable remedy issues. The trial will involve:

- 12 individual plaintiffs

- 12 individual plaintiffs

- 7 other individual plaintiff/witnesses

- 2 or more witnesses for the City of Opelika

- 2 or more witnesses for the Opelika Utilities Board

- 1 or more witnesses for the Beauregard Water Authority

- 7 expert witnesses for the plaintiffs, including geology, hydrogeology, meteorology, blasting/construction, and medical fields.

- 8 or more non-party witnesses for the plaintiffs

- 2 or more representatives of Hanson

- 1 or more representatives of the Gilmer family defendants

- 1 or more representatives of the Young family defendants

- 9 expert witnesses for Hanson

- 7 or more non-party witnesses for defendants

6.  The undersigned is advised that this case involves extensive deposition and documentary discovery, including

- 5,724 pages of documents produced by Hanson

- 219 pages of documents produced by Beauregard

- 116 pages of documents produced by the Opelika defendants

- 42 depositions of parties and witnesses scheduled for the first trial

- hundreds of pages of documents produced by various non-parties

- interrogatory answers from all parties

- expert reports

1027

Oldcastle did not participate in the depositions of any of these witnesses (including numerous expert witnesses) and is entitled to a fair opportunity to question witnesses who may be expected to testify at trial. In the limited time since it was served with the amended complaint and has engaged counsel to represent it in this action, Oldcastle has had no opportunity to review the voluminous discovery materials in the case or even to determine which of the anticipated witnesses it may wish to depose. Oldcastle also requires time to propound and receive responses to written discovery requests (including requests for the production of documents in order that it may have a fair opportunity to conduct any necessary depositions and otherwise prepare for trial.

7. The undersigned has now seen this court's order of August 11, 2003. This order provides that additional parties (Smith, Tankersly, and Swearington), additional theories of recovery (cost of new pool), and additional witnesses (Neil Hall) will be added to the case. This will obviously require more discovery between now and the September 22 discovery deadline. The undersigned is further advised that the lawyers for the plaintiffs and Hanson have identified at least 11 depositions that they desire to take before the September 22 discovery deadline.

8. In addition to the impossibility of preparing for a trial of this magnitude between now and October 20, Oldcastle is virtually precluded by the current setting from obtaining its own expert witnesses for trial or for technical expertise in preparing its defense. Moreover, the undersigned has seen the dye test report of Dr. Ralph Ewers, expert witness for Hanson, which concludes that plaintiffs' dye test was "improperly designed and executed" and that the purported results of plaintiffs' dye test "are not meaningful or reliable". Dr. Ewers' letter recommends that "[t]he dye test should be repeated, with proper and thorough design and implementation." Plaintiffs' dye test was conducted for 6 months before their expert

claimed a link between Little Uchee Creek and the quarry, in June 2002, and that test has never shown a connection between the spring and the quarry. Clearly Oldcastle needs more time to decide whether to conduct a dye test, and if so, to conduct the test.

9.    Although this case has been pending since February 2002, the Opelika and Beauregard plaintiffs were not added until October 2002, and, as shown, additional plaintiffs and this defendant have only recently been added to this case.

10.    Oldcastle submits for all of the foregoing reasons that it will be extremely prejudiced and will be denied due process of law if required to go forward with the trial of this case on October 20.

11.    Moreover, Oldcastle respectfully submits that the Court under Rule 42(b), A. R. Civ. P. could structure the trial of this case in such a way as to minimize the prejudice to Oldcastle, and still continue with the trial of some of the issues scheduled for October 20:

- a trial on October 20 of the individual plaintiffs' damage claims against Hanson for damages occurring up to the closing date of July 11, 2003. Oldcastle is not liable for these claims, and has no reason to be a party regarding these issues.

- a severance and separate trial date for the quarry dewatering claims, including the claims of the Opelika and Beauregard plaintiffs

Wherefore, premises considered, Oldcastle respectfully moves the court to continue the trial of this case, or, alternatively, to order separate trials of the individual plaintiffs' damage claims against Hanson and the injunctive relief and quarry dewatering claims against all defendants.

PHILLIP E. ADAMS, JR.
One of the attorneys for defendant
Oldcastle

**OF COUNSEL:**

**ADAMS, UMBACH, DAVIDSON & WHITE, LLP**
**P. O. BOX 2069**
**OPELIKA, AL 36803-2069**
Tel. (334) 745-6466
Fax (3340 749-3238

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the _15th_ day of August, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
 Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

Of Counsel

134934.1                                          6

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

F I L E D

AUG 2 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NUMBER: CV-02-085** |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC.; et al. | ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

TO:    Corinne T. Hurst, Clerk
Lee County Circuit Court
2311 Gateway Drive
Opelika, Alabama 36801

Please take notice that the following discovery documents have been filed on behalf of

Defendants, **VIRGINIA YOUNG PRIEST; JOHN CLAUDE YOUNG, C/O VIRGINIA**

**YOUNG PRIEST; LOUISE YOUNG O'BRIEN, VIRGINIA HART YOUNG AND GILMER**

**PROPERTIES, LTD. in the above-styled case**

( X )    Response to Plaintiffs' Third Interrogatories and Request for Production and
Plaintiffs' Fourth Interrogatories and Request for Production to all Defendants

DONE this ___21st___ day of _____August_____, 2003

Respectfully submitted,

**OF COUNSEL FOR DEFENDANTS:**
**VIRGINIA YOUNG PRIEST; JOHN CLAUDE**
**YOUNG, C/O VIRGINIA YOUNG PRIEST;**
**LOUISE YOUNG O'BRIEN; VIRGINIA HART**
**YOUNG; GILMER PROPERTIES, LTD.**
SAMFORD, DENSON, HORSLEY,
   PETTEY, BRIDGES & HUGHES
P.O. Box 2345
Opelika, AL 36803-2345
(334) 745-3504
FAX (334) 745-3506

JOHN V. DENSON
DEN007

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all Attorneys of Record in the above-styled cause, by mailing the same in U.S. Mail, postage prepaid, on this the __21st__ day of __August__, 2003, as follows:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

M. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia  30092-3000

Guy F. Gunter, III
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0409

Mr. Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Charles E. Vercelli, Jr.
Suite 214, Union Station
300-B Water Street
Montgomery, Alabama 36104

James B. Sprayberry
Post Office Drawer 2429
Auburn, Alabama 36831-2429


John V. Denson

1632

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS; DONNA DAVIS; , et al     )
                                       )

Plaintiffs,                       )
                                       )

v.                                  )      CIVIL ACTION NUMBER: CV-02-085
                                       )

HANSON AGGREGATES           )
SOUTHEAST, INC.; et al.          )
                                       )

Defendants.                      )

## RESPONSE OF YOUNG AND GILMER DEFENDANTS
## TO PLAINTIFFS' THIRD INTERROGATORIES
## AND REQUEST FOR PRODUCTION AND PLAINTIFFS' FOURTH
## INTERROGATORIES AND REQUEST FOR PRODUCTION TO ALL DEFENDANTS

## GENERAL OBJECTIONS

COME NOW, the Defendants, Virginia Young Priest; John Claude Young, c/o Virginia

Young Priest; Louise Young O'Brien; Virginia Hart Young and Gilmer Properties, Ltd.

(hereinafter referred to collectively as the **"Young and Gilmer Defendants"**) and subject to any

protective Order entered in the case, responds to the Plaintiffs' Third Interrogatories and Request

for Production to the Young and Gilmer Defendants and the Plaintiffs' Fourth Interrogatories and

Request for Production to All Defendants as follows:

1.      The Young and Gilmer Defendants object to the definitions, instructions,

interrogatories and request for production  to the extent they call for privileged information or

documents protected by the attorney-client privilege.

1

# IN THE CIRCUIT COURT OF
# LEE COUNTY, ALABAMA

MIKE DAVIS, *et al.*,                          §
                                               §
      Plaintiffs,                        §
vs.                                            §      Civil Action No.:  CV-2002-85
                                               §
HANSON AGGREGATES                              §
SOUTHEAST, INC., *et al.*,                     §
                                               §
      Defendants.                        §

**F I L E D**

AUG 2 2 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## NOTICE OF SERVICE OF DISCOVERY DOCUMENT

To:    Clerk
       Lee County Circuit Court
       Justice Center, Room 104
       2311 Gateway Drive
       Opelika, AL

Please take notice that the following discovery document has been served on behalf of

defendant Hanson Aggregates Southeast, Inc.:

    ( X )    Defendant Hanson's Response to Plaintiff's Fourth Interrogatories and
           Requests for Production

Respectfully submitted this 21st day of August, 2003.

_____
One of the attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
PAUL A. CLARK (CLA076)
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, AL 36101-0078
(334) 834-6500

135194.1

H. Wayne Phears, Esq.
**PHEARS & MOLDOVAN**
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on the 21st day of August, 2003, a copy of the foregoing was served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

John Denson, Esq.
Samford, Denson, Horsley, Pettey & Bridges
P. O. Box 2345
Opelika, Alabama 36803-2345

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, Alabama 36803-0409

Of Counsel

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

1685

MIKE & DONNA DAVIS; MIKE & ANN BROADWATER; ) 
MITTIE BROADWATER; CITY OF OPELIKA, a Municipal ) 
Corporation; THE UTILITIES BOARD OF THE CITY OF ) 
OPELIKA, a public corporation; BEAUREGARD WATER ) 
AUTHORITY, a public coporation; ANTHONY & CAROL ) 
CLARK; CAROL CLARK, as Mother and Next Friend of ) 
COURTNEY CLARK; ELAINE EDWARDS; MARY SUE ) 
EILAND; MEDENA FRIZZEL; MEDENA FRIZZEL, as ) 
Mother and Next Friend of KARLA FRIZZELL & ) 
BRIANNA YOUGREN; RONNIE & DOROTHY GRIGGS; ) 
MIKE & STACEY HAGENS;  HOWARD & LISA HARMON; ) 
LISA HARMON, as Mother and Next Friend of JUDSON & ) 
BRIA HARMON; HAYWARD & NORA JACKSON; MIKE & ) 
SHELIA LaMACCHIA; SHELIA LaMACCHIA, as Mother ) 
and Next Friend of RUSSELL LaMACCHIA; STANLEY & ) 
JACKIE LEDBETTER; TERRY & CAROL LONG; TIM & ) 
ADA MANNING; DAVID & JANETTE BAGGETT; JAMES ) 
& SHIRLEY PARKER; RANDALL & WANDA PARKER; ) 
WANDA PARKER, as Mother and Next Friend of AMBUR ) 
& BRANDON PARKER; JEFF & MARIA RICHARDSON; ) 
MARIA RICHARDSON, as Mother and Next Friend of ) 
NATASHA RICHARDSON; DAVID & AMANDA ) 
SUMNER; AMANDA SUMNER, as Mother and Next Friend ) 
of TODD SUMNER; LARRY & RITA SUMNER; MARTHA ) 
TREADWAY; MARTHA TREADWAY, as Guardian and Next ) 
Friend of JASMIN, MICHAEL, HAZEL & JOSEPH KING; ) 
BILLY &  SHERRY WALLACE; SHERRY WALLACE, as ) 
Mother and Next Friend of AARON WALLACE; ) 
MICHELE WILKES; SHIRLEY WILSON; BETTY J. ) 
PFINGSTON; BETTY J. PFINGSTON, as Guardian and ) 
Next Friend of JESSICA PFINGSTON;  WONDA BRIGHT; ) 
DONNIE SMITH; DAVID & TANYA TANKERSLEY; ) 
and KEN & NAOMI SCHWIEKER, ) 
) 
               Plaintiffs, ) 
) 
vs. ) 
) 
HANSON AGGREGATES SOUTHEAST, INC.; LOUISE ) 
YOUNG O'BRIEN; VIRGINIA YOUNG PRIEST; VIRGINIA ) 
HART YOUNG; CLAUDE JOHN YOUNG; CHARLES W. ) 
GILMER, SR.; ALICE C. GILMER; CHARLES W. GILMER, ) 
JR.; KAMMY GILMER; BARBARA GILMER SMITH; GARY ) 
SMITH; MATTHEW RUTTLEDGE GILMER; LELIA ) 
WILDER GILMER; GILMER PROPERTIES, LTD.; and ) 
OLDCASTLE MATERIALS SOUTHEAST, INC., ) 
) 
               Defendants. )

F I L E D

AUG 2 5 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

Civil Action No.

CV-20 02-85

## FOURTH AMENDED AND RESTATED COMPLAINT

1. Plaintiffs Mike and Donna Davis, who reside at 149 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Davises aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: cracks have formed in the basement and in the fireplace; the tiles in the ceiling of the basement are falling out; their boat and boathouse are forever covered by a thick coat of dust; Donna Davis has developed allergy and sinus problems within the last two years, caused by the Defendants; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

2. Plaintiffs Mike and Ann Broadwater, who reside at 610 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Broadwaters aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: a cracked foundation; cracked ceilings; a cracked fireplace; unlevel floors; Plaintiff Mike Broadwater has had a lung transplant and the never ending dust, noise and shaking of the home have greatly aggravated his condition; and other known and unknown damages.

3. Plaintiff Mittie Broadwater, who resides at 574 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Broadwater avers that as a result of Defendants' actions her home and property have sustained the following damages, among others: the blocks under her mobile home have cracked and are falling apart; the front and back doors of her home are hanging up on the bottom of the doorway; the windows of her home are cracked; and there are other known and unknown problems with her home and property.

4. Plaintiff City of Opelika is a municipal corporation organized under the laws of the state of Alabama, situated in Lee County, Alabama.

5. Plaintiff The Utilities Board of the City of Opelika, is a public corporation that operates a public water supply and distribution system on behalf of the City of Opelika and surrounding areas of Lee County, Alabama.

6. Plaintiff, the Beauregard Water Authority, is a public corporation that operates a public water supply and distribution system on behalf of the Beauregard community and surrounding areas of Lee County, Alabama.

7. Plaintiffs Anthony and Carol Clark, who reside at 1740 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Clarks aver that as a result of the Defendants' actions their home, property and families have sustained the following damages, among others: cracked walls and ceilings; cracks in the foundation of the home; cracked windshields in their vehicles; sink holes have formed on their property; the allergies and asthma suffered by certain family members have been aggravated and their medical conditions will continue to deteriorate; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

8. Plaintiff Courtney Clark is a minor citizen of Lee County, Alabama, who resides with his parents Anthony and Carol Clark. Plaintiff Courtney Clark avers that as a result of the Defendants' actions, he has developed asthma, suffers from this disease daily, and will continue to suffer from this condition. He may have other known and unknown damages.

9. Plaintiff Elaine Edwards, who resides at 3274 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Edwards avers that as a result of the Defendants' actions, her homes and the home of her mother have sustained the following damages, among others: her home vibrates; cracks in the sidewalks; the concrete steps have pulled away from her concrete porch; her renal condition has been aggravated by the constant vibrations and dust; she has incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

3

10.    Plaintiff Mary Sue Eiland, who resides at 2853 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Eiland avers that as a result of the Defendants' actions her home and property have sustained the following damages, among others: cracked windshields; cracks in the concrete; walls cracked in every room of her home; tiles falling from the bathroom ceilings; and other known and unknown problems with her home and property.

11.    Plaintiff Medena Frizzel, who resides at 3173 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Plaintiff Medena Frizzell avers that as a result of the Defendants' actions her home, property, and family have sustained the following damages: cracked windshield on her vehicle; cracked windows in her home; cracked mirrors; ceiling leaks; cracked ceilings; trim falling off walls; pictures falling off walls; her home is unlevel; the electricity and power blink off and on when blasting occurs; Plaintiff Medena Frizzell has suffered a recurrence of her childhood asthma within the last three years; she has incurred medical expenses; and other known and unknown problems with her home and property.

12.    Plaintiff Karla Frizzel is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Karla Frizzel avers that as a result of the Defendants' actions she has developed an asthmatic condition and will continue to suffer from this condition.

13.    Plaintiff Brianna Yougren is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Brianna Yougren avers that as a result of the Defendants' actions she has has developed an asthmatic condition and will continue to suffer from this condition.

14.    Plaintiffs Ronnie and Dorothy Griggs, who reside at 3256 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Griggs aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages, among others: cracked foundation; cracked sidewalks; cracks in the bathroom tile; flower boxes are pulling away from the walls of the house; Plaintiff Dorothy Griggs has developed

4

allergy and sinus problems due to the constant presence of quarry dust in her home and on her property; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

15. Plaintiffs Mike and Stacy Hagans, who reside at 1668 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Hagans aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages: cracked windshields on their vehicles; sinkholes have formed on their property; their house is unlevel; cabinets are separating from the walls of their home; cracked windows; the allergies suffered by certain family members have been aggravated; Plaintiff Stacy Hagans suffers from inflamed and infected sinuses; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

16. Plaintiffs Howard and Lisa Harmon, who reside at 145 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Harmons aver that as a result of the Defendants' actions their home, property, and family have sustained the following damages, among others; their home vibrates during blasting activities; cracked bricks on the exterior of the home; cracks in fireplace; Plaintiff Howard Harmon has developed chronic sinusitis ; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

17. Plaintiff Judson Harmon is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Lisa Harmon. Plaintiff Judson Harmon avers that as a result of the Defendants' actions he has developed allergic rhinitis and will continue to suffer from this condition.

18. Plaintiff Bria Harmon is a minor resident citizen of Lee County who resides with her parents, and who brings this action by and through her mother and next friend, Lisa Harmon. Plaintiff Bria Harmon avers that as a result of the Defendants' actions she

has developed chronic allergies and sinus problems and she will continue to suffer from this condition.

19.   Plaintiffs Hayward and Nora Jackson, who reside at 1141 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Jacksons aver that as result of the Defendants' actions, their home, property and family have been damaged as follows: mud and water constantly stands on their property inviting the presence of swarms of insects, frogs, snakes and other pests; Plaintiff Nora Jackson has developed chronic bronchitis, inflammatory lung disease, atypical pneumonia, and acute respiratory distress syndrome; the family has incurred medical expenses; and other known and unknown damages.

20.   Plaintiffs Mike and Shelia LaMacchia, who reside at 1355 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The LaMacchias aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: their backyard underground spring has gone dry; the foundation of their home is cracked; they have incurred medical expenses as of result of their child's illnesses; and other known and unknown problems with their home and property.

21.   Plaintiff Russell LaMacchia, is a minor resident citizen of Lee County, Alabama, who resides with his parents, and who brings this action by and through his mother and next friend, Shelia LaMacchia. Plaintiff Russell LaMacchia avers that as a result of the Defendants' actions, he has developed otitis media and will continue to suffer from this condition.

22.   Plaintiffs Stanley and Jackie Ledbetter, who reside at 1330 Lee Road 166, and also own rental properties located across the street at 1333 Lee Road 166, Lots #2-9, 1377 Lee Road 166, 1332 Lee Road 166, 1334 Lee Road 166, 1336 Lee Road 166, and 1340 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Ledbetters aver that as a result of the Defendants' actions, their homes, properties and family have sustained the following damages, among others: cracked windows; foundation cracks; cracked

ceilings; unlevel mobile homes; and other known and unknown problems with their home and properties.

23.    Plaintiffs Terry and Carol Long, who reside at 3379 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Longs aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracks in cement sidewalks; cracks in cement around swimming pool; cracks around windows; cracks in trim work; recent cracks forming in three year old addition to home; and other known and unknown problems with their home and property.

24.    Plaintiffs Tim and Ada Manning, who reside at 3226 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Mannings aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: chipped paint on their vehicles as result of blasting debris landing in their yard; cracked windshields; a cracked foundation on their home; cracks in driveway and in cement area around their swimming pool; crack in swimming pool; and other known and unknown problems with their home and property.

25.    Plaintiffs David and Janette Baggett, who reside at 1198 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Baggetts aver that as a result of the Defendants' actions, their homes, property, and family have sustained the following damages, among others: leaks in their ceilings; cracks in ceilings; cracks in walls; mobile homes are unlevel; Plaintiff Janette Baggett's depression and nervous condition has been greatly aggravated by the constant noise, blasting and shaking that occurs in her home; Plaintiff David Nash has developed allergy and sinus problems within the last two years; they have incurred medical expenses; and other known and unknown problems with their homes and property.

26.    Plaintiffs James and Shirley Parker, who reside at 3039 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. James and Shirley Parker aver that as a result of the Defendants'

actions, their home, property and family have sustained the following damages, among others: cracked windows; a cracked foundation; cracks in the walls and ceilings of their home; due to the constant presence of quarry dust, Plaintiff Shirley Parker has developed asthma within the last two years; and other known and unknown damages.

27.     Plaintiff Randall and Wanda Parker, who reside at 1229 Lee Road 166, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs' Randall and Wanda Parker are riparian owners south of Spring Villa Park who own part of Little Uchee Creek. Randall and Wanda Parker aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked foundation; cracked chimney; cracked sheet rock; cabinets pulling away from the walls; light fixtures are loose and fall when blasting occurs; Plaintiff Wanda Parker developed asthma approximately 1 year ago; they have incurred medical expenses and will continue to do so; and other known and unknown damages. Furthermore the Randall and Wanda Parker aver that the past and future actions of the Defendants will irreparably harm their family's interests in and to Little Uchee Creek, as well as the interests of many other citizens of Lee County, Alabama, who use the creek as they do.

28.     Plaintiff Ambur Parker is a minor resident citizen of Lee County who resides with her parents James and Wanda Parker, and who brings this action by and through her mother and next friend, Wanda Parker. Plaintiff Ambur Parker avers that as a result of the Defendants' actions, she has developed asthma within the last year and will continue to suffer from this condition.

29.     Plaintiff Brandon Parker is a minor resident citizen of Lee County who resides with his parents James and Wanda Parker, and who brings this action by and through his mother and next friend, Wanda Parker. Plaintiff Brandon Parker avers that as a result of the Defendants' actions, he has developed allergy and sinus problems that include nose bleeds and will continue to suffer from this condition.

30.     Plaintiffs Maria and Jeff Richardson, who reside at 265 Lee Road 705, are over the age of nineteen years and are residents of Lee County, Alabama. The Richardsons

aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: cracked foundation; cracks in the ceiling; Plaintiff Jeff Richardson has developed allergic sinus problems; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

31.   Plaintiff Natasha Richardson is a minor resident citizen of Lee County who resides with his parents and who brings this action by and through her mother and next friend, Maria Richardson. Plaintiff Natasha Richardson avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

32.   Plaintiffs David and Amanda Sumner, who reside at 164 Lee Road 148, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. David and Amanda Sumner aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others; cracked foundation; crack in the ceilings; crack in the concrete surrounding the swimming pool; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

33.   Plaintiff Todd Sumner, is a  is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Amanda Sumner. Plaintiff Todd Sumner avers that as a result of the Defendants' actions, he developed asthma at the age of three months and will continue to suffer from this condition.

34.   Plaintiffs Larry and Rita Sumner, who reside at 1100 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs Larry and Rita Sumner aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked windshields; house is unlevel; cracked roof; cracked ceilings; cracked walls; slit roof beams; and other known and unknown damages.

35.   Plaintiff Martha Treadway, who resides at 3177 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Treadway

avers that as result of the Defendants' actions, her home, property and family have sustained the following damages, among others: destroyed field lines; cracked ceilings; cabinets pulling away from the walls; she has developed chronic pulmonary disease, a serious problem with her lung, in the last three years; bricks falling off the frame of the house; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

36. Plaintiff Jasmine King, is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Martha Treadway. Plaintiff Jasmine King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

37. Plaintiff Michael King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway. Plaintiff Michael King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

38. Plaintiff Hazel King is a minor resident citizen of Lee County who resides with her grandmother, and who brings this action by and through her grandmother and next friend, Martha Treadway. Plaintiff Hazel King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

39. Plaintiff Joseph King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway. Plaintiff Joseph King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

40. Plaintiffs Billy and Sherry Wallace, who reside at 1692 Lee road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Wallaces aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: pictures

are being knocked off walls and destroyed; cracked ceilings; windows knocked out of the home; cracked fireplace stones; cracked windows; their older child suffers from asthma but has been in remission since leaving the family home; Plaintiff Billy Wallace has developed a cavitary lung disease; the family has incurred medical expenses and will continue to do so; and other known and unknown damages.

41.  Plaintiff Aaron Wallace is a minor resident citizen of Lee County who resides with is parents, and who brings this action by and through his mother and next friend, Sherry Wallace. Aaron Wallace avers that as a result of the Defendants' actions he has developed asthma, chronic allegeries, sinuitis; that he is forced to sleep under a cold air humidifer; and will continue to suffer from these conditions, and other known and unknown damages.

42.  Plaintiff Michele Wilkes, who resides at 148 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Wilkes avers that as the result of Defendants' actions, her home and property have sustained the following damages, among others: a cracked foundation; bricks separating from a concrete porch; water leakage in her basement; concrete blocks in basement separating; concrete pad and step s pulling away from the house; she has developed sinus problems in the last three years; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

43.  Plaintiff Shirley Wilson, who resides at 64 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Wilson avers that as a result of the Defendants' actions, her home and property have sustained the following damages, among others: the well located on her property is filling in; cracked walls; cracked foundation; she has developed an allergy to dust that was worsened over the last year; and other known and unknown damages.

44.  Plaintiff Betty J. Pfingston, who resides in one of the mobile homes owned by Stanley Ledbetter off of Highway 166 in Lee County, and is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Pfingston avers that as a result of the Defendants' actions, the mobile home in which she lives has been damaged; she has to put up with the noise, vibration, dust, and other irritations caused by the

11

quarry, to her great inconvenience and harm; and she has suffered other known and unknown damages.

45.    Plaintiff Jessica Pfingston is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Betty J. Pfingston.    Jessica Pfingston avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition, and other known and unknown damages.

46.    Plaintiff Wonda Bright resides at 245 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama.   Ms. Bright avers that as a result of the Defendants' actions, she has suffered the following damages: she cannot escape the noise, truck traffic noise, blasting noise and vibration, dust, and her home has suffered cracks on the concrete porches.  Additionally, she has developed allergies and must now take allergy medication, and she has been unable to sell her house and move away from the nuisance.

47.    Defendant Hanson Aggregates Southeast, Inc. (hereinafter "Hanson") is a foreign corporation doing business in Lee County, Alabama.   It owns and operates a limestone quarry, equipment terminal and an explosives holding area on the property belonging to the Young Defendants and the Gilmer Defendants.

48.    Defendants Louise Young O'Brien, Virginia Young Priest, Virginia Hart Young, and Claude John Young (hereinafter "the Young Defendants") are either members of a limited partnership or a general partnership.  The Young Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Opelika Materials, Inc., and ultimately to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Young Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Young Defendants.

12

49. Defendants Charles W. Gilmer, Sr., Alice C. Gilmer, Charles W. Gilmer, Jr., Kammy Gilmer, Barbara Gilmer Smith, Gary Smith, Matthew Ruttledge Gilmer, Lelia Wilder Gilmer, and Gilmer Properties, Ltd. (hereinafter "the Gilmer Defendants") are either members of a limited partnership or a general partnership. The Gilmer Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Gilmer Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Gilmer Defendants.

## STATEMENT OF FACTS

50. The individual Plaintiffs all reside within a mile or so of the Defendants' properties, near Lee County Road 166 and Alabama Highway 169, and all own property that is in close proximity to the quarry owned and/or operated by Defendants Hanson.

51. The Beauregard Water Authority operates water wells in or near the same "chewacla marble" terrain. The Plaintiff believes the water table has been effected and that this adverse impact will increase in the future if the quarry continues to operate. They also believe the repetitive blasting has caused damage to its water lines and will continue to do so in the future.

52. The City of Opelika owns Spring Villa Park and swimming pool, and The Utilities Board owns and operates properties surrounding Spring Villa Park, including a natural spring that has flowed, non-stop, for generations. The spring ceased to flow in the spring of 2000, within a few years after the quarry began pumping millions of gallons of water per day out of the quarry pit. The quarry pit and the spring are in the same "chewacla marble" (aka limestone) terrain, which is highly fractured, and through which water migrates easily. Plaintiffs aver that the quarrying activities of the Defendants have in fact caused the spring to go dry.

13

53.  The Spring Villa Park swimming pool was fed by the spring water, so that the swimming pool is now dry and has been since the spring of 2000.  Therefore, both the City of Opelika and The Utilities Board have suffered various damages.  Although the Utilities Board does not now rely upon the spring for a source of public drinking water, it may do so in the future, so that the Defendants' actions in drying the spring have and will cause damage to the City and to The Utilities Board.  The City of Opelika has also now lost the opportunity to construct a recreational lake on and upon the Spring Villa Park property, for use by the public for recreational purposes.  The land owned by the City and The Utilities Board have, therefore, been devalued by the actions of the quarry.

54.  Were the Court to enjoin the quarry from pumping water from the aquifers in the area, and require it to allow the quarry pit to fill, it is probable that the "cone of depression" caused by pumping such large quantities of water from the quarry pit will gradually disappear, and it is probable that the spring would again flow.

55.  The Defendants' operation of a limestone quarry constitutes a nuisance.

56.  The actions of the Defendants have caused a de-watering of the subsoil in a large area surrounding the quarry.

57.  The Hanson quarry operation is immediately adjacent to the Dixie Pipeline, a very large transcontinental liquid propane gas pipeline.  The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within as little as 100 feet of the pit created by the Defendants' operations.

58.  There is a substantial likelihood that the operations of the Defendants in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry.  This result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

59.  An example of one such sinkhole is a 25 feet in diameter, 20 feet deep sinkhole that developed within the last two months, 34 feet east of the pavement of Highway 166,

and only 233 feet north of the center of the Dixie Pipeline easement that crosses Highway 166.

60. Sinkholes have also formed on the Plaintiffs' lands, including a large sinkhole in the driveway of the Clarks, which was filled with many dumptruck loads of dirt. This sinkhole, and others, formed only a few hundred feet south of the Dixie Pipeline easement and within a few hundred feet of the quarry pit.

61. The operations of the quarry in causing sinkholes to form now and in the future will in fact endanger the viability of the Dixie Pipeline. It is entirely possible, and indeed foreseeable, that if the ground beneath the Dixie Pipeline were to give way, particularly at a welded joint, the Dixie Pipeline would then rupture. A rupture of the pipeline could very well cause an explosion of devastating proportions. An explosion from the Dixie Pipeline could literally incinerate an area hundreds of yards in diameter, including Plaintiffs' homes and/or passing motorists on Highway 166.

62. Many of the Plaintiffs' homes are located within a few hundred yards of the Dixie Pipeline and the Defendants' quarry.

63. In recent depositions of Hanson corporate representatives, it was also learned that Hanson has violated several of the terms and conditions of Dixie Pipelines' "blasting guidelines", which Dixie relied upon in granting Hanson permission to blast so close to the pipeline. These violations included using too many pounds of explosives too close to the pipeline and failing to notify Dixie Pipeline personnel of their intentions to blast so that Dixie could reduce the operating pressure on the pipeline–a safety measure designed to protect the integrity of the pipeline and to avoid damage to the pipeline.

64. Hanson necessarily uses thousands of pounds of explosives each week in blasting at the quarry. The blasting obviously throws thousands of pounds of earth, including rock, dust, and fine particulate, into the air in and around the quarry.

65. The blasting causes shaking of the earth, shaking of the Plaintiffs' homes, and the throwing of rock, dirt and dust onto and about the lands of the Plaintiffs.

66.  As part of its operations, Hanson necessarily contracts with trucking companies and tractor-trailer and dump-truck operators to remove their product from the quarry site and onto the roads and highways in Lee County, including Highways 169 and 166, among others. This causes from dozens to hundreds of trucks daily to enter and exit from the quarry. These trucks are loaded to weights substantially in excess of the design criteria for the roads and highways, and cause substantial amounts of dust and debris to be deposited on the public roads and upon the lands of many of the plaintiffs.

67.  As part of its operations, Hanson necessarily moves large quantities of overburden to a "spoil pile" area that is immediately adjacent to several of the Plaintiffs' lands, including the Davises, the Harmons, Ms. Wilkes, and the Jacksons.

68.  The quarrying activities from this pit inevitably cause substantial, objectionable, and unceasing noise during most hours of the day and many hours of the night, as the plant generally operates from 6:00 a.m. until 6:00 p.m. and often thereafter. This noise also occurs commonly on the weekends, sometimes including Sundays. This noise comes from rock crushers, explosions, loud machinery operating many hours during the day and night, whistles, backup bells on heavy equipment, large trucks traveling up and down the roads and highways, and other such noises.

69.  The quarrying causes dust and other pollutants to accumulate on the Plaintiffs' property, including inside their homes, and in the air on their property and near their property, thereby causing damage to the Plaintiffs personally and to their real property.

70.  Hanson has, for several years, had actual and constructive knowledge that sediment and erosion floods onto Plaintiff Jackson's lands and onto Plaintiff Randall Parker's lands. Despite requests to stop the erosion and flooding, Hanson has ignored the problem and has failed to take any corrective action whatsoever.

71.  The quarrying causes such a constant noise and vibration to the Plaintiffs' property, including their homes, that they cannot peaceably enjoy their land.

72.  Defendants' operations are so loud and annoying that at many times, it is impossible for some of the Plaintiffs to sleep – especially those who work at night and must sleep during the day, such as Mr. Davis.

## COUNT ONE
### (Private and Public Nuisance)

73.  Plaintiffs reallege paragraphs 1 through 70 of the Complaint as if set out here in full.

74.  Defendant Hanson's quarrying operations have caused and are causing a private and/or public nuisance to exist, as described above. The quarrying is harmful to the public and adversely affects people of ordinary sensibilities.

75.  Hanson's operations create unreasonably loud noises, vibrations, dust, and pollution, and cause a tremendous increase in traffic from dangerously loaded heavy trucks. These and other damages alleged in this Complaint harm the public generally.

76.  The Plaintiffs have suffered and continue to suffer hurt, inconvenience, and other damages that are different in kind and degree than the damages suffered by the general population of Lee County. Moreover, the Plaintiffs have suffered damages due to Defendants' conduct that would affect any ordinary, reasonable person, and such damages are not such as would be fanciful or as would affect only a person of fastidious taste. Plaintiffs have the right to file this claim under Alabama Code Sections 6-5-120, 6-5-123, 6-5-124, 6-5-125 and 6-5-127.

77.  The damages caused to the individual Plaintiffs include, but are not limited to:

a.  lack of quiet enjoyment of their property, which includes, at times, a complete inability to use or enjoy their property;

b.  noise generated by machinery operating virtually twenty-four hours per day;

17

c.     pollution of the air by dust generated from blasting, diggings, movement of equipment and operation of heavy machinery and manufacturing plants;

d.     permanent devaluation of the Plaintiffs' land and homes by the above mentioned nuisance;

e.     noise, vibration, and damage to their homes and property caused by the Defendants' use of explosives and the blasting in the quarry;

f.     increase in pollution (air, noise, garbage) caused by the increase in traffic volume of heavy and dangerous trucks;

g.     broken windshields and damaged automobiles caused by the trucks going to and from the quarry at all hours;

h.     mental anguish and mental suffering of these Plaintiffs as they worry about the safety and value of their loved ones, their homes, and their lands; and

i.     Personal injury, including causing some plaintiffs to develop asthma and other breathing/pulmonary problems, and exacerbating other plaintiffs' existing asthmatic and other breathing/pulmonary problems.

78.    Hanson's actions have been repetitive, willful, wanton and aggravated. Hanson has ignored and violated the important "blasting guidelines" of the Dixie Pipeline (which are designed to ensure the integrity of the pipeline, and, therefore, the safety of the community), and Hanson has continued to blast even though inside the Opelika police jurisdiction and even though it was requested by Plaintiffs to refrain from blasting.

79.  Moreover, despite actual knowledge that the spoil pile is sloped very steeply, was never planted with any type of vegetation to arrest erosion and runoff, and that, therefore, large quantities of dirt and sediment migrate onto the Plaintiffs' properties, Hanson has taken absolutely no steps to limit or stop the erosion and continuing trespasses. This conduct justifies the imposition of punitive damages.

80.  Hanson has continued to process and manufacture rock and rock by-products. Moreover, the Defendants continued their operations with full knowledge of the damages being forced upon the individual Plaintiffs, as well as the public at large, and Defendants have not abated their nuisance despite demand to do so.

81.  Defendants' actions constitute a private and public nuisance, and their actions are or can be abated, so that the nuisance created and maintained by the Defendants is abatable.

82.  The damages suffered by the City of Opelika and The Utilities Board of the City of Opelika include loss of public property, recreational uses and benefits to the public generally, loss in value of public property, and loss of water to be used as a backup source of clean drinking water for citizens of Opelika and Lee County.

83.  If Hanson is allowed to continue pumping water from the quarry pit, further dewatering of the area will occur, the cone of depression will enlarge, and eventually more private, and quite possibly public, water wells will go dry or be reduced in capacity.

**WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the

jury finds reasonable, and in addition, request this Honorable Court to enter injunctive

relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT TWO
### (Negligence and Wantonness)

84.  Plaintiffs reallege paragraphs 1 through 81 of the Second Amended and Restated

Complaint as if set out here in full.

85.  Defendant Hanson has a duty to operate the quarry in a manner that will not cause

unreasonable injury to adjacent and/or nearby landowners.

86.  Defendant Hanson breached its duty by damaging the Plaintiffs as stated above.

87.  As described above, Plaintiffs suffered damages due to the negligent and wanton

and willful manner in which Defendant Hanson operates the quarry.

88.  Defendant Hanson has actual knowledge that the manner in which it is operating

its quarry was causing the very damages (both public and private) stated above in

this Complaint.  Despite such actual knowledge (made known to them by oral and

written notice), the Defendant continues to cause the damages stated above.

Moreover, the Plaintiffs from time to time protested the manner in which Defendant

operates the quarry, yet Defendants refused to change or alter their practices, all to

the continued detriment of the Plaintiffs.

89.  The manner in which Defendant Hanson ignored the Plaintiffs' complaints

constitutes rude, wanton, outrageous, and/or reckless conduct for which Hanson

should be punished by the imposition of punitive damages.

**WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive

damages, costs of this action, attorneys' fees, interest and such other further relief as the

jury finds reasonable, and in addition, request this Honorable Court to enter injunctive

relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT THREE
### (Trespass)

90.    Plaintiffs reallege paragraphs 1 through 87 of the Second Amended and Restated

Complaint as if set out here in full.

91.    The manner in which Defendant Hanson operates the quarry has caused noxious

fumes, dust, particulate matter, and garbage to enter upon Plaintiffs' lands without

their consent and despite their repeated objections.   Moreover, the repeated,

continuous, long-term blasting using high explosives has caused additional

unwanted and unconsented-to damages to the Plaintiffs' lands, and possibly to the

Dixie Pipeline, thereby endangering the Plaintiffs and the public generally.

92.    Plaintiffs lands have been damaged as set forth above.

93.    Defendant Hanson operates the quarry as described with full knowledge that its

activities were causing trespasses to Plaintiffs' lands, yet continued to engage in

such activity despite actual knowledge that the Plaintiffs were being damaged.

94.    Defendant Hanson has engaged in repetitive trespasses upon the Plaintiffs' lands,

all without Plaintiffs' consent and over their express and frequently communicated

objection.  Hence, the imposition of punitive damages is appropriate and necessary

to punish and deter Defendant Hanson from engaging in such conduct in the future.

**WHEREFORE** Plaintiffs claim from Defendant Hanson compensatory and punitive

damages, costs of this action, attorneys' fees, interest and such other further relief as the

jury finds reasonable, and injunctive relief requiring Defendant Hanson to take all necessary measures to stop the continuing trespasses and to remedy the prior trespasses.

### COUNT FOUR
### (Injunctive Relief)

95.    Plaintiffs reallege paragraphs 1 through 92 of the Complaint as if set out here in full.

96.    The continued operation of the quarry has caused and will continue to cause the damages stated above.

97.    The actions of Defendant Hanson in pumping water from the quarry pit have caused such a substantial de-watering of the area that the spring at Spring Villa has been caused to go dry as a direct result of the pumping of water from the ground from the quarry.

98.    The quarry operations are immediately adjacent to the Dixie Pipeline, a very large transcontinental propane gas pipeline.  The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within 200 feet of the pit created by the Defendants' operations.

99.    There is a substantial likelihood that the operations of the Defendants in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry, and this result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

100.    In fact, a large sinkhole, 25 feet in diameter and over 20 feet deep, recently formed only 233 feet from the center of the Dixie Pipeline easement.  This sinkhole

22

developed due to Hanson's pumping of water from the quarry and the concomitant dewatering of the surrounding area.

101.    This sinkhole is only 34 feet from the public Highway 166, and Highway 166 now appears to "dip" or sag near the sinkhole, so that there is a real possibility that a sinkhole or sinkholes may be forming under the roadbed.

102.    If the roadbed caves in, members of the traveling public, including the Plaintiffs, may well be in danger of serious injury or death.

103.    The operations of the quarry in causing sinkholes to form now and in the future will in fact endanger the viability of the Dixie Pipeline. It is entirely possible, and indeed foreseeable, that if the ground beneath the Dixie Pipeline were to give way, particularly at a welded joint, the Dixie Pipeline would then rupture. A rupture of the pipeline could very well cause an explosion of devastating proportions. An explosion from the Dixie Pipeline could literally incinerate an area hundreds of yards in diameter.

104.    Several of the Plaintiffs live less than 200 yards from the Dixie Pipeline and, therefore, their lives are in danger by Hanson's continued operation.

105.    It is in the public's best interest to stop the continued operation of the quarry.

106.    The quarry cannot be operated in such a manner as to prevent the serious and continued damages to the public, the Plaintiffs and the Public's interests.

**WHEREFORE**, the Plaintiffs demand judgment enjoining all of the Defendants from operating this or any quarry on the Youngs' and Gilmer's lands, and for such other legal or equitable relief to which they are entitled.

## COUNT FIVE
### (Statutory Damages for Diversion of Water)

107.    Plaintiffs adopt by reference the allegations of paragraphs 1-104 above.

108.    Pursuant to Alabama Code section 33-7-4, Defendants are liable to the Plaintiffs

Randall and Wanda Parker for diversion of water from Little Uchee Creek, and to

the City of Opelika and The Utilities Board of the City of Opelika for the diversion

of water from the underground aquifers to the surface in and near the Spring Villa

spring.

**WHEREFORE**, Plaintiffs Randall and Wanda Parker, the City of Opelika, and The

Utilities Board of the City of Opelika demand that the Court enjoin all of the Defendants

from their pumping operations and to stop diverting and dewatering the Little Uchee

Creek and the aquifer feeding the Spring Villa spring, and further demand such

compensatory and punitive damages to which they are entitled, together with costs,

attorneys fees, interest and such other further relief as the jury finds reasonable.

## COUNT SIX
### (Claims Against Oldcastle)

109.    Defendant Oldcastle Materials Southeast, Inc. is a foreign corporation organized and

existing under the laws of the state of Delaware, which is qualified to do business

in Alabama.

110.    Defendant Oldcastle has assumed control of the Lee County Quarry at issue in this

litigation. Despite request therefor, Defendant Hanson has refused to provide to

Plaintiffs the agreement, sales or assignment documents relating to Oldcastle's

assumption of the quarry operation.

111.  On information and belief, Defendant Oldcastle is intending to and will continue the operations of the quarry under the same or similar conditions so that each and every cause of action pleaded against Defendant Hanson is hereby pleaded against Defendant Oldcastle.

112.  Defendant Oldcastle has continued to operate the quarry and will continue to operate the quarry unless and until restrained by this Court.

113.  Defendant Oldcastle's continued operation will be done in a negligent and wanton manner causing the damages and continuing damages to the Plaintiffs as stated earlier in this Complaint.

114.  All damages and harms pleaded in this Complaint will continue if Defendant Oldcastle continues to operate the quarry. Moreover, any blasting and discharging of water by Oldcastle will cause continuing damages to the Plaintiffs as alleged above in this 3rd Amended and Restated Complaint.

115.  Defendant Oldcastle either purchased or otherwise assumed control of the Lee County Quarry with the full knowledge and information about this pending lawsuit and with full knowledge and information about the Plaintiffs' claims and the fact that the quarry is in fact damaging the Plaintiffs, dewatering the community, causing sinkholes, endangering the public highways and the integrity of the pipeline, and destroyed Spring Villa spring and park.

**Wherefore** Plaintiffs demand judgment against Defendant Oldcastle: (1) enjoining all of the Defendants, including Defendant Oldcastle, from operating this or any quarry on the Youngs' and Gilmer's lands, and for such other legal or equitable relief to which they

are entitled; (2) for all compensatory damages to which they are entitled based upon Defendant Oldcastle's continuation of the nuisance and continued negligent and wanton operation of the quarry; (3) for such punitive damages as the jury deems appropriate to punish and deter Defendant Oldcastle and others similarly situated; and (4) for costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable.

## COUNT SEVEN
### (Additional Parties Plaintiff)

116. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 115.

117. Plaintiffs add as a Plaintiff, pursuant to authorization from the Court, Mr. Donnie Smith. Mr. Smith owns the property adjacent to Spring Villa Road and on the south side thereof next to the Utility Board property and very close to Spring Villa spring. Sinkholes are forming on Mr. Smith's property in numerous places. His property is no longer safe, sinkholes have formed in several places in his fields, and he has two ponds that have dried up due to sinkhole development. The Smith property is, therefore, unsafe, has suffered a depreciation in value, and, therefore, Mr. Smith seeks compensatory and punitive damages against the Defendants.

118. Plaintiffs add as Plaintiffs, pursuant to authorization from the Court, David Tankersley and his wife, Tanya. The Tankersleys own land on the south side of Spring Villa Road and reside at 756 Lee Road 148, Opelika, Alabama 36804. Numerous sinkholes have formed on the Tankersleys' property as a result of Defendants' actions. Their property is no longer safe, has been devalued, their well has gone dry, and the 12" slab in Mr. Tankersley's shop/barn has cracked

26

completely across. The Tankersleys therefore seek compensatory and punitive damages from the Defendants.

119.  Plaintiffs add as a Plaintiff, pursuant to authorization from the Court, Mr. Ken Schwieker, and his wife, Naomi Schwieker. The Schwiekers own the property north of Spring Villa Road and adjacent to the Utilities Board property and Little Uchee Creek in the vicinity of the sinkholes that have formed at Little Uchee Creek. Defendants' expert, Tom Joiner & Associates (specifically Mr. Wood) has already examined the Schwiekers' property. Numerous sinkholes have formed on the Schwiekers' property, and they do not now feel that their fields are safe to bushhog or to enjoy in any respect. They are afraid that if they take horses on their property, the horses' legs will be broken and people may fall and be severely hurt. The Schwiekers claim damages of the Defendants for the loss and value of their property, for the formation of the sinkholes that have devalued and made their property dangerous, and for sinkholes that have formed causing a cracking of the foundation on their old family farmhouse foundation. The Tankersleys also seek punitive damages for Defendants' wrongful conduct.

**Wherefore** Plaintiffs Smith, Tankersley, and Schwieker demand damages against the Defendants for the devaluation of their land, for the formation of sinkholes on their land, and the costs to repair and replace all sinkholes forming on their land, for any damages to structures on their premises, and for all such other damages to which they are entitled, including punitive damages.

CHARLES E. VERCELLI, JR. (VER003)

**OF COUNSEL:**
**For All Plaintiffs:**
LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100
Fax (334) 821-7101

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805
Fax (33) 834-8807

For Plaintiffs City of Opelika and Water Works Board of the City of Opelika Only:
Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334)745-6244
Fax (334) 745-6288

1663

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

| | |
|---|---|
| James A. Byram, Jr.<br>Dorman Walker<br>Matt Parnell<br>Balch & Bingham, LLP<br>P.O. Box 78<br>Montgomery, AL 36101 | John V. Denson<br>Samford, Denson, Horsley, Pettey & Bridges<br>P.O. Box 2345<br>Opelika, AL 36803-2345 |
| H. Wayne Phears<br>Phears & Moldovan<br>Suite 375<br>4725 Peachtree Corner Circle<br>Norcross, GA 30092-3000 | Phillip E. Adams, Jr.<br>Adams, Umbach, Davidson & White, LLP<br>P. O. Box 2069<br>Opelika, AL 36803-2069 |

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _21st_ day of _August_, 2003.

_____
OF COUNSEL

## ALL PLAINTIFFS DEMAND TRIAL BY JURY IN LEE COUNTY, ALABAMA

155-00\4th-Amend-Complaint1.3.wpd

29

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
        Plaintiffs,                    )
                                       )
vs.                                    )        CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC., et al.,               )
                                       )
        Defendants.                    )

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") moves the Court to dismiss Plaintiffs' claims for injunctive relief against Hanson pursuant to Rules 12 (b)(1) and 12(b)(6) of the *Alabama Rules of Civil Procedure*. In the alternative, Hanson moves the Court to enter summary judgment in favor of Hanson as to Plaintiffs' claims for injunctive relief under *Ala .R .Civ. P.* 56. As grounds for this motion, Hanson avers that the Plaintiffs' claims for injunctive relief against Hanson are now moot, and states as follows:

1.      Plaintiffs' Third Amended and Restated Complaint ("Plaintiffs' Complaint) seeks injunctive relief against Hanson based upon the alleged negligent operation of the quarry. Each claim asserted by Plaintiffs' against Hanson requests the Court to enjoin Hanson from "continuing to cause the damages" asserted in the Complaint. *See* Complaint at the "Wherefore" paragraphs following paragraphs 83, 89, 94, 108, and 116. Additionally, Count Four specifically asserts that the pumping of water from the quarry, the alleged effect of the quarry's operation on



FILED

AUG 25 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

135244.1

nearby roadbeds, and the possible dangers of and its operation near the Dixie Pipeline[1] are sufficient grounds for this Court to find that "[i]t is in the public's best interest to stop the continued operation of the quarry;" and "[t]hat the quarry cannot be operated in a manner as to prevent the serious and continued damages to the public, the Plaintiffs and the Public's interest." Upon these assertions, Plaintiffs demand a judgment permanently enjoining Hanson from operating the quarry on the Young and Gilmer properties. *See* Complaint at the "Wherefore" paragraph following paragraph 106.

2.       Count Six of Plaintiffs' Complaint recognizes that Oldcastle Materials Southeast, Inc. ("Oldcastle") purchased the operational assets of the quarry. *See* Complaint at paragraph 110. Count Six also recognizes that Oldcastle is now responsible for the quarry's day-to-day operations. *See* Complaint at paragraph 112.

3.       Plaintiffs' claims against Hanson for injunctive relief based upon the operation of the quarry are now moot, as Hanson has not been responsible for the operation of the quarry since July 11, 2003 and has no remaining interest in the quarry. As such, no justiciable case or controversy exists regarding Plaintiffs' requests for injunctive relief against Defendant Hanson.

4.       Because Plaintiffs' claims for injunctive relief against Defendant Hanson are now moot, the Court does not have subject matter jurisdiction over Plaintiffs' claims for injunctive relief. *See Ala. R. Civ. P.* 12(b)(1). The lack of a justiciable case or controversy may properly be addressed in a motion to dismiss. *See Smith v. Alabama Dry Dock & Shipping Co.*, 293 Ala. 644, 309 So. 2d 424 (Ala. 1975). Further, Plaintiffs' claims for injunctive relief fails to state a claim upon which relief can be granted. *See Ala. R. Civ. P.* 12(b)(6). Hanson's motion to dismiss may be properly granted as it is beyond doubt that Plaintiffs cannot prove any set of facts

---

[1] Although the Court has already granted Hanson's Motion for Summary Judgment regarding the Dixie Pipeline claims, Plaintiffs reassert these previously dismissed claims in their Third Amended and Restated Complaint.

in support of its claims for injunctive relief regarding the closure of the quarry against Defendant Hanson. *See Patton v. Black*, 646 So. 2d 8 (Ala. 1994). Further, the inadequacy of Plaintiffs' claims are clearly apparent on the face of Plaintiffs' Third Amended and Restated Complaint. *See Braggs v. Jim Skinner Ford, Inc.*, 396 So. 2d 1055 (Ala. 1981).

5.    Should this Court find it necessary to entertain evidence not contained within the pleadings, as amended, Hanson requests that the Court enter summary judgment in favor of Hanson pursuant to *Ala. R. Civ. P.* 56 as contemplated in *Ala. R. Civ. P.* 12(b).

WHEREFORE, the premises considered, Hanson moves the enter an Order dismissing all of Plaintiffs' claims for injunctive relief asserted in Plaintiffs' Third Amended and Restated Complaint under *Ala. R. Civ. P.* 12(b)(1) and/or *Ala. R. Civ. P.* 12(b)(6). In the alternative, Hanson requests that the Court enter an order granting Hanson's summary judgment with regard to Plaintiffs' injunctive relief claims under *Ala. R. Civ. P.* 56.

Respectfully submitted this 25th day of August, 2003.

One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

135244.1

3

1667

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 25th day of August, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
 & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL 36803-0409

Of Counsel

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
        Plaintiffs,                    )
                                       )
vs.                                    )        CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC., et al.,               )
                                       )
        Defendants.                    )

## SUBMISSION STATEMENT IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") submits the following evidentiary materials in support of its motion filed August 25, 2003:

1.    Hanson's answers to plaintiffs' fourth discovery requests, Nos. 2, 3, and 4, copy attached at Tab 1;

2.    Asset Purchase Agreement between Hanson and Oldcastle. This document is attached at Tab 2 and filed under seal pursuant to the Stipulated Protective Order entered May 2, 2002.

Dated this 25th day of August, 2003.

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101



FILED
AUG 25 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

135244.1

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 25th day of August, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
  & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL 36803-0409

Of Counsel

1

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. CV-02-85 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

DEFENDANT HANSON'S RESPONSE TO PLAINTIFFS'
FOURTH INTERROGATORIES AND REQUESTS FOR PRODUCTION

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") responds to plaintiffs' fourth

interrogatories and requests for production as follows:

I. GENERAL OBJECTIONS

1.    Hanson objects to the interrogatories and requests for production to the extent
they call for privileged information or documents protected by the attorney client privilege
and/or the work product doctrine.

2.    Hanson objects to the interrogatories and requests for production to the extent
they seek to require defendant to comply with requirements outside the scope of or contrary to
the Alabama Rules of Civil Procedure.

3.    Hanson objects to the interrogatories and requests for production to the extent
they seek information or documents not relevant to the subject matter of this action or not
reasonably calculated to lead to the discovery of admissible evidence.

4.    Hanson objects to the interrogatories and requests for production to the extent
they are vague, overly broad, and/or unduly burdensome, or not appropriately limited
geographically by subject matter, or by time, or to the extent they seek information concerning
trade secrets and/or private financial affairs.

II. SPECIFIC RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

1.    Describe in detail the reason that Hanson sold, swapped, or otherwise transferred
the Lee County Quarry to Oldcastle (or whomever it was sold or transferred to).

**RESPONSE:**

    See objections 3 and 4.

    2.    With respect to the sale, swap, or other transfer of the Lee County Quarry, describe in detail every step Hanson took

    (1)    to ensure that the Plaintiffs' complaints about the spoil piles will be resolved, and describe in detail when the Plaintiffs' complaints will be resolved;

    (2)    to ensure that the Plaintiffs' complaints about noise will be resolved or alleviated in some manner;

    (3)    to ensure that the Plaintiffs' complaints about dust will be resolved or alleviated in some manner;

    (4)    to ensure that the Plaintiffs' complaints about blasting will be resolved or alleviated in some manner; and

    (5)    to ensure that the Plaintiffs' complaints about the quarry dewatering the area and causing sinkholes to form will be resolved or alleviated in some manner.

**RESPONSE:**

    See objections 3 and 4. Hanson sold the quarry assets, and did not retain any interest in

the property.

    3.    Produce every document in your possession or subject to your control that relates in any way to your answers to interrogatories 2(1) to 2(5).

**RESPONSE:**

    Subject to general objections 1, 3 and 4, see the Asset Purchase Agreement produced

August 11, 2003.

4.    Produce every document in your possession or subject to your control regarding the sale, swap, or other transfer of the Lee County Quarry to Oldcastle (or to whomever the purchaser or transferee is).

**RESPONSE:**

Subject to general objections 1, 3 and 4, see the Asset Purchase Agreement produced

August 11, 2003.

5.    Do you contend that the dye trace conducted by Mr. Aley and/or the testing conducted by Mr. Aley was flawed in any way, was inaccurate in any way, or was conducted in any respect in an erroneous, negligent or unprofessional manner? If your answer is in the affirmative, describe in great detail your contentions and the bases therefor.

**RESPONSE:**

Yes.  Subject to general objection 2 and Rules 26(b)(4)(A), *Ala.R.Civ.P.*, see the Dr.

Ralph Ewers expert disclosure dated August 11, 2003.

6.    Do you contend that the manner in which Alan Lee placed dye collection charcoal packs, or retrieved them, or shipped them to Tom Aley/Ozark Underground Laboratories was done improperly or in such a manner as to be unreliable, improper, or negligent? If your answer is in the affirmative, describe in great detail your contentions and the bases therefor.

**RESPONSE:**

See general objection 2, and Rule 33(b), *Ala.R.Civ.P.*.  Alan Lee has not been deposed.

This interrogatory is premature.

7.    Do you contend that the manner in which the charcoal packs were shipped to Mr. Aley is in some manner erroneous or that the manner of shipping affected adversely the proper analyses of those charcoal packs by Mr. Aley and/or his laboratory personnel? If your answer is

STATE OF GEORGIA

COUNTY OF Henry

Before me, the undersigned notary public, did personally appear Nigel Wills who, after being first duly sworn on oath, did depose and say as follows:

My name is Nigel Wills. I am employed by Hanson Aggregates Southeast, Inc. as the Environmental Manager, Southeast Region. In that capacity, I am authorized to verify that I have read over the foregoing answers to plaintiffs' fourth interrogatories and requests for production, which include information provided by others, and the facts stated therein are true and correct according to my present information, knowledge and belief.

_____
Nigel Wills

Sworn to and subscribed before me on this 19th day of August, 2003.

(Seal)

Notary Public

My Commission Expires

Notary Public, Henry County, Georgia
Commission Expires September 9, 2004

8

One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the _21_ day of August, 2003:

James B. Sprayberry, Esq.          Guy F. Gunter, III, Esq.
Post Office Drawer 2429            Melton, Gunter & Melton
Auburn, Alabama 36831-2429        P. O. Box 409
                                   Opelika, AL 36803-0409

Chip Vercelli, Esq.               Phillip E. Adams, Jr., Esq.
Vercelli & Associates, P.C.       Adams, Umbach, Davidson & White, LLP
1019 S. Perry Street              Post Office Box 2069
Montgomery, Alabama 36104-5049    Opelika, Alabama 36803-2069

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

Of Counsel

2

**FILED UNDER SEAL**
Subject to Stipulated Protective Order

Davis, et al. v. Hanson Aggregates Southeast, Inc., et al.
Case No. CV-02-85
Lee County Circuit Court

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    CIVIL ACTION NUMBER: CV-02-085 |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC.; et al. | ) |
| | ) |
| Defendants. | ) |

F I L E D

AUG 2 7 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### ANSWER OF YOUNG AND GILMER DEFENDANTS
### TO PLAINTIFFS' THIRD AMENDED AND RESTATED COMPLAINT

COME NOW, the Young and Gilmer Defendants in the above-styled case and resubmit their

last Answer and Counterclaim to the Plaintiffs Third Amended and Restated Complaint.


Respectfully submitted,


OF COUNSEL FOR DEFENDANTS:
VIRGINIA YOUNG PRIEST; JOHN CLAUDE
YOUNG, C/O VIRGINIA YOUNG PRIEST;
LOUISE YOUNG O'BRIEN; VIRGINIA HART
YOUNG; GILMER PROPERTIES, LTD.
SAMFORD, DENSON, HORSLEY,
 PETTEY,  BRIDGES & HUGHES
P.O. Box 2345
Opelika, AL  36803-2345
(334) 745-3504
FAX (334) 745-3506

JOHN V. DENSON
DEN007

1677

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all Attorneys of Record in the above-styled cause, by mailing the same in U.S. Mail, postage prepaid, on this the __27th__ day of __August__, 2003, as follows:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

M. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia  30092-3000

Guy F. Gunter, III
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0409

Mr. Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Charles E. Vercelli, Jr.
Suite 214, Union Station
300-B Water Street
Montgomery, Alabama 36104

James B. Sprayberry
Post Office Drawer 2429
Auburn, Alabama 36831-2429

John V. Denson

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
        Plaintiffs,                    )
                                       )
vs.                                    )        CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC., et al.,               )
                                       )
        Defendants.                    )

## RENEWED MOTION FOR SEPARATE TRIAL AND TO CONTINUE

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") moves the Court pursuant to *Ala.R.Civ.P.* 42(b) to order a separate trial of the hydrogeology claims, and to continue the trial of the hydrogeology claims. In support of this motion, Hanson shows the Court as follows:

1.      The claims of the individual plaintiffs for damages relating to quarry noise, dust, blasting, etc. are wholly unrelated to the hydrogeology claims.

2.      Oldcastle, which purchased the quarry assets as of July 11, 2003, is not liable for any damages the plaintiffs claim for quarry operations prior to that date, and for that reason, there is no reason for Oldcastle to be a party to the trial of the damage claims of those individual plaintiffs.

3.      As explained in the renewed motion for separate trial filed July 18, 2003, the plaintiffs' dye test has never revealed any connection between Spring Villa spring and the Hanson quarry, and did not purport to show any connection between the Little Uchee Creek and the Hanson quarry until June 24, 2003, less than a month before the scheduled trial. Hanson has retained a dye test expert, Dr. Ralph Ewers of Eastern Kentucky University. His preliminary report is attached as Exhibit A and incorporated by reference. In Dr. Ewers' opinion, the

plaintiffs' dye test was "improperly designed and executed" and the purported results of plaintiffs' dye test "are not meaningful or reliable." Dr. Ewers recommends that the "dye test should be repeated, with proper and thorough design and implementation." Obviously, this cannot be done before the scheduled October 20 trial date. Indeed, plaintiffs' dye test was conducted for six months before the dye injected in Little Uchee Creek was allegedly discovered in the quarry discharge. Further, plaintiffs' dye test expert, when asked "how long do you think that these receptors should be monitored," said that dye "travel time could be a year or more." (Aley Depo. at 204)

4.      Another reason to sever the hydrogeology claims is that the Court recently allowed the plaintiffs to add three additional plaintiffs who only have hydrogeology claims. These plaintiffs are Donnie Smith, Mr. and Mrs. David Tankersly and Ken Schwiecker. (August 12, 2003 Order, ¶ 5)

5.      Also, the Court has decided to allow Lee County's Road Engineer to be a witness for the trial of the hydrogeology claims. (August 12, 2003 Order, ¶ 8)   Lee County is a party which should be joined pursuant to *Ala.R.Civ.P.* 19, <u>if</u> Lee County has a claim about the cost of repairing Spring Villa Road located near the Spring Villa Park and the property of newly added plaintiff Donnie Smith. Lee County is a necessary party if it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [Lee County's] absence may . . . (ii) leave [Hanson] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

6.      Moreover, the Court has now ruled that the City of Opelika may change its hydrogeology damage claim to increase that claim from $700,000 to nearly $4,000,000. (August 12, 2003 Order, ¶ 7)  It is only fair that Hanson be given an opportunity to have discovery about

this new claim, and to have the opportunity to obtain rebuttal evidence concerning this enormous damage claim.

7.    The hydrogeology case is wholly unrelated to the quarry blasting, dust, noise, etc. claims, and involves very complex scientific testimony.    The plaintiffs have at least three geology or hydrogeology experts (Aley, Saunders, and Hicks), and Hanson has three geology or hydrogeology experts (Wood, Cook, and Ewers).    As stated, the dye test expert for Hanson, Dr. Ralph Ewers, strongly believes that the dye test should be performed again.

8.    Oldcastle also has the right to participate in the trial of the hydrogeology issues and to obtain evidence, discovery and independent expert advice regarding these claims.

9.    Hanson respectfully submits that all the hydrogeology claims should be resolved in one proceeding with all necessary parties.    The expense and risk of inconsistent verdicts from multiple trials of these issues is simply too great to proceed on October 20.

WHEREFORE, premises considered, Hanson moves the Court to sever and continue the hydrogeology claims and to proceed at the October 20 setting, if at all, with the individual plaintiffs' quarry blasting, dust, noise, etc. damage claims as of July 11, 2003.

Respectfully submitted,

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

134949.1                    3

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 26th day of August, 2003:

James B. Sprayberry, Esq.
Attorney at Law
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
 & White, LLP
Post Office Box 2069
Opelika, Alabama  36803-2069

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

_____
Of Counsel

# EWC *Ewers Water Consultants Inc.*



160 Redwood Drive, Richmond, Kentucky 40475
Phone & Fax (859) 623-8464    E-mail Address ewc@mis.net

July 10, 2003

James A. Byram, Jr.
Balch & Bingham LLP
P.O. Box 78 Montgomery, Al. 36106

By fax to 866-736-3863

Re: Davis, et al. v. Hanson, et al., Lee County, Alabama Circuit Court case no. CV 2002-0085

Dear Mr. Byram:

At your request I have reviewed the reports dated March 13, 2003 and June 24, 2003 and supporting information concerning Mr. Tom Aley's dye test relating to the Hanson Quarry, and I have also visited the site. According to Mr. Aley, three tracer dyes were injected on December 17, 2002:

(1,) rhodamine-WT (RWT) at the "sinkhole" on highway 166 west of the quarry;
(2.) fluorescein at the Spring Villa spring site; and
(3.) eosine into a "sinkhole" in the channel of Little Uchee Creek about 800 feet northwest of Spring Villa, both located northeast of the quarry.

Mr. Aley reported that sampling was suspended on March 27, 2003. At that time the only dye that had been detected was the RWT. Aley states that sampling was resumed on June 5, and when these samplers were pulled on June 12, eosine was detected for the first time, and RWT was also detected, both in the quarry discharge. The fluorescein dye was not detected.

You contacted me on June 30. I visited the site on July 7, and I have completed one analysis of a charcoal sampler that had been placed downstream of the quarry discharge for a period of one week.

In my professional opinion, Mr. Aley is premature and very possibly incorrect in concluding that eosine was detected by the June 5 sampling. It is well established that RWT will breakdown over time and produce a false eosine reading. That is especially likely given the amount of time since December 17, and the strong presence of RWT in the quarry discharge. I cannot conclude, based on my analysis of the charcoal sampler, that the dye is in fact eosine. Continued sampling and monitoring is required.

In addition, the dye test was improperly designed. It is entirely possible that the fluorescein dye injected at Spring Villa, and most or all of the eosine dye, went somewhere else. According to the topographic map produced by Mr. Aley showing his dye monitoring locations, he was not checking for the dyes at any place where the elevation was as low as the quarry, or indeed at any location, except the quarry, that was significantly lower than the water level in the throat of the Spring Villa at the time of the dye injection there. Thus, under the conditions at the time of the injection, water and dye would have had to travel uphill to reach any location except the quarry. Even if it is in fact eosine that was detected by Aley after June 5, that does not prove that the quarry captured the entire flow of the spring, it only means that some portion of the flow went to the quarry. The failure to recover fluorescein, the most dependable and most easily detectable of the groundwater tracing dyes, is most likely due to the experimental design. The failure to have sufficient properly located dye samplers is a critical problem making it impossible to know with reasonable certainty where the ground water travels.

It was also a critical error to have suspended monitoring from March 27 to June 5. This results in a significant lack of relevant data.

In my opinion the dye study was improperly designed and executed, and, accordingly, the results are not meaningful or reliable. The dye test should be repeated, with proper and thorough design and implementation.

I am fully qualified to give these opinions. A brief selected listing of my credentials is attached.

Very truly yours.

Ralph O. Ewers Ph.D.

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. CV 02-085 |
| | * | |
| HANSON AGGREGATES | * | |
| SOUTHEAST, INC., et al, | * | |
| | * | |
| Defendants. | * | |

## **ORDER**

The Court has received a Motion to Continue in the above-styled case filed by Attorney Phillip E. Adams, Jr.  All pending Motions will be heard on **SEPTEMBER 5, 2003, at 11:00 A.M. in Courtroom Three of the Lee County Justice Center, Opelika, Alabama.**

The Clerk of Court is ordered to mail by ordinary mail are deliver a copy of this Order to the following:

Hon. Jimmy Sprayberry
Post Office Box 2429
Auburn, AL 36831-2429

Hon. James Byram, Jr.
Hon. Dorman Walker
Hon. Matt Parnell
Post Office Box 78
Montgomery, AL 36101

Hon. Guy Gunter
Post Office Box 409
Opelika, AL 36803-0409

Hon. Charles Vercelli, Jr.
1019 S. Perry Street
Montgomery, AL 36104

Hon. John V. Denson
Post Office Box 2345
Opelika, AL 36803-2345

Hon. Phillip E. Adams, Jr.
Post Office Box 2069
Opelika, AL 36803-2069

DONE this the 21st day of August, 2003.

JACOB A. WALKER, III
Circuit Judge

F I L E D

AUG 2 8 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED

AUG 2 8 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | |
|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NUMBER: CV-02-085 |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC.; et al. | ) |
| | ) |
| Defendants. | ) |

## ANSWER OF YOUNG AND GILMER DEFENDANTS
## TO PLAINTIFFS' FOURTH AMENDED AND RESTATED COMPLAINT

COME NOW, the Young and Gilmer Defendants in the above-styled case and resubmit their

last Answer and Counterclaim to the Plaintiffs Fourth Amended and Restated Complaint.

Respectfully submitted,

**OF COUNSEL FOR DEFENDANTS:**
**VIRGINIA YOUNG PRIEST; JOHN CLAUDE**
**YOUNG, C/O VIRGINIA YOUNG PRIEST;**
**LOUISE YOUNG O'BRIEN; VIRGINIA HART**
**YOUNG; GILMER PROPERTIES, LTD.**
SAMFORD, DENSON, HORSLEY,
 PETTEY, BRIDGES & HUGHES
P.O. Box 2345
Opelika, AL 36803-2345
(334) 745-3504
FAX (334) 745-3506

JOHN V. DENSON
DEN007

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all Attorneys of Record in the above-styled cause, by mailing the same in U.S. Mail, postage prepaid, on this the _27th_ day of _August_, 2003, as follows:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

M. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092-3000

Guy F. Gunter, III
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0409

Mr. Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Charles E. Vercelli, Jr.
Suite 214, Union Station
300-B Water Street
Montgomery, Alabama 36104

James B. Sprayberry
Post Office Drawer 2429
Auburn, Alabama 36831-2429

John V. Denson

2

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**F I L E D**

MIKE DAVIS, et al.,    *
        Plaintiff,    *

AUG 2 8 2003

v.    *    CASE NUMBER: CV-02-85T. HURST
    *
    *

IN OFFICE
CIRCUIT CLERK

HANSON AGGREGATES SOUTHEAST,    *
INC., et al.    *
        Defendants.    *

### PLAINTIFF RANDALL PARKER'S SUPPLEMENTAL RESPONSE TO DEFENDANTS INTERROGATORIES AND DEPOSITION QUESTIONS

Plaintiff Randall Parker supplements his prior responses to Defendant's Interrogatories and his deposition responses by adding the following:

Since Spring Villa dried up I have noticed that the water flow in the creek has been down dramatically, even in the wet times. This has changed the character of the creek. It takes only a few days after a rain for the creek level to drop down abnormally again, where as even in dry weather it used to stay at certain levels. This has caused several problems. First, in a couple of spots the creek used to act as a fence for the cows, but now at the low levels of the creek the cows can walk over the sandbars to my neighbors property. In the spot where there used to be water backed up by a beaver dam, the beavers moved out, the cows walked out onto my neighbors property. Second, the creek flow used to add to the beauty of the property. Third, now we have mosquito pools because of the lack of flow or current which also used to keep the water clear. In the past the creek was always clear and flowing. Now it is murky and stagnant. In the past we had a swimming hole and a rope swing, but now the creek is too shallow to dive in or swim in.

**"Also, the mud is still coming over on me by the Hanson spoil pile. The mud still comes onto my property and Hanson still has done nothing to fix it."**

*Randall Parker*
RANDALL PARKER

STATE OF ALABAMA          }
                          }
COUNTY OF LEE             }

Personally appeared before me, the undersigned Notary Public in and for the State and County aforesaid, the name within Randall Parker, who, after being duly sworn, and having read and fully understanding the foregoing document, states under oath that the facts and matters stated therein are true to the best of his knowledge, information and belief.

SWORN AND SUBSCRIBED BEFORE me this 20th day of Aug.,2003.

Notary Public

[SEAL]                              My Commission Expires: 7-18-07

OF COUNSEL:

CHARLES VERCELLI, JR., (VER003)          JAMES B. SPRAYBERRY (SPR008)
*Co-Council for Property Owners*          *Co-Council for Property Owners*
1019 South Perry Street                   Post Office Drawer 2429
Montgomery, AL 36104                      Auburn, Alabama 36831-2429
(334) 834-8807                            (334) 821-7100

**GUY GUNTER**
*Council for City of Opelika/ Opelika Water Board*
P.O. Box 409
Opelika, Alabama 36801
(334) 745-6288

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the ⁓⁓ day of August, 2003.

James A. Byram, Jr., Esq.
Dorman Walker, Esq.
Balch & Bingham, LLP
P.O. Box 78
Montgomery,   Alabama   36101-0078

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA   30092-3000

John Denson, Esq.
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

James B. Sprayberry

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

F I L E D
AUG 2 8 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | |
|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **CIVIL ACTION NUMBER: CV-02-085** |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC.; VIRGINIA | ) |
| YOUNG PRIEST, AND GILMER | ) |
| PROPERTIES, LTD., etc. | ) |
| | ) |
| Defendants. | ) |

## MOTION TO JOIN HANSON'S AND OLDCASTLE'S MOTIONS FOR CONTINUANCE

COME NOW, the Defendants, Virginia Young Priest; John Claude Young, c/o Virginia Young Priest; Louise Young O'Brien; Virginia Hart Young and Gilmer Properties, Ltd. (hereinafter **"Young and Gilmer Defendants"**) and join with the Defendant, Hanson Aggregates Southeast, Inc., (hereinafter "Hanson") and Defendant, Oldcastle Materials, Inc., (hereinafter "Oldcastle") in their respective Motions as follows:

1.    The Defendant Oldcastle filed a Motion to Continue and for an Alternate Trial Plan on August 15, 2003, (See Exhibit "A" attached hereto).

2.    Defendants, Young and Gilmer join with Oldcastle and support their Motion in light of the short time that Oldcastle has been in the case, and therefore would be prejudiced in its preparation for trial for the present setting on October 20, 2003. Defendants Young and Gilmer have a material interest in whether or not the quarry is closed down or limited in its

1

production as a result of any Court Order entered by this Court. Defendants Young and Gilmer assert that Oldcastle will be prejudiced by the insufficient time to prepare for trial as set out in said Motion of Oldcastle.

3.    Defendants Young and Gilmer further join with Defendant Hanson in its "Renewed Motion for Separate Trial and to Continue" (See Exhibit "B" attached hereto) with the exception that Young and Gilmer assert that Oldcastle should be a party to the trial for damages, even though they are not responsible for any damages prior to July 11, 2003. The Court has indicated that it will use the verdict in the trial in regard to damages as an advisory opinion of the jury for the Judge to use in the equity case regarding any injunction that might be issued, either to revise the method of operation by Oldcastle or to shut down the quarry completely. Otherwise, Young and Gilmer support the remaining allegations in Defendant, Hanson's said Motion.

Respectfully submitted,

**OF COUNSEL FOR DEFENDANTS:**
**VIRGINIA YOUNG PRIEST; JOHN CLAUDE**
**YOUNG, C/O VIRGINIA YOUNG PRIEST;**
**LOUISE YOUNG O'BRIEN; VIRGINIA HART**
**YOUNG; GILMER PROPERTIES, LTD.**

SAMFORD, DENSON, HORSLEY,
 PETTEY, BRIDGES & HUGHES
P.O. Box 2345
Opelika, AL  36803-2345
(334) 745-3504
FAX (334) 745-3506

JOHN V. DENSON
DEN007

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all Attorneys of Record in the above-styled cause, by mailing the same in U.S. Mail, postage prepaid, on this the 28 day of __August__, 2003, as follows:


James A. Byram, Jr.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

M. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092-3000

Guy F. Gunter, III
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0409

Mr. Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Charles E. Vercelli, Jr.
Suite 214, Union Station
300-B Water Street
Montgomery, Alabama 36104

James B. Sprayberry
Post Office Drawer 2429
Auburn, Alabama 36831-2429

John V. Denson

3

RECYCLED PAPER
RECYCLABLE

IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

1608

MIKE DAVIS, et al.,                    )
                                       )
       Plaintiffs,                     )
                                       )
vs.                                    )        CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC., et al.,               )
                                       )
       Defendants.                     )

**FILED**

AUG 1 5 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## MOTION TO CONTINUE AND FOR AN ALTERNATE TRIAL PLAN

Defendant Oldcastle, added by amendment on August 1, 2003, moves the Court to continue the trial of this case, which is currently set for October 20, 2003, and shows the Court as follows:

1.  Oldcastle purchased the assets of the Opelika quarry on July 11, 2003. Under applicable law, Oldcastle is in no way liable for Hanson's operation of the quarry. *Asher v. KCS International, Inc.*, 659 So. 2d 598, 599 (Ala. 1995) ("As a general rule, a purchasing corporation is not liable for the debts and liabilities of the selling corporation."); *Brown v. Economy Baler Co.*, 599 So. 2d 1 (Ala. 1992); *Andrews v. John E. Smith's Sons Co.*, 369 So. 2d 781 (1979).

2.  On August 1, 2003 the local quarry office was served, and on August 4, 2003. Oldcastle's agent for service of process was served with the Third Amended and Restated Complaint (the "amended complaint"). The undersigned was retained to represent Oldcastle on August 12, 2003.

3.  The amended complaint appears to seek injunctive relief against Oldcastle, as well as Hanson and the individual defendants, under counts 1 (nuisance), 2 (negligence), 4 (injunction]), and damages and

134934.1

injunctive relief against Oldcastle and the other defendants under count 5 (diversion of water). The amended complaint alleges that Oldcastle "is intending to and will continue the operations of the quarry under the same or similar conditions" as Hanson employed when it operated the quarry. The claims alleged in the amended complaint put Oldcastle in the position of having to evaluate factually and legally and potentially to defend numerous aspects of Hanson's operation of the quarry at issue in this litigation, yet Oldcastle did not participated in Hanson's operations, nor has Oldcastle been involved in any of the substantial fact and expert discovery conducted in this complex case.

4. In addition, the amended complaint adds count 6 against Oldcastle, which seeks (1) injunctive relief to shut down the quarry, (2) compensatory damages for Oldcastle's operation of the quarry, and (3) punitive damages for Oldcastle's operation of the quarry. Since acquiring the quarry assets, Oldcastle has conducted very limited operations on the property consisting of the sale of crushed stone out of existing inventory and conducting preliminary evaluations of the site and equipment to assist it in formulating a plan of operation on the site. Surely, Oldcastle is entitled to discovery from the plaintiffs concerning their claims against Oldcastle and to develop its factual and legal defenses to those claims. Yet, based on the current schedule, it is virtually impossible to complete this discovery by the September 22, 2003 deadline, not to mention preparing and filing motions for summary judgment, and other pre-trial and trial preparation.

5. From a limited review of the court file, and discussions with the attorneys of record, it is clear that this is an extraordinarily complex case. The undersigned is advised that this case is scheduled for 3-weeks of trial time for liability and damages issues, plus another, as of yet unscheduled, trial for the equitable remedy issues. The trial will involve:

- 12 individual plaintiffs

- 12 individual plaintiffs

- 7 other individual plaintiff/witnesses

- 2 or more witnesses for the City of Opelika

- 2 or more witnesses for the Opelika Utilities Board

- 1 or more witnesses for the Beauregard Water Authority

- 7 expert witnesses for the plaintiffs, including geology, hydrogeology, meteorology, blasting/construction, and medical fields.

- 8 or more non-party witnesses for the plaintiffs

- 2 or more representatives of Hanson

- 1 or more representatives of the Gilmer family defendants

- 1 or more representatives of the Young family defendants

- 9 expert witnesses for Hanson

- 7 or more non-party witnesses for defendants

6.  The undersigned is advised that this case involves extensive deposition and documentary discovery, including

- 5,724 pages of documents produced by Hanson

- 219 pages of documents produced by Beauregard

- 116 pages of documents produced by the Opelika defendants

- 42 depositions of parties and witnesses scheduled for the first trial

- hundreds of pages of documents produced by various non-parties

- interrogatory answers from all parties

- expert reports

Oldcastle did not participate in the depositions of any of these witnesses (including numerous expert witnesses) and is entitled to a fair opportunity to question witnesses who may be expected to testify at trial. In the limited time since it was served with the amended complaint and has engaged counsel to represent it in this action, Oldcastle has had no opportunity to review the voluminous discovery materials in the case or even to determine which of the anticipated witnesses it may wish to depose. Oldcastle also requires time to propound and receive responses to written discovery requests (including requests for the production of documents in order that it may have a fair opportunity to conduct any necessary depositions and otherwise prepare for trial.

7. The undersigned has now seen this court's order of August 11, 2003. This order provides that additional parties (Smith, Tankersly, and Swearington), additional theories of recovery (cost of new pool), and additional witnesses (Neil Hall) will be added to the case. This will obviously require more discovery between now and the September 22 discovery deadline. The undersigned is further advised that the lawyers for the plaintiffs and Hanson have identified at least 11 depositions that they desire to take before the September 22 discovery deadline.

8. In addition to the impossibility of preparing for a trial of this magnitude between now and October 20, Oldcastle is virtually precluded by the current setting from obtaining its own expert witnesses for trial or for technical expertise in preparing its defense. Moreover, the undersigned has seen the dye test report of Dr. Ralph Ewers, expert witness for Hanson, which concludes that plaintiffs' dye test was "improperly designed and executed" and that the purported results of plaintiffs' dye test "are not meaningful or reliable". Dr. Ewers' letter recommends that "[t]he dye test should be repeated, with proper and thorough design and implementation." Plaintiffs' dye test was conducted for 6 months before their expert

claimed a link between Little Uchee Creek and the quarry, in June 2002, and that test has never shown a connection between the spring and the quarry. Clearly Oldcastle needs more time to decide whether to conduct a dye test, and if so, to conduct the test.

9.    Although this case has been pending since February 2002, the Opelika and Beauregard plaintiffs were not added until October 2002, and, as shown, additional plaintiffs and this defendant have only recently been added to this case.

10.    Oldcastle submits for all of the foregoing reasons that it will be extremely prejudiced and will be denied due process of law if required to go forward with the trial of this case on October 20.

11.    Moreover, Oldcastle respectfully submits that the Court under Rule 42(b), A. R. Civ. P. could structure the trial of this case in such a way as to minimize the prejudice to Oldcastle, and still continue with the trial of some of the issues scheduled for October 20:

- a trial on October 20 of the individual plaintiffs' damage claims against Hanson for damages occurring up to the closing date of July 11, 2003. Oldcastle is not liable for these claims, and has no reason to be a party regarding these issues.

- a severance and separate trial date for the quarry dewatering claims, including the claims of the Opelika and Beauregard plaintiffs

Wherefore, premises considered, Oldcastle respectfully moves the court to continue the trial of this case, or, alternatively, to order separate trials of the individual plaintiffs' damage claims against Hanson and the injunctive relief and quarry dewatering claims against all defendants.

PHILLIP E. ADAMS, JR.
One of the attorneys for defendant
Oldcastle

134934.1                                    5

**OF COUNSEL:**

**ADAMS, UMBACH, DAVIDSON & WHITE, LLP**
**P. O. BOX 2069**
**OPELIKA, AL 36803-2069**
**Tel. (334) 745-6466**
**Fax (3340 749-3238**

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the _15_ day of August, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
 Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

_____
Of Counsel

134934.1                          6

Exhibit B

RECYCLED PAPER
RECYCLABLE

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
          Plaintiffs,                  )
                                       )
vs.                                    )          CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC., et al.,               )
                                       )
          Defendants.                  )


## RENEWED MOTION FOR SEPARATE TRIAL AND TO CONTINUE

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") moves the Court pursuant to *Ala.R.Civ.P.* 42(b) to order a separate trial of the hydrogeology claims, and to continue the trial of the hydrogeology claims. In support of this motion, Hanson shows the Court as follows:

1.     The claims of the individual plaintiffs for damages relating to quarry noise, dust, blasting, etc. are wholly unrelated to the hydrogeology claims.

2.     Oldcastle, which purchased the quarry assets as of July 11, 2003, is not liable for any damages the plaintiffs claim for quarry operations prior to that date, and for that reason, there is no reason for Oldcastle to be a party to the trial of the damage claims of those individual plaintiffs.

3.     As explained in the renewed motion for separate trial filed July 18, 2003, the plaintiffs' dye test has never revealed any connection between Spring Villa spring and the Hanson quarry, and did not purport to show any connection between the Little Uchee Creek and the Hanson quarry until June 24, 2003, less than a month before the scheduled trial. Hanson has retained a dye test expert, Dr. Ralph Ewers of Eastern Kentucky University. His preliminary report is attached as Exhibit A and incorporated by reference. In Dr. Ewers' opinion, the

134949.1

plaintiffs' dye test was "improperly designed and executed" and the purported results of plaintiffs' dye test "are not meaningful or reliable." Dr. Ewers recommends that the "dye test should be repeated, with proper and thorough design and implementation." Obviously, this cannot be done before the scheduled October 20 trial date. Indeed, plaintiffs' dye test was conducted for six months before the dye injected in Little Uchee Creek was allegedly discovered in the quarry discharge. Further, plaintiffs' dye test expert, when asked "how long do you think that these receptors should be monitored," said that dye "travel time could be a year or more." (Aley Depo. at 204)

4.    Another reason to sever the hydrogeology claims is that the Court recently allowed the plaintiffs to add three additional plaintiffs who only have hydrogeology claims. These plaintiffs are Donnie Smith, Mr. and Mrs. David Tankersly and Ken Schwiecker. (August 12, 2003 Order, ¶ 5)

5.    Also, the Court has decided to allow Lee County's Road Engineer to be a witness for the trial of the hydrogeology claims. (August 12, 2003 Order, ¶ 8)  Lee County is a party which should be joined pursuant to *Ala.R.Civ.P.* 19, if Lee County has a claim about the cost of repairing Spring Villa Road located near the Spring Villa Park and the property of newly added plaintiff Donnie Smith. Lee County is a necessary party if it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [Lee County's] absence may . . . (ii) leave [Hanson] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

6.    Moreover, the Court has now ruled that the City of Opelika may change its hydrogeology damage claim to increase that claim from $700,000 to nearly $4,000,000. (August 12, 2003 Order, ¶ 7) It is only fair that Hanson be given an opportunity to have discovery about

this new claim, and to have the opportunity to obtain rebuttal evidence concerning this enormous damage claim.

7.    The hydrogeology case is wholly unrelated to the quarry blasting, dust, noise, etc. claims, and involves very complex scientific testimony.  The plaintiffs have at least three geology or hydrogeology experts (Aley, Saunders, and Hicks), and Hanson has three geology or hydrogeology experts (Wood, Cook, and Ewers).  As stated, the dye test expert for Hanson, Dr. Ralph Ewers, strongly believes that the dye test should be performed again.

8.    Oldcastle also has the right to participate in the trial of the hydrogeology issues and to obtain evidence, discovery and independent expert advice regarding these claims.

9.    Hanson respectfully submits that all the hydrogeology claims should be resolved in one proceeding with all necessary parties.  The expense and risk of inconsistent verdicts from multiple trials of these issues is simply too great to proceed on October 20.

WHEREFORE, premises considered, Hanson moves the Court to sever and continue the hydrogeology claims and to proceed at the October 20 setting, if at all, with the individual plaintiffs' quarry blasting, dust, noise, etc. damage claims as of July 11, 2003.

Respectfully submitted,

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

1702

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 26th day of August, 2003:

James B. Sprayberry, Esq.
Attorney at Law
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL 36803-0409

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
 & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

Of Counsel

# EWC  *Ewers Water Consultants Inc.*



160 Redwood Drive, Richmond, Kentucky 40475
Phone & Fax (859) 623-8464    E-mail Address ewc@mis.net

July 10, 2003

James A. Byram, Jr.
Balch & Bingham LLP
P.O. Box 78 Montgomery, Al. 36106

By fax to 866-736-3863

Re: Davis, et al. v. Hanson, et al., Lee County, Alabama Circuit Court case no. CV 2002-0085

Dear Mr. Byram:

At your request I have reviewed the reports dated March 13, 2003 and June 24, 2003 and supporting information concerning Mr. Tom Aley's dye test relating to the Hanson Quarry, and I have also visited the site. According to Mr. Aley, three tracer dyes were injected on December 17, 2002:

(1.) rhodamine-WT (RWT) at the "sinkhole" on highway 166 west of the quarry;
(2.) fluorescein at the Spring Villa spring site; and
(3.) eosine into a "sinkhole" in the channel of Little Uchee Creek about 800 feet northwest of
 Spring Villa, both located northeast of the quarry.

Mr. Aley reported that sampling was suspended on March 27, 2003. At that time the only dye that had been detected was the RWT. Aley states that sampling was resumed on June 5, and when these samplers were pulled on June 12, eosine was detected for the first time, and RWT was also detected, both in the quarry discharge. The fluorescein dye was not detected.

You contacted me on June 30. I visited the site on July 7, and I have completed one analysis of a charcoal sampler that had been placed downstream of the quarry discharge for a period of one week.

In my professional opinion, Mr. Aley is premature and very possibly incorrect in concluding that eosine was detected by the June 5 sampling. It is well established that RWT will breakdown over time and produce a false eosine reading. That is especially likely given the amount of time since December 17, and the strong presence of RWT in the quarry discharge. I cannot conclude, based on my analysis of the charcoal sampler, that the dye is in fact eosine. Continued sampling and monitoring is required.

In addition, the dye test was improperly designed. It is entirely possible that the fluorescein dye injected at Spring Villa, and most or all of the eosine dye, went somewhere else. According to the topographic map produced by Mr. Aley showing his dye monitoring locations, he was not checking for the dyes at any place where the elevation was as low as the quarry, or indeed at any location, except the quarry, that was significantly lower than the water level in the throat of the Spring Villa at the time of the dye injection there. Thus, under the conditions at the time of the injection, water and dye would have had to travel uphill to reach any location except the quarry. Even if it is in fact eosine that was detected by Aley after June 5, that does not prove that the quarry captured the entire flow of the spring, it only means that some portion of the flow went to the quarry. The failure to recover fluorescein, the most dependable and most easily detectable of the groundwater tracing dyes, is most likely due to the experimental design. The failure to have sufficient properly located dye samplers is a critical problem making it impossible to know with reasonable certainty where the ground water travels.

It was also a critical error to have suspended monitoring from March 27 to June 5. This results in a significant lack of relevant data.

In my opinion the dye study was improperly designed and executed, and, accordingly, the results are not meaningful or reliable. The dye test should be repeated, with proper and thorough design and implementation.

I am fully qualified to give these opinions. A brief selected listing of my credentials is attached.

Very truly yours,

Ralph O. Ewers Ph.D.

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED
AUG 2 9 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK
1708

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO HANSON'S RENEWED MOTION FOR SEPARATE TRIAL AND TO CONTINUE

Plaintiffs respond to Hanson's Renewed Motion for Separate Trial and to Continue as follows:

1.     Hanson asserts that the individual Plaintiffs' claims for damages are unrelated to the hydrogeology claims.  Nothing could be further from the truth.  For example, several of the Plaintiffs claim that the quarry has caused sinkholes to form on their property, including the Bobby Parkers who had a sinkhole form on their property near the quarry, and the Clarks who had a sinkhole form on their property near the quarry. To state, therefore, that the hydrology claims are wholly unrelated to other claims is false.

2.     Hanson argues that Oldcastle, recently added because of its purchase of the quarry literally on the eve of trial, should not be a party to the damage claims.  Again, that is not correct.  Oldcastle is now operating the quarry.  For each day that it operates the quarry, damages accrue to the Plaintiffs.  Oldcastle is liable in damages to the individual Plaintiffs as well as Hanson. It is true that Hanson's liability for damages is far greater than that of Oldcastle at this time, but only because Oldcastle has only been operating the quarry for about a month and a half, as opposed to Hanson operating the quarry for

several years.  The sinkholes are continuing to form since Oldcastle purchased the quarry–and several new sinkholes have in fact formed.  The responsibility for these sinkholes is joint–Hanson and Oldcastle.  It is neither fair nor appropriate to grant separate trials when exactly the same expert testimony and virtually every witness will testify to exactly the same facts as they relate to both Hanson and Oldcastle.  It would be an extremely unwise use of judicial resources, and would impose a substantial financial burden on the Plaintiffs, to order separate trials.  Oldcastle is just as liable as Hanson for its continued operation of the nuisance, and Oldcastle needs to be shut down as an unreasonable public and private nuisance.

3.     Hanson alleges that the Plaintiffs' dye test has never shown a hydrologic connection between Spring Villa and the quarry and/or between Little Uchee Creek and the quarry, and asserts that their newly hired expert, Dr. Ralph Ewers, "recommends that the 'dye test should be repeated, with proper and thorough design and implementation'." The fallacies in Hanson's argument are (1) that Dr. Ewers does not say that Mr. Aley's conclusions **are** wrong, only that they might be wrong, and (2) that  Hanson could easily have conducted a similar dye test months ago.  That Hanson has voluntarily chosen to wait until the very last minute[1] to begin a dye test should not be allowed to operate the Plaintiffs' substantial prejudice by further delaying this trial.  This quarry is a severe public and private nuisance.  People are being hurt daily.  The roads in the area are unsafe.  And

---

[1]In fact, one Defendant, Mr. Charles Gilmer, watched part of the Plaintiffs' dye injection in December, 2002.  Hanson decided to pursue a dye trace only after positive results were obtained by the Plaintiffs in June and July of 2003.

2

within the last one to two months, new sinkholes on and under Spring Villa Road have formed due to the quarry operation. This case needs to go to trial now. These Defendants have had ample time to prove their case had they so desired. Their delaying tactics should not be condoned by this Court. Oldcastle purchased this quarry one week before the case was scheduled to go to trial. It should not be rewarded by knowingly buying a nuisance and then being able to operate it for months on end when the Plaintiffs' day in court was previously firmly scheduled.

4.     Hanson claims that by adding Plaintiffs Smith, Tankersley, and Schwieker, it needs time to "discover" their cases and, therefore, that it needs a continuance. Neither the Smith, Tankersley, nor Schwieker claims are going to be litigated during the first trial. It is true that the fact of sinkhole development on their properties will be litigated in the first trial. That is simply because the fact of those sinkholes is consistent with the continuing damage to all of the Plaintiffs, and the continuing public nuisance. The Plaintiffs do not seek, and these three Plaintiffs will not be awarded, damages for their problems during the first trial of this case. Moreover, Defendants' experts have already been on all three of these Plaintiffs' lands, and they have documented and examined all these sinkholes. This is a spurious reason, therefore, to assert an additional reason for continuance.

5.     Hanson complains that Lee County should be added as a party or that Lee County's road engineers should not be allowed to testify. Hanson is attempting to divert the Court's attention from the true issue. The true issue is whether this quarry is a

3

nuisance. Plaintiffs do not seek, and the Court will not allow, claims for damages for Lee County. What is significant is that the problem with the roads is a serious and dangerous nuisance. In point of fact, Spring Villa Road, Lee Road 166, and the pipeline are in danger of collapse which may well cause serious if not fatal injuries to the motoring public. These facts are significant, relevant, and admissible parts of Plaintiffs' case that the quarry is a public nuisance. To disallow evidence of this very serious harm to the public would be to limit a substantial portion of Plaintiffs' case and would unfairly and inappropriately cause the Plaintiffs to be unable to assert all of the reasons that the quarry should be shut down, and all of the reasons that the jury should consider to decide whether the quarry is a public and/or private nuisance. This is no more than a tactic by Hanson to try to stop some of the very damaging evidence in an effort to mislead the jury by withholding relevant and important facts from its consideration. This therefore is no just reason for delay or separate trial.

6.    Hanson complains that the City of Opelika is increasing its damages claim. The City of Opelika did in fact send to Hanson a memo listing in detail its anticipated future losses. That, however, does not increase Opelika's claim. It merely puts pen to paper and lists the claims in a certain specified amount. The same claims were available with or without the production of that memorandum. More importantly, Hanson has now had over a month and a half to discover this claim, and still has not taken the deposition of Mr. Harrelson or submitted interrogatories to the Plaintiffs regarding this claim. If this claim were as hard to defend as Hanson suggests, why has Hanson done absolutely

4

nothing to discover this claim? To the contrary, the Plaintiffs have repeatedly offered to put up Mr. Harrelson for deposition testimony (again, as he was deposed once), and Hanson has never indicated that it needs any other discovery on this issue other than the deposition of Mr. Harrelson. Therefore, this ground for separate trial and continuance is also spurious.

7. Hanson again reasserts that the hydrogeology claims (in other words, the formation of sinkholes in and around the area) is wholly unrelated to the other claims of blasting problems, noise, dust, and so forth. He also alleges that it is "very complex scientific testimony". This misstates and mischaracterizes the case. Sinkhole formation is extremely simple. In a limestone terrain, where the water table helps support the land above and the limestone is water soluble, to take away the water creates voids, and the voids can no longer hold up the surface, causing collapses known as sinkholes. It is really very simple. Defendant Hanson wants to make it difficult and complex, but the fact of the matter is that every expert in the United States recognizes that limestone terrain is subject to sinkhole development whenever substantial pumping of groundwater exists. There are innumerable instances of this in the literature, and not even Defendant Hanson's own experts can deny this fact. The fact that Hanson has multiple hydrogeology experts and that the Plaintiffs have one hydrogeology expert (not three; the other two are "drought" and "geology" experts) does not mean that it is a complex scientific issue–merely that the parties have chosen different people to explain different aspects of the problem. The case is not terribly scientifically complex, but, to the contrary, a jury will easily be able to

5

understand this evidence. That evidence is also entirely related to the other problems with the quarry inasmuch as all of these problems need to be addressed by the same jury if that jury is to be allowed to make a proper and valid decision whether the quarry is or is not a public nuisance based upon all of the facts, and not simply those facts that Hanson wants to present to the jury.

8.      Hanson asserts on behalf of Oldcastle that Oldcastle has the right to participate in the trial and should be allowed time to obtain evidence and so forth. Again as before, this is a misleading statement. Oldcastle bought this quarry one week before the case was scheduled for trial. Oldcastle had been negotiating with Hanson for the purchase of the quarry for many months. In point of fact, the purchase agreement also provides expressly that there is a joint defense agreement, and we are absolutely confident that Oldcastle already had access to all of the information about the evidence and discovery in the case, including expert testimony. Even if Oldcastle did not choose to learn all of that information in advance, Oldcastle's lack of diligence by failing to obtain such information should not be used against the Plaintiffs by continuing this case again.

9.      Paragraph 9 of Hanson's Motion is simply a restatement of its prior statements. To claim that there is an increased risk of inconsistent verdicts from multiple trials is true–and counsels in favor of not separating this case. Multiple trials of these different claims is absurd. All of these claims go to the question whether the quarry is or is not a public and private nuisance, and all are relevant to one another. To separate any of the claims would be very detrimental to the Plaintiffs' ability to prove their case, would

6

mislead the jury, and would ensure that the jury would not be given all of the facts and evidence upon which to base a decision.

**WHEREFORE**, Plaintiffs move this Honorable Court to deny Hanson's latest attempt to delay the case and to deny Hanson's continuing stall tactics.

**CHARLES E. VERCELLI, JR.** (VER003)
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                          John V. Denson
Matt Parnell                                 Samford, Denson, Horsley, Pettey
Balch & Bingham, LLP                           & Bridges
P.O. Box 78                                  P.O. Box 2345
Montgomery, AL 36101                         Opelika, AL 36803-2345

H. Wayne Phears                              Phillip E. Adams, Jr.
Phears & Moldovan                            Adams, Umbach, Davidson & White, LLP
Suite 375                                    P. O. Box 2069
4725 Peachtree Corner Circle                 Opelika, AL 36803-2069
Norcross, GA 30092-3000

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the 28th day of ___August___, 2003.

_____
OF COUNSEL

155-00\Ps'Resp-HanRenewMotSepTrial.3.wpd

8

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED

SEP 0 3 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, et al.,                    )
                                       )
            Plaintiffs,                )
                                       )
v.                                     )
                                       )   CIVIL ACTION NO. CV-02-85
HANSON AGGREGATES SOUTHEAST,           )
INC., et al.,                          )
                                       )
            Defendants.                )
                                       )

## ANSWER TO PLAINTIFFS' THIRD AND FOURTH
## AMENDED AND RESTATED COMPLAINTS

Hanson Aggregates Southeast, Inc. ("Hanson") responds to the Plaintiffs' Third Amended and Restated Complaint ("Third Complaint") and Plaintiffs' Fourth Amended and Restated Complaint ("Fourth Complaint") as follows:

1.   Hanson adopts by reference its Answer to Plaintiffs' Second Amended and Restated Complaint ("Second Complaint"), filed on June 19, 2003, and reasserts the responses to the individual paragraphs of Plaintiffs' Second Complaint and the affirmative defenses asserted therein as if set out here in full.

2.   In answer to the newly added separately numbered paragraphs in Plaintiffs' Third Complaint, Hanson avers as follows:

### COUNT SIX

### (Claims against Oldcastle)

109.   Hanson is without sufficient knowledge to either affirm or deny the allegations contained within Paragraph 109, therefore, those allegations are denied.

135543.1

110.    Denied, except than Hanson admits that Oldcastle has assumed control of the Lee County quarry.

111.    Denied.

112.    Hanson is without sufficient knowledge to either affirm or deny the allegations contained within Paragraph 112, therefore, those allegations are denied.

113.    Hanson is without sufficient knowledge to either affirm or deny the allegations contained within Paragraph 113, therefore, those allegations are denied.

114.    Denied.

115.    Denied, except that Hanson admits that Oldcastle had knowledge of this lawsuit at the time it purchased the assets of the quarry.

116.    Hanson is without sufficient knowledge to either affirm or deny the allegations contained within Paragraph 116, therefore, those allegations are denied.

Hanson denies the allegations contained in the unnumbered "wherefore" paragraph following Paragraph 116 and denies that Plaintiffs are entitled to any of the relief sought therein.

3.    In answer to the newly added separately numbered paragraphs in Plaintiffs' Fourth Complaint, Hanson avers as follows:

# COUNT SEVEN

## (Additional Parties Plaintiff)

116.    Hanson adopts by reference its answers to Paragraphs 1-115 of the complaint.

117.    Denied, except that Hanson admits that Donnie Smith owns property adjacent to Spring Villa Road.

118.    Denied, except that Hanson admits the second sentence.

119.    Denied, except that Hanson admits that the Schwiekers own property north of Spring Villa Road which is adjacent to Utilities Board property and Little Uchee Creek, and that Hanson's expert has previously examined the Schwieker's property.

Hanson denies the allegations contained in the unnumbered "wherefore" paragraph following Paragraph 119 and denies that Plaintiffs are entitled to any of the relief sought therein.

4.    In addition to the affirmative defenses asserted in Hanson's Answer to Plaintiffs' Second Complaint, Hanson asserts the following affirmative defenses:

### Thirty-First Defense

Hanson pleads lack of subject-matter jurisdiction as to Plaintiffs' claims for equitable relief against Hanson.

### Thirty-Second Defense

Hanson pleads the doctrine of mootness as to Plaintiffs' claims for equitable relief against Hanson.

135543.1

3

1715

### Thirty-Third Defense

Plaintiffs' claims for equitable relief against Hanson do not present a justicable case or controversy.

### Thirty-Fourth Defense

Plaintiffs' claims for equitable relief against Hanson are barred as adequate remedies for Plaintiffs' claims exist at law.

DATED this the _2_ day of September, 2003.

_____
One of the Attorneys for Defendant
Hanson Aggregates Southeast, Inc.

**OF COUNSEL:**

James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

H. Wayne Phears, Esq.
Phears & Moldovan
4725 Peachtree Corner Circle
Suite 375
Norcross, Georgia  30092

135543.1

4

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by United States Mail, properly addressed and postage prepaid, on this the ___2___ day of September, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Charles E. Vercelli, Jr., Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, Alabama 36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

Of Counsel

135543.1

5

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )    Civil Action No. CV-02-0085 |
| | ) |
| HANSON AGGREGATES SOUTHEAST, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

**FILED**

SEP 0 3 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### PLAINTIFFS' RESPONSE TO OLDCASTLE'S MOTION TO CONTINUE AND FOR ALTERNATE TRIAL PLAN

Plaintiffs respond to Defendant Oldcastle's Motion Continue and for an Alternate Trial Plan as follows:

1.     This case was set for trial on October 20, 2003, after being continued at least twice before.  The order setting trial for July 21, 2003, was dated January 16, 2003.

2.     Quarry sales and purchases do not happen overnight.  Substantial time and effort by both seller and buyer are spent on the transaction, and the concept of "due diligence" requires a purchaser to thoroughly investigate the operation and all assets and liabilities of the selling operation before finalizing an agreement to purchase the quarry.  It is inconceivable, therefore, that Oldcastle did not know about this lawsuit and the impending trial.  Oldcastle cannot and does not argue the contrary.

3.     Moreover, that Oldcastle was well aware of the lawsuit and impending trial is proved by reviewing the Asset Purchase Agreement, a copy of which is attached as Exhibit A hereto.[1]

---

[1] Hanson filed this document, or parts of it, "under seal."  However, there is no court order requiring that document to be filed under seal, and to ensure that the entire agreement is before the Court, it is attached hereto in the form received by the Plaintiffs.

Numerous paragraphs make specific reference to the *Davis vs. Hanson* lawsuit, including, without limitation, paragraphs:

- 1.3.2, which specifies that the parties are entering into a Joint Defense Agreement with Hanson's attorneys (so that Oldcastle does have the means to defend itself in this trial);[2]

- 1.3.3, which incorporates the JDA;

- 2.8, which recognizes that the *Davis* suit might constitute a default under the Young and/or Gilmer leases;

- 2.9, which references compliance or not with state and federal laws;

- 2.12, which recognizes that if Plaintiffs prevail, Hanson may be "in material violation of the Environmental, Health, and Safety Laws" of the country;

- 2.13, titled "Litigation", and which expressly recognizes that the *Davis* suit is seeking an injunction;

- 5.1.1, Seller's Indemnity, which implicitly recognizes that if the Plaintiffs prevail, some form or recourse–buried in the JDA– would be available to Oldcastle; and

- 5.1.4, Limitations Period, which again references the JDA and, therefore, the *Davis* suit.

4.    Indeed, Oldcastle does not even argue in its motion that it did not have full and complete knowledge of the litigation and the impending trial to shut down the quarry as a public and

---

[2] Hanson did not produce the JDA even though it is expressly made part of the Asset Purchase Agreement. Plaintiffs have moved for the production of that document as it clearly affects the parties' relationship and, therefore, the parties' credibility at trial.

2

private nuisance. Instead, Oldcastle's entire argument for continuance and "alternate trial plan" is based upon its local attorney's inability to prepare for trial on short notice.

5.    This argument fails for several reasons.

One, as shown in the Asset Purchase Agreement, Oldcastle purchased the quarry when it did not have to. It purchased it days before a trial of a case pending for over 1 ½ years. Moreover, it purchased the quarry after conducting "due diligence" that obviously began as early as the first quarter of 2003. This is shown at paragraph 2.15 ("Recent Events"), which requires no material adverse change in the operation since "December 31, 2002". This clearly means, as anyone familiar with purchases of businesses would know, that Oldcastle began inquiring into this specific quarry not later than the first quarter of 2003, when it received and relied upon the "books" as of December 31, 2002. Had the investigation begun later, Oldcastle would have relied upon the books as of a later date.

Two, Oldcastle knowingly purchased the quarry in the midst of litigatio and literally on the eve of an extended and expensive trial. That situation is most analogous to the Rule 25(c) "substitution of parties" and "transfer of interest" law, which expressly provides:

> "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

Ala. R. Civ. App. 25(c). In such cases of substitution, "the case stands as if the substituted defendant had been made the defendant originally. In other words, the substitution of parties is given the same

effect as if the action had been originally commenced in the name of the real party." AM. JUR. 2D, *Proceedings after Substitution*, section 359.[3]

Three, the *Davis* suit, of which Oldcastle was fully aware, was not merely a claim for money damages from Hanson. Even a cursory review of the Court's file would show (and Oldcastle's motion admits) that the case was specifically intended to shut down the quarry as an unreasonable and dangerous public and private nuisance. This is significant because Oldcastle should not now be allowed to continue the nuisance, at great expense to the Plaintiffs and significant danger to the public,[4] while it re-litigates months worth of time and effort of the parties, most especially the Plaintiffs. Had Oldcastle desired, it certainly could hav[5]e intervened under Rule 24(a)

---

[3]

Admittedly, this section is not directly on point. However, no legal treatise of which we are aware is directly on point. Indeed, despite 6-7 hours of Lexis research, and the assistance of Lexis research attorneys, Plaintiffs could find no Alabama state or federal case closely on point on the facts or law. Therefore, this issue may be one of first impression in Alabama.

[4]

The danger to the public is real and is imminent. Neal Hall, Lee County Engineer whose deposition will soon be taken, has advised Plaintiffs' attorneys that the Highway Department has core-drilled Spring Villa Road just west of the Spring Villa site and south-southwest of the section of the Little Uchee Creek that has collapsed and gone underground. The drilling has determined that a cavern has developed under the section of the road that has already collapsed in part once and near where three large sinkholes have formed immediately adjacent to the road. The highway is, therefore, now dangerous to the motoring public. The only way to stop this danger is to shut down the quarry and allow the groundwater to return to pre-quarrying levels. Plaintiffs urge the Court not to continue the case–a terrible motor vehicle accident could occur in the vicinity of Spring Villa Road and Highway 166 where a 25' wide, 20' deep sinkhole already developed and re-formed.

[5]

Arguing that Oldcastle's attorneys cannot be prepared for trial, after wasting one month of available time, is a little disingenuous given that it was represented during the purchase, and now in this litigation, by the prestigious Gibson, Dunn & Crutcher law firm that "is honored to be named by the *American Lawyer* as one of 'The Best Litigation Departments of the Year.'" Oldcastle's New York attorney, Jack Weiss, is one of "approximately 800 attorneys in 12 locations worldwide" for that

4



or (b), and most assuredly, the Court would have granted intervention. Had Oldcastle intervened when it first purchased the quarry, it would then have had more than 4 full months to prepare the case–which was already virtually fully prepared by Hanson's attorneys *with whom Oldcastle has a joint defense agreement.* Instead, to Plaintiffs' great detriment, it sat on this available right, chose not to intervene in order to argue for a later continuance, and stalled for over one month of its available trial preparation time before it decided to employ local counsel. Local counsel most assuredly could have been hired before the quarry was purchased or within days thereafter. Is there any doubt that Oldcastle was fully aware of the lawsuit and that it and its many New York lawyers can and doubtless did investigate the *Davis* suit fully before Oldcastle purchased the quarry? Can it really be doubted that they haven't already been preparing for trial on the chance the Court denies Oldcastle's motion? Moreover, given the clear superiority among law firms of the Gibson Dunn litigation department,[6] there is little doubt but that Oldcastle can in fact be prepared to try the case

---

firm. And, significantly, "complex commercial litigation is a major area of practice at [his] firm[] and [m]ore than 250 of the firm's lawyers specialize in trial, arbitration and appellate practices." *See* Mr. Weiss' firm's Martindale Hubbell information printed from the Internet and attached hereto.

[6]

> "Gibson, Dunn's trial practice is enhanced by first-rate case management support and technology resources. Gibson Dunn attorneys utilize technology in a manner which not only enhances their practice, but reduces the cost of litigation. Our trial technology includes the latest systems available for document storage, retrieval and imaging. We provide our clients dedicated extranet capabilities where they can access relevant case information and share documents on secure sites developed specifically for each case. These technology tools allow us to avoid reinventing the wheel; when we begin work on a new case, we are able to access a vast data base of research, writing and analysis, and thereby deliver the highest quality work product as efficiently as possible."

Gibson Dunn "Full Practice Description" page 2 of 2 (attached hereto) [printed from the Internet].

in October as scheduled–especially since the equally prestigious Balch & Bingham law firm is already virtually ready for trial.

Fourth, the issue is whether, when a party buys the assets of a defendant to a pending lawsuit seeking to enjoin the operation of the business, the new owner is entitled to a continuance. There is an absence of any Alabama state or federal case law on point. The closest cases we could find were simply those construing parties' motions to continue the trial of cases. The law is solidly of one conclusion: the question whether to continue is left to the sound discretion of the trial court, whose judgment will not be disturbed on appeal absent proof of a "gross abuse" of that discretion. *E.g., City of Birmingham v. Banks,* 228 Ala. 295, 153 So. 189 (Ala. 1934); *World Homes, Inc. v. Wilson,* 54 Ala. App. 47, 49, 304 So.2d 603 (Ala. Civ. App. 1974) ("Continuances are not favored and discretion is vested in the trial court as to granting or denial. The reviewing court will not revise the exercise of such discretion except upon a showing of gross abuse. *Shores v. Sanders*, 271 Ala. 552, 126 So. 2d 201."); *Selby v. Money,* 403 So. 2d 218 (Ala. 1981) ("It is firmly established in Alabama that continuances are not favored, and therefore the trial court's denial of a motion for continuance will not be reversed unless palpable or gross abuse of discretion is shown.') (citations omitted); *D.&J. Mineral & Mining, Inc. v. Wilson*, 456 So.2d 1099 (Ala. Civ. App. 1984). The last case cited, *D.& J.,* is doubly interesting because is notes that, with respect to a continuance, "facts known to the attorney are considered known to his client." Here, For the months-long process of buying the quarry, Oldcastle had actual or constructive knowledge of the pending trial.

A rather complicated federal case construing the right to continuance was Arabian American Oil Co. v. Scarfone, 23 Fed. R. Serv.3d, 939 F.2d 1472 (11th Cir. 1991), where the Eleventh Circuit stated (last page of attached opinion):

6

"Appellant contends that the district court erred in denying his motion for a continuance after permitting his attorney to withdraw two day prior to trial A layer's withdrawal does not afford a party an absolute right to a continuance. ... Rather, the grant of a continuance is within the trial court's sound discretion. ...

"The exercise of discretion by the trial court will be disturbed only in extreme cases in which it clearly appears that the moving party was free of negligence."

Certainly, Oldcastle is not free of negligence. It is represented by one of the very best law firm's in the English speaking world, that firm assisted it in purchasing the quarry with full knowledge of the impending trial to shut down the quarry, and that firm is imminently qualified to prepare the case for trial, as it doubtless already is.

**Wherefore,** for good cause shown, Plaintiffs oppose Defendant Oldcastle's motion to continue the case as well as the motions joining the same filed by Hanson and the Gilmer/Young defendants.

_Charles E. Vercelli_
_____
**CHARLES E. VERCELLI, JR.** (VER003)
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
 & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by faxing a copy of the same to each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the ___3___ day of ___Sept___, 2003.

_____
OF COUNSEL

155-00\P Resp Oldc m-cont.5.wpd

8

*FILED*

SEP 0 3 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                           *
          Plaintiff,              *
v.                                            *          CASE NUMBER: CV-02-85
                            *
                            *
HANSON AGGREGATES SOUTHEAST,                   *
INC., et al.                                   *
          Defendants,             *

### PLAINTIFF'S FOURTH MOTION TO COMPEL

The Plaintiffs would show this Court that:

1) On August 1, 2003, this Court approved the substitution of Oldcastle Materials as a Defendant in this litigation.

2) On August 1, 2003, Oldcastle was served by a process server with a copy of the Summons, Complaint, and Discovery. The Discovery included a notice for the deposition of the Corporate Representative, which was noticed for Friday, September 5, 2003. The deposition notice is in the Court file.

3) On August 27, 2003, the attorneys for Hanson, Oldcastle, the Gilmers/ Youngs, and the Plaintiffs had a conference phone call. Approximately, twelve (12) potential days were discussed for depositions. The attorneys for Oldcastle, Phil Adams, and Jack Weiss, (of New York), indicated that they wanted to make a joint appearance on some or all of the depositions. The only date available where they both could attend, was October 3, 2003.

4) The Plaintiffs had contacted Tom Aley, the Plaintiff's dye expert, and had offered September 18, 2003 as a second full day to continue his deposition. The attorneys for Oldcastle indicated that was not a convenient date and Mr. Aleys' second deposition has not been scheduled.

5) There are still approximately eight (8) witnesses for the Plaintiff's and, counting

the Corporate Representative of Oldcastle, there are approximately four (4) witnesses for the Defendants yet to be deposed.

6) During the last eighteen (18) months or so, parties have taken approximately fifty (50) depositions. Hanson has rotated Mr. Byrum, Mr. Walker, and Mr. Clark in as attorneys during the various depositions. The Young/Gilmer defendants have rotated Mr. Denson and Mr. Jackson in on depositions. The Plaintiff's have rotated Mr. Gunter, Mr. Sprayberry and Mr. Vercelli in on depositions. There is no reason that Oldcastle cannot rotate between two (2) or more attorneys for the depositions. In this regard, note that Mr. Adams' firm has 4 lawyers and Mr. Weiss' firm has "approximately 800" lawyers, over 250 of which are the "top litigators" in the world (according to Mr. Weiss' firm resume on www.martindalehubbell.com) [copies attached].

7) All attorneys in attendance at the Friday, September 5 hearing have been asked to have immediate access to their calenders in order to schedule depositions. However, it appears that may not be feasible as outlined above.

8) The phone conference was followed up with a written memo from Mr. Vercelli, dated August 27, to the various attorneys. However, the written and telephonic communication will not resolve the deposition issue.

WHEREFORE, the Plaintiffs request an Order compelling the Defendant, Oldcastle, to make the Corporate Representatives available for immediate deposition.

This 3 day of September, 2003.

OF COUNSEL:

CHARLES VERCELLI, JR., (VER003)
*Co-Council for Property Owners*
1019 S. Perry Street

JAMES B. SPRAYBERRY (SPR008)
*Co-Council for Property Owners*
Post Office Drawer 2429

1728

Montgomery, AL 36104
(334) 834-8807

Auburn, Alabama 36831-2429
(334) 821-7100

GUY GUNTER
*Council for City of Opelika/ Opelika Water Board*
P.O. Box 409
Opelika, Alabama 36801
(334) 745-6288

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the _3_ day of September, 2003.
*and fax*

James A. Byram, Jr., Esq.
Dorman Walker, Esq.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

John Denson, Esq.
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

Phil Adams, Esq.
Adams, Umbach
Post Office Box 2069
Opelika, AL 36803-2069

James B. Sprayberry

Case 3:06-cv-00838-MEF-TFM   Document 34-4   Filed 09/07/2007   Page 41 of 175
Sep 06 2006 ...   ...es Dever...Pitt, Jr.   334   347 8807   P. 2

Page 2 of 15

1729

# martindale.com
# Lawyer Locator

Careers | Terms of Use | Services | Products | Contact Us | About Us | Site Info | Home | Quick

**Lawyer Locator**
Search Lawyer Locator
❑ By Lawyer
  By Location/Area of Practice
  By Firm
  By Corporate Law Departments
  By US Government
  By US Law Faculty
Join the Legal Network
Request a Listing
About Lawyer Locator

**Legal Articles**

**Dispute Resolution**

**Experts and Services**

**Legal Personnel**

**Legal Careers**

**Professional Resources**

**Customer Service**



LexisNexis
Martindale-Hubbell®

FEEDBACK ))

More resources...
❑ lawyers.com
❑ Practice Development Center
❑ Counsel to Counsel Forums
❑ corporate.martindale.com
❑ eAttorney
❑ LexisNexis™
❑ LawCommerce.com℠
❑ LawyerLocator.Co.Uk
❑ Anwalt24.de

## Search the Lawyer Locator

New Search

**Gibson, Dunn & Crutcher LLP**
200 Park Avenue
New York, New York 10166-0193
(New York Co.)
Telephone: 212-351-4000
Telecopier: 212-351-4035; 212-351-4018
Web Site: http://www.gibsondunn.com

---

**Firm Credentials**

**Statement of Practice:**
General Corporate and Complex Litigation, including Antitrust and Trade Regulation, Accountants' Liability, First Amendment, Insurance and Reinsurance, Criminal Defense, Securities Enforcement, Securities Litigation, SEC Compliance, Mergers and Acquisitions, Joint Ventures, Capital Markets, Private Equity, Executive Compensation, Federal and International Taxation, International Business, Bankruptcy and Restructuring, Global Finance, Structured Finance, Project Finance, High-Yield Debt, Real Estate, Latin America.

**Year Established:** 1890

**Firm Profile:**
With approximately 800 attorneys in 12 locations worldwide, Gibson, Dunn & Crutcher ("Gibson Dunn") is distinctively positioned for doing business in today's global marketplace.

Consistently ranked among the world's top law firms in industry surveys and major publications, Gibson Dunn representative clients include some of the world's largest multinational corporations in all major industries, leading government entities, commercial and investment banks, start-up ventures, emerging growth businesses, partnerships and individuals.

New York, New York Office Profile: With approximately 150 lawyers in the New York office, we are a major participant in the New York legal community, serving both domestic and foreign corporations and individuals. Our corporate practice focuses on negotiated mergers and acquisitions, public and private financings, including bank financings, underwritten debt and equity offerings and complex asset securitization and lease and project financings, real estate, tax, executive compensation, and restructuring and insolvency. The firm's Latin America Practice is located in New York. Litigation strengths include accountants' liability, media/First Amendment law, securities, antitrust, white collar, insurance and reinsurance, intellectual property and general commercial litigation.

**Firm Size:** 750

Case 3:06-cv-00988-MEF-TFM   Document 34-4   Filed 03/07/2007   Page 42 of 175
Gibson Dunn - Full Practice  Description - Litigation (Practice)          Page 1 of 2

1790

## GIBSON, DUNN & CRUTCHER® LLP

INSIDE GIBSON DUNN     PRACTICES     ATTORNEYS & PROFESSIONALS     RECRUI

*Gibson Dunn enjoys a rare place
among the world's leading law firms*

Attorneys &
Professionals

Practices     Practice Detail

### Litigation

Gibson, Dunn & Crutcher is honored to be named by the American
Lawyer as one of "The Best Litigation Departments of the Year." The
members of our Litigation Practice Group are not just litigators, they
are first-rate trial lawyers. Each year, we try numerous cases to
verdicts before juries, judges and arbitrators. Our clients have trusted
us to try their most significant disputes to verdict, and we believe our
trial win-loss record is unsurpassed. We have tried cases and argued
appeals before the U.S. Supreme Court and state supreme courts in
addition to federal and state courts across the country involving
almost every foreseeable area of controversy. We also handle disputes
before a wide variety of non-judicial forums from federal and state
agencies to international arbitrations.



Complex commercial litigation is a major area of practice at the firm.
More than 250 of the firm's lawyers specialize in trial, arbitration and
appellate practices. Our litigators have represented clients in cases
involving securities fraud, antitrust, breach of contract,
telecommunications, administrative law, accountancy defense, real
estate, partnership disputes, intellectual property, employment
discrimination, employee benefits, environmental, entertainment,
insurance coverage and bad faith, white collar crime, oil and gas,
public contracts, land use, water law, unfair competition and business
torts, and lender liability issues, among many others. Many of these
cases have included class action claims and involved hundreds of
millions of dollars in alleged damages. Consistent with the strength of
Gibson, Dunn & Crutcher, our litigators work closely with lawyers
throughout our offices and in other practice groups to meet the
demands of our clients.

Gibson Dunn's approach to litigation emphasizes the full spectrum of
services for our clients. Our litigators are trained to evaluate actual
and potential litigation at the earliest stages, to first determine if
litigation can be avoided, or, if it is filed, whether the matter can be
resolved quickly and economically. We pride ourselves on handling
our litigation matters as efficiently as possible. For the largest cases,

FILED 1731

SEP 0 3 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    *
                    Plaintiff,         *
v.                                     *        CASE NUMBER: CV-02-85
                                       *
                                       *
HANSON AGGREGATES SOUTHEAST,           *
INC., et al.                           *
                    Defendants,        *

## PLAINTIFF'S FIFTH MOTION TO COMPEL

The Plaintiffs would show this Court that:

1) The Plaintiffs had filed previously their Fourth Interrogatories and Request for Production on Hanson Aggregates.

2) Hanson previously produced some documents and timely filed objections on others.

3) The Plaintiffs filed a Motion to Compel asking this Court for a copy of the buy, sell or asset purchase agreement between Hanson Aggregates and the buyer of the Opelika quarry.

4) At the hearing on Friday, August 1, this Court ordered Hanson to produce the agreement, with financial information redacted, within 10 (ten) days.

5) By cover letter dated August 11, the attorney's for the Plaintiffs received the asset purchase agreement date stamp number 5351 through 5379, which was also stamped "subject to stipulated protective order".

6) However the Joint Defense Agreement (hereinafter referred to as "JDA") was not produced. The cover letter indicated that it was privileged and confidential under Rule 502 of the Alabama Rules of Evidence.

7) However the asset purchase agreement cannot be read in its entirety and is not

a complete document without the JDA.   Paragraph no. 7.6, indicates the "agreement and the schedules hereto and thereto and the other documents delivered hereunder constitute the full and entire understanding and agreement between the parties.....".  The JDA was one of "other documents delievered".

8) It appears that the JDA may be executed by Hanson Aggregates and by Oldcastle and not by their attorneys.   Rule 502 does not apply in such cases. 502 (b) (3) would be closet to this situation, but it does not apply.

9)  If the JDA would tend to show bias or a vested interest by a witness or party, then the Plaintiffs are entitled to a copy of the JDA for use as impeachment.

10) It also appears that the JDA maybe more similar to communications between an insured and the insurance company.  The Alabama Rule 502 adopts the position that the insured communications to the insurer are not privileged under Rule 502 (b) (4).  Under 502 the burden is also upon the party asserting the privilege to prove it.

11) Finally, the Asset Purchase Agreement mentions that there are various indemnity provisions, one related to the outcome of this lawsuit.  However, the agreement as produced does not say what the indemnity obligation of Hanson is.  Rather, it references the JDA, which obviously controls the indemnity question.  See paras. 1.3.2, 1.3.3, 2.12, 5.1.1 (Seller's Indemnity.  "Seller hereby agrees to indemnify, defend and hold Buyer,. . ., harmless from and against any and all claims, losses, demands, judgments, liabilities, costs and expense . . . of every kind and nature . . . to the extent arising out of or relating to or resulting from:   . . .  (ii) any pre-closing activity or event involving the Real Property of the Business . . . *except as set forth in the JDA*;").  Consequently, it is impossible to understand the true indemnity obligations, which clearly affect the bias and interest of the

1783

Defendants, without knowing the contents of the JDA.

WHEREFORE, the Plaintiffs move this Court for an Order that would compel

production of the joint defense agreement even if not admissible at trial.

This 3 day of September, 2003.

OF COUNSEL:

CHARLES VERCELLI, JR., (VER003)
Co-Council for Property Owners
1019 S. Perry Street
Montgomery, AL 36104
(334) 834-8807

JAMES B. SPRAYBERRY (SPR008)
Co-Council for Property Owners
Post Office Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

GUY GUNTER
Council for City of Opelika/ Opelika Water Board
P.O. Box 409
Opelika, Alabama 36801
(334) 745-6288

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been
provided to the following, by first class mail, on this the 3 day of September, 2003.

JAMES A. BYRAM, JR., ESQ.  and by Fax
Dorman Walker, Esq.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

JOHN DENSON, ESQ.
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

PHIL E. ADAMS, JR., ESQ.
Adams, Umbach, Davidson & White, LLP
Post Office Box 2029
Opelika, AL 36803-2069

H. WAYNE PHEARS
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000


James B. Sprayberry

1780

## IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,         )
                              )
      Plaintiffs,         )
                              )
vs.                          )     CASE NO. CV-02-85
                              )
HANSON AGGREGATES     )
SOUTHEAST, INC., et al.,    )
                              )
      Defendants.       )

**F I L E D**

SEP 0 3 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## MOTION BY DEFENDANT OLDCASTLE MATERIALS, INC.
## FOR SCHEDULING CONFERENCE

COMES now Oldcastle Materials, Inc., a Defendant in the above-styled case, and pursuant to the provisions of Rule 16 ARCP moves the Court to schedule a conference with the attorneys for the parties for the purpose of establishing a schedule for this Defendant to conduct discovery, identify experts, file motions for summary judgment, and other matters as set forth in Rule 16, and as grounds for said Motion shows unto the Court as follows:

1. That this action was originally filed on January 12, 2002.

2. This Defendant was not named as a Defendant in this case or served with process until August 1, 2003.

3. Prior to this Defendant being named as a party defendant or served this Court had held a scheduling conference with all named parties and their attorneys and entered a scheduling order establishing cutoff for discovery, naming of experts, a pretrial conference and a trial date.

4. After this Defendant was served on August 1, 2003, this Defendant learned that many of the dates established by this Court in its scheduling order were about to pass or had previously passed and this Defendant filed its motion to continue the trial date previously set by this Court of October 20, 2003.

5. This Defendant attaches as Exhibit "A" to this Motion for Scheduling Conference the Alabama SJIS Case Detail obtained by this Defendant containing 32 pages which indicates the complexity and history of this case prior to this Defendant being served.

6. Prior to the time for this Defendant to respond to the Third Amended Complaint on September 2, 2003, this Defendant received on August 26, 2003, a copy of the "Fourth Amended Complaint" filed in this Court on August 25, 2003. The time for this Defendant to respond to the Fourth Amended Complaint ends on September 25, 2003, which is less than 30 days prior to the trial of this case.

7. This case involves multiple parties and claims and a time that exists between the addition of this party as a Defendant in this case is totally insufficient for the undersigned attorneys to properly prepare this case for trial.

8. The attorneys have determined and respectfully request that this Court set a hearing for a scheduling conference pursuant to the provisions of Rule 16 and this Defendant avers that a scheduling conference order might be entered by the Court in order to improve the quality of this trial by allowing this Defendant adequate time for more thorough preparation and could perhaps facilitate a settlement of this case between the Plaintiffs and this Defendant.

WHEREFORE, this Defendant avers that this Court should set a date for all attorneys to appear for the purpose of entering a scheduling order pursuant to the provisions of Rule 16 ARCP and for such other reasons as this Court may determine.

PHILLIP E. ADAMS, JR.
One of the attorneys for defendant
Oldcastle

**OF COUNSEL:**

**ADAMS, UMBACH, DAVIDSON & WHITE, LLP**
**P. O. BOX 2069**
**OPELIKA, AL 36803-2069**
**Tel. (334) 745-6466**
**Fax (3340 749-3238**

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 3rd day of August, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
 Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

Of Counsel

 *alacourt.com's*

## *Alabama SJIS Case Detail*



| Settings | Parties | Case Action Summary | Witness List | Financial |
|---|---|---|---|---|

| **Case** | | | | | | | |
|---|---|---|---|---|---|---|---|
| County | 43 | Case Number | CV 2002 000085 00 | JID | JAW | Trial | J |
| Style | MIKE DAVIS ET AL VS HANSON AGGREGATES SOUTHEAST INC ET AL | | | | | | |
| Code | TORE | Type | DAMAGES - REAL PROP. | Filed | 02122002 | Track | |
| Amount | | Status | ACTIVE | Plaintiffs | 058 | Defendants | 015 |
| DJID | | Court Action | 00000000 | | | For | |
| Damages-Comp | | Damages-Pun | | Damages-Gen | | No Damages | |
| Trial Days | | Lien | | | | | |

| **Settings** | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date 1 | | Que 1 | | Time 1 | | Description | |
| Date 2 | 09222003 | Que 2 | 001 | Time 2 | 0900 A | Description | PTRC PRETRIAL CONFERENCE |
| Date 3 | 10202003 | Que 3 | 001 | Time 3 | 0830 A | Description | JTRL TRIAL - JURY |
| Date 4 | 09052003 | Que 4 | 001 | Time 4 | 1100 A | Description | STAT STATUS CONFERENCE |
| Cont Date | | Wny | | | | Cont # | |
| RevJmt | | Admin Date | | Why | | | |
| Appeal Date | | CRT | | Case | 0000 000000 00 | | |
| TBNV1 | | TBNV2 | | DSDT | | DTYP | |
| Comment 1 | | | | | | | |
| Comment 2 | | | | | | | |

| **Party 1** | | | | | | | |
|---|---|---|---|---|---|---|---|
| Party | C 001 | Name | DAVIS MIKE | | | Type | INDIVIDUAL |
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

| **Party 2** | | | | | | | |
|---|---|---|---|---|---|---|---|
| Party | C 002 | Name | DAVIS DONNA | | | Type | INDIVIDUAL |
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |

| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 3**

| Party | C 003 | Name | HARMON HOWARD | | | Type | INDIVIDUAL |
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 4**

| Party | C 004 | Name | HARMON LISA | | | Type | INDIVIDUAL |
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 5**

| Party | C 005 | Name | CLARK ANTHONY | | | Type | INDIVIDUAL |
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 6**

| Party | C 006 | Name | FRIZZELL MEDENA | | | Type | INDIVIDUAL |
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |

| Atty 5 | | Atty 6 | | | | | |
|---|---|---|---|---|---|---|---|
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 7**

| Party | C 007 | Name | DUPREE EVELYN | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 8**

| Party | C 008 | Name | LAMACCHIA MIKE | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 9**

| Party | C 009 | Name | LAMACCHIA SHEILA | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 10**

| Party | C 010 | Name | WOOD VERNON | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|

| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
|---|---|---|---|---|---|---|
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 11**

| Party | C 011 | Name | WALLACE BILLY | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 12**

| Party | C 012 | Name | WALLACE SHERRY | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 13**

| Party | C 013 | Name | MANNING TIM | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |

| Warrant | Type | Arrest | | |
|---|---|---|---|---|
| CACT | Date | For | Exep | O |
| AMT | Cost | Other | Satisfied | |
| Comment | | | | |

**Party 14**

| | | | | | | |
|---|---|---|---|---|---|---|
| Party | C 014 | Name | MANNING ADA | | Type | INDIVIDUAL |
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 15**

| | | | | | | |
|---|---|---|---|---|---|---|
| Party | C 015 | Name | GRIGGS RONNIE | | Type | INDIVIDUAL |
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 16**

| | | | | | | |
|---|---|---|---|---|---|---|
| Party | C 016 | Name | GRIGGS DOROTHY | | Type | INDIVIDUAL |
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 17**

| | | | | | | |
|---|---|---|---|---|---|---|
| Party | C 017 | Name | SUMNER DAVID | | Type | INDIVIDUAL |
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| | SPRAYBERRY | | VERCELLI | | | |

| Atty 1 | JAMES B | Atty 2 | CHARLES E J | Atty 3 | | Atty 4 | |
|---|---|---|---|---|---|---|---|
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 18**

| Party | C 018 | Name | SUMNER AMANDA | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 19**

| Party | C 019 | Name | SUMNER LARRY | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 20**

| Party | C 020 | Name | PARKER RANDALL | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 21**

| Party | C 021 | Name | NASH DAVID | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 22**

| Party | C 022 | Name | BAGGET JANETTE | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 23**

| Party | C 023 | Name | WILSON SHIRLEY | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 24**

| Party | C 024 | Name | THREADAWAY MARTHA | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |

| Answer | | Type | | NS Not | | NA Not | |
|---|---|---|---|---|---|---|---|
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 25**

| Party | C 025 | Name | HAGANS MIKE | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 26**

| Party | C 026 | Name | HAGANS STACY | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 27**

| Party | C 027 | Name | BROADWATER MITTIE | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 28**

| Party | C 028 | Name | WILKES MICHELE | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |

| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
|---|---|---|---|---|---|---|---|
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 29**

| Party | C 029 | Name | LEDBETTER STANLEY | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |

| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
|---|---|---|---|---|---|---|---|
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 30**

| Party | C 030 | Name | LONG TERRY | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |

| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
|---|---|---|---|---|---|---|---|
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 31**

| Party | C 031 | Name | PARKER JAMES | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |

| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
|---|---|---|---|---|---|---|---|
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 32**

| Party | C 032 | Name | PARKER SHIRLEY | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 33**

| Party | C 033 | Name | RICHARDSON MARIA | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 34**

| Party | C 034 | Name | BROADWATER MIKE | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 35**

| Party | C 035 | Name | BROADWATER ANN | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |

| Service | | Type | | Serv On | | By | |
|---|---|---|---|---|---|---|---|
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 36**

| Party | C 036 | Name | EILAND MARY SUE | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | D HANSON AGGRE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 37**

| Party | C 037 | Name | CITY OF OPELIKA | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | GUNTER GUY F III | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 38**

| Party | C 038 | Name | UTILITIES BOARD OF THE CITY OF OPELIKA | | | Type | BUSINESS |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | GUNTER GUY F III | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 39**

| Party | C 039 | Name | BEAUREGARD WATER AUTHORITY | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | HANSON | ANAM | | | | JID | JAW |

| | AGGREGA | | | | | |
|---|---|---|---|---|---|---|
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 40**

| Party | C 040 | Name | CLARK COURTNEY | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 41**

| Party | C 041 | Name | FRIZZELL KARLA | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |
| Service | | Type | | Serv On | By | |
| Answer | | Type | | NS Not | NA Not | |
| Warrant | | Type | | Arrest | | |
| CACT | | Date | | For | Exep | O |
| AMT | | Cost | | Other | Satisfied | |
| Comment | | | | | | |

**Party 42**

| Party | C 042 | Name | YOUGREN BRIANNA | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | |
| Atty 5 | | Atty 6 | | | | |
| Issued | | Type | | Reissue | Type | |
| Return | | Type | | Return | Type | |

| Service | | Type | | Serv On | | By | |
|---------|---|------|---|---------|---|-----|---|
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 43**

| Party | C 043 | Name | HARMON JUDSON | | | Type | INDIVIDUAL |
|-------|-------|------|---------------|---|---|------|------------|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 44**

| Party | C 044 | Name | HARMON BRIA | | | Type | INDIVIDUAL |
|-------|-------|------|-------------|---|---|------|------------|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 45**

| Party | C 045 | Name | LAMACHIA RUSSELL | | | Type | INDIVIDUAL |
|-------|-------|------|------------------|---|---|------|------------|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 46**

| Party | C 046 | Name | PARKER BRANDON | | | Type | INDIVIDUAL |
|-------|-------|------|----------------|---|---|------|------------|

| INDX | HANSON AGGREGA | ANAM | | | JID | JAW | |
|---|---|---|---|---|---|---|---|
| SSN | | Address 1 | | | Sex | | |
| DOB | | Address 2 | | | Race | | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 | |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | Type | | |
| Return | | Type | | Return | Type | | |
| Service | | Type | | Serv On | By | | |
| Answer | | Type | | NS Not | NA Not | | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | Exep | O | |
| AMT | | Cost | | Other | Satisfied | | |
| Comment | | | | | | | |

**Party 47**

| Party | C 047 | Name | PARKER AMBUR | | Type | INDIVIDUAL | |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | JID | JAW | |
| SSN | | Address 1 | | | Sex | | |
| DOB | | Address 2 | | | Race | | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 | |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | Type | | |
| Return | | Type | | Return | Type | | |
| Service | | Type | | Serv On | By | | |
| Answer | | Type | | NS Not | NA Not | | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | Exep | O | |
| AMT | | Cost | | Other | Satisfied | | |
| Comment | | | | | | | |

**Party 48**

| Party | C 048 | Name | RICHARDSON JEFF | | Type | INDIVIDUAL | |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | JID | JAW | |
| SSN | | Address 1 | | | Sex | | |
| DOB | | Address 2 | | | Race | | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 | |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | Type | | |
| Return | | Type | | Return | Type | | |
| Service | | Type | | Serv On | By | | |
| Answer | | Type | | NS Not | NA Not | | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | Exep | O | |
| AMT | | Cost | | Other | Satisfied | | |
| Comment | | | | | | | |

**Party 49**

| Party | C 049 | Name | RICHARDSON NATASHA | | Type | INDIVIDUAL | |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | JID | JAW | |
| SSN | | Address 1 | | | Sex | | |
| DOB | | Address 2 | | | Race | | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 | |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | Atty 4 | | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | Type | | |

| Return | | Type | | Return | | Type | |
|---|---|---|---|---|---|---|---|
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 50**

| Party | C 050 | Name | SUMNER TODD | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |

| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
|---|---|---|---|---|---|---|---|
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 51**

| Party | C 051 | Name | KING JASMIN | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |

| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
|---|---|---|---|---|---|---|---|
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 52**

| Party | C 052 | Name | KING MICHAEL | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | JID | JAW |
| SSN | | Address 1 | | | Sex | |
| DOB | | Address 2 | | | Race | |
| Country | US | City | AL 00000 0000 | | Phone | 334 000 0000 |

| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
|---|---|---|---|---|---|---|---|
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 53**

UNCLEAR CASE ... MEP-TFM UNDC Document 344 Filed 09/07/2007 Page 68 of 175 Case 3:06-cv-00638-MEF-TFM Document 344 Filed 09/07/2007 Page 6 of 32

1753

| Party | C 053 | Name | KING HAZEL | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 54**

| Party | C 054 | Name | KING JOSEPH | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 55**

| Party | C 055 | Name | WALLACE AARON | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 56**

| Party | C 056 | Name | PFINGSTON BETTY | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |

**Party 57** (continued from top)

| Issued | | Type | | Reissue | | Type | |
|---|---|---|---|---|---|---|---|
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | 0 |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 57**

| Party | C 057 | Name | PFINGSTON JESSICA | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | 0 |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 58**

| Party | C 058 | Name | BRIGHT WONDA | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | HANSON AGGREGA | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | SPRAYBERRY JAMES B | Atty 2 | VERCELLI CHARLES E J | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | 0 |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 59**

| Party | D 001 | Name | HANSON AGGREGATES SOUTHEAST INC | | | Type | BUSINESS |
|---|---|---|---|---|---|---|---|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | 100 CRESCENT CENTRE PKWY | | | Sex | |
| DOB | | Address 2 | SUITE 1240 | | | Race | |
| Country | US | City | TUCKER GA 30084 0000 | | | Phone | 334 000 0000 |
| Atty 1 | BYRAM JAMES A JR | Atty 2 | WALKER DORMAN | Atty 3 | PARNELL JUSTIN MATTH | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | 02142002 | Type | C CERTIFIED MAI | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | 02192002 | Type | C CERTIFIED MAI | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | 0 |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 60**

| Party | D 002 | Name | OBRIEN LOUISE YOUNG | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | 416 CHARIN LOOP | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AUBURN AL 36830 0000 | | | Phone | 334 000 0000 |
| Atty 1 | DENSON JOHN V II | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | 06262003 | Type | S SHERIFF | Reissue | 06262003 | Type | C CERTIFIED MA |
| Return | | Type | | Return | | Type | |
| Service | 06272003 | Type | C CERTIFIED MAI | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 61**

| Party | D 003 | Name | PRIEST VIRGINIA YOUNG | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | 1414 CHARING LOOP | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AUBURN AL 36830 0000 | | | Phone | 334 000 0000 |
| Atty 1 | DENSON JOHN V II | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | 02142002 | Type | C CERTIFIED MAI | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | 02162002 | Type | C CERTIFIED MAI | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 62**

| Party | D 004 | Name | YOUNG VIRGINIA HART | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | C MIKE DAVIS | ANAM | | | | JID | JAW |
| SSN | | Address 1 | C/O NORTH RIDGE NURSING H | | | Sex | |
| DOB | | Address 2 | 801 MORRIS AVENUE | | | Race | |
| Country | US | City | OPELIKA AL 36801 0000 | | | Phone | 334 000 0000 |
| Atty 1 | DENSON JOHN V II | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | 06252003 | Type | S SHERIFF | Reissue | 06252003 | Type | C CERTIFIED MA |
| Return | | Type | | Return | | Type | |
| Service | 06282003 | Type | C CERTIFIED MAI | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 63**

| Party | D 005 | Name | YOUNG CLAUDE JOHN | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | C/O VIRGINIA Y PRIEST | | | Sex | |
| DOB | | Address 2 | 1414 CHARING LOOP | | | Race | |
| Country | US | City | AUBURN AL 36830 0000 | | | Phone | 334 000 0000 |
| Atty 1 | DENSON JOHN V II | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | 06252003 | Type | C CERTIFIED MAI | Reissue | 07142003 | Type | C CERTIFIED MA |
| Return | | Type | | Return | | Type | |
| Service | 07142003 | Type | S SERVED PERSON | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |

Case 3:08-cv-00839-MEF-TFM   Document 34-4   Filed 09/07/2007   Page 68 of 175
Case 3:06-cv-00839-MEF-TFM   Document 34-4SON   Filed 09/07/2007   Page 175 of 32

1758

| CACT | | Date | | For | | Exep | O |
|------|--|------|--|-----|--|------|---|
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 64**

| Party | D 006 | Name | GILMER CHARLES W SR | | | Type | INDIVIDUAL |
|-------|-------|------|---------------------|--|--|------|------------|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | 04042002 | Type | S SERVED PERSON | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 65**

| Party | D 007 | Name | GILMER ALICE C | | | Type | INDIVIDUAL |
|-------|-------|------|----------------|--|--|------|------------|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 66**

| Party | D 008 | Name | GILMER CHARLES W JR | | | Type | INDIVIDUAL |
|-------|-------|------|---------------------|--|--|------|------------|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 67**

| Party | D 009 | Name | GILMER KAMMY | | | Type | INDIVIDUAL |
|-------|-------|------|--------------|--|--|------|------------|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |

| Service | | Type | | Serv On | | By | |
|---|---|---|---|---|---|---|---|
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 68**

| Party | D 010 | Name | SMITH BARBARA GILMER | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 69**

| Party | D 011 | Name | SMITH GARY | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 70**

| Party | D 012 | Name | GILMER MATTHEW RUTTLEDGE | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 71**

| Party | D 013 | Name | GILMER LELIA WILDER | | | Type | INDIVIDUAL |
|---|---|---|---|---|---|---|---|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | AL 00000 0000 | | | Phone | 334 000 0000 |
| Atty 1 | | Atty 2 | | Atty 3 | | Atty 4 | |

On-Line Case Detail MEFA TFM Document 344 SON File No 09/07/2007 Page 7 of 175 32
Case 3:06-cv-00858-MEF-TFM Document 344-4 Filed 09/07/2007 Page 70 of 132

1785

| Atty 5 | | Atty 6 | | | | | |
|---|---|---|---|---|---|---|---|
| Issued | | Type | | Reissue | | Type | |
| Return | | Type | | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 72**

| Party | D 014 | Name | GILMER PROPERTIES LTD | | | Type | BUSINESS |
|---|---|---|---|---|---|---|---|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | ROUTE 4 BOX 48 | | | Sex | |
| DOB | | Address 2 | | | | Race | |
| Country | US | City | OPELIKA AL J6801 0000 | | | Phone | 334 000 0000 |
| Atty 1 | DENSON JOHN V II | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | 02142002 | Type | C CERTIFIED MAI | Reissue | | Type | |
| Return | 02262002 | Type | O OTHER | Return | | Type | |
| Service | | Type | | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Party 73**

| Party | D 015 | Name | OLDCASTLE MATERIALS SOUTHEAST, INC | | | Type | BUSINESS |
|---|---|---|---|---|---|---|---|
| INDX | C DAVIS MIKE | ANAM | | | | JID | JAW |
| SSN | | Address 1 | C/O CORPORATION COMPANY | | | Sex | |
| DOB | | Address 2 | 2000 INTERSTATE PK DR 204 | | | Race | |
| Country | US | City | MONTGOMERY GA 36109 0000 | | | Phone | 334 000 0000 |
| Atty 1 | ADAMS PHILLIP E JR | Atty 2 | | Atty 3 | | Atty 4 | |
| Atty 5 | | Atty 6 | | | | | |
| Issued | 08012003 | Type | C CERTIFIED MAI | Reissue | 08012003 | Type | A PROCESS SERV |
| Return | | Type | | Return | | Type | |
| Service | 08042003 | Type | C CERTIFIED MAI | Serv On | | By | |
| Answer | | Type | | NS Not | | NA Not | |
| Warrant | | Type | | Arrest | | | |
| CACT | | Date | | For | | Exep | O |
| AMT | | Cost | | Other | | Satisfied | |
| Comment | | | | | | | |

**Case Action Summary**

| Date | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 02142002 | 1502 | ASSJ | ASSIGNED TO JUDGE: HON. JACOB A. WALKER III (AV01) | GEG |
| 02142002 | 1502 | ORIG | ORIGIN: INITIAL FILING (AV01) | GEG |
| 02142002 | 1502 | TDMJ | JURY TRIAL REQUESTED (AV01) | GEG |
| 02142002 | 1502 | STAT | CASE ASSIGNED STATUS OF: ACTIVE (AV01) | GEG |
| 02142002 | 1504 | PART | DAVIS MIKE ADDED AS C001 (AV02) | GEG |
| 02142002 | 1504 | ATTY | LISTED AS ATTORNEY FOR C001: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1504 | ATTY | LISTED AS ATTORNEY FOR C001: VERCELLI CHARLES E J | GEG |
| 02142002 | 1506 | PART | DAVIS DONNA ADDED AS C002 (AV02) | GEG |
| 02142002 | 1506 | ATTY | LISTED AS ATTORNEY FOR C002: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1506 | ATTY | LISTED AS ATTORNEY FOR C002: VERCELLI CHARLES E J | GEG |
| 02142002 | 1506 | PART | HARMON HOWARD ADDED AS C003 (AV02) | GEG |
| 02142002 | 1506 | ATTY | LISTED AS ATTORNEY FOR C003: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1506 | ATTY | LISTED AS ATTORNEY FOR C003: VERCELLI CHARLES E J | GEG |
| 02142002 | 1507 | PART | HARMON LISA ADDED AS C004 (AV02) | GEG |
| 02142002 | 1507 | ATTY | LISTED AS ATTORNEY FOR C004: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1507 | ATTY | LISTED AS ATTORNEY FOR C004: VERCELLI CHARLES E J | GEG |

1759

```
02142002 1507 PART  CLARK ANTHONY ADDED AS C005 (AV02)                      GEG
02142002 1507 ATTY  LISTED AS ATTORNEY FOR C005: SPRAYBERRY JAMES B         GEG
02142002 1507 ATTY  LISTED AS ATTORNEY FOR C005: VERCELLI CHARLES E J       GEG
02142002 1508 PART  FRIZZELL MEDENA ADDED AS C006 (AV02)                    GEG
02142002 1508 ATTY  LISTED AS ATTORNEY FOR C006: SPRAYBERRY JAMES B         GEG
02142002 1508 ATTY  LISTED AS ATTORNEY FOR C006: VERCELLI CHARLES E J       GEG
02142002 1509 PART  DUPREE EVELYN ADDED AS C007 (AV02)                      GEG
02142002 1509 ATTY  LISTED AS ATTORNEY FOR C007: VERCELLI CHARLES E J       GEG
02142002 1509 ATTY  LISTED AS ATTORNEY FOR C007: SPRAYBERRY JAMES B         GEG
02142002 1510 PART  LAMACCHIA MIKE ADDED AS C008 (AV02)                     GEG
02142002 1510 ATTY  LISTED AS ATTORNEY FOR C008: SPRAYBERRY JAMES B         GEG
02142002 1510 ATTY  LISTED AS ATTORNEY FOR C008: VERCELLI CHARLES E J       GEG
02142002 1510 PART  LAMACCHIA SHEILA ADDED AS C009 (AV02)                   GEG
02142002 1510 ATTY  LISTED AS ATTORNEY FOR C009: VERCELLI CHARLES E J       GEG
02142002 1510 ATTY  LISTED AS ATTORNEY FOR C009: SPRAYBERRY JAMES B         GEG
02142002 1511 PART  WOOD VERNON ADDED AS C010 (AV02)                        GEG
02142002 1511 ATTY  LISTED AS ATTORNEY FOR C010: VERCELLI CHARLES E J       GEG
02142002 1511 ATTY  LISTED AS ATTORNEY FOR C010: SPRAYBERRY JAMES B         GEG
02142002 1513 PART  WALLACE BILLY ADDED AS C011 (AV02)                      GEG
02142002 1513 ATTY  LISTED AS ATTORNEY FOR C011: SPRAYBERRY JAMES B         GEG
02142002 1513 ATTY  LISTED AS ATTORNEY FOR C011: VERCELLI CHARLES E J       GEG
02142002 1513 PART  WALLACE SHERRY ADDED AS C012 (AV02)                     GEG
02142002 1513 ATTY  LISTED AS ATTORNEY FOR C012: SPRAYBERRY JAMES B         GEG
02142002 1513 ATTY  LISTED AS ATTORNEY FOR C012: VERCELLI CHARLES E J       GEG
02142002 1514 PART  MANNING TIM ADDED AS C013 (AV02)                        GEG
02142002 1514 ATTY  LISTED AS ATTORNEY FOR C013: VERCELLI CHARLES E J       GEG
02142002 1514 ATTY  LISTED AS ATTORNEY FOR C013: SPRAYBERRY JAMES B         GEG
02142002 1515 PART  MANNING ADA ADDED AS C014 (AV02)                        GEG
02142002 1515 ATTY  LISTED AS ATTORNEY FOR C014: VERCELLI CHARLES E J       GEG
02142002 1515 ATTY  LISTED AS ATTORNEY FOR C014: SPRAYBERRY JAMES B         GEG
02142002 1515 PART  GRIGGS RONNIE ADDED AS C015 (AV02)                      GEG
02142002 1515 ATTY  LISTED AS ATTORNEY FOR C015: VERCELLI CHARLES E J       GEG
02142002 1515 ATTY  LISTED AS ATTORNEY FOR C015: SPRAYBERRY JAMES B         GEG
02142002 1516 PART  GRIGGS DOROTHY ADDED AS C016 (AV02)                     GEG
02142002 1516 ATTY  LISTED AS ATTORNEY FOR C016: SPRAYBERRY JAMES B         GEG
02142002 1516 ATTY  LISTED AS ATTORNEY FOR C016: VERCELLI CHARLES E J       GEG
02142002 1516 PART  SUMNER DAVID ADDED AS C017 (AV02)                       GEG
02142002 1516 ATTY  LISTED AS ATTORNEY FOR C017: VERCELLI CHARLES E J       GEG
02142002 1516 ATTY  LISTED AS ATTORNEY FOR C017: SPRAYBERRY JAMES B         GEG
02142002 1517 PART  SUMNER AMANDA ADDED AS C018 (AV02)                      GEG
02142002 1517 ATTY  LISTED AS ATTORNEY FOR C018: VERCELLI CHARLES E J       GEG
02142002 1517 ATTY  LISTED AS ATTORNEY FOR C018: SPRAYBERRY JAMES B         GEG
02142002 1518 PART  SUMNER LARRY ADDED AS C019 (AV02)                       GEG
02142002 1518 ATTY  LISTED AS ATTORNEY FOR C019: VERCELLI CHARLES E J       GEG
02142002 1518 ATTY  LISTED AS ATTORNEY FOR C019: SPRAYBERRY JAMES B         GEG
02142002 1520 PART  PARKER RANDALL ADDED AS C020 (AV02)                     GEG
02142002 1520 ATTY  LISTED AS ATTORNEY FOR C020: VERCELLI CHARLES E J       GEG
02142002 1520 ATTY  LISTED AS ATTORNEY FOR C020: SPRAYBERRY JAMES B         GEG
02142002 1521 PART  NASH DAVID ADDED AS C021 (AV02)                         GEG
02142002 1521 ATTY  LISTED AS ATTORNEY FOR C021: SPRAYBERRY JAMES B         GEG
02142002 1521 ATTY  LISTED AS ATTORNEY FOR C021: VERCELLI CHARLES E J       GEG
02142002 1521 PART  BAGGET JANETTE ADDED AS C022 (AV02)                     GEG
02142002 1521 ATTY  LISTED AS ATTORNEY FOR C022: VERCELLI CHARLES E J       GEG
02142002 1521 ATTY  LISTED AS ATTORNEY FOR C022: SPRAYBERRY JAMES B         GEG
02142002 1522 PART  WILSON SHIRLEY ADDED AS C023 (AV02)                     GEG
02142002 1522 ATTY  LISTED AS ATTORNEY FOR C023: VERCELLI CHARLES E J       GEG
02142002 1522 ATTY  LISTED AS ATTORNEY FOR C023: SPRAYBERRY JAMES B         GEG
```

| | | | | | |
|---|---|---|---|---|---|
| 02142002 | 1523 | PART | THREADWAY MARTHA ADDED AS C024 (AV02) | GEG |
| 02142002 | 1523 | ATTY | LISTED AS ATTORNEY FOR C024: VERCELLI CHARLES E J | GEG |
| 02142002 | 1523 | ATTY | LISTED AS ATTORNEY FOR C024: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1523 | PART | HAGANS MIKE ADDED AS C025 (AV02) | GEG |
| 02142002 | 1523 | ATTY | LISTED AS ATTORNEY FOR C025: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1523 | ATTY | LISTED AS ATTORNEY FOR C025: VERCELLI CHARLES E J | GEG |
| 02142002 | 1524 | PART | HAGANS STACY ADDED AS C026 (AV02) | GEG |
| 02142002 | 1524 | ATTY | LISTED AS ATTORNEY FOR C026: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1524 | ATTY | LISTED AS ATTORNEY FOR C026: VERCELLI CHARLES E J | GEG |
| 02142002 | 1525 | PART | BROADWATER MITTIE ADDED AS C027 (AV02) | GEG |
| 02142002 | 1525 | ATTY | LISTED AS ATTORNEY FOR C027: VERCELLI CHARLES E J | GEG |
| 02142002 | 1525 | ATTY | LISTED AS ATTORNEY FOR C027: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1525 | PART | WILKES MICHELE ADDED AS C028 (AV02) | GEG |
| 02142002 | 1525 | ATTY | LISTED AS ATTORNEY FOR C028: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1525 | ATTY | LISTED AS ATTORNEY FOR C028: VERCELLI CHARLES E J | GEG |
| 02142002 | 1526 | PART | LEDBETTER STANLEY ADDED AS C029 (AV02) | GEG |
| 02142002 | 1526 | ATTY | LISTED AS ATTORNEY FOR C029: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1526 | ATTY | LISTED AS ATTORNEY FOR C029: VERCELLI CHARLES E J | GEG |
| 02142002 | 1527 | PART | LONG TERRY ADDED AS C030 (AV02) | GEG |
| 02142002 | 1527 | ATTY | LISTED AS ATTORNEY FOR C030: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1527 | ATTY | LISTED AS ATTORNEY FOR C030: VERCELLI CHARLES E J | GEG |
| 02142002 | 1527 | PART | PARKER JAMES ADDED AS C031 (AV02) | GEG |
| 02142002 | 1527 | ATTY | LISTED AS ATTORNEY FOR C031: VERCELLI CHARLES E J | GEG |
| 02142002 | 1527 | ATTY | LISTED AS ATTORNEY FOR C031: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1528 | PART | PARKER SHIRLEY ADDED AS C032 (AV02) | GEG |
| 02142002 | 1528 | ATTY | LISTED AS ATTORNEY FOR C032: VERCELLI CHARLES E J | GEG |
| 02142002 | 1528 | ATTY | LISTED AS ATTORNEY FOR C032: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1528 | PART | RICHARDSON MARIA ADDED AS C033 (AV02) | GEG |
| 02142002 | 1528 | ATTY | LISTED AS ATTORNEY FOR C033: VERCELLI CHARLES E J | GEG |
| 02142002 | 1528 | ATTY | LISTED AS ATTORNEY FOR C033: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1529 | PART | BROADWATER MIKE ADDED AS C034 (AV02) | GEG |
| 02142002 | 1529 | ATTY | LISTED AS ATTORNEY FOR C034: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1529 | ATTY | LISTED AS ATTORNEY FOR C034: VERCELLI CHARLES E J | GEG |
| 02142002 | 1530 | PART | BROADWATER ANN ADDED AS C035 (AV02) | GEG |
| 02142002 | 1530 | ATTY | LISTED AS ATTORNEY FOR C035: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1530 | ATTY | LISTED AS ATTORNEY FOR C035: VERCELLI CHARLES E J | GEG |
| 02142002 | 1530 | PART | EILAND MARY SUE ADDED AS C036 (AV02) | GEG |
| 02142002 | 1530 | ATTY | LISTED AS ATTORNEY FOR C036: SPRAYBERRY JAMES B | GEG |
| 02142002 | 1530 | ATTY | LISTED AS ATTORNEY FOR C036: VERCELLI CHARLES E J | GEG |
| 02142002 | 1532 | PART | HANSON AGGREGATES SOUTHEAST INC ADDED AS D001 | GEG |
| 02142002 | 1533 | PART | OBRIEN LOUISE YOUNG ADDED AS D002 (AV02) | GEG |
| 02142002 | 1535 | PART | PRIEST VIRGINIA YOUNG ADDED AS D003 (AV02) | GEG |
| 02142002 | 1536 | PART | YOUNG VIRGINIA HART ADDED AS D004 (AV02) | GEG |
| 02142002 | 1538 | PART | YOUNG CLAUDE JOHN ADDED AS D005 (AV02) | GEG |
| 02142002 | 1539 | PART | GILMER CHARLES W SR ADDED AS D006 (AV02) | GEG |
| 02142002 | 1554 | PART | GILMER ALICE C ADDED AS D007 (AV02) | GEG |
| 02142002 | 1555 | PART | GILMER CHARLES W JR ADDED AS D008 (AV02) | GEG |
| 02142002 | 1555 | PART | GILMER KAMMY ADDED AS D009 (AV02) | GEG |
| 02142002 | 1556 | PART | SMITH BARBARA GILMER ADDED AS D010 (AV02) | GEG |
| 02142002 | 1556 | PART | SMITH GARY ADDED AS D011 (AV02) | GEG |
| 02142002 | 1557 | PART | GILMER MATTHEW RUTTLEDGE ADDED AS D012 (AV02) | GEG |
| 02142002 | 1557 | PART | GILMER LELIA WILDER ADDED AS D013 (AV02) | GEG |
| 02142002 | 1558 | PART | GILMER PROPERTIES LTD ADDED AS D014 (AV02) | GEG |
| 02142002 | 1559 | TEXT | PLF'S FIRST INTERR & REQUEST FOR PRODUCTION TO DEF | GEG |
| 02142002 | 1559 | TEXT | NOTICE OF TAKING DEPOSITION | GEG |
| 02142002 | 1560 | TEXT | NOTICE OF TAKING DEPOSITION | GEG |
| 02142002 | 1560 | TEXT | NOTICE OF TAKING DEPOSITION | GEG |

| | | | | |
|---|---|---|---|---|
| 02152002 0801 | SUMM | CERTIFIED MAI ISSUED: 02/14/2002 TO D001 (AV02) | GEG |
| 02152002 0802 | SUMM | CERTIFIED MAI ISSUED: 02/14/2002 TO D003 (AV02) | GEG |
| 02152002 0802 | SUMM | CERTIFIED MAI ISSUED: 02/14/2002 TO D014 (AV02) | GEG |
| 02192002 1538 | SERC | D003 SERVED CERTIFIED MAIL ON 02/16/2002 | NIF |
| 02192002 1543 | RETU | RETURNED UNCLAIM CERT M ON 02/19/2002 FOR D014 | NIF |
| 02222002 1252 | SERC | D001 SERVED CERTIFIED MAIL ON 02/19/2002 | NIF |
| 02262002 1517 | TEXT | S & C ISSUED TO LCSO FOR SERVICE ON GILMER | NIF |
| 02262002 1517 | TEXT | PROPERTIES, LTD | NIF |
| 03152002 1035 | TEXT | MOTION TO DISMISS | NIF |
| 03152002 1035 | TEXT | OBJECTION TO NOTICE OF TAKING DEPOSITION | NIF |
| 03182002 1036 | ATTY | LISTED AS ATTORNEY FOR D003: DENSON JOHN V II | NIF |
| 03182002 1424 | TEXT | MOTION TO DISMISS OR FOR MORE DEFINITE | NIF |
| 03182002 1424 | TEXT | STATEMENT | NIF |
| 03202002 1423 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | NIF |
| 03272002 1236 | RETU | RETURNED OTHER ON 02/26/2002 FOR D014 | NIF |
| 03292002 1624 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | GEG |
| 03292002 1624 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | GEG |
| 04032002 0848 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | NIF |
| 04032002 0848 | TEXT | NOTICE OF FILING DISCOVERY | NIF |
| 04052002 1558 | SERC | D006 SERVED SHERIFF ON 04/04/2002 | NIF |
| 04052002 1558 | TEXT | DEFT'S REQUEST FOR ENTRY UPON LAND FOR | NIF |
| 04052002 1558 | TEXT | INSPECTION AND OTHER PURPOSES | NIF |
| 04102002 0843 | TEXT | PLF'S RESPONSE TO DEFT'S REQUEST FOR ENTRY | GEG |
| 04122002 0842 | ATTY | LISTED AS ATTORNEY FOR D001: BRYAN KAREN LAMOREAU | GEG |
| 04122002 0842 | ATTY | LISTED AS ATTORNEY FOR D001: WALKER DORMAN (AV02) | GEG |
| 04122002 0842 | ATTY | LISTED AS ATTORNEY FOR D001: PARNELL JUSTIN MATTH | GEG |
| 04182002 0852 | TEXT | MOTION TO DISMISS | NIF |
| 04182002 0852 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | NIF |
| 04192002 1141 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | GEG |
| 04232002 1141 | TEXT | NOTICE OF INTENT TO SERVE SUBPOENA ON NON-PARTY, | GEG |
| 04232002 1141 | TEXT | DAVID B NOONEY | GEG |
| 04252002 1141 | TEXT | DEFT'S OBJECTION TO PLF'S REQ FOR NON-PARTY SUBP | GEG |
| 04292002 1146 | TEXT | ORDER SETTING HEARING ON DEFTS' MOTION TO DISMISS | GEG |
| 04292002 1146 | TEXT | 5/17/02, AT 1:30 P.M. | GEG |
| 04302002 1146 | DAT4 | SET FOR: HEARING ON 05/17/2002 AT 0130P (AV01) | GEG |
| 04302002 1201 | TEXT | NOTICE OF SERVICE DISCOVERY DOCUMENTS | GEG |
| 04302002 1201 | TEXT | PLF'S OBJECTIONS TO DEFT'S FIRST INTERRS & REQ | GEG |
| 04302002 1202 | TEXT | FOR PRODUCTION | GEG |
| 05022002 1054 | TEXT | STIPULATION PROTECTIVE ORDER | GEG |
| 05062002 0930 | TEXT | PLNTF'S OBJECTION TO GILMER AND PRIEST | NIF |
| 05062002 0930 | TEXT | INTERROGATORIES AND REQUEST FOR PRODUCTION | NIF |
| 05082002 0855 | TEXT | MOTION FOR LEAVE TO FILE MOTION UNDER SEAL | NIF |
| 05222002 1105 | TEXT | ORDER DENYING THE MOTION TO FILE CERTAIN MOTIONS | GEG |
| 05222002 1105 | TEXT | UNDER SEAL. TRIAL IS SET ON MARCH, 2003 | GEG |
| 05242002 0905 | TEXT | ELAINE EDWARDS' ANSWER TO DEFT'S FIRST SET OF | NIF |
| 05242002 0905 | TEXT | INTERROGATORIES AND REQUEST FOR PRODUCTION | NIF |
| 05242002 0905 | TEXT | DEFTS' MOTION TO RECONSIDER AND FOR IN CAMERA | NIF |
| 05242002 0905 | TEXT | INSPECTION | NIF |
| 05282002 1636 | TEXT | NOTICE OF SERVICE DISCOVERY DOCUMENTS | GEG |
| 06062002 0922 | TEXT | NOTICE OF FILING DISCOVERY | NIF |
| 06072002 0923 | ATTY | LISTED AS ATTORNEY FOR D001: PARNELL JUSTIN MATTH | NIF |
| 06102002 1210 | TEXT | AMENDED AND RESTATED COMPLAINT | NIF |
| 06102002 1210 | TEXT | MOTION FOR LEAVE TO FILE AMENDED COMPLAINT OUT OF | NIF |
| 06102002 1210 | TEXT | TIME | NIF |
| 06102002 1210 | TEXT | MOTION TO DISMISS PLNTFS EVELYN DUPREE AND VERNON | NIF |
| 06102002 1210 | TEXT | WOOD | NIF |
| 06182002 1424 | TEXT | ORDER GRANTING MOTION TO DISMISS PLFS EVELYN | GEG |

```
06182002 1424 TEXT  DUPREE & VERNON WOOD. THE MOTION FOR LEAVE TO          GEG
06182002 1424 TEXT  FILE AMENDED COMPLAINT IS GRANTED                      GEG
06202002 1602 TEXT  MOTION TO DISMISS AMENDED AND RESTATED COMPLAINT       NIF
06202002 1604 ATTY  LISTED AS ATTORNEY FOR D014: DENSON JOHN V II          NIF
06272002 0929 TEXT  NOTICE OF INTENT TO SERVE SUPBOENA ON NON PARTY,       NIF
06272002 0929 TEXT  DIXIE PIPELINE COMPANY                                 NIF
06272002 0929 TEXT  NOTICE OF SERVICE OF DISCOVERY DOCUMENT                NIF
07022002 1024 TEXT  ANSWER AND COUNTERCLAIM                                NIF
07082002 0837 TEXT  NOTICE OF SERVICE OF DISCOVERY DOCUMENT                GEG
07082002 1212 TEXT  NOTICE OF SERVICE OF DISCOVERY DOCUMENTS               GEG
07092002 0837 TEXT  SCHEDULING CONFERENCE ORDER SETTING PRETRIAL CONF      GEG
07092002 0837 TEXT  FOR 2/8/03, TRIAL IS SET FOR 3/17/03                   GEG
07102002 0838 DAT2  SET FOR: PRETRIAL CONFERENCE ON 02/18/2003 AT 090      GEG
07102002 0838 DAT3  SET FOR: TRIAL - JURY ON 03/17/2003 AT 0830A(AV01)     GEG
07122002 1012 TEXT  AMENDMENT TO MOTION TO DISMISS AMENDED & RESTATED      GEG
07122002 1012 TEXT  COMPLAINT                                              GEG
07162002 0944 TEXT  ORDER SETTING STATUS CONFERENCE ON 10/28/02            GEG
07172002 0944 DAT4  SET FOR: STATUS REVIEW/DKT ON 10/28/2002 AT 0900A      GEG
07172002 1121 TEXT  PLFS' ANSWER TO COUNTERCLAIM                           GEG
07182002 1630 TEXT  JOINT MOTION TO CONTINUE                               GEG
07222002 1608 PRTY  PARTY ADDED W001 DIXIE PIPELINE COMPANY (AW21)         GEG
07222002 1608 ISSD  PARTY W001 ISSUED DATE: 07222002 TYPE: CERTIFIED       GEG
07222002 1608 PRTY  PARTY ADDED W002 DAVID B NOONEY (AW21)                 GEG
07222002 1608 ISSD  PARTY W002 ISSUED DATE: 07222002 TYPE: SHERIFF         GEG
07292002 1006 SERC  SERVICE OF CERTIFIED MAIL ON 07242002 FOR W001 (A      NIF
08012002 1204 TEXT  ORDER SETTING ALL PENDING MOTIONS FOR 10/28/02         GEG
08022002 0924 TEXT  PRELIMINARY WITNESS LIST OF DEFTS VIRGINIA YOUNG       NIF
08022002 0924 TEXT  PRIEST AND GILMER PROPERTIES, LTD                      NIF
08022002 0924 TEXT  NOTICE OF SERVICE OF DISCOVERY DOCUMENTS               NIF
08052002 1138 TEXT  PLNTFS' MOTION FOR EXTENSION OF TIME TO DISCLOSE       NIF
08052002 1138 TEXT  EXPERTS                                                NIF
08272002 1124 TEXT  NOTICE OF SERVICE OF DISCOVERY DOCUMENT                NIF
08282002 1602 TEXT  MOTION TO COMPEL CONFIDENTIAL SETTLEMENT AGREEMENT     GEG
08292002 1602 SERC  SERVICE OF SERVED PERSON ON 08052002 FOR W002 (A       GEG
08302002 1105 TEXT  REQUEST FOR ISSUANCE OF SUBPOENA FOR PRODUCTION OF     GEG
08302002 1105 TEXT  DOCUMENTS TO FULTON CO SUPERIOR COURT, GEORGIA         GEG
09052002 0914 TEXT  NOTICE OF INTENT TO SERVE SUBP ON NON-PARTY, LAW       GEG
09052002 0914 TEXT  ENGINEERING & ENVIRONMENTAL SERVICES, INC              GEG
09172002 1417 TEXT  NOTICE OF INTENT TO SERVE SUBPOENA ON NON PARTY        NIF
09172002 1417 TEXT  R.E. GRILLS                                            NIF
09192002 1713 TEXT  SECOND AMENDED & RESTATED COMPLAINT                    GEG
09192002 1713 TEXT  MOTION FOR LEAVE TO FILE SECOND AMENDED & RESTATED     GEG
09192002 1713 TEXT  COMPLAINT                                              GEG
09202002 1245 TEXT  DEFTS' JOINT MOTION FOR EXTENSION OF TIME TO           GEG
09202002 1245 TEXT  DISCLOSE EXPERTS                                       GEG
09232002 1245 TEXT  DEFT'S OBJECTION TO PLFS' REQUEST FOR NON-PARTY        GEG
09232002 1245 TEXT  SUBPOENA                                               GEG
09242002 1245 TEXT  DEFENDANT'S OBJECTION TO PLFS' MOTION FOR LEAVE        GEG
09242002 1245 TEXT  TO FILE 2ND AMENDED & RESTATED COMPLAINT               GEG
09252002 1245 TEXT  OBJECTION OF YOUNG & GILMER DEFTS TO PLF'S MOTION      GEG
09252002 1245 TEXT  FOR LEAVE TO FILE 2ND AMENDED & RESTATED COMPLT        GEG
10042002 1245 TEXT  ORDER GRANTING PLFS' MOTION FOR LEAVE TO FILE 2ND      GEG
10042002 1245 TEXT  AMENDED & RESTATED COMPLAINT                           GEG
10222002 0916 TEXT  HANSON AGGREGATES SOUTHEAST, INC'S MTN 2 DISMISS       VIH
10222002 0916 TEXT  PLF'S MTN 4 LEAVE 2 FILE 2ND AMENDED & RESTATED        VIH
10222002 0916 TEXT  COMPLAINT                                              VIH
10252002 1504 PART  CITY OF OPELIKA ADDED AS C037 (AV02)                   GEG
```

| 10252002 1504 ATTY | LISTED AS ATTORNEY FOR C037: VERCELLI CHARLES E J | GEG |
|---|---|---|
| 10252002 1504 ATTY | LISTED AS ATTORNEY FOR C037: SPRAYBERRY JAMES B | GEG |
| 10252002 1504 ATTY | LISTED AS ATTORNEY FOR C037: GUNTER GUY F III | GEG |
| 10252002 1505 PART | UTILITIES BOARD OF THE CITY OF OPELIKA ADDED AS C0 | GEG |
| 10252002 1505 ATTY | LISTED AS ATTORNEY FOR C038: GUNTER GUY F III | GEG |
| 10252002 1505 ATTY | LISTED AS ATTORNEY FOR C038: SPRAYBERRY JAMES B | GEG |
| 10252002 1505 ATTY | LISTED AS ATTORNEY FOR C038: VERCELLI CHARLES E J | GEG |
| 10252002 1506 PART | BEAUREGARD WATER AUTHORITY ADDED AS C039 (AV02) | GEG |
| 10252002 1506 ATTY | LISTED AS ATTORNEY FOR C039: SPRAYBERRY JAMES B | GEG |
| 10252002 1506 ATTY | LISTED AS ATTORNEY FOR C039: VERCELLI CHARLES E J | GEG |
| 10252002 1508 PART | COURTNEY CLARK ADDED AS C040 (AV02) | GEG |
| 10252002 1508 ATTY | LISTED AS ATTORNEY FOR C040: SPARKS DANIEL DAVIDS | GEG |
| 10252002 1508 ATTY | LISTED AS ATTORNEY FOR C040: VERCELLI CHARLES E J | GEG |
| 10252002 1509 PART | FRIZZELL KARLA ADDED AS C041 (AV02) | GEG |
| 10252002 1509 ATTY | LISTED AS ATTORNEY FOR C041: SPARKS DANIEL DAVIDS | GEG |
| 10252002 1509 ATTY | LISTED AS ATTORNEY FOR C041: VERCELLI CHARLES E J | GEG |
| 10252002 1509 PART | YOUGREN BRIANNA ADDED AS C042 (AV02) | GEG |
| 10252002 1509 ATTY | LISTED AS ATTORNEY FOR C042: VERCELLI CHARLES E J | GEG |
| 10252002 1509 ATTY | LISTED AS ATTORNEY FOR C042: SPRAYBERRY JAMES B | GEG |
| 10252002 1510 PART | HARMON JUDSON ADDED AS C043 (AV02) | GEG |
| 10252002 1510 ATTY | LISTED AS ATTORNEY FOR C043: VERCELLI CHARLES E J | GEG |
| 10252002 1510 ATTY | LISTED AS ATTORNEY FOR C043: SPRAYBERRY JAMES B | GEG |
| 10252002 1510 PART | HARMON BRIA ADDED AS C044 (AV02) | GEG |
| 10252002 1510 ATTY | LISTED AS ATTORNEY FOR C044: VERCELLI CHARLES E J | GEG |
| 10252002 1510 ATTY | LISTED AS ATTORNEY FOR C044: SPRAYBERRY JAMES B | GEG |
| 10252002 1511 PART | LAMACHIA RUSSELL ADDED AS C045 (AV02) | GEG |
| 10252002 1511 ATTY | LISTED AS ATTORNEY FOR C045: VERCELLI CHARLES E J | GEG |
| 10252002 1511 ATTY | LISTED AS ATTORNEY FOR C045: SPRAYBERRY JAMES B | GEG |
| 10252002 1511 PART | PARKER BRANDON ADDED AS C046 (AV02) | GEG |
| 10252002 1511 ATTY | LISTED AS ATTORNEY FOR C046: SPRAYBERRY JAMES B | GEG |
| 10252002 1511 ATTY | LISTED AS ATTORNEY FOR C046: VERCELLI CHARLES E J | GEG |
| 10252002 1512 PART | PARKER AMBUR ADDED AS C047 (AV02) | GEG |
| 10252002 1512 ATTY | LISTED AS ATTORNEY FOR C047: VERCELLI CHARLES E J | GEG |
| 10252002 1512 ATTY | LISTED AS ATTORNEY FOR C047: SPRAYBERRY JAMES B | GEG |
| 10252002 1512 PART | RICHARDSON JEFF ADDED AS C048 (AV02) | GEG |
| 10252002 1512 ATTY | LISTED AS ATTORNEY FOR C048: VERCELLI CHARLES E J | GEG |
| 10252002 1512 ATTY | LISTED AS ATTORNEY FOR C048: SPRAYBERRY JAMES B | GEG |
| 10252002 1513 PART | RICHARDSON NATASHA ADDED AS C049 (AV02) | GEG |
| 10252002 1513 ATTY | LISTED AS ATTORNEY FOR C049: VERCELLI CHARLES E J | GEG |
| 10252002 1513 ATTY | LISTED AS ATTORNEY FOR C049: SPRAYBERRY JAMES B | GEG |
| 10252002 1514 PART | SUMNER TODD ADDED AS C050 (AV02) | GEG |
| 10252002 1514 ATTY | LISTED AS ATTORNEY FOR C050: VERCELLI CHARLES E J | GEG |
| 10252002 1514 ATTY | LISTED AS ATTORNEY FOR C050: SPRAYBERRY JAMES B | GEG |
| 10252002 1514 PART | KING JASMIN ADDED AS C051 (AV02) | GEG |
| 10252002 1514 ATTY | LISTED AS ATTORNEY FOR C051: VERCELLI CHARLES E J | GEG |
| 10252002 1514 ATTY | LISTED AS ATTORNEY FOR C051: SPRAYBERRY JAMES B | GEG |
| 10252002 1514 PART | KING MICHAEL ADDED AS C052 (AV02) | GEG |
| 10252002 1514 ATTY | LISTED AS ATTORNEY FOR C052: VERCELLI CHARLES E J | GEG |
| 10252002 1514 ATTY | LISTED AS ATTORNEY FOR C052: SPRAYBERRY JAMES B | GEG |
| 10252002 1515 PART | KING HAZEL ADDED AS C053 (AV02) | GEG |
| 10252002 1515 ATTY | LISTED AS ATTORNEY FOR C053: SPRAYBERRY JAMES B | GEG |
| 10252002 1515 ATTY | LISTED AS ATTORNEY FOR C053: VERCELLI CHARLES E J | GEG |
| 10252002 1516 PART | KING JOSEPH ADDED AS C054 (AV02) | GEG |
| 10252002 1516 ATTY | LISTED AS ATTORNEY FOR C054: SPRAYBERRY JAMES B | GEG |
| 10252002 1516 ATTY | LISTED AS ATTORNEY FOR C054: VERCELLI CHARLES E J | GEG |
| 10252002 1516 PART | WALLACE AARON ADDED AS C055 (AV02) | GEG |
| 10252002 1516 ATTY | LISTED AS ATTORNEY FOR C055: SPRAYBERRY JAMES B | GEG |

| | | | | |
|---|---|---|---|---|
| 10252002 | 1516 | ATTY | LISTED AS ATTORNEY FOR C055: VERCELLI CHARLES E J | GEG |
| 10252002 | 1517 | PART | PFINGSTON BETTY ADDED AS C056 (AV02) | GEG |
| 10252002 | 1517 | ATTY | LISTED AS ATTORNEY FOR C056: VERCELLI CHARLES E J | GEG |
| 10252002 | 1517 | ATTY | LISTED AS ATTORNEY FOR C056: SPRAYBERRY JAMES B | GEG |
| 10252002 | 1517 | PART | PFINGSTON JESSICA ADDED AS C057 (AV02) | GEG |
| 10252002 | 1517 | ATTY | LISTED AS ATTORNEY FOR C057: SPRAYBERRY JAMES B | GEG |
| 10252002 | 1517 | ATTY | LISTED AS ATTORNEY FOR C057: VERCELLI CHARLES E J | GEG |
| 10252002 | 1517 | PART | BRIGHT WONDA ADDED AS C058 (AV02) | GEG |
| 10252002 | 1517 | ATTY | LISTED AS ATTORNEY FOR C058: VERCELLI CHARLES E J | GEG |
| 10252002 | 1517 | ATTY | LISTED AS ATTORNEY FOR C058: SPRAYBERRY JAMES B | GEG |
| 10252002 | 1534 | ATTY | LISTED AS ATTORNEY FOR C040: SPRAYBERRY JAMES B | GEG |
| 10252002 | 1534 | ATTY | LISTED AS ATTORNEY FOR C041: SPRAYBERRY JAMES B | GEG |
| 10302002 | 1507 | TEXT | PLFS' ANSWER TO COUNTERCLAIM | GEG |
| 11072002 | 1507 | TEXT | ORDER IN REGARD TO MOTION TO DISMISS FILED BY | GEG |
| 11072002 | 1507 | TEXT | YOUNG & GILMER DEFTS | GEG |
| 11072002 | 1507 | TEXT | ORDER GRANTING PLFS' MOTION TO ISSUED SUBPS TO | GEG |
| 11072002 | 1507 | TEXT | R E GRILLS & DAVID B NOONEY | GEG |
| 11082002 | 1443 | ATTY | LISTED AS ATTORNEY FOR D001: BYRAM JAMES A JR | GEG |
| 11082002 | 1500 | PRTY | PARTY ADDED W003 R E GRILLS (AW21) | GEG |
| 11082002 | 1500 | ISSD | PARTY W003 ISSUED DATE: 11082002 TYPE: CERTIFIED | GEG |
| 11082002 | 1500 | PRTY | PARTY ADDED W004 DAVID B NOONEY (AW21) | GEG |
| 11082002 | 1500 | ISSD | PARTY W004 ISSUED DATE: 11082002 TYPE: CERTIFIED | GEG |
| 11142002 | 1504 | SERC | SERVICE OF CERTIFIED MAIL ON 11112002 FOR W003 (A | STM |
| 11182002 | 0953 | TEXT | DEFS' MTN 4 TRANSFER OR CHANGE OF VENUE | STM |
| 11182002 | 0953 | TEXT | SUBMSSN N SUPPT OF DEFS' MTN 4 TRANSFER OR CHANGE | STM |
| 11182002 | 0953 | TEXT | OF VENUE | STM |
| 11182002 | 0953 | TEXT | SUBMSSN N SUPPT OF DEFS' MTN 4 TRANSFER OR CHANGE | STM |
| 11182002 | 0953 | TEXT | OF VENUE | STM |
| 11182002 | 0954 | TEXT | SUBMSSN N SUPPT OF DEFS' MTN 4 TRANSFER OR CHANGE | STM |
| 11182002 | 0954 | TEXT | OF VENUE | STM |
| 11182002 | 0954 | TEXT | SUBMSSN N SUPPT OF DEFS' MTN 4 TRANSFER OR CHANGE | STM |
| 11182002 | 0954 | TEXT | OF VENUE | STM |
| 11192002 | 1104 | TEXT | ORDER DENYING THE MOTION FOR CONTINUANCE. THE | GEG |
| 11192002 | 1104 | TEXT | MOTION TO DISMISS IS RESET FOR 1/3/03. PLFS ARE | GEG |
| 11192002 | 1104 | TEXT | GRANTED 30 DAYS TO NAME & DISCLOSE EXPERT. DEFTS | GEG |
| 11192002 | 1105 | TEXT | ARE GRANTED 60 DAYS TO NAME & DISCLOSE EXPERT | GEG |
| 11212002 | 1343 | TEXT | MTN 2 SEAL EVIDENTIARY SUBMISSIONS | STM |
| 11222002 | 1254 | TEXT | ORDER SETTING ALL PENDING MOTIONS FOR HEARING ON | STM |
| 11222002 | 1254 | TEXT | 1/03/03. THE DEFT'S MOTION TO FILE MATTERS UNDER | GEG |
| 11222002 | 1254 | TEXT | SEAL IS HEREBY DENIED | GEG |
| 11252002 | 1437 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 11252002 | 1631 | TEXT | NOTICE OF NTENT 2 SERVE SUBP ON NPTY/DYNO NOBEL | STM |
| 12132002 | 1244 | TEXT | NOTICE OF SERVICE OF DISCVRY DOCS | STM |
| 12132002 | 1256 | SERC | SERVICE OF NO SERVICE ON 12132002 FOR W004 (A | STM |
| 12192002 | 1625 | TEXT | PLFS EXPERT WITNESS DISCLOSURE | STM |
| 12192002 | 1625 | TEXT | PLFS PRELIM WITNESS LIST | STM |
| 12202002 | 1541 | TEXT | DEFS VIRGINIA YOUNG PRIEST & GILMER PROPERTIES | STM |
| 12202002 | 1541 | TEXT | LTD'S MTN 2 ADOPT MTN 2 SEVER OR 4 SEPARATE | STM |
| 12202002 | 1541 | TEXT | TRL FILED BY HANSON AGGREGATES SOUTHEAST, INC | STM |
| 12202002 | 1543 | TEXT | WONDA BRIGHT'S ANS 2 DEF'S MEDICAL PROVIDER INTERR | STM |
| 12202002 | 1544 | TEXT | WONDA BRIGHT'S ANS 2 DEF'S 1ST SET OF INTERR & REQ | STM |
| 12202002 | 1544 | TEXT | 4 PROD | STM |
| 12202002 | 1545 | TEXT | MTN 2 SEVER OR 4 SEPARATE TRIAL | STM |
| 12302002 | 1129 | TEXT | NOTICE OF NTENT 2 SERVE SUBP ON NPTY/SAULS ENGINEE | STM |
| 01022003 | 0830 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 01022003 | 0831 | TEXT | AMENDMT 2 MTN 2 DISMISS 2ND AMENDED & RESTATED | STM |
| 01022003 | 0831 | TEXT | COMPLAINT | STM |

1765

| | | | | |
|---|---|---|---|---|
| 01022003 | 0847 | TEXT | DEFS' MTN 4 CASE MANAGMT ORDER | STM |
| 01022003 | 0848 | TEXT | MTN 2 COMPEL | STM |
| 01032003 | 1213 | TEXT | AFFDVT OF CAROL ALFORD | STM |
| 01062003 | 0758 | PRTY | PARTY ADDED W005 DYNO NOBEL SOUTHEAST, INC(AW21) | STM |
| 01062003 | 0758 | ISSD | PARTY W005 ISSUED DATE: 01022003 TYPE: CERTIFIED | STM |
| 01132003 | 1324 | SERC | SERVICE OF CERTIFIED MAIL ON 01102003 FOR W005 (A | STM |
| 01142003 | 0759 | TEXT | MITTIE BROADWATERS ANS 2 DEFS MEDCL PROVIDER INTER | STM |
| 01142003 | 0759 | TEXT | BILLY & SHERRY WALLACE'S ANS 2 DEFS MEDCL PROVIDER | STM |
| 01142003 | 0759 | TEXT | INTERR | STM |
| 01142003 | 0759 | TEXT | CHARLES & JACKIE LEDBETTER'S ANS 2 DEFS MEDCL | STM |
| 01142003 | 0759 | TEXT | PROVIDER INTERR | STM |
| 01152003 | 0835 | PRTY | PARTY ADDED W006 SAULS ENGINEERING, INC (AW21) | STM |
| 01152003 | 0835 | ISSD | PARTY W006 ISSUED DATE: 01142003 TYPE: CERTIFIED | STM |
| 01162003 | 0754 | TEXT | MTN 4 REVISED SCHED ORDER | STM |
| 01162003 | 1057 | DAT2 | SET FOR: PRETRIAL CONFERENCE ON 06/19/2003 AT 090 | STM |
| 01162003 | 1057 | DAT3 | SET FOR: TRIAL - JURY ON 07/21/2003 AT 0830A(AV01) | STM |
| 01162003 | 1057 | DAT4 | SET FOR: STATUS CONFERENCE ON 02/04/2003 AT 0900A | STM |
| 01162003 | 1121 | TEXT | PLF'S OBJ 2 DEF'S MTN 2 SEVER | STM |
| 01162003 | 1121 | TEXT | PLF'S OBJ 2 DEF'S MTN 4 CASE MANAGMT | STM |
| 01212003 | 0750 | TEXT | DEFS PRELIM WITNESS LIST | STM |
| 01212003 | 0751 | TEXT | HANSON'S PRELIM EXPERT WITNESS DISCLOSURE | STM |
| 01212003 | 1613 | TEXT | ANTHONY & CAROL CLARK'S ANS 2 DEF'S MEDICAL PROVDR | STM |
| 01212003 | 1613 | TEXT | INTERR | STM |
| 01212003 | 1613 | TEXT | RESPONSE 2 DEF'S MTN 4 TRANSFER OR CHANGE OF VENUE | STM |
| 01212003 | 1613 | TEXT | YOUNG & GILMER DEF'S PRELIM EXPERT WITNESS DISCLSR | STM |
| 01212003 | 1613 | TEXT | & PRELIM WITNESS LIST | STM |
| 01222003 | 0802 | SERC | SERVICE OF CERTIFIED MAIL ON 01162003 FOR W006 (A | STM |
| 01242003 | 1503 | PRTY | PARTY ADDED W007 ZACK SPRAYBERRY (AW21) | STM |
| 01242003 | 1503 | ISSD | PARTY W007 ISSUED DATE: 01242003 TYPE: UNKOWN | STM |
| 01242003 | 1503 | TEXT | NOTICE 2 TAKE DEPO/ZACK SPRAYBERRY | STM |
| 01242003 | 1507 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 01242003 | 1711 | SERC | SERVICE OF PROCESS SERVER ON 01242003 FOR W007 (A | STM |
| 01272003 | 1358 | TEXT | DEF'S 1ST MTN 4 PARTL SUMM JUDGMT | STM |
| 01272003 | 1359 | TEXT | MEMO BRIEF N SUPPT OF DEF'S 1ST MTN 4 PARTL SUMM | STM |
| 01272003 | 1359 | TEXT | JUDGMT | STM |
| 01312003 | 1327 | TEXT | MTN 2 STAY | STM |
| 01312003 | 1432 | TEXT | NOTICE OF NTENT 2 SERVE SUBP ON NPTY/MACTECH | STM |
| 02032003 | 1019 | TEXT | HANSON'S PROPOSED TRIAL PLAN | STM |
| 02032003 | 1517 | TEXT | OBJ 2 DEPO NOTICE & MTN 2 4 PROTECTION ORDER | STM |
| 02032003 | 1517 | TEXT | PLF'S SUPPLMTL EXPERT WITNESS DISCLOSURE | STM |
| 02042003 | 0933 | TEXT | DEF HANSON'S MTN 4 SANCTIONS | STM |
| 02042003 | 1018 | TEXT | AFFDVT OF JERRY INGRAM | STM |
| 02042003 | 1521 | TEXT | BEAUREGARD WATER AUTHORITY'S ANS 2 DEF HANSON'S | STM |
| 02042003 | 1521 | TEXT | INTERR & REQ 4 PROD | STM |
| 02052003 | 1008 | TEXT | DEF HANSON AGGREGATES SOUTHEAST INCS MTN 4 DISCVRY | STM |
| 02052003 | 1008 | TEXT | SANCTIONS | STM |
| 02072003 | 1422 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 02072003 | 1423 | PRTY | PARTY ADDED W008 MR ZACK SPRAYBERRY (AW21) | STM |
| 02072003 | 1423 | ISSD | PARTY W008 ISSUED DATE: 02072003 TYPE: PROCESS SE | STM |
| 02072003 | 1620 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 02072003 | 1620 | TEXT | NOTICE 2 TAKE DEPO/ZACK SPRAYBERRY | STM |
| 02102003 | 1159 | TEXT | ORDER ON VARIOUS MTNS | STM |
| 02102003 | 1620 | TEXT | PLF'S REQ 4 SUPPLMTATION OF PROD FROM DEF HANSON | STM |
| 02102003 | 1620 | TEXT | AGGREGATES | STM |
| 02112003 | 0757 | SERC | SERVICE OF PROCESS SERVER ON 02072003 FOR W008 (A | STM |
| 02112003 | 1451 | TEXT | OBJ 2 NOTICE OF NTENT 2 SERVE NPTY SUBP | STM |
| 02112003 | 1534 | TEXT | PLF'S 1ST MTN 2 COMPEL PROD OF DOCS | STM |

1708

| | | | | |
|---|---|---|---|---|
| 02122003 | 1429 | TEXT | PLF'S RESP 2 DEF'S MTN 4 SANCTIONS | STM |
| 02122003 | 1442 | TEXT | PLFS RESP 2 DEF HANSON'S MTN 4 SANCTIONS RELATED 2 | STM |
| 02122003 | 1442 | TEXT | THE ZACK SPRAYBERRY DEPO NOTICE | STM |
| 02182003 | 0853 | TEXT | HANSON'S REQ 4 INSPECTION | STM |
| 02182003 | 0853 | TEXT | HANSON'S MTN 2 COMPEL | STM |
| 02242003 | 1602 | TEXT | ORDER ON STATUS CONF HELD ON 2/18/03 | STM |
| 02282003 | 1527 | TEXT | NOTICE OF SERVICE OF DISCVRY DOCS | STM |
| 03032003 | 1313 | TEXT | CITY OF OPELIKA & OPELIKA UTIL BD'S ANS 2 DEF | STM |
| 03032003 | 1313 | TEXT | HANSON'S INTERR & REQ 4 PROD | STM |
| 03062003 | 1437 | TEXT | MEMO BRIEF N SUPPT OF DEFS MTN 4 PARTL SUMM JUDGMT | STM |
| 03072003 | 0934 | TEXT | ORDER ON STATUS CONFERENCE | STM |
| 03102003 | 1303 | TEXT | PLF'S RESP 2 DEF'S REQ 4 INSPECTION | STM |
| 03112003 | 1551 | TEXT | JOINDER BY DEFS YOUNG & GILMER 2 MTN 4 SUMM JUDGMT | STM |
| 03112003 | 1551 | TEXT | FILED ON BHALF OF DEF HANSON AGGREGATES SE, INC | STM |
| 03112003 | 1552 | TEXT | DEFS, YOUNG & GILMER JNT REQ 4 ADMSSNS 2 ALL PLFS | STM |
| 03112003 | 1552 | TEXT | SET 4 TRL JULY 21, 2003 | STM |
| 03132003 | 1240 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | NIF |
| 03192003 | 1630 | TEXT | ANSWER & CNTR-CLM OF YOUNG & GILMER DEFS | STM |
| 03192003 | 1634 | TEXT | NOTICE OF SERVICE OF DISCVRY DOCS | STM |
| 03202003 | 1518 | TEXT | PLF'S 1ST MTN 2 COMPEL PROD OF DOCS | STM |
| 03212003 | 0908 | TEXT | SUPPLMT 2 EVIDENTIARY MATERIALS N SUPPT OF HANSONS | STM |
| 03212003 | 0908 | TEXT | MTN 2 TRANSFER OR CHANGE VENUE | STM |
| 03312003 | 1621 | TEXT | NOTICE OF INTENT TO SERVE SUBPOENA ON NON PARTY; | NIF |
| 03312003 | 1621 | TEXT | FRIENDS OF CHEWACLA AND THE UPHAPEE WATERSHED, | NIF |
| 03312003 | 1621 | TEXT | SAVE OUR SAUGAHATCHEE, EAST CENTRAL ALABAMA | NIF |
| 03312003 | 1621 | TEXT | ALLIANCE 4 QUALITY LIVING | NIF |
| 04102003 | 1532 | TEXT | NOTICE OF SERVICE OF DISCVRY DOCS | STM |
| 04142003 | 1426 | TEXT | MTN 4 PARTIAL STAY | STM |
| 04162003 | 0824 | PRTY | PARTY ADDED W009 MARY LOU SMITH (AW21) | STM |
| 04162003 | 0824 | ISSD | PARTY W009 ISSUED DATE: 04162003 TYPE: PROCESS SE | STM |
| 04162003 | 0824 | PRTY | PARTY ADDED W010 TAMMY WILLIAMS (AW21) | STM |
| 04162003 | 0824 | ISSD | PARTY W010 ISSUED DATE: 04162003 TYPE: PROCESS SE | STM |
| 04162003 | 0825 | PRTY | PARTY ADDED W011 CHARLES MITCHELL (AW21) | STM |
| 04162003 | 0825 | ISSD | PARTY W011 ISSUED DATE: 04162003 TYPE: PROCESS SE | STM |
| 04162003 | 1039 | PRTY | PARTY ADDED W012 PAUL B KREBS & ASSOCIATES(AW21) | STM |
| 04162003 | 1039 | ISSD | PARTY W012 ISSUED DATE: 04162003 TYPE: PROCESS SE | STM |
| 04172003 | 1202 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 04172003 | 1531 | TEXT | PLF'S OBJ 2 DEF'S MTN 4 PARTL STAY | STM |
| 04172003 | 1531 | TEXT | PLF'S RESP 2 DEF'S MTN 4 SUMM JUDGMT (AGNST THE | STM |
| 04172003 | 1531 | TEXT | JACKSONS & THE PARKERS) | STM |
| 04182003 | 1522 | TEXT | THE DEF'S HAVE FILED A MTN 2 STAY N THE ABOVE-STYL | STM |
| 04182003 | 1522 | TEXT | CASE. THE CT WILL TAKE THIS MATTER UNDER ADVISMT | STM |
| 04182003 | 1522 | TEXT | 4 A PD OF 30 2 45 DAYS 2 DETERMNE WHETHER OR NOT | STM |
| 04182003 | 1522 | TEXT | THE AL SUPREME CT ISSUES A RULING REGARDNG THE | STM |
| 04182003 | 1522 | TEXT | WRIT OF MANDAMUS. THE PARTIES R 2 CONTINUE W/ | STM |
| 04182003 | 1522 | TEXT | DISCVRY N THIS MATTER. | STM |
| 04222003 | 0938 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | STM |
| 04222003 | 1356 | SERC | SERVICE OF PROCESS SERVER ON 04182003 FOR W012 (A | STM |
| 04252003 | 0924 | SERC | SERVICE OF PROCESS SERVER ON 04242003 FOR W009 (A | STM |
| 04252003 | 0924 | SERC | SERVICE OF PROCESS SERVER ON 04222003 FOR W011 (A | STM |
| 04292003 | 1520 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 05022003 | 0818 | TEXT | NOTICE OF NTENT 2 SERVE SUBP ON NPTY/WATER WORKS B | STM |
| 05052003 | 1207 | TEXT | MTN 4 INDEPENDENT MEDICAL EXAM | STM |
| 05122003 | 1507 | TEXT | PLFS RESP 2 DEFS MTN 4 INDEPENDENT MEDCL EXAM | STM |
| 05132003 | 0934 | TEXT | PLFS ATTYS R GRANTED 15 DAYS N WHICH 2 RESPD 2 THE | STM |
| 05132003 | 0934 | TEXT | DEFS'S MTN 4 MEDCL EXAM JAW | STM |
| 05132003 | 1238 | PRTY | PARTY ADDED W013 BOB FOUSEK (AW21) | CAG |

| | | | | |
|---|---|---|---|---|
| 05132003 | 1238 | ISSD | PARTY W013 ISSUED DATE: 05132003 TYPE: SHERIFF | CAG |
| 05132003 | 1312 | TEXT | NOTICE OF TAKING DEPO/MR REX GRIFFIN | STM |
| 05132003 | 1340 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 05162003 | 0934 | SERC | SERVICE OF SERVED PERSON ON 05152003 FOR W013 (A | STM |
| 05162003 | 1408 | TEXT | PLF'S 2ND MTN 2 COMPEL PROD OF DOCS | STM |
| 05162003 | 1408 | TEXT | MTN 4 HEARING ON MTNS 2 COMPEL | STM |
| 05162003 | 1408 | TEXT | MTN 4 LEAVE 2 ADD PLFS | STM |
| 05192003 | 0819 | TEXT | MTN 4 SUMM JUDGMT | STM |
| 05202003 | 0741 | TEXT | PLF'S 3RD MTN 2 COMPEL PROD OF DOCS | STM |
| 05202003 | 1259 | TEXT | HANSON'S MTN 4 EXTENSION OF DEADLINE 4 FILING MTN | NIF |
| 05202003 | 1259 | TEXT | 4 SUMMARY JUDGMENT | NIF |
| 05202003 | 1300 | TEXT | NOTICE OF CONFLICT | NIF |
| 05232003 | 1602 | TEXT | NOTICE OF RESULTS OF MEDIATION | STM |
| 05272003 | 0908 | PRTY | PARTY ADDED W014 CITY OF AUBURN WATER WORKS B | STM |
| 05272003 | 0908 | ISSD | PARTY W014 ISSUED DATE: 05272003 TYPE: UNKNOWN | STM |
| 05272003 | 0908 | TEXT | ORDER DENYING MTN 2 ADD PLF | STM |
| 05272003 | 0908 | TEXT | ORDER DENYINGMTN 2 STAY TRL REMAINS SET 4 7/21/03 | STM |
| 05272003 | 0908 | TEXT | AT 8:30 AM. PRETRL CONF IS SET 4 6/19/03 AT 9 AM | STM |
| 05272003 | 0908 | TEXT | A STATUS CONF IS SET 4 7/11/03 AT 8:30 AM | STM |
| 05272003 | 0908 | DAT4 | SET FOR: STATUS CONFERENCE ON 07/11/2003 AT 0830A | STM |
| 05292003 | 1630 | TEXT | PETITION 4 RELIEF FROM CONFLICTNG TRL SCHEDLS | STM |
| 05292003 | 1630 | TEXT | & MTN 2 CONTINUE | STM |
| 05302003 | 1330 | TEXT | HANSON'S REPLY 2 PLF'S RESP (MTN 4 INDEPENDT MED | STM |
| 05302003 | 1330 | TEXT | EXAM) | STM |
| 06052003 | 0756 | TEXT | NOTICE OF TAKING DEPO/CORP REPRESENTATIVE | STM |
| 06052003 | 0756 | TEXT | 2ND NOTICE OF TAKING DEPO/REX GRIFFIN | STM |
| 06052003 | 1312 | TEXT | ORDER SETNG HEARING ON 6/13/03 AT 8:30 AM | STM |
| 06052003 | 1313 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | STM |
| 06122003 | 1314 | TEXT | MTN 4 BIFURCATION OF LEGAL & EQUITABLE ISSUES | STM |
| 06132003 | 1117 | TEXT | OBJS 2 NOTICE OF DEPO | STM |
| 06132003 | 1117 | TEXT | MTN 4 PROTECTIVE ORDER | STM |
| 06132003 | 1551 | TEXT | ORDER GRANTING DISCVRY OF PHASE I REPORT | STM |
| 06192003 | 0906 | TEXT | NOTICE OF SERVICE OF DISCVRY DOCS | STM |
| 06192003 | 0906 | TEXT | ANSWER 2 2ND AMENDED COMPLT & AMENDED CNTRCLM 4 | STM |
| 06192003 | 0906 | TEXT | EQUITABLE RELIEF | STM |
| 06192003 | 0906 | TEXT | HANSON AGGREGATES SOUTHEAST, INC'S MEMO BRIEF N | STM |
| 06192003 | 0906 | TEXT | SUPPT OF ITS MTN 4 SUMM JUDGMT | STM |
| 06202003 | 1146 | TEXT | JOINDER BY YOUNG & GILMER DEFS 2 MTN 4 BIFURCATN | STM |
| 06202003 | 1146 | TEXT | OF LEGAL & EQUITABLE ISSUES | STM |
| 06202003 | 1146 | TEXT | PLFS AMENDED WITNESS LIST | STM |
| 06202003 | 1146 | TEXT | HANSON'S WITNESS LIST | STM |
| 06202003 | 1146 | TEXT | VERIFIED APPL OF H WAYNE PHEARS 4 ADMSSN PRO HAC | STM |
| 06202003 | 1146 | TEXT | VICE | STM |
| 06242003 | 1516 | TEXT | PLAINTIFF'S MOTION TO EXCLUDE MARK BARRS | ROE |
| 06242003 | 1609 | TEXT | NOTICE OF SERVICE OF DISCOVERY | ROE |
| 06242003 | 1609 | TEXT | DEFENDANT HANSON'S GENERAL OBJECTIONS TO | ROE |
| 06242003 | 1609 | TEXT | PLAINTIFFS' THIRD INTERROGATORIES AND REQUEST | ROE |
| 06242003 | 1609 | TEXT | FOR PRODUCTION | ROE |
| 06252003 | 0953 | TEXT | PLF'S MTN 4 BIFURCATION OF DEFS | STM |
| 06262003 | 0950 | SUMM | SHERIFF ISSUED: 06/26/2003 TO D002 (AV02) | STM |
| 06262003 | 0950 | PARA | S & C FILED AND SENT TO LCSO FOR SERVICE (AV02) | STM |
| 06262003 | 0951 | SUMM | SHERIFF ISSUED: 06/26/2003 TO D004 (AV02) | STM |
| 06262003 | 0951 | PARA | S & C FILED AND SENT TO LCSO FOR SERVICE (AV02) | STM |
| 06262003 | 0955 | REIS | REISSUE OF CERTIFIED MA ON 06/26/2003 FOR D002 | STM |
| 06262003 | 0955 | REIS | REISSUE OF CERTIFIED MA ON 06/26/2003 FOR D004 | STM |
| 06262003 | 0956 | SUMM | CERTIFIED MAI ISSUED: 06/26/2003 TO D005 (AV02) | STM |
| 06262003 | 0956 | PARA | S & C FILED AND SENT BY CERTIFIED MAIL FOR SERVICE | STM |

| | | | | |
|---|---|---|---|---|
| 06272003 | 1431 | TEXT | PLNTFS' SUPPLEMENTAL WITNESS LIST | NIF |
| 06302003 | 1120 | SERC | D002 SERVED SHERIFF ON 06/27/2003 | STM |
| 06302003 | 1407 | TEXT | ORDER GRANTING WAYNE PHEARS APPL 4 PRO HAC VICE | STM |
| 06302003 | 1410 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | STM |
| 06302003 | 1411 | TRAN | TRANSMITTAL NOTICE SENT TO ALL ATTORNEYS | STM |
| 06302003 | 1427 | TRAN | TRANSMITTAL NOTICE SENT TO CLA076 | STM |
| 06302003 | 1427 | TRAN | TRANSMITTAL NOTICE SENT TO PHE004 | STM |
| 07012003 | 1035 | SERC | D002 SERVED CERTIFIED MAIL ON 06/27/2003 | STM |
| 07012003 | 1036 | SERC | D004 SERVED CERTIFIED MAIL ON 06/28/2003 | STM |
| 07012003 | 1039 | TEXT | NOTICE OF NTENT 2 SERVE SUBP ON NPTY/CHRISTIAN | STM |
| 07012003 | 1039 | TEXT | REINHARDT, P.G. | STM |
| 07012003 | 1039 | TEXT | MTN 2 SHORTEN TIME & ISSUE A SUBP 2 THE WAKE CO. | STM |
| 07012003 | 1039 | TEXT | SUPERIOR CT, NORTH CAROLINA | STM |
| 07012003 | 1536 | TEXT | REQ 4 ISSUANCE OF SUBP 4 DEPO 2 THE WAKE CO. | STM |
| 07012003 | 1536 | TEXT | SUPERIOR CT, NORTH CAROLINA | STM |
| 07012003 | 1536 | TEXT | PLF'S MTN N OPPO 2 SUMM JUDGMT 4 DEF'S | STM |
| 07012003 | 1536 | TEXT | PLF'S BRIEF N OPPO 2 DEF'S MTN 4 SUMM JUDGMT | STM |
| 07072003 | 0826 | TEXT | HANSON'S SUPPLMTL WITNESS LIST | STM |
| 07072003 | 1641 | TEXT | DESIGNATN OF DEPO & EXCHANGE OF EXHIBITS ON BHALF | STM |
| 07072003 | 1641 | TEXT | OF DEFS VIRGINIA YOUNG PRIEST & GILMER PROPERTIE | STM |
| 07072003 | 1641 | TEXT | LTD'S | STM |
| 07082003 | 1434 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 07082003 | 1434 | TEXT | PLFS 2ND SUPPLMTL WITNESS LIST | STM |
| 07102003 | 1528 | TEXT | YOUNG & GILMER DEFS' RESP 2 PLFS MTN 4 BIFURCATION | STM |
| 07102003 | 1528 | TEXT | OF DEFS | STM |
| 07102003 | 1528 | TEXT | MTN 4 CONTINUANCE | STM |
| 07102003 | 1629 | TEXT | OBJ 2 HANSON'S 1ST MTN IN LIMINE | STM |
| 07102003 | 1629 | TEXT | PLFS EMERGNCY MTN 2 PRODUCE SALES AGREEMT | STM |
| 07102003 | 1629 | TEXT | PLFS RESP 2 HANSON 2ND MTN IN LIMINE | STM |
| 07102003 | 1630 | TEXT | HANSON'S AMENDED WITNESS LIST | STM |
| 07102003 | 1634 | PRTY | PARTY ADDED W015 MALCOLM C LABRON, P.E., L.S | STM |
| 07102003 | 1634 | ISSD | PARTY W015 ISSUED DATE: 07102003 TYPE: SHERIFF | STM |
| 07102003 | 1634 | PRTY | PARTY ADDED W016 REX GRIFFIN/CITY OF AUBURN | STM |
| 07102003 | 1634 | ISSD | PARTY W016 ISSUED DATE: 07102003 TYPE: SHERIFF | STM |
| 07102003 | 1635 | PRTY | PARTY ADDED W017 DR ROBERT B COOK (AW21) | STM |
| 07102003 | 1635 | ISSD | PARTY W017 ISSUED DATE: 07102003 TYPE: SHERIFF | STM |
| 07102003 | 1636 | TEXT | OBJ 2 MTN 4 BIFURCATION OF THE DEFS | STM |
| 07102003 | 1637 | TEXT | DESIGNATION OF DEPOSITION TESTIMONY | STM |
| 07102003 | 1638 | TEXT | RENEWED MTN 4 SEPARATE TRL & RENEWED MTN 2 CONTINU | STM |
| 07102003 | 1639 | TEXT | MTN 2 STRIKE OPELIKA'S NEW DAMAGE CLAIM | STM |
| 07102003 | 1640 | TEXT | HANSON'S 1ST MTN IN LIMINE | STM |
| 07102003 | 1641 | TEXT | HANSON'S 2ND MTN IN LIMINE | STM |
| 07142003 | 1547 | D005 | ADDR1 CHANGED FROM: C/O NORTH RIDGE NURSING H | STM |
| 07142003 | 1547 | D005 | ADDR2 CHANGED FROM: 801 MORRIS AVENUE (AV02) | STM |
| 07142003 | 1547 | D005 | ADDR CITY CHANGED FROM: OPELIKA (AV02) | STM |
| 07142003 | 1547 | REIS | REISSUE OF CERTIFIED MA ON 07/14/2003 FOR D005 | STM |
| 07152003 | 1331 | TEXT | NOTICE OF NTENT 2 SERVE SUBP ON NPTY/AL BD OF | STM |
| 07152003 | 1331 | TEXT | LICENSURE 4 PROFESSIONAL GEOLOGISTS | STM |
| 07152003 | 1350 | TEXT | PLFS TRIAL EXHIBIT LIST | STM |
| 07162003 | 1023 | SERC | D005 SERVED CERTIFIED MAIL ON 07/15/2003 | STM |
| 07162003 | 1503 | TEXT | MTN 4 LEAVE 2 AMEND COMPLT & ADD A DEF | STM |
| 07172003 | 1516 | SERC | D005 SERVED SHERIFF ON 07/14/2003 | STM |
| 07172003 | 1516 | SERC | SERVICE OF SERVED PERSON ON 07152003 FOR W016 (A | STM |
| 07172003 | 1528 | SERC | SERVICE OF SERVED PERSON ON 07152003 FOR W017 (A | STM |
| 07182003 | 1321 | TEXT | HANSON'S REPLY 2 PLFS' MTN N OPPO 2 SUMM JUDGMT | STM |
| 07222003 | 0941 | DAT2 | SET FOR: PRETRIAL CONFERENCE ON 09/22/2003 AT 090 | STM |
| 07222003 | 0941 | DAT4 | SET FOR: STATUS CONFERENCE ON 08/01/2003 AT 0130P | STM |

| | | | | |
|---|---|---|---|---|
| 07222003 | 0941 | DAT3 | SET FOR: TRIAL - JURY ON 10/20/2003 AT 0830A(AV01) | STM |
| 07232003 | 0924 | SERC | SERVICE OF SERVED PERSON ON 07162003 FOR W015 (A | STM |
| 07242003 | 1509 | TEXT | ANSWER OF YOUNG DEFS | STM |
| 07242003 | 1509 | ATTY | LISTED AS ATTORNEY FOR D002: DENSON JOHN V II | STM |
| 07242003 | 1510 | ATTY | LISTED AS ATTORNEY FOR D004: DENSON JOHN V II | STM |
| 07242003 | 1510 | ATTY | LISTED AS ATTORNEY FOR D005: DENSON JOHN V II | STM |
| 07282003 | 1415 | TEXT | HANSON'S OBJ 2 PLFS MTN 2 AMEND COMPLAINT & ADD A | STM |
| 07282003 | 1415 | TEXT | DEF | STM |
| 07282003 | 1415 | TEXT | HANSON'S OBJ 2 PLFS EMERGNCY MTN 2 PRODUCE SALES | STM |
| 07282003 | 1415 | TEXT | AGREEMT | STM |
| 07292003 | 1601 | TEXT | PLF BAGGETT'S SUPPLMTL RESP 2 DISCVRY | STM |
| 07292003 | 1601 | TEXT | PLFS' MTN 2 SHORTEN TIME | STM |
| 07302003 | 1411 | TEXT | PLFS RESP 2 HANSON'S OBJ 2 MTN 2 AMEND COMPLAINT | STM |
| 07302003 | 1413 | TEXT | PLFS RESP 2 HANSON'S OBJ 2 PLFS EMERGNCY MTN 2 | STM |
| 07302003 | 1413 | TEXT | PRODUCE SALES AGREEMT | STM |
| 07302003 | 1414 | TEXT | PLFS MTN 2 RECONSIDER ORDER DENYING JOINDER OF | STM |
| 07302003 | 1414 | TEXT | ADDT'L PLFS & MTN 2 JOIN NEW PLF | STM |
| 07312003 | 1531 | TEXT | PLFS MTN 2 RETAIN EXHIBIT | STM |
| 08012003 | 1612 | TEXT | NOTICE OF TAKING DEPO/CORP REP OF OLDCASTLE | STM |
| 08012003 | 1612 | TEXT | 3RD AMENDED & RESTATED COMPLAINT | STM |
| 08012003 | 1612 | TEXT | ORDER GRANTNG MTN 2 ADD DEF | STM |
| 08012003 | 1612 | TEXT | PLF'S MTN 2 APPT PROCESS SERVER | STM |
| 08012003 | 1613 | TEXT | ORDER GRANTING MTN 4 PROCESS SERVER | STM |
| 08012003 | 1613 | PART | OLDCASTLE MATERIALS SOUTHEAST, INC ADDED AS D015 | STM |
| 08012003 | 1613 | SUMM | CERTIFIED MAI ISSUED: 08/01/2003 TO D015 (AV02) | STM |
| 08012003 | 1613 | PARA | S & C FILED AND SENT BY CERTIFIED MAIL FOR SERVICE | STM |
| 08012003 | 1614 | REIS | REISSUE OF PROCESS SERV ON 08/01/2003 FOR D015 | STM |
| 08042003 | 1308 | TEXT | HANSON'S RESP 2 PLFS MTN 2 SHORTEN TIME | STM |
| 08062003 | 0816 | SERC | SERVICE OF PROCESS SERVE ON 08/01/2003 FOR D015 | STM |
| 08062003 | 0817 | SERC | D015 SERVED CERTIFIED MAIL ON 08/04/2003 | STM |
| 08112003 | 1358 | TEXT | STATEMT | STM |
| 08122003 | 1058 | TEXT | ORDER | STM |
| 08122003 | 1059 | DAT4 | SET FOR: STATUS CONFERENCE ON 09/05/2003 AT 1100A | STM |
| 08132003 | 1410 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 08152003 | 1357 | TEXT | NOTICE OF APPEARANCE | STM |
| 08152003 | 1357 | TEXT | MTN 2 CONTINUE & 4 AN ALTERNATE TRIAL PLAN | STM |
| 08152003 | 1357 | ATTY | LISTED AS ATTORNEY FOR D015: ADAMS PHILLIP E JR | STM |
| 08212003 | 0905 | TEXT | NOTICE OF SERVICE OF DISCVRY DOCS | STM |
| 08222003 | 1607 | TEXT | NOTICE OF SERVICE OF DISCVRY DOC | STM |
| 08252003 | 1508 | TEXT | 4TH AMENDED & RESTATED COMPLAINT | STM |
| 08252003 | 1537 | TEXT | MTN 2 DISMISS OR N THE ALTERNTVE MTN 4 SUMM JUDGMT | STM |
| 08252003 | 1538 | TEXT | SUBMSSN STATEMT N SUPPORT OF MTN 2 DISMISS OR N | STM |
| 08252003 | 1538 | TEXT | THE ALTERNTVE MTN 4 SUMM JUDGMT | STM |
| 08272003 | 1504 | TEXT | RENEWED MTN 4 SEPARATE TRL & 2 CONTINUE | STM |
| 08272003 | 1524 | TEXT | ANS OF YOUNG & GILMER DEFS 2 PLFS 3RD AMENDED & | STM |
| 08272003 | 1524 | TEXT | RESTATED COMPLAINT | STM |

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

FILED

SEP 0 4 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, et al.,                      )
                                          )
        Plaintiffs,                       )
                                          )
vs.                                       )        CASE NO. CV-02-85
                                          )
HANSON AGGREGATES                         )
SOUTHEAST, INC. et al.,                   )
                                          )
        Defendants.                       )

## REPLY IN SUPPORT OF MOTION TO CONTINUE AND FOR AN ALTERNATE TRIAL PLAN

Defendant, Oldcastle, Inc. ("Oldcastle"), responds to Plaintiffs' Opposition to Motion to Continue And For An Alternate Trial Plan as follows:

Plaintiffs' opposition is based on nothing more than speculation concerning what *might* happen if this trial were to be continued, and it utterly ignores the practical and legal realities of this case as well as the immense prejudice Oldcastle will suffer if forced prepare and try a complex case in a few weeks which other parties to the litigation have been preparing for months and still are not ready to try. Despite Plaintiffs' suggestion to the contrary, Oldcastle is not Hanson's successor in interest and it does not stand in Hanson's shoes in this case. The recent amendment naming Oldcastle as a party raises entirely new issues for which Oldcastle must be afforded the opportunity to prepare to defend itself.

Plaintiffs' opposition is premised on the speculation that Oldcastle would "continue the nuisance [at the quarry], at great expense to the Plaintiffs and significant danger to the public" and that the trial must therefore go forward next month. Opposition at 4. Not only do Plaintiffs offer no evidence at all to support their conjecture, but it is also refuted by reality. Since Oldcastle's purchase of the quarry from Hanson, operations at the quarry have been dramatically

curtailed while Oldcastle undertakes a complete review of the operation. Indeed, Oldcastle has already implemented or put in motion material changes to the quarry operations that would eliminate entirely or reduce to minimal levels many of Plaintiffs' alleged concerns. These changes include the following:

- Constructing a new noise abatement/beautification berm;

- Constructing a separate noise abatement berm specifically designed to reduce any noise disturbance of the Davis property;

- Assembling and installing a new crushing plant (the main source of any dust and noise disturbance) in the mining pit itself, which, when complete, will eliminate or, at a minimum, drastically curtail any adverse effects previously caused by rock crushing; and

- Changing the previous blasting patterns to eliminate any adverse impact of noise and vibration on the surrounding environment.

Oldcastle anticipates further changes to the operations at the quarry once its assessment of the operation is complete.[1]

Thus, Plaintiffs' claims against Oldcastle raise new issues in this trial that are factually and legally distinct from their claims against Hanson. For example, in their Fourth Amended Complaint, Plaintiffs allege, on information and belief, that Oldcastle "is intending to and will

---

[1] Additionally, Plaintiffs offer nothing but a speculation in their notation in footnote 4 that quarry operations have caused a cavern to develop beneath Spring Villa Road which poses a threat to safety. The fact is that dye tests conducted by Plaintiffs' own expert have failed to make any connection between the operations of the quarry and the groundwater in the vicinity of Spring Villa, and certainly there is no evidence to support Plaintiffs' speculation that Oldcastle's post-acquisition operations have caused or are contributing to this sinkhole or any others.

2

continue the operations of the quarry under the same or similar conditions" as those employed by Hanson. See Fourth Amended Complaint, ¶ 111. Plaintiffs seek damages from Oldcastle based upon its alleged "continuation of the nuisance and continued negligent and wonton operation of the quarry." See Fourth Amended Complaint, Prayer for Relief Against Oldcastle. In order to defend itself against these allegations, Oldcastle is entitled to obtain discovery from Plaintiffs concerning how Oldcastle's operation of the quarry have caused any damage or nuisance. Oldcastle will also have to retain experts to conduct tests and modeling of their operations to demonstrate that the current operations at the quarry have no adverse effect – such as the improper emission of dust or creation of noise or vibrations – on neighboring landowners. Such evidence, which relates directly to Plaintiffs' new allegations against Oldcastle, cannot be gathered overnight. Similar evidence has been assembled and explored by the prior parties over a period of months if not years of painstaking and time-consuming discovery.

Indeed, recognizing that the interests of Oldcastle are very different from those of Hanson, Plaintiffs admit that Rule 25(c) of the Alabama Rules of Civil Procedure (concerning substitution of parties where there has been a transfer of interest) is not at all on point. See Opposition at 4, note 3. As the purchaser of the quarry, Oldcastle is *not*, as a matter of law, Hanson's successor in interest, liable for Plaintiffs' claims against Hanson. *Matrix-Churchill v. Springsteen*, 461 So.2d 782 (Ala. 1984); *Andrews v. John E. Smith's Sons Co.*, 369 So.2d 781, 785 (Ala. 1979). There is therefore no basis for this court to proceed as if Oldcastle stands in Hanson's shoes with regard to this litigation. Oldcastle is a separate party, separately sued, with separate interests to defend on separate facts.

Additionally, Plaintiffs' contention that Oldcastle is guilty of sitting on its rights and stalling in its trial preparation is contrary to the true facts. Frank Heisterkamp, the Oldcastle

3

executive in charge of the Hanson transaction, will testify that, to the best of his recollection, the first Oldcastle heard mention of litigation relating to the Opelika quarry was on May 30, 2003 (slightly more than 90 days ago) during a meeting between representatives of Oldcastle and Hanson—not, as Plaintiffs speculate, months earlier in 2003. The deal closed less than a month-and-a-half later on July 13, and only during the intervening period, in its pre-closing due diligence, did Oldcastle learn any of the specifics of this lawsuit. Plaintiffs then waited until August 1 to amend their complaint to name Oldcastle. Oldcastle promptly retained the undersigned as local counsel, and on August 15, 2003, only a few days later, filed its Motion to Continue.[2] Meanwhile, counsel has been familiarizing themselves with the case, which involves dozens of depositions, the reports of numerous technical experts, and thousands of pages of documents. Contrary to Plaintiff's assertions, Oldcastle has in fact been diligently acting to protect its rights in this litigation. Those rights, however, include the right to adequately prepare for trial.

Plaintiff's similar assertion that Oldcastle should have anticipated that it would be named in this lawsuit and sought to intervene as a defendant is preposterous. See Opposition 4-5. Oldcastle is not liable for any of the damages caused by Hanson's operation of the quarry.

---

[2] Notably, Plaintiffs waited nearly three weeks, until late on September 3, barely one business day before this Court's status conference set for September 5, 2003, to file their last-minute opposition to the motion to continue and to inundate the Court with their inaccurate speculation about Oldcastle's due diligence, Oldcastle's continuing operations, and other matters. Plaintiffs also filed on September 3 their Fourth Motion to Compel seeking to compel Oldcastle to make a corporate representative available for immediate deposition. Oldcastle obviously (and no doubt unsurprisingly) has not had an adequate opportunity to respond to that motion, and will do so in due course. Suffice it to say that Plaintiffs seek to depose Oldcastle's representative before Oldcastle has had a fair opportunity to familiarize itself with the voluminous record in the case, and, in violation of Rule 30(a), within fewer than 30 days after service of the Fourth Amended Complaint.

Moreover, Oldcastle has not engaged in any activity that would constitute a nuisance and therefore had no reason to anticipate being dragged into the litigation. The operation of the quarry is, after all, not a nuisance per se. *McCord v. Green*, 555 So.2d 743, 745-46 (Ala. 1989) *overruled on other grounds* in *Parker v. Ashford*, 661 So.2d 213 (Ala. 1995) ("A nuisance per se is an act, occupation, or structure that is a nuisance at all times and under any circumstances, regardless of location or surroundings . . . Generally, activities or structures that are not illegal are not nuisances per se."). Rather, the quarry is only a nuisance if it is operated in such a manner that it "works hurt, inconvenience or damage to another." Ala. Code § 6-5-120. As discussed above, Oldcastle is in the process of implementing substantial changes in quarry operations that differ in various particulars from prior operations. Oldcastle therefore had no reason to voluntarily make itself a party to this matter, and no reason to believe that it would belatedly be subject to Plaintiffs' baseless allegations against it.

Finally, Plaintiff's sudden sense of urgency is curious in light of the fact that there have been two continuances granted in the case, and they have amended their complaint no fewer than four times naming additional parties and adding new claims. Despite their shrill suggestions of impending disaster, Plaintiffs have not sought a preliminary injunction nor taken any other steps provided by law to deal with a supposed emergency threat of this nature. It is clear that the only reason Plaintiffs conjure up these horribles and oppose Oldcastle's Motion is to put Oldcastle at the distinct disadvantage of having to try a case with virtually no time to conduct discovery or otherwise prepare.

Although it appears that there are no cases in Alabama or federal law presenting a fact pattern precisely like this, common sense and fundamental fairness dictate a clear result. The prudent and appropriate course is not to force Oldcastle to try this complicated case with only a

1775

few weeks of hurried discovery and trial preparation that would inevitably place Oldcastle at a

serious disadvantage and compromise its substantive rights. To do so would severely prejudice

Oldcastle and amount to a violation of its federal and state constitutional rights to due process of

law. In contrast, there is in fact absolutely no prejudice to Plaintiffs if this trial were to be

continued. Therefore, the Court should exercise its discretion to continue the trial, and establish

an orderly schedule affording Oldcastle sufficient time to conduct discovery, retain and prepare

its expert witnesses, and prepare to present its defense.

Respectfully Submitted,

PHILLIP E. ADAMS, JR.

**OF COUNSEL:**

**ADAMS, UMBACH, DAVIDSON & WHITE, LLP**
**P O. Box 2069**
**Opelika, AL  36803-2069**
**Tel. (334) 745-6466**

70258916_1.DOC

6

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 4th day of September, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL 36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

_____
Of Counsel

# IN THE CIRCUIT COURT OF
# LEE COUNTY, ALABAMA

MIKE DAVIS, *et al.*,                    §

        Plaintiffs,            §

vs.                                      §        Civil Action No.:  CV-2002-85

                               §

HANSON AGGREGATES                        §
SOUTHEAST, INC., *et al.*,               §

        Defendants.            §

**F I L E D**

SEP 0 5 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

To:    Clerk
       Lee County Circuit Court
       Justice Center, Room 104
       2311 Gateway Drive
       Opelika, AL

Please take notice that the following discovery documents have been served on behalf of defendant Hanson Aggregates Southeast, Inc.:

( X )    Defendant Hanson's Interrogatories and Request for Production to Plaintiffs Smith, Tankersley and Schwieker;

( X )    Notice of Deposition (City of Opelika);

( X )    Notice of Deposition (Neal Hall);

( X )    Notice of Deposition (Alan Lee);

( X )    Notice  to Take Deposition (Tom Aley);

( X )    Notice of Taking Deposition (Jerry Teel); and

( X )    Deposition Notice to Plaintiffs Smith, Tankersley and Schwieker.

Respectfully submitted this 4th day of September, 2003.

_____
One of the attorneys for Defendant
Hanson Aggregates Southeast, Inc.



OF COUNSEL:

James A. Byram, Jr. (BYR003)
PAUL A. CLARK (CLA076)
**BALCH & BINGHAM LLP**
P. O. Box 78
Montgomery, AL  36101-0078
(334) 834-6500

H. Wayne Phears, Esq.
**PHEARS & MOLDOVAN**
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

### Certificate of Service

I hereby certify that on this 4th day of September, 2003, a copy of the foregoing has been served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
P. O. Drawer 2429
Auburn, AL  36830

Charles E. Vercelli, Jr., Esq.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0404

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
 & White, LLP
Post Office Box 2069
Opelika, Alabama  36803-2069

John V. Denson, Esq.
Samford, Denson, Horsley, Pettey
 & Bridges
P. O. Box 2345
Opelika, AL  36803-2345

Of Counsel

1775

IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
     Plaintiffs,                     )
                                       )
vs.                                    )          CV-2002-85
                                       )
HANSON AGGREGATES SOUTHEAST, INC.,     )
et al.,                                )
                                       )
     Defendants.                     )

TO:    **Neal Hall**
       **County Engineer**
       **Engineers' Office Building**
       **1111 Auburn Street**
       **Opelika, Alabama  36801**

☐ **YOU ARE COMMANDED** to appear in the **Lee County Circuit Court** at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY: | COURTROOM |
|---|---|
| | DATE AND TIME |

■ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION:  Law Offices of Samford, Denson,<br>    Horsley, Pettey & Bridges<br>    709 Avenue A<br>    Opelika, Alabama | DATE AND TIME<br><br>9:00 a.m.<br>September 12, 2003 |
|---|---|

■ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below: **SEE EXHIBIT A ATTACHED HERETO**

| PLACE:   Law Offices of Samford, Denson,<br>    Horsley, Pettey & Bridges<br>    709 Avenue A<br>    Opelika, Alabama | DATE AND TIME<br>9:00 a.m.<br>September 12, 2003 |
|---|---|

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below:

| PREMISES | DATE AND TIME |
|---|---|

| ISSUING OFFICER'S SIGNATURE AND TITLE<br>*Corinne T. Hurst*    *Dep* | DATE<br>9/5/03 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Corinne T. Hurst, Lee County Circuit Clerk, 104  Justice Center, 2311 Gateway Drive, Opelika, AL 36801-6847
(334) 749-7141

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
| SERVED ON (Print name) | | MANNER OF SERVICE |
| SERVED BY (Print name) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Alabama Rules of Civil Procedure, Parts C & D:

(c)     PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)     A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)  (A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

   (B)  Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
   (i)   fails to allow reasonable time for compliance;
   (ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

   (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
   (iv)  subjects a person to undue burden.

   (B)  If a subpoena
   (i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or
   (ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
   (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA

(1)     A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)     When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**EXHIBIT A**

**Documents To Be Produced**

1.  any document relating to sinkholes and/or subsidence in, near or along Lee County Road 166 (Lime Kiln Road)

2.  any document relating to sinkholes and/or subsidence in, near or along Lee County Road 148 (Spring Villa Road)

3.  any document relating to ground penetrating radar testing concerning sinkholes and/or subsidence

4.  any document relating to monitoring for sinkholes and/or subsidence

5.  any document relating to ownership of the bridge over Little Uchee Creek on Lee County Road 148

6.  any document relating to relocation of utility poles/lines on Lee County Road 148 and/or 166.

7.  any document relating to correspondence and/or communications with James Sprayberry and/or Charles Vercelli, including any information requests and/or documents provided in response thereto.

8.  any document relating to correspondence and/or communications with the City of Opelika, the Utilities Board of the City of Opelika, and/or the Beauregard Water Authority, or any person acting on behalf of any of them, relating to sinkholes and/or subsidence in, near, or along Lee County Roads 166 and/or 148.

9.  any document relating to correspondence and/or communications with any person relating to sinkholes and/or subsidence in, near, or along Lee County Roads 166 and/or 148.

10. any document relating to correspondence and/or communications with Hanson Aggregates Southeast, Inc., or any person acting on its behalf, relating to sinkholes and/or subsidence in, near, or along Lee County Roads 166 and/or 148.

11. any document relating to correspondence and/or communications with the County Commissioners, Probate Judge, County employees, or any person acting on behalf of any of them, relating to sinkholes and/or subsidence in, near, or along Lee County Roads 166 and/or 148.

1702

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                         *
        Plaintiff,                    *
v.                                          *          CASE NUMBER: CV-02-85
                                      *
                                      *
HANSON AGGREGATES SOUTHEAST,                *
INC., et al.                                *
        Defendants.                   *

## PLAINTIFF RANDALL PARKER'S SUPPLEMENTAL RESPONSE TO DEFENDANTS INTERROGATORIES AND DEPOSITION QUESTIONS

Plaintiff Randall Parker supplements his prior responses to Defendant's Interrogatories and his deposition responses by adding the following:

Since Spring Villa dried up I have noticed that the water flow in the creek has been down dramatically, even in the wet times. This has changed the character of the creek. It takes only a few days after a rain for the creek level to drop down abnormally again, where as even in dry weather it used to stay at certain levels. This has caused several problems. First, in a couple of spots the creek used to act as a fence for the cows, but now at the low levels of the creek the cows can walk over the sandbars to my neighbors property. In the spot where there used to be water backed up by a beaver dam, the beavers moved out, the cows walked out onto my neighbors property. Second, the creek flow used to add to the beauty of the property. Third, now we have mosquito pools because of the lack of flow or current which also used to keep the water clear. In the past the creek was always clear and flowing. Now it is murky and stagnant. In the past we had a swimming hole and a rope swing, but now the creek is too shallow to dive in or swim in.

1785

"Also, the mud is still coming over on me by the Hanson spoil pile. The mud still comes onto my property and Hanson still has done nothing to fix it."

*Randall Parker*
RANDALL PARKER

STATE OF ALABAMA    }
                    }
COUNTY OF LEE       }

Personally appeared before me, the undersigned Notary Public in and for the State and County aforesaid, the name within Randall Parker, who, after being duly sworn, and having read and fully understanding the foregoing document, states under oath that the facts and matters stated therein are true to the best of his knowledge, information and belief.

SWORN AND SUBSCRIBED BEFORE me this 20th day of Aug ,2003.

*Serene Tyson*
Notary Public

[SEAL]

My Commission Expires: 7-18-07

OF COUNSEL:

CHARLES VERCELLI, JR.,  (VER003)
*Co-Council for Property Owners*
1019 South Perry Street
Montgomery, AL 36104
(334) 834-8807

JAMES B. SPRAYBERRY (SPR008)
*Co-Council for Property Owners*
Post Office Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

1789

GUY GUNTER
*Council for City of Opelika/ Opelika Water Board*
P.O. Box 409
Opelika, Alabama 36801
(334) 745-6288

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the ⟨⟨ day of August, 2003.

| | |
|---|---|
| James A. Byram, Jr., Esq. | H. Wayne Phears |
| Dorman Walker, Esq. | Phears & Moldovan |
| Balch & Bingham, LLP | Suite 375 |
| P.O. Box 78 | 4725 Peachtree Corner Circle |
| Montgomery,  Alabama  36101-0078 | Norcross, GA  30092-3000 |

John Denson, Esq.
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

James B. Sprayberry

IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA



MIKE DAVIS, *et al.*,                    §
                                         §
            Plaintiff,                   §          Civil Action No. CV- 2002-85
                                         §
vs.                                      §
                                         §          F I L E D
HANSON AGGREGATES                        §
SOUTHEAST, INC., *et al.*,               §          SEP 0 5 2003
                                         §
            Defendants.                  §          IN OFFICE
                                                    CORINNE T. HURST
                                                    CIRCUIT CLERK

## AMENDMENT TO RENEWED MOTION FOR SEPARATE TRIAL
## AND TO CONTINUE

Defendant Hanson amends its renewed motion for separate trial and to continue, dated

August 25, 2003, to add as additional grounds for the requested relief the following:

10.    Plaintiff Randall Parker, scheduled for the first trial of this case, has recently

submitted the attached notarized statement "to the best of his knowledge, information, and

belief," to attempt to change his prior interrogatory and deposition answers relating to his

hydrogeology claims and damages regarding his property on Little Uchee Creek. This changed

testimony, first submitted after discovery was closed and after Hanson's summary judgment

motion was filed, if allowed, will require additional discovery, including another deposition of

Mr. Parker, and an inspection of this property by Hanson's lawyers and experts. In his deposition,

he testified that the property was used if at all as pasture for cattle (Depo. at 32-33), that his

concern was with the volume of flow in the Creek (*Id.* at 33), that the quarry had not caused him

to change his use of the property as cow pasture (*Id.* at 40), and that he does not think the value

of this property is affected by the quarry (*Id.* at 109-110).

135713.1

DATED this the 4th day of September, 2003.

_____
One of the attorneys for defendant
Hanson Aggregates Southeast, Inc.

**OF COUNSEL:**
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
P. O. Box 78
Montgomery, AL 36101-0078
Telephone:    (334) 834-6500


H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)


### Certificate of Service

I hereby certify that on this 4th day of September, 2003, a copy of the foregoing has been served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
P. O. Drawer 2429
Auburn, AL 36830

Charles E. Vercelli, Jr., Esq.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0404

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
  & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

John V. Denson, Esq.
Samford, Denson, Horsley, Pettey
  & Bridges
P. O. Box 2345
Opelika, AL 36803-2345

_____
Of Counsel

135713.1                                    2

1787

IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

MIKE DAVIS, *et al.*,                    §
                                         §
              Plaintiffs,                §
                                         §        Civil Action No.:  CV-2002-85
vs.                                      §
                                         §
HANSON AGGREGATES                        §
SOUTHEAST, INC., *et al.*,               §
                                         §
              Defendants.                §

## STIPULATED PROTECTIVE ORDER

Subject to the Court's approval, it is by the parties, STIPULATED AND AGREED

that this Protective Order shall control the use and disposition of any and all records and

information (hereinafter collectively, "the covered discovery") produced by defendants

Hanson Aggregates Southeast, Inc., the Gilmer Defendants and the Young Defendants

who have been served, (collectively the "Defendants"), in this case.

1.    Until further order of the Court, the covered discovery (including all copies

thereof, and all information extracted therefrom and put into other documents) shall be kept

confidential, and counsel shall not permit its disclosure to anyone other than persons

identified in Paragraph 4, *infra*, and except as provided and subject to the conditions stated

herein.

2.    All covered discovery shall bear the legend " *Davis v. Hanson*, Case No.

CV-02-85, SUBJECT TO STIPULATED PROTECTIVE ORDER."

3.    The covered discovery shall be used solely for the purposes of this litigation

and not for any business, commercial, or other purpose.  This Stipulated Protective Order,

116584 1

however, shall not affect the authenticity or admissibility into evidence of covered discovery that is otherwise authenticated or admissible.

4.     The covered discovery and its contents may only be disclosed to:

a.     the Court;

b.     any person to whom disclosure is ordered by the Court or agreed to by the parties;

c.     any counsel for the parties that have entered an appearance in this litigation;

d.     paralegals, secretaries, and attorneys employed by counsel to assist in trial preparation, provided that every such person first reviews this Stipulated Protective Order and agrees to be bound by its terms;

e.     any expert witness who is not an employee of a party consulted by counsel to assist them in preparation of this litigation, provided that every such person first reviews this Stipulated Protective Order and agrees in writing to be bound by its terms;

f.     the parties themselves (whether represented by counsel or otherwise), including persons employed by the parties to assist in this litigation, provided that every such person first reviews this Stipulated Protective Order and agrees in writing to be bound by its terms; and

g.     covered discovery may be shown to or discussed with, but not delivered to, any deponent or witness, provided that every such deponent or lay witness first reviews this Stipulated Protective Order and agrees in writing to be bound by its terms.

5.     All covered discovery shall be maintained under the control of and accounted for by counsel receiving it. Upon final termination of this action, including all appeals therefrom, counsel for the plaintiff shall return to counsel for defendants all covered discovery, unless otherwise agreed to by the parties or ordered by the Court.

6.     If counsel for plaintiffs wants to reclassify any covered discovery as not subject to this order or not confidential matter, that counsel shall notify counsel for

Defendants beforehand to determine whether there exists any objection to reclassification. If an objection is raised, counsel for plaintiff may request a ruling from the Court that such matter be reclassified as not confidential – provided, however, that all such matter shall be treated as protected until the Court has entered its ruling.

7.    Nothing herein shall be deemed to restrict any parties or their counsel with respect to their own documents or documents obtained through discovery outside of this Stipulated Protective Order or through other means.

8.    No party shall be foreclosed by this Stipulated Protective Order from seeking modification of this Order by agreement of the parties or by application to this Court. Unless and until modified, however, covered discovery shall continue to be treated as provided herein.

SO ORDERED THIS _3o<sup>th</sup>_ day of _April_, 2002.

_____
Circuit Judge

FILED
MAY - 2 2002

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

116584 1

3

Stipulated and agreed this _____ *17* ____ day of _____ *April* _____, 2002.

_____
James A. Byram, Jr. (BYR003)
Dorman Walker (WAL086)
One of the attorneys for Defendant
Hanson Aggregates Southeast, Inc.

BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, AL  36101-0078
(334) 834-6500
(334) 269-3115 (fax)

Stipulated and agreed this _____ *25* ____ day of _____ *April* _____, 2002.

_____
John V. Denson (DEN007)
Attorney for the Gilmer Defendants and
Young Defendants who have been served

SAMFORD, DENSON, Horsley, Pettey & Bridges
P. O. Box 2345
Opelika, AL  36803-2345
(334) 745-3504
(334) 745-3506 (fax)

Stipulated and agreed this _____ *22* ____ day of _____ *April* _____, 2002.

_____
James B. Sprayberry (SPR008)
One of the Attorneys for Plaintiffs

LAW OFFICES OF JAMES B. SPRAYBERRY
P. O. Drawer 2429
Auburn, AL  36831-2429
(334) 821-7100

_____
Charles E. Vercelli, Jr. (VER003)
One of the Attorneys for Plaintiffs

VERCELLI & ASSOCIATES, P.C.
1019 South Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

MIKE DAVIS, *et al.*,                      §
                                            §
     Plaintiff,                       §          Civil Action No. CV- 2002-85
                                            §
vs.                                         §
                                            §
HANSON AGGREGATES                           §
SOUTHEAST, INC., *et al.*,                  §
                                            §
     Defendants.                      §



FILED
SEP 0 5 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### MOTION TO ENFORCE STIPULATED PROTECTIVE ORDER, FOR SANCTIONS, AND TO PLACE DOCUMENT UNDER SEAL

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") shows the Court, as follows:

1.    On May 2, 2002, the Court entered, based on the parties' written agreement, a Stipulated Protective Order, a copy of which is attached. The Protective Order permits the defendants to designate documents as "confidential," and provides a procedure for the plaintiffs to contest confidentiality if they disagree.

2.    Hanson produced a copy of the Asset Purchase Agreement between Hanson and Oldcastle to plaintiffs' counsel on August 11, 2003. Each page of the Agreement included the following legend, as provided by paragraph 2 of the Stipulated Protective Order:

*Davis v. Hanson*
CV-02-85
**Subject to Stipulated Protective Order**

3.    In addition, the cover letter transmitting the Agreement to plaintiffs' counsel specifically notified plaintiffs' counsel that the Agreement "has been marked confidential in accordance with the stipulated protective order."

135695.1

4.    Hanson filed a copy of the Agreement with the Court on August 25, 2003 in support of Hanson's motion to dismiss, with a submission statement stating that the Asset Purchase Agreement is "filed under seal pursuant to the Stipulated Protective Order entered May 2, 2002."

5.    On September 3, 2003, plaintiffs' counsel, without previously contacting the undersigned as required by the Order, filed the Asset Purchase Agreement as Exhibit A to a memorandum filed with the Circuit Clerk, thereby making the Agreement a public record, in clear contravention of the Stipulated Protective Order and the agreement of the parties. Plaintiffs' memorandum falsely states at footnote 1 that, "There is no court order requiring that document to be filed under seal."

WHEREFORE, the premises considered, Hanson respectfully files this motion requesting the Court to enter an Order (1) directing the Clerk to place the copy of the Asset Purchase Agreement filed by plaintiffs on September 3, 2003, under seal, and (2) to award Hanson and its attorneys costs and expenses as authorized by Rule 26(c) and Rule 37(a)(4), *Ala.R.Civ.P.*

DATED this the 4th day of September, 2003.

_____
One of the attorneys for defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
P. O. Box 78
Montgomery, AL  36101-0078
Telephone:    (334) 834-6500

135695.1                                        2

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

## Certificate of Service

I hereby certify that on this 4th day of September, 2003, a copy of the foregoing has been served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
P. O. Drawer 2429
Auburn, AL  36830

Charles E. Vercelli, Jr., Esq.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0404

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
 & White, LLP
Post Office Box 2069
Opelika, Alabama  36803-2069

John V. Denson, Esq.
Samford, Denson, Horsley, Pettey
 & Bridges
P. O. Box 2345
Opelika, AL  36803-2345

Of Counsel

135695.1                                              3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                          *
                                             *
            Plaintiff,                       *
                                             *
vs.                                          *          CIVIL ACTION NO. CV 02-085
                                             *
HANSON AGGREGATES                            *
SOUTHEAST, INC., et al,                      *
                                             *
            Defendants.                      *

## <u>ORDER</u>

On September 5, 2003, the Court held a hearing on a Motion to Continue and for an Alternate Trial Plan in the above-styled case that was filed by Attorney Phillip E. Adams, Jr. representing Oldcastle. Upon careful consideration of said motion, the Court determined that all claims against Oldcastle shall be CONTINUED.

FURTHERMORE, the Trial that has been previously set for October 20, 2003, at 8:30 A.M. and the Pretrial Conference that was previously set for September 22, 2003, at 9:00 A.M. shall proceed as scheduled. The Court will hear all those portions of this action that involve the monetary damages of the homeowners, the City of Opelika, the Utilities Board of the City of Opelika, and the Beauregard Water Authority. All parties shall have ten (10) days from the date of this Order in which to add any additional litigants. Also, any Discovery regarding dye testing shall remain open through the October 20, 2003, portion of the action. Any additional matters regarding this portion of the action will be heard at the September 22, 2003, Pretrial Conference.

FURTHERMORE, the second set of homeowners in this action shall proceed to Trial on January 26, 2004, at 8:30 A.M.; a Pretrial Conference date is set for January 8, 2004, at 9:00 A.M.; and a Status Conference date is set for December 9, 2003, at 1:30 P.M. All matters and motions regarding the second set of Homeowners will be heard at the December 9, 2003, Status Conference.

FURTHERMORE, the injunctive portion of this action will commence on either December 15, 2003, at 9:00 A.M., or on February 2, 2004, at 9:00 A.M. This Court will issue a more definite Order scheduling this non-jury portion of the action at a later date.

The Clerk of Court is ordered to mail by ordinary mail are deliver a copy of this Order to the following:

Hon. Jimmy Sprayberry                    Hon. Charles Vercelli, Jr.
Post Office Box 2429                      1019 S. Perry Street
Auburn, AL 36831-2429                    Montgomery, AL 36104

1795

Hon. James Byram, Jr.
Hon. Dorman Walker
Hon. Matt Parnell
Post Office Box 78
Montgomery, AL 36101

Hon. John V. Denson
Post Office Box 2345
Opelika, AL 36803-2345

Hon. Phillip E. Adams, Jr.
Post Office Box 2069
Opelika, AL 36803-2069

Hon. Guy Gunter
Opelika, AL 36803-0409
Post Office Box 409

Hon. H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

DONE this the 11th day of September, 2003.

JACOB A. WALKER, III
Circuit Judge

FILED

SEP 1 5 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED

SEP 16 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO CONTINUE

Plaintiffs move this Honorable Court to continue the trial of this case currently set for October 20 and as grounds for this motion, say:

1.      Defendants Oldcastle and Hanson moved the Court to continue the case. Plaintiffs resisted.  On September 5, the Court denied Hanson's motion to continue and granted Oldcastle's motion, thereby creating separate trials on what are largely identical claims.

2.      Counsel for Plaintiffs initially believed that this trial division would be a workable plan that would not unduly prejudice any party.  However upon thoughtful consideration, Plaintiffs respectfully move the Court to reconsider its order and to postpone the trial against Hanson and the injunctive trial against Oldcastle, and to "merge the two so that there will only be one trial rather than two.

3.      The Court has scheduled much of the weeks of January 29 and February 3 for trials in this case.  Plaintiffs move this Honorable Court instead to conduct the trial of the first set of Plaintiffs against both Hanson and Oldcastle at that time.

4.     The reasons Plaintiffs feel strongly that trying the case in October and again in December and/or January and/or February is not a workable plan include:

- First, trying the case against Hanson and the case against Oldcastle separately will definitely require the same witnesses to testify twice. This would cause a substantial increase in cost to the Plaintiffs and would burden the Court system with two full, lengthy, and expensive jury trials. This is because Oldcastle will doubtless argue that not having had the opportunity to cross-examine Plaintiffs' witnesses, their testimony would not be admissible during the Oldcastle trial. Moreover, Plaintiffs will argue that they are entitled to examine their witnesses live in front of the Oldcastle jury, during which trial virtually the same evidence will be elicited. The result is that this case will end up taking between four and six weeks of trial time instead of two to three weeks of trial time.

- Second, two lengthy and virtually identical trials will place a severe hardship upon the plaintiffs. This is because the Plaintiffs will incur twice the out-of-pocket expenses of thousands of dollars to the experts, and because many of the Plaintiffs would be forced to lose substantial time from work. For example, Mayor Patton, Dan Hilyer (Director of the Utilities Board), and Bobby Henderson (Manager of Beauregard Water Authority) will be the trial corporate representatives. These officials would be required to attend two trials and would literally lose 4-6 weeks or more of time from their duties. In addition, the homeowners, most are working class people, will have to take vacation leave or go without pay to come back for a

2

second trial–assuming their employers would even allow them to take that much time off. Taking that much time off will cause a severe financial hardship on many of the Plaintiffs, and/or would mean that many of them could not be present at all in court while the jury decides their case. Simply put, these people just cannot take four or more weeks off for trial several times.

- Third, during the hearing on September 5th, none of the parties adequately addressed the number of witnesses to testify. Plaintiffs will definitely have not less than 41 nor more than 46 witnesses at the first trial. Hanson advises that it will have an additional 12-14 witnesses, for a total of approximately 53-60 witnesses. At just one hour each (which is not possible), the October trial would take all of 10 six-hour trial days, not counting jury selection, various arguments of counsel, opening statements (2 hours per side), and closing statements (2 hours per side), etc. It is not physically possible, therefore, to try this case in less than 2 ½ weeks, with the probability that the Hanson case will try for all of 3 weeks and possibly into a fourth.

- Fourth, in the case against Hanson, a jury must determine the issue whether Hanson's actions are a nuisance. In the case against Oldcastle, a jury must determine whether Oldcastle's operation is a nuisance. In both cases, the jury(ies) would have to assess the damages against the two defendants, each of whom would try to shift the problem to the other. Thus, to allow separate verdicts could easily result in inconsistent jury verdicts on the question whether the quarry operation is

3



a nuisance and may well result in the Plaintiffs not being awarded their full measure of damages by virtue of the "absent defendant" arguments of both defendants. This would certainly give one or more parties serious appellate issues that might require the reversal of one or both cases and, therefore, the re-trial of one or both cases.

- Fifth, Hanson has argued that it should be allowed more time to conduct a dye test. While Plaintiffs do not believe Hanson to be entitled to such extended time, Hanson will doubtless appeal this issue in the event Plaintiffs prevail. Hanson has also repeatedly argued that it has not had time to undertake one or more aspects of discovery, and will doubtless appeal on those grounds as well. Postponing this trial until early next year will avoid these appealable issues and will give Hanson sufficient time to fully prepare its defense.

- Sixth, similarly, Oldcastle has argued that it is unfair to be pressed for trial and will doubtless argue on appeal that it did not have time to prepare for a December trial. Granting it additional time until late January will therefore eliminate Oldcastle's perceived inability properly to defend itself–and thus an appellate issue.

- Seventh, allowing more time for the dye test results to be obtained will enhance the reliability of Plaintiffs' and Defendants' dye tests, thereby possibly avoiding another appellate issue.

- Eighth, by splitting the trial against Hanson and Oldcastle into separate parts, it will be extremely difficult for the two juries properly to apportion Plaintiffs' damages.

4

One jury presented all of the facts may more consistently and more fairly apportion the damages between Hanson and Oldcastle based upon the conduct of the parties. This is necessarily so because Oldcastle and Hanson are at this time joint tortfeasors whose conduct combines and concurs to create continuing harm to Plaintiffs. Hanson's conduct through July, 2003, created damages and the situation for damages to continue well into the future. Oldcastle's continued pumping, blasting, noise, dust, and truck traffic (among other things) continues the problem begun by Hanson. To allow separate trials would allow these Defendants to blame the other, absent Defendant and in both cases, the defendants will attempt to limit Plaintiffs' evidence, which would be much to Plaintiffs' prejudice.

- Ninth, by splitting the case into separate trials against Hanson and Oldcastle, each would argue to Your Honor and/or to the jury, to Plaintiffs' prejudice, that it/they should not be held liable for punitive damages. For example, if a jury returned a punitive award against Hanson first, Oldcastle would try to assert that such an award would preclude a punitive award against Oldcastle. Our position is that it would not preclude a punitive verdict against Oldcastle because, *inter alia*, Oldcastle knowingly and voluntarily continued a known nuisance and danger to the public. However, this possibility unnecessarily complicates the trials and/or the appeals. By having one jury determine whether punitive damages are appropriate and against which defendant and in what amounts, would eliminate arguments of unfair

apportionment and/or legal inappropriateness of punitive damages against the two defendants.

5.    While the Plaintiffs believe it is important to try this case as quickly as possible, and that public safety requires a prompt trial, Plaintiffs believe, on balance, that it is better to wait another two or three months and try the entire case cleanly than to try the case piecemeal and potentially ensure reversible error.

6.    Make no mistake: Plaintiffs earnestly desire a prompt trial on all issues. However, given the multiple problems of separate trials, Plaintiffs feel it is clearly in their best interests and in the best interests of judicial economy (especially given the tight budgetary problems) and reliability of the verdict that the case be continued until such time as Plaintiffs' claims against all Defendants are tried together.

**WHEREFORE**, for good cause shown, Plaintiffs move this Honorable Court to reconsider its decision of September 5th and to reschedule the trial so that both Hanson and Oldcastle may be tried together early in 2004.

**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

6

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
 & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage
prepaid, this the _15th_ day of _Sept_____, 2003.

_____
OF COUNSEL

155-00\PsMot-Cont.5.wpd

7

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**FILED**

SEP 1 8 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, et al.,               )
                                  )
          Plaintiffs,             )
                                  )
v.                                )
                                  )    CIVIL ACTION NO. CV-02-85
HANSON AGGREGATES SOUTHEAST,      )
INC., et al.,                     )
                                  )
          Defendants.             )
                                  )

## MOTION FOR LEAVE TO WITHDRAW

Comes now Dorman Walker and moves the Court for leave to withdraw as counsel for

defendant Hanson Aggregates Southeast, Inc. ("Hanson"), and as grounds states that Hanson will

henceforth continue to be represented by James A. Byram , Paul A. Clark, and H. Wayne Phears.

DATED this the 17th day of September, 2003.

_____
Dorman Walker (WAL086)

**OF COUNSEL:**

James A. Byram, Jr. (BYR003)        H. Wayne Phears, Esq.
Dorman Walker (WAL086)              Phears & Moldovan
Paul A. Clark (CLA076)              4725 Peachtree Corner Circle
BALCH & BINGHAM LLP                 Suite 375
Post Office Box 78                  Norcross, Georgia 30092
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

136161 1

1804

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by United States Mail, properly addressed and postage prepaid, on this the 17th day of September, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429


Charles E. Vercelli, Jr., Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson & White, LLP
Post Office Box 2069
Opelika, Alabama  36803-2069

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, Alabama  36803-0409

Of Counsel

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

FILED
SEP 19 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CASE NO. CV-02-85 |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC. et al., | ) |
| | ) |
| Defendants. | ) |

## OPPOSITION TO PLAINTIFF'S MOTION TO CONTINUE

Defendant, Oldcastle, Inc. ("Oldcastle"), responds to Plaintiffs' Motion to Continue as follows:

Only ten days before they filed this Motion to Continue, Plaintiffs opposed Oldcastle's Motion To Continue And For An Alternate Trial Plan, vociferously arguing that they would be unduly prejudiced if the October 20 trial date were to be continued and that they were fully prepared to proceed on the scheduled trial date. After carefully considering the written briefs and the oral arguments of the parties, this Court, exercising its broad discretion under Rule 42(b) of the Alabama Rules of Civil Procedure, entered a formal order on September 11, 2003 providing that the claims against Oldcastle should be tried separately from the claims against Hanson and that the trial of selected individual damage claims and all of the municipal damage claims against Hanson should proceed on October 20. In an abrupt about-face, Plaintiffs now bring this Motion to Continue asking this Court to reconsider its September 11 order and to continue the October 20 trial against Hanson so that it can be joined with the trial against Oldcastle.

This Court should deny Plaintiffs' Motion because the Court properly ordered separate trials when it addressed these same matters only a short while ago. In effect, before this Court are Plaintiffs' claims against two separate defendants concerning two separate quarry operations and seeking two different types of remedies. Moreover, both sets of claims raise their own complex factual and legal issues. Combining these claims into one mega-trial would complicate the matter further and require Oldcastle to prepare for and attend a lengthy trial, major portions of which ultimately might not concern it. Thus, this Court correctly concluded that having two separate trials was the optimal way to proceed, and it should not alter its prior ruling.

However, should this Court be inclined to grant Plaintiffs' Motion and try all of Plaintiffs' claims at one time, Oldcastle respectfully requests that the combined trial be set at a time to allow Oldcastle sufficient time to conduct the necessary additional discovery and to prepare for what most assuredly would be a more complex joint trial.

## A. THIS COURT PROPERLY ORDERED SEPARATE TRIALS AND SHOULD THEREFORE DENY PLAINTIFFS' MOTION.

Plaintiffs' motion suggests that having separate trials as to Hanson and Oldcastle would be complex and unworkable, while having a single trial would be simple and straightforward. That is not the case. Plaintiffs' claims against Hanson and Oldcastle involve complicated and multifaceted issues that will be complex to try, whether they are tried together or separately. The issue is therefore which trial plan would combine the greatest judicial economy with the least prejudice to the parties -- a large, joint trial in which all of the various claims are tried at once, or separate trials that focus on the claims particularly relevant to the distinct quarry operations of Hanson and Oldcastle.

"Rule 42(b) gives the trial court a virtually unlimited freedom to order separate trials of claims, issues or parties, as may seem dictated by convenience and the desire to avoid prejudice."

2


*Circuit Court No.* CV02–85  *Supreme Court No.* 1040857

# APPEAL

## TO

# Supreme Court of Alabama

## FROM

MIKE & DONNA DAVIS ETAL—OLDCASTLE MATERIALS SOUTHEAST, INC & HANSON
AGGREGATES SOUTHEAST, INC.                                 *Appellant*

## vs.

HANSON AGGREGATES SOUTHEAST, INC ETAL. & CITY OF OPELIKA, CITY OF
OPELIKA UTILITIES BOARD ETAL.                             *Appellee*

1807

Ala. R. Civ. P. Rule 42 committee comment; *see also Wilder v. Di Piazza*, 481 So. 2d 1091, 1092 (Ala. 1985) ("Generally, trial judges have broad discretion to order separate trials"); *Chiriaco v. Jacks*, 421 So. 2d 1272, 1273 (Ala. Civ. App. 1982) ("The trial judge possesses broad discretion in ordering the separate trial of various issues"). There are a number of reasons why this Court correctly exercised its discretion in ordering separate trials as to Hanson and Oldcastle and why it should not reconsider that order.

First, much of the evidence concerning Plaintiffs' damages claims against Hanson is irrelevant and potentially highly prejudicial to Oldcastle because that evidence is not relevant to Oldcastle's brief, recent period of limited quarry operations. Plaintiffs claim that during the four years Hanson operated the quarry it engaged in indiscriminate blasting, dewatering and excavation, and that this activity created excessive noise, vibration and dust, depleted the groundwater supply, caused damage to Plaintiffs' property, and led to a multitude of adverse health effects. Plaintiffs also contend that Hanson callously ignored their pleas to remedy the situation. Even assuming *arguendo* that Plaintiffs were able to prove that *Hanson* operated the quarry in a reckless and wanton manner, that evidence would be irrelevant to whether *Oldcastle's* subsequent operation of the quarry amounts to a nuisance and should be enjoined.[1] There is great danger that Oldcastle could be found guilty by association, and its current operation of the quarry blurred with Hanson's past activities.

---

[1] As set forth in Oldcastle's Reply In Support Of Motion To Continue And For An Alternate Trial Plan, Oldcastle has curtailed its operations at the quarry while it undertakes a complete review of the operation, and it has already put in motion material changes to the quarry operations, including constructing a new noise abatement/beautification berm, installing a new crushing plant which will drastically reduce any adverse effects previously caused by rock crushing, and changing the blasting patterns.

3

It is well settled that separate trials are appropriate where, as here, evidence on an issue relevant to one defendant would be irrelevant and prejudicial to another defendant. *Wilder*, 481 So. 2d at 1092 (trial court properly ordered separate trials of negligence claim against driver and negligent entrustment claim against driver's father where driver's past driving record was admissible in negligent entrustment claim but not in negligence claim). The Court's September 11 order correctly shields Oldcastle from the possible prejudice of having to defend and answer for Hanson's operation of the quarry.

Additionally, trying Plaintiffs' damages claims against Hanson at the same time as their injunctive claims against Oldcastle would require Oldcastle to prepare for and attend large portions of a trial that would likely not pertain to it. There are multiple individual plaintiffs in this matter who are asserting numerous damages claims against Hanson, including personal injury and physical damage to their property. Trial of these claims would involve testimony from the individual plaintiffs concerning their alleged health problems and property damage; testimony from their treating physicians and medical experts concerning the diagnosis, causation and prognosis of their alleged health problems; and expert testimony concerning Plaintiffs' property damage. As Plaintiffs' point out in their Motion, they anticipate having as many as 46 witnesses and Hanson as many as 14 witnesses in the damages trial, which could take as long as four weeks. *See Motion* at 3. There is no reason to require Oldcastle to prepare for and sit through a lengthy sub-trial on these issues.

Third, Plaintiffs are only asserting legal claims for damages against Hanson – for which they are entitled to a jury – but are primarily asserting an equitable claim for an injunction

4

against Oldcastle's continued operation of the quarry – for which they are not entitled to a jury.[2]
Courts commonly provide for separate trials where the case involves both equitable and legal
claims. *See, e.g., Waters v. Moody*, 716 So. 2d 728 (Ala. Civ. App. 1998) (boundary issues had
been tried separately from trespass claims).

Plaintiffs have offered no convincing countervailing reasons why a single, large joint trial
would be preferable to the separate trials ordered by this Court. The fact that some Plaintiffs
may have to attend two separate trials and testify twice is not a sufficient ground to combine the
trials. If it were, then a court would never be justified in ordering separate trials under
Rule 42(b). Similarly, the fact that some witnesses may have to testify twice concerning issues
common to both trials is inherent in having separate trials.[3] As the Court noted at the
September 5 conference with all counsel, there is also every reason to believe that the parties will
act in good faith and with common sense to minimize unnecessary duplication of testimony.
Oldcastle certainly has no desire to unnecessarily prolong the proof of an issue that had been
established in the first trial.

Additionally, Plaintiffs raise a red herring by arguing that separate trials will create an
"absent defendant" problem and make it difficult for two different juries to apportion damages.

---

[2] Though Plaintiffs allege that Oldcastle's continued operation of the quarry gives rise to a
claim for damages – allegations which were filed a few short weeks after Oldcastle took over
the quarry and without any factual basis at all – Oldcastle is confident that the record will
show that Plaintiffs' have suffered absolutely no personal injury or property damage caused
by its operation of the quarry, and that the only cause of action they will be able to proceed
on is their claim for injunctive relief.

[3] Contrary to Plaintiffs' assertion, it is by no means clear that the hydrogeological evidence to
be offered at the two trials would be duplicative or substantially overlapping. In any event,
given the complexity of the issues that would presented at a single joint trial, as a practical
matter sound judicial management may require that certain expert witnesses testify on more
than one occasion.

It is unlikely that Hanson and Oldcastle would be found to be joint tortfeasors with regard to most of Plaintiffs' alleged damages. *See Opposition* at 3-5. More likely, if liability were found at all, Hanson would be found separately liable for any nuisance, damage or personal injury caused by its operation of the quarry before July 13, 2003, and Oldcastle separately liable for any nuisance, damage or personal injury caused by its operation of the quarry after that date. It is highly unlikely that Hanson could or would credibly point to the empty chair and try to blame Oldcastle, the newcomer, for any substantial damages based on Oldcastle's brief period of operations after July 13, 2003.

Accordingly, this court properly exercised its discretion when it ordered separate trials in this matter, and there is no reason for it to reconsider its order. Having two trials focused on the claims relating to each defendant would be less complex than one protracted trial in which all of the claims are tried at once. Moreover, whatever inconvenience Plaintiffs may suffer on account of having to put on two trials is outweighed by the prejudice Oldcastle would suffer by having to be a party to a trial overwhelmingly focused on allegedly tortious conduct for which Oldcastle is not responsible.

**B.**    **IF THIS COURT WERE TO JOINT THE TWO TRIALS, THE JOINT TRIAL SHOULD BE SET NO EARLIER THAN _____.**

As discussed above, a joint trial of Plaintiffs' claims against Hanson and their claims against Oldcastle would be much more complex than having a separate trial as to Oldcastle alone. Instead of being limited to those issues that pertain only to Oldcastle – its operation of the quarry and whether it should be enjoined – the trial would include issues and evidence not directly related to claims against Oldcastle, such as Plaintiffs' personal injury and property damage claims. Yet it is unclear to what extent such evidence might reflect adversely on Oldcastle before the jury. Oldcastle could not go into such a trial unprepared to address such

6

evidence and hope that the jury would be able to properly parse through the various claims as

between it and Hanson. Oldcastle would need time to evaluate and prepare to defend with

respect to the testimony of numerous witnesses expected to testify at a joint trial. Such

preparation would include reviewing and/or obtaining discovery from each of the fact and expert

witnesses the other parties intend to offer at trial and determining whether Oldcastle should

present its own witnesses to address such testimony. If, for example, the jury is going to be

hearing evidence concerning a particular plaintiff's alleged inflammatory lung disease or acute

respiratory distress syndrome and be led to believe these conditions were caused by the quarry,

Oldcastle would have to consider offering its own expert witness to refute these allegations.

Therefore, if this Court were inclined to grant Plaintiffs' Motion and merge the two trials,

Oldcastle respectfully requests that the trial be set no earlier than May 1, 2004..

Respectfully Submitted,

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

BY: _____
    PHILLIP E. ADAMS, JR.
    P. O. Box 2069
    Opelika, AL  36803-2069
    Tel. (334) 745-6466

70259972_1.DOC

7

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 19th day of September, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
 Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

_____
Of Counsel

IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, *et al.*, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. CV- 2002-85 |
| | § | |
| vs. | § | |
| | § | |
| HANSON AGGREGATES | § | |
| SOUTHEAST, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |



FILED
SEP 18 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## HANSON'S RESPONSE TO PLAINTIFFS' MOTION TO CONTINUE
## AND RENEWED MOTION FOR SEPARATE TRIAL

Defendant Hanson Aggregates Southeast, Inc. responds to plaintiffs' motion to continue and renews its motions for a separate trial, and shows the Court as follows:

1.    It appears based on plaintiffs' motion to continue filed September 15, 2003, that plaintiffs' counsel now agree with Hanson, Oldcastle and the Gilmer and Young defendants that the hydrogeology case is not ready for trial and that the current trial plan will require multiple trials of the hydrogeology issues. Hanson respectfully submits, based on the matters urged at the September 5 hearing and in Hanson's motion for separate trial filed August 27, 2003, that the Court should continue the case, at least as to the hydrogeology issues.

2.    Plaintiffs' recent motion demonstrates, moreover, the wisdom of Hanson and Oldcastle's suggestions that the hydrology issues should be divided from the quarry noise, dust and blasting claims. A combined trial of these issues would not be manageable. Plaintiffs' motion to continue states that they plan to call from 41 to 46 witnesses, that Hanson would call 12 to 14 witnesses, for a total of approximately 53 to 60 witnesses, and that this would most likely take all of three and possibly four weeks to try. In other words, plaintiffs say they need all

of the two weeks now scheduled for October 20 just for their case. Many of these witnesses and much of the trial time would be eliminated were the Court to sever the hydrogeology claims from the quarry noise, dust, blasting, etc. claims.

3.     The hydrogeology case involves the following witnesses who would not need to be called for a case involving quarry noise, dust, blasting claims.

**Plaintiffs' Experts**

(1)    Tom Aley
(2)    Roger Getz
(3)    Dr. James Saunders
(4)    David Hicks

**Parties**

(5)    Mayor Barbara Patton (City of Opelika)
(6)    Jerry Teel (City of Opelika)
(7)    Bill Harrelson (City of Opelika)
(8)    Dan Hilyer (Utilities Board of the City of Opelika)
(9)    Alan Lee (Utilities Board of the City of Opelika)\
(10)   Bobby Henderson (Beauregard Water Authority)

**Individual Plaintiffs With Only Hydrogeology Claims**

(11)    Donnie Smith
(12-13)  Mr. and Mrs. David Tankersley
(14-15)  Mr. and Mrs. Ken Schwieker

**Defendant's Experts**

(16)    Dr. Bob Cook
(17)    Bob Wood
(18)    Dr. Ralph Ewers
(19)    Rex Griffin

**Non-Party Witnesses**

(20)    Neal Hall (Lee County Highway Engineer)
(21)    Danny Moore (Alabama Geological Survey)
(22)    Representative of ADEM

All of these witnesses could be eliminated by a severance of the hydrogeology issues, thereby saving many weeks of trial time.

4.    The trial of the individual plaintiffs' claims concerning quarry noise, dust, blasting, etc. claims will involve approximately 33 witnesses (22 for plaintiff, 11 for Hanson), requiring at least two weeks of trial time. In addition, to the six plaintiff groups, plus additional plaintiff "witnesses," plaintiffs have a blasting/construction expert, Dr. Tom Cooper, and two treating physicians, Dr. Stiles and Dr. Nichols. In addition to employee and defendant witnesses, Hanson has a noise expert (Harold Merck), a blasting expert (McRoy Sauls), a structural engineer (Joel Wehrman), a real estate appraiser (Mark Barrs), and a medical expert, Dr. David Thrasher.

5.    Further, Oldcastle's reply memorandum filed September 4, disclosed its plans to change the way the quarry operates with respect to plaintiffs' blasting, noise and dust claims. Accordingly, whether the quarry operations damaged the plaintiffs in these respects prior to July 11, 2003, is simply not an issue with respect to Oldcastle. On the other hand, Oldcastle presumably will de-water the quarry. Accordingly, a continuance and severance would allow all hydrogeology issues involving all parties to be decided in one trial.

6.    Hanson submits that the most appropriate trial plan is to continue the trial of the hydrogeology issues and to set them far enough in advance so that all hydrogeology issues and parties can be tried at one time. The noise, dust, blasting, etc. damage claims for quarry operation prior to July 11, 2003, should be tried separately beginning on October 20. At that time there are six plaintiffs scheduled for trial, and the parties could possibly agree on others to include. This would require all of the two weeks scheduled and would, as the Court has always

planned, serve as a benchmark for the possible settlement of the claims of the numerous other plaintiffs who simply do not have hydrogeological claims.

DATED this the _18_ day of September, 2003.

_____
One of the attorneys for defendant
Hanson Aggregates Southeast, Inc.

**OF COUNSEL**:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
P. O. Box 78
Montgomery, AL 36101-0078
Telephone:    (334) 834-6500


H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

1817

## Certificate of Service

I hereby certify that on this ___18___ day of September, 2003, a copy of the foregoing has been served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
P. O. Drawer 2429
Auburn, AL 36830

Charles E. Vercelli, Jr., Esq.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0404

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
  & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

John V. Denson, Esq.
Samford, Denson, Horsley, Pettey
  & Bridges
P. O. Box 2345
Opelika, AL 36803-2345

Of Counsel

136139.1

5

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                             )
                                                )
               Plaintiffs,                  )
                                                )
vs.                                             )          Civil Action No. CV-02-0085
                                                )
HANSON AGGREGATES SOUTHEAST,                    )
INC., et al.,                                   )
                                                )
               Defendants.                  )

FILED

SEP 18 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### PLAINTIFFS' STATEMENT OF FACT AND SUBMISSIONS IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

The Plaintiffs submit the following documents in opposition to the Defendants' Motions for Summary Judgment. Please note that the interrogatory responses of many of the parties, but not all of them, are submitted instead of their depositions because to submit the depositions would be extremely lengthy. The interrogatory responses briefly set forth the facts that are stated in more detail in the depositions of the witnesses. Additionally, the Plaintiffs are not submitting every document in support of their claims for negligence, wantonness, and entitlement to punitive damages because to do so would literally require hundreds of pages to be attached to this document in what is already an overburdened Court file. In this regard, Plaintiffs attach a copy of their exhibit list. The following are the documents submitted in opposition to Defendants' motions, and a brief description of the evidence therefrom:

| Tab # | Description |
|-------|-------------|
| 1 | Plaintiffs' Trial Exhibit List.  Note that Plaintiffs have listed 135 exhibits. |
| 2 | City of Opelika and Opelika Utilities Board's Answer to Defendant Hanson's Interrogatories and Requests for Production.  These sworn interrogatory responses demonstrate that Spring Villa and Little Uchee Creek have both gone dry, that there has been an artificial lowering of the water table and sinkhole formation in the area, that Hanson breached its agreement to provide engineering data to the City, and the interrogatories also state that the record showed that the spring had never gone dry until Hanson began to pump a large amount of water from the quarry and that sinkholes have formed and reappeared around the quarry. |
| 3 | Beauregard Water Authority's Answer to Defendant Hanson's Interrogatories and Requests for Production.  Beauregard notes that its water level in well number 4, closest to the quarry, has declined and the amount of water it can pump has decreased.  This is also noted in the deposition of Mr. Henderson.  See Tab #34 below. It also notes that Beauregard has other wells that may be adversely impacted, including its well at Creek Nations. |
| 4 | Mike and Ann Broadwater's Answer to Defendant's First Set of Interrogatories and Requests for Production.  The Broadwaters live west of the quarry on Highway 166.  They complain of noise, dust, blasting problems, truck traffic, and equipment noise.  The water discharged from the water creates a swamp that causes an insect problem for them, they have seen sinkholes form off of 166, they believe that the ground settling could cause the Dixie Pipeline to rupture, and they have felt their house and ground shake.  They go on to describe tremendous dust problems and respiratory problems due to Mr. Broadwater's lung transplant.  The foundation cracks and structural damages have occurred within the last three years, according to the Broadwaters. |
| 5 | Anthony Clark and Carol Clark's Answer to Defendant's First Set of Interrogatories and Requests for Production.  The Clarks describe problems including dust accumulation and having to remove carpet and change air filters extremely frequently. They complain of noise and truck traffic, allergies and asthma aggravated by the quarry, and cracks in their foundation and other structural damage.  They have seen sinkholes in their yard and on Highway 166, and their home shakes when the quarry blasts.  They describe an increase in the noise problem and other problems as well. |
| 6 | Ronald Griggs and Dorothy Griggs' Answer to Defendant's First Set of Interrogatories and Requests for Production.  The Griggses complain of dust accumulation, constant noise, inability to enjoy outside activities due to the quarry, and allergies and sinus problems due to the dust caused by the quarry.  They know |

that Spring Villa had never gone dry until about three years ago, they feel the vibration to the ground and the home when the quarry blasts, pictures have been moved on their walls and fallen to the floor, they have to change their air filters frequently, and numerous foundation cracks and other problems to their house have developed within the last three years. They note that things have gotten worse, and their complaints to the quarry have been useless.

7    Charles S. Ledbetter and Jackie P. Ledbetter's Answer to Defendant's First Set of Interrogatories and Requests for Production. The Ledbetters complain of dust accumulation, noise and truck traffic along with cracks in their foundation and cracked windows due to the quarry operations. They know that the spring had not dried up before, and they have seen sinkholes on Highways 166 and 169. The truck traffic in their opinion makes the roads unsafe. They have suffered other monetary damages.

8    Kenneth Randall Parker and Wanda G. Parker's Answer to Defendant's First Set of Interrogatories and Requests for Production. The Parkers have suffered cracking of their house, and complain of blasting noise, dust, traffic noise and truck traffic problems, rocks in their field, mud sliding onto their property from the overburdened pile on the back side of the quarry, and the problem with the water level in Little Uchee Creek, where they own some land. Water backs up onto their property, and these things occurred after Hanson began operation. They document that the problems are getting worse rather than better after they complained.

9    Plaintiff Randall Parker's Supplemental Response to Defendant's Interrogatories and Deposition Questions. Mr. Parker described that since his initial responses to discovery and after his deposition, he noticed that the water flow in the creek had been down dramatically and that it changed the character of the creek. He noted that the declining water level in the creek has caused problems with the fence for his cows, and has allowed his cows to escape. Additionally, the reduced creek flow used to add to the beauty of the property, but no more, and there is a mosquito problem due to the lack of flow and the currently murky and stagnant water. He has lost a swimming hole and rope swing as well. He notes that the mud pile behind the quarry that Hanson created still flows mud onto his property.

10    Defendant David Sumners and Amanda Sumners' Answer to Defendant's First Set of Interrogatories and Requests for Production. The Sumners have structural damage to their home, and a child who has asthma that is aggravated by the quarry dust. The child has asthma and allergies. They can feel the home shake when the quarry blasts, and the concrete around their pool is cracked because of the quarry. They hear noise and rock crushing all day, and are unable to enjoy the outdoors around their pool due to the loud machinery, noise, and dust. The dust accumulates in their home and has

caused other problems to their house. The noise has gotten worse as Hanson has operated the quarry.

11      Wanda Bright's Answer to Defendant's First Set of Interrogatories and Requests for Production. Ms. Bright complains of noise, dust, large truck problems, and damage to her home as described. She also notes that the Spring Villa Park swimming pool closed, and she has felt the earth shake and her house rattle and windows rattle when the quarry blasts. She has often seen pictures crooked on her walls and can hear heavy machinery at the quarry. She has an allergy problem aggravated by the quarry dust. She has lost value in her home.

12      Mittie Broadwater's Answer to Defendant's First Set of Interrogatories and Requests for Production. Mrs. Broadwater has cracked windows, foundation, and other problems. She suffers through noise, dust, and blasting traffic that makes it impossible to enjoy her home. She has developed allergies within the past three years and has seen a big sinkhole south of her house. She sees clouds of dust and her invalid husband has lung cancer and allergies that the dust aggravates. She cannot enjoy her home and it has started to settle, and the trucks are tearing up Lee Road 166. She has repeatedly complained to Hanson to no avail. She is also unable to sell her house because of the quarry.

13      Michael G. Davis and Donna Davis' Answer to Defendant's First Set of Interrogatories and Requests for Production. The Davises live south of the quarry. The noise, dirt, dust, and blasting have ruined their home, caused cracks, ruined the fireplace, and prevents them from sleeping. Mr. Davis works nights very often and cannot sleep during the day. The Davises have seen one big sinkhole near their house, and feel the blasts in their home. They cannot enjoy their property or even open their windows, and the trucks are tearing up Lee Road 166 and causing increased traffic, noise, and increased gravel on the roads causing damages and broken windshields. He has repeatedly caused Hanson to complain but it does no good.

14      Mary Sue Eiland's Answer to Defendant's First Set of Interrogatories and Requests for Production. She complains of the dust and noise problem, cannot enjoy her pool because of the problems, has structural damage and cracks in her foundation on her house, and the blasting has even knocked air conditioner registers from her ceiling. The truck traffic is horrible and her home rattles whenever they blast. She works nights and cannot sleep during the day when she works. She has suffered reduction in the value of her home, broken windshields due to the rocks on the roads, and has suffered stated monetary losses.

15      Medena Frizzell's Answer to Defendant's First Set of Interrogatories and Requests for Production. Ms. Frizzell lives near the quarry and has suffered blasting damage

4

and has a tremendous noise and dust problem. Pictures have fallen in her home, and her home is ruined. She has never seen Spring Villa dry (and she has been going there since she was five), and she has seen a large sinkhole near the quarry. She has dust and debris fall on her house when they blast, and has to have music or other noise playing to block out the noise from the quarry. She and her children are all on medicine for asthma and allergies, and they have to change their air filters frequently. She bought her trailer new in 1998, and it is falling apart because of the quarry operation. She has complained to the quarry to no avail. She has suffered stated monetary losses.

16      Howard and Lisa Harmon's Answer to Defendant's First Set of Interrogatories and Requests for Production. The Harmons live near the quarry and have noise, dirt, dust, blasting, and truck traffic problems. They cannot enjoy outside activities at their house, and there is an unsightly mound of dust and dirt that has accumulated and is growing larger. They complain that Lee Road 166 is terribly damaged by the truck traffic, and they have within the past year started having to take medicine for allergies that they did not have to take before. They have been acquainted with the park since childhood, and the water was never dry until after the quarry started pumping. They have seen the sinkhole on County Road 166 and have a crack in their home so they have home damage. They feel the earth shake and the house shake during blasting and have even been awakened by the noise from the quarry. They have suffered the stated monetary losses. They have complained to Hanson, to no avail.

17      Haward Jackson and Nora Jackson's Answer to Defendant's First Set of Interrogatories and Requests for Production. The Jacksons live just west of the quarry on 166. They have excessive water and mud being deposited on their property after heavy rains from the big pile behind the quarry. They listed their house for over 18 months to try to sell out and move, but were unable to sell the property. Some people came by, but were not interested because of the quarry, noise, dust, and mud. They saw a sinkhole form about 300 yards from their property. That sinkhole formed overnight and is approximately 30 feet in diameter and as deep as a power pole. Based upon the map attached to the Second Amended Complaint, the Court can see that this sinkhole formed a couple of hundred feet from the Dixie Pipeline. Most of these problems have occurred since the year 2000 and have gotten worse, while Hanson has done nothing to repair the problems or to correct them.

18      Sheila Lamacchia and Mike Lamacchia's Answer to Defendant's First Set of Interrogatories and Requests for Production. The Lamacchias live south of the quarry and have complained about and suffered incessant and annoying noise and extensive damage to their foundation and fireplace. They saw the sinkhole form on the Clarks' property. Mr. Lamacchia is in the gas business and states that "If a sinkhole forms, it could cause an explosion" on the Dixie Pipeline. They can feel the blasts and hear

the blasts, and rocks have even been thrown onto their yard. They even hear the noise of the trucks on the weekends. They have structural damage to their house, have suffered a depreciation in value of their home, and suffer from medical ailments due to the quarry problem. In particular, Mrs. Lamacchia and their child have medical problems.

19    Timothy Manning and Adelene Manning's Answer to Defendant's First Set of Interrogatories and Requests for Production. The Mannings live near the entrance to the quarry and complain of dust accumulation and constant and annoying noise. They cannot enjoy outside activities, always have large rocks in the roadway, and have suffered cracked windshields because of the rocks being thrown up from the roadways around the quarry. The concrete around their pool is cracked, and they have problems with their house and they also have a sinkhole in their yard. They saw the sinkhole on 166 that "ate" the telephone pole and are concerned about the Dixie Pipeline cracking and causing an explosion. They cannot hang pictures on their walls because they move and have trouble sleeping during the day and are unable to enjoy their home due to the noise and dust. They have suffered damage to their home and depreciation in value to their home and are unable to sell it and are worried about whether they could sell it. The noise has gotten worse.

20    James Parker and Shirley Parker's Answer to Defendant's First Set of Interrogatories and Requests for Production. The Parkers live at the entrance to the quarry. Dust accumulates on their car and in their house. The noise is constant and annoying. They cannot enjoy outside activities because of the quarry, and three or four years ago, all of their water lines in their yard broke at once. They have cracks in their slab and windows, and discharge water stagnates causing a fowl smell and insect problem. Mr. Parker is 65 years old, and never knew of Spring Villa going dry until after the quarry started pumping so excessively. He has seen sinkholes form, and has problems with noise from the operation of the quarry and with truck traffic. He has complained many times about the dust and noise, but Hanson never does anything. The problem is the same or worse than ever. They have suffered stated financial losses including devaluation of their property due to the quarry.

21    Martha Ann Treadway's Answer to Defendant's First Set of Interrogatories and Requests for Production. Mrs. Treadway has problems with her lungs as do her grandchildren. They have structural problems in the house and cracks in the ceiling. The noise and dust are terrible, and Mrs. Treadway has never known Spring Villa to go dry. She feels her home shake when the quarry blasts and has had pictures fall off the walls and pebbles and dirt falls on her house like rain. The quarry noise wakes her up, and she cannot open her windows because of the dust and truck traffic. She has complained to Hanson, and they have done nothing about these problems. The problems that she has complained about and the damages have occurred in the last two or three years and have gotten worse.

6

22        Billy Wallace and Sherry Wallace's Answer to Defendant's First Set of Interrogatories and Requests for Production. The Wallaces live south of the quarry. Dust accumulates in their home and on their property, and the noise is constant and annoying. They have had broken windows, cracked windshields, and extensive damage to their home. Both of their children have health problems due to the dust from the quarry. They have seen a sinkhole form on Lee Road 166 not far from the Dixie Pipeline. Their home shakes when the quarry blasts, and they are unable to enjoy the yard or the peace and quiet that they once had. They believe they have suffered a loss in the fair market price of their home and in the past three years have called and asked Hanson to come out to assess the damage, but to no avail. They have suffered the stated financial losses.

23        Michelle Wilkes' Answer to Defendant's First Set of Interrogatories and Requests for Production. Ms. Wilkes lives south of the quarry. She says that there is an increasing amount of traffic and a permanent obstructed view due to a mountain of dirt piled on the boundary of her property that sometimes comes onto her property. The dust is continuous and heavy at times and the equipment noise makes it impossible to enjoy outside activities. She is aware of the sinkhole forming on 166 and feels the explosions vibrating her home intensely. She sees the dust in the air and physical evidence of the dust on her property. She says there is constant dust from the piles of dirt next to the property and the production from the quarry, and her home has suffered cracks, structural damage, and other problems. The truck traffic has increased, and the dust is continuous and very heavy at times. She feels she has lost some of the fair market value of her house due to the operation of the quarry and the proximity to the quarry and has suffered the stated damages.

24        Shirley Wilson's Answer to Defendant's First Set of Interrogatories and Requests for Production. Ms. Wilson lives near the quarry. The noise is constant and annoying, and the dust accumulates all over her property. Her house has numerous cracks, and the water level in her lake and in her well have dropped because of the quarry. The cone of depression from the quarry has caused her de-watering, in her opinion. The blasting shakes her home, and she found a limestone rock which was shot onto her property. She is unable to enjoy the wildlife, her yard, and the peace and quiet that she once had. She is now allergic to dust and has been forced to increase her medication within the last three years. The dust has gotten worse and has affected her allergies. She believes she has suffered a depreciation in value due to her proximity to the quarry. She has suffered the financial losses stated.

25        Deposition of Thomas Aley (April 29, 2003) Without Exhibits.

26        Summary of the Professional Opinions of Thomas J. Aley Relative to the Hanson Quarry, which is authenticated in the deposition at Page 143. Mr. Aley's opinions are that the quarry has de-watered a substantial area, which has in turn caused many

1829

sinkholes to form. The de-watering has caused local wells to go dry, Spring Villa spring to go dry, and Little Uchee Creek to go dry. He expects that sinkhole formation will continue unless and until the quarry stops discharging water from the pit. In that event, the continuing formation of sinkholes will eventually slow down, and it is possible that Spring Villa spring may again flow once the quarry pit fills with water. He of course states many additional things in his analysis.

27    Supplement to the Opinions of Tom Aley and David Hicks. The supplement is self-explanatory but calculates, for example, that an area of 27 square miles would be needed to recharge the amount of water the quarry pumps out. Mr. Hicks' supplemental opinion is that Hanson knew or should have known that the quarry pumping would cause de-watering that would extend for more than 5,000 feet from the quarry.

28    Deposition of David Hicks. Mr. Hicks' deposition authenticates his report (see Tab # 29 below). In essence, his opinion is that the quarry has caused the sinkholes to form in the area northeast of the quarry and on Spring Villa property and in Little Uchee Creek's stream channel causing the creek to go dry. It is his opinion that these sinkholes were formed by the quarry operation and that sinkholes typically develop from limestone operations like this. He further notes that rainfall is now normal, but the problems have not abated which further proves that the quarry is the problem and that ground water levels will not return to normal until the quarry stops pumping. He also notes that roadways that cross low lying areas are subject to structural damage from sinkhole collapse.

29    Rule 26 Disclosure of David W. Hicks (dated March 12, 2003). See Tab #28 above.

30    Deposition of Dr. Thomas E. Cooper.    Dr. Cooper's deposition describes his extensive experience in evaluating structural problems in homes. Dr. Cooper testified in essence that those items described in his report (see Tab #31 below) were caused by Hanson's blasting. Dr. Cooper describes the negative effects of low frequency vibrations such as are caused by the quarry blasting and shows that those effects compound over time causing the damages identified in his report.

31    Preliminary Observations of Blasting Damage to Residences near the Hanson Quarry in Lee County Alabama–March 5, 2003 (Dr. Cooper's Rule 26 Disclosure, which is authenticated in his deposition at Pages 6-7). See Tab #30 above.

32    Dr. James Saunders Rule 26 Disclosure. Dr. Saunders is a geologist. He describes the underground geology of the area around the quarry and is of the opinion that the quarry pumping of water from the ground has lowered the water table in the rock units in and around the quarry and that the quarry discharging has caused Spring Villa spring to go dry and sinkholes to form in the Spring Villa area. He also is of

1826

the opinion that the sinkholes forming in Little Uchee Creek were caused by the quarry pumping and that the quarry de-watering will cause increasing numbers of sinkholes to form unless the pumping is stopped. He believes that the Beauregard Water Authority wells will be effected if pumping does not stop.

33     Deposition of Charles Gilmer. Mr. Gilmer testified in his deposition that **[get from letter to CEV from Jim–mary ellen could not find such a letter]**

34     Deposition of Bill Harrelson. **[Same as above]**

35     Memo Harrelson to Mayor Patton dated July 19, 2000. This memorandum documents a reduction in flow and then a stopping of the flow in Spring Villa in year 2000 and that the spring flow had never had this problem before.

36     Memo Harrelson to Mayor Patton dated June 3, 2002. This memorandum documents that the spring stopped flowing two years ago and discusses the financial burden on the City due to the loss of the spring.

37     Parks and Recreation Park Memo to Alabama Commission on Environmental Initiatives (Defendant Deposition Exhibit 271). This documents that there had never been a water shortage in the spring before the quarry pumping by Hanson. Attached to the memo are various photographs and other information about Spring Villa.

38     Map of Proposed Spring Villa Lake. As described by Mr. Harrelson and Mayor Patton in their depositions, the City was intending to build a recreational lake using Spring Villa spring flow. That possibility is now impossible due to Hanson pumping.

39     Deposition Exhibit 273 (Harrelson Deposition). This is a chart explaining some of his testimony.

40     Deposition of Bobby Henderson. Mr. Henderson testified that **[get from letter to CEV from Jim–mary ellen could not find such a letter]**

41     Deposition of Dan Hilyer. **[Same as above]**

42     Material Safety Data Sheet for Crushed Stone Limestone. This MSDS was distributed by Hanson and recognizes the serious detrimental health effects of crystalline silica which is a by product of the quarry operation and which is contained in the quarry dust. This crystalline silica may cost silicosis, particularly from the very small dust particles from the quarry. Other detrimental effects are shown in the MSDS.

1827

43    Hanson March 19, 1999 Memo of Observations (recognizing that pit de-watering activities in carst (limestone) areas has been known to cause sinkhole activity in and around mines). This proves Hanson's prior knowledge that its operation would cause damage beyond its borders.

44    Skelly and Loy Engineers Phase I Environmental Site Assessment Report dated June 21, 1999 (recognizing that "A natural gas pipeline runs just south of the quarry pit and north of the overburdened storage area. Blasting at the mine, heavy equipment traffic over the pipeline, and sinkhole creation due to mine de-watering are concerns associated with this pipeline." Page 1, Bates Page 02941. And noting "The rock at the site is highly fractured and field observations noted several solution features in the quarry wall and several sinkholes forming on the property." Page 10, Bates Page 02941.

45    June 29, 1992 Skelly and Loy Analysis of Ground Water Flow at the Opelika Materials Quarry. This recognizes on Page 1 that they will have to "draw down" the water table to dry the mine to a depth of approximately 250 feet below the top of the rock surface, that the rock is highly fractured, that several sinkholes have formed on or near the property, that fractured rock aquifers often have fast, turbulent flow, and are less isotropic and homogeneous than granular aquifers, and recognizing that, eventually, pulling of ground water at the rate of over 5,700,000 gallons per day will be necessary.

46    Hanson Memorandum, Nigel Wills to Tom Bugenhagn, dated April 28, 2000, and recognizing numerous problems that have not been addressed and which are causing damages to surrounding Plaintiffs' properties, and noting that Hanson "should be installing adequate erosion and sediment control structures such as silt fencing, diversion ditches, check dams, catch basins, slope drains, etc. to control erosion and the possibility of off site sedimentation from storm water runoff. Drains should route storm water into the pit." This memorandum notes a number of other problems, none of which were ever addressed or resolved by Hanson despite notice of the problems associated with these points. See the deposition of Nigel Wills at Pages 282-290.

47    Deposition of Nigel Wills (August 28, 2002). See above.

Respectfully submitted this _____ day of September, 2003.


_____
CHARLES E. VERCELLI, JR. (VER003)
One of the Attorneys for the Plaintiffs

10

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
 & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _18_ day of _____Sept_____, 2003.

_C E Vercelli_
OF COUNSEL

155-00\Ps'Stmt of Fact&Subm Opp Ds MSJ.3.wpd

11

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                              )
                                                 )
        Plaintiffs,                              )
                                                 )
vs.                                              )    Civil Action No. CV-02-0085
                                                 )
HANSON AGGREGATES SOUTHEAST,                     )
INC., et al.,                                    )
                                                 )
        Defendants.                              )

F I L E D

SEP 19 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### PLAINTIFFS' REPLY TO HANSON'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Plaintiffs reply to Hanson's motion to dismiss or in the alternative for summary judgment as follows:

1.    Hanson argues that the Plaintiffs' claims for injunctive relief are now moot. This is based upon the sale of the quarry to Oldcastle in July of 2003.

2.    Plaintiffs agree, with a caveat. Hanson does not own or appear to have any ownership interest in the quarry. If completely true, then the injunctive claims against Hanson are moot. However, we do not know and cannot determine whether Hanson does or does not still have a contingent or "reversionary" interest in the quarry. This is because Plaintiffs have not been provided the entire agreement between Hanson and Oldcastle.

3.    Let us explain.

4.    The Court ordered Hanson to produce the sales agreement. Hanson produced part of that agreement, an "Asset Purchase Agreement." Hanson did not produce the Joint Defense Agreement that was incorporated into and made a part of the Asset Purchase Agreement.

5.    The Asset Purchase Agreement produced by Hanson did not contain any provisions that addressed the question what happens if Oldcastle loses the injunctive relief trial and the Court shuts down the quarry.

6.    It is inconceivable that Oldcastle would knowingly purchase a quarry, one week before a trial to shut down that quarry as a nuisance, with absolutely no provision for what compensation or other consideration would be due to Oldcastle in the event the Court were to enjoin the quarry's operation. Therefore, there is doubtless some agreement or other understanding between Hanson and Oldcastle that has not been produced.

7.    If there is no other such document, then the likely repository for such an agreement is in the Joint Defense Agreement, which was expressly made part of the Asset Purchase Agreement.

8.    Plaintiffs have attempted to take the Oldcastle Corporate Representative's deposition on this point, to no avail as of yet. Therefore, Plaintiffs have not been able to determine what happens if Oldcastle loses and whether Hanson is ultimately responsible in some manner.

9.    Plaintiffs also filed a Fifth Motion to Compel, which has not yet been ruled upon. In that Motion, Plaintiffs have shown that the Joint Defense Agreement is due to be produced so that, among other things, the Plaintiffs can determine the true consideration between the parties and so Plaintiffs may challenge the Defendants' witnesses' credibility, bias, and interest in the event the JDA contains some form of indemnity or contribution arrangement in case the quarry is shut down.

2

10.    Therefore, while the Plaintiffs agree that the injunction claim MIGHT be moot, Plaintiffs move the Court (1) to withhold ruling on this motion pending production of the Joint Defense Agreement to Plaintiffs, and (2) after reviewing the JDA and if otherwise appropriate, to then dismiss the injunctive relief claims against Hanson ONLY, and (3) when and if the Court dismisses the injunctive relief claim against Hanson, that it do so without prejudice in the event Hanson ever obtains possession, ownership or control of the quarry in its own name or in the name of a successor or an assignee.[1]

_____

**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

_____

[1]

In this regard, it should be noted that Hanson sold the quarry to Oldcastle in an asset purchase agreement. That sale has been described by the Hanson attorneys as "one of many" quarries (possibly 16) that were sold concurrently to Oldcastle by Hanson. Therefore, there is quite likely a separate document that addresses what happens if Oldcastle gets enjoined, and before the Court dismisses this claim, the Court should at a minimum require that a Hanson and an Oldcastle Corporate Representative with authority to bind the corporations attest under oath that no such document or unwritten agreement or understanding exists.

3

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                          John V. Denson
Matt Parnell                                 Samford, Denson, Horsley, Pettey
Balch & Bingham, LLP                          & Bridges
P.O. Box 78                                  P.O. Box 2345
Montgomery, AL 36101                         Opelika, AL 36803-2345

H. Wayne Phears                              Phillip E. Adams, Jr.
Phears & Moldovan                            Adams, Umbach, Davidson & White, LLP
Suite 375                                    P. O. Box 2069
4725 Peachtree Corner Circle                 Opelika, AL 36803-2069
Norcross, GA 30092-3000

by faxing a copy of the same to each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _19th_ day of _____, 2003.

_C. E. Vuafff_
OF COUNSEL

155-00\P Resp M-Dism as MooL1.wpd

4

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, INC., et al., | ) | |
| | ) | |
| | ) | **FILED** |
| Defendants. | ) | |

SEP 19 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### <u>PLAINTIFFS' REPLY TO HANSON'S RESPONSE TO PLAINTIFFS'</u>
### <u>MOTION TO CONTINUE AND RENEWED MOTION FOR SEPARATE TRIAL</u>

The Plaintiffs respond to Hanson's Response to Plaintiffs' Motion to Continue and Renewed Motion for Separate Trial as follows:

1.      Hanson agrees that the trial scheduled for October 20 should be continued. It would appear that all the parties are in agreement on that point. However, Hanson renews its motion for a separate trial of the hydrology issues from the other issues. This is not proper.

2.      It is inappropriate to separate the hydrology case from the case involving noise, dust, and related blasting claims for several reasons.

3.      First and foremost, the jury must decide the question whether Hanson operated the quarry in a negligent and wanton manner, whether it trespassed on the property, and whether it was a nuisance. To make those determinations, the Plaintiffs have the right to introduce all relevant and probative evidence. What can be more relevant and probative than evidence that the quarry has caused widespread groundwater level reductions and that the pumping of water from other peoples' property in fact caused

sinkholes to form?  What can be more relevant and probative than showing the jury that the groundwater depletion caused sinkholes on public as well as private property and that many peoples' properties are no longer safe precisely because Hanson pumped out 1.5 BILLION gallons of water per year from the ground over a 9 square mile area?  To prevent the Plaintiffs from placing this evidence before the same jury that hears evidence of blasting damage, noise pollution, medical problems and dust problems related to the very same operation, would be highly unfair to Plaintiffs and would deprive them of the very proof that Hanson was operated as a nuisance and that it was operated negligently and wantonly.

4.    In other words, to separate out the two issues would benefit Hanson greatly by taking some of the most damaging evidence of a negligent and wanton operation away from the consideration of the jury that would be asked to decide whether the quarry was operated in a negligent and wanton manner.  That would be patently unfair to the Plaintiffs.

5.    Second, the Defendant Hanson seeks to assert that various witnesses would not be needed in a case involving hydrology, who would be needed in a case involving noise, dust, and blasting–and do not forget that medical claims are also a significant problem.  That too is incorrect.  Were the Court to separate the noise, dust, medical, and blasting claims from the hydrology claims, all of the same witnesses would still have to testify in both the hydrology case and in the noise, dust, medical, and blasting case in order to show the jury adequately that Hanson operated in a negligent and wanton manner, and that its operation was a nuisance to the community.   This is because both

2

juries would have to make the very same decision: was Hanson a nuisance and/or did it operate negligently and wantonly. Again as above, to refuse to allow all of the relevant and probative evidence before the jury on the case involving noise, dust, medical and blasting claims would be to unfairly deprive the Plaintiffs of an opportunity to prove their case as a whole. Trying the case piecemeal is certainly not appropriate. It is incorrect for Hanson to assert that the witnesses can be so easily divided. While Hanson may want those witnesses divided out so to minimize the case against Hanson, the Plaintiffs have every intention of putting on all of the witnesses in both of the claims. It makes no sense, therefore, to separate the two cases and have two full trials each lasting three to four weeks, one on hydrology, and one on everything else.

6.     Rather, as the Court has previously determined, it makes infinitely more sense to allow the same jury to hear all issues and have just the first jury make the determination whether the quarry was a nuisance and/or whether it was operated negligently and wantonly. After that finding, based upon all of the evidence, the subsequent trials of the case could proceed (as already determined by the Court) only on the issue of the damages to each of the subsequent individual Plaintiffs. By doing otherwise, the Court would allow Hanson to substantially alter the facts, and would give Hanson a tremendously unfair advantage before the jury by not having to defend against all of their bad actions, negligent, wanton, and otherwise.

7.     In the event the Court might be persuaded by the breakdown of the witnesses in paragraph 3 of the Defendants' Response, that paragraph is incorrect. It is true that Plaintiffs would have experts Aley, Getz, Saunders, and Hicks testify. It is true

that the parties listed would testify. However, additional parties would also testify, including: Mr. and Mrs. Clark and Mr. and Mrs. Parker. In addition, the Plaintiffs with hydrology claims also include the Parkers and the Clarks, who also have claims for noise, dust, blasting, and medical problems. To separate out just the hydrology claims on those people and therefore to split their claims against the Defendants would be grossly unfair to those Plaintiffs because they would be unable to adequately show the jury the scope and extent of Hanson's improper conduct and damages to them.

8.     Moreover, in addition to the witnesses that Defendant gratuitously provided, the Plaintiffs will have the following people testify in the hydrology case as well as in the noise/dust/medical/blasting case as well: Dorothy Griggs, Ronnie Griggs, Bobby Wallace, Mike Davis, and Haward Jackson. In addition to those witnesses, who the Plaintiffs are willing to name, Plaintiffs have already identified at least six other persons (previously listed on their final witness list) who would still be called during both such trials. Plaintiffs do not desire to name these persons and thus to give additional insight into Plaintiffs' trial strategy.

9.     The only effective difference, therefore, by ordering a hydrology trial separate from a noise/dust/medical/blasting trial is the reduction of 3 witnesses: Dr. Cooper for the Plaintiffs, and Messrs. Barrs and Wehrman for Hanson. So, in truth, by separating the hydrology trial from the remaining issues would save 1-2 days in the first trial and ensure that the second trial would still be not less than 2 weeks long (and more likely three).

4

1837

10.     As mentioned, the more appropriate method is that which the Court previously decided–try all of the issues for some of the parties in the first trial, and in that trial establish liability or not (nuisance *vel non*, negligent and/or wanton operation *vel non*, and trespass *vel non*).  Thereafter, the subsequent trials can merely be based on claims for damages to groups of the individual Plaintiffs.  To divide this trial in any other manner would be unfair to the Plaintiffs and therefore inappropriate while at the same time giving undue advantage to the Defendants who would not be called upon to defend all of their bad conduct in the same proceeding before the same jury.

**WHEREFORE,** for good cause shown, Plaintiffs renew their Motion to Continue the Trial of the Case and to join all of their claims against Hanson and Oldcastle jointly (as to the nine parties previously selected), with separate trials to be held only with respect to the remaining Plaintiffs not chosen for the initial trial.

*C E Vercelli*

**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

OF COUNSEL:
Charles E. Vercelli, Jr.                              Guy F. Gunter, III
VERCELLI & ASSOCIATES, P.C.                           MELTON, GUNTER & MELTON
1019 S. Perry Street                                  P.O. Box 409
Montgomery, AL 36104-5049                             Opelika, AL 36803-0409
(334) 834-8805                                        (334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

1888

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
 & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _19½_ day of _Sept_____, 2003.

*hand delivery or by*

_____
OF COUNSEL

155-00\Ps'Reply H's Resp to Ps'Mot Cont Sep Trial.2.wpd

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. CV-02-85 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR A VIEW**

F I L E D

SEP 2 2 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK.

Hanson Aggregates Southeast, Inc. ("Hanson") moves the Court to allow the jury to view

the properties of those Plaintiffs scheduled for the initial trial of this matter. In support of this

Motion, Hanson avers a follows:

1.    Alabama law has long recognized that the jury may be allowed to inspect a

relevant place or object outside the courtroom (generally referred to as "a view") when approval

is given by the trial court. *See, e.g., Rutledge v. Brilliant Coal Co.*, 247 Ala. 40, 22 So. 2d 428

(1945)(allowing the jury to view farm land allegedly damaged by coal dust and debris put into a

creek).

2.    The purpose of a view is to allow the jury to make observations which constitute

independent evidence. *See Western Ry. v. Still*, 352 So. 2d 1092, 1097 (Ala. 1977)(knowledge

the jury may have acquired while it viewed the scene of an accident, though unreported, is proper

evidence).

3.    It is essential that the jurors in this matter be allowed to inspect certain relevant

locations outside the courtroom in order to properly evaluate the merits of Plaintiffs' claims.

Specifically, Hanson requests that the jurors be allowed as follows: (1) to view the properties

owned by each of the Plaintiffs scheduled to participate in the initial trial of this matter; and (2)

133321.2

to observe the sounds created by quarry machinery at each of these Plaintiffs' property. A proposal regarding the logistics involved in the accomplishment of such a view has been attached as Exhibit "A."

4.    A view of the Plaintiffs' properties would not constitute a waste of time, but will aid the jurors by providing essential information which cannot be sufficiently communicated to them by any other means. Further, a view of this type may be accomplished without undue delay or unnecessary expenditure of judicial resources. (*See* Ex. A.)

WHEREFORE, premises considered, Hanson moves the Court to enter an order allowing the jury to make out-of-court inspections of the properties owned or maintained by the Plaintiffs scheduled to take part in the initial trial of this matter in order to allow the jurors a more complete understanding of the facts surrounding the Plaintiffs' claims against Hanson.

Respectfully submitted this the <u>22</u> day of September, 2003.

One of the attorneys for defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
P. O. Box 78
Montgomery, AL 36101-0078
Telephone:    (334) 834-6500

H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116

133321.2

- 2 -

(770) 263-6715 (fax)

## Certificate of Service

I hereby certify that on this _22_ day of September, 2003, a copy of the foregoing has been served by hand delivery or by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
P. O. Drawer 2429
Auburn, AL 36830

Charles E. Vercelli, Jr., Esq.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0404

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
 & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

John V. Denson, Esq.
Samford, Denson, Horsley, Pettey
 & Bridges
P. O. Box 2345
Opelika, AL 36803-2345

Of Counsel

133321.2

- 3 -

**EXHIBIT A**

**Proposed Viewing of the Plaintiffs' Properties**

1.     Jurors will be loaded onto a bus with a bailiff or other court personnel and driven to the first property. The judge and counsel will travel separately by automobile.

2.     The bus will stop at the first property. The jurors will be told who owns the property. The jurors will be allowed to exit the bus and inspect the exterior of the home and property for 5 minutes. Counsel may only observe the inspection from outside their respective vehicles.

3.     This process is repeated at each of the 6 properties owned by the individual Plaintiffs.

4.     Allowing one hour and thirty minutes for travel time and one hour of inspection time (6 properties x 10 minutes), the view should last approximately two and a half hours.



IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

MIKE DAVIS, *et al.*,                    §
                                         §
    Plaintiff,                  §          Civil Action No. CV- 2002-85
                                         §
vs.                                      §
                                         §
HANSON AGGREGATES                        §
SOUTHEAST, INC., *et al.*,               §
                                         §
    Defendants.                 §

FILED
SEP 22 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## HANSON'S MOTION TO STRIKE INADMISSIBLE PORTIONS OF PLAINTIFFS' SUMMARY JUDGMENT SUBMISSION

Defendant Hanson Aggregates Southeast, Inc. ("Hanson") moves the Court to strike the following materials offered by plaintiffs in opposition to Hanson's summary judgment motion, for failure to comply with the requirements of Rule 56, *Ala.R.Civ.P.* Specifically Rule 56(c)(1) requires that the party opposing summary judgment designate the material facts in dispute supported by "specific references to pleadings, portions of discovery materials, or affidavits." Evidence offered in opposition to a motion for summary judgment must be such "as would be admissible in evidence." Affidavits must be made "on personal knowledge" and "sworn or certified copies of all papers must be attached." Rule 56(e). Interrogatory answers, pursuant to Rule 33, must be answered "under oath." A party may not create a question of fact by attempting to change by affidavit (or interrogatory answer) answers to deposition questions. *Tittle v. Alabama Power Co.*, 570 So. 2d 601 (Ala. 1990); *Walls v. GMAC*, 602 So. 2d 414, 416 (Ala. Civ. App. 1992). Moreover, affidavits or interrogatory answers verified "to the best of my information, knowledge and belief" or similar language less than "personal knowledge" are not admissible. *Welch v. Houston County Hospital Board*, 502 So. 2d 340, 342 (Ala. 1987). Based

on these well settled rules, the following exhibits, referred to by tab number of plaintiffs'

submission in opposition, are not admissible and should not be considered by the Court:

Tab 1.     Plaintiffs' trial exhibit list – not evidence.

Tab 2.     Opelika interrogatory answers – not verified.

Tab 3.     Beauregard Water Authority interrogatory answers – not verified.

Tab 4.     Broadwater interrogatory answers – not verified.

Tab 5.     Clark interrogatory answers – not verified.

Tab 6.     Griggs' interrogatory answers – not verified.

Tab 7.     Ledbetter interrogatory answers – not verified

Tab 8.     Parker interrogatory answers – not verified.

Tab 9.     Parker supplemental response changes deposition testimony and submitted only "to the best of his knowledge, information and belief."

Tab 10.    Sumner interrogatories – not verified.

Tab 11.    Wanda Bright interrogatory answers – not verified.   Irrelevant, not scheduled for first trial.

Tab 12.    Mittie Broadwater interrogatory answers – not verified.   Irrelevant, not scheduled for first trial.

Tab 13.    Davis interrogatory answers – not verified.   Irrelevant, not scheduled for the first trial.

Tab 14.    Eiland interrogatory answers – not verified.   Irrelevant, not scheduled for the first trial.

Tab 15.    Frizzell interrogatory answers – not verified.   Irrelevant, not scheduled for the first trial.

Tab 16.    Harmon interrogatory answers – not verified.   Irrelevant, not scheduled for the first trial.

Tab 17.    Jackson interrogatory answers – not verified.   Irrelevant, not scheduled for the first trial.

Tab 18.    LaMachia interrogatory answers – not verified.   Irrelevant, not scheduled for the first trial.

Tab 19.  Manning interrogatory answers – not verified.  Irrelevant, not scheduled for the first trial.

Tab 20.  James Parker interrogatory answers – not verified.  Irrelevant, not scheduled for the first trial.

Tab 21.  Treadway interrogatory answers – not verified.  Irrelevant, not scheduled for the first trial.

Tab 22.  Wallace interrogatory answers – not verified.  Irrelevant, not scheduled for the first trial.

Tab 23.  Wilkes interrogatory answers – not verified.  Irrelevant, not scheduled for the first trial.

Tab 24.  Wilson interrogatory answers – not verified.  Irrelevant, not scheduled for the first trial.

Tab 25.  Deposition of Thomas Aley – no designation of the portions of the deposition relied upon.

Tab 26.  Aley report – not verified.

Tab 27.  Supplemental disclosure by Aley and Hicks – not verified.

Tab 28.  Hicks' deposition - no designation of the portions of the deposition relied upon.

Tab 29.  Hicks' report – not verified.

Tab 30.  Cooper deposition – no designation of the portions of the deposition relied upon.

Tab 31.  Cooper preliminary observations – not verified.

Tab 32.  Dr. Saunders' report – not verified.

Tab 33.  Deposition of Charles Gilmer – no designation of the portions of the deposition relied upon.

Tab 34.  Deposition of Bill Harrelson – no designation of the portions of the deposition relied upon.

Tab 35.  Harrelson memo – not verified, and not admissible.

Tab 36.  Harrelson memo – not verified, and not admissible.

Tab 37.  Harrelson memo – not verified, and not admissible.

1846

Tab 38.    Map – not verified.

Tab 40.    Henderson deposition – no designation of the portions of the deposition relied upon.

Tab 41.    Hilyer deposition – no designation of the portions of the deposition relied upon.

Tab 44.    Skelly & Loy June 21, 1999 report – not authenticated or verified – hearsay.

Tab 45.    Skelly & Loy June 29, 1999 report – not authenticated or verified – hearsay.

Tab 47    Deposition of Nigel Wills – no designation of the portions of the deposition relied upon.


DATED this the ___22___ day of September, 2003.


_____
One of the attorneys for defendant
Hanson Aggregates Southeast, Inc.

**OF COUNSEL**:
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
P. O. Box 78
Montgomery, AL  36101-0078
Telephone:    (334) 834-6500


H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)


136330.1                                 4

## Certificate of Service

I hereby certify that on this __22__ day of September, 2003, a copy of the foregoing has been served by hand delivery or by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
P. O. Drawer 2429
Auburn, AL  36830

Charles E. Vercelli, Jr., Esq.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0404

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
  & White, LLP
Post Office Box 2069
Opelika, Alabama  36803-2069

John V. Denson, Esq.
Samford, Denson, Horsley, Pettey
  & Bridges
P. O. Box 2345
Opelika, AL  36803-2345

Of Counsel

**James WELCH, Administrator Of The Estate Of Shirley Welch, Deceased**

v.

**HOUSTON COUNTY HOSPITAL BOARD.**

85–677.

Supreme Court of Alabama.

Jan. 2, 1987.

Administrator of decedent's estate appealed from order of the Circuit Court, Houston County, Ronald Storey, J., which granted summary judgment in favor of hospital in wrongful death action. The Supreme Court, Beatty, J., held that answers to interrogatories and deposition offered by hospital did not contain admissible evidence and thus could not be considered in support of motion for summary judgment.

Reversed and remanded.

Houston, J., filed a specially concurring opinion.

**1. Judgment** ⚖️185(3)

Evidence which would not be admissible at trial could not be considered on motion for summary judgment.

**2. Judgment** ⚖️185.1(3, 4)

Requirements that depositions or answers to interrogatories offered in support of summary judgment be asserted on personal knowledge, set forth facts which would be admissible in evidence, and show affirmatively that the deponent or person giving the answers is competent to testify are mandatory.

**3. Judgment** ⚖️185.1(3)

Matters based only upon information and belief are essentially hearsay and thus insufficient to support motion for summary judgment.

**4. Judgment** ⚖️185.3(21)

Affidavit of decedent's mother could be considered as evidence of what happened on the morning of the decedent's

seizure because the mother witnessed the events but her statement that she believed that the decedent was given the wrong medicine was inadmissible and could not be considered on motion for summary judgment.

**5. Judgment** ⚖️185.3(21)

Hospital's answers to interrogatories given and submitted by its administrator and based almost exclusively on medical chart or hospital records which were not made part of the record could not support motion for summary judgment in wrongful death action.

**6. Evidence** ⚖️555.10

Findings of physician that decedent was not given the wrong drug or improper amounts of the drug which were based on review of her medical chart or interviews with personnel and not on his own personal knowledge were not admissible in wrongful death action.

**7. Evidence** ⚖️351

Provided that proper predicate were laid, hospital charts and records would be admissible in wrongful death action. Rules Civ.Proc., Rule 44.

**8. Hospitals** ⚖️8

While expert testimony would be necessary to establish that decedent's seizure and subsequent death could have been caused by improper administration of drugs, expert medical testimony was not required for fact-finder to determine whether hospital did, in fact, improperly administer drugs to decedent.

**9. Evidence** ⚖️512

It would be improper to allow physician to give his expert opinion that hospital did not improperly administer drugs to decedent as factual determination of whether drugs were improperly administered was not beyond the ken of the average layman.

Cada M. Carter of Carter & Hall, Dothan, and P. Russell Tarver, Birmingham, for appellant.

WELCH v. HOUSTON COUNTY HOSP. BD.    Ala.    341
Cite as 502 So.2d 340 (Ala. 1987)

Michael K. Wright of Norman, Fitzpatrick, Wood, Wright & Williams, Birmingham, for appellee.

BEATTY, Justice.

This is an appeal by James Welch, as administrator of the estate of Shirley Welch, deceased, from a summary judgment entered in favor of the defendant, Houston County Hospital Board, in Mr. Welch's action for the wrongful death of Mrs. Welch. We reverse and remand.

When she died, Mrs. Welch was a patient at the Southeast Alabama Medical Center, which is owned and operated by the defendant, Houston County Hospital Board ("Hospital Board"). She had been diagnosed as having developed cervical cancer. Mrs. Welch was admitted to the hospital on July 29, 1979, and, on July 30, Dr. Rufus Clyde Smith, Jr., performed an abdominal hysterectomy on her. She appeared to be having a normal recovery until the morning of July 31, 1979, when she suffered a grand mal seizure. After this seizure, Mrs. Welch was generally stabilized, although no central nervous system function was ever detected. Mrs. Welch died on August 3, 1979. An autopsy revealed hypoxic changes in the brain.

Thereafter, the plaintiff, in his capacity as administrator, filed this action for wrongful death. Named as defendants were the Hospital Board, three drug manufacturers, and other fictitiously named defendants. All defendants were subsequently dismissed except the Hospital Board.

In his complaint, the plaintiff alleged that the Hospital Board "was negligent in its care and treatment of plaintiff's decedent in that it failed to exercise that degree of reasonable care, skill, and diligence as used by hospitals generally in the community." In response to the Hospital Board's motion for a more definite statement, plaintiff alleged the following:

"1. On July 29, 1979, plaintiff's decedent, Shirley Welch, was admitted to defendant hospital for an elective total abdominal hysterectomy.

"2. After the performance of the hysterectomy and appendectomy on July 30, 1979, plaintiff's decedent on July 31, 1979, suffered from 'an episode manifested by complaint of severe headache, apnea and grand mal type seizure' after the administration of certain drugs and after treatment by defendant hospital's agents and employees during plaintiff's decedent's postoperative recovery period.

"3. Defendant hospital, by and through its agents and employees, negligently failed to administer proper drugs to plaintiff's decedent or administered the wrong drugs, negligently failed to monitor the condition of plaintiff's decedent during the postoperative recovery period and negligently failed to treat plaintiff's decedent when the episode referred to in paragraph 2 occurred.

"4. As a proximate consequence of the negligence of defendant, plaintiff's decedent died."

Following the exchange of certain discovery requests, the Hospital Board filed its motion for summary judgment, alleging "that there is no genuine issue as to any material fact, and this Defendant is entitled to judgment as a matter of law." This motion was based on the pleadings and the Hospital Board's answers to interrogatories propounded by the plaintiff and two of the drug manufacturers. In responding to the allegations of the plaintiff's complaint against it, the Hospital Board argued in its motion that it had "answered interrogatories identifying each drug administered, the physician prescribing the same, the quantity administered pursuant to physician's order, and the hospital personnel involved in such administration," and argued further that "[i]t is undisputed that all medications administered were administered in the appropriate amounts or quantity, pursuant to the physician's order."

[1] In opposition to the Hospital Board's motion for summary judgment, the plaintiff filed the affidavit of Bertie Enfinger, the mother of plaintiff's decedent,

Shirley Welch. That affidavit stated, in pertinent part:

"My daughter's name was Shirley Jo Enfinger Welch. On the day of her death at Southeast Alabama Medical Center, I was staying with her. My daughter was doing fine and having no problems other than some pain from the incision from the hysterectomy she had just had. She asked me to get the nurses to give her something for the pain from the incision. So one of the nurses came in and gave Shirley a shot. It was not over five to ten minutes later that my daughter grabbed her neck and head and said, 'Mama, get help, my neck and head is killing me.' Two or three minutes later my daughter lost consciousness. She was doing fine until the shot was given to her. It is my belief that she was given the wrong medication. I believe this from my heart, based on the situation as I saw it happen that day. When I called the nurse and she came in, her first words were, 'Oh, my God.' "

Apparently, at the hearing on the motion, the plaintiff also offered the deposition of Dr. Rufus Clyde Smith, one of Mrs. Welch's attending physicians, in opposition to the motion for summary judgment. The trial judge entered an order granting the Hospital Board's motion, wherein he stated:

"After consideration of the motion, arguments and brief of counsel, answers to interrogatories and the deposition testimony of Dr. Rufus Clyde Smith, Jr., the Court is of the opinion that the motion is well taken and due to be granted."

This appeal followed. We hold that summary judgment was improper in this case. None of the evidence material to the issues in this case, offered either in support of or in opposition to the summary judgment motion, would be admissible at trial and, therefore, that evidence cannot properly be considered on a motion for summary judgment.

[2–4] While Rule 56, A.R.Civ.P., permits evidence in the form of depositions and answers to interrogatories to be sub-mitted in support of, or in opposition to, a summary judgment motion (see *Vulcan Freight Lines v. South Carolina Ins. Co.,* 446 So.2d 603, 604–05 (Ala.1982)), that evidence *must*, nevertheless, conform to the requirements of Rule 56(e) and *be admissible at trial. Griffin v. Little,* 451 So.2d 284, 286 (Ala.1984); *Day v. Merchants National Bank of Mobile,* 431 So.2d 1254 (Ala.1983); *Whatley v. Cardinal Pest Control,* 388 So.2d 529, 532 (Ala.1980). That is, the content of the deposition or answers to the interrogatories must be asserted on the *personal knowledge* of the deponent or person giving the answers, must set forth facts that would be admissible in evidence, and must show affirmatively that the deponent or person giving the answers is competent to testify to the matters asserted. *Vulcan Freight Lines v. South Carolina Ins. Co., supra; Morris v. Morris,* 366 So.2d 676, 678 (Ala.1978); Wright, Miller & Kane, 10A *Federal Practice & Procedure* § 2722, pp. 48–52 (1983). These requirements are mandatory. *Arrington v. Working Woman's Home,* 368 So.2d 851, 854 (Ala.1979); *Oliver v. Brock,* 342 So.2d 1, 4–5 (Ala.1976). Matters stated based only upon *information* and *belief* are essentially hearsay and are, therefore, insufficient. *Vulcan Freight Lines v. South Carolina Ins. Co., supra; Oliver v. Brock, supra.*

Furthermore,

"The general rule in Alabama is that in medical malpractice cases expert medical testimony is required to establish what is and what is not proper medical treatment and procedure. An exception to this general rule exists where an understanding of the [medical care provider's] alleged lack of due care or skill requires only common knowledge or experience."

*Powell v. Mullins,* 479 So.2d 1119, 1120 (Ala.1985). Thus, although Mrs. Enfinger's affidavit can be considered as evidence of what happened on the morning of Mrs. Welch's seizure (because she witnessed the events), the Hospital Board is correct in its argument that Mrs. Enfinger's statement, "[I believe] she was given the wrong medi-

WELCH v. HOUSTON COUNTY HOSP. BD.    Ala.    **343**
Cite as 502 So.2d 340 (Ala. 1987)

cation," is inadmissible as evidence of that alleged fact. There is nothing in the record to show that Mrs. Enfinger possessed the qualifications or expertise to allow her to draw this conclusion from what she observed. Nor is there any other evidence to show that Mrs. Enfinger had specific knowledge that the medication administered to Mrs. Welch minutes before her seizure was the wrong medication.

[5] Notwithstanding Mrs. Enfinger's affidavit, the substantive issue in this case remains whether the Hospital Board, as the moving party, met its burden of proving that no genuine issue of material fact exists with respect to whether it *properly administered to Shirley Welch only those drugs prescribed by her physicians.* The Hospital Board contends it met this burden, *relying on pertinent portions of Dr. Smith's deposition and the Hospital Board's answers to interrogatories which were given and signed by its "Administrator."* Without question, the matters material to this case, asserted in the answers and deposition, are based almost exclusively on the medical chart and hospital records of the plaintiff's decedent, Mrs. Welch. *Neither these medical records nor sworn or certified copies thereof were ever made a part of this record.* In *Oliver v. Brock, supra,* at 4–5, this Court held as follows:

"Mrs. Oliver contends in her affidavit that she has reviewed the chart prepared by the defendant physicians stating the names of the doctors who treated her daughter. She says she has read on the 'discharge summary' that Dr. Brock was consulted and assisted in prescribing the treatment of her daughter. *However, that document is not made a part of the record. ARCP 56(e) requires that sworn or certified copies of all papers or parts thereof referred to in [answers to interrogatories or depositions] (in support of or in opposition to a motion for summary judgment) shall be attached thereto or served therewith.*

"'... This means that if written documents are relied upon *they actually must be exhibited;* [answers to interrogatories or depositions] that purport to describe a document's substance or an interpretation of its contents are insufficient....' Wright & Miller, *Federal Practice and Procedure: Civil* § 2722."

(Emphasis added.) Accord, *Osborn v. Johns,* 468 So.2d 103, 108 (Ala.1985).

As the plaintiff correctly points out in his brief, there is nothing contained in the Hospital Board's answers to plaintiff's interrogatories which affirmatively shows that its administrator had personal knowledge of the facts pertaining to the drugs administered to Mrs. Welch, nor is it otherwise conceivable from the adduced facts that he would have such personal knowledge. Thus, without the hospital records themselves, these answers to interrogatories "purport[ing] to describe ... [the] substance or ... contents [of these records] are insufficient," and cannot be properly considered on summary judgment. *Oliver v. Brock, supra* (quoting Wright & Miller & Kane, *Federal Practice and Procedure: Civil* § 2722).

[6] Relying on Dr. Smith's deposition, the Hospital Board states that the testimony of Dr. Smith establishes that the plaintiff received only the medications prescribed and received them in the appropriate doses. It is obvious from Dr. Smith's deposition that his "findings" that Mrs. Welch was not given the wrong drug or improper amounts of drugs were based on his *review of her medical chart* or on *interviews with personnel,* and not on his own personal knowledge of what drugs the hospital actually administered, or in what dosage they were given, or at what dosage interval they were administered. Nor were these findings by Dr. Smith based on his own examination of Mrs. Welch after her seizure:

"Q. Do you have an opinion as to what caused her seizure, in this case?

"A. I just don't.

"Q. Has anyone expressed an opinion to you as to what the cause might have been?

"A. I think there was a lot of speculation, afterward, as to what could. Obviously, these things were checked out; could there have been other medications, medication in error, of dose or substance;

. . .

"Now, as her mother put it, if she hadn't been in the hospital, this wouldn't have happened. And, I, you know, would have to agree with that.

"But, I certainly can't connect the care that she received with the outcome that resulted.

"Q. And, we're talking about—

"A. The medication, the operation. I just—*in reviewing the chart,* I just don't see—I don't know what happened.

". . . .

"Q. Do you have any information, from any source, that she was given the wrong drug? One not intended for her?

"A. No. As a matter of fact, *we carefully interviewed the personnel.* And, I looked to see if I could see any possible connection [sic; medication?] that could have been mistakenly given, that would have resulted in such, and found none.

"And, of course, I found no evidence of anything other than what was prescribed, in the doses—"

(Emphasis added.) Neither the chart nor any statements in the form of affidavits or depositions by the personnel interviewed by Dr. Smith are contained in this record. Thus, the representations in the chart and by the personnel, relied on by Dr. Smith, are hearsay. Consequently, Dr. Smith's deposition, describing, interpreting, or relying upon the contents or substance of the chart or his interviews, is also inadmissible, and, therefore, cannot be properly considered on motion for summary judgment.

[7] It is important to note that it is *not* the admissibility of the hospital charts or records themselves that is at issue in this case. *Provided the proper predicate is laid,* the records themselves would be admissible. See Rule 44, A.R.Civ.P.; *Ikner v. Miller,* 477 So.2d 387 (Ala.1985); *Wilson v. State,* 243 Ala. 1, 8 So.2d 422 (1942); *Sell-*

*ers v. Doctors Medical Center,* 402 So.2d 1021 (Ala.Civ.App.1981); *Carroll v. State,* 370 So.2d 749 (Ala.Crim.App.), *cert. denied,* 370 So.2d 761 (Ala.1979). See also, *Liberty National Life Ins. Co. v. Reid,* 276 Ala. 25, 158 So.2d 667 (1963). Rather, at issue in this case is the admissibility *vel non* of the Hospital Board's answers to interrogatories, which were given by the Hospital Board's administrator based, in pertinent part, on information taken from Mrs. Welch's hospital records. Also at issue is the admissibility of Dr. Smith's "findings" with respect to whether the hospital properly administered to Mrs. Welch only those drugs prescribed by her physicians, which "findings" are clearly based on his review of her hospital records. It bears repeating that, *because the hospital records were relied upon by Dr. Smith and the Hospital Board's administrator, they had to be exhibited;* without them, the deposition and the answers to interrogatories are insufficient to establish the Hospital Board's proper administration of proper drugs. *Oliver v. Brock, supra.*

Another point to be emphasized is that it is the Hospital Board's negligence that is at the heart of this case, and not that of the attending physicians. Furthermore, it is axiomatic that, on summary judgment, this Court is obliged to view the evidence in the light most favorable to the non-moving party, as well as to draw all reasonable inferences in that party's favor. It is quite clear from Dr. Smith's deposition that he was *not* stating, in his expert opinion, that the hospital properly administered the proper drugs to Mrs. Welch. Nor did Dr. Smith state that, in his expert opinion, Mrs. Welch's seizure and subsequent death were *not* caused either by the hospital's administration of an *improper drug* or by its *improper administration* of a *proper drug.* Indeed, he deposed that he had *no opinion* as to the cause of Mrs. Welch's seizure, and he merely said, in essence, that, from *his review* of her chart and *his interviews* with hospital personnel, *he found no evidence* that Mrs. Welch was

WELCH v. HOUSTON COUNTY HOSP. BD.          Ala.  345
Cite as 502 So.2d 340 (Ala. 1987)

given "anything other than what was prescribed, in the doses [prescribed]."

Nevertheless, even if this Court, on summary judgment, *liberally* interpreted Dr. Smith's statement, "I certainly can't connect the care that she received with the outcome that resulted," as his *expert* opinion that the Hospital Board did not violate its standard of care in its treatment of Mrs. Welch, such an interpretation *in favor of* the Hospital Board, *the moving party*, would be flagrantly violative of the above-stated rule that this Court must view the evidence in the light most favorable to the *non-moving* party.  Moreover, even assuming that this statement does amount to an expert opinion, it, too, would be inadmissible, inasmuch as it is an expert opinion based on facts (*i.e.*, hospital records and unverified statements of hospital personnel) not in evidence and not within Dr. Smith's personal knowledge.

In *Thompson v. Jarrell*, 460 So.2d 148, 150 (Ala.1984), also a medical malpractice case, this Court stated the general rule in this jurisdiction with respect to the proper factual bases for expert testimony:

"Our cases are consistent in holding that an expert witness may give opinion testimony based upon either facts of which he has personal knowledge or facts which are assumed in a hypothetical question.... In either event, '*the facts known to the expert or hypothe[sized] must be facts in evidence.*' *Hagler v. Gilliland*, 292 Ala. 262, 265, 292 So.2d 647 (1974)."

(Emphasis added.) This rule is also stated in *Hagler v. Gilliland*, 292 Ala. 262, 292 So.2d 647 (1974), quoted from in part in *Thompson v. Jarrell, supra:*

"An expert may give his opinion based upon his own knowledge of the facts, stating these facts, then his opinion; or, he may give an opinion based upon a hypothetical question, *based upon facts in evidence*. In either case, *the facts* known to the expert or hypothecated *must be facts in evidence*. *Blakeney v.*

*Alabama Power Co.*, 222 Ala. 394, 133 So. 16, 18 (1931)."

(Emphasis added.) Most recently, in *Otwell v. Bryant*, 497 So.2d 111 (Ala.1986), another medical malpractice case, this Court reiterated the general rule set out above, and affirmed the trial court's ruling that the medical expert could not express an opinion based on *medical records not in evidence:*

"It is ... well established that a hypothetical question is not objectionable merely because it fails to include every fact shown by the evidence, but it must include 'sufficient facts *in evidence* upon which an expert opinion can be based.' *Thompson v. Jarrell*, 460 So.2d 148 (Ala. 1984)....

"The trial court found that the plaintiffs' attorney attempted to incorporate *medical records* in the hypothetical *which were not introduced into evidence*. It also found that the hypothetical did not contain sufficient facts. We find no abuse of discretion in the trial court's sustaining of the defendants' objection to the hypothetical questions."

(Emphasis added.) 497 So.2d at 116.

[8, 9]  Moreover, while expert testimony would be necessary to establish that Mrs. Welch's seizure and subsequent death could have been caused by the improper administration of drugs, expert medical testimony is not required for the factfinder to determine whether the hospital did, in fact, improperly administer drugs to Mrs. Welch. Such a factual determination is not beyond the ken of the average layman and should be left to a jury. Thus, it would be improper to allow Dr. Smith to give his "expert opinion" that the hospital did not improperly administer drugs to Mrs. Welch. See *Thompson v. Jarrell, supra*, where this Court held the following:

"It was also error to allow Dr. Campbell to testify that, in his opinion, Mrs. Thompson died of a *voluntary* drug overdose. *In order for expert testimony to be helpful to the trier of fact, it must appear that the subject matter is*

*beyond the ken of the average layman.* Thomas v. State, 249 Ala. 358, 31 So.2d 71 (1947); *Hicks v. State,* 247 Ala. 439, 25 So.2d 139 (1946). The determination of 'voluntariness,' if relevant at all, should be left to the jury."

("Voluntary" emphasized in original; other emphasis added.) 460 So.2d at 151.

Because none of the evidence of record which tended to establish that the Hospital Board properly administered proper drugs to Mrs. Welch is admissible, summary judgment should not have been granted in this case.

Plaintiff also alleged that the Hospital Board "negligently failed to monitor the condition of plaintiff's decedent during post operative recovery period and negligently failed to treat plaintiff's decedent" when she had her grand mal seizure. Just as with plaintiff's allegation concerning the Hospital Board's proper administration of drugs, there is no admissible evidence of record establishing that the Hospital Board did indeed (1) properly monitor the condition of plaintiff's decedent during the post-operative recovery period and (2) properly treat plaintiff's decedent at the time she had the seizure. Therefore, summary judgment was improper as to these claims as well.

Based on the foregoing, we hold that the summary judgment is due to be, and it is hereby, reversed, and this case is remanded to the trial court for further proceedings.

REVERSED AND REMANDED.

TORBERT, C.J., and MADDOX and ALMON, JJ., concur.

HOUSTON, J., concurs specially.

HOUSTON, Justice (concurring specially).

The hospital records were not exhibits; without them, the deposition and the answers to interrogatories are insufficient to establish the proper administration of prop-

er drugs. I would reverse and remand on this and this alone.



Burma THOMAS

v.

CITY OF RAINSVILLE.

85–802.

Supreme Court of Alabama.

Jan. 2, 1987.

City sought declaration that landowner's fence had been erected across "public street" and was public nuisance. The Circuit Court, DeKalb County, David A. Rains, J., entered judgment that was adverse to landowner, who appealed. The Supreme Court held that: (1) authority-to-sue issue was not timely raised through motion for directed verdict at close of evidence; (2) finding that road met requisite test for prescriptive dedication as public way was supported by evidence that it was built across improved or reclaimed land and had been in use by public without hindrance for more than 20 years; and (3) trial court could refuse to apply doctrine of estoppel where substantial portion of factual premise for application of that doctrine was presented ore tenus.

Affirmed.

**1. Parties ⬄76(1)**

Party had not timely raised issue, of city's lack of authority to sue for abatement of public nuisance due to failure of city council's minutes to reflect decision to sue, through motion for directed verdict at close of evidence; there was no rational basis for distinguishing between "capacity," as term was commonly used, and "authority," as that term was applicable, and

prognosis, Dr. Greer testified that it is unknown and depends on her response to ongoing treatment. He testified that the costs of future medications could be between $50 and $100 per month, depending on when, if ever, this condition ceases. Dr. Terrell testified that these costs could be between $60 and $75 per month. Both doctors indicated, however, that these were variable figures, and these costs would be eliminated if the patient's fibromyalgia becomes dormant or is resolved. In fact, Dr. Greer testified that Evans already is responding to a much lower dose of medication than most of his patients.

Evans argues that, since she had a remaining life expectancy of 33 years at the time of trial, the jury should have awarded her more compensatory damages based on the projected monthly medical expenses as estimated by Drs. Greer and Terrell. Specifically, she contends that the range of compensatory damages should be between $19,800 (33 years × 12 months × $50 per month) and $39,600 (33 years × 12 months × $100 per month).

Our supreme court has held that:

" '[t]he assessment of damages is a matter within the discretion of the jury in the first instance, and in the discretion of the trial judge on a motion for a new trial.' A jury verdict is presumed to be correct and should not be set aside on the ground of inadequacy of damages unless the amount is so inadequate as to plainly indicate that the verdict was the result of passion, bias, prejudice, mistake, or improper motive." (Citations omitted.)

*Anderson v. Clark,* 548 So.2d 1022, 1022–23 (Ala.1989).

Based on our review of the record, we cannot say that the jury's verdict was so inadequate as to indicate passion, bias, prejudice, mistake, or improper motive. Although Evans contends that the future medical expenses were undisputed, we reiterate that both doctors classified these expenses as being variable, depending, of course, on her response to treatment. We also note that both doctors testified that the defendants' activities did not cause Evans's fibromyalgia, but only exacerbated it.

[9]   The decision to either grant or deny a motion for new trial rests within the trial court's sound discretion, and its decision will not be disturbed on appeal unless a legal right was abused and the record plainly and palpably shows that the trial court erred. *Green Tree Acceptance, Inc. v. Standridge,* 565 So.2d 38 (Ala.1990). We cannot find that the trial court abused its discretion or plainly or palpably erred in denying Evans's motion for new trial. Its decision, therefore, is due to be affirmed.

AFFIRMED.

THIGPEN and RUSSELL, JJ., concur.



James G. **WALLS** and Odessa **Walls**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION.**

2910074.

Court of Civil Appeals of Alabama.

March 20, 1992.

Rehearing Denied April 24, 1992.

Certiorari Denied Aug. 21, 1992
Alabama Supreme Court 1911220.

Lender brought action to recover deficiency after repossession and sale of truck, and owners brought counterclaim alleging conversion, "commercially unreasonable" disposition of the truck, and wrongful seizure of co-owner's interest in truck. The Marshall Circuit Court, William D. Jetton, J., granted summary judgment in favor of lender, and owners appealed. The Court of Civil Appeals, L. Charles Wright, Retired Appellate Judge, held that: (1) affidavit of lender's credit representative was admissible in support of motion for summary judgment; (2) lender had security interest in co-owner's one-half ownership of truck,

s

to either grant or deny
al rests within the trial
and its decision
appeal unless a
used and the record
shows that the trial
*Tree Acceptance, Inc.*
So.2d 38 (Ala.1990).
the trial court abused
y or palpably erred in
on for new trial. Its
due to be affirmed.

SSELL, JJ., concur.



nd Odessa Walls

ACCEPTANCE
TION.

s of Alabama.
1992.
April 24, 1992.
ug. 21, 1992
ourt 1911220.

n to recover defi-
and sale of truck,
nterclaim alleging
ly unreasonable"
and wrongful sei-
st in truck. The
illiam D. Jetton,
ment in favor of
d. The Court of
Wright, Retired
: (1) affidavit of
ive was admissi-
r summary judg-
ity interest in co-
ship of truck,

though co-owner did not sign substitution
agreement; and (3) owners did not estab-
lish that truck was sold in commercially
unreasonable manner.

Affirmed.

**1. Judgment ⟨⇒⟩181(2, 3)**

Summary judgment is proper when the
trial court determines that there is no gen-
uine issue of material fact and moving par-
ty is entitled to judgment as matter of law.
Rules Civ.Proc., Rule 56.

**2. Judgment ⟨⇒⟩185(2)**

Once moving party in action for sum-
mary judgment makes prima facie showing
that there is no genuine issue of material
fact and that it is entitled to judgment as
matter of law, the burden shifts to nonmov-
ing party to show by substantial evidence
that there is genuine issue supporting its
position.  Rules Civ.Proc., Rule 56.

**3. Judgment ⟨⇒⟩185.1(3, 4)**

Opposing and supporting affidavits in
summary judgment motion must be made
on personal knowledge, must show that
affiant is competent to testify, and must
set forth facts that would be admissible in
evidence.  Rules Civ.Proc., Rule 56(e).

**4. Judgment ⟨⇒⟩185.1(3)**

Affidavit of lender's credit representa-
tive was admissible in support of summary
judgment motion against borrower, where
the affidavit showed that credit representa-
tive was personally familiar with borrow-
er's debt.  Rules Civ.Proc., Rule 56(e).

**5. Judgment ⟨⇒⟩185.2(8)**

When party is given unambiguous an-
swers which negate existence of genuine
issue of material fact to permit summary
judgment, that party is precluded from cre-
ating issue of fact by providing subsequent
affidavit that contradicts, without explana-
tion, his previous deposition testimony.

**6. Secured Transactions ⟨⇒⟩116, 168**

Lender continued to have security in-
terest in new truck procured by insurance
proceeds after original truck was wrecked
in accident, and lender maintained security
interest in co-owner's one-half ownership of

the truck, though co-owner did not sign
substitution agreement, where both owners
signed security agreement giving lender
right to subsequent "proceeds" from se-
cured party, and such "proceeds" included
"insurance payable by reason of loss or
damage to the collateral."  Code 1975,
§§ 7–9–203(3), 7–9–306.

**7. Secured Transactions ⟨⇒⟩242**

Allegation in counterclaim that truck
was sold under security agreement in com-
mercially unreasonable manner was unsub-
stantiated where the record was devoid of
any evidence detailing the manner in which
the truck was sold, or any evidence of what
constituted reasonable commercial practice
or usual manner of sale in disposition of
repossessed vehicle.  Code 1975, § 7–9–
507(2).

**8. Secured Transactions ⟨⇒⟩231**

Party asserting that collateral has
been sold in commercially unreasonable
manner must present evidence of what con-
stitutes reasonable commercial practices,
usual manner of sale, and what the current
market price was at the time of the sale.
Code 1975, § 7–9–507(2).

Clark E. Johnson, Jr., Albertville, for ap-
pellants.

J. Gullatte Hunter III and Richard M.
Blythe of Ford & Hunter, P.C., Gadsden,
for appellee.

L. CHARLES WRIGHT, Retired
Appellate Judge.

In January 1987 James and Odessa Walls
purchased a 1987 Chevrolet pickup truck
from Kilpatrick Chevrolet.  The Wallses
financed the truck by executing a Retail
Installment Sale Contract and Security
Agreement with Kilpatrick.  The contract
was subsequently assigned to General Mo-
tors Acceptance Corporation (GMAC).

The truck was involved in an accident
and completely destroyed.  The Wallses ac-
quired a new 1987 Chevrolet pickup truck
from Kilpatrick, apparently with the coop-
eration of GMAC, using insurance proceeds
from the first truck so that the second

could replace the first under the same contract. Mr. Walls signed a substitution agreement with GMAC.

The Wallses failed to pay two monthly installments. After notice and the security agreement, GMAC took possession of the truck. It was subsequently sold at auction for an amount less than that remaining on the contract.

GMAC instituted the present action to recover from the Wallses the deficiency balance. The Wallses filed an answer denying the allegations of the complaint. They filed a counterclaim alleging conversion, "commercially unreasonable" disposition of the truck, and wrongful seizure of Odessa Walls's interest in the truck.

GMAC filed a motion for summary judgment on the complaint and the counterclaim with affidavits and depositions. Following a hearing on the motion, the court found that there was no genuine issue of material fact and that GMAC was entitled to judgment on the complaint and counterclaim as a matter of law. The Wallses appeal.

**[1, 2]** Summary judgment is proper when the trial court determines that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Alabama Rules of Civil Procedure. The moving party bears the burden of proof. *Jones v. Newton*, 454 So.2d 1345 (Ala.1984). Once the moving party makes a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the burden shifts to the defendant to show by substantial evidence that there is a genuine issue supporting its position. *Bass v. SouthTrust Bank*, 538 So.2d 794 (Ala.1989).

**[3, 4]** The Wallses contend that the trial court erred in granting summary judgment in favor of GMAC. They insist that the affidavit of GMAC's credit representative, Faye Williams, was not admissible in that it failed to show that the affiant had personal knowledge of the facts.

Rule 56, A.R.Civ.P., permits evidence in the form of affidavits. Opposing and supporting affidavits must be made on personal knowledge, must show that the affiant is competent to testify, and must set forth facts that would be admissible in evidence. Rule 56(e), A.R.Civ.P.; *Car Ctr., Inc. v. Home Indem. Co.*, 519 So.2d 1319 (Ala. 1988).

Williams's affidavit showed that she was personally familiar with the debt owed by the Wallses because of her position as credit representative for GMAC. We find that the affidavit satisfies the requirements of Rule 56(e).

The Wallses next contend that summary judgment was improperly granted on their counterclaim because the facts revealed that the repossession of the truck was wrongful and constituted a breach of peace.

In deposition, James Walls testified that the GMAC representative who repossessed the truck did not threaten him. He stated that "rather than get mad and aggravated and into a fight" he personally gave the representative the keys to the truck.

**[5]** In opposition to the motion for summary judgment, Walls filed an affidavit in which he stated that the GMAC representative threatened him. That statement is inconsistent with his prior deposition testimony. When a party has given unambiguous answers which negate the existence of a genuine issue of material fact, that party is precluded from creating an issue of fact by providing a subsequent affidavit that contradicts, without explanation, his previous deposition testimony. *Robinson v. Hank Roberts, Inc.*, 514 So.2d 958 (Ala.1987).

**[6]** The Wallses further suggest that the repossession of the truck was unlawful because GMAC did not have a security interest in Odessa Walls's one-half ownership of the truck. Odessa Walls contends that because her signature did not appear on the Substitution Agreement she did not consent to the substitution of the collateral.

Section 7–9–203(3), Code 1975, provides that a security agreement gives the secured party the right to subsequent "proceeds" from the secured property unless the parties agree otherwise. Section 7–9–

306 defines "proceeds" to include "[i]nsurance payable by reason of loss or damage to the collateral." That section further provides that:

"Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

It is undisputed that the Wallses purchased the first truck in January 1987 and pledged it as collateral under a security agreement which was subsequently assigned to GMAC. The record reflects that after the original truck was wrecked the Wallses acquired another truck through application of insurance proceeds from the wreck of the first. The second truck was substituted as collateral under the contract.

Sections 7–9–203(3) and 7–9–306 make it clear that, unless the parties agree otherwise (and there is no indication from the record that the parties did agree otherwise), the secured party retains its security interest in the "proceeds" of collateral upon transfer of the collateral. Applying the appropriate law to the facts of this case, we find that GMAC continued to have a security interest in the substituted truck which was procured by use of insurance "proceeds," and which substitution was executed by a co-owner.

We comment further that though one co-owner did not sign the substitution of collateral, she shared possession and use of the truck and made payments under the contract along with her co-owner. She appears to have been fully aware of and accepted the benefits of the new arrangement without complaint.

[7] The Wallses contend that summary judgment was inappropriate because the facts revealed that GMAC failed to sell the truck in a "commercially reasonable manner." They insist that the price obtained at the auction was far less than the fair market value of the truck.

Section 7–9–507(2), Code 1975, provides, in pertinent part, the following:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."

[8] The party asserting that the collateral has been sold in a commercially unreasonable manner must "present evidence of what constitutes reasonable commercial practices, usual manner of sale, and what the current market price was at the time of the sale." *Terrell v. John Deere Co.*, 491 So.2d 918 (Ala.1986).

The truck was sold at auction for $8,350. James Walls stated that in his opinion the truck was worth $12,000 wholesale and $14,700 retail and should have been sold accordingly. He further stated that he thought the sale was conducted in an unreasonable manner because "no GMAC representative was there to look out for their own benefit and require a minimum bid on that vehicle."

The record is devoid of any evidence detailing the manner in which the truck was sold. Similarly, the record does not contain any evidence of what constitutes a reasonable commercial practice or a usual manner of sale in the disposition of a repossessed vehicle.

James Walls's conclusory opinions fail to sustain his allegation that the truck was sold in a commercially unreasonable manner.

The Wallses further contend that the truck was not sold in a commercially reasonable manner because they were not properly served with notice of the sale.

**418** Ala.    **602 SOUTHERN REPORTER, 2d SERIES**

It is undisputed that James Walls received notice of the sale. When questioned in deposition about receiving notice of the sale, Odessa Walls stated that, "I'm not saying that I didn't get it. I'm saying that I don't remember getting it." The Wallses' contention is not supported by the record.

The Wallses finally contend that the trial court erred in refusing to grant their post-judgment motion. They do not offer any new arguments in support of this final contention. Instead, in brief, they assert that the trial court "committed the same errors in refusing to grant Appellants' Post Judgment Motion as it did in granting Appellee's Motion for Summary Judgment." We find it unnecessary to address this contention any further.

The trial court's grant of summary judgment is affirmed.

The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12–18–10(e), Code 1975, and this opinion is hereby adopted as that of the court.

AFFIRMED.

All the Judges concur.



Dorothy B. INGRAM

v.

Charles R. INGRAM.

2900592.

Court of Civil Appeals of Alabama.

March 27, 1992.

Rehearing Denied May 8, 1992.

Certiorari Denied Aug. 21, 1992

Alabama Supreme Court 1911364.

Judgment dissolving parties' marriage was entered by the Jefferson Circuit Court, Charles J. Najjar, J., and wife appealed. The Court of Civil Appeals, Robertson, P.J., held that: (1) husband was properly permitted to testify as to his opinion of fair market value of parties' house; (2) division of marital property was proper; and (3) award to wife of $1,000 per month as periodic alimony was proper.

Affirmed.

**1. Appeal and Error ⟗169**

Trial court's judgment would not be reversed on grounds not raised and presented to trial court and upon which trial court trial did not have opportunity to rule.

**2. Appeal and Error ⟗170(2)**

Constitutional issues not raised in trial court below will not be considered for first time on appeal.

**3. Evidence ⟗474(18)**

In divorce action, husband was properly allowed to testify as to his opinion of market value of residence; husband lived in house for number of years and had opportunity to form opinion as to its value, and there was no evidence that trial court used husband's testimony as to market value of residence to enhance value of wife's assets. Code 1975, § 12–21–114.

**4. Divorce ⟗252.1**

Division of marital property in divorce action is matter committed to sound discretion of trial court.

**5. Divorce ⟗286(2, 5)**

Trial court's decision with respect to division of marital property following presentation of ore tenus evidence is presumed correct, and Court of Civil Appeals will not reverse that decision absent gross abuse of discretion.

**6. Divorce ⟗252.2**

Property divisions in divorce cases do not have to be equal, only equitable.

**7. Divorce ⟗252.3(3), 252.5(1)**

Division of marital property was equitable; wife was awarded home which was

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. CV 02-085 |
| | * | |
| HANSON AGGREGATES | * | |
| SOUTHEAST, INC., et al, | * | |
| | * | |
| Defendants. | * | |

## SCHEDULING ORDER

On September 22, 2003, the Court held a status hearing. The Court revisited Plaintiff's Motion to Continue filed by the Hon. Charles Vercelli and simultaneously reconsidered a Motion to Continue and for an Alternate Trial Plan that was filed by Attorney Phillip E. Adams, Jr. representing the Defendant, Oldcastle. Upon careful consideration of said Motions, the Court determined that all claims shall be CONTINUED.

It is **ORDERED** as follows:

**AMENDMENTS:**     All amendments including the adding of parties shall be filed within 90 days of this order.

**WITNESSES:**     A preliminary list of the names and addresses of all witnesses shall be exchanged within 30 days of this order. A final list of the names and addresses of all witnesses shall be exchanged on or before the pretrial conference date. This shall include expert and rebuttal witnesses.

**MOTIONS:**     Motions for Summary Judgment shall be filed within 30 days of the pretrial conference and any further responses shall be filed by 15 days before the pretrial conference. The Court will not entertain any Motions following the pretrial conference unless they are emergency in nature.

**MOTIONS IN LIMINE:**     Motions in Limine must be filed at least 7 days before the trial date.

**DISCOVERY:**     Discovery shall be completed by the pretrial conference date.

## SCHEDULING ORDER
### (CONTINUED)

**DEPOSITIONS:**   If testimony is to be introduced by Deposition, the offering party shall notify the other parties on or before the pretrial conference and any objections to any portions thereof shall be filed with the Court within 10 days thereafter.

**MEDIATION:**   Any Mediation Conference is to be completed on or before 60 days prior to trial, and the parties shall timely inform the Court of any success therefrom.

**STATUS CONFERENCE:**   Set for **October 30, at 1:30 P.M.** in Courtroom #3 of the Lee County Justice Center, Opelika, Alabama.

**PRETRIAL CONFERENCE:**   Set for **January 8, 2004 at 1:30 P.M.** in Courtroom #3 of the Lee County Justice Center, Opelika, Alabama. Counsel shall prepare detailed specific factual contentions for submission in writing ON PRETRIAL DATE. Counsel shall be prepared to argue all pending motions ON PRETRIAL DATE.

**TRIAL DATE:**   Set for **January 26, 2004 at 8:30 a.m.** in Courtroom #3 of the Lee County Justice Center, Opelika, Alabama.
Estimated length of trial:__ **Days.**

**FURTHER COMMENTS:**

The Clerk of Court is ordered to mail by ordinary mail are deliver a copy of this Order to the following:

Hon. Jimmy Sprayberry
Post Office Box 2429
Auburn, AL 36831-2429

Hon. Charles Vercelli, Jr.
1019 S. Perry Street
Montgomery, AL 36104

## SCHEDULING ORDER
### (CONTINUED)

Hon. James Byram, Jr.
Hon. Dorman Walker
Hon. Matt Parnell
Post Office Box 78
Montgomery, AL 36101

Hon. John V. Denson
Post Office Box 2345
Opelika, AL 36803-2345

Hon. Phillip E. Adams, Jr.
Post Office Box 2069
Opelika, AL 36803-2069

Hon. Guy Gunter
Opelika, AL 36803-0409
Post Office Box 409

Hon. H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

DONE this the 22nd day of September, 2003.

JACOB A. WALKER, III
Circuit Judge

FILED

SEP 2 3 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                          *
                                             *
            Plaintiff,                       *
                                             *
vs.                                          *        CIVIL ACTION NO. CV 02-085
                                             *
HANSON AGGREGATES                            *
SOUTHEAST, INC., et al,                      *
                                             *
            Defendants.                      *

## AMENDED SCHEDULING ORDER

On September 22, 2003, the Court held a status hearing. The Court revisited Plaintiff's Motion to Continue filed by the Hon. Charles Vercelli and simultaneously reconsidered a Motion to Continue and for an Alternate Trial Plan that was filed by Attorney Phillip E. Adams, Jr. representing the Defendant, Oldcastle. Upon careful consideration of said Motions, the Court determined that all claims shall be CONTINUED.

It is **ORDERED** as follows:

**AMENDMENTS:**     All amendments including the adding of parties shall be filed within 90 days of this order.

**WITNESSES:**     A preliminary list of the names and addresses of all witnesses shall be exchanged within 30 days of this order. A final list of the names and addresses of all witnesses shall be exchanged on or before the pretrial conference date. This shall include expert and rebuttal witnesses.

**MOTIONS:**     Motions for Summary Judgment shall be filed within 30 days of the pretrial conference and any further responses shall be filed by 15 days before the pretrial conference. The Court will not entertain any Motions following the pretrial conference unless they are emergency in nature.

**MOTIONS IN
LIMINE:**     Motions in Limine must be filed at least 7 days before the trial date.

**DISCOVERY:**     Discovery shall be completed by the pretrial conference date.

## AMENDED SCHEDULING ORDER
### (CONTINUED)

**DEPOSITIONS:**    If testimony is to be introduced by Deposition, the offering party shall notify the other parties on or before the pretrial conference and any objections to any portions thereof shall be filed with the Court within 10 days thereafter.

**MEDIATION:**    Any Mediation Conference is to be completed on or before 60 days prior to trial, and the parties shall timely inform the Court of any success therefrom.

**STATUS CONFERENCE:**    Set for **October 30, at 1:30 P.M.**  in Courtroom #3 of the Lee County Justice Center, Opelika, Alabama.

**PRETRIAL CONFERENCE:**    Set for **January 8, 2004 at 1:30 P.M.** in Courtroom #3 of the Lee County Justice Center, Opelika, Alabama. Counsel shall prepare detailed specific factual contentions for submission in writing ON PRETRIAL DATE. Counsel shall be prepared to argue all pending motions ON PRETRIAL DATE.

**TRIAL DATE:**    Set for **January 26, 2004 at 8:30 a.m.** in Courtroom #3 of the Lee County Justice Center, Opelika, Alabama.
Estimated length of trial:__ **Days.**

**FURTHER COMMENTS:**    The Plaintiffs shall have sixty (60) days from this Order to disclose any expert witnesses.  The Defendant shall have sixty (60) days thereafter to disclose any expert witness or in the alternative shall have one-hundred twenty (120) days from this Order.

1860

# AMENDED SCHEDULING ORDER
## (CONTINUED)

The Clerk of Court is ordered to mail by ordinary mail are deliver a copy of this Order to the following:

Hon. Jimmy Sprayberry
Post Office Box 2429
Auburn, AL 36831-2429

Hon. Charles Vercelli, Jr.
1019 S. Perry Street
Montgomery, AL 36104

Hon. James Byram, Jr.
Hon. Dorman Walker
Hon. Matt Parnell
Post Office Box 78
Montgomery, AL 36101

Hon. John V. Denson
Post Office Box 2345
Opelika, AL 36803-2345

Hon. Phillip E. Adams, Jr.
Post Office Box 2069
Opelika, AL 36803-2069

Hon. Guy Gunter
Opelika, AL 36803-0409
Post Office Box 409

Hon. H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

DONE this the 29th day of September, 2003.

F I L E D

JACOB A. WALKER, III
Circuit Judge

SEP 3 0 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

1866

## IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,        )
                           )
      Plaintiffs,         )
                           )
vs.                   )     CASE NO. CV-02-85
                           )
HANSON AGGREGATES     )
SOUTHEAST, INC., et al.,    )
                           )
      Defendants.     )

**F I L E D**

OCT 16 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

TO:  Circuit Clerk of Lee County:

Please take notice that on the 15th day of October, 2003,

    \_\_\_\_\_ 1.  A notice to take the deposition of \_\_
    \_X\_ 2.  Interrogatories
    \_\_\_\_\_ 3.  Request for Admissions
    \_X\_ 4.  Request for Production
    \_\_\_\_\_ 5.  Answers to Interrogatories
    \_\_\_\_\_ 6.  Response to Request for Admissions
    \_\_\_\_\_ 7.  Response to Request for Production
    \_\_\_\_\_ 8.  Notice of Intent to Serve a Subpoena on a Non-Party
           as follows:

was served on all parties to this cause by the Defendant Oldcastle Materials.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

BY: _Phillip E. Adams Jr._

PHILLIP E. ADAMS, JR. (ADA025)
Attorney for Defendant
P. O. Box 2069
Opelika, AL 36803-2069
Tel. (334) 745-6466

1887

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 16th day of October, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL 36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama 36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

Of Counsel

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al )<br><br>Plaintiffs, )<br><br>v. )<br><br>HANSON AGGREGATES )<br> SOUTHEAST, INC.; VIRGINIA )<br>YOUNG PRIEST, GILMER )<br>PROPERTIES, LTD. AND )<br>OLDCASTLE MATERIALS )<br>SOUTHEAST, INC., etc. )<br><br>Defendants. ) | CIVIL ACTION NUMBER: CV-02-085<br><br>F I L E D<br>OCT 17 2003<br>IN OFFICE<br>CORINNE T. HURST<br>CIRCUIT CLERK |

### PRELIMINARY
### WITNESS AND EXHIBIT LISTS FILED ON BEHALF
### YOUNG AND GILMER DEFENDANTS

COME NOW the Defendants, Virginia Young Priest; John Claude Young, c/o Virginia

Young Priest; Virginia Hart Young; Louise Young O'Brien  (hereinafter **"Young Defendants"**)

and Gilmer Properties, Ltd. (hereinafter **"Gilmer Defendants"**) and list their witnesses and

exhibits as follows:

### WITNESS LIST:

1.     All witnesses listed by Hanson Aggregates Southeast, Inc. (hereafter "Hanson

Defendant") and Oldcastle Materials Southeast, Inc. (hereafter "Oldcastle Defendant"), including

all expert witnesses listed by Hanson and Oldcastle

1

1860

1.     Virginia Young Priest
       416 Charing Loop
       Auburn, Alabama 36830

2.     Louise Young O'Brien
       1416 Charing Loop
       Auburn, Alabama 36830

3.     Virginia Hart Young
       HC3 Box 40-C
       Port St. Joe, Florida  32456

4.     Charles W. Gilmer, Sr.
       575 Lee Road 166
       Opelika, Alabama 36801

5.     Alice C. Gilmer
       575 Lee Road 166
       Opelika, Alabama 36801

6.     Charles W. Gilmer, Jr.
       7800 Lee Road 175
       Salem, Alabama 36874

7.     Kammy Gilmer
       7800 Lee Road 175
       Salem, Alabama 36874

8.     Barbara  Gilmer Smith
       1401 Lee Road 47
       Opelika, Alabama 36804

9.     Gary Smith
       1401 Lee Road 47
       Opelika, Alabama 36804

10.    Matthew Ruttledge Gilmer
       Lee Road 166
       Opelika, Alabama 36804

11     Lelia Wilder Gilmer
       Lee Road 166
       Opelika, Alabama 36804

12.    Any Plaintiff and any representative of any entity Plaintiff.

2

13.    Any witness identified by any other party to this action.

14.    Any witness whose identity is disclosed through further discovery.

15.    Any person deposed in this case.

16.    Rebuttal witnesses.

17.    This party reserves the right not to offer and/or to object to the testimony of any of these persons offered by any other party and to supplement and/or amend this witness list.


## EXHIBIT LIST:

1.    All exhibits listed by the Defendants Hanson and Oldcastle.

2.    The respective leases of the **Young and Gilmer Defendants** previously produced to the Plaintiffs' attorneys.

3.    All exhibits previously produced by the **Young and Gilmer Defendants** in response to Request for Production and including those exhibits produced at the deposition of Charles W. Gilmer, Sr.

4.    Any exhibit listed by any party to the case.

5.    This party reserves the right not to offer and/or to object to the exhibit offered by any other party and further reserves the right to supplement and/or amend this exhibit list subject to further discovery.

3

Respectfully submitted,

**OF COUNSEL FOR DEFENDANTS:**
**VIRGINIA YOUNG PRIEST, JOHN CLAUDE**
**YOUNG C/O VIRGINIA YOUNG PRIEST, LOUISE**
**YOUNG O'BRIEN, VIRGINIA HART**
**YOUNG AND GILMER PROPERTIES, LTD.**
SAMFORD, DENSON, HORSLEY,
PETTEY, BRIDGES & HUGHES
P.O. Box 2345
Opelika, AL 36803-2345
(334) 745-3504
FAX (334) 745-3506

JOHN V. DENSON
DEN007

4

1879

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all Attorneys of Record in the above-styled cause, filed in open Court on this the 17th day of October , 2003, as follows:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

Charles E. Vercelli, Jr.
Vercelli & Associates, P.C.
109 South Perry Street
Montgomery, Alabama 36104-5049

James B. Sprayberry
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Mr. Guy Gunter
Melton, Gunter & Melton
Post Office Box 409
Opelika, Alabama  36803-0409

Mr. Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White
Post Office Box 2069
Opelika, Alabama 36803-2069

Jack Weiss
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, NY   10166-0193

John V. Denson

5



IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

FILED
OCT 2 3 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| vs. | § | Civil Action No.:  CV-2002-85 |
| | § | |
| HANSON AGGREGATES | § | |
| SOUTHEAST, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## RENEWED MOTION IN LIMINE

Hanson Aggregates Southeast, Inc. ("Hanson") renews portions of its First Motion in Limine and moves the Court to prohibit the Plaintiffs scheduled to participate in the initial trial of this matter from adducing testimony through any non-party witness regarding claims not made a part of the present litigation.  In support of this motion, Hanson avers as follows:

1.      Plaintiffs' Witness List for the January 26, 2003 trial of this matter lists 8 non-party witnesses who are anticipated to make assertions regarding the Opelika quarry during period of time it was owned by Hanson.  The non-party witnesses listed are as follows: Ed Crum, Joe Decker, Mike Delk, Walter Dorsey, Loretta Dubose, Dot Haynie, Darlene Motley, Shirlene Parker.  While some of these witnesses have been included on Plaintiffs' previous witness lists, several of these individuals, Crum, Decker, Dorsey, and Dubose, have never been included on any list filed by the Plaintiffs.  None of these witnesses are parties or representatives of parties to this litigation.  None of these witnesses have been deposed.

2.      Hanson has previously objected to the use of any such non-party witness by Plaintiff at the trial of this matter.  *See* Hanson's First Motion in Limine, filed on July 9, 2003. Hanson adopts the arguments set forth in its First Motion in Limine by reference as if set out here in full.

137491.1

3.     Plaintiffs have indicated that the above-listed individuals will be asked to give testimony regarding alleged damage to their own property and their own alleged personal injuries, not the alleged damages and alleged injuries of the Plaintiffs. Allowing the Plaintiffs to present testimony and evidence from these or any other non-party witnesses regarding factual claims which are not part of the present litigation would defeat the primary purpose of the Court's previously entered case management orders. Further, any such testimony would be unnecessary, cumulative, and confusing to the jury. Plaintiffs should, therefore, be prohibited from calling any and all non-party witnesses to provide testimony regarding the witnesses' individual assertions.

4.     All testimony and evidence regarding the individual assertions of the non-party witnesses listed by the Plaintiffs is irrelevant under *Ala. R. Evid.* 401 for the purposes of the initial trial and should be excluded under *Ala. R. Evid.* 402.

5.     The probative value of any testimony from these non-party witnesses regarding any claim or assertion which will not be submitted to the jury is substantially outweighed by the danger of unfair prejudice to the Defendants during the initial trial. Any relevancy of such testimony is far outweighed by its tendency to confuse and mislead the jury and would constitute a substantial waste of time and resources. Such evidence should be excluded under *Ala. R. Evid.* 403.

6.     Sustaining objections to such irrelevant and prejudicial testimony from non-party witnesses, rather than enforcing a preclusion of such testimony, would not cure the effects of such improper testimony, but would reinforce its impact on the jurors.

WHEREFORE, premises considered, Hanson moves the Court enter an order precluding the Plaintiffs from calling any non-party witness to give testimony or evidence as set forth in Hanson's First Motion in Limine and above.

DATED this the _21st_ day of October, 2003.

One of the attorneys for Defendant
Hanson Aggregates Southeast, Inc.

**OF COUNSEL:**
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
P. O. Box 78
Montgomery, AL 36101-0078
Telephone:    (334) 834-6500


H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

1676

## Certificate of Service

I hereby certify that on this _21st_ day of October, 2003, a copy of the foregoing has been served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
P. O. Drawer 2429
Auburn, AL  36830

Charles E. Vercelli, Jr., Esq.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0404

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
  & White, LLP
Post Office Box 2069
Opelika, Alabama  36803-2069

John V. Denson, Esq.
Samford, Denson, Horsley, Pettey
  & Bridges
P. O. Box 2345
Opelika, AL  36803-2345

Of Counsel

1877

## IN THE CIRCUIT COURT FOR
## LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀CASE NO. CV-02-85
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
HANSON AGGREGATES⠀⠀)
SOUTHEAST, INC. et al.,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendants.⠀⠀⠀⠀)

**F I L E D**

**OCT 29 2003**

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## PRELIMINARY WITNESS LIST OF DEFENDANT OLDCASTLE MATERIALS SOUTHEAST, INC.

COMES NOW Defendant Oldcastle Materials Southeast, Inc. ("OMS") and submits the following preliminary list of witnesses to be called at trial:

1. Frank Heisterkamp, Vice President of Development, Oldcastle Materials, Inc., Washington, D.C.

2. Morris Bishop, President, OMS, Birmingham, Alabama.

3. Ted Reynolds, Chief Operating Officer, OMS, Birmingham, Alabama.

4. Expert witnesses for OMS to be disclosed in conformity with the Court's Amended Scheduling Order.

5. Any plaintiff, and any representative of any plaintiff.

6. All witnesses, including expert witnesses, listed or identified by any other party.

7. Any witness whose identity is disclosed through further discovery.

8. Any person deposed in this case.

9. Any person required to authenticate or identify any document to be offered into evidence in this case.

10. Rebuttal witnesses.

1878

11. OMS reserves the right not to offer and/or to object to the testimony of any person offered by any other party and to supplement and/or to amend this preliminary witness list.

Respectfully Submitted,

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

BY: _____

**PHILLIP E. ADAMS, JR.**
**P.O. Box 2069**
**Opelika, AL 36803-2069**
**Tel. (334) 745-6466**

2

1879

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this 29th day of October, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P.O. Box 409
Opelika, Alabama 36803-0429

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P.O. Box 2345
Opelika, Alabama 36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

_Phillip E. Adams Jr._
Of Counsel

1680

## IN THE CIRCUIT COURT FOR
## LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
    Plaintiffs,                   )
                                       )
vs.                                    )    CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC. et al.,                )
                                       )
    Defendants.                   )

**F I L E D**

OCT 29 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## OLDCASTLE'S RENEWED MOTION FOR SEVERANCE AND
## FOR A CONTINUANCE

Defendant Oldcastle, Inc., ("Oldcastle") hereby respectfully submits this Renewed

Motion For a Severance and Continuance as follows:

1.      On August 15, 2003 – only fifteen days after being added as a defendant in this

matter which was then scheduled for an October 20, 2003 trial – Oldcastle filed a Motion to

Continue And For An Alternate Trial Plan.  Oldcastle's motion was heard on September 5, and

on September 11 this Court entered an Order severing the claims against Oldcastle and

continuing them.  However, no trial plan was ordered at that time.

2.      Subsequently, on September 22, this Court granted Plaintiffs' Motion to Continue

their trial against Hanson, and issued a Scheduling Order (the "September 22 Scheduling Order")

essentially recombining the claims against Oldcastle and Hanson, and setting a January 26, 2004,

date for the combined trial.  On September 29, 2003, this Court entered an Amended Scheduling

Order (the "Amended Scheduling Order").

3.      The Amended Scheduling order sets forth the following schedule with respect to

certain pre-trial events:

- November 28, 2003:     Deadline for Plaintiffs to disclose to Defendants any expert witnesses (60 days after date of the Amended Scheduling Order).

- December 9, 2003:      Deadline for filing motions for summary judgment (30 days before the pretrial conference).

- January 8, 2004:       Pretrial Conference and discovery cut-off.

- January 19, 2004:      Deadline for filing motions *in limine*.

- January 26, 2004:      Trial.

- January 27, 2004:      Deadline for Defendants to disclose any expert witnesses (120 days after date of Scheduling Order).

4.      In an effort to accommodate the schedules of multiple counsel , Oldcastle and Plaintiffs met and conferred on October 15, 2003 and tentatively agreed (subject to pending documentation) to the following schedule with regard to discovery in this matter:

- November 5, 2003:      Deadline for Oldcastle to respond or object to Plaintiffs' First Interrogatories and Requests for Production of Documents.

- November 12, 2003:     Deadline for Oldcastle to produce all documents requested in Plaintiffs' First Interrogatories and Requests for Production (except those subject to objection or claim of privilege).

                         Deadline for Plaintiffs to respond or object to Oldcastle's Interrogatories and Request for Production of Documents, and to produce documents (except those subject to objection or claim of privilege).

- November 20, 2004:     Deposition of Oldcastle's Plant Manager.

- December 9-10, 2004:   Deposition of Oldcastle's Corporate Representative (subject to the availability and/or agreement of counsel for Hanson).

5.      In light of the fact that it was only recently named as a defendant in this matter, the foregoing schedule represents Oldcastle's best efforts to expeditiously investigate the allegations set forth against it in Plaintiffs' Fourth Amended and Restated Complaint, to prepare its defense, and to be in a position to submit to and conduct discovery.

6.      Notwithstanding these efforts, as a practical matter the Amended Scheduling Order would deprive Oldcastle of any meaningful opportunity to seek summary judgment pursuant to Rule 56 of the Alabama Rules of Civil Procedure.

7.      The deadline for filing motions for summary judgment is December 9, 2003. Oldcastle will likely wish to bring a motion for summary judgment based at least in part on one or more of the following: (1) the deposition testimony of Plaintiffs' experts, (2) the deposition testimony of its own plant manager and corporate representatives, and (3) the deposition testimony of Plaintiffs. However, under the Amended Scheduling Order, Plaintiffs are not required even to designate their expert witnesses until November 28—only six business days prior to the deadline for filing motions for summary judgment. There is no way that plaintiffs will provide Oldcastle with expert reports specific to Oldcastle, produce supporting expert documentation, and afford Oldcastle a reasonable opportunity to depose the experts offering testimony against Oldcastle prior to the December 9 deadline for filing summary judgment motions. Indeed, if Oldcastle and the plaintiffs follow the discovery schedule they have tentatively agreed to, the deposition of Oldcastle's corporate representatives will not be complete until December 10, 2003, and Oldcastle's depositions of plaintiffs and plaintiffs' experts will not even begin until after December 10—all beyond the summary judgment deadline.

8.      As set forth above, the discovery which would form the basis of any motion for summary judgment Oldcastle may seek to bring will not be complete until *after* the deadline for

3

bringing such a motion has passed. Thus, the Amended Scheduling Order – which requires Oldcastle to prepare for trial a mere five months after first being named as a defendant – will effectively deprive Oldcastle of its right provided by Rule 56 of the Alabama Rules of Civil Procedure to obtain summary judgment and thus avoid the cost and inconvenience of a lengthy trial or at least substantially narrow the issues for trial. Because summary judgment is an integral part of modern civil procedure and materially affects the substantial rights of civil litigants, including Oldcastle, it would be a deprivation of due process of law, as guaranteed by the United States and Alabama Constitutions, to deny Oldcastle a reasonable and effective opportunity to move for summary judgment dismissing all or some of the claims against it. Moreover, to do so would deprive Oldcastle of the equal protection of the laws when other litigants in the same case enjoy, and have exercised, the same right by virtue of their prior and longstanding participation in the same litigation.

9.     Wherefore, Oldcastle respectfully requests that this Court sever Plaintiffs' claims against it and that it set those claims for trial at a date subsequent to January 26, 2004 that will afford Oldcastle a reasonable opportunity to propound and submit to expert and fact discovery and to prepare and bring motions for summary judgment or partial summary judgment as permitted by Rule 56 of the Alabama Code of Civil Procedure .

Respectfully submitted,

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

BY: _____
PHILLIP E. ADAMS, JR.
P.O. Box 2069
Opelika, AL 36803-2069
Tel. (334) 745-6466

4

1884

## CERTIFICATE OF SERVICE

       This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this 29th day of October, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P.O. Box 409
Opelika, Alabama  36803-0429

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P.O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia  30092

_____
Of Counsel

**IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA**

FILED

NOV 0 3 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CASE NO. CV-02-85 |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## HANSON'S AMENDED WITNESS LIST

Defendant Hanson Aggregates Southeast, Inc. ("Hanson"), hereby submits the following

amended witness list for the first trial:

1. Nigel Wills
   c/o Hanson Aggregates Southeast, Inc.
   Tucker, Georgia

2. Steve Edgerton
   c/o Hanson Aggregates Southeast, Inc.
   Tucker, Georgia

3. Tom Bugenhagen
   c/o Hanson Aggregates Southeast, Inc.
   Tucker, Georgia

4. Brent Ward
   c/o Hanson Aggregates Southeast, Inc.
   Tucker, Georgia

5. Randy Watkins
   c/o Hanson Aggregates Southeast, Inc.
   Tucker, Georgia

6. David Turner
   c/o Hanson Aggregates Southeast, Inc.
   Tucker, Georgia

7. Phil Welter
   c/o Hanson Aggregates Southeast, Inc.
   Tucker, Georgia

137455.1

8.    Matt Schwent
      c/o Hanson Aggregates Southeast, Inc.
      Tucker, Georgia

9.    Jim Zadarozny
      c/o Hanson Aggregates Southeast, Inc.
      Tucker, Georgia

10.   David Dukes
      Area Manager
      c/o Hanson Aggregates Southeast, Inc.
      Tucker, Georgia

11.   Pat Cooley
      Opelika, Alabama

12.   Kelly Young
      Opelika, Alabama

13.   Irena White
      Phenix City, Alabama

14.   Christina Morrison
      Smiths, Alabama

15.   Shawn Greenway
      Cartersville, Georgia

16.   Tony Williams
      c/o Dixie Pipeline Company
      1117 Perimeter Center West, Suite West 301
      Atlanta, Georgia 30338

17.   McRoy Sauls
      c/o Sauls Seismic, Inc.
      3710 4th Avenue South
      Birmingham, Alabama 35222

18.   Mr. Robert Wood
      c/o Tom Joiner & Associates
      P. O. Box 1490
      Tuscaloosa, Alabama 35403

19.   Robert B. Cook, Ph.D.
      c/o Auburn University
      Department of Geology
      210 Petrie Hall
      Auburn University, AL  36849

20. Harold L. Merck
c/o Merck & Hill Consultants, Inc.
Suite 200
1995 North Park Place
Atlanta, GA 30339-2004

21. Rex Griffin
c/o Auburn Water Board
Auburn, Alabama

22. David R. Thrasher, M.D.
Montgomery Pulmonary Consultants
1440 Narrow Lane Parkway
Montgomery, Alabama 36107

23. Gaeton Don Lorino, M.D.
Montgomery Pulmonary Consultants
1440 Narrow Lane Parkway
Montgomery, Alabama 36107

24. William P. Saliski, Jr., D.O.
Montgomery Pulmonary Consultants
1440 Narrow Lane Parkway
Montgomery, Alabama 36107

25. Joel Wehrman
JADE Engineering
210 Lorna Square, Suite 207
Hoover, Alabama 35216

26. Mark E. Barrs
c/o Barrs Appraisal Services, Inc.
P. O. Box 1507
Montgomery, Alabama 36102-1507

27. Ralph O. Ewers, Ph.D
Ewers Water Consultants, Inc.
160 Redwood Drive
Richmond, Kentucky 40475

28. Jim Hiestand
c/o Dyno Nobel
110 McLarty Road
Whitesburg, Georgia 30185

137455.1                                    3

1885

29.  Danny Olive
     c/o Dyno Nobel
     110 McLarty Road
     Whitesburg, Georgia 30185

30.  David Nooney
     c/o R. E. Grills Construction Company, Inc.
     P. O. Box 90
     Shannon, Alabama 35142

31.  Glen Rickard
     c/o R. E. Grills Construction Company, Inc.
     P. O. Box 90
     Shannon, Alabama 35142

32.  Malcolm LeBron, P.E.
     Rt. 2, Box 29
     Rockford, Alabama

33.  Charles Gilmer

34.  Any Gilmer defendant.

35.  Any Young defendant.

36.  Corporate representative of Oldcastle Materials Southeast, Inc.

37.  Ron Gore (or other ADEM representative)
     c/o Alabama Department of Environmental Management
     1400 Coliseum Boulevard
     Montgomery, Alabama

38.  Richard Hulcher (or other ADEM representative)
     c/o Alabama Department of Environmental Management
     1400 Coliseum Boulevard
     Montgomery, Alabama

39.  Any plaintiff and any representative of any entity plaintiff.

40.  Any witness identified by any other party to this action.

41.  Any witness whose identity is disclosed through further discovery.

42.  Any person deposed in this case.

43.  Any person needed to authenticate any document or other exhibits.

44.  Any witness necessary for rebuttal.

Hanson reserves the right not to offer and/or to object to the testimony of any of these persons offered by any other party, and to supplement and/or amend this witness list.

_____
One of the attorneys for Defendant
Hanson Aggregates Southeast, Inc.

**OF COUNSEL:**
James A. Byram, Jr. (BYR003)
Paul A. Clark (CLA076)
Balch & Bingham LLP
P. O. Box 78
Montgomery, AL 36101-0078
Telephone:    (334) 834-6500


H. Wayne Phears, Esq.
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

137455.1

5

## Certificate of Service

I hereby certify that on this ___30___ day of October, 2003, a copy of the foregoing has been served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
P. O. Drawer 2429
Auburn, AL 36830

Charles E. Vercelli, Jr., Esq.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0404

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
  & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

John V. Denson, Esq.
Samford, Denson, Horsley, Pettey
  & Bridges
P. O. Box 2345
Opelika, AL 36803-2345


Of Counsel

FILED

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA  NOV 0 6 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, et al.,                          )
                                             )
          Plaintiffs,                        )
                                             )
vs.                                          )     Civil Action No. CV-20 02-0085
                                             )
HANSON AGGREGATES SOUTHEAST,                 )
INC., et al.,                                )
                                             )
          Defendants.                        )

## PLAINTIFFS' PRELIMINARY TRIAL WITNESS LIST
## FOR JANUARY 26, 2004 TRIAL

Plaintiffs reserve the right to call the following persons as witnesses at the trial of

this case:

1.  Aley, Tom (Plaintiffs' expert, Protem, MO);

2.  Broadwater, Ann (Plaintiff);

3.  Broadwater, Mike (Plaintiff);

4.  Broadwater, Mittie (Plaintiff);

5.  Brown, Bo (Opelika Parks & Recreation employee);

6.  Chaffin, Richard (Dixie Pipeline; live or by deposition);

7.  Clark, Anthony (Plaintiff);

8.  Clark, Carol (Plaintiff);

9.  Cooper, Dr. Tom (Plaintiffs' expert, Lillian, AL);

10. Crum, Ed (Ogletree Road, Auburn, AL);

11. Davis, Donna  (Plaintiff);

12. Davis, Mike (Plaintiff);

13. Decker, Joe (96 Lee Road 703, Opelika, AL);

14.  Delk, Mike (c/o Opelika Police Department);

15.  Dorsey, Walter (1406 Scott Street, Opelika, AL);

16.  Dubose, Loretta (Beulah, AL);

17.  Edgerton, Steve (Hanson Corporate Representative);

18.  Frizzel, Medena (Plaintiff);

19.  Getz, Rodger (Plaintiffs' Expert);

20.  Gilmer, Charles (Defendant);

21.  Griggs, Dorothy (Plaintiff);

22.  Griggs, Ronnie (Plaintiff);

23.  Hall, Neal (Lee County Highway Department);

24.  Harrelson, Bill (Opelika Parks & Recreation);

25.  Haynie, Dot (900 Lee Road 147, Opelika, AL);

26.  Henderson, Bobby (BWA Manager, retiring);

27.  Hicks, David (Plaintiffs' Expert);

28.  Hilyer, Dan (Opelika Utilities Board) (Plaintiff);

29.  Hulcher, Richard (ADEM);

30.  Jackson, Haward (Plaintiff);

31.  Jackson, Nora (Plaintiff);

32.  Jenkins, Steve (ADEM);

33.  Ledbetter, Stanley (Plaintiff);

34.  Ledbettter, Jackie (Plaintiff);

35. Lee, Alan (Opelika Utilities Board);

36. Moore, Danny (GSA) [or another GSA representative if he retires];

37. Motley, Darlene (3044 U.S. Hwy 169, Opelika, AL);

38. Nichols, Dr. Katherine (Plaintiffs' expert; live or by deposition);

39. Parker, Bobby  (Plaintiff);

40. Parker, Randall  (Plaintiff);

41. Parker, Shirlene (Lee Road 166, Opelika, AL);

42. Parker, Wanda Parker (Plaintiff);

43. Patton, Mayor Barbara (Mayor of Opelika) (Plaintiff);

44. Rhinehart, Christian (Skelly & Loy, Charlotte, NC);

45. Saunders, Dr. James (Plaintiffs' expert);

46. Schwieker, Ken (Plaintiff);

47. Skinner, Richard (BWA new Manager);

48. Smith, Donnie (Plaintiff);

49. Stiles, Dr. (Plaintiffs' expert; live or by deposition);

50. Sumner, Amanda (Plaintiff);

51. Sumner, David (Plaintiff);

52. Tankersley, Tonya (Plaintiff);

53. Tankersley, David (Plaintiff);

54. Teel, Jerry (Opelika City Council) (Plaintiff);

1894

55. Thrasher, Dr. David (live or by deposition; Hanson's expert) [or whichever Hanson medical expert testifies];

56. Wallace, Billy (Plaintiff);

57. Wallace, Sherry (Plaintiff);

58. Wells, Nigel (Hanson Corporate Representative; live or by deposition);

59. Wilkes, Michele (Plaintiff);

60. Williams, Tony (Dixie Pipeline; live or by deposition);

61. Corporate representative(s) of Oldcastle, as the same are identified through discovery not yet responded to by Oldcastle;

62. Corporate representative(s) of Hanson, as the same are identified through discovery not yet responded to by Oldcastle;

63. Employees, agents, or servants of those entities to whom Subpoenas for the Production of Documents were issued by any party, in order to authenticate and/or testify concerning, said entities' documents relative to this matter;

64. Any person identified on any other party's witness list;

65. Any persons identified through continuing discovery, who may offer or provide relevant and admissible testimony or evidence;

66. Any person or persons needed to authenticate the documents to be offered as exhibits in this case;

67. Any witness necessary for rebuttal testimony.

1895

Plaintiffs's reserve the right to supplement this list as discovery is ongoing and

Oldcastle has not responded to any of Plaintiffs' discovery requests.

*C E Vercelli*

CHARLES E. VERCELLI, JR. (VER003)
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
 & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage
prepaid, this the _29th_ day of ___October___, 2003.

*C E Vercelli*

OF COUNSEL

155-00\P 1-26-04 Trial Witn List.6.wpd

5

FILED
NOV 0 6 2003

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVING DISCOVERY

Plaintiffs give notice of the filing of the following discovery in this case:

1.    "Plaintiffs' Fourth Interrogatories and Requests for Production to the Gilmer

& Young Defendants", served on October 30, 2003.

*(signature)*

**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
  & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the 5th day of Oct Nov, 2003.

_____
OF COUNSEL

Not-Serv-Disc.1.wpd

2

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

FILED

NOV 07 2009

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, et al.,                    )
                                       )
        Plaintiffs,                    )
                                       )
vs.                                    )          CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC. et al.,                )
                                       )
        Defendants.                    )

## OLDCASTLE'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant Oldcastle Materials Southeast, Inc., ("Oldcastle") hereby responds to Plaintiffs' First Interrogatories and Request for Production of Documents in accordance with the requirements of Rules 33 and 34 of the Alabama Rules of Civil Procedure, and without admitting the relevance or admissibility of any of the information contained herein, responds as follows:

## GENERAL OBJECTIONS

1.      Oldcastle has not concluded its investigation of the facts relating to this case, formal discovery, or preparation for trial. For that reason, Oldcastle's Responses to Plaintiffs' First Interrogatories and Request for Production of Documents may be incomplete. Also, there is a possibility that, upon further investigation, certain details set forth in the responses may be altered or amended. These Responses to Plaintiffs' First Interrogatories and Request for Production of Documents represent Oldcastle's reasonable efforts to provide the information requested based upon documents in Oldcastle's possession, custody or control, and based upon Oldcastle's current knowledge. Oldcastle reserves the right to produce evidence of any subsequently discovered fact or facts, to alter or amend its responses set forth herein, and

otherwise to assert factual and legal contentions as additional facts are ascertained, analyses are made, and legal research is completed.  Oldcastle objects to each and every Interrogatory and Request for Production of Documents insofar as it may be construed as limiting or restricting Oldcastle's right to rely upon any document or information for any purpose whatsoever, including the use of responsive documents or information as evidence at any subsequent hearing, trial or proceeding.

      2.     Oldcastle objects to each Interrogatory and Request for Production of Documents to the extent it purports to seek information protected by any privilege, including the attorney-client privilege, the work-product doctrine, the joint defense privilege, or any other privilege or protection provided by common law statute.  In responding to the Interrogatories and Request for Production of Documents, Oldcastle will not provide any information that is protected from disclosure by any of the foregoing privileges.  Inadvertent disclosure of such information is not intended to be a waiver of any privilege or any other ground for objecting to discovery. Furthermore, inadvertent disclosure of any such information shall not constitute a waiver of Oldcastle's right to object to the use of any such information during any subsequent proceeding.

      3.     Oldcastle objects to each Interrogatory and Request for Production of Documents to the extent it purports to require Oldcastle to disclose confidential and proprietary business information or trade secrets.

      4.     Oldcastle objects to each Interrogatory and Request for Production of Documents to the extent it seeks information not in Oldcastle's possession, custody or control on the grounds that it is unduly burdensome or oppressive.

      5.     Oldcastle will make reasonable efforts to respond to each Interrogatory, to the extent that no objection is made, as Oldcastle understands and interprets the Interrogatory.  If

Plaintiffs subsequently assert an interpretation of any Interrogatory which differs from that of Oldcastle, Oldcastle reserves the right to supplement its objections and responses.

6.    To the extent that any Interrogatory or Request for Production of Documents calls for information already in the possession of plaintiff or its counsel, Oldcastle objects on the grounds that the Interrogatory or Request for Production of Documents is unnecessary and unduly burdensome and constitutes annoyance, harassment, and oppression of Oldcastle.

7.    Oldcastle objects to each Interrogatory and Request for Production of Documents to the extent it seeks information not relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

8.    Oldcastle's agreement to produce any non-privileged documents in its possession, custody or control responsive to a particular Request shall not be deemed an admission that it is in the possession of any document responsive to the Request.

9.    Oldcastle has filed a Motion to Dismiss the Fourth Amended Complaint or, alternatively, for More Definite Statement. In this Motion, Oldcastle shows that the Fourth Amended Complaint fails to state a cause of action against Oldcastle because, among other reasons, it does not include any allegations that Oldcastle has engaged in any actionable conduct since it acquired the Lee County quarry from Hanson on or about July 13, 2003. Oldcastle objects to each Interrogatory and Request for Production of Documents on the ground that Oldcastle is not required to respond to discovery until and unless plaintiffs plead one or more legally viable causes of action against Oldcastle entitling plaintiffs to relief if the facts alleged by plaintiffs are proven to be true.

These General Objections are incorporated into each response below as though fully set forth therein.

3

# INTERROGATORIES AND REQUESTS FOR PRODUCTION

Interrogatory/Document Request Number 1.

Please identify all persons who were involved in the negotiation for the purchase of the Opelika quarry from Hanson Aggregates Southeast, Inc.

Response:

Oldcastle hereby incorporates the general objections set forth above.  Oldcastle further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Frank Heisterkamp, Vice President of Development of Oldcastle Materials, was in charge of the negotiations of the Asset Purchase Agreement between Oldcastle Materials Southeast, Inc. and Hanson Aggregates Southeast, Inc., and is knowledgeable with respect thereto.

Interrogatory/Document Request Number 2.

During a hearing before the Honorable Judge Walker, Oldcastle's attorney, Phillip Adams, stated in essence that Oldcastle intended to change the manner of operation of the quarry in Lee County.  Please describe in detail every fact supporting Mr. Adams' statements and describe in detail all expected, anticipated, planned, or potential changes to the manner or method of operation of the Oldcastle quarry in Lee County (as distinguished from the manner and method of operation of the Lee County quarry by Hanson Aggregates Southeast, Inc.).

Response:

Oldcastle hereby incorporates the general objections set forth above.  Without waiving the foregoing general objections, Oldcastle responds as follows:

4

1902

Without prejudicing Oldcastle's right to implement additional measures in the future which it may deem appropriate as its investigation progresses, Oldcastle states that it is in the process of undertaking the following actions:

- Utilizing earthen material generated by the present and future overburden stripping operation to construct new dust, noise, and visual impact abatement berms along and within the southern and western property lines of the site (surrounding the quarry and all associated production areas on the site). These berms will be approximately 25 to 30 feet high and will be emplaced and vegetated so that, to the extent reasonably feasible, they will generally blend with the natural conditions surrounding them. Oldcastle believes that the abatement of dust, noise, and visual aesthetic impact will be substantial.

- Utilizing earthen material from stripping to construct a specially-designed, supplemental noise and dust abatement berm inside of, and roughly parallel to the southern property line berm to provide additional dust and noise protection to the abutting Davis property to the south. Again, Oldcastle believes that the reduction in dust and noise will be substantial.

- Relocating a new and reconfigured stone crushing processing plant from the present location of such operations on the surface of the site to the west and north of the quarry to a location lying wholly inside the quarry itself. Oldcastle believes that this reconfiguration and relocation, together with the improved technology and control equipment of the new plant, will eliminate any significant adverse effects from dust and noise associated with the crushing and processing

1903

effects from dust and noise associated with the crushing and processing operations, and in conjunction with the berms described above will render these operations as clean and quiet as reasonably possible under the circumstances.

- Redesigning the quarry drilling patterns and blasting plans to minimize the rate of loading so that only the minimum amount of explosive is used to create the requisite volumes of broken rock during each blast. Oldcastle believes that this redesign will substantially reduce offsite impacts from ground and/or air vibration, will make the operations more cost efficient, and will permit the implementation of a vibration control program to ensure that all such vibrations are minimized to levels that Oldcastle believes should not generally be annoying or damaging to offsite property owners in the area.

- Designing a quarry-water management and aquifer recharge strategy that Oldcastle believes will return most, if not perhaps all, of the water pumped in connection with the quarry's operation to surface and subsurface drainages and aquifer(s).

Interrogatory/Document Request Number 3.

Please identify any expert witness whom you intend to call as an expert at the trial of this case, and for each such expert, please produce all documents, opinions, and other information in accordance with Alabama Rule of Civil Procedure 26(b).

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the ground that it is premature, as the Court's September 29, 2003

6

Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle will identify its experts and produce expert discovery at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 4.

Please identify every person with knowledge of the manner of operation of the Hanson quarry after it was taken over by Oldcastle.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to the term "the Hanson quarry" to the extent that it implies that Oldcastle's purchase of the Opelika quarry from Hanson Aggregates Southeast and Oldcastle's subsequent operation thereof amounted to a mere continuation of the operations of Hanson Aggregates Southeast. Oldcastle further objects to this Interrogatory on the grounds that it is overbroad and vague and ambiguous. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows: Frank Heisterkamp, Morris Bishop, and Ted Reynolds have knowledge concerning the operation of the Opelika quarry by Oldcastle after July 13, 2003.

Interrogatory/Document Request Number 5.

Please produce all discharge monitoring reports, and all documents of any type or description in the possession or custody or control of Oldcastle that relates in any manner to the pumping of water from the pit at the Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this document request on the grounds that it is overbroad, vague and ambiguous and

7

burdensome and oppressive in that it calls for the production of a large volume of cumulative documents. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all discharge monitoring reports of the Opelika quarry created after July 13, 2003 that are in its possession, custody or control.

Interrogatory/Document Request Number 6.

At any time on or after assuming control of the Lee County quarry, did Oldcastle change the pumps used to discharge water from the quarry pit into outfall number 1? If your answer is in the affirmative, describe all such changes in detail and produce all documents evidencing any such change.

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

No.

Interrogatory/Document Request Number 7.

State the number of gallons of water discharged per day from the Oldcastle quarry pit for each day from the date Oldcastle assumed control of the quarry to the date that these interrogatories and requests for production are answered.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this document request on the grounds that it is overbroad, and unduly burdensome and oppressive in that it requires Oldcastle to summarize voluminous records. The information

requested in this Interrogatory will be equally available to Plaintiffs from the discharge monitoring reports which are being produced to Plaintiffs.

Interrogatory/Document Request Number 8.

Please produce the personnel files on every employee of Oldcastle at the Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that producing the personnel files of its employees would violate the right of privacy of its employees as protected by the United States Constitution and the Constitution of the State of Alabama.

Interrogatory/Document Request Number 9.

Please produce a "flow chart" or similar document evidencing the corporate structure of Oldcastle's Lee County quarry, from the Lee County quarry all the way up to the corporate owners and parent companies to the highest level, or describe in detail the "chain of command" and corporate structure of Oldcastle from the Lee County quarry upward to the highest corporate level and parent company ownership.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not

9

reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Ted Reynolds is the Chief Operating Officer of Oldcastle Materials Southeast, Inc. and is the acting Plant Manager of the Opelika Quarry. Mr. Reynolds reports to Morris Bishop, President of Oldcastle Materials Southeast, Inc. Mr. Bishop reports to Mark Towe, President and Chief Operating Officer of Oldcastle Materials, Inc. Oldcastle Materials Southeast, Inc. is a wholly-owned subsidiary of Oldcastle Materials, Inc.

Interrogatory/Document Request Number 10.

Please produce a copy of the Joint Defense Agreement entered into between Oldcastle and Hanson as related in the Asset Purchase Agreement.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information. Finally, Oldcastle objects to this Request on the ground that it seeks information that is protected by the joint defense privilege.

Interrogatory/Document Request Number 11.

Does any other written document exist that relates to any right of indemnity, contribution, refund, rescission, cancellation, or other modification of the Asset Purchase Agreement or any other document in the event that the Lee County Circuit Court enjoins the operation of the Lee County quarry? In particular, Plaintiffs are asking precisely what will happen in the event the

Lee County quarry is closed or otherwise substantially enjoined from operation by the Circuit Court of lee County. Are there or will there by any ramifications whatsoever to Hanson, or will any remuneration or other consideration of any type of description pass between Oldcastle and Hanson in the event the Plaintiffs prevail in this litigation and the quarry is enjoined in part or in whole?

<u>Response:</u>

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is compound, overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

<u>Interrogatory/Document Request Number 12.</u>

Please produce all documents in your possession or subject to your control that show or from which can be determined the amount of materials sold by Defendant Oldcastle to its customers since assuming operation of the Lee County quarry.

<u>Response:</u>

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not restricted to materials sold from the Opelika quarry, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information.

<u>Interrogatory/Document Request Number 13.</u>

Please produce copies of all Lee County mining and mineral tax returns with respect to the Lee County quarry.

<u>Response:</u>

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information.

<u>Interrogatory/Document Request Number 14.</u>

Please describe in detail all efforts or undertakings of any type or description considered "due diligence" with respect to the purchase of Hanson's Lee County quarry and operation.

<u>Response:</u>

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Interrogatory on the ground that it seeks confidential and proprietary business information. Oldcastle further objects to this Interrogatory to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

<u>Interrogatory/Document Request Number 15.</u>

Please produce all documents related in any manner to Oldcastle's "due diligence" efforts and undertakings with respect to the purchase of the Hanson Lee County Quarry. Without

12

limiting the generality of the foregoing, please produce all documents related to: what was considered and what was investigated before Oldcastle purchased the quarry; why the quarry was purchased; who made the decision to purchase the quarry and what they based their decision upon; all written reports, internal memoranda, notes of any type or description, Minutes of the Board of Directors, and any other written document dealing with the purchase of the Hanson Lee County Quarry; and all documents related to any steps taken to identify any problems or potential problems related to the quarry operation as well as steps taken or to be taken to minimize damage or alleged damages to surrounding landowners.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to the term "the Hanson Lee County Quarry" to the extent that it implies that Oldcastle's purchase of the Opelika quarry from Hanson Aggregates Southeast and Oldcastle's subsequent operation thereof amounted to a mere continuation of the operations of Hanson Aggregates Southeast. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

Interrogatory/Document Request Number 16.

Please produce all information known to Oldcastle in 2002 and/or 2003 in relation to the Opelika quarry. This would include, but is not limited to, the geology of the quarry and the

13

surrounding area, the depth of the quarry at every year from 1996 to date, the number and location of sinkholes in 1999 and each year since 1999, the size of the cone of depression or zone of influence in 1999 and for each subsequent year, the written reports by Dr. Bob Cook or other consultants or in-house geologist(s) at any time after 1999, and the underground water table levels from 1996 to date as well as the pumping amounts and damage (or potential damage) to surrounding properties.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory/Request on the grounds that inasmuch as the Interrogatory/Request required Oldcastle to produce "all information known to Oldcastle in 2002 and/or 2003 in relation to the Opelika quarry" and is not restricted to its operations at the quarry, it is overbroad, vague and ambiguous, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

Interrogatory/Document Request Number 17.

Please produce all environmental studies or assessments of any type or description performed by or for Hanson or by or for Oldcastle at any time (with respect to the Lee County Quarry).

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive,

and seeks information that is not relevant to the subject matter of this action and is not

reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects

to this Request to the extent that it calls for the disclosure of documents or information protected

by the attorney-client privilege or the attorney work-product doctrine. Oldcastle further objects

to this Request on the grounds that it calls for expert reports and is therefore premature, as the

Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert

witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general

and specific objections Oldcastle responds as follows:

To the extent that an environmental assessment is created by any expert(s) whom

Oldcastle expects to testify in the trial of this matter, Oldcastle will identify such expert(s) and

produce expert discovery at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 18.

Please produce all documents exchanged between Oldcastle or any officer, agent or

employee thereof and ADEM or the U.S. EPA, including, without limitation, all air and/or water

applications and permits; all other applications and/or permits issued to Hanson and/or Oldcastle;

all documents transferring any existing permits to Oldcastle; and any information relating to

renewals, warnings, and/or violations from ADEM or the U.S. EPA.

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding

and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents set forth in this

Request which are in its possession, custody or control.

Interrogatory/Document Request Number 19.

15

Please produce copies of all complaints to Hanson or to Oldcastle, together with every document dealing in any manner with such complaint(s) and whatever corrective measures were taken or will be taken (including changes in the method of operation of the quarry) with respect to every such complaint.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the term "complaints" is not defined or limited in scope, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the grounds that insofar as the Request is not limited to complaints received by Oldcastle concerning its operation of the Opelika quarry, it is likewise overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all complaints it has received concerning its operation of the Opelika quarry after July 13, 2003, as well as any response Oldcastle made to such complaints.

Interrogatory/Document Request Number 20.

Please produce all documents in your possession or subject to your control that relate in any way to pending lawsuit(s) against Hanson at the time of the acquisition of the Lee County Quarry by Oldcastle. This would include documents indicating Oldcastle's knowledge of the

16

suit(s), documents on Oldcastle's responsibility for such suit(s) or indemnity by Hanson to Oldcastle for such suit(s), and any other documents relating to the resolution of any problems or complaints alleged by any of the Plaintiffs.

Response:

       Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

Interrogatory/Document Request Number 21.

       Please produce all documents regarding Oldcastle's knowledge of any complaint by any person or governmental agency regarding dust or fugitive dust emissions. This would include dust from blasting, operations and/or equipment and traffic. Without limitation, this request includes all documents related to the quantity and composition of such dust or fugitive dust emissions, including silica content and/or silica notification to employees, including steps taken to identify the problem and minimize such problems.

Response:

       Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not limited to complaints received by Oldcastle concerning its operation of the Opelika quarry, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

17

Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all complaints it has received concerning dust or fugitive dust emissions after July 13, 2003, as well as any response Oldcastle made to such complaints.

Interrogatory/Document Request Number 22.

Please produce all documents regarding state or federal health/safety laws or regulations with respect to Silica contained within dust or any by-product of the Lee County quarry operations. Without limitation, this requests any MSDS used or issued by Oldcastle with respect to its Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control concerning any silica contained within dust or any byproduct of the Opelika quarry after July 13, 2003.

Interrogatory/Document Request Number 23.

Please produce all documents relating to the removal from operation or disabling of any Hanson's (or now Oldcastle's) Dust Suppression System(s), whether for 24 hours or any longer

18

period. This would also include reports, inspections, correspondence and/or documents relating to visible emission inspections, reports and/or repairs, including warnings or correspondence from or to ADEM.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not limited to the operation of any dust suppression system by Oldcastle during its operation of the Opelika quarry, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to any removal from operation of its dust suppression system for 24 hours or greater after July 13, 2003.

Interrogatory/Document Request Number 24.

Please produce all documents related to when any and every piece of new equipment or machinery was or will be installed or became or will become operational.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not restricted to equipment or machinery installed or planned to be installed by Oldcastle (as opposed to installed by Hanson), it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the

19

discovery of admissible evidence. Oldcastle further objects to this Request on the grounds that

insofar as the Request is not restricted to equipment or machinery the operation of which would

bear on the allegations set forth in the Fourth Amended and Restated Complaint, it is overbroad,

unduly burdensome and oppressive, and seeks information that is not relevant to the subject

matter of this action and is not reasonably calculated to lead to the discovery of admissible

evidence. Notwithstanding and without waiving the foregoing general and specific objections,

Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession,

custody or control relating to the installation or planned installation of any piece of new

equipment or machinery by Oldcastle at the Opelika quarry after July 13, 2003, to the extent

such piece of new equipment or machinery bears on the allegations set forth in the Fourth

Amended and Restated Complaint.

Interrogatory/Document Request Number 25.

Please produce all documents related to any "in house" inspections, including

environmental inspections, dust suppression inspections, damage control and/or risk

management inspections, and any other type of inspection at the Lee County Quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further

objects to this Request on the grounds that it is vague and ambiguous, overbroad, unduly

burdensome and oppressive, and seeks information that is not relevant to the subject matter of

this action and is not reasonably calculated to lead to the discovery of admissible evidence.

Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents

or information protected by the attorney-client privilege or the attorney work-product doctrine.

20

Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control constituting reports of any inspection concerning the operations and conditions of the Opelika quarry after July 13, 2003, to the extent such inspection bears on the allegations set forth in the Fourth Amended and Restated Complaint.

Interrogatory/Document Request Number 26.

Please produce all documents related to any overburden piles on the south side of the quarry at the Lee County quarry (or anywhere else on the quarry property). This request includes, without limiting the generality of the foregoing request, all documents relating to the location, size and character of such overburden piles from 1996 to present including maintenance, reclamation from 1996 to the present, flooding and fugitive dust emissions, and any plans or intentions (firm or merely in discussion stages) relating to such overburden piles.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that insofar as the Request seeks documents from Oldcastle concerning the overburden piles from 1996 to present and is not restricted to Oldcastle's maintenance of the overburden piles after July 13, 2003, the Request seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to its maintenance of any overburden piles at the Opelika quarry after July 13, 2003.

Interrogatory/Document Request Number 27.

Please produce your copy of the Environmental memo from Nigel Wills and his recommendations, as well as all documents relating to it or to his recommendations in any manner.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it does not sufficiently identify the "Environmental memo from Nigel Wills" by date, recipient or otherwise with sufficient particularity so as to allow Oldcastle to determine which document or documents is being requested. Oldcastle further objects to this Request on the ground that it assumes facts not in evidence, namely that Oldcastle ever received the document described in the Request. Oldcastle further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

The only such document is in Oldcastle's possession, custody or control is an April 28, 2000, memo from Nigel Wills to Tom Bugenhagen, which was marked as an exhibit to the deposition of Mr. Wills and provided to Oldcastle's counsel in the course of this litigation.

Interrogatory/Document Request Number 28.

Please produce all documents relating to any and all steps taken (or to be taken) to implement any of the changes mentioned in Nigel Wells' environmental memo and/or to correct any known or alleged problems at the Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it does not sufficiently identify "Nigel Wells' environmental memo" by date, recipient or otherwise with sufficient particularity so as to allow Oldcastle to determine which document is being referred to. Oldcastle further objects to this Request on the ground that it assumes facts not in evidence, namely that Oldcastle ever received the document described in the Request. Oldcastle further objects to this Request on the ground that insofar as it requests documents "relating to any and all steps taken (or to be taken) . . . to correct any known or alleged problems at the Lee County quarry" it is vague and ambiguous and overbroad. Oldcastle further objects to this Request on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

See response to the previous Request. Oldcastle further states that, as set forth in its response to Interrogatory Number 2, Oldcastle is in the process of implementing a number of changes at the Opelika quarry. In planning and implementing these changes, Oldcastle has taken into account and/or will take into account a range of available information, which may or may not include, but in any event is not limited to, the April 28, 2000, memo from Nigel Wills to Tom Bugenhagen, which Oldcastle's counsel received in the course of this litigation.

Interrogatory/Document Request Number 29.

23

Please produce all documents relating to the location, installation and records regarding any monitoring wells installed at any time near the quarry, and in particular in 2000 and 2001 on or around the Hanson property. This would include water levels, drill logs, water tables and any pumping records and the entire "study" performed by Hanson (possibly Bates # 2938), as well as any study undertaken by or for Oldcastle.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to any data collected after July 13, 2003, from any monitoring wells installed at or near the Opelika quarry.

Interrogatory/Document Request Number 30.

Please produce all pumping records in your possession or subject to your control. This would include pumping or discharge records for the quarry from 1996 to the present, if available, together with all documents related to any calculations of storage capacity for water on the Gilmer property and the Young property. This would include all DMRs (Discharge Monitoring Reports) filed by Opelika Materials or Hanson or Oldcastle with ADEM, applications to ADEM, permits from ADEM and all documents to or from ADEM by Oldcastle, Hanson, Opelika Materials or their agents and/or engineers; warning letters, notices, violations, notice of potential violations or similar documents to or from ADEM. Note that this request includes, but is not

24

limited to documents and information relating to how your internal pumping discharge records were calculated, including the actual calculations themselves.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to pumping and discharge by Oldcastle at the Opelika quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in the Request that relate to its pumping of water from Opelika quarry after July 13, 2003.

Interrogatory/Document Request Number 31.

Please produce all documents in your possession or subject to your control relating to any payments to Dr. Robert Cook for any reason since 1996.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle has made no payments to Dr. Robert Cook for any reason since 1996.

Interrogatory/Document Request Number 32.

Please produce all documents given to or received from Dr. Robert Cook or Mr. Patterson including, without limitation, (a) the 1999 Exploration and Evaluation of Aggregate Reserves, Opelika Project and (b) the 2000 Exploration and Evaluation of Aggregate Reserves, Opelika-Young Project.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory/Document Request Number 33.

Please produce all documents related to the dewatering or potential dewatering of the areas in and around the Lee County quarry. This would include, without limitation, the first notice to Oldcastle that the Lee County Quarry operation was dewatering or was alleged to be dewatering the surrounding area, the zone of influence of such dewatering, steps taken to identify the zone of influence, and steps taken to minimize or correct the alleged problems or damage.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the grounds that it calls for the production of expert opinions, and is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any dewatering or potential dewatering of the areas in and around the Opelika quarry caused by Oldcastle's operation of the quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks

26

information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request that are related to any dewatering or potential dewatering of the areas in and around the Opelika quarry caused by Oldcastle's operation of the Opelika quarry after July 13, 2003.

Interrogatory/Document Request Number 34.

Describe in detail whether Oldcastle believes that its continued pumping of water from the quarry pit will continue dewatering the properties around the Lee County quarry. If your contention is that there is no dewatering effect, please describe in detail all bases for such contentions.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the grounds that it calls for an expert opinion, and it is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle will identify its experts and produce expert discovery at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 35.

Please produce all documents relating in any way to the size, scope, duration, or effect of a "cone of depression" or "zone of influence" of the dewatering caused by pumping water from the quarry pit to outfall 1.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that the terms "cone of depression," "zone of influence" and "outfall 1" are not defined, and the Request is therefore vague and ambiguous. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any "cone of depression" or "zone of influence" – however those terms may be defined –caused by pumping water from the quarry pit by Oldcastle after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it calls for an expert opinion, and it is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle will identify its experts and produce expert discovery at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 36.

Please produce all documents relating to the size and depth of the quarry, including the surface area of the quarry at any time on or before the date of acquisition of the quarry in July of 2003.

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to the size and depth of the quarry as of July 13, 2003 and thereafter.

28

Interrogatory/Document Request Number 37.

Please produce any and all mining plans of any type or description relating to the Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

There are no mining plans relating to the Opelika quarry in Oldcastle's possession, custody or control.

Interrogatory/Document Request Number 38.

Please produce all documents regarding any well inventory or spring inventory including related documents showing interviews with homeowners, depths of wells, location of wells and springs and whether the wells or springs were dry or had water.

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

Interrogatory/Document Request Number 39.

1927

Please produce all documents reflecting Oldcastle's knowledge of the dewatering at Spring Villa and the Little Uchee Creek (whether or not you contend such dewatering was caused by or in part by Hanson and/or Oldcastle). This would include, but is not to be limited to, all correspondence, investigations, inspections and documents to or from government agencies regarding dewatering of Spring Villa and/or the Little Uchee Creek areas.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it assumes facts not in evidence, namely that any dewatering at Spring Villa and the Little Uchee Creek has occurred. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any alleged dewatering at Spring Villa and the Little Uchee Creek caused or contributed to by Oldcastle's operation of the quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it calls for an expert opinion, and it is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged documents in its possession, custody or control concerning its knowledge of whether or not its operations at the Opelika quarry after July 13, 2003, is causing any dewatering at Spring Villa and the Little Uchee Creek. Oldcastle further responds that it will identify its experts and produce expert discovery related to this Request at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 40.

Please produce all documents regarding any sinkholes in and around the Lee County quarry, including, without limitation, all documents regarding Oldcastle's first knowledge of sinkholes, steps taken to identify the problem or potential problem, and any steps to be taken, already taken, or planned to be taken to minimize sinkhole information in the future.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any alleged formation of sinkholes caused or contributed to by Oldcastle's operations at the Opelika quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it calls for an expert opinion, and it is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged documents in its possession, custody or control concerning its knowledge of whether or not its operations at the Opelika quarry after July 13, 2003 is causing any sinkholes in and around the Opelika quarry. Oldcastle further responds that it will identify its experts and produce expert discovery related to this Request at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 41.

Please produce all documents regarding any pre-blast inspections done for Oldcastle.

31

1929

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

Interrogatory/Document Request Number 42.

Please produce all documents and information relating to Oldcastle's first notice that blasting had caused, or was causing, or was allegedly causing damage to any property owner in the area, including all steps taken to identify any problem or alleged problem and any steps taken to minimize or correct any such alleged problems or damage.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any alleged damage caused by blasting by Oldcastle at the Opelika quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all complaints it has received concerning whether its blasting at the Opelika quarry after July 13, 2003, has caused, or was causing, or was allegedly causing damage to any property owner in the area, as well as any response Oldcastle made to such complaints.

Interrogatory/Document Request Number 43.

Please produce all aerial photos of the quarry from 1996 to the present.

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

Interrogatory/Document Request Number 44.

Please produce all documents regarding other regulatory filings or information not specifically requested above.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that the term "other regulatory filings or information" is not defined and the Request does not otherwise describe the document or documents requested with sufficient particularity to allow Oldcastle to determine which document or documents are being requested. The Request is therefore vague and ambiguous. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory/Document Request Number 45.

Please produce all documents exchanged with Dyno Nobel or any other blasting company relating to the Opelika/Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

Interrogatory/Document Request Number 46.

Please produce all business licenses or permits of any type and description obtained or required by any governmental agency.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all business licenses and permits concerning its operations at the Opelika quarry that bear on the allegations set forth in the Fourth Amended and Restated Complaint.

Interrogatory/Document Request Number 47.

Please produce all OSHA and/or MSHA inspections or other documents exchanged by and between Oldcastle and OSHA and/or MSHA.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the allegations set forth in the Fourth Amended and Restated Complaint do not pertain to worker health and safety issues, the Request

34

1982

is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all OSHA and/or MSHA inspections and other documents exchanged by and between Oldcastle and OSHA and/or MSHA that bear on the allegations set forth in the Fourth Amended and Restated Complaint.

Interrogatory/Document Request Number 48.

Please produce all personnel files on all of Oldcastle's Lee County quarry foremen and Plant Managers.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that producing the personnel files of its employees would violate the right of privacy of its employees as protected by the United States Constitution and the Constitution of the State of Alabama.

Interrogatory/Document Request Number 49.

Please produce all documents relating to the hours worked by any and every Oldcastle employee of the Lee County Quarry from the moment Oldcastle assumed control of the quarry operation.

35

**Response:**

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

PHILLIP E. ADAMS, JR.    (ADA025)
Attorney for Defendant
P.O. Box 2069
Opelika, AL 36803-2069
Tel. (334) 745-6466

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 6th day of November, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P.O. Box 409
Opelika, Alabama 36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P.O. Box 2345
Opelika, Alabama 36803-2345

James A. Bryan, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

_____
Of Counsel

37

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

**FILED**

NOV 07 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )     CASE NO. CV-02-85 |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC. et al., | ) |
| | ) |
| Defendants. | ) |

## MOTION OF DEFENDANT OLDCASTLE MATERIALS SOUTHEAST, INC. TO DISMISS OR, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT

COMES NOW Defendant Oldcastle Materials Southeast, Inc. ("Oldcastle"), a defendant in the above-styled case, and pursuant to the provisions of Rule 12(b)(6) of the Alabama Rules of Civil Procedure, moves this Court to dismiss the causes of action asserted against it in Plaintiffs' Fourth Amended and Restated Complaint (the "Fourth Amended Complaint"). In the alternative, Oldcastle moves this Court, pursuant to Rule 12(e) of the Alabama Rules of Civil Procedure, for a more definite statement concerning Plaintiffs' allegations against it. As grounds for said Motion, Oldcastle shows the Court as Follows:

1.     Plaintiffs originally filed the instant action on January 12, 2002, against defendants Hanson Aggregates Southeast, Inc. (Hanson), and the Young and Gilmer defendants. The complaint alleged that Hanson's operation of an aggregate quarry located in Opelika, Alabama, on lands owned by the Young and Gilmer defendants was causing a public and private nuisance (Count 1), was being conducted in a negligent and wanton manner (Count 2), was causing trespass onto Plaintiff's property (Count 3), should be enjoined (Count 4), and was causing a diversion of water (Count 5).

2.       On July 13, 2003, Oldcastle purchased certain assets of Hanson, including its leasehold interests in the Opelika quarry and its physical assets at the quarry. The Asset Purchase Agreement between Hanson and Oldcastle is attached hereto as Exhibit "A."[1]

3.       On August 1, 2003, only nineteen days after Oldcastle purchased the quarry operations, Plaintiffs filed their Third Amended and Restated Complaint (the "Third Amended Complaint") naming Oldcastle as a defendant. The Third Amended Complaint adds a Count Six, captioned "Claims Against Oldcastle." Subsequently, Plaintiffs filed their Fourth Amended Complaint, which adds additional plaintiffs but no additional claims against Oldcastle. Significantly, *the Fourth Amended Complaint does not contain a single allegation that Oldcastle has operated the quarry in a negligent fashion, caused any trespass on any plaintiff's property, or created any nuisance.* Rather, Plaintiffs' allegations against Oldcastle concern what *Hanson did* in the past and what they speculate Oldcastle *might do* or *intends to do* in the future. For example, Plaintiffs allege that:

•       "On information and belief, Defendant Oldcastle *is intending to and will* continue the operation of the quarry under the same or similar conditions so that each and

---

[1] Because Plaintiffs referred to the Asset Purchase Agreement in their complaint and the agreement is central to their complaint against Oldcastle, this Court may consider the Asset Purchase Agreement in without converting this Motion into a motion for summary judgment. *Donoghue v. American Nat. Ins. Co.*, 838 So.2d 1032 (Ala. 2002) ("'if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.'") (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997)); *see also Wilson v. First Union Nat'l Bank of Georgia*, 716 So.2d 722, 726 (Ala. Civ. App. 1998).

2

every cause of action pleaded against Defendant Hanson is hereby pleaded against Defendant Oldcastle." Fourth Amended Complaint, ¶ 111 (emphasis added);

- "Defendant Oldcastle's continued operation [of the quarry] *will be done* in a negligent and wanton manner causing the damages and continuing damages to Plaintiffs as stated earlier in this Complaint." Fourth Amended Complaint, ¶ 113 (emphasis added);

- "[A]ny blasting and discharging of water by Oldcastle *will cause* continuing damages to the Plaintiffs as alleged above in this 3rd [sic] Amended and Restated Complaint." Fourth Amended Complaint, ¶ 114 (emphasis added).

4.    The claims set forth against Oldcastle in Plaintiffs' Fourth Amended Complaint thus fail to state a cognizable claim against Oldcastle for two reasons: (1) as a purchaser of Hanson's assets, Oldcastle cannot, as a matter of law, be held liable for any alleged trespass, nuisance, or negligence committed by Hanson, and (2) the Fourth Amended Complaint contains no allegation that Oldcastle itself has committed any negligent or wanton acts, caused any trespass or nuisance, or is otherwise operating the quarry in a manner that is injurious to Plaintiffs so as to justify the imposition of injunctive relief.

5.    To the extent that Plaintiffs seek to hold Oldcastle liable for any trespass, nuisance or other damage caused by Hanson's operation of the Opelika quarry prior to July 13, 2003, their complaint is fatally defective and should be dismissed. As the purchaser of Hanson's assets of the quarry, Oldcastle is not Hanson's successor in interest, and is not liable for Plaintiffs' claims against Hanson. *Brown v. Economy Baler Company*, 599 So. 2d 1 (Ala. 1992); *Matrix-Churchill v. Springsteen*, 461 So.2d 782 (Ala. 1984); *Andrews v. John E. Smith's Sons Co.*, 369 So.2d 781, 785 (Ala. 1979).

6.      There are four exceptions to this general rule, none of which apply here: (1) if there is an express agreement that the purchasing corporation will assume the obligations of the selling corporation; (2) if the transaction between the two amounts to a de facto merger or consolidation; (3) if the transaction is a fraudulent attempt to escape liability; or (4) if the purchasing corporation is a mere continuation of the selling corporation. *Asher v. KCS International, Inc.*, 659 So. 2d 598 (Ala. 1995). There is no express agreement on the part of Oldcastle to assume any liability for these matters in the Asset Purchase Agreement. *See* Exhibit 1 (Asset Purchase Agreement), § 1.3.2. Similarly, there is no allegation in the Fourth Amended Complaint that there was a de facto merger between Oldcastle and Hanson, that the transaction between Oldcastle and Hanson was entered into to fraudulently escape liability, or that Oldcastle is a mere continuation of Hanson.

7.      Accordingly, Oldcastle cannot be found liable for any damage, trespass, or nuisance caused by Hanson's operation of the Opelika quarry prior to July 13, 2003, and any such claims against Oldcastle should be dismissed.

8.      Plaintiffs' complaint is also fatally defective because it fails to allege any act or omission on the part of Oldcastle after July 13, 2003, which has caused any trespass, created any nuisance, or has otherwise been injurious to them. Rather, Plaintiffs' allegations against Oldcastle are based on nothing more than their speculation concerning how Oldcastle "is intending to and will" operate the quarry in the future.

9.      A plaintiff, however, cannot maintain a lawsuit based upon speculation concerning what the defendant might do in the future. Rule 8 of the Alabama Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" against the defendant. Ala. R. Civ. P. 8. It is axiomatic that

4

a plaintiff cannot sue a defendant first, and then hope that a valid cause of action will materialize in the future. See *Pfizer, Inc. v. Farsian*, 682 So. 2d 405 (Ala. 1996) (holding that under Alabama law, fear that a valve could fail in the future is not, without more, a legal injury sufficient to support a claim); see also *Thomas v. Union Carbide Agr. Products Co*, 473 U.S. 568, 581 (1985) (holding that a claim is not ripe if it rests upon contingent future events that may not occur as anticipated or may not occur at all). That is precisely what Plaintiffs have done here.

10.     Moreover, Oldcastle's mere purchase and operation of the Opelika quarry does not, in and of itself, constitute a nuisance per se. "A nuisance at law or a nuisance per se is defined to be 'an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings.' 29 Cyc. 1153." *Wheeler v. River Falls Power Co.*, 111 So. 907 (Ala. 1926). A quarry operation is a lawful enterprise and is not a nuisance per se. *Reynolds v. Vulcan Materials Co.*, 185 S0.2d 386 (Ala. 1966).

11.     A lawful business such as the Opelika quarry only becomes a nuisance "when improperly maintained." *Fowler v. Fayco*, 275 So.2d 665 (Ala. 1973). The Fourth Amended Complaint does not contain a single allegation that Oldcastle has improperly maintained or operated the Opelika quarry after it took over the operations there on July 13, 2003, so as to create a nuisance.

12.     Finally, to the extent Plaintiffs believe the Fourth Amended Complaint states a valid claim to prospectively enjoin Oldcastle's operation of the Opelika quarry pursuant to Section 6-5-125 of the Alabama Code, they are mistaken. Section 6-5-125 pertains only to a "nuisance *about to be erected or commenced*" and allows a court to "arrest [the] nuisance before it is completed." By its very language, Section 6-5-125 is inapplicable because Plaintiff filed

5

their action against Oldcastle after its operations at the Opelika quarry had already commenced. *See Parker v. Ashford*, 661 So. 2d 213 (Ala. 1995) (making clear that Section 6-5-125 applies only "to arrest a nuisance before it is completed" and then only "where the consequences of a nuisance about to be erected or commenced will be irreparable in damages and such consequences are not merely possible but to a reasonable degree certain."). Obviously, in this case, the court could not intervene under Section 6-5-125 because the quarry is already in operation. The only issue presented by the Fourth Amended Complaint, then, is whether Plaintiffs have properly alleged that Oldcastle has operated the quarry in a negligent or wanton fashion, or caused any trespass or nuisance. As set forth above, they have not, and their complaint against Oldcastle should therefore be dismissed.

13.     Should this Court not be inclined to dismiss Plaintiffs' complaint against Oldcastle, it should alternatively order Plaintiffs to provide Oldcastle with a more definite statement of the claims being asserted against it. Rule 12(e) of the Alabama Rules of Civil Procedure provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading." Ala. R. Civ. P. 12(e).

14.     For the reasons set forth above, the Fourth Amended Complaint is not plead with sufficient specificity to provide Oldcastle with fair notice of the claims being asserted against it. Plaintiffs have not alleged any act or omission on the part of Oldcastle that has caused any injury to them. Because Plaintiffs' claims against Oldcastle are devoid of any substance, it is impossible for Oldcastle to plead in response.

WHEREFORE, Oldcastle respectfully requests that this Court dismiss the claims asserted against it in Plaintiffs' Fourth Amended Complaint. Alternatively, Oldcastle requests that this Court order Plaintiffs to provide a more definite statement so as to allow Oldcastle to file a responsive pleading that meaningfully addresses the causes of action asserted against it.

Respectfully submitted this the _6th_ day of November, 2003.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

BY: _____

PHILLIP E. ADAMS, JR. (ADA025)
Attorney for Defendant
P.O. Box 2069
Opelika, AL 36803-2069
Tel. (334) 745-6466

7

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 6 day of November, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P.O. Box 409
Opelika, Alabama  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P.O. Box 2345
Opelika, Alabama  36803-2345

James A. Bryan, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia  30092

_____
Of Counsel

8

# EXHIBIT "A"

1845

# ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** (the "Agreement") is entered into as of July 11, 2003 ("Closing Date"), by and among HANSON AGGREGATES SOUTHEAST, INC., a Delaware Corporation (the "Seller"), and OLDCASTLE MATERIALS SOUTHEAST, INC., a Delaware corporation (the "Buyer").

## R E C I T A L S

WHEREAS, the Seller owns and operates a business engaged in, among other things, the production and sale of construction aggregates at and from a facility located on 3085 Alabama Highway 169, Opelika, Alabama 36804 and commonly known as the Opelika Quarry (collectively the "Business"); and

WHEREAS, the Seller leases the Real Property (as hereinafter defined) on which the Business operates (the "Real Property") pursuant to those Mineral Agreements and Leases, one dated January 17, 2000, Between Louise Young O'Brian, et. al. and Seller as tenant and a second dated June 30, 1999, by and among Charles W. Gilmer, Sr., Alice C. Gilmer, and Gilmer Properties, Ltd., as landlord (collectively the Young and Gilmer Families are hereinafter referred to as "Lessor"), the Seller, as tenant, and The Georgia Marble Company, as sublessor (the "Sublessor")(collectively, the Gilmer and Young Leases shall be hereinafter referred to as "the Lease"); and

WHEREAS, the Seller owns certain assets used or held for use in connection with the operation of the Business; and

WHEREAS, the Seller desires to sell, assign and transfer to the Buyer substantially all of the assets regularly used or useful in the Business, and the Buyer desires to purchase from the Seller substantially all of the assets regularly used or useful in the Business, all under the terms and conditions described herein.

NOW, THEREFORE, in consideration of the premises and the mutual promises, representations, warranties and covenants herein contained, the parties agree as follows:

## ARTICLE 1
## PURCHASE AND SALE OF PROPERTIES AND ASSETS

1.1     Assets.  The Seller agrees to sell to the Buyer and the Buyer agrees to purchase substantially all properties and assets, real, personal and mixed, tangible and intangible, of every type and description, regularly used or useful in the Business (the "Assets"). Without limiting the foregoing, the Assets shall include the following, except to the extent that any of the following are included within the Excluded Assets:

1.1.1   Tangible Personal Property.  All plant, equipment, mobile equipment (including rolling stock), electrical devices, computers and computer equipment, furniture, fixtures, office materials and supplies, hardware, tools, spare parts and other tangible personal property owned or leased by the Seller and listed on Schedule 1.1.1 attached (collectively, the "Tangible Personal Property").

1944

1.1.2   Real Property.   The Lease and all the Seller's interests in the leaseholds, licenses, easements, water rights and other interests of every kind and description in and to real property, buildings thereon and improvements thereto, relating to the real estate described on Schedule 1.1.2 (the "Real Property").

1.1.3   Intangible Property.   All of Seller's rights in any software and software licenses resident on the personal computers listed on Schedule 1.1.1 (subject to the rights of the Licensors) (collectively, the "Intangible Property").

1.1.4   Files and Records.   All files and other records of the Seller relating solely to the Assets (other than duplicate copies of such files, hereinafter "Duplicate Records") including, without limitation, all books, files, correspondence, studies, reports, projections, schematics, blueprints, engineering data, customer and consultant lists, reports, specifications, projections, statistics, creative materials, mats, plates, negatives and other advertising, marketing or related materials, and all other business and technical information regardless of the media on which stored, but specifically excluding such information as may relate to the other operations of Seller or any related corporate entities.

1.1.5   Claims.   Any rights under manufacturers' and vendors' warranties to the extent assignable and provided Buyer purchases the assets assigned thereunder (collectively, the "Claims").

1.1.6   Goodwill.   All of the Seller's goodwill in, and going concern value of, the Business.

1.1.7   Franchises, Permits.   To the extent assignable and actually assigned, all franchises, approvals, licenses, orders, registrations, certificates, variances, easements, water rights and similar rights obtained from governments and governmental agencies.

1.1.8   Inventories.   All inventories of quarried and crushed materials, raw materials, fuels, manufacturing materials, work in progress, supplies, spare parts and other consumable supplies stored at the Real Property on the Closing Date (the "Inventory").

1.1.9   Equipment Contracts and Leases.   All leases, services contracts and other similar contracts relating to any Assets listed on Schedule 1.1.1.

1.1.10   Advanced Payments.   Any advance payments made by Seller's customers in respect of minerals from the Business that shall not have been furnished by the Seller at or prior to the Closing Date, together with all rights to receive moneys from Seller's customers to whom Buyer furnishes materials after the Closing Date in respect of the Assumed Liabilities.

1.2   Excluded Assets.   The following assets of the Seller, to the extent in existence on the Closing Date (collectively, the "Excluded Assets"), shall be retained by the Seller:

-2-

Davis v. Hanson
CV-02-85
Subject to Stipulated Protective Order

05352
Hanson

1.2.1 <u>Corporate Records</u>. The minute books, stock books, shareholder lists and similar corporate records of the Seller, as well as a duplicate set of the general records of the Business (the "Duplicate Records").

1.2.2 <u>Cash and Investments</u>. All of the Seller's cash on hand or in bank accounts and any other cash equivalents in route and in accounts including, without limitation, certificates of deposit, commercial paper, treasury bills, or money market accounts prepaid items, refunds insurance proceeds and any others, except to the extent that at the Closing Date such cash and cash equivalents are attributable to contracts for the purchase of minerals that have not yet been furnished.

1.2.3 <u>Accounts Receivable</u>. All accounts and notes receivable, billed and unbilled notes receivable and other receivables generated prior to Closing Date by the Business, except to the extent that at the Closing Date such accounts and notes receivable are attributable to contracts for the purchase of minerals that have not yet been furnished; (collectively, the "Accounts Receivable").

1.2.4 <u>Excluded Items</u>. All items otherwise excluded pursuant to any subpart of Section 1.1 above.

1.2.5 <u>Agreement Rights</u>. All of Seller's rights and obligations under this Agreement.

1.3 <u>Liabilities.</u>

1.3.1 <u>Encumbrances</u>. The Assets shall be sold and conveyed to the Buyer free and clear of all liens, security interests, pledges, restrictions, prior assignments, charges, claims, defects in title and encumbrances of any kind or type whatsoever (collectively, the "Encumbrances") except for: (a) liens for taxes not yet due and payable, not arising out of Seller's income and accruing before the Closing Date, (b) the exceptions to title noted in Schedule B to the leasehold title insurance policy insuring Seller's leasehold interest in the Real Property attached hereto as <u>Schedule 1.3.1</u> (the "Existing Title Policy")   and (c) the Assumed Liabilities described in Section 1.3.2.   The Encumbrances referred to in the foregoing clauses (a)-(c) are collectively referred to herein as "Permitted Encumbrances."

1.3.2 <u>Assumed Liabilities</u>. Except as otherwise provided herein and subject to the terms and conditions of this Agreement, simultaneously with the sale, transfer, conveyance and assignment to the Buyer of the Assets, the Buyer shall assume: (1) the obligations of the Seller under the leases for the Real Property arising after the Closing Date but only in the event such leases are actually assigned to Buyer, (2) the obligations of the Seller to provide aggregates in respect of orders for materials from the Real Property that have been placed by unaffiliated third parties and that remain unfilled at the Closing Date, (3)  the joint defense with Seller of the lawsuits currently styled <u>Mike Davis, et. al. versus Hanson Aggregates Southeast, Inc., et. al.</u>, CV-02-85, <u>Hanson Aggregates Southeast, Inc. v. City of Opelika, et. al.</u>, CV-02-S-981-E and any other subsequent lawsuits arising out of the same case or controversy (collectively the "Davis Suit"), shall be handled in accordance with that certain Joint Defense Agreement

-3-

1046

between the parties of even date herewith (the "JDA"), (4) all Reclamation Obligations at the Real Property (collectively the "Assumed Liabilities"), and (5) all obligations of Seller under any environmental or other operating permits for the Business that are transferred to Buyer as a result of the Agreement, but only to the extent that such obligations arise as a result of operations after the Closing Date and are not otherwise determined to be injunctive relief or operational restrictions arising under subpart (3) of this Section 1.3.2; and (6) the obligation to pay when due all accrued but unpaid (measured as of the closing date) vacation to employees of Seller hired by Buyer, subject to reimbursement for same as provided in 1.3.3 below, and no other liabilities of Seller whatsoever.

1.3.3   Retained Obligations of the Seller.   The Seller will retain and shall hereafter pay, satisfy, discharge, perform and fulfill all such obligations and liabilities not expressly assumed by Buyer hereunder (the "Excluded Liabilities"), without any charge or cost to the Buyer. Without limiting the generality of the foregoing, Excluded Liabilities shall include, without limitation, (i) liabilities arising from pre-Closing acts or omissions of Seller to the extent not an Assumed Liability (including without limitation breach of product warranty claims for material shipped prior to Closing, but specifically excluding Reclamation liabilities); (ii) environmental liabilities of any type or nature whatsoever arising from pre-Closing violations of environmental laws or the use, disposal or releases of pollutants or hazardous waste/materials provided same are not otherwise determined to be injunctive relief or operational restrictions arising under subpart (3) of Section 1.3.2; (iii) obligations which arise under the JDA; (iv) a payment to Buyer to be made within thirty days of closing for the accrued vacation amount which will be paid by Buyer to employees of Seller that are hired by Buyer pursuant to 1.3.2 above; and (v) all accrued but unpaid vacation for employees of Seller not hired by Buyer, if any.

1.4   Purchase Price and Payment.

1.4.1   Purchase Price.   The purchase price will consist of a payment of (the "Purchase Price").

1.4.2   Method of Payment.    On the Closing Date, Buyer shall wire the Purchase Price as adjusted for prorations to an account designated by the Seller.

1.5   Proration.   The parties shall prorate as of the Closing Date: (1) all amounts payable in respect of the Lease on the Real Property including both rents and royalties; and (2) ad valorem and similar taxes on the Assets.   Such amounts shall be netted together and any net amount shall be added to or subtracted from the Initial Payment due from the Buyer at Closing.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer as follows:

REDACTED

-4-

1947

2.1    Corporate Status.  The Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and is duly qualified to transact business in the State of Alabama and in every other jurisdiction in which the failure to be qualified would have a material adverse effect on the Business.  The Seller has the requisite corporate power to carry on the business as it is now being conducted and to own and operate the Business, and the Seller has the requisite power to enter into and complete the transactions contemplated by this Agreement.

2.2    No Options.  Except as expressly provided in this Agreement, no Affiliate of the Seller or any other person (as defined below) has an interest in, or option to acquire, any of the Assets or any property used in the operation of the Business.  For purposes of this Agreement, an "Affiliate" of any person means (a) any person that owns or controls, is owned or controlled by, or under common control with, such person, (b) any person that is an officer, director, general partner or trustee of, or serves in a similar capacity with the specified person, or for which the specified person is an officer, director, general partner or trustee, or serves in a similar capacity or (c) any member of the immediate family of the specified person.

2.3    Corporate / Partnership Action.  All corporate, partnership and other actions and proceedings necessary to be taken by or on the part of the Seller in connection with the performance, execution and delivery of this Agreement have been duly and validly taken and this Agreement has been duly and validly authorized, executed, and delivered by the Seller and constitutes the legal, valid and binding obligation of the Seller enforceable against it in accordance with and subject to its terms.

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

05355
Hanson

1945

**2.4    No Defaults.**  Neither the execution, delivery and performance by the Seller of this Agreement nor the consummation by the Seller of the transactions contemplated hereby is an event that, of itself or with the giving of notice or the passage of time or both, will:  (a) violate or conflict with any provision of the Articles of Incorporation or Bylaws of the Seller; (b) assuming that the consents contemplated by this Agreement are obtained, constitute a violation of, conflict with or result in any breach of or any default under, result in any termination or modification of, or cause any acceleration of any obligation of the Seller under any contract, mortgage, indenture, agreement, lease, permit, license or other instrument to which the Seller is a party or by which Seller is bound or result in the creation of any Encumbrance on the Assets which violation, conflict, breach or default would have a material adverse effect on the Seller, the Business, the Assets or the ability of the Seller to enter into this Agreement or consummate the transactions contemplated hereby; (c) violate any judgment, decree, order, statute, law, rule or regulation of any court, arbitrator or government or regulatory body applicable to the Seller, the Business or the Assets which violation would have a material adverse effect on the Seller, the Business, the Assets or the ability of the Seller to enter into this Agreement or consummate the transactions contemplated hereby; or (d) result in the creation or imposition of any lien, charge or encumbrance against the Business or the Assets.  Seller does not need to give any notice to, to make any filing with, obtain any authorization, consent, or approval of any government or governmental agency in order for the Parties to consummate the transactions contemplated by this Agreement.

**2.5    Assets.**  The Seller represents and warrants that the Assets shall constitute substantially all the Assets regularly used or useful in the conduct of the Business.

**2.6    Breach.**  The Seller is not in violation or breach of any of the material terms, conditions or provisions of the Seller's Articles of Incorporation or Bylaws, any contracts or any indenture, mortgage or other instrument, court order, judgment, arbitration award or decree relating to or affecting the Business or the Assets to which the Seller is a party or by which it is bound.  All accrued and currently payable amounts due from the Seller under any contracts to be assumed by Buyer have been paid.

**2.7    Good Title.**  The Seller has or at the Closing will have, good, valid and marketable title to or the unrestricted right to use all of the Tangible and Intangible Property owned, leased or licensed by it, in each case, free and clear of all Encumbrances of every kind or character (other than Permitted Encumbrances); and (b) the Seller is the owner, lessee or licensee of all of the Tangible Personal Property listed on the Schedules to this Agreement.

**2.8    Real Property.**  In connection with the Business, the only real estate leased by Seller is the Real Property.  The Seller has good and marketable leasehold title to the Real Property, free and clear of all Encumbrances of every kind or character (other than Permitted Encumbrances).  Except to the extent that a plaintiff's verdict in the Davis Suit might be construed as a default, Seller is not in default under the Lease or the Sublease, and to the best knowledge of Seller, no other party to the Lease or Sublease is in material breach of such Lease or Sublease.

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

05356
Hanson

2.9    <u>Compliance with Law and Regulations</u>.  Except to the extent that some or all of the matters alleged in the Davis Suit shall be established by the plaintiff, the Business, the Assets and the Seller are, in all material respects, in compliance with all applicable requirements of federal, state and local law and all applicable requirements of all federal and state governmental bodies or agencies and the material requirements of all local governmental bodies or agencies having jurisdiction over any of them, the operations of the Business or the use of the Assets;  no action, suit, proceeding, hearing, investigation, charge, complaint, claim, demand, or notice has been filed or commenced against it alleging any failure so to comply.

2.10    <u>Brokers</u>.  There is no broker or finder or other person who would have any valid claim through the Seller against any of the parties to this Agreement for a commission or brokerage fee or payment in connection with this Agreement or the transactions contemplated hereby as a result of any agreement of, or action taken by, the Seller.  Seller shall defend, indemnify, and hold Buyer harmless for and against any fees or claims relating thereto by any Broker engaged by Seller.

2.11    <u>Tax Matters.</u>  To the extent that the same relates to the Assets and the Business:

(a)  Seller has filed all material tax returns that it was required to file.  All such tax returns were correct and complete in all material respects.  All taxes owed by Seller (as shown on any tax return) have been paid.  There are no Encumbrances on any of the Assets that arose in connection with any failure (or alleged failure) to pay any tax.

(b)    Seller has withheld and paid all taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor, creditor, stockholder, or other third party.

(c)    To the knowledge of Seller no authority is likely to assess any additional taxes for any period for which tax returns have been filed.  There is no dispute or claim concerning any tax liability of Seller regarding the Business or the Assets either (1) claimed or raised by any authority in writing, or (2) as to which Seller has knowledge.

2.12    <u>Environment, Health, and Safety.</u>  Except to the extent that some or all of the matters alleged in the Davis Suit shall be established by the plaintiff, (a)  To the best of its knowledge, the Real Property and the Assets are not in material violation of the Environmental, Health, and Safety Laws or contaminated with hazardous materials in quantities or under circumstances that would cause Seller (or, after the Closing Date, Buyer) to be in violation of the Environmental, Health, and Safety Laws.

-7-

(b)    Although Buyer is not assuming under this Agreement any liabilities of Seller under the Environmental, Health and Safety Laws, except as set forth in paragraph 2.12(c), Buyer acknowledges that with respect to matters arising under Environmental, Health and Safety Laws, Buyer is acquiring all of the Assets "AS IS" and "WITH ALL FAULTS," provided, however, that Buyer shall retain recourse to assert against Seller any breach by Seller of the representations and warranties of Seller set forth in Section 2.12(a).

(c)    Neither Seller nor any other person or entity for whose conduct Seller may be held responsible has, in connection with the Assets or the operations of the Business, ever (1) manufactured, sold, distributed, designed, installed, used or specified the use of asbestos or asbestos-containing products for any purpose, (2) manufactured, sold, distributed, designed, installed, used or specified the use of industrial sand or industrial sand-containing products for any purpose, or (3) entered into any agreement to indemnify, defend, or held harmless any other entity for liabilities allegedly arising from or in any way relating to asbestos, asbestos-related products, industrial sand, or industrial sand-containing products.

(d)    For the purposes of this Agreement:  (i) "Environmental, Health, and Safety Laws" shall mean the Comprehensive Environmental Response, Compensation and Liability Act of 1980, the Resource Conservation and Recovery Act of 1976, the Clean Air Act, the Federal Water Pollution Control Act, the Hazardous Materials Transportation Act, the Safe Drinking Water Act, the Toxic Substances Control Act, the Medical Waste Tracking Act, the Occupational Safety and Health Act of 1970, and the Mine Health and Safety Act, each as amended, together with all other laws (including rules, regulations, codes, injunctions, judgments, orders, decrees, and rulings thereunder) of federal, state, local, and foreign governments (and all agencies thereof) concerning pollution or protection of the environment, public health and safety, or employee health and safety (specifically including the Mine Health and Safety Administration), including laws relating to emissions, discharges, releases, or threatened releases of pollutants, contaminants, or chemical, industrial, hazardous, or toxic materials or wastes into ambient air, surface water, ground water, or lands or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport, or handling of pollutants, contaminants, or chemical, industrial, hazardous, or toxic materials or wastes, including hazardous materials and extremely hazardous substance.

2.13    Litigation.  With the exception of the Davis suit, with regard to the Business and the Assets, the Seller (a) is not subject to any outstanding injunction, judgment, order, decree, ruling, or charge, or (b) is not a party or, to the knowledge of Seller, is not threatened to be made a party to any action, suit, proceeding, hearing, or investigation of, in, or before any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or before any arbitrator.

2.14    Employees.  In connection with the Assets and the Business:

Davis v. Hanson
CV-02-85
Subject to Stipulated Protective Order

05358
Hanson

1951

(a)     Except as set forth in Section 2.14 of the Disclosure Schedule, Seller is neither a party to nor bound by any collective bargaining agreement in connection with the Business, nor has it experienced any strikes, grievances, claims of unfair labor practices, or other collective bargaining disputes with respect to the Business;

(b)     Seller has not committed any unfair labor practice; and

(c)     To Seller's knowledge, no organizing effort presently is being made or threatened by or on behalf of any labor union with respect to or affecting employees of Seller who work at the Businesses.

2.15   Recent Events.   Since December 31, 2002, to the extent that the same shall relate to the Business, there has not been any material adverse change in the business, financial condition, operations, or results of operations of Seller.   Without limiting the generality of the foregoing, [except as set forth in Section 2.15 of the Disclosure Schedule,] since that date, to the extent that the same shall relate to the Business:

(a)     Seller has not imposed or granted any lien upon any of the Assets that will not be satisfied at or prior to the Closing Date;

(b)     Seller has not experienced any damage, destruction, or loss to any of the Assets not covered by insurance, that has not been repaired or replaced prior to the Closing Date;

(c)     Seller has not entered into any employment contract or collective bargaining agreement, written or oral, or modified the terms of any existing such contract or agreement other than in the ordinary course of business;

(d)     Seller has not granted any increase in the base compensation of any of its employees outside the ordinary course of business;

(e)     there has not been any other occurrence, event, incident, action, failure to act, or transaction outside the ordinary course of business; and

(f)     Seller has not committed to any of the foregoing.

2.16   Representation of Seller.   To the knowledge of Buyer, Seller has not made any false or inaccurate representations in this Agreement to Buyer.

Except as set forth herein, the Seller makes no representation or warranty of any kind or nature whatsoever, and Seller specifically disclaims any representation or warranty not expressly set forth herein.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

-9-

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

1982

The Buyer represents and warrants to the Seller as follows:

3.1 <u>Status</u>. The Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and is qualified to conduct business in the State of Alabama. Buyer has the requisite power to enter into and complete the transactions contemplated by this Agreement.

3.2 <u>No Defaults</u>. Neither the execution, delivery and performance by the Buyer of this Agreement nor the consummation by the Buyer of the transactions contemplated hereby is an event that, of itself or with the giving of notice or the passage of time or both, will: (a) violate or conflict with any provision of the Articles of Incorporation or Bylaws of the Buyer, (b) constitute a violation of, conflict with or result in any breach of or any default under, result in any termination or modification of, or cause any acceleration of any obligation under any contract, mortgage, indenture, agreement, lease or other instrument to which the Buyer is a party or by which they or their assets are bound, or by which it may be affected, (d) violate any judgment, decree, order, statute, law, rule or regulation of any court, arbitrator or government or regulatory body applicable to the Buyer or the assets of the Buyer or (e) result in the creation or imposition of any lien, charge or encumbrance against the Business or the Assets, except for liens, charges or encumbrances relating to the financing of the transactions contemplated by this Agreement.

3.3 <u>Corporate Action</u>. All actions and proceedings necessary to be taken by or on the part of the Buyer in connection with the performance, execution and delivery of this Agreement have been (or by Closing, will be) duly and validly taken, and this Agreement has been duly and validly authorized, executed and delivered by the Buyer and constitutes the legal, valid and binding obligation of the Buyer, enforceable against the Buyer in accordance with and subject to its terms.

3.4 <u>Brokers</u>. There is no broker or finder or other person who would have any valid claim through the Buyer against any of the parties to this Agreement for a commission or brokerage fee or payment in connection with this Agreement or the transactions contemplated hereby as a result of any agreement of or action taken by the Buyer. Buyer shall defend, indemnify, and hold Seller harmless for and against any fees or claims relating thereto by any Broker engaged by Buyer.

3.5 <u>Compliance with Laws</u>. The Buyer is not in violation of any federal, state or local law, ordinance, requirement, regulation or any judgment, order, injunction or decree, which violation would, in the aggregate with other such violations, have a material adverse effect on the ability of the Buyer to enter into this Agreement or to consummate the transactions contemplated hereby.

3.6 <u>Representation of Buyer.</u> To the knowledge of Seller, Buyer has not made any false or inaccurate representations in this Agreement to Seller.

## ARTICLE 4
## ITEMS TO BE DELIVERED AT THE CLOSING

-10-

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

4.1    Deliveries by the Seller.    At the Closing, the Seller shall deliver to the Buyer, duly executed by the Seller or such other signatory as may be required by the nature of the document:

4.1.1    Bills of Sale.    Bills of sale, certificates of title, endorsements, assignments and other good and sufficient instruments of sale, conveyance, transfer and assignment, in form and substance reasonably satisfactory to the Buyer, sufficient to sell, convey, transfer and assign to the Buyer all right, title and interest of the Seller in and to the Assets and to quiet the Buyer's title thereto;

4.1.2    Lease Assignments.    Assignments in form and substance reasonably satisfactory to the Buyer to transfer the Seller's leasehold rights in the Real Property under the Lease to the Buyer, and any consents of the Lessor or the Sublessor that are a condition to the effectiveness of such assignment, it being specifically agreed that if Seller is unable to provide such consents Buyer's only remedy shall be to refuse to close;

4.2    Deliveries by the Buyer.    At the Closing, the Buyer shall deliver to the Seller, duly executed by the Buyer or such other signatory as may be required by the nature of the document:

4.2.1    Purchase Price.    The Purchase Price, which shall be paid in the manner specified herein; and

4.2.2    Assumption Agreements.    An instrument or instruments of assumption of the Contracts to be assumed by the Buyer pursuant to this Agreement, in form and substance reasonably satisfactory to the Seller.

## ARTICLE 5
## SURVIVAL; INDEMNIFICATION; EMPLOYEES

5.1    Indemnity.

5.1.1    Seller's Indemnity.    Except to the extent arising from the gross negligence or willful misconduct of Buyer, Seller hereby agrees to indemnify, defend and hold Buyer, its successors and assigns harmless from and against any and all claims, losses, demands, damages, judgments, liabilities, costs and expense (including, without limitation costs of court and reasonable attorney fees) of every kind and nature, (collectively "Claims") to the extent arising out of or relating to or resulting from: (i) any inaccuracy or breach of any representation, warranty or covenant of Seller contained in this Agreement; (ii) any pre-closing activity or event involving the Real Property or the Business (including, without limitation, any environmental liability arising therefrom) except as set forth in the JDA; (iii) any Excluded Liabilities; and (iv) any and all taxes imposed on the Buyer for periods ending on or prior to the Closing Date.

5.1.2    Buyer's Indemnity.    Except to the extent arising from the gross negligence or willful misconduct of Seller, Buyer hereby agrees to indemnify, defend and hold Seller, its successors and assigns harmless from and against any and all

-11-

claims, losses, demands, damages, judgments, liabilities, costs and expense (including, without limitation costs of court and reasonable attorney fees) of every kind and nature, (collectively "Claims") to the extent arising out of or relating to or resulting from: (i) any inaccuracy or breach of any representation, warranty or covenant of Buyer contained in this Agreement; (ii) any post-closing activity or event involving the Real Property or the Business (including, without limitation, any environmental liability arising therefrom) except as set forth in the JDA; (iii) any Assumed Liabilities; and (iv) any and all taxes imposed on the Buyer for periods beginning on or after the Closing Date.

5.1.3  Survival of Representations and Warranties.  The representations and warranties of the parties contained in this Agreement shall survive the Closing Date and continue in full force and effect thereafter for the following periods of time:

(a)    the representations and warranties of Seller contained in Sections 2.1, 2.3, 2.4, 2.10, and 2.16 shall survive the Closing Date for an indefinite period of time, without any limitation whatsoever;

(b)    the representations and warranties of Buyer contained in Sections 3.1, 3.2, 3.3, 3.4, and 3.6 shall survive the Closing Date for an indefinite period of time, without any limitation whatsoever;

(c)    the representations and warranties of Seller as to tax matters (including particularly Section 2.11) and as to ERISA matters shall survive the Closing Date by the applicable statute of limitations period plus one hundred eighty (180) days; and

(d)    all representations and warranties other than those set forth in (a), (b), or (c) above shall survive the Closing Date for a period of two years.

If any particular matter shall be a representation and warranty under more than one of the four survival categories set forth in (a), (b), (c) and (d) above, such matter shall be deemed to have survived closing for a period equal to the longest survival period for which it qualifies.

5.1.4  Limitations Period.    The indemnity obligations of the parties hereunder shall be limited to a period of two (2) years after the Closing Date, except: (i) claims made for the any inaccuracy or breach of any representation or warranty shall have the survival period of the applicable representation or warranty, (ii) obligations under Section 5.1.3 shall remain in effect until the expiration of the applicable statue of limitations plus six (6) months, and (iii) any obligations under the JDA which shall be governed thereby.

5.2    Notice of Claims.  Whenever any Claim is made under the Indemnity Provisions of this Article 5, the Claimant shall notify the other party in writing as soon as practicable after the Claimant becomes aware of such Claim.  Each Claim will be deemed accepted, unless the other party gives the Claimant written notice of disapproval with ten (10) days of receipt of such Notice of Claim.  The parties shall

-12-

undertake, in good faith, to resolve any dispute with respect to any such Claim which is so disapproved. If the parties are unable to agree on such resolution within thirty (30) days after said notice of disapproval is received, the respective rights of the parties shall be determined in accordance with the rules of the American Arbitration Association sitting in Raleigh, NC. The arbitration shall be conducted by three arbitrators, each of whom shall have experience reasonably related to the Business, and each of the Buyer and the Seller shall have the right to designate one of the arbitrators. The third arbitrator shall be designated by mutual agreement of the parties, and if they cannot agree, by mutual agreement of the two arbitrators will be final and binding upon the parties and the judgment of a court of competent jurisdiction may be entered thereon. Fees of the arbitrators and costs of arbitration shall be borne by the parties in such manner as shall be determined by the arbitrators.

## ARTICLE 6
## MISCELLANEOUS

6.1     <u>Liabilities on Termination or Breach</u>. The parties acknowledge that the Business is of a special, unique and extraordinary character. In the event of a material breach by the Seller of its representations, warranties, covenants and agreements under this Agreement, the Buyer shall be entitled to an injunction restraining any such breach or threatened breach or to enforcement of this Agreement by a decree or decrees of specific performance requiring the Seller to fulfill its obligations under this Agreement. In the event of a material breach by the Buyer of its representations, warranties, covenants and agreements under this Agreement, the Seller shall be entitled to an injunction restraining any such breach or threatened breach or to endorsement of this Agreement by a decree or decrees of specific performance requiring the Buyer to fulfill its obligation under this Agreement.

6.2     <u>Expenses</u>. Except to the extent specifically set forth, each party hereto shall bear all of its expenses incurred in connection with the transactions contemplated by this Agreement including, without limitation, accounting and legal fees incurred in connection herewith; <u>provided</u>, <u>however</u>, that all transfer taxes, recordation taxes, sales taxes and document stamps in connection with the transactions contemplated by this Agreement and all other filing fees, and other charges levied by any governmental entity in connection with the transactions contemplated by this Agreement shall be paid by the Buyer.

6.3     <u>Non-Assignable Contracts</u>. Nothing contained in this Agreement shall be construed as an assignment or an attempted assignment of any Contract which is by law non-assignable without the consent of the other party or parties thereto, unless such consent shall be given. The Seller shall use its commercially reasonable efforts (and the Buyer shall assist the Seller) both after and before the Closing to obtain such consents to the assignment or transfer of Contracts to vest in the Buyer all of the Seller's right, title and interest in such Contracts, in all cases in which such consent is required for assignment or transfer. If such consent is not obtained, the Seller shall cooperate with the Buyer in any arrangements necessary or desirable, on commercially reasonable terms, to provide for the Buyer and benefits and to have the Buyer assume the burdens arising after the closing thereunder, including, without limitation, enforcement for the benefit of the Buyer, and assumption by the Buyer of the costs of enforcing, any and all rights of the Seller

-13-

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

05363
Hanson

1956

thereunder against the other party thereto arising out of the cancellation thereof by such other party or otherwise.

6.4    Further Assurances.  From time to time on and after the Closing Date, each party hereto will execute all such instruments and take all such actions as any other party, being advised by counsel, shall reasonably request, without payment of further consideration, in connection with carrying out and effectuating the intent and purpose hereof and all transactions and things contemplated by this Agreement including, without limitation, the execution and delivery of any and all confirmatory and other instruments in addition to those to be delivered on the Closing Date, and any and all actions which may reasonably be necessary or desirable to complete the transactions contemplated hereby. The parties shall cooperate fully with each other and with their respective counsel and accountants in connection with any steps required to be taken as part of their respective obligations under this Agreement.

6.5    Employees.  Except as provided otherwise in this Section, the Seller shall terminate all of its employees on the Closing Date and the Seller shall pay all termination and severance costs in connection with such termination, including without limitation, accrued vacation. The Buyer shall offer employment to such employees of the Seller it deems appropriate ("Assumed Employees") on or after the Closing.    The Seller acknowledges and agrees that the foregoing representation by the Buyer does not require the Buyer to continue to employ any such Assumed Employee for any specific periods of time. The Seller shall withhold all amounts required by law from its employees and pay all required payroll taxes (FICA, FUTA, Medicare, income tax and the like) for the compensation it pays such employees prior to the Closing and file all returns due for any period before the Closing Date with respect to employee income tax withholding, social security, Medicare, unemployment taxes and other similar taxes and charges, in compliance with the tax withholding provisions of the Code and other applicable federal, state and local laws.  The Seller shall remain responsible for the administration and/or termination of its Benefit Plans.

6.6    Bulk Sales Compliance.  Buyer and Seller hereby agree to waive the compliance by the parties with all applicable bulk sales laws and regulations. Seller shall indemnify and hold harmless Buyer from and against any liabilities, cost, claims, levies or expense arising out of the parties' failure to comply with such laws except to the extent such liabilities, costs, etc. arise out of Buyer's failure to pay and perform the Assumed Liabilities.

6.7    Non-Solicitation.  The Seller agrees that for a period of one (1) year following the Closing Date, it will not, without the prior written consent of the Buyer, solicit for employment any person who as of the date hereof is an employee of Buyer or who becomes an employee of the Buyer as a consequence of the Closing of this transaction.    Notwithstanding the foregoing, this provision shall not apply to any employee who is terminated or laid off by Buyer during said time period.

-14-

1957

## ARTICLE 7
## GENERAL PROVISIONS

7.1    Successors and Assigns.  Except as otherwise expressly provided herein, this Agreement shall be binding on and inure to the benefit of the parties hereto, and their respective representatives, successors and assigns.

7.2    Amendments; Waivers.  The terms, covenants, representations, warranties and conditions of this Agreement may be changed, amended, modified, waived, discharged or terminated only by a written instrument executed by the party waiving compliance.  The failure of any party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right of such party at a later date to enforce the same.  No waiver by any party of any condition or the breach of any provision, term, covenant, representation or warranty contained in this Agreement, whether by conduct or otherwise, in any one or more instances shall be deemed to be or construed as a further or continuing waiver of any such condition or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

7.3    Notices.  All notices, requests, demands and other communications required or permitted under this Agreement shall be in writing (which shall include notice by telex or facsimile transmission) and shall be deemed to have been duly made and received when personally served, or when delivered by Federal Express or a similar overnight courier service, expenses prepaid, or, if sent by telex, graphic scanning or other facsimile communications equipment, delivered by such equipment, addressed as set forth below:

        (a)     If to the Buyer, then to:

                Oldcastle Materials, Inc.
                3333 K Street NW, Suite 405
                Washington, DC 20007
                Phone:  (202) 625-2122
                Fax:      (202) 625-2153
                ATTN: Glenn A. Culpepper

W/ copy to:

                Gibson, Dunn & Crutcher LLP
                200 Park Avenue
                New York, NY 10166
                Phone: (212) 351-4000
                Fax: (212) 351-4035
                ATTN: Steven R. Shoemate

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

05365
Hanson

1958

(b)    If to the Seller then to:

    Hanson Aggregates Southeast, Inc.
    100 Crescent Centre Parkway
    Tucker, GA 30084

W/ copy to:

    Division Counsel
    HAE
    2300 Gateway Centre Blvd.
    Morrisville, NC 27560

Any party may alter the address to which communications are to be sent by giving notice of such change of address in conformity with the provisions of this Section providing for the giving of notice.

7.4    Captions.  The captions of Articles and Sections of this Agreement are for convenience only and shall not control or affect the meaning or construction of any of the provisions of this Agreement.

7.5    GOVERNING LAW.  THIS AGREEMENT AND ALL QUESTIONS RELATING TO ITS VALIDITY, INTERPRETATION, PERFORMANCE AND ENFORCEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAWS.

7.6    Entire Agreement.  This Agreement and the Schedules hereto and thereto and the other documents delivered hereunder constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof, and supersede all prior agreements, understandings, inducements or conditions, express or implied, oral or written, relating to the subject matter hereof.  The express terms hereof control and supersede any course of performance and/or usage of trade inconsistent with any of the terms hereof.

7.7    Execution:  Counterparts and Facsimile.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as the signatories.  Delivery of an executed counterpart of a signature page to this Agreement by facsimile shall be as effective as delivery of a manually executed counterpart of this Agreement.

7.8    Gender and Number.  Where appropriate to the context, pronouns of other terms expressed in one number or gender will be deemed to include all other numbers or genders.  The word "person" will include one or more individuals, corporations, firms, partnerships, entities or associations.  The use of a word in one tense will include the other tenses, where appropriate to the context.

-16-

Davis v. Hanson
CV-02-85
Subject to Stipulated Protective Order

05366
Hanson

7.9    <u>Third-Party Beneficiaries</u>.  This Agreement is intended to benefit only the parties to this Agreement, their successors and permitted assigns.  No other person, entity, enterprise or association is an intended or incidental beneficiary of this Agreement.

[Remainder of this page intentionally left blank.]

-17-

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

05367
Hanson

1909

**IN WITNESS WHEREOF**, the parties have caused this Asset Purchase Agreement to be duly executed by their duly authorized signatories, all as of the day and year first above written.

SELLER:
HANSON AGGREGATES SOUTHEAST, INC.

By: _Howard Nye_

Its: _VICE PRESIDENT_

BUYER:
OLDCASTLE MATERIALS, INC.

By: _____

Its: _____

ORL1 #778104 v2

-18-

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

IN WITNESS WHEREOF, the parties have caused this Asset Purchase Agreement to be duly executed by their duly authorized signatories, all as of the day and year first above written.

SELLER:
HANSON AGGREGATES SOUTHEAST, INC.

By:_____
Its:

BUYER:
OLDCASTLE MATERIALS SOUTHEAST, INC.

By: _____
Its: *Secretary*

ORL1 #778104 v2

Document4

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

## SCHEDULE 1.1.1
### TANGIBLE PERSONAL PROPERTY

1062

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

## SCHEDULE 1.1.1

## OPELIKA ASSET LIST, EXCLUDED ASSETS, AND LEASED ASSETS

1965

**Opelika Asset List**

| LEVEL_2 | LEVEL_3 | ASSET_NUM | MODEL_NUM | SERIAL_NUM | ACQ_YR | Description |
|---|---|---|---|---|---|---|
| 04 | A | 330818 | Taurus LX | | 2001 | Auto - Ford |
| 04 | HT | 330993 | R686ST | | 1978 | Dump Truck - Mack |
| 04 | HT | 330477 | Hydroforce 5000 | DM688-S | 1989 | Water Truck |
| 04 | HT | 500412 | R686STK | | 1984 | Fuel/Lub Truck - Mack |
| 04 | IS | | | | | Group of computers and |
| 04 | LT | 330862 | F450 | | 2001 | Welding Truck - Ford |
| 04 | LT | 330194 | F150 | | 1997 | Pickup Truck - Ford |
| 04 | LT | 330628 | F150 | | 2000 | Pickup Truck - Ford |
| 04 | LT | 330184 | C1500 | | 1996 | Pickup Truck - Chevy - QC |
| 04 | ME | 330396 | | | 1999 | Conveyor - C2  48" X 80' |
| 04 | ME | 330398 | | | 1999 | Conveyor - C10  42" X 40' |
| 04 | ME | 330399 | | | 1999 | Conveyor - C3  42" X 380' |
| 04 | ME | 330406 | | | 1999 | Conveyor - C1  48" X 30' |
| 04 | ME | 330410 | | | 1999 | Conveyor - C13  36" X 60' |
| 04 | ME | 330412 | | | 1999 | Conveyor - C15  36" X 60' |
| 04 | ME | 330420 | | | 1999 | Conveyor - C16  30" X 60' |
| 04 | ME | 330428 | | | 1999 | Conveyor - C12  36" X 180' |
| 04 | ME | 330429 | | | 1999 | Conveyor - C4  36" X 50' |
| 04 | ME | 330401 | | | 1999 | Conveyor - C14  30" X 60' |
| 04 | ME | 330403 | | | 1999 | Conveyor - C20  30" X 40' |
| 04 | ME | 330404 | | | 1999 | Conveyor - C5  30" X 60' |
| 04 | ME | 330407 | | | 1999 | Conveyor - C11  42" X 140' |
| 04 | ME | 330413 | | | 1999 | Conveyor - C6  30" X 60' |
| 04 | ME | 330414 | | | 1999 | Conveyor - C8  30" X 60' |
| 04 | ME | 330416 | | | 1999 | Conveyor - C17  30" X 40' |
| 04 | ME | 330418 | | | 1999 | Conveyor - C18  30" X 60' |
| 04 | ME | 330402 | | | 1999 | Conveyor - C9  30" X 60' |
| 04 | ME | 330405 | | | 1999 | Conveyor - C7  30" X 80' |
| 04 | ME | 330415 | | | 1999 | Conveyor - C19  30" X 60' |
| 04 | ME | 330417 | | | 1999 | Conveyor - C22  30" X 60' |
| 04 | ME | 330419 | | | 1999 | Conveyor - C23  30" X 60' |
| 04 | ME | | | | | Conveyor - C21  30" X 60' |
| 04 | ME | 300416 | WA500 | | 1990 | Loader - Komatsu |
| 04 | ME | 330441 | L330C | | 1996 | Loader - Volvo |
| 04 | ME | 330442 | L180C | | 1996 | Loader - Volvo |
| 04 | ME | 330458 | 863 | | 1999 | Loader - SS - Bobcat |
| 04 | ME | 500992 | SE50LC2 | | 1999 | Excavator - Samsung |

1964

| | | | | | |
|---|---|---|---|---|---|
| 04 | ME | 330444 | 402TDC | 1997 | Truck - Euclid |
| 04 | ME | 330445 | 402TDC | 1997 | Truck - Euclid |
| 04 | ME | 330576 | | | Flyght Washer Pump 30HP |
| 04 | ME | 330635 | | 2000 | Godwin Pit Pump 6 - 8" 200HP |
| 04 | ME | 330464 | 42" X 20' | 1999 | Grizzly Feeder |
| 04 | ME | 330471 | | 1999 | Fuel Containment |
| 04 | ME | 330535 | | 1999 | Oil Water Separate, Landa |
| 04 | ME | 330575 | | 2000 | Teledyne Hammer |
| 04 | ME | 330679 | | 2000 | Pug Mill 40HP |
| 04 | ME | 8121270 | | 1995 | Crusher-Impact -Horizontal |
| 04 | ME | 330408 | GSR 5460 | 1999 | Crusher-Impact -Horizontal |
| 04 | ME | 330394 | | 1999 | Crusher-Jaw, Cedar Rapids |
| 04 | ME | 330395 | Grizzly Feeder | 1999 | 42" X 12' PMI Skid Mount |
| 04 | ME | 330400 | | 1999 | Screen - 6' X 20' Cedarapids |
| 04 | ME | 330424 | | | 36" X 72" Syntron Feeder (1) |
| 04 | ME | 330425 | | | 36" X 72" Syntron Feeder (2) |
| 04 | ME | 331047 | | 2001 | Primary Dump Hopper |
| 04 | ME | 330411 | | 1999 | 6X15 Portable Wash Sand Screw |
| 04 | ME | 330421 | | 1999 | Truck Scales w/Digital |
| 04 | ME | 330476 | | 1999 | Wash Screen, Triple Deck 6 x |
| 04 | ME | 330422 | | 1999 | Surge Reclamation System |
| 04 | ME | 330563 | | 1999 | Electrical Upgrade |
| 04 | ME | 330658 | | 2000 | Pipe & Installation |
| 04 | ME | 330680 | | 2000 | Dust Suppression |
| 04 | ME | | | | Group of miscellaneous mining |
| 04 | ME | | | | Group of laboratory equipment |
| 04 | ME | | | | Power Electric, Process Area |
| 04 | OF | | | | Group of office furniture |
| 04 | OF | | | | Group of office machines |
| 04 | TR | | | | Trailer, Site |

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

1965

# Excluded Asset List for Opelika

Hanson Excluded Assets List

| Asset Number | Location | Year | Description |
|---|---|---|---|
| 330828 | Opelika | 2002 | F250     Ford |
| 500472 | Opelika | 1984 | 966D Cat loader for Rip Rap |

1906

# Leased Asset List for Opelika

**Hanson Leased Equipment List**

| Asset Number | Location | Year | Model | Make |
|---|---|---|---|---|
| 330628 | Opelika | 2000 | F150 | Ford |
| 330818 | Opelika | 2001 | Taurus | Ford |
| 330862 | Opelika | 2001 | F450 | Ford |

ORL1 #784407 v2

Davis v. Hanson
CV-02-85
Subject to Stipulated Protective Order

05374
Hanson

1967

SCHEDULE 1.1.2
REAL PROPERTY

- All that real property consisting of approximately 168.12 acres and more particularly described in the Mineral Lease Agreement from Gilmer et. al. to Hanson Aggregates Southeast, Inc. dated 6/30/99.
- All that real property consisting of approximately 262.78 acres and more particularly described in the Mineral Lease Agreement from Young, et. al. to Hanson Aggregates Southeast, Inc. dated 1/17/00.

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

1968

SCHEDULE 1.3.2
"EXHIBIT B" FROM SELLER'S LEASEHOLD POLICY
FIRST AMERICAN TITLE INS. CO.
POLICY #FA-33-231405 DATED 8/27/99

*Davis v. Hanson*
CV-02-85
Subject to Stipulated Protective Order

05376
Hanson

1969

## SCHEDULE 2.12
## EXCEPTION TO ENVIRONMENTAL COMPLIANCE

Those items listed in the following letters which were delivered to Purchaser's B. Fowler, do not, in Seller's view, constitute material non-compliance:

(1) Two page indicating non-compliance with NPDES Permit;
(2) Ten pages, Notice of Violation from Air Quailty Section.

SCHEDULE 2.14
COLLECTIVE BARGAINING AGREEMENTS

NONE

Davis v. Hanson
CV-02-85
Subject to Stipulated Protective Order

05378
Hanson

F I L E D

NOV 10 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, et al
_____,

Plaintiff

VS.

Hanson Aggregates Southeast, Inc., et al.
_____,

Defendant

CV-02-85

Case No.

Circuit Court of Lee County

(Court or Administrative Agency)

## VERIFIED APPLICATION FOR ADMISSION
## TO PRACTICE UNDER RULE VII OF THE
## RULES GOVERNING ADMISSION TO THE ALABAMA STATE BAR

Comes now_____ Jack M. Weiss _____, applicant

herein, and respectfully represents the following:

1. Applicant resides at___130 East 75th Street, Apt. 11A_____,

Street Address

New York_____ New York_____ New York_____,

City                    County                  State

10021_____ 212-794-0147_____ 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_____,

Zip Code                Telephone              Social Security Number

2. Applicant is an attorney and a member of the law firm of (or practices law

under the name of) Gibson, Dunn & Crutcher, LLP_____, with

offices at 200 Park Avenue_____, New York_____,

Street Address                              City

New York_____ New York_____ 10166____ 212-351-3890_____,

County                   State                  Zip Code      Telephone

3.  Applicant has been retained personally or as a member of the above named law firm by_____Oldcastle Materials Southeast, Inc._____to provide legal representation in connection with the above-styled matter now pending before the above-named court or administrative agency of the State of Alabama.

4. Since ___September 27___ of 19/20 99 , applicant has been, and presently is, a member in good standing of the Bar of the highest court of the State of _____New York_____, where applicant regularly practices law **ATTACH A CERTIFICATE OF GOOD STANDING.**

5. Applicant has been admitted to practice before the following courts: (List all of the following courts applicant has been admitted to practice before: United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and courts of other states.)

| Court: | Date Admitted: |
| --- | --- |
| Supreme Court of Louisiana | September 9, 1971 |
| District of Columbia Court of Appeals | September 28, 1972 |
| U.S.D.C., Eastern District, Louisiana | July 16, 1975 |
| Supreme Court of the United States | November 1, 1976 |
| U.S.D.C., Middle District, Louisiana | November 20, 1979 |
| U.S.C.A., Fifth Circuit | October 1, 1981 |
| U.S.C.A., Second Circuit | March 8, 1999 |
| U.S.D.C., Eastern District, New York | September 27, 1999 |
| U.S.D.C., Southern District, New York | April 25, 2000 |

Applicant is presently a member in good standing of the Bars of those courts listed above, except as may be listed below: (Here list any court named in the preceding paragraph that applicant is no longer admitted to practice before.)

None

6. Applicant presently is not subject to any disbarment proceedings, except as provided below (give particulars, e.g., jurisdiction, court, date):

None

7. Applicant presently is not subject to any suspension proceedings, except as provided below (give particulars, e.g., jurisdiction, court, date):

None

8. Applicant never has been subject to any disbarment proceedings, except as provided below (give particulars, e.g., jurisdiction, date of proceedings, court, date of reinstatement):

None

1974

9. Applicant never has been subject to any suspension proceedings, except as provided below (give particulars, e.g., jurisdiction, date of proceedings, court, date of reinstatement):

<u>None</u>

10. Applicant never has had any certificate or privilege to appear and practice before any administrative body suspended or revoked, except as provided below (give particulars, e.g., date, administrative body, date of suspension and reinstatement):

<u>None</u>

11. Applicant, either by resignation, withdrawal, or otherwise, never has terminated or attempted to terminate applicant's office as an attorney in order to avoid administrative, disciplinary, disbarment, or suspension proceedings.

12. Applicant or a member of applicant's firm has filed applications(s) to appear as counsel under Rule VII during the past three (3) years in the following matters:

| Date of Application | Name of Applicant | Case No. and Style of Case | Court or Admin. Body | Application Granted/Denied |
|---|---|---|---|---|
| | | None | | |

(If necessary, please attach statement of additional applications.)

1975

13. Local counsel of record associated with applicant in this matter is

**Phillip E. Adams, Jr. of Adams, Umbach, Davidson & White L.L.P.,**

who has offices at _____ P.O. Box 2069 _____,

| Opelika | , | Lee County | ,Alabama, |
|---------|---|------------|-----------|
| City | | County | |

| 36803-2069 | , | 334-745-6466 | , |
|------------|---|--------------|---|
| Zip Code | | Telephone | |

14. The following lists accurately state the name and address of each party in this matter, WHETHER OR NOT REPRESENTED BY COUNSEL, and the name and address of each counsel of record who has appeared for each party:

Name of Party                                    Mailing Address

_____    _____

_____    _____

## Attached as Exhibit B

_____    _____

_____    _____

Name of Counsel          Party Represented          Mailing Address

_____    _____    _____

_____    _____    _____

_____    **See Exhibit B**    _____

_____    _____    _____

_____    _____    _____

_____    _____    _____

15. Applicant agrees to comply with the provisions of the Alabama Rules of Professional Conduct, and applicant consents to the jurisdiction of the courts and the disciplinary boards of the State of Alabama.

16. Applicant respectfully requests to be admitted to practice in the above named court or administrative agency for this cause only.

DATED this ___27th___ of __October__ , 20_03_

*Jack M. Weiss*
APPLICANT

STATE OF_____New York_____)
COUNTY OF _____New York_____)

I, _____Jack M. Weiss_____ ,do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof, and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true.

*Jack M. Weiss*
APPLICANT/AFFIANT

Subscribed and Sworn to before me this
__27th__ day of __October__ , 20_03_ .
Notary Public, State of New York
No. 01SI4969346
Qualified in New York County
Commission Expires July 16, 2006

*Kathie Parke*
NOTARY PUBLIC

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rule VII of the Rules Governing Admission to the Alabama State Bar.

DATED this ___6th___ day of __November__ ,20_03_ .

*Phillip E. Adams*
LOCAL COUNSEL OF RECORD

1977

## NOTICE OF HEARING

This application for admission is set for hearing before the court or administrative agency in the style hereof on the_____day of_____,20____.

_____
APPLICANT/AFFIANT

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the Alabama State Bar by mail addressed to: Alabama State Bar, Attn: PHV Admissions, P.O. Box 671, Montgomery, Alabama 36101, accompanied by payment of the $100 filing fee to the Alabama State Bar on this the_____day of _____ _____,
20_____.

_____
APPLICANT/AFFIANT

(Form approved by Alabama State Bar
and Alabama Supreme Court to be
effective January 1,1994.)

Exhibit A

1878

# Appellate Division of the Supreme Court
## of the State of New York
### First Judicial Department

I, Catherine O'Hagan Wolfe, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, certify that

## JACK M. WEISS

was duly licensed and admitted to practice as an Attorney and Counsellor at Law in all the courts of the State of New York on the 27th day of September, 1999 has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counsellors at Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an attorney and counsellor at law.

In Witness Whereof, I have hereunto set my hand and affixed the seal of this court on

### October 23, 2003

Catherine O'Hagan Wolfe

Clerk

Exhibit B

1979

| Name of Party | Mailing Address |
|---|---|
| 1. Mike & Donna Davis | 149 Lee Road 707 Opelika, AL 36804 |
| 2. Mike & Ann Broadwater | 610 Lee Road 166 Opelika, AL 36804 |
| 3. Mittie Broadwater | 574 Lee Road 166 Opelika, AL 36804 |
| 4. City of Opelika | 204 S. 7th St. Opelika, AL 36801 |
| 5. The Utilities Board of the City of Opelika | 502 Geneva St. Opelika, AL 36801 |
| 6. The Beauregard Water Authority | 7430 AL HWY 51 Opelika, AL 36804 |
| 7. Anthony & Carol Clark | 1740 Lee Road 147 Opelika, AL 36804 |
| 8. Courtney Clark | 1740 Lee Road 147 Opelika, AL 36804 |
| 9. Elaine Edwards | 3274 AL HWY 169 Opelika, AL 36804 |
| 10. Mary Sue Eiland | 2853 AL HWY 169 Opelika, AL 36804 |
| 11. Medena Frizzel | 3173 AL HWY 169 Opelika, AL 36804 |
| 12. Karla Frizzel | 3173 AL HWY 169 Opelika, AL 36804 |
| 13. Brianna Yougren | 3173 AL HWY 169 Opelika, AL 36804 |
| 14. Ronnie & Dorothy Griggs | 3256 AL HWY 169 Opelika, AL 36804 |
| 15. Mike & Stacy Hagans | 1668 Lee Road 147 Opelika, AL 36804 |
| 16. Howard & Lisa Harmon | 145 Lee Road 707 Opelika, AL 36804 |
| 17. Judson Harmon | 145 Lee Road 707 Opelika, AL 36804 |
| 18. Bria Harmon | 145 Lee Road 707 Opelika, AL 36804 |
| 19. Hayward & Nora Jackson | 1141 Lee Road Opelika, AL 36804 |
| 20. Mike & Sheila LaMacchia | 1355 Lee Road 147 Opelika, AL 36804 |
| 21. Russell LaMacchia | 1355 Lee Road 147 Opelika, AL 36804 |
| 22. Stanley & Jackie Ledbetter | 1330 Lee Road 166 Opelika, AL 36804 |
| 23. Terry & Carol Long | 3379 AL HWY 169 Opelika, AL 36804 |
| 24. Tim & Ada Manning | 3226 AL HWY 169 Opelika, AL 36804 |
| 25. David & Janette Baggett | 1198 Lee Road 147 Opelika, AL 36804 |
| 26. James & Shirley Parker | 3039 AL HWY 169 Opelika, AL 36804 |
| 27. Randall & Wanda Parker | 1229 Lee Road 166 Opelika, AL 36804 |
| 28. Ambur Parker | 1229 Lee Road 166 Opelika, AL 36804 |
| 29. Brandon Parker | 1229 Lee Road 166 Opelika, AL 36804 |
| 30. Maria & Jeff Richardson | 265 Lee Road 705 Opelika, AL 36804 |
| 31. Natasha Richardson | 265 Lee Road 705 Opelika, AL 36804 |
| 32. David & Amanda Sumner | 164 Lee Road 148 Opelika, AL 36804 |
| 33. Todd Sumner | 164 Lee Road 148 Opelika, AL 36804 |
| 34. Larry & Rita Sumner | 1100 Lee Road 147 Opelika, AL 36804 |
| 35. Martha Treadway | 3177 AL HWY 169 Opelika, AL 36804 |
| 36. Jasmine King | 3177 AL HWY 169 Opelika, AL 36804 |
| 37. Michael King | 3177 AL HWY 169 Opelika, AL 36804 |
| 38. Hazel King | 3177 AL HWY 169 Opelika, AL 36804 |
| 39. Joseph King | 3177 AL HWY 169 Opelika, AL 36804 |
| 40. Billy & Sherry Wallace | 1692 Lee Road 147 Opelika, AL 36804 |
| 41. Aaron Wallace | 1692 Lee Road 147 Opelika, AL 36804 |
| 42. Michele Wilkes | 1692 Lee Wilkes Opelika, AL 36804 |

| 43. Shirley Wilson | 64 Lee Road 707 Opelika, AL 36804 |
| 44. Betty J. Pfingston | Hwy 166 Opelika, AL 36804 |
| 45. Jessica Pfingston | Hwy 166 Opelika, AL 36804 |
| 46. Wonda Bright | 245 Lee Road 166 Opelika, AL 36804 |
| 47. Hanson Aggregates Southeast, Inc. | 3085 HWY 169 Opelika, AL 36804 |
| 48. Louise Young O'Brien, Virginia Young Priest, Virginia Hart Young, & Claude John Young | 3085 HWY 169 Opelika, AL 36804 |
| 49. Charles W. Gilmer, Sr., Alice C. Gilmer, Charles W. Gilmer, Jr., Kammy Gilmer, Barbara Gilmer Smith, Gary Smith, Matthew Ruttledge Gilmer, Leila Wilder Gilmer, & Gilmer Properties, Ltd. | 3085 HWY 169 Opelika, AL 36804 |

| Name of Counsel | Party Represented | Mailing Address |
|---|---|---|
| James B. Sprayberry, Esq. | Co-Counsel for Property Owners | Post Office Drawer 2429 Auburn, AL 36831-2429 |
| Charles Vercelli, Jr., Esq. Vercelli & Associates, P.C. | Co-Counsel for Property Owners | 1019 S. Perry Street Montgomery, AL 36104-5049 |
| Guy F. Gunter, III, Esq. Melton, Gunter & Melton, LLP | City of Opelika, Opelika Utilities Board | P.O. Box 409 Opelika, AL 36803-0409 |
| John Denson, Esq. Samford, Denson, Horsley, Pettey, Bridges & Hughes | Defendants Gilmer and Young | P.O. Box 2345 Opelika, AL 36803-2345 |
| James A. Byram, Jr., Esq. Balch & Bingham, LLP | Hanson Aggregates Southeast, Inc. | Post Office Box 78 Montgomery, AL 36101 |
| Paul A. Clark, Esq. Balch & Bingham, LLP | Hanson Aggregates Southeast, Inc. | Post Office Box 78 Montgomery, AL 36101 |
| H. Wayne Phears, Esq. Phears & Moldovan | Hanson Aggregates Southeast, Inc. | Suite. 375 4725 Peachtree Corner Circle Norcross, GA 30092 |
| Phillip E. Adams, Jr., Esq. Adams, Umbach, Davidson &White, LLP | Oldcastle, Inc. | P.O. Box 2069 Opelika, AL 36803-2069 |
| Jack M. Weiss, Esq. Gibson, Dunn & Crutcher, LLP | Oldcastle, Inc. | 200 Park Ave., 48th Floor New York, NY 10016-0193 |
| Charles M. Haake, Esq. Gibson, Dunn & Crutcher, LLP | Oldcastle, Inc. | 1050 Connecticut Ave. NW Washington, D.C. 20036 |

Document2

1981

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. CV 02-085 |
| | * | |
| HANSON AGGREGATES | * | |
| SOUTHEAST, INC., et al, | * | |
| | * | |
| Defendants. | * | |

## ORDER

Due to the State of Alabama's "budget crisis" currently being experienced by the Alabama Judicial System, the trial of the above-styled case is set for January 28, 2004, is CANCELLED. The trial is reset for **AUGUST 16, 2004, at 8:30 A.M. in Courtroom Three of the Lee County Justice Center, Opelika, Alabama**. The Pre-Trial Conference is set **June 28, 2004, at 9:00 A.M.** The parties are to refer to their Scheduling Conference Order and recalculate the dates that apply to any "cut-offs" for Motions and other matters. Furthermore, a Status Conference is set in this case on **February 4, 2004, at 9:00 A.M. in Courtroom Three of the Lee County Justice Center, Opelika, Alabama**. The parties are reminded that there is still a Status Conference set in this case for **December 9, 2003, at 1:30 P.M.**

The Clerk of Court is ordered to mail by ordinary mail or deliver a copy of this Order to the following:

Hon. Jimmy Sprayberry
Post Office Box 2429
Auburn, AL 36831-2429

Hon. James Byram, Jr.
Hon. Dorman Walker
Hon. Matt Parnell
Post Office Box 78
Montgomery, AL 36101

Hon. Guy Gunter
Post Office Box 409
Opelika, AL 36803-0409

Hon. Charles Vercelli, Jr.
1019 S. Perry Street
Montgomery, AL 36104

Hon. John V. Denson
Post Office Box 2345
Opelika, AL 36803-2345

Hon. Phillip E. Adams, Jr.
Post Office Box 2069
Opelika, AL 36803-2069

DONE this the 6th day of November, 2003.

JACOB A. WALKER, III
Circuit Judge

F I L E D

NOV 1 4 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

**ALABAMA STATE BAR**

415 Dexter Avenue • Post Office Box 671 • Montgomery, Alabama 36101
Telephone: 334 / 269-1515 • Fax: 334 / 261-6310
www.alabar.org

FILED
NOV 2 4 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## STATEMENT

The following information, in response to the application of petitioner, is furnished in compliance
with Rule VII, Rules Governing Admission to the Alabama State Bar *(Pro HacVice)*:

**PETITIONER:**    Mr. Jack M. Weiss
Gibson, Dunn & Crutcher
200 Park Ave.
New York, NY    10166-0000

**CURRENT APPLICATION:**

| | |
|---|---|
| Date Application Received: | November 21, 2003 |
| Case No.: | CV02-85 |
| Style: | Mike Davis, et al. vs. Hanson Aggregates Southeast, Inc., et al. |
| Court/Agency: | Circuit Court of Lee County |
| Date of Hearing: | December 12, 2003 |

**LOCAL COUNSEL:**  Mr. Phillip Exton Adams Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL    36803-2069

APPLICATIONS FOR RULE VII ADMISSION HAVE BEEN MADE BY ABOVE PETITIONER OR OTHER
ATTORNEY MEMBERS OF PETITIONER'S FIRM IN THE PRECEDING 365 DAYS AS LISTED:

See Attached

*Emily McClintock*
PHV Admissions
November 21, 2003

**LAWYERS RENDER SERVICE**

Gibson, Dunn & Crutcher

1983

| Applicant | Date App Received | Case | Court | G/D/P/M |
|---|---|---|---|---|
| Brendt, John T. | 8/16/00 | CV99-7522 | Circuit Court of Jefferson County | M |
| Ferguson, Edward T. | 7/20/93 | CV91-2801-G | Circuit Court of Montgomery County | G |
| King, Marshall R. | 8/16/00 | CV99-7522 | Circuit Court of Jefferson County | G |
| Lanman, Henry A. | 8/16/00 | CV99-7522 | Circuit Court of Jefferson County | M |
| Schrader, Wayne A. | 3/31/99 | CV98-6599 | Circuit Court of Jefferson County | G |
| Tycko, Jonathan K. | 3/31/99 | CV98-6599 | Circuit Court of Jefferson County | G |

1984

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    *
        Plaintiff,              *
v.                                     *          **CASE NUMBER: CV-02-85**
                               *
                               *
HANSON AGGREGATES SOUTHEAST,           *
INC., et al.                           *
        Defendants.             *

**FILED**

DEC 0 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF SERVING DISCOVERY

Plaintiffs give notice of filing of the following discovery in this case:

1.    "Answers to Oldcastles' Interrogatories by City of Opelika, Opelika Utility Board

and Beaureguard Water Authority", served on November 25, 2003.

**James B. Sprayberry (SPR008)**
One of the Attorney for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

1985

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Bryam, Jr.
Matt Parnell
Balch & Binham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
    & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P.O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the 25th day of November, 2003.
        26

OF COUNSEL

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED

DEC 0 2 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER: CV-02-085 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC.; et al. | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF DISCOVERY DOCUMENTS

To:    Corinne T. Hurst, Clerk
Lee County Justice Center
2311 Gateway Drive
Opelika, Alabama 36801

Please take notice that the following discovery documents have been filed on behalf of

Defendants, Virginia Young Priest; John Claude Young, c/o Virginia Young Priest, Louise Young

O'Brien; Virginia Hart Young and Gilmer Properties, Ltd, in the above-styled case:

(X)    Response to Plaintiffs' Fourth Interrogatories and Request for Production

DONE        this _2nd_ day of December,   2003.

Respectfully submitted,

**OF COUNSEL FOR DEFENDANTS:**
**VIRGINIA YOUNG PRIEST; JOHN CLAUDE**
**YOUNG, C/O VIRGINIA YOUNG PRIEST;**
**LOUISE YOUNG O'BRIEN; VIRGINIA HART**
**YOUNG; GILMER PROPERTIES, LTD.**
SAMFORD, DENSON, HORSLEY,
PETTEY,  BRIDGES & HUGHES
P.O. Box 2345
Opelika, AL  36803-2345
(334) 745-3504
FAX (334) 745-3506

JOHN V. DENSON
DEN007

1987

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all Attorneys of Record in the above-styled cause, by mailing the same in U.S. Mail, postage prepaid, on this the _2nd_ day of _December_, 2003, as follows:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

M. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092-3000

Guy F. Gunter, III
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0409

Mr. Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Charles E. Vercelli, Jr.
1019 South Perry Street
Montgomery, Alabama 36104-5049

James B. Sprayberry
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Jack Weiss
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

John V. Denson

### IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER: CV-02-085 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC.; et al. | ) | |
| | ) | |
| Defendants. | ) | |

### RESPONSE OF YOUNG AND GILMER DEFENDANTS
### TO PLAINTIFFS' FOURTH INTERROGATORIES
### AND REQUEST FOR PRODUCTION

### GENERAL OBJECTIONS

COME NOW, the Defendants, Virginia Young Priest;  John Claude Young, c/o Virginia Young Priest; Louise Young O'Brien; Virginia Hart Young and Gilmer Properties, Ltd. (hereinafter referred to collectively as the **"Young and Gilmer Defendants"**) and subject to any protective Order entered in the case, respond to the Plaintiffs' Fourth Interrogatories and Request for Production to the Young and Gilmer Defendants served by facsimile on counsel for said Defendants on November 3, 2003, as follows:

1.      The Young and Gilmer Defendants object to the definitions, instructions, interrogatories and request for production  to the extent they call for privileged information or documents protected by the attorney-client privilege.

1

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

FILED
DEC 0 2 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-20 02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO COMPEL OLDCASTLE TO RESPOND TO PLAINTIFFS' FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION

Plaintiffs move this Honorable Court to compel the Defendant Oldcastle to answer Plaintiffs' First Interrogatories and Requests for Production, and as grounds for this Motion, say:

A.     On September 30, 2003, the Plaintiffs sent their First Requests for Production of Documents to Defendants (a copy of which is attached hereto as Exhibit A).

B.     On November 6, 2003, Defendants objected to these discovery requests and have failed and refused to answer (a copy of which is attached hereto as Exhibit B).

C.     On November 12, 2003, counsel for the Plaintiffs wrote counsel for Oldcastle a letter inquiring about Oldcastle providing better responses.  See Exhibit C attached hereto.

D.     On November 13, 2003, counsel for Oldcastle responded saying "these responses are most legitimate " (a copy of which is attached hereto as Exhibit D).   Therefore, it is clear that the Plaintiffs will be unable to resolve this discovery dispute and Court intervention requiring Oldcastle to respond to Plaintiff's discovery will unfortunately be required.

E.     The Interrogatories and Requests to which Oldcastle has not appropriately responded are quoted verbatim below.  Also quoted verbatim is Oldcastle's response.  Following the particular interrogatory or request, Plaintiffs state the rationale for compelling Oldcastle to respond.

**Interrogatory/Request Number:**

1.    **Please identify all persons who were involved in the negotiation for the purchase of the Opelika quarry from Hanson Aggregates Southeast, Inc.**

OLDCASTLE RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Frank Heisterkamp, Vice President of Development of Oldcastle Materials, was in charge of the negotiations of the Asset Purchase Agreement between Oldcastle Materials Southeast, Inc. and Hanson Aggregates Southeast, Inc., and is knowledgeable with respect thereto.

**REASON TO COMPEL:**
The first interrogatory seeks all persons involved in the negotiation for the purchase of the quarry. In essence, Oldcastle made specious objections and identified one person who was "knowledgeable with respect thereto." The question is clearly discoverable. The question seeks the names and identities of all persons who were involved in negotiation, and there is no basis to fail to respond to this interrogatory. No privilege applies, and Oldcastle's refusal to give this information is no more than an effort to delay discovery.

2.    **During a hearing before the Honorable Judge Walker, Oldcastle's attorney, Phillip Adams, stated in essence that Oldcastle intended to change the manner of operation of the quarry in Lee County. Please describe in detail every fact supporting Mr. Adams' statements and describe in detail all expected, anticipated, planned, or potential changes to the manner or method of operation of the Oldcastle quarry in Lee County (as distinguished from the manner and method of operation of the Lee County quarry by Hanson Aggregates Southeast, Inc.).**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Without waiving the foregoing general objections, Oldcastle responds as follows:

Without prejudicing Oldcastle's right to implement additional measures in the future which it may deem appropriate as its investigation progresses, Oldcastle states that it is in the process of undertaking the following actions:

- Utilizing earthen material generated by the present and future overburden stripping operation to construct new dust, noise, and visual impact abatement terms along and within the southern and western property lines of the site (surrounding the quarry and all associated production areas on the site). These terms will be approximately 25 to 30 feet high and will be emplaced and vegetated so that, to the extent reasonably feasible, they will generally blend with the natural conditions surrounding them. Oldcastle believes that the abatement of dust, noise, and visual aesthetic impact will be substantial.

- Utilizing earthen material from stripping to construct a specially-designed, supplemental noise and dust abatement berm inside of, and roughly parallel to the southern property line berm to provide additional dust and noise protection to the abutting Davis property to the south. Again, Oldcastle believes that the reduction in dust and noise will be substantial.

- Relocating a new and reconfigured stone crushing processing plant from the present location of such operations on the surface of the site to the west and north of the quarry to a location lying wholly inside the quarry itself. Oldcastle believes that this reconfiguration and relocation, together with the improved technology and control equipment of the new plant, will eliminate any significant adverse effects from dust and noise associated with the crushing and processing effects from dust and noise associated with the crushing and processing operations, and in conjunction with the terms described above will render these operations as clean and quiet as reasonably possible under the circumstances.

- Redesigning the quarry drilling patterns and blasting plans to minimize the rate of loading so that only the minimum amount of explosive is used to create the requisite volumes of broken rock during each blast. Oldcastle believes that this redesign will substantially reduce offsite impacts from ground and/or air vibration, will make the operations more cost efficient, and will permit the implementation of a vibration control program to ensure that all such vibrations are minimized to levels that Oldcastle believes should not generally be annoying or damaging to offsite property owners in the area.

- Designing a quarry-water management and aquifer recharge strategy that Oldcastle believes will return most, if not perhaps all, of the water pumped in connection with the quarry's operation to surface and subsurface drainage and aquifer(s).

## REASON TO COMPEL:

Oldcastle uses almost two pages to say essentially nothing. With due respect, Oldcastle's response gives no pertinent or meaningful information at all. There is no specific information given. There is no specific plan stating where any terms would be placed or exactly how high they will be. There is no information regarding upon what basis Oldcastle developed this plan, and no engineering information is provided whatsoever. There is no specific information relating to the amount of explosive to be used, and most importantly,

3

1992

Oldcastle gives no specifics regarding any alleged "quarry-water management and aqua for recharge strategy". In essence, Oldcastle's response is non-speak intended to appear to give information while at the same time giving no useful information whatsoever. There is no basis to fail to give a full and complete answer to the requested information, and no privilege exists. Plaintiffs note that in response to Oldcastle's Interrogatories and Requests for Production, which Plaintiffs have responded and are in the process of obtaining signatures on, virtually every Plaintiff, if not every Plaintiff, has noted a substantial increase in dust, noise, and blasting problems related to Oldcastle's operation of the quarry. Consequently, contrary to Oldcastle's so-called "belief" that they will abate noise, dust, etc., the contrary is true to this date. Failure to give this information to the Plaintiffs is, therefore, delaying Plaintiffs' discovery.

3.    **Please identify every person with knowledge of the manner of operation of the Hanson quarry after it was taken over by Oldcastle.**

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to the term "the Hanson quarry" to the extent that it implies that Oldcastle's purchase of the Opelika quarry from Hanson Aggregates Southeast and Oldcastle's subsequent operation thereof amounted to a mere continuation of the operations of Hanson Aggregates Southeast. Oldcastle further objects to this Interrogatory on the grounds that it is overbroad and vague and ambiguous. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows: Frank Heisterkamp, Morris Bishop, and Ted Reynolds have knowledge concerning the operation of the Opelika quarry by Oldcastle after July 13, 2003.

**REASON TO COMPEL:**

Again as before in interrogatory number 1, the Plaintiffs have properly asked to identify every person with knowledge of the manner of operation of the Hanson quarry after it was taken over by Oldcastle. Oldcastle's response is not responsive. Oldcastle identifies three persons with knowledge, but does not respond to whether these are the only persons with knowledge. Very clearly, the current Plant Manager, who is not identified, has knowledge, the various persons who are operating the plant since the purchase have knowledge and are not identified, Oldcastle's Environmental Manager has knowledge, and is not identified, and so forth. It is clear that Oldcastle has intentionally failed to give a full response to this interrogatory that seeks discoverable information. As before, Oldcastle's intent is clearly to delay Plaintiffs' discovery in violation of Alabama's discovery rules.

4

1993

5.  **Please produce all discharge monitoring reports, and all documents of any type or description in the possession or custody or control of Oldcastle that relates in any manner to the pumping of water from the pit at the Lee County quarry.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above.  Oldcastle further objects to this document request on the grounds that it is overbroad, vague and ambiguous and burdensome and oppressive in that it calls for the production of a large volume of cumulative documents.  Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all discharge monitoring reports of the Opelika quarry created after July 13, 2003 that are in its possession, custody or control.

**REASON TO COMPEL:**
The requested documents have not been produced to the Plaintiffs as of this date.  Oldcastle has an obligation to give these documents to the Plaintiffs and has failed to do so.

7.  **State the number of gallons of water discharged per day from the Oldcastle quarry pit for each day from the date Oldcastle assumed control of the quarry to the date that these interrogatories and requests for production are answered.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above.  Oldcastle further objects to this document request on the grounds that it is overbroad, and unduly burdensome and oppressive in that it requires Oldcastle to summarize voluminous records.  The information requested in this Interrogatory will be equally available to Plaintiffs from the discharge monitoring reports which are being produced to Plaintiffs.

**REASON TO COMPEL:**
As with number 5, Oldcastle has not produced the documents despite the fact that their interrogatory response said that it would.

8.  **Please produce the personnel files on every employee of Oldcastle at the Lee County quarry.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above.  Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.  Oldcastle further objects to this Request on the ground that

1394

producing the personnel files of its employees would violate the right of privacy of its employees as protected by the United States Constitution and the Constitution of the State of Alabama.

**REASON TO COMPEL:**

The Plaintiffs are entitled to the personnel files on the employees at Oldcastle for many reasons. First, they will identify persons with knowledge of the operation and persons with whom the Plaintiffs can speak regarding problems, plans, or intentions or Oldcastle and its operation in Lee County. Further, there is no privilege regarding personnel files. To the extent that a privilege exists of any type, it is with respect to a person's social security number, and Oldcastle's remedy is to simply black out any privileged information such as social security numbers. No other information would be protected and privileged from discovery, so Plaintiffs move this Honorable Court to compel a full response.

10. **Please produce a copy of the Joint Defense Agreement entered into between Oldcastle and Hanson as related in the Asset Purchase Agreement.**

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information. Finally, Oldcastle objects to this Request on the ground that it seeks information that is protected by the joint defense privilege.

**REASON TO COMPEL:**

At interrogatory 10, the Plaintiffs asked the Defendant to produce the Joint Defense Agreement. The Joint Defense Agreement, by the terms of the Purchase Agreement, appears to show that there may be some right of recission or other financial remuneration to Oldcastle in the event the quarry is enjoined by this Court. Question 11 therefore seeks information regarding what will happen in the event the Lee County quarry is enjoined in whole or in part. If there are any ramifications or remuneration due between Hanson and Oldcastle, as Plaintiffs believe there probably is, then that information will go to the credibility of various witnesses, and will effect the bias and prejudice of various witnesses who might testify at the trial of the case. The information is therefore calculated to lead to discoverable evidence. It is ridiculous for Oldcastle to assert that answering this question is unduly burdensome and oppressive as the negotiation documents between Hanson and Oldcastle, which are clearly in the possession of Oldcastle, will respond to this interrogatory.

11. **Does any other written document exist that relates to any right of indemnity, contribution, refund, recission, cancellation, or other modification of the Asset Purchase Agreement or any other document in the event that the Lee County Circuit Court enjoins the operation of the Lee County quarry? In particular, Plaintiffs are asking precisely what will happen in the event the Lee County quarry is closed or otherwise substantially enjoined from operation by the Circuit Court of Lee County. Are there or will there be any ramifications whatsoever to Hanson, or will any remuneration or other consideration of any type or description pass between Oldcastle and Hanson in the event the Plaintiffs prevail in this litigation and the quarry is enjoined in part or in whole?**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is compound, overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

**REASON TO COMPEL:**
It is clear that this request is a valid request by the Plaintiffs. No privilege protects this information. The question asked what will happen in the event that the Court enjoins the Lee County quarry operation. Nothing could be more relevant on the issue of whether the Court should enjoin the operation of the Lee County quarry. Further, if there is some arrangement between Oldcastle and Hanson relating to who bears the burden of loss in the event the Lee County Circuit Court enjoins the operation of the Lee County quarry, that fact certainly will effect the credibility of witnesses and the bias of any witnesses and/or parties who give testimony in the case. Therefore, for multiple reasons, this information is relevant and discoverable and is otherwise not subject to any privilege. As before, Oldcastle's objection should be overruled and seen for what it is–a mere delay tactic.

12. **Please produce all documents in your possession or subject to your control that show or from which can be determined the amount of materials sold by Defendant Oldcastle to its customers since assuming operation of the Lee County quarry.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not restricted to materials sold from the Opelika quarry, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that is seeks confidential and proprietary business information.

1395

**REASON TO COMPEL:**

Plaintiffs allege that Oldcastle is continuing an existing nuisance. The volume of business conducted by the quarry, the amount of aggregate sold, and the operations in general, are precisely that which are at issue in this litigation. Oldcastle's response that the information is not relevant and not calculated to lead to the discovery of admissible evidence is spurious. Oldcastle's further objection that the information is confidential and proprietary business information is also spurious inasmuch as this information must be reported to the Lee County Commission in payment of the Lee County mining and mineral tax. Further, there is no known Alabama law of privilege relating to this information, so that Oldcastle has an obligation to produce this information.

13.    **Please produce copies of all Lee County mining and mineral tax returns with respect to the Lee County quarry.**

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information.

**REASON TO COMPEL:**

The information is clearly public record and must be produced by Oldcastle. The fact that Plaintiffs can also obtain this information from the Lee County Commission is not a valid objection under clear Alabama law. See, e,g, e.g, *Ex parte Dorsey Trailers, Inc.*, 397 So.2d 98, 103-106 (Ala 1981)(A copy of which is attached hereto as Exhibit E.)

14.    **Please describe in detail all efforts or undertakings of any type or description considered "due diligence" with respect to the purchase of Hanson's Lee County quarry and operation.**

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Interrogatory on the ground that it seeks confidential and proprietary business information. Oldcastle further objects to this Interrogatory to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

8

1997

**REASON TO COMPEL:**
Plaintiffs allege that Oldcastle's continuance of a nuisance constitutes negligent operation of the quarry as well as wanton operation of the quarry justifying punitive damages to be imposed against Oldcastle. Therefore, nothing could be more relevant to Plaintiffs' case in chief as well as Defendant's defense than what it considered before purchasing the quarry. Oldcastle's response that the information is not relevant is ridiculous. Oldcastle's response that the information is not reasonably calculated to lead to the discovery of admissible evidence is ridiculous. Oldcastle's response that the information is confidential is also ridiculous because Oldcastle does not identify any alleged basis of confidentiality, and there is no basis under Alabama law. To the extent that Oldcastle objects to information protected by the attorney-client privilege or the attorney work-product privilege, under Alabama law, Oldcastle has the obligation to fully identify the document although it may not produce it pending further order of the Court.

15.    **Please produce all documents related in any manner to Oldcastle's "due diligence" efforts and undertakings with respect to the purchase of the Hanson Lee County Quarry. Without limiting the generality of the foregoing, please produce all documents related to: what was considered and what was investigated before Oldcastle purchased the quarry; why the quarry was purchased; who made the decision to purchase the quarry and what they based their decision upon; all written reports, internal memoranda, notes of any type or description, Minutes of Meetings of the Board of Directors, and any other written document dealing with the purchase of the Hanson Lee County Quarry; and all documents related to any steps taken to identify any problems or potential problems related to the quarry operation as well as steps taken or to be taken to minimize damage or alleged damages to surrounding landowners.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to the term "the Hanson Lee County Quarry" to the extent that it implies that Oldcastle's purchase of the Opelika quarry from Hanson Aggregates ?Southeast and Oldcastle's subsequent operation thereof amounted to a mere continuation of the operations of Hanson Aggregates Southeast. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

**REASON TO COMPEL:**
The reason to produce number 14 is also the same reason to produce number 15. This information goes directly to whether Oldcastle should be punished for continuing a known

9

1995

nuisance and for operating the quarry in a negligent and wanton manner knowingly in violation of many other parties' rights as well as by imposing an unreasonably unsafe burden on the citizens of Lee County. There is no basis to fail to produce the information requested, and Oldcastle offers none except spurious objections. A simple reading of the Complaint demonstrates the futility of this argument by Oldcastle.

16.    **Please produce all information known to Oldcastle in 2002 and/or 2003 in relation to the Opelika quarry. This would include, but is not limited to, the geology of the quarry and the surrounding area, the depth of the quarry at every year from 1996 to date, the number and location of sinkholes in 1999 and each year since 1999, the size of the cone of depression or zone of influence in 1999 and for each subsequent year, the written reports by Dr. Bob Cook or other consultants or in house geologist(s) at any time after 1999, and the underground water table levels from 1996 to date as well as the pumping amounts and damage (or potential damage) to surrounding properties.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory/Request on the grounds that inasmuch as the Interrogatory/Request required Oldcastle to produce "all information known to Oldcastle in 2002 and/or 2003 in relation to the Opelika quarry" and is not restricted to its operations at the quarry, it is overbroad, vague and ambiguous, unduly burdensome and oppressive, an seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

**REASON TO COMPEL:**
Plaintiffs ask in interrogatory number 16 what information Oldcastle knew in 2002 and/or 2003 in relation to the Opelika quarry. To object that this is burdensome is silly, as Oldcastle obviously began negotiation to purchase this quarry, at the latest, by the first few months of 2003, and would have based its decision upon information received and reviewed by it on 2002 operations. That information may have come from Hanson or from the County, or from other sources. The information that Oldcastle received with respect to the operation of the quarry and the other information requested goes directly to the question whether Oldcastle knowingly continued to operate a known nuisance and whether it continued to operate the known nuisance in a negligent and wanton manner. The information is clearly discoverable, and Oldcastle's objections to the contrary are not well founded. Again, Oldcastle objects on the basis of privilege, but identifies no privilege. Further, to the extent that any document might be privileged, Oldcastle has the obligation under Alabama law to produce a list of such documents in such manner that the Court can determine the privilege should Plaintiffs seek Court assistance in that regard.

10

1395

18.   Please produce all documents exchanged between Oldcastle or any officer, agent or employee thereof and ADEM or the U.S. EPA, including, without limitation, all air and/ or water applications and permits; all other applications and/or permits issued to Hanson and/or Oldcastle; all documents transferring any existing permits to Oldcastle; and any information relating to renewals, warnings, and/or violations from ADEM or the U.S. EPA.

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents set forth in this Request which are in its possession, custody or control:

**REASON TO COMPEL:**

Oldcastle's response again is frivolous. The information that Oldcastle sent to or received from ADEM or the U.S. Environmental Protection Agency is clearly discoverable and not privileged. Oldcastle's purported response that it will produce all non-privileged documents does not answer this question for two reasons. First, it did not produce any documents. Second, it has an obligation to produce a list of all documents, whether privileged or otherwise, and to produce the non-privileged documents. The privileged, or not, of the remaining documents can then be tested by the Plaintiffs. However, without Oldcastle producing a list of the allegedly privileged documents, Plaintiffs are unable to obtain the complete discovery to which they are entitled.

19.   Please produce copies of all complaints to Hanson or to Oldcastle, together with every document dealing in any manner with such complaint(s) and whatever corrective measures were taken or will be taken (including changes in the method of operation of the quarry) with respect to every such complaint.

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the term "complaints" is not defined or limited in scope, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the grounds that insofar as the Request is not limited to complains received by Oldcastle concerning its operation of the Opelika quarry, it is likewise overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of

documents or information protected by the attorney-client privilege or the attorney work-product doctrine. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all complaints it has received concerning its operation of the Opelika quarry after July 13, 2003, as well as any response Oldcastle made to such complaints.

**REASON TO COMPEL:**
Plaintiffs request interrogatory 19 all information that Oldcastle would have in its possession or subject to its control concerning complaints to either Hanson or Oldcastle. When Oldcastle was negotiating to purchase the quarry, it doubtless was aware of the fact of the lawsuit, and likewise, without reasonable doubt, its officers inquired into the existence of complaints as they existed under Hanson. Plaintiffs allege that Oldcastle is continuing a nuisance in a negligent and wanton manner justifying a position of punitive damages. What Oldcastle knew about Hanson's operations and the complaints of the surrounding landowners prior to its assumption of the quarry, is thus relevant and clearly calculated to lead to discoverable evidence. Oldcastle's statement that it will produce complaints after it began operation is, therefore, only partially responsive. Additionally, as before, Oldcastle has said that it will not produce attorney-client privileged documents, but Oldcastle has not produced an appropriate list of documents for which it claims privileged. For reasons stated above, those documents must be produced, or a list produced.

20. **Please produce all documents in your possession or subject to your control that relate in any way to any pending lawsuit(s) against Hanson at the time of the acquisition of the Lee County Quarry by Oldcastle. This would include documents indicating Oldcastle's knowledge of the suit(s), documents on Oldcastle's responsibility for such suit(s) or indemnity by Hanson to Oldcastle for such suit(s), and any other documents relating to the resolution of any problems or complaints alleged by any of the Plaintiffs.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

**REASON TO COMPEL:**
As before, Plaintiffs are alleging that Oldcastle knowingly purchased a nuisance and knowingly and intentionally continued operating the quarry in a negligent and wanton

2001

manner justifying imposition of compensatory and punitive damages. Therefore, all documents that it would have had in its possession or subject to your control relating to its knowledge of any lawsuit against Hanson is relevant on the question of what Oldcastle knew and what Oldcastle should have done or did do regarding the complaints in the Hanson case. Therefore, this information must be produced. As before, Oldcastle has not disclosed a list of allegedly privileged documents, and must therefore produce the documents.

21.     **Please produce all documents regarding Oldcastle's knowledge of any complaint by any person or governmental agency regarding dust or fugitive dust emissions. This would include dust from blasting, operations and/or equipment and traffic. Without limitation, this request includes all documents related to the quantity and composition of such dust or fugitive dust emissions, including silica content and/or silica notification to employees, including steps taken to identify the problem and minimize such problems.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not limited to complaints received by Oldcastle concerning its operation of the Opelika quarry, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all complaints it has received concerning dust or fugitive dust emissions after July 13, 2003, as well as any response Oldcastle made to such complaints.

**REASON TO COMPEL:**
For the reasons stated in response to numbers 16 through 20, Oldcastle has an obligation to produce these clearly relevant and discoverable documents.

22.    Please produce all documents regarding state or federal health/safety laws or regulations with respect to Silica contained within dust or any by-product of the Lee County quarry operation. Without limitation, this requests any MSDS used or issued by Oldcastle with respect to its Lee County quarry.

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control concerning any silica contained within dust or any byproduct of the Opelika quarry after July 13, 2003.

**REASON TO COMPEL:**
Oldcastle objects to what is clearly a relevant and discoverable request. Plaintiffs complain that their health and safety is injured by Oldcastle's operation, which operation throws silica-containing dust into the air and thus into the Plaintiffs' lungs and into their homes. What Oldcastle knew about federal health and safety laws and regulations with respect to silica dust is, therefore, relevant to the question whether it negligently or wantonly operates its quarry. Further, what it knows about silica from its operation is relevant to the reasonableness of its operation and any response to the Hanson lawsuit. For Oldcastle to object is therefore spurious. Oldcastle's further statement that it will produce non-privileged documents is invalid for two reasons. First, Oldcastle produced no documents. Second, Oldcastle does not list any allegedly privileged documents so that the Plaintiffs can evaluate the reasonableness of the claim and contest the same.

23.    Please produce all documents relating to the removal from operation or disabling of any of Hanson's (or now Oldcastle's) Dust Suppression System(s), whether for 24 hours or any longer period. This would also include reports, inspections, correspondence and/or documents relating to visible emission inspections, reports and/or repairs, including warnings or correspondence from or to ADEM.

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not limited to the operation of any dust suppression system by Oldcastle during its operation of the Opelika quarry, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

14

2003

Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to any removal from operation of its dust suppression system for 24 hours or greater after July 13, 2003.

**REASON TO COMPEL:**
ADEM's permit requires Oldcastle to keep its dust suppression system in operation at all times. Therefore, the request to produce all documents respecting a shutdown of the dust suppression system for 24 hours or longer is clearly relevant and material, especially in light of the complaints of noise and dust pollution. All of the information requested is relevant. Oldcastle's statement that it will produce "non-privileged and responsive documents" is invalid for two reasons. First, Oldcastle produced no documents. Second, Oldcastle has not produced a list of the allegedly privileged documents so that Plaintiffs can challenge the basis for the claim of privilege, as related in prior interrogatory answers.

24.  **Please produce all documents related to when any and every piece of new equipment or machinery was or will be installed or became or will become operational at the Lee County quarry, including any equipment in the plant or production process (including vehicles of any type or description), and the dates when old crushers and/or conveyers were replaced or will be replaced by Oldcastle.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not restricted to equipment or machinery installed or planned to be installed by Oldcastle (as opposed to installed by Hanson), it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the grounds that insofar as the Request is not restricted to equipment or machinery the operation of which would bear on the allegations set forth in the Fourth Amended and Restated Complaint, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to the installation or planned installation of any piece of new equipment or machinery by Oldcastle at the Opelika quarry after July 13, 2003, to the extent such piece of new equipment or machinery bears on the allegations set forth in the Fourth Amended and Restated Complaint.

2004

**REASON TO COMPEL:**

Oldcastle has claimed in front of this Court that it is changing the manner of its operation. Plaintiffs have asked in request number 24 for Oldcastle to produce a list of all equipment and machinery installed or that will become operational at the Lee County quarry. This directly effects Oldcastle's claim that it is changing the manner of operation of the quarry. To therefore object on the basis that it is unduly burdensome and oppressive is silly. To object on the basis that the information is not relevant and not calculated to lead to the discovery of admissible evidence is spurious. To claim that the request is not restricted to the machinery or equipment that would bear on the allegations of the Amended Complaint is also an invalid response under *Ex parte Dorsey Trailers* as noted above. Finally, Oldcastle has produced no documents despite its statement that it will produce documents, and it is similarly, as many times noted above, produced no list of allegedly privileged documents so that the Plaintiffs may challenge such claim of privilege.

25. **Please produce all documents related to any "in house" inspections, including environmental inspections, dust suppression inspections, damage control and/or risk management inspections, and any other type of inspection at the Lee County Quarry.**

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is vague and ambiguous, overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control constituting reports of any inspection concerning the operations and conditions of the Opelika quarry after July 13, 2003, to the extent such inspection bears on the allegations set forth in the Fourth Amended and Restated Complaint.

**REASON TO COMPEL:**

In request number 25, Plaintiffs ask for documents related to in-house inspections of environmental and dust suppression problems. Nothing could be more relevant to a claim of nuisance by dust and aggravation of existing medical conditions, therefore. Oldcastle's objection that the request is overbroad is ridiculous, as it only relates to one single quarry in Lee County, Alabama, and it has only had that quarry for six months in year 2003. To object that the information is not calculated to lead to the discovery of admissible evidence is spurious. To object on the basis of attorney-client privilege is also erroneous in that Oldcastle has, again, not given a list of the documents that it alleges to be privileged.

16

2008

Finally, Oldcastle has not produced any of the documents even though it says that it will produce responsive documents. Even were it to do so, Oldcastle's response is required to state whether that is all of the documents, and if not, to list any document withheld.

26.   **Please produce all documents related to any overburden piles on the south side of the quarry at the Lee County quarry (or anywhere else on the quarry property). This request includes, without limiting the generality of the foregoing request, all documents relating to the location, size and character of such overburden piles from 1996 to present including maintenance, reclamation from 1996 to the present, flooding and fugitive dust emissions, and any plans or intentions (firm or merely in discussion stages) relating to such overburden piles.**

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that insofar as the Request seeks documents from Oldcastle concerning the overburden piles from 1996 to present and is not restricted to Oldcastle's maintenance of the overburden piles after July 13, 2003, the Request seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to its maintenance of any overburden piles at the Opelika quarry after July 13, 2003.

**REASON TO COMPEL:**

Request number 26 asks for all documents related to the overburden piles on the south side of the quarry. Those overburden piles have, under Hanson, and again under Oldcastle, continued to be a severe source of pollution to the Plaintiffs and a source of trespassing fugitive dust and mud emissions from Oldcastle's quarry. Therefore, what Oldcastle did or did not do to change, reshape, stabilize, reclaim, etc., those piles is therefore very relevant and very discoverable. Oldcastle's response that the information is not calculated to lead to discoverable evidence is spurious. Oldcastle's statement that it will produce non-privileged and responsive documents is erroneous for two reasons. First, no documents were produced, and second, Oldcastle has not given a list of allegedly privileged documents from which Plaintiffs can challenge the claim of privilege.

2000

27.  **Please produce your copy of the Environmental memo from Nigel Wills and his recommendations, as well as all documents relating to it or to his recommendations in any manner.**

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it does not sufficiently identify the "Environmental memo from Nigel Wills" by date, recipient or otherwise with sufficient particularity so as to allow Oldcastle to determine which document or documents is being requested. Oldcastle further objects to this Request on the ground that it assumes facts not in evidence, namely that Oldcastle ever received the document described in the Request. Oldcastle further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

The only such document is in Oldcastle's possession, custody or control is an April 28, 2000, memo from Nigel Wills to Tom Bugenhagen, which was marked as an exhibit to the deposition of Mr. Wills and provided to Oldcastle's counsel in the course of this litigation.

**REASON TO COMPEL:**

Plaintiffs have requested Oldcastle's copy of an environmental memo from Nigel Wills (of Hanson) and any documents relating to Oldcastle's evaluation of that memorandum. It is difficult to believe that Oldcastle never obtained a copy of that memorandum. Even if it never obtained it originally, it now has a copy of that document, and any response that it plans to make or any response that it has already undertaken a response to the statements in that memorandum, are discoverable and relevant to this case. Oldcastle's response is therefore incomplete because it does not indicate what it did or failed to do as a result of the knowledge of those things stated in that memorandum.

28.  **Please produce all documents relating to any and all steps taken (or to be taken) to implement any of the changes mentioned in Nigel Wells' environmental memo and/or to correct any known or alleged problems at the Lee County quarry.**

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it does not sufficiently identify "Nigel Wells' environmental memo" by date, recipient or otherwise with sufficient particularity so as to allow Oldcastle to determine which document is being referred to. Oldcastle further objects to this Request on the ground that it assumes facts not in evidence, namely that Oldcastle ever received the document described in the

18

Request. Oldcastle further objects to this Request on the ground that insofar as it requests documents "relating to any and all steps take (or to be take) . . . to correct any known or alleged problems at the Lee County quarry" it is vague and ambiguous and overbroad. Oldcastle further objects to this Request on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

See response to the previous Request. Oldcastle further states that, as set forth in its response to Interrogatory Number 2, Oldcastle is in the process of implementing a number of changes at the Opelika quarry. In planning and implementing these changes, Oldcastle has taken into account and/or will take into account a range of available information, which may or may not include, but in any event is not limited to, the April 28, 2000, memo from Nigel Wills to Tom Bugenhagen, which Oldcastle's counsel received in the course of this litigation.

**REASON TO COMPEL:**
Plaintiffs incorporate by reference the reason to compel for request number 27.

29. **Please produce all documents relating to the location, installation and records regarding the any monitoring wells installed at any time near the quarry, and in particular in 2000 and 2001 on or around the Hanson property. This would include water levels, drill logs, water tables and any pumping records and the entire "study" performed by Hanson (possibly Bates #2938), as well as any study undertaken by or for Oldcastle.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to any data collected after July 13, 2003, from any monitoring wells installed at or near the Opelika quarry.

**REASON TO COMPEL:**
Request number 29 seeks information that Oldcastle would have obtained regarding monitoring wells installed in and around the quarry prior to its purchase of the quarry, as well as since its purchase of the quarry. That information is clearly relevant on the question of