## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **KEN and NAOMI SCHWIEKER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:06-CV-838** |
| | ) | |
| **OLDCASTLE MATERIALS SOUTHEAST, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFFS' EVIDENTIARY SUBMISSION IN
### SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs hereby file the following exhibits in support of the Motion for Partial Summary Judgment e-filed on the evening of September 6, 2007. These exhibits were too large to e-file on September 6, but per discussion with the Clerk's Office, the exhibits were split into smaller electronic sizes so that they are now capable of submission electronically.

The exhibits electronically filed herewith are:

P MPSJ Exh 3 Vol 8

P MPSJ Exh 3 Vol 9 part 1

P MPSJ Exh 3 Vol 9 part 2

P MPSJ Exh 3 Vol 9 part 3

P MPSJ Exh 3 Vol 10 part 1

P MPSJ Exh 3 Vol 10 part 2

P MPSJ Exh 3 Vol 10 part 3

P MPSJ Exh 3 Vol 10 part 4

P MPSJ Exh 3 Vol 11 part 1

P MPSJ Exh 3 Vol 12 part 1

P MPSJ Exh 3 Vol 12 part 2

P MPSJ Exh 3 Vol 12 part 3

P MPSJ Exh 4 Vol 14 part 1

P MPSJ Exh 4 Vol 14 part 2

P MPSJ Exh 4 Vol 14 part 3

P MPSJ Exh 4 Vol 14 part 4

P MPSJ Exh 4 Vol 14 part 5

P MPSJ Exh 4 Vol 14 part 6

P MPSJ Exh 4 Vol 15 part 1

P MPSJ Exh 4 Vol 15 part 2

P MPSJ Exh 4 Vol 15 part 3

P MPSJ Exh 4 Vol 15 part 4

P MPSJ Exh 4 Vol 15 part 5

P MPSJ Exh 4 Vol 15 part 6

P MPSJ Exh 4 Vol 15 part 7

Respectfully submitted this the 7th day of September, 2007.

s/ C. E. Vercelli, Jr.

**CHARLES E. VERCELLI, JR.** (VER003)
One of the Attorneys for Plaintiffs

**OF COUNSEL:**

LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
TEL:   (334) 821-7100
FAX:   (334) 821-7101
jsprayberry-spraylaw@charter.net

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
TEL:   (334) 834-8805
FAX:   (334) 834-8807
cvercelli@vercelli-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of September, 2007, I electronically filed the foregoing with the Clerk of the United States District Court for the Middle District of Alabama, using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Phillip E. Adams, Jr.
Rick Davidson
Matthew W. White
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

I also hereby certify that a copy of the foregoing will be served upon:

W. F. Horsley
SAMSON & DENSON, LLP
P. O. Box 2345
Opelika, AL 36803-2345

counsel for the landowners, by placing a copy of the same in the United States Mail, postage prepaid and properly addressed on the 7th day of September, 2007.

/s/  C. E. Vercelli, Jr.
Of Counsel

500-06\P MPSJ Evid Sub.1.wpd

3

*Circuit Court, No.* CV02-85 *Supreme Court, No.* 1040857

# APPEAL

TO

# Supreme Court of Alabama

FROM

MIKE & DONNA DAVIS ETAL–OLDCASTLE MATERIALS SOUTHEAST, INC & HANSON
AGGREGATES SOUTHEAST, INC.                                    *Appellant*

*vs.*

HANSON AGGREGATES SOUTHEAST, INC ETAL. & CITY OF OPELIKA, CITY OF
OPELIKA UTILITIES BOARD ETAL                                 *Appellee*

what Oldcastle knew, or what Oldcastle failed to know (unreasonably in Plaintiffs' judgment) about the operation prior to assuming the operation. It also effects the reasonableness of Hanson's current operation which includes pumping of massive amounts of water from the underground aquifers which therefore continues to cause sinkhole collapse throughout the region. For Oldcastle to object on the basis of relevance and that the information is not calculated to lead to the discovery of admissible evidence is therefore spurious. Oldcastle's objection that the information is overbroad and burdensome is, under *Ex parte Dorsey Trailers,* irrelevant. Moreover, Oldcastle has not shown how the documents are overbroad or how they are burdensome and oppressive to produce. Finally, Oldcastle did not produce any documents though it said that it would. Moreover, Oldcastle's response is that it would produce documents collected after July 13, 2003, whereas Plaintiff's request seeks information prior to that time if in the possession or custody or control of Oldcastle.

30.   **Please produce all pumping records in your possession or subject to your control. This would include pumping or discharge records for the quarry from 1996 to the present, if available, together with all documents related to any calculations of storage capacity for water on the Gilmer property and the Young property. This would include all DMRs (Discharge Monitoring Reports) filed by Opelika Materials or Hanson or Oldcastle with ADEM, applications to ADEM, permits from ADEM and all documents to or from ADEM by Oldcastle, Hanson, Opelika Materials or their agents and/or engineers; warning letters, notices, violations, notice of potential violations or similar documents to or from ADEM. Note that this request includes, but is not limited to documents and information relating to how your internal pumping discharge records were calculated, including the actual calculations themselves.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to pumping and discharge by Oldcastle at the Opelika quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in the Request that relate to its pumping of water from Opelika quarry after July 13, 2003.

**REASON TO COMPEL:**
In request number 30, Plaintiffs are seeking pumping record and other information that would allow Plaintiffs to calculate and understand and determine the manner in which Oldcastle calculates its pumping of water from the underground aquifers. Pumping from the underground aquifers has, as the Complaint alleges, caused the collapse of numerous

2003

sinkholes in the area, the collapse of roads in the area, the drying up of Spring Villa, and the drying up of Little Uchee Creek. This information is therefore clearly relevant, discoverable, and calculated to lead to the discovery of admissible evidence. What Oldcastle knew prior to its assumption of the quarry in 2003, is also relevant on the question whether Oldcastle's continued operation of the quarry constitutes a negligent and/or wanton operation and whether it should be subjected to punitive damages as alleged by the Plaintiffs. To object, therefore, that the information is not relevant, not calculated to lead to discoverable evidence, and burdensome and oppressive is therefore a spurious objection. Moreover, Oldcastle states that it would produce non-privileged and responsive documents, but produced none. Moreover, Oldcastle stated that it will produce the documents after July 13, but has produced none. Finally, Plaintiffs demand all such documents in its possession or subject to its control that relate to any pre-July 13, 2003, information in its possession or subject to its control, as well as a complete list of all allegedly privileged documents as noted elsewhere in this Motion to Compel.

32.   **Please produce all documents given to or received from Dr. Robert Cook or Mr. Patterson including, without limitation, (a) the 1999 Exploration and Evaluation of Aggregate Reserves, Opelika Project and (b) the 2000 Exploration and Evaluation of Aggregate Reserves, Opelika-Young Project.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

**REASON TO COMPEL:**
Request number 32 seeks any information received by Oldcastle from Dr. Robert Cook (one of Hanson's experts, and prominent geologist in the area), or Mr. Patterson, regarding 1999 exploration and evaluation of aggregate reserves and 2000 exploration and evaluation of aggregate reserves on the quarry site. This information was doubtless obtained by Oldcastle prior to its assumption of the quarry during its due diligence effort. To object, therefore, that the information is not relevant, not calculated to lead to discoverable evidence, and burdensome to produce is a spurious objection. The information is clearly relevant and will go to the issue, at least in part, whether Hanson should be punished for its continued operation of a known nuisance that causes substantial and serious damages to many members of the public as well as all of the Plaintiffs.

21

33.   **Please produce all documents related to the dewatering or potential dewatering of the areas in and around the Lee County quarry. This would include, without limitation, the first notice to Oldcastle that the Lee County Quarry operation was dewatering or was alleged to be dewatering the surrounding area, the zone of influence of such dewatering, steps taken to identify the zone of influence, and steps taken to minimize or correct the alleged problems or damage.**

OLDCASTLE'S RESPONSE:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the grounds that it calls for the production of expert opinions, and is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any dewatering or potential dewatering of the areas in and around the Opelika quarry caused by Oldcastle's operation of the quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request that are related to any dewatering or potential dewatering of the areas in and around the Opelika quarry caused by Oldcastle's operation of the Opelika quarry after July 13, 2003.

**REASON TO COMPEL:**

Plaintiffs' Complaint as amended against Oldcastle clearly claims that Oldcastle's operation by dewatering the ground is continuing to cause sinkhole collapse and continued dewatering of Spring Villa and Little Uchee Creek. Request 33 requests all documents relating to dewatering and potential dewatering of the areas around the quarry. Nothing could be more relevant and more discoverable, therefore. Oldcastle's objection is absurd. Oldcastle also indicates that it will produce all "non-privileged and responsive documents" for the time period after July 13, 2003. Plaintiffs are entitled to know what Oldcastle knew prior to July 13, and therefore, a full response is required. Moreover, to the extent that any documents are not produced under a claim of privilege, Oldcastle has an obligation under Alabama law to produce a detailed log regarding any such claims of privilege.

2011

34.  **Describe in detail whether Oldcastle believes that its continued pumping of water from
the quarry pit will continue dewatering the properties around the Lee County quarry.
If your contention is that there is no dewatering effect, please describe in detail all bases
for such contentions.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle
further objects to this Interrogatory on the grounds that it calls for an expert opinion,
and it is therefore premature, as the Court's September 29, 2003 Scheduling Order
does not require Oldcastle to identify its expert witnesses until January 27, 2004.
Notwithstanding and without waiving the foregoing general and specific objections,
Oldcastle will identify its experts and produce expert discovery at a time and place
that is mutually agreeable to the parties.

**REASON TO COMPEL:**
Interrogatory number 34 asks Oldcastle to answer a contention with respect to the very heart
of this lawsuit.  Plaintiffs have alleged that the continued pumping of water from the quarry
pit will continue to dewater properties and thus to continue sinkhole collapse, to continue the
dewatering of the Spring Villa spring, and to continue the dewatering and collapse of Little
Uchee Creek. It is a proper contention interrogatory under Alabama Rule of Civil Procedure
33 and 34, and Oldcastle has no basis to object thereto. Oldcastle can always supplement its
response in the event that its experts give it additional information. Plaintiffs are entitled to
know now what Oldcastle knew at the time that it assumed the quarry and what it believed
at the time that it assumed the quarry, which information will bear directly on the question
whether it should be punished for knowingly continuing a substantial nuisance to the
Plaintiffs.

35.  **Please produce all documents relating in any way to the size, scope, duration, or effect
of a "cone of depression" or "zone of influence" of the dewatering caused by pumping
water from the quarry pit to outfall 1.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle
further objects to this Request on the ground that the terms "cone of depression,"
"zone of influence" and "outfall 1" are not defined, and the Request is therefore
vague and ambiguous. Oldcastle further objects to this Request on the grounds that
insofar as it is not restricted to any "cone of depression" or "zone of influence" –
however those terms may be defined – caused by pumping water from the quarry pit
by Oldcastle after July 13, 2003, it is overbroad, unduly burdensome and oppressive,
and seeks information that is not relevant to the subject matter of this action and is
not reasonably calculated to led to the discovery of admissible evidence. Oldcastle
further objects to this Request on the ground that it calls for an expert opinion, and
it is therefore premature, as the Court's September 29, 2003 Scheduling Order does

not required Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle will identify its experts and produce expert discovery at a time and place that is mutually agreeable to the parties.

**REASON TO COMPEL:**
Request 35 seeks documents relating to the size of the "zone of influence or cone of depression" of the dewatering clause by pumping from the quarry. It has already been established in this Motion to Compel that this information goes to the very heart of Plaintiffs' claim. For Oldcastle to object is, therefore, spurious. Moreover, Plaintiffs incorporate by reference its reason to compel in response to request number 34.

36.    **Please produce all documents relating to the size and depth of the quarry, including the surface area of the quarry at any time on or before the date of acquisition of the quarry in July of 2003.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to the size and depth of the quarry as of July 13, 2003 and thereafter.

**REASON TO COMPEL:**
Plaintiffs allege that Oldcastle is continuing a nuisance. The size of the quarry has expanded considerably since Oldcastle began operation in July of 2003. Plaintiffs have asked for information relating to the size of the quarry. Oldcastle has indicated that it will produce non-privilege and responsive documents, but has produced none. Further, Oldcastle has an obligation to produce a log of any documents for which it claims are privileged.

38.    **Please produce all documents regarding any well inventory or spring inventory including related documents showing interviews with homeowners, depths of wells, location of wells and springs and whether the wells or springs were dry or had water.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

**REASON TO COMPEL:**
Oldcastle has produced no documents. Moreover, Oldcastle has an obligation to produce a detailed log of any documents for which it claims are privileged.

39. **Please produce all documents reflecting Oldcastle's knowledge of the dewatering at Spring Villa and the Little Uchee Creek (whether or not you contend such dewatering was caused by or in part by Hanson and/or Oldcastle). This would include, but is not to be limited to, all correspondence, investigations, inspections and documents to or from government agencies regarding dewatering of Spring Villa and/or the Little Uchee Creek areas.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it assumes facts not in evidence, namely that any dewatering at Spring Villa and the Little Uchee Creek has occurred. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any alleged dewatering at Spring Villa and the Little Uchee Creek caused or contributed to by Oldcastle's operation of the quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to t6he discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it calls for an expert opinion, and it is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged documents in its possession, custody or control concerning its knowledge of whether or not its operations at the Opelika quarry after July 13, 2003, is causing any dewatering at Spring Villa and the Little Uchee Creek. Oldcastle further responds that it will identify its experts and produce expert discovery related to this Request at a time and place that is mutually agreeable to the parties.

**REASON TO COMPEL:**
As stated above, the dewatering of Spring Villa and Little Uchee Creek is one of Plaintiffs' largest claims in the case. To object that this information is not relevant is therefore absurd. To object that the information requested (all documents reflecting Oldcastle's knowledge of the dewatering) is absurd. There is no basis for privilege for these documents, and were there a basis, Oldcastle still has the obligation to produce a detailed log of any such documents for which it claims privilege. The information requested also seeks information and documents in Oldcastle's knowledge or subject to its control that pre-dates the date that it assumed the quarry on July 13, 2003, which information bears directly on the question whether it

25

negligently and wantonly continued the operation in a negligent and wanton manner and whether it should be punished by punitive damages imposed by the jury.

**40.    Please produce all documents regarding any sinkholes in and around the Lee County quarry, including, without limitation, all documents regarding Oldcastle's first knowledge of sinkholes, steps taken to identify the problem or potential problem, and any steps to be taken, already taken, or planned to be taken to minimize sinkhole formation in the future.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any alleged formation of sinkholes caused or contributed to by Oldcastle's operations at the Opelika quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it calls for an expert opinion, and it is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged documents in its possession, custody or control concerning its knowledge of whether or not its operations at the Opelika quarry after July 13, 2003 is causing any sinkholes in and around the Opelika quarry. Oldcastle further responds that it will identify its experts and produce expert discovery related to this Request at a time and place that is mutually agreeable to the parties.

**REASON TO COMPEL:**
Request number 40 asks Oldcastle to produce all documents regarding its first knowledge of sinkholes as well as steps taken to identify the problem or potential problem, etc. Very clearly, that information has nothing to do with the experts. Yet, Oldcastle objects that it does not have to give expert information at this time. The information requested is not information obtained or developed by experts. Plaintiffs have the right to know what Oldcastle knew and when regarding dewatering and sinkhole development in the area as well as problems related to sinkholes and efforts to be taken to minimize sinkhole formation in the future. Oldcastle's objection is again spurious.

**41.    Please produce all documents regarding any pre-blast inspections done for Oldcastle.**

OLDCASTLE'S RESPONSE:

2015

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

**REASON TO COMPEL:**
Oldcastle states that it will produce non-privileged and responsive documents relating to pre-blast inspections done for Oldcastle. No documents were produced, and even if any would have been produced, Oldcastle still has an obligation to produce a list of any allegedly privileged documents so the Plaintiffs can challenge the validity of any such claim.

42.    **Please produce all documents and information relating to Oldcastle's first notice that blasting had caused, or was causing, or was allegedly causing damage to any property owner in the area, including all steps taken to identify any problem or alleged problem and any steps taken to minimize or correct any such alleged problems or damage.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any alleged damage caused by blasting by Oldcastle at the Opelika quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all complaints it has received concerning whether its blasting at the Opelika quarry after July 13, 2003, has caused, or was causing, or was allegedly causing damage to any property owner in the area, as well as any response Oldcastle made to such complaints.

**REASON TO COMPEL:**
Plaintiffs have clearly alleged in their Amended Complaint against Oldcastle that Oldcastle knew or should have known that the blasting from the quarry was causing damages to the homeowners in the area. The request seeks such information in the possession or subject to the control of Oldcastle, and further asks for information relating to all steps taken to identify any problems and any steps taken to minimize or correct any such alleged problems or damage. Oldcastle's objection that the information is not relevant, not calculated to lead to the discovery of admissible evidence, and overbroad is therefore, again, absurd. Oldcastle's gratuitous statement that it will produce information received after July 13, 2003, is also invalid because it has the obligation to give Plaintiffs all information responsive to this request which will bear on whether Oldcastle should be punished for its continued operation of the quarry knowing of the damages caused to the Plaintiffs by the operation of Hanson

and, thus, by its continued operation of the quarry. Under *Ex parte Dorsey Trailers*, Oldcastle cannot make the determination whether the information requested will be useful to the Plaintiffs. Plaintiffs have the right to the information so long as it is calculated to lead to discoverable evidence, which it is.

**43.    Please produce all aerial photos of the quarry from 1996 to the present.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

**REASON TO COMPEL:**
Plaintiffs want all aerial photographs that Oldcastle has relating to the quarry. Oldcastle's statement that it will produce the non-privileged documents is ridiculous. These documents clearly cannot be privileged. Oldcastle has, further, produced no documents.

**44.    Please produce all documents regarding other regulatory filings or information not specifically requested above.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that the term "other regulatory filings or information" is not defined and the Request does not otherwise describe the document or documents requested with sufficient particularity to allow Oldcastle to determine which document or documents are being requested. The Request is therefore vague and ambiguous. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

**REASON TO COMPEL:**
In request number 44, Plaintiffs seek any other "regulatory filings or information not specifically requested above". It is clear from the context of this question that the Plaintiffs are seeking any other documents provided to any governmental agency. For Oldcastle to object that the request is vague and ambiguous is therefore not well taken. Moreover, very clearly, the information is relevant as the manner in which Oldcastle operates the quarry, and whether the quarry is operated within the limits of its permit, is relevant. Moreover, there may be other regulatory agencies other than ADEM and USEPA to which Oldcastle has reported, and if there is, the Plaintiffs are entitled to know about such information.

45.  **Please produce all documents exchanged with Dyno Nobel or any other blasting company relating to the Opelika/Lee County quarry.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

**REASON TO COMPEL:**
Oldcastle states that it will produce non-privileged and responsive documents, but produced none. Moreover, if any documents are withheld on the claim of privilege (and none clearly could possibly attach), then Oldcastle has an obligation to give Plaintiffs a list of any such documents.

46.  **Please produce all business licenses or permits of any type and description obtained or required by any governmental agency.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all business licenses and permits concerning its operations at the Opelika quarry that bear on the allegations set forth in the Fourth Amended and Restated Complaint.

**REASON TO COMPEL:**
Oldcastle has stated it will produce the documents requested but has produced no such documents.

47.  **Please produce all OSHA and/or MSHA inspections or other documents exchanged by and between Oldcastle and OSHA and/or MSHA.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the allegations set forth in the Fourth Amended and Restated Complaint do not pertain to worker health and

29

safety issues, the Request is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all OSHA and/or MSHA inspections and other documents exchanged by and between Oldcastle and OSHA and/or MSHA that bear on the allegations set forth in the Fourth Amended and Restated Complaint.

**REASON TO COMPEL:**
At request number 47, Plaintiffs asked for all OSHA and MSHA inspections and other documents exchanged between Oldcastle and OSHA and/or MSHA. Oldcastle's response that it will produce any such documents exchanged between Oldcastle and OSHA and/or MSHA that "bear on the allegations set forth in the Fourth Amended and Restated Complaint" is an invalid response under *Ex parte Dorsey Trailers*. Oldcastle has the obligation to give all such documents to the Plaintiffs whether or not in Oldcastle's opinion it bears on any allegation of the Complaint. This is clearly discoverable evidence.

48.  **Please produce all personnel files on all of Oldcastle's Lee County quarry foremen and Plant Managers.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that producing the personnel files of its employees would violate the right of privacy of its employees as protected by the United States Constitution and the Constitution of the State of Alabama.

**REASON TO COMPEL:**
Plaintiffs seek information regarding personnel files on the quarry foremen and plant managers so that Plaintiffs may depose the same and otherwise obtain information relating to the manner in which Oldcastle has trained its supervisory personnel. Plaintiffs have alleged that the quarry is operated in a negligent and wanton manner. Failure to properly train its managers and supervisors (foremen and plant managers) would clearly bear on those allegations. Therefore, the information is relevant and discoverable as calculated to lead to discoverable evidence. Oldcastle's further objection that producing the information would violate the employee's rights of privacy is also unfounded because Oldcastle has not stated any alleged privilege or any particular constitutional provision protecting such information from discovery. Further, to the extent any information within those files is clearly privileged,

30

that information can be redacted.  Moreover, any information withheld should be provided to the Plaintiffs in a log so that the Plaintiffs can contest the validity of any claims of privilege.

49.   **Please produce all documents relating to the hours worked by any and every Oldcastle employee of the Lee County Quarry from the moment Oldcastle assumed control of the quarry operation.**

OLDCASTLE'S RESPONSE:
Oldcastle hereby incorporates the general objections set forth above.  Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

**REASON TO COMPEL:**
Plaintiffs have alleged that the operation of the quarry is a nuisance.  The quarry is being operated longer hours than when Hanson had it.  The quarry is creating more problems for the homeowners in the area and is thus a bigger nuisance now than when Hanson had it. Therefore, the hours that the employees work will clearly demonstrate Plaintiffs' claim that the quarry is becoming a worse nuisance than ever before.  Therefore, the information requested (all documents relating to the hours worked of any employee at the quarry) is clearly calculated to lead to discoverable evidence and is relevant to the issues in the case. Oldcastle's objection to the contrary is erroneous.

**WHEREFORE,** for good cause shown, Plaintiffs move this Honorable Court to compel Oldcastle to produce the documents requested and, further, to award the Plaintiffs' attorneys costs for the necessity of filing a Motion to Compel.  Oldcastle's objections were, without exception, spurious and invalid under Alabama law.  To object is clearly a delaying tactic on Oldcastle's part designed to impede Plaintiffs' discovery in this case and to delay the litigation.  Plaintiffs therefore move for an award of attorneys' fees in this case situation based on Rule 26, Rule 33 and Rule 37.

**JAMES B. SPRAYBERRY(SPR008)**
One of the Attorneys for the Plaintiffs

31

2020

**OF COUNSEL:**

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

Jack Weiss
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this
the 2 day of Dec , 2003.

OF COUNSEL

155-00\Plaintiff's Motion to Compel 12-2-03

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

2021

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT OLDCASTLE

Plaintiffs request Defendant Oldcastle Materials, Inc., to answer the following Interrogatories in writing and under oath pursuant to Rule 33 of the Alabama Rules of Civil Procedure, and to produce the following documents and things pursuant to Rule 34 of the Alabama Rules of Civil Procedure.

## I.  INSTRUCTIONS

(a)    In answering these Interrogatories and Requests, please furnish all information, however obtained, and including hearsay, that is or may be available to you and all information known by you or in your possession, in your agent's possession and/or in your attorney's possession, or appearing in your records.  When answering these Interrogatories and Requests, be advised that you have a good faith duty to conduct a reasonable investigation and to make a good faith attempt to answer each Interrogatory and to produce all documents and things requested.

(b)    If you cannot answer any of the following Interrogatories or Requests in full after exercising due diligence to secure the full information sought, so state and answer to the extent possible, specifying your inability to answer the remainder, stating whatever information or knowledge you have concerning the unanswered portion, and detailing what you did in attempting to secure the unknown information.

(c)    If your answer is that the documents requested are not in your possession or custody, describe in detail the unsuccessful efforts you have made to locate or obtain possession of the records.  If your response is that the documents are not in your control, then identify who has control and the location of the records.  If a request for production seeks a specific document or an itemized category that is not in your possession, control,

2022

or custody, provide any documents you have that contain all or part of the information contained in the requested document or category, then identify the source of each of the documents you produce.

(d)     These Interrogatories and Requests for Production shall be deemed to be continuing until and during the course of trial. Information sought by these Interrogatories and Requests which you obtain or learn after you serve your answers and produce the documents must be disclosed to Plaintiffs by supplementary answers.

(e)     Plaintiffs demand that the documents requested be produced in the file folder or other container in which they are maintained or stored, and that the order or sequence of the documents, if more than one within a file is requested, be in the same order or sequence within such file as was maintained in the ordinary course of business just prior to the production thereof.

(f)     If you object to the production of any documents or a portion thereof based upon a claim that said documents are privileged or protected or otherwise undiscoverable, for each such document supply the following information: the portion that is not privileged, the author of the document, the person or persons to whom the document was addressed, the date of the document, and the subjects discussed in the document.

## II. DEFINITIONS

(a)     "Document" or "documents" shall mean every original and every non-identical copy (including blind copies) of each and every paper, writing, picture, photograph, slide, movie, film, visual or audio description, video tape, sound recording, microfilm, data stored or recorded by mechanical, electronic, electrical, or magnetic means (including, without limitation, data stored or recorded on or in punched cards, computer tapes, discs, reels, computer source codes, or other devices for business machines or any other means of storing and/or transmitting human intelligence), or any other printed or readable (by human or machine) materials. To be included, without limitation, in this definition of "document" are every invoice, statement, ledger sheet, recommendation, endorsement, order, direction, letter, telegram, teletype, report, memorandum (including, but without limitation, every intra-office memorandum, file memorandum, work memorandum, and memorandum of telephone conversations), interview, schedule, graph, chart, note (including, but without limitation, notes used to prepare any letter, memorandum, reports or other documents as herein defined) contract, agreement, form, worksheet, timesheet, expense ledger, check (canceled or otherwise), checkstub, voucher receipts, witness (including potential witness) statement, transcript, interview, sound recording or sound recording transcription, video tape, computer printout, book of account, payroll records, minutes, diaries (both office and personal), calendar, log, file card, raw data, notes and/or travel reports, data evidence, statement of expenses incurred,

report of investigation, report of interview, record, brochure, book, exhibit, draft, certificate, table, price list, and any other tangible item or thing of readable or visual material of whatever nature and each and every file, folder, or other container in which the above items are stored, filed, or maintained.

(b)    "Your", "your", and "yours" shall mean each adverse party collectively and together. Thus, for each question, state the answer thereto for each party, if their answers differ.

(c)    "Identify":

i.    When used in reference to an individual, means to state his full name, if known, his present or last known position and business affiliation, and his residential address and telephone number.

ii.    When used in reference to a corporation, firm, or other entity, means to state its full name, form of organization (if known), and its present or last known address and telephone number.

iii.    When used in reference to a document, means to state the type of document, (e.g., letter, memorandum, telegram, chart, contract, prospectus, newspaper article, or the like), or some other means of identification, its author or authors, addressee or addressees, date or dates, subject or subjects, and its present location by address, and custodian or custodians. If such document was, but is no longer in your possession or subject to your control, state what disposition was made of it.

iv.    When used in reference to a telephone conversation, means, with respect to each party to the telephone conversation or listening thereto, to state: full name, business affiliation, business address, present or last known position, residential address, location of each party at the time the telephone conversation took place, which of the parties to the telephone conversation initiated the call, and when such telephone conversation took place.

v.    When used in reference to an oral conversation other than a telephone conversation, means, with respect to each party to the conversation or listening thereto, to state:  when such conversation took place, where such conversation took place, each parties' full name, present address and business affiliation, residential address, and telephone number.

2024

## III.  INTERROGATORIES AND REQUESTS FOR PRODUCTION

1.     Please identify all persons who were involved in the negotiation for the purchase of the Opelika quarry from Hanson Aggregates Southeast, Inc.

2.     During a hearing before the Honorable Judge Walker, Oldcastle's attorney, Phillip Adams, stated in essence that Oldcastle intended to change the manner of operation of the quarry in Lee County.  Please describe in detail every fact supporting Mr. Adams' statements and describe in detail all expected, anticipated, planned, or potential changes to the manner or method of operation of the Oldcastle quarry in Lee County (as distinguished from the manner and method of operation of the Lee County quarry by Hanson Aggregates Southeast, Inc.).

3.     Please identify any expert witness whom you intend to call as an expert at the trial of this case, and for each such expert, please produce all documents, opinions, and other information in accordance with Alabama Rule of Civil Procedure 26(b).

4.     Please identify every person with knowledge of the manner of operation of the Hanson quarry after it was taken over by Oldcastle.

2025

5.     Please produce all discharge monitoring reports, and all documents of any type or description in the possession or custody or control of Oldcastle that relates in any manner to the pumping of water from the pit at the Lee County quarry.

6.     At any time on or after assuming control of the Lee County quarry, did Oldcastle change the pumps used to discharge water from the quarry pit into outfall number 1?  If your answer is in the affirmative, describe all such changes in detail and produce all documents evidencing any such change.

7.     State the number of gallons of water discharged per day from the Oldcastle quarry pit for each day from the date Oldcastle assumed control of the quarry to the date that these interrogatories and requests for production are answered.

8.     Please produce the personnel files on every employee of Oldcastle at the Lee County quarry.

9.    Please produce a "flow chart" or similar document evidencing the corporate structure of Oldcastle's Lee County quarry, from the Lee County quarry all the way up to the corporate owners and parent companies to the highest level, or describe in detail the "chain of command" and corporate structure of Oldcastle from the Lee County quarry upward to the highest corporate level and parent company ownership.

10.    Please produce a copy of the Joint Defense Agreement entered into between Oldcastle and Hanson as related in the Asset Purchase Agreement.

11.    Does any other written document exist that relates to any right of indemnity, contribution, refund, recission, cancellation, or other modification of the Asset Purchase Agreement or any other document in the event that the Lee County Circuit Court enjoins the operation of the Lee County quarry?  In particular, Plaintiffs are asking precisely what will happen in the event the Lee County quarry is closed or otherwise substantially enjoined from operation by the Circuit Court of Lee County.  Are there or will there be any ramifications whatsoever to Hanson, or will any remuneration or other consideration of any type or description pass between Oldcastle and Hanson in the event the Plaintiffs prevail in this litigation and the quarry is enjoined in part or in whole?

2027

12.     Please produce all documents in your possession or subject to your control that show or from which can be determined the amount of materials sold by Defendant Oldcastle to its customers since assuming operation of the Lee County quarry.

13.     Please produce copies of all Lee County mining and mineral tax returns with respect to the Lee County quarry.

14.     Please describe in detail all efforts or undertakings of any type or description considered "due diligence" with respect to the purchase of Hanson's Lee County quarry and operation.

15.     Please produce all documents related in any manner to Oldcastle's "due diligence" efforts and undertakings with respect to the purchase of the Hanson Lee County Quarry.  Without limiting the generality of the foregoing, please produce all documents related to:  what was considered and what was  investigated before Oldcastle purchased the quarry; why the quarry was purchased; who made the decision to purchase the quarry and what they based their decision upon; all written reports, internal memoranda, notes of any type or description, Minutes of Meetings of the Board of Directors, and any other

written document dealing with the purchase of the Hanson Lee County Quarry; and all documents related to any steps taken to identify any problems or potential problems related to the quarry operation as well as steps taken or to be taken to minimize damage or alleged damages to surrounding landowners.

16.    Please produce all information known to Oldcastle in 2002 and/or 2003 in relation to the Opelika quarry. This would include, but is not limited to, the geology of the quarry and the surrounding area, the depth of the quarry at every year from 1996 to date, the number and location of sinkholes in 1999 and each year since 1999, the size of the cone of depression or zone of influence in 1999 and for each subsequent year, the written reports by Dr. Bob Cook or other consultants or in house geologist(s) at any time after 1999, and the underground water table levels from 1996 to date as well as the pumping amounts and damage (or potential damage) to surrounding properties.

17.    Please produce all environmental studies or assessments of any type or description performed by or for Hanson or by or for Oldcastle at any time (with respect to the Lee County Quarry).

8

2323

18.    Please produce all documents exchanged between Oldcastle or any officer, agent or employee thereof and ADEM or the U.S. EPA, including, without limitation, all air and/ or water applications and permits; all other applications and/or permits issued to Hanson and/or Oldcastle; all documents transferring any existing permits to Oldcastle; and any information relating to renewals, warnings, and/or violations from ADEM or the U.S. EPA.

19.    Please produce copies of all complaints to Hanson or to Oldcastle, together with every document dealing in any manner with such complaint(s) and whatever corrective measures were taken or will be taken (including changes in the method of operation of the quarry) with respect to every such complaint.

20.    Please produce all documents in your possession or subject to your control that relate in any way to any pending lawsuit(s) against Hanson at the time of the acquisition of the Lee County Quarry by Oldcastle.  This would include documents indicating Oldcastle's knowledge of the suit(s), documents on Oldcastle's responsibility for such suit(s) or indemnity by Hanson to Oldcastle for such suit(s), and any other documents relating to the resolution of any problems or complaints alleged by any of the Plaintiffs.

9

21.    Please produce all documents regarding Oldcastle's knowledge of any complaint by any person or governmental agency regarding dust or fugitive dust emissions. This would include dust from blasting, operations and/or equipment and traffic. Without limitation, this request includes all documents related to the quantity and composition of such dust or fugitive dust emissions, including silica content and/or silica notification to employees, including steps taken to identify the problem and minimize such problems.

22.    Please produce all documents regarding state or federal health/safety laws or regulations with respect to Silica contained within dust or any by-product of the Lee County quarry operation. Without limitation, this requests any MSDS used or issued by Oldcastle with respect to its Lee County quarry.

23.    Please produce all documents relating to the removal from operation or disabling of any of Hanson's (or now Oldcastle's) Dust Suppression System(s), whether for 24 hours or any longer period. This would also include reports, inspections, correspondence and/or documents relating to visible emission inspections, reports and/or repairs, including warnings or correspondence from or to ADEM.

24.     Please produce all documents related to when any and every piece of new equipment or machinery was or will be installed or became or will become operational at the Lee County quarry, including any equipment in the plant or production process (including vehicles of any type or description), and the dates when old crushers and/or conveyers were replaced or will be replaced by Oldcastle.

25.     Please produce all documents related to any "in house" inspections, including environmental inspections, dust suppression inspections, damage control and/or risk management inspections, and any other type of inspection at the Lee County Quarry.

26.     Please produce all documents related to any overburden piles on the south side of the quarry at the Lee County quarry (or anywhere else on the quarry property). This request includes, without limiting the generality of the foregoing request, all documents relating to the location, size and character of such overburden piles from 1996 to present including maintenance, reclamation from 1996 to the present, flooding and fugitive dust emissions, and any plans or intentions (firm or merely in discussion stages) relating to such overburden piles

11

27.     Please produce your copy of the Environmental memo from Nigel Wills and his recommendations, as well as all documents relating to it or to his recommendations in any manner.

28.     Please produce all documents relating to any and all steps taken (or to be taken) to implement any of the changes mentioned in Nigel Wells' environmental memo and/or to correct any known or alleged problems at the Lee County quarry.

29.     Please produce all documents relating to the location, installation and records regarding the any monitoring wells installed at any time near the quarry, and in particular in 2000 and 2001 on or around the Hanson property. This would include water levels, drill logs, water tables and any pumping records and the entire "study" performed by Hanson (possibly Bates #2938), as well as any study undertaken by or for Oldcastle.

30.     Please produce all pumping records in your possession or subject to your control. This would include pumping or discharge records for the quarry from 1996 to the present, if available, together with all documents related to any calculations of storage capacity for water on the Gilmer property and the Young property. This would include

12

2085

all DMRs (Discharge Monitoring Reports) filed by Opelika Materials or Hanson or Oldcastle with ADEM, applications to ADEM, permits from ADEM and all documents to or from ADEM by Oldcastle, Hanson, Opelika Materials or their agents and/or engineers; warning letters, notices, violations, notice of potential violations or similar documents to or from ADEM. Note that this request includes, but is not limited to documents and information relating to how your internal pumping discharge records were calculated, including the actual calculations themselves.

31.    Please produce all documents in your possession or subject to your control relating to any payments to Dr. Robert Cook for any reason since 1996.

32.    Please produce all documents given to or received from Dr. Robert Cook or Mr. Patterson including, without limitation, (a) the 1999 Exploration and Evaluation of Aggregate Reserves, Opelika Project and (b) the 2000 Exploration and Evaluation of Aggregate Reserves, Opelika-Young Project.

33.    Please produce all documents related to the dewatering or potential dewatering of the areas in and around the Lee County quarry. This would include,

without limitation, the first notice to Oldcastle that the Lee County Quarry operation was dewatering or was alleged to be dewatering the surrounding area, the zone of influence of such dewatering, steps taken to identify the zone of influence, and steps taken to minimize or correct the alleged problems or damage.

34.     Describe in detail whether Oldcastle believes that its continued pumping of water from the quarry pit will continue dewatering the properties around the Lee County quarry. If your contention is that there is no dewatering effect, please describe in detail all bases for such contentions.

35.     Please produce all documents relating in any way to the size, scope, duration, or effect of a "cone of depression" or "zone of influence" of the dewatering caused by pumping water from the quarry pit to outfall 1.

36.     Please produce all documents relating to the size and depth of the quarry, including the surface area of the quarry at any time on or before the date of acquisition of the quarry in July of 2003.

14

2035

37.    Please produce any and all mining plans of any type or description relating to the Lee County quarry.

38.    Please produce all documents regarding any well inventory or spring inventory including related documents showing interviews with homeowners, depths of wells, location of wells and springs and whether the wells or springs were dry or had water.

39.    Please produce all documents reflecting Oldcastle's knowledge of the dewatering at Spring Villa and the Little Uchee Creek (whether or not you contend such dewatering was caused by or in part by Hanson and/or Oldcastle).  This would include, but is not to be limited to, all correspondence, investigations, inspections and documents to or from government agencies regarding dewatering of Spring Villa and/or the Little Uchee Creek areas.

40.    Please produce all documents regarding any sinkholes in and around the Lee County quarry, including, without limitation, all documents regarding Oldcastle's first knowledge of sinkholes, steps taken to identify the problem or potential problem, and any

15

steps to be taken, already taken, or planned to be taken to minimize sinkhole formation in the future.

41.     Please produce all documents regarding any pre-blast inspections done for Oldcastle.

42.     Please produce all documents and information relating to Oldcastle's first notice that blasting had caused, or was causing, or was allegedly causing damage to any property owner in the area, including all steps taken to identify any problem or alleged problem and any steps taken to minimize or correct any such alleged problems or damage.

43.     Please produce all aerial photos of the quarry from 1996 to the present.

44.     Please produce all documents regarding other regulatory filings or information not specifically requested above.

45.     Please produce all documents exchanged with Dyno Nobel or any other blasting company relating to the Opelika/Lee County quarry.

16

2087

46.     Please produce all business licenses or permits of any type and description obtained or required by any governmental agency.

47.     Please produce all OSHA and/or MSHA inspections or other documents exchanged by and between Oldcastle and OSHA and/or MSHA.

48.     Please produce all personnel files on all of Oldcastle's Lee County quarry foremen and Plant Managers.

49.     Please produce all documents relating to the hours worked by any and every Oldcastle employee of the Lee County Quarry from the moment Oldcastle assumed control of the quarry operation.

_C E Vercelli_

**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

17

2088

**OF COUNSEL:**

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
 & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _30th_ day of _Sept_, 2003.

_C E Vercelli_

OF COUNSEL

155-00\Ps1stIRPD-Oldcastle.2.wpd

18

COPY

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

FILED

NOV 0 7 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   CASE NO. CV-02-85 |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC. et al., | ) |
| | ) |
| Defendants. | ) |

## OLDCASTLE'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant Oldcastle Materials Southeast, Inc., ("Oldcastle") hereby responds to Plaintiffs' First Interrogatories and Request for Production of Documents in accordance with the requirements of Rules 33 and 34 of the Alabama Rules of Civil Procedure, and without admitting the relevance or admissibility of any of the information contained herein, responds as follows:

### GENERAL OBJECTIONS

1.     Oldcastle has not concluded its investigation of the facts relating to this case, formal discovery, or preparation for trial. For that reason, Oldcastle's Responses to Plaintiffs' First Interrogatories and Request for Production of Documents may be incomplete. Also, there is a possibility that, upon further investigation, certain details set forth in the responses may be altered or amended. These Responses to Plaintiffs' First Interrogatories and Request for Production of Documents represent Oldcastle's reasonable efforts to provide the information requested based upon documents in Oldcastle's possession, custody or control, and based upon Oldcastle's current knowledge. Oldcastle reserves the right to produce evidence of any subsequently discovered fact or facts, to alter or amend its responses set forth herein, and

otherwise to assert factual and legal contentions as additional facts are ascertained, analyses are made, and legal research is completed. Oldcastle objects to each and every Interrogatory and Request for Production of Documents insofar as it may be construed as limiting or restricting Oldcastle's right to rely upon any document or information for any purpose whatsoever, including the use of responsive documents or information as evidence at any subsequent hearing, trial or proceeding.

2.     Oldcastle objects to each Interrogatory and Request for Production of Documents to the extent it purports to seek information protected by any privilege, including the attorney-client privilege, the work-product doctrine, the joint defense privilege, or any other privilege or protection provided by common law statute. In responding to the Interrogatories and Request for Production of Documents, Oldcastle will not provide any information that is protected from disclosure by any of the foregoing privileges. Inadvertent disclosure of such information is not intended to be a waiver of any privilege or any other ground for objecting to discovery. Furthermore, inadvertent disclosure of any such information shall not constitute a waiver of Oldcastle's right to object to the use of any such information during any subsequent proceeding.

3.     Oldcastle objects to each Interrogatory and Request for Production of Documents to the extent it purports to require Oldcastle to disclose confidential and proprietary business information or trade secrets.

4.     Oldcastle objects to each Interrogatory and Request for Production of Documents to the extent it seeks information not in Oldcastle's possession, custody or control on the grounds that it is unduly burdensome or oppressive.

5.     Oldcastle will make reasonable efforts to respond to each Interrogatory, to the extent that no objection is made, as Oldcastle understands and interprets the Interrogatory. If

2

Plaintiffs subsequently assert an interpretation of any Interrogatory which differs from that of Oldcastle, Oldcastle reserves the right to supplement its objections and responses.

6.     To the extent that any Interrogatory or Request for Production of Documents calls for information already in the possession of plaintiff or its counsel, Oldcastle objects on the grounds that the Interrogatory or Request for Production of Documents is unnecessary and unduly burdensome and constitutes annoyance, harassment, and oppression of Oldcastle.

7.     Oldcastle objects to each Interrogatory and Request for Production of Documents to the extent it seeks information not relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

8.     Oldcastle's agreement to produce any non-privileged documents in its possession, custody or control responsive to a particular Request shall not be deemed an admission that it is in the possession of any document responsive to the Request.

9.     Oldcastle has filed a Motion to Dismiss the Fourth Amended Complaint or, alternatively, for More Definite Statement. In this Motion, Oldcastle shows that the Fourth Amended Complaint fails to state a cause of action against Oldcastle because, among other reasons, it does not include any allegations that Oldcastle has engaged in any actionable conduct since it acquired the Lee County quarry from Hanson on or about July 13, 2003. Oldcastle objects to each Interrogatory and Request for Production of Documents on the ground that Oldcastle is not required to respond to discovery until and unless plaintiffs plead one or more legally viable causes of action against Oldcastle entitling plaintiffs to relief if the facts alleged by plaintiffs are proven to be true.

These General Objections are incorporated into each response below as though fully set forth therein.

3

2042

## INTERROGATORIES AND REQUESTS FOR PRODUCTION

Interrogatory/Document Request Number 1.

Please identify all persons who were involved in the negotiation for the purchase of the

Opelika quarry from Hanson Aggregates Southeast, Inc.

Response:

Oldcastle hereby incorporates the general objections set forth above.  Oldcastle further

objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome and

oppressive, and seeks information that is not relevant to the subject matter of this action and is

not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving the

foregoing general and specific objections, Oldcastle responds as follows:

Frank Heisterkamp, Vice President of Development of Oldcastle Materials, was in charge

of the negotiations of the Asset Purchase Agreement between Oldcastle Materials Southeast, Inc.

and Hanson Aggregates Southeast, Inc., and is knowledgeable with respect thereto.

Interrogatory/Document Request Number 2.

During a hearing before the Honorable Judge Walker, Oldcastle's attorney, Phillip

Adams, stated in essence that Oldcastle intended to change the manner of operation of the quarry

in Lee County.  Please describe in detail every fact supporting Mr. Adams' statements and

describe in detail all expected, anticipated, planned, or potential changes to the manner or

method of operation of the Oldcastle quarry in Lee County (as distinguished from the manner

and method of operation of the Lee County quarry by Hanson Aggregates Southeast, Inc.).

Response:

Oldcastle hereby incorporates the general objections set forth above.  Without waiving

the foregoing general objections, Oldcastle responds as follows:

Without prejudicing Oldcastle's right to implement additional measures in the future which it may deem appropriate as its investigation progresses, Oldcastle states that it is in the process of undertaking the following actions:

- Utilizing earthen material generated by the present and future overburden stripping operation to construct new dust, noise, and visual impact abatement berms along and within the southern and western property lines of the site (surrounding the quarry and all associated production areas on the site). These berms will be approximately 25 to 30 feet high and will be emplaced and vegetated so that, to the extent reasonably feasible, they will generally blend with the natural conditions surrounding them. Oldcastle believes that the abatement of dust, noise, and visual aesthetic impact will be substantial.

- Utilizing earthen material from stripping to construct a specially-designed, supplemental noise and dust abatement berm inside of, and roughly parallel to the southern property line berm to provide additional dust and noise protection to the abutting Davis property to the south. Again, Oldcastle believes that the reduction in dust and noise will be substantial.

- Relocating a new and reconfigured stone crushing processing plant from the present location of such operations on the surface of the site to the west and north of the quarry to a location lying wholly inside the quarry itself. Oldcastle believes that this reconfiguration and relocation, together with the improved technology and control equipment of the new plant, will eliminate any significant adverse effects from dust and noise associated with the crushing and processing

5

effects from dust and noise associated with the crushing and processing operations, and in conjunction with the berms described above will render these operations as clean and quiet as reasonably possible under the circumstances.

- Redesigning the quarry drilling patterns and blasting plans to minimize the rate of loading so that only the minimum amount of explosive is used to create the requisite volumes of broken rock during each blast. Oldcastle believes that this redesign will substantially reduce offsite impacts from ground and/or air vibration, will make the operations more cost efficient, and will permit the implementation of a vibration control program to ensure that all such vibrations are minimized to levels that Oldcastle believes should not generally be annoying or damaging to offsite property owners in the area.

- Designing a quarry-water management and aquifer recharge strategy that Oldcastle believes will return most, if not perhaps all, of the water pumped in connection with the quarry's operation to surface and subsurface drainages and aquifer(s).

Interrogatory/Document Request Number 3.

Please identify any expert witness whom you intend to call as an expert at the trial of this case, and for each such expert, please produce all documents, opinions, and other information in accordance with Alabama Rule of Civil Procedure 26(b).

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the ground that it is premature, as the Court's September 29, 2003

Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle will identify its experts and produce expert discovery at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 4.

Please identify every person with knowledge of the manner of operation of the Hanson quarry after it was taken over by Oldcastle.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to the term "the Hanson quarry" to the extent that it implies that Oldcastle's purchase of the Opelika quarry from Hanson Aggregates Southeast and Oldcastle's subsequent operation thereof amounted to a mere continuation of the operations of Hanson Aggregates Southeast. Oldcastle further objects to this Interrogatory on the grounds that it is overbroad and vague and ambiguous. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows: Frank Heisterkamp, Morris Bishop, and Ted Reynolds have knowledge concerning the operation of the Opelika quarry by Oldcastle after July 13, 2003.

Interrogatory/Document Request Number 5.

Please produce all discharge monitoring reports, and all documents of any type or description in the possession or custody or control of Oldcastle that relates in any manner to the pumping of water from the pit at the Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this document request on the grounds that it is overbroad, vague and ambiguous and

7

burdensome and oppressive in that it calls for the production of a large volume of cumulative documents. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all discharge monitoring reports of the Opelika quarry created after July 13, 2003 that are in its possession, custody or control.

Interrogatory/Document Request Number 6.

At any time on or after assuming control of the Lee County quarry, did Oldcastle change the pumps used to discharge water from the quarry pit into outfall number 1? If your answer is in the affirmative, describe all such changes in detail and produce all documents evidencing any such change.

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

No.

Interrogatory/Document Request Number 7:

State the number of gallons of water discharged per day from the Oldcastle quarry pit for each day from the date Oldcastle assumed control of the quarry to the date that these interrogatories and requests for production are answered.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this document request on the grounds that it is overbroad, and unduly burdensome and oppressive in that it requires Oldcastle to summarize voluminous records. The information

8

requested in this Interrogatory will be equally available to Plaintiffs from the discharge monitoring reports which are being produced to Plaintiffs.

Interrogatory/Document Request Number 8.

Please produce the personnel files on every employee of Oldcastle at the Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that producing the personnel files of its employees would violate the right of privacy of its employees as protected by the United States Constitution and the Constitution of the State of Alabama.

Interrogatory/Document Request Number 9.

Please produce a "flow chart" or similar document evidencing the corporate structure of Oldcastle's Lee County quarry, from the Lee County quarry all the way up to the corporate owners and parent companies to the highest level, or describe in detail the "chain of command" and corporate structure of Oldcastle from the Lee County quarry upward to the highest corporate level and parent company ownership.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not

9

reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Ted Reynolds is the Chief Operating Officer of Oldcastle Materials Southeast, Inc. and is the acting Plant Manager of the Opelika Quarry. Mr. Reynolds reports to Morris Bishop, President of Oldcastle Materials Southeast, Inc. Mr. Bishop reports to Mark Towe, President and Chief Operating Officer of Oldcastle Materials, Inc. Oldcastle Materials Southeast, Inc. is a wholly-owned subsidiary of Oldcastle Materials, Inc.

Interrogatory/Document Request Number 10.

Please produce a copy of the Joint Defense Agreement entered into between Oldcastle and Hanson as related in the Asset Purchase Agreement.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information. Finally, Oldcastle objects to this Request on the ground that it seeks information that is protected by the joint defense privilege.

Interrogatory/Document Request Number 11.

Does any other written document exist that relates to any right of indemnity, contribution, refund, rescission, cancellation, or other modification of the Asset Purchase Agreement or any other document in the event that the Lee County Circuit Court enjoins the operation of the Lee County quarry? In particular, Plaintiffs are asking precisely what will happen in the event the

2045

Lee County quarry is closed or otherwise substantially enjoined from operation by the Circuit

Court of lee County. Are there or will there by any ramifications whatsoever to Hanson, or will

any remuneration or other consideration of any type of description pass between Oldcastle and

Hanson in the event the Plaintiffs prevail in this litigation and the quarry is enjoined in part or in

whole?

Response:

     Oldcastle hereby incorporates the general objections set forth above. Oldcastle further

objects to this Request on the grounds that it is compound, overbroad, unduly burdensome and

oppressive, and seeks information that is not relevant to the subject matter of this action and is

not reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory/Document Request Number 12.

     Please produce all documents in your possession or subject to your control that show or

from which can be determined the amount of materials sold by Defendant Oldcastle to its

customers since assuming operation of the Lee County quarry.

Response:

     Oldcastle hereby incorporates the general objections set forth above. Oldcastle further

objects to this Request on the grounds that insofar as the Request is not restricted to materials

sold from the Opelika quarry, it is overbroad, unduly burdensome and oppressive, and seeks

information that is not relevant to the subject matter of this action and is not reasonably

calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this

Request on the ground that it seeks confidential and proprietary business information.

Interrogatory/Document Request Number 13.

Please produce copies of all Lee County mining and mineral tax returns with respect to the Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information.

Interrogatory/Document Request Number 14.

Please describe in detail all efforts or undertakings of any type or description considered "due diligence" with respect to the purchase of Hanson's Lee County quarry and operation.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Interrogatory on the ground that it seeks confidential and proprietary business information. Oldcastle further objects to this Interrogatory to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

Interrogatory/Document Request Number 15.

Please produce all documents related in any manner to Oldcastle's "due diligence" efforts and undertakings with respect to the purchase of the Hanson Lee County Quarry. Without

limiting the generality of the foregoing, please produce all documents related to: what was considered and what was investigated before Oldcastle purchased the quarry; why the quarry was purchased; who made the decision to purchase the quarry and what they based their decision upon; all written reports, internal memoranda, notes of any type or description, Minutes of the Board of Directors, and any other written document dealing with the purchase of the Hanson Lee County Quarry; and all documents related to any steps taken to identify any problems or potential problems related to the quarry operation as well as steps taken or to be taken to minimize damage or alleged damages to surrounding landowners.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to the term "the Hanson Lee County Quarry" to the extent that it implies that Oldcastle's purchase of the Opelika quarry from Hanson Aggregates Southeast and Oldcastle's subsequent operation thereof amounted to a mere continuation of the operations of Hanson Aggregates Southeast. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

Interrogatory/Document Request Number 16.

Please produce all information known to Oldcastle in 2002 and/or 2003 in relation to the Opelika quarry. This would include, but is not limited to, the geology of the quarry and the

13

surrounding area, the depth of the quarry at every year from 1996 to date, the number and location of sinkholes in 1999 and each year since 1999, the size of the cone of depression or zone of influence in 1999 and for each subsequent year, the written reports by Dr. Bob Cook or other consultants or in-house geologist(s) at any time after 1999, and the underground water table levels from 1996 to date as well as the pumping amounts and damage (or potential damage) to surrounding properties.

Response:

      Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory/Request on the grounds that inasmuch as the Interrogatory/Request required Oldcastle to produce "all information known to Oldcastle in 2002 and/or 2003 in relation to the Opelika quarry" and is not restricted to its operations at the quarry, it is overbroad, vague and ambiguous, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

Interrogatory/Document Request Number 17.

      Please produce all environmental studies or assessments of any type or description performed by or for Hanson or by or for Oldcastle at any time (with respect to the Lee County Quarry).

Response:

      Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive,

14

2088

Please produce copies of all complaints to Hanson or to Oldcastle, together with every document dealing in any manner with such complaint(s) and whatever corrective measures were taken or will be taken (including changes in the method of operation of the quarry) with respect to every such complaint.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the term "complaints" is not defined or limited in scope, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the grounds that insofar as the Request is not limited to complaints received by Oldcastle concerning its operation of the Opelika quarry, it is likewise overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all complaints it has received concerning its operation of the Opelika quarry after July 13, 2003, as well as any response Oldcastle made to such complaints.

Interrogatory/Document Request Number 20.

Please produce all documents in your possession or subject to your control that relate in any way to pending lawsuit(s) against Hanson at the time of the acquisition of the Lee County Quarry by Oldcastle. This would include documents indicating Oldcastle's knowledge of the

suit(s), documents on Oldcastle's responsibility for such suit(s) or indemnity by Hanson to Oldcastle for such suit(s), and any other documents relating to the resolution of any problems or complaints alleged by any of the Plaintiffs.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine.

Interrogatory/Document Request Number 21.

Please produce all documents regarding Oldcastle's knowledge of any complaint by any person or governmental agency regarding dust or fugitive dust emissions. This would include dust from blasting, operations and/or equipment and traffic. Without limitation, this request includes all documents related to the quantity and composition of such dust or fugitive dust emissions, including silica content and/or silica notification to employees, including steps taken to identify the problem and minimize such problems.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not limited to complaints received by Oldcastle concerning its operation of the Opelika quarry, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

2055

Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents or information protected by the attorney-client privilege or the attorney work-product doctrine. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all complaints it has received concerning dust or fugitive dust emissions after July 13, 2003, as well as any response Oldcastle made to such complaints.

Interrogatory/Document Request Number 22.

Please produce all documents regarding state or federal health/safety laws or regulations with respect to Silica contained within dust or any by-product of the Lee County quarry operations. Without limitation, this requests any MSDS used or issued by Oldcastle with respect to its Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control concerning any silica contained within dust or any byproduct of the Opelika quarry after July 13, 2003.

Interrogatory/Document Request Number 23.

Please produce all documents relating to the removal from operation or disabling of any Hanson's (or now Oldcastle's) Dust Suppression System(s), whether for 24 hours or any longer

2055

period. This would also include reports, inspections, correspondence and/or documents relating to visible emission inspections, reports and/or repairs, including warnings or correspondence from or to ADEM.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not limited to the operation of any dust suppression system by Oldcastle during its operation of the Opelika quarry, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to any removal from operation of its dust suppression system for 24 hours or greater after July 13, 2003.

Interrogatory/Document Request Number 24.

Please produce all documents related to when any and every piece of new equipment or machinery was or will be installed or became or will become operational.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the Request is not restricted to equipment or machinery installed or planned to be installed by Oldcastle (as opposed to installed by Hanson), it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the

discovery of admissible evidence. Oldcastle further objects to this Request on the grounds that

insofar as the Request is not restricted to equipment or machinery the operation of which would

bear on the allegations set forth in the Fourth Amended and Restated Complaint, it is overbroad,

unduly burdensome and oppressive, and seeks information that is not relevant to the subject

matter of this action and is not reasonably calculated to lead to the discovery of admissible

evidence. Notwithstanding and without waiving the foregoing general and specific objections,

Oldcastle responds as follows:

      Oldcastle will produce all non-privileged and responsive documents in its possession,

custody or control relating to the installation or planned installation of any piece of new

equipment or machinery by Oldcastle at the Opelika quarry after July 13, 2003, to the extent

such piece of new equipment or machinery bears on the allegations set forth in the Fourth

Amended and Restated Complaint.

Interrogatory/Document Request Number 25.

      Please produce all documents related to any "in house" inspections, including

environmental inspections, dust suppression inspections, damage control and/or risk

management inspections, and any other type of inspection at the Lee County Quarry.

Response:

      Oldcastle hereby incorporates the general objections set forth above. Oldcastle further

objects to this Request on the grounds that it is vague and ambiguous, overbroad, unduly

burdensome and oppressive, and seeks information that is not relevant to the subject matter of

this action and is not reasonably calculated to lead to the discovery of admissible evidence.

Oldcastle further objects to this Request to the extent that it calls for the disclosure of documents

or information protected by the attorney-client privilege or the attorney work-product doctrine.

Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control constituting reports of any inspection concerning the operations and conditions of the Opelika quarry after July 13, 2003, to the extent such inspection bears on the allegations set forth in the Fourth Amended and Restated Complaint.

Interrogatory/Document Request Number 26.

Please produce all documents related to any overburden piles on the south side of the quarry at the Lee County quarry (or anywhere else on the quarry property). This request includes, without limiting the generality of the foregoing request, all documents relating to the location, size and character of such overburden piles from 1996 to present including maintenance, reclamation from 1996 to the present, flooding and fugitive dust emissions, and any plans or intentions (firm or merely in discussion stages) relating to such overburden piles.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that insofar as the Request seeks documents from Oldcastle concerning the overburden piles from 1996 to present and is not restricted to Oldcastle's maintenance of the overburden piles after July 13, 2003, the Request seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

21

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to its maintenance of any overburden piles at the Opelika quarry after July 13, 2003.

Interrogatory/Document Request Number 27.

Please produce your copy of the Environmental memo from Nigel Wills and his recommendations, as well as all documents relating to it or to his recommendations in any manner.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it does not sufficiently identify the "Environmental memo from Nigel Wills" by date, recipient or otherwise with sufficient particularity so as to allow Oldcastle to determine which document or documents is being requested. Oldcastle further objects to this Request on the ground that it assumes facts not in evidence, namely that Oldcastle ever received the document described in the Request. Oldcastle further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

The only such document is in Oldcastle's possession, custody or control is an April 28, 2000, memo from Nigel Wills to Tom Bugenhagen, which was marked as an exhibit to the deposition of Mr. Wills and provided to Oldcastle's counsel in the course of this litigation.

Interrogatory/Document Request Number 28.

2000

Please produce all documents relating to any and all steps taken (or to be taken) to implement any of the changes mentioned in Nigel Wells' environmental memo and/or to correct any known or alleged problems at the Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it does not sufficiently identify "Nigel Wells' environmental memo" by date, recipient or otherwise with sufficient particularity so as to allow Oldcastle to determine which document is being referred to. Oldcastle further objects to this Request on the ground that it assumes facts not in evidence, namely that Oldcastle ever received the document described in the Request. Oldcastle further objects to this Request on the ground that insofar as it requests documents "relating to any and all steps taken (or to be taken) . . . to correct any known or alleged problems at the Lee County quarry" it is vague and ambiguous and overbroad. Oldcastle further objects to this Request on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

See response to the previous Request. Oldcastle further states that, as set forth in its response to Interrogatory Number 2, Oldcastle is in the process of implementing a number of changes at the Opelika quarry. In planning and implementing these changes, Oldcastle has taken into account and/or will take into account a range of available information, which may or may not include, but in any event is not limited to, the April 28, 2000, memo from Nigel Wills to Tom Bugenhagen, which Oldcastle's counsel received in the course of this litigation.

Interrogatory/Document Request Number 29.

23

Please produce all documents relating to the location, installation and records regarding any monitoring wells installed at any time near the quarry, and in particular in 2000 and 2001 on or around the Hanson property. This would include water levels, drill logs, water tables and any pumping records and the entire "study" performed by Hanson (possibly Bates # 2938), as well as any study undertaken by or for Oldcastle.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to any data collected after July 13, 2003, from any monitoring wells installed at or near the Opelika quarry.

Interrogatory/Document Request Number 30.

Please produce all pumping records in your possession or subject to your control. This would include pumping or discharge records for the quarry from 1996 to the present, if available, together with all documents related to any calculations of storage capacity for water on the Gilmer property and the Young property. This would include all DMRs (Discharge Monitoring Reports) filed by Opelika Materials or Hanson or Oldcastle with ADEM, applications to ADEM, permits from ADEM and all documents to or from ADEM by Oldcastle, Hanson, Opelika Materials or their agents and/or engineers; warning letters, notices, violations, notice of potential violations or similar documents to or from ADEM. Note that this request includes, but is not

2062

limited to documents and information relating to how your internal pumping discharge records were calculated, including the actual calculations themselves.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to pumping and discharge by Oldcastle at the Opelika quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in the Request that relate to its pumping of water from Opelika quarry after July 13, 2003.

Interrogatory/Document Request Number 31.

Please produce all documents in your possession or subject to your control relating to any payments to Dr. Robert Cook for any reason since 1996.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle has made no payments to Dr. Robert Cook for any reason since 1996.

Interrogatory/Document Request Number 32.

2003

Please produce all documents given to or received from Dr. Robert Cook or Mr. Patterson including, without limitation, (a) the 1999 Exploration and Evaluation of Aggregate Reserves, Opelika Project and (b) the 2000 Exploration and Evaluation of Aggregate Reserves, Opelika-Young Project.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory/Document Request Number 33.

Please produce all documents related to the dewatering or potential dewatering of the areas in and around the Lee County quarry. This would include, without limitation, the first notice to Oldcastle that the Lee County Quarry operation was dewatering or was alleged to be dewatering the surrounding area, the zone of influence of such dewatering, steps taken to identify the zone of influence, and steps taken to minimize or correct the alleged problems or damage.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the grounds that it calls for the production of expert opinions, and is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any dewatering or potential dewatering of the areas in and around the Opelika quarry caused by Oldcastle's operation of the quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks

26

2084

information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request that are related to any dewatering or potential dewatering of the areas in and around the Opelika quarry caused by Oldcastle's operation of the Opelika quarry after July 13, 2003.

Interrogatory/Document Request Number 34.

Describe in detail whether Oldcastle believes that its continued pumping of water from the quarry pit will continue dewatering the properties around the Lee County quarry. If your contention is that there is no dewatering effect, please describe in detail all bases for such contentions.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Interrogatory on the grounds that it calls for an expert opinion, and it is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle will identify its experts and produce expert discovery at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 35.

Please produce all documents relating in any way to the size, scope, duration, or effect of a "cone of depression" or "zone of influence" of the dewatering caused by pumping water from the quarry pit to outfall 1.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that the terms "cone of depression," "zone of influence" and "outfall 1" are not defined, and the Request is therefore vague and ambiguous. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any "cone of depression" or "zone of influence" – however those terms may be defined –caused by pumping water from the quarry pit by Oldcastle after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it calls for an expert opinion, and it is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle will identify its experts and produce expert discovery at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 36.

Please produce all documents relating to the size and depth of the quarry, including the surface area of the quarry at any time on or before the date of acquisition of the quarry in July of 2003.

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control relating to the size and depth of the quarry as of July 13, 2003 and thereafter.

Interrogatory/Document Request Number 37.

Please produce any and all mining plans of any type or description relating to the Lee County quarry.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it seeks confidential and proprietary business information. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

There are no mining plans relating to the Opelika quarry in Oldcastle's possession, custody or control.

Interrogatory/Document Request Number 38.

Please produce all documents regarding any well inventory or spring inventory including related documents showing interviews with homeowners, depths of wells, location of wells and springs and whether the wells or springs were dry or had water.

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

Interrogatory/Document Request Number 39.

2ᴜ67

Please produce all documents reflecting Oldcastle's knowledge of the dewatering at Spring Villa and the Little Uchee Creek (whether or not you contend such dewatering was caused by or in part by Hanson and/or Oldcastle). This would include, but is not to be limited to, all correspondence, investigations, inspections and documents to or from government agencies regarding dewatering of Spring Villa and/or the Little Uchee Creek areas.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that it assumes facts not in evidence, namely that any dewatering at Spring Villa and the Little Uchee Creek has occurred. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any alleged dewatering at Spring Villa and the Little Uchee Creek caused or contributed to by Oldcastle's operation of the quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it calls for an expert opinion, and it is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged documents in its possession, custody or control concerning its knowledge of whether or not its operations at the Opelika quarry after July 13, 2003, is causing any dewatering at Spring Villa and the Little Uchee Creek. Oldcastle further responds that it will identify its experts and produce expert discovery related to this Request at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 40.

Please produce all documents regarding any sinkholes in and around the Lee County quarry, including, without limitation, all documents regarding Oldcastle's first knowledge of sinkholes, steps taken to identify the problem or potential problem, and any steps to be taken, already taken, or planned to be taken to minimize sinkhole information in the future.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any alleged formation of sinkholes caused or contributed to by Oldcastle's operations at the Opelika quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that it calls for an expert opinion, and it is therefore premature, as the Court's September 29, 2003 Scheduling Order does not require Oldcastle to identify its expert witnesses until January 27, 2004. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged documents in its possession, custody or control concerning its knowledge of whether or not its operations at the Opelika quarry after July 13, 2003 is causing any sinkholes in and around the Opelika quarry. Oldcastle further responds that it will identify its experts and produce expert discovery related to this Request at a time and place that is mutually agreeable to the parties.

Interrogatory/Document Request Number 41.

Please produce all documents regarding any pre-blast inspections done for Oldcastle.

31

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

Interrogatory/Document Request Number 42.

Please produce all documents and information relating to Oldcastle's first notice that blasting had caused, or was causing, or was allegedly causing damage to any property owner in the area, including all steps taken to identify any problem or alleged problem and any steps taken to minimize or correct any such alleged problems or damage.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as it is not restricted to any alleged damage caused by blasting by Oldcastle at the Opelika quarry after July 13, 2003, it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all complaints it has received concerning whether its blasting at the Opelika quarry after July 13, 2003, has caused, or was causing, or was allegedly causing damage to any property owner in the area, as well as any response Oldcastle made to such complaints.

Interrogatory/Document Request Number 43.

2070

Please produce all aerial photos of the quarry from 1996 to the present.

Response:

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

Interrogatory/Document Request Number 44.

Please produce all documents regarding other regulatory filings or information not specifically requested above.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the ground that the term "other regulatory filings or information" is not defined and the Request does not otherwise describe the document or documents requested with sufficient particularity to allow Oldcastle to determine which document or documents are being requested. The Request is therefore vague and ambiguous. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory/Document Request Number 45.

Please produce all documents exchanged with Dyno Nobel or any other blasting company relating to the Opelika/Lee County quarry.

Response:

33

Oldcastle hereby incorporates the general objections set forth above. Notwithstanding and without waiving the foregoing general objections, Oldcastle responds as follows:

Oldcastle will produce all non-privileged and responsive documents in its possession, custody or control set forth in this Request.

Interrogatory/Document Request Number 46.

Please produce all business licenses or permits of any type and description obtained or required by any governmental agency.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all business licenses and permits concerning its operations at the Opelika quarry that bear on the allegations set forth in the Fourth Amended and Restated Complaint.

Interrogatory/Document Request Number 47.

Please produce all OSHA and/or MSHA inspections or other documents exchanged by and between Oldcastle and OSHA and/or MSHA.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that insofar as the allegations set forth in the Fourth Amended and Restated Complaint do not pertain to worker health and safety issues, the Request

34

is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing general and specific objections, Oldcastle responds as follows:

Oldcastle will produce all OSHA and/or MSHA inspections and other documents exchanged by and between Oldcastle and OSHA and/or MSHA that bear on the allegations set forth in the Fourth Amended and Restated Complaint.

Interrogatory/Document Request Number 48.

Please produce all personnel files on all of Oldcastle's Lee County quarry foremen and Plant Managers.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Oldcastle further objects to this Request on the ground that producing the personnel files of its employees would violate the right of privacy of its employees as protected by the United States Constitution and the Constitution of the State of Alabama.

Interrogatory/Document Request Number 49.

Please produce all documents relating to the hours worked by any and every Oldcastle employee of the Lee County Quarry from the moment Oldcastle assumed control of the quarry operation.

Response:

Oldcastle hereby incorporates the general objections set forth above. Oldcastle further objects to this Request on the grounds that it is overbroad, unduly burdensome and oppressive, and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

PHILLIP E. ADAMS, JR.   (ADA025)
Attorney for Defendant
P.O. Box 2069
Opelika, AL 36803-2069
Tel. (334) 745-6466

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 6th day of November, 2003:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P.O. Box 409
Opelika, Alabama  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P.O. Box 2345
Opelika, Alabama  36803-2345

James A. Bryan, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia  30092

_____
Of Counsel

# VERCELLI & ASSOCIATES, P.C.

### Attorneys & Counselors at Law
(334) 834-8805
Fax (334) 834-8807

CHARLES E. VERCELLI, JR.
RAY VAUGHAN, Of Counsel
THERESE FORD, Of Counsel

1019 S. Perry Street
Montgomery, Alabama 36104-5049
cvercelli@vercelli-law.com

November 12, 2003

Phillip E. Adams, Jr.                          **Via E-mail & Fax**
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

RE:   *Hanson Quarry*

Dear Phil:

I am e-mailing to you responses to interrogatories and requests for production on behalf of Opelika and Beauregard, and Bobby, Wanda, and Ambur Parker. These are representative of the answers of the remaining Plaintiffs, although each individual Plaintiff will have some few differences. Logistically, we are having all of these people come to Jim Sprayberry's office to sign their responses, but it may take a little while to get them all signed.

We have also called a few times and left messages for you regarding how to copy our documents for you. Our responses to your requests for production are basically the same documents we have already produced to Hanson, together with all deposition exhibits. This is a lot of documents. I left a message that I could have the Copy Center in Montgomery copy all of this information for you and deliver it to you, at your expense. If you would like to do that, let me know. If you want two copies, it would best to make them both now. I cannot let our originals out of our possession, though.

Also, I was disappointed in your answers to our interrogatories and requests. It appears Oldcastle is going to play games by not giving any information even though it is clearly discoverable. By subsequent letter, I will be asking for better responses prior to filing a motion to compel. We want to take the Plant Manager's deposition on November 20, as scheduled, even if we do not get good answers from Oldcastle. Right now, we want to take the corporate representatives' depositions on December 9-10, as scheduled, although we may have to postpone those if Oldcastle persists in refusing to give us discoverable information and documents. Please confirm that these depositions are scheduled and the place thereof.

Phillip E. Adams, Jr.
November 12, 2003
Page 2

     Thank you.

                           Sincerely,

                           Charles E. Vercelli, Jr.

CEVjr/ma
cc:     James B. Sprayberry (via E-mail & Fax)
         James A. Byram, Jr. (via E-mail & Fax)
         John V. Denson (via E-mail & Fax)
         Guy F. Gunter, III (via Fax only)
         H. Wayne Phears (via E-mail & Fax)
         Jack Weiss (via E-mail & Fax)
155-00\Adams2.1.wpd

# ADAMS, UMBACH, DAVIDSON & WHITE, LLP

*Law Offices and Mediation Center*
205 South 9th Street
Opelika, Alabama 36801

Philip E. Adams, Jr.
Arnold W. Umbach, Jr.
Patrick C. Davidson
Matthew W. White
————————
Jacob A. Walker, Jr., Ret.

Email: padams@audwlaw.com
Direct Fax: (334) 749-3238

Mailing Address:
P.O. Box 2069
Opelika, AL 36803-2069

Tel. (334) 745-6466
Fax (334) 749-3238

November 13, 2003

VIA FACSIMILE

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry St.
Montgomery, AL 36104-5049

RE:    *Letter dated November 12, 2003 - Davis, et al. vs. Hanson Aggregates, et al.*

Dear Chip:

This will acknowledge receipt of your letter dated November 12, 2003. I had called
Jimmy Sprayberry and talked with him on November 11, 2003, regarding my concerns
for the depositions since Jack Weiss and I had not heard from you in several weeks to
finally conclude our discussions regarding the deposition schedule.

I have also requested that Jimmy furnish to me all of the documents we have requested
during the course of our discovery. I am concerned that if we rely on obtaining copies
you furnished to some other party before we were brought into the lawsuit that
something might be lost. I would like for you to respond to our discovery requests.
We will, of course, be happy to pay for duplicate photocopies as is the custom in my
experience. If you want to respond to our discovery request and have copies made in
Montgomery and delivered to me that, of course, will be fine. I would like to have two
copies and I would want to make sure that if the original documents are color that the
copies produced are made in color.

I am somewhat puzzled by your statement regarding the answers we made to the
interrogatories and request for production. It is my considered opinion that these
responses are most legitimate given the fact that the complaint in this case does not
state a claim against Oldcastle for which relief can be granted. We will be happy to

Page Two
November 13, 2003

make better responses as soon as an amended complaint is filed which sets forth with
some specificity the act or acts committed by Oldcastle which justify the complaint you
filed in August of this year.

I am informed that the plant manager will not be available on November 20 as we had
earlier discussed. The reason he is not available is that it is my understanding that you
never responded to Jack Weiss' letter to conclude our negotiations so that his
deposition could be scheduled. We would like to have the court rule on our Motion to
Dismiss prior to any depositions being scheduled.

Please let me know when you have made the copies of the documents we have
requested in our discovery. I will be happy to pay you for these as soon as I am
notified.

I will also be happy to discuss with you and Jimmy our position in further detail if you
believe it would be beneficial.

                                    Yours very truly,


                                    PHILLIP E. ADAMS, JR.

rr
cc:    Attorneys of Record

LEXSEE 397 So. 2d 98

**Ex parte Dorsey Trailers, Inc., a Corporation (Re: Pearl Mincey, etc. v. Dorsey Trailers, Inc., a Corporation, et al.)**

No. 80-198

Supreme Court of Alabama

*397 So. 2d 98; 1981 Ala. LEXIS 3381*

April 9, 1981

**PRIOR HISTORY:**
[**1]

PETITION FOR WRIT OF MANDAMUS.

**DISPOSITION:**
WRIT GRANTED CONDITIONALLY.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Petitioner corporation challenged a decision from the Circuit Court of Coffee County (Alabama), which denied its motions for a continuance and to compel an administratrix in an underlying wrongful death action to answer interrogatories. The corporation sought an original writ of mandamus against respondent circuit judge to compel the administratrix's answers and to continue the underlying action until the interrogatories were answered.

**OVERVIEW:** The administratrix filed a wrongful death action against the corporation. The corporation served the administratrix with interrogatories. The administratrix's answers were nonresponsive, evasive, incomplete, and inadequate. The corporation filed a second motion to compel. Without a hearing, the circuit judge denied the motion because he felt that the corporation knew most of the facts better than the administratrix and that the depositions on file answered most of the interrogatories. The corporation sought a writ of mandamus to require the circuit judge to compel the administratrix to properly answer and to continue the case. The court conditionally granted the writ. The court held that the circuit judge abused his discretion when he failed to grant the motion to compel, and he set the case for trial. The scope of discovery was broad under Ala. R. Civ. P. 26. The administratrix was required to answer or properly object to the interrogatories under Ala. R. Civ.

P. 33. The administratrix was not permitted to withhold answers because she thought they were not useful or beneficial, because her attorney had the information, or because the corporation already possessed the information.

**OUTCOME:** The court conditionally granted the writ of mandamus. If the circuit judge refused to grant the corporation's motion to compel answers and failed to order a continuance in the underlying action, then the writ would have issued upon the corporation's request.

**LexisNexis(TM) HEADNOTES - Core Concepts**

*Civil Procedure > Discovery Methods > Interrogatories*
[HN1] Ala. R. Civ. P. 33(a) requires the reason for objection to interrogatories to be stated and that the attorney sign the objection being made by him.

*Civil Procedure > Disclosure & Discovery > Protective Orders*
*Civil Procedure > Remedies > Extraordinary Writs*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN2] Mandamus is a proper means of review to determine whether a trial judge abused his discretion in limiting a party's right to discovery. The utilization of a writ of mandamus to compel or prohibit discovery is restricted because of the discretionary nature of a discovery order. The right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief. The writ will not issue where the right in question is doubtful. The Alabama Rules of Civil Procedure permit very broad discovery and the rules must be broadly and liberally construed. However, Ala. R. Civ. P. 26(c) recognizes that the right of discovery is not unlimited and gives the court broad power to control the use of the process and to prevent its abuse by any party. The rule does not allow

2000

an arbitrary limit on discovery, but instead vests the trial court with discretion in the discovery process. For this reason, mandamus will issue to compel discovery only in those cases where a clear abuse of discretion is shown.

*Governments > Courts > Rule Application & Interpretation*
[HN3] Cases construing the Federal Rules of Civil Procedure are authority for construction of the Alabama Rules of Civil Procedure.

*Civil Procedure > Disclosure & Discovery > Relevance*
*Civil Procedure > Disclosure & Discovery > Privileged Matters*
*Civil Procedure > Discovery Methods > Interrogatories*
[HN4] The scope of discovery which may be had by interrogatories propounded pursuant to Ala. R. Civ. P. 33 is determined, as is the scope of other available forms of discovery, according to Ala. R. Civ. P. 26. Ala. R. Civ. P. 26(b)(1), in part, states that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. The rule makes it plain that discovery is not limited to matters competent as evidence at trial.

*Civil Procedure > Disclosure & Discovery > Relevance*
[HN5] "Relevancy," as used in the discovery rules, means relevant to the subject matter of the action and a reasonable possibility that the information sought will lead to other evidence that will be admissible.

*Civil Procedure > Disclosure & Discovery > Relevance*
*Civil Procedure > Discovery Methods > Interrogatories*
[HN6] It is not the prerogative of a party answering interrogatories to refuse to answer because of his opinion regarding the usefulness of the information sought or its relative benefit or harm to the parties involved. A defendant is entitled to the factual basis of the plaintiff's claim and all facts going to prove or disprove the defendant's defense.

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*
*Civil Procedure > Discovery Methods > Interrogatories*
[HN7] Under Ala. R. Civ. P. 33, a party must give full and complete answers to interrogatories served on him by another party. While a party may not have a duty to

search out new information, it is undisputed that a party has a duty to provide all information available to him. Information which is controlled by a party is available to him. If the answering party in good faith believes certain interrogatories ask for information beyond the permissible scope set out in Ala. R. Civ. P. 26, it is incumbent upon him to properly object under Ala. R. Civ. P. 33. Ala. R. Civ. P. 33(a), in part, states that each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them.

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*
*Civil Procedure > Discovery Methods > Interrogatories*
*Civil Procedure > Discovery Methods > Expert Witness Discovery*
[HN8] Objections to interrogatories must be specific and supported by a detailed explanation of why the interrogatories are improper. General objections may result in waiver of the objections. Available information which an answering party is under a duty to disclose also includes facts discovered and opinions held by his own expert witnesses.

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*
[HN9] A party has an obligation to reveal information held by his attorney.

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*
*Civil Procedure > Discovery Methods > Interrogatories*
[HN10] A party cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney.

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*
*Civil Procedure > Discovery Methods > Interrogatories*
[HN11] Ala. R. Civ. P. 33(b), in part, states that an interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact.

*Civil Procedure > Disclosure & Discovery > Relevance*
*Civil Procedure > Discovery Methods > Interrogatories*
*Torts > Negligence > Negligence Generally*
[HN12] Interrogatories seeking opinions or contentions as to the acts or omissions constituting the basis of a claim of negligence are, by nature, questions of mixed

law and fact and are, therefore, proper. Interrogatories are an appropriate means for obtaining a specification of the facts upon which a claim of negligence is founded. Opinions and conclusions are inherent in any specification of the factual basis of a claim of negligence. The allegation of negligence itself is the statement of a conclusion, and because negligence may be pleaded broadly, a statement of the facts upon which the conclusion is based can hardly be forbidden as the expression of a conclusion.

*Civil Procedure > Disclosure & Discovery > Undue Burden*
*Civil Procedure > Discovery Methods > Oral Depositions*
*Civil Procedure > Discovery Methods > Interrogatories*
[HN13] A party may not object to interrogatories merely on the ground that the questions contained therein were answered by deposition. The various methods of discovery are cumulative and complementary rather than alternative or exclusive. A party may both take depositions and propound written interrogatories, as long as he is not trying to circumvent a ruling by a trial court, or to harass or oppress the adverse party. The burden is on the adverse party to show that a hardship or injustice will be caused by the use of successive methods of discovery.

*Civil Procedure > Disclosure & Discovery > Relevance*
*Civil Procedure > Discovery Methods > Interrogatories*
[HN14] Ala. R. Civ. P. 26(b)(1) permits a party to discover the identity and location of persons having knowledge of any discoverable matter, and the answering party is required under Ala. R. Civ. P. 26(e) to supplement his response to interrogatories seeking this information.

*Civil Procedure > Disclosure & Discovery > Relevance*
[HN15] A claim by an opposing party that much of the information sought by a party is in that party's possession has no bearing upon an otherwise appropriate discovery request.

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
*Civil Procedure > Discovery Methods > Motions to Compel*
[HN16] The bounds of a circuit court's discretion to compel or deny discovery are broad.

**JUDGES:**

Embry, Justice. Torbert, C.J., Maddox, Faulkner, Jones, Almon, Shores, Beatty and Adams, JJ., concur.

**OPINIONBY:**

EMBRY

**OPINION:**

[*100] Dorsey Trailers, Inc., petitions this court for an original writ of mandamus requiring the Honorable Terry Butts, Judge of the Circuit Court of Coffee County, to compel Pearl Mincey, plaintiff below, to answer petitioner's interrogatories and to stay further proceedings in the action for damages below until plaintiff supplies such answers.

This action arose when Bruce Mincey, deceased, was killed by the explosion of a steel drum which he was cutting with a circular saw. Plaintiff, Pearl Mincey, as administratrix of the estate of Bruce Mincey, deceased, filed suit against petitioner for wrongful death on 6 June 1980, seeking two million dollars in damages for the death of Bruce Mincey. Plaintiff's action was brought under the theory of the Alabama Extended Manufacturer's Liability Doctrine and that of negligence and wanton misconduct.

The issue to be resolved is whether the trial judge abused his discretion in denying, without an opportunity for hearing, petitioner's motion [**2] for continuance and motion to compel answers to interrogatories.

On 6 August 1980, petitioner served written interrogatories upon the plaintiff. On 19 October 1980, petitioner, having received no response to its interrogatories, filed a [*101] motion to compel plaintiff to answer them, noting in its motion that the answers were necessary in order for petitioner to adequately defend the action. Without ruling on the motion to compel, the trial court, on motion of plaintiff, set the case for pretrial hearing on 17 November 1980.

At the pretrial conference, petitioner requested respondent trial judge to compel plaintiff to answer its interrogatories. As set out in his pretrial order of 8 December 1980, respondent judge gave the plaintiff an additional 30 days within which to answer petitioner's interrogatories and set the trial for 5 January 1981.

Petitioner received plaintiff's answers to its interrogatories on 15 December 1980. On the following day petitioner filed a second motion to compel plaintiff to answer interrogatories, claiming that plaintiff's answers were not in compliance with the Alabama Rules of Civil Procedure; being nonresponsive, evasive, incomplete and [**3] inadequate to allow petitioner to properly prepare its defense; and, as such, should be treated as a failure to answer under Rule 37(a)(3), ARCP. Contemporaneously, petitioner requested a hearing on its second motion to compel.

After attempting without success to contact

respondent judge in order to get a hearing on its second motion to compel, petitioner, on 17 December 1980, filed a motion for continuance of the case until such time as plaintiff properly responded to its discovery requests. Petitioner also requested a hearing of this motion.

Without providing petitioner an opportunity to be heard on its motions, respondent judge, on 23 December 1980, issued an order summarily denying both the motion for continuance and the motion to compel, and ordered the case tried at the January 1981 term of court (week of 5 January 1981). As a result of the denial of its motions, petitioner, on 29 December 1980, filed this petition for an original writ of mandamus, asking this court to require the trial judge to compel plaintiff to properly respond to petitioner's interrogatories, to further order the trial judge to continue this case from 5 January 1981 and to file an answer to the petition [**4] for mandamus. This court, on 30 December 1980, entered its order staying all proceedings in the action in the circuit court pending disposition of the petition for writ of mandamus in this court.       Answer and brief of respondents were ordered filed as well as reply of petitioner thereto.

The interrogatories propounded to plaintiff by petitioner sought information concerning, *inter alia*, the facts and circumstances upon which plaintiff based her claims that petitioner was responsible for the death of Bruce Mincey, the locations and identities of all persons upon whom plaintiff relied in reaching her conclusions, and the identities of all persons expected to testify in the action, together with the substance of their expected testimony. Petitioner also inquired of plaintiff the location and identity of any expert witness expected to testify, the subject matter about which each expert was expected to testify, the substance of the facts and opinions of which each expert was expected to testify and a summary of the grounds of the opinion of each expert. In addition, petitioner requested the medical history of the decedent, including any physical or mental impairments, and his educational [**5] background and work history.

In answer to this petition, respondent trial judge, Honorable Terry Butts, asserts that he was familiar with the facts surrounding the case prior to the pretrial hearing on 17 November 1980. Based on this knowledge, he felt that most of the facts in the case were better known by petitioner than by plaintiff and that depositions on file appeared to answer most of the interrogatories. Respondent judge, therefore, opined that petitioner had all necessary and proper information and was merely trying to delay going to trial.

Respondent judge also maintains that the procedure in his court has always been that the party desiring

further answers to its interrogatories specify the ones which need to be answered or answered further. He notes that petitioner's second motion to compel failed to state which of the answers [*102] were considered evasive or incomplete and failed to take issue regarding those to which plaintiff had objected as improper.

Plaintiff's brief echoes respondent judge's contentions that the contents of oral depositions had already answered the questions posed by petitioner's interrogatories and that petitioner held the most knowledge [**6] of the pertinent facts, stating: "We cannot conceive of any facts that we could have that may be material that defendant does not already know." Plaintiff also argues that certain interrogatories call for facts and opinions unknown to plaintiff, but known and held by her attorney, and are improper attempts to discover the theories of her counsel. Furthermore, plaintiff states she did not answer certain interrogatories because she failed to see how the answers would be admissible or lead to admissible evidence, or how the information sought by these interrogatories would help petitioner or harm plaintiff. Finally, the interrogatories requesting names and addresses of all witnesses expected to testify are objected to as improper, and plaintiff maintains the trial court has never required such information to be supplied in response to a discovery request.

Replying to the arguments of respondent judge and plaintiff, petitioner contends it is entitled to the factual basis of plaintiff's claims and all facts going to prove or disprove petitioner's defenses. The discovery material, petitioner maintains, is not limited to admissible evidence, but extends to all matters which are relevant [**7] and reasonably calculated to lead to the discovery of admissible evidence.       The fact that certain interrogatories are directed toward factual areas already covered by depositions is not a valid ground for objection, according to petitioner, which asserts that the various forms of discovery were meant to be cumulative and complementary, not mutually exclusive. Petitioner further argues that those interrogatories seeking contentions of plaintiff's attorney and names of all witnesses whom plaintiff expects to testify at trial are permissible.

Further, petitioner takes the position that those interrogatories considered improper by plaintiff were not properly objected to by her pursuant to [HN1] Rule 33(a), ARCP, which requires the reason for objection to be stated and that the attorney sign the objection being made by him. Petitioner argues that it is obvious from a reading of its interrogatories and plaintiff's answers thereto that the answers are evasive, incomplete, improperly objected to, and contrary to the letter and spirit of the Alabama Rules of Civil Procedure.

consequently the defective answers should have been treated as a failure to answer under Rule 37, ARCP. Combining these [**8] considerations with the fact that respondent trial judge denied petitioner's motions without a hearing based on his belief petitioner had all necessary information, petitioner asserts that the actions of respondent judge constituted a clear abuse of discretion.

Ordinarily, we would not review rulings regarding discovery proceedings in the trial courts. However, in this case there are basic questions to be answered, arising from the latest amendments to ARCP regarding discovery, that have not heretofore been addressed by this court.

[HN2] Mandamus is a proper means of review to determine whether a trial judge abused his discretion in limiting a party's right to discovery. *Assured Investors Life Insurance Co. v. National Union Associates, Inc., 362 So. 2d 228 (Ala. 1978).* The utilization of a writ of mandamus to compel or prohibit discovery is restricted because of the discretionary nature of a discovery order. The right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief. The writ will not issue where the right in question is doubtful. *Lassiter v. Werneth, 275 Ala. 555, 156 So. 2d 647 (1963).*

As [**9] the court stated in *Campbell v. Regal Typewriter Co., Inc., 341 So. 2d 120 (Ala. 1976):*

The Alabama Rules of Civil Procedure permit very broad discovery and the rules must be broadly and liberally construed. *Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, [*103] 310 So. 2d 210 (1975).* However, Rule 26(c) recognizes that the right of discovery is not unlimited and gives the court broad power to control the use of the process and to prevent its abuse by any party. The rule does not allow an arbitrary limit on discovery, but instead vests the trial court with discretion in the discovery process. ...

For this reason, mandamus will issue to compel discovery only in those cases where a clear abuse of discretion is shown. *Ex parte Alabama Power Co., 280 Ala. 586, 196 So. 2d 702 (1967).*

In order to determine whether such a clear abuse of discretion is present in this case, we must examine the interrogatories in light of the purpose and language of the rules of discovery in the Alabama Rules of Civil Procedure and the cases construing them. Looking to case law, we find an established rule that [HN3] cases construing the Federal Rules of Civil Procedure are authority [**10] for construction of the Alabama Rules of Civil Procedure. *Bracy v. Sippial Electric Co., Inc.,*

*379 So. 2d 582 (Ala. 1980); Alabama Power Co. v. White, 377 So. 2d 930 (Ala. 1979); State v. Horton, 373 So. 2d 1096 (Ala. 1979); Smith v. Wilcox County Board of Education, 365 So. 2d 659 (Ala. 1978); Assured Investors Life Insurance Co. v. National Union Associates, Inc., supra.*

"Generally speaking, the purpose of modern discovery is to assist the administration of justice, to aid a party in preparing and presenting his case or his defense, to advance the function of a trial in ascertaining truth, and to accelerate the disposition of suits. Beyond this, the rules for discovery are designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits to the end that judgments be rested upon the real merits of cases and not upon the skill and maneuvering of counsel." 23 Am. Jur. 2d, Depositions and Discovery, § 155 (1965). Stated otherwise, the rules seek to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter and Gamble [**11] Co., 356 U.S. 677, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958); Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947).*

It is the trial court's job to exercise its broad discretion in a manner that will implement this philosophy of full disclosure of relevant information and at the same time afford a party, or others, maximum protection against harmful side effects which would result from unnecessary disclosure. *Ex parte Guerdon Industries, Inc., 373 So. 2d 322 (Ala. 1979).*

[HN4] The scope of discovery which may be had by interrogatories propounded pursuant to Rule 33, ARCP, is determined, as is the scope of other available forms of discovery, according to Rule 26, ARCP.

Paragraph (b)(1) of Rule 26, in part, states:

*In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including ... the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible [**12] at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The rule makes it plain that discovery is not limited to matters competent as evidence at trial. [HN5] "Relevancy," as used in our discovery rules, means relevant to the subject matter of the action and a

reasonable possibility that the information sought will lead to other evidence that will be admissible. *Drewes v. Bank of Wadley, 350 So. 2d 402 (Ala. 1977);* 8 Wright and Miller, Federal Practice and Procedure § 2008 (1970).

Several of petitioner's interrogatories requested information on the physical, mental and medical history of the deceased, including such pertinent matters as visual impairment. Petitioner contends this information, [*104] in conjunction with questions about the deceased's educational background and work history, is relevant to the ability of the deceased to perceive and appreciate the danger of his task and to read and understand any warning labels which may have been on the drum. Plaintiff's response to these interrogatories was "not answered on advice of counsel," which response plaintiff's brief explains by saying: [**13]

These were not answered on advice of counsel because counsel fails to see how they have anything to do with the case or how they could lead to anything that might have anything to do with this case, and counsel for the plaintiff does not know the answer ... I do not see how any of the information sought by these or any other would help the plaintiff [defendant?] or harm the defendant [plaintiff?].

Given the purpose and broad scope of discovery, discussed *supra*, petitioner was clearly entitled to the information concerning the physical, mental and medical background of the deceased. [HN6] It is not the prerogative of a party answering interrogatories to refuse to answer because of his opinion regarding the usefulness of the information sought or its relative benefit or harm to the parties involved.

A defendant is entitled to the factual basis of the plaintiff's claim and all facts going to prove or disprove defendant's defense. 4 Moore's Federal Practice, para. 26.57. The contention that counsel for plaintiff does not know the facts surrounding the background of the deceased is hardly justification for failure of the plaintiff, mother of the deceased, to answer [**14] interrogatories addressed to her.

[HN7] Under Rule 33, a party must give full and complete answers to interrogatories served on him by another party. While a party may not have a duty to search out new information, it is undisputed that a party has a duty to provide all information available to him. *Hickman v. Taylor, supra;* 8 Wright & Miller, Federal Practice and Procedure, § 2172 (1970). Information which is *controlled* by a party is available to him. *Trane Co. v. Klutznick, 87 F.R.D. 473 (W.D. Wis. 1980).*

If the answering party in good faith believes certain interrogatories ask for information beyond the permissible scope set out in Rule 26, ARCP, it is incumbent upon him to properly object under Rule 33, ARCP.

Rule 33(a), in part, states:

Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them. ...

[HN8] Objections to interrogatories must be specific and supported by a detailed explanation of why the interrogatories [**15] are improper. *In re Folding Carton Antitrust Litigation, 83 F.R.D. 260 (N.D. Ill. 1979); United States v. 58.16 Acres of Land, 66 F.R.D. 570 (E.D. Ill. 1975),* 8 Wright & Miller, Federal Practice and Procedure § 2172 (1970). General objections may result in waiver of the objections. *In re Folding Carton Antitrust Litigation, supra; White v. Beloginis, 53 F.R.D. 480 (S.D.N.Y. 1971).*

Available information which an answering party is under a duty to disclose also includes facts discovered and opinions held by his own expert witnesses. In response to petitioner's interrogatory asking if any examination of the drum head had been made and, if so, what tests or analyses had been performed, plaintiff replied as follows:

"Mr. Payne has examined it and what kind of test, if any, he made, I don't know."

Having identified Mr. Payne in an earlier answer as an expert witness whom she expected to call at trial, plaintiff was under an obligation to ascertain from him whether he had conducted any tests or analyses of the drum, and, if so, sufficient facts about the tests or analyses to enable plaintiff to properly respond to the interrogatory.

[*105] It is also [**16] well-established that [HN9] a party has an obligation to reveal information held by his attorney. *Naismith v. Professional Golfers Association, 85 F.R.D. 552 (N.D. Georgia 1979); Pilling v. General Motors Corp., 45 F.R.D. 366 (D. Utah 1968); Maryland ex rel. Peters v. Baltimore & O.R. Co., 7 F.R.D. 666 (E.D. Pa. 1947); Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947).* In answer to

petitioner's interrogatory seeking plaintiff's contentions regarding the nature of the drum's defect, the relation of petitioner's conduct to the defect, and the failure of petitioner to remedy the defect, plaintiff stated:

"My attorney will have to answer this."

Plaintiff argues that this interrogatory called for information held solely by her attorney, of which she had no knowledge. Plaintiff's reply to this interrogatory was improper. [HN10] A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney. *Miller v. Doctor's General Hospital, 76 F.R.D. 136 (N.D. Okla. 1977);* 8 Wright & Miller, Federal Practice and Procedure, § § 2171 & 2177 (1970).

Plaintiff argues that these contention-seeking [**17] interrogatories are also objectionable on the ground they attempt to uncover the legal theories and conclusions of her attorney. Plaintiff extends this argument to several other interrogatories which ask for plaintiff's opinions as to the acts and omissions constituting the bases of her claims, to which plaintiff responded: "Not answered on advice of counsel."

By amendment in 1970, [HN11] paragraph (b) of Rule 33, ARCP, in part, now states:

An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact. . .

Many older cases denied a party the right to obtain the opinions and contentions of other parties through interrogatories. However, the overwhelming majority of recent decisions have adopted the view of the amended rule and allowed interrogatories seeking opinions and contentions of fact, or of mixed law and fact, while generally refusing to permit interrogatories asking for purely legal conclusions. 8 Wright & Miller, Federal Practice and Procedure § 2167 (1970). The Advisory Committee Note to Rule 33 of the Federal Rules of Civil [**18] Procedure is informative on this point:

... Efforts to draw sharp lines between facts and opinions have invariably been unsuccessful, and the clear trend of the cases is to permit 'factual' opinions. As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major

purpose of discovery. ... On the other hand, under the new language interrogatories may not extend to issues of 'pure law,' i.e., legal issues unrelated to the facts of the case. ...

In keeping with this line of thought, the modern trend has recognized that [HN12] interrogatories seeking opinions or contentions as to the acts or omissions constituting the basis of a claim of negligence are, by nature, questions of mixed law and fact and are, therefore, proper. 8 Wright and Miller, Federal Practice and Procedure § 2167 (1970). Expressing this view in *Hartsfield v. Gulf Oil Corp., 29 F.R.D. 163 (D.C. Pa. 1962),* the federal district court said:

It is now settled that interrogatories are an appropriate means for obtaining a specification of the facts upon which a claim of negligence is founded. [**19] ... The objection that the interrogatories require the statement of conclusions or opinions is unjustified in the present circumstances. Opinions and conclusions are inherent in any specification of the factual basis of a claim of negligence. The allegation of negligence itself is the statement of a conclusion, and since negligence may be pleaded broadly, a statement of the facts upon which the conclusion is based can hardly be forbidden as the expression of a conclusion.

[*106] Petitioner's interrogatories seeking the contentions of plaintiff concerning the acts and omissions constituting negligence on the part of petitioner should have been answered. As to other contention-seeking interrogatories, such discovery should generally be allowed if the answers would be useful in narrowing the issues or serve some other substantial purpose related to an essential element of a claim, unless a pure conclusion of law is called for. At any rate, the manner in which plaintiff objected was improper under Rule 33, ARCP, as discussed *supra*, and was hardly a sufficient statement of the specific ground for objection to allow petitioner a fair opportunity to rebut those reasons [**20] and to permit respondent trial judge to make a proper and informed decision on whether discovery should be compelled.

As discussed, *supra*, Rule 26, ARCP, also allows a party to discover the identity and location of persons having knowledge of any discoverable matter. Petitioner posed interrogatories seeking from plaintiff the names and addresses of any persons who observed or were around the location of the explosion, whether any statements had been taken by plaintiff from such persons, and the substance of the information held by such persons. Plaintiff simply responded that these matters

had been covered by deposition. Plaintiff gave the same reply to various interrogatories seeking the details of the educational background and work history of her decedent, the actions of the deceased at the time of the explosion, and the facts upon which plaintiff relied in contending that petitioner was negligent in the sale of the drum.

[HN13] A party may not object to interrogatories merely on the ground that the questions contained therein were answered by deposition. The various methods of discovery were intended to be cumulative and complementary rather than alternative or exclusive. [**21] A party may both take depositions and propound written interrogatories, as long as he is not trying to circumvent a ruling by the trial court, or to harass or oppress the adverse party. The burden is on the adverse party to show that a hardship or injustice will be caused by the use of successive methods of discovery. *Taylor v. Atchison, T. & S. F. Ry. Co.,* 33 F.R.D. 283 *(W.D. Mo. 1962); Stonybrook Tenants Association, Inc. v. Alpert,* 29 F.R.D. 165 *(D.C.D. Conn 1961); Bullard v. Universal Millwork Corp.,* 26 F.R.D. 144 *(E.D. N.Y. 1960).*

In addition to requesting facts about persons with knowledge of the incident, petitioner asked plaintiff to give the names of all persons she intended to call as witnesses at trial, which she refused to do. If the circumstances justify it, a judge may properly require this information to be revealed. However, we will not hold that a discovering party has the right to demand from the adverse party a list of all witnesses to be called at trial. The majority of jurisdictions in this country do not require such discovery, although there is considerable authority for the opposing view. 8 Wright & Miller, Federal Practice & Procedure, [**22] § 2013. [HN14] Subparagraph (b)(1) of Rule 26, ARCP, permits a party to discover the identity and location of persons having knowledge of any discoverable matter and the answering party is required under Rule 26(e) to supplement his response to interrogatories seeking this information. Since these provisions effectively allow a party to discover the identity and location of any potential witnesses to be called by the opposition party, denial of the right to require disclosure of the specific persons which the adverse party intends to call as witnesses at trial will not subject the discovering party to surprise at trial. However, it will prevent substantial burdens being placed upon parties who have not completed their trial preparations or strategy.

The final point to be examined is plaintiff's response that "defendant has the answer to this already," to the interrogatory of petitioner seeking information about warning labels on the drum, and respondent trial judge's assertion that one reason he did not grant the motion to compel answers to interrogatories was because he felt most of the facts were better known by petitioner. This was not a proper reason [*107] for plaintiff's [**23] refusal to answer or for respondent judge's denial of the motion to compel answers. [HN15] A claim that much of the information sought by a defendant is in defendant's possession, if true, has no bearing upon an otherwise appropriate discovery request. *Dykes v. Morris,* 85 F.R.D. 373 *(D.C. Ill. 1980).*

All told, 37 of the 50 interrogatories propounded by petitioner received responses from plaintiff that the matter had already been covered by the complaint or by deposition, that the question was not answered on advice of counsel, or simply stating the word "answered." A reading of the remaining 13 answers reveals that several are nonresponsive, incomplete or evasive. In addition, plaintiff did not object, in the manner required by Rule 33, ARCP, to any interrogatory which she did not answer.

Such a disregard of the principles of law governing discovery should not have been overlooked by respondent judge and cannot be overlooked by this court. To permit this case to proceed to trial without requiring further answers from plaintiff to petitioner's interrogatories would contravene the purpose of the rules of discovery and might cause petitioner to suffer grave injustice. [HN16] The bounds [**24] of the trial court's discretion to compel or deny discovery are broad. However, in this case those bounds have been overstepped.

If, upon the basis of this decision, respondent trial judge fails to grant petitioner's motion to compel answers to interrogatories and fails to order a continuance of the action for damages until such time as plaintiff complies, a writ to effectuate those actions will issue upon request of petitioner.

WRIT GRANTED CONDITIONALLY.

Torbert, C.J., and Maddox, Faulkner, Jones, Almon, Shores, Beatty and Adams, JJ., concur.

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE & DONNA DAVIS; MIKE & ANN BROADWATER; MITTIE BROADWATER; CITY OF OPELIKA, a Municipal Corporation; THE UTILITIES BOARD OF THE CITY OF OPELIKA, a public corporation; BEAUREGARD WATER AUTHORITY, a public corporation; ANTHONY & CAROL CLARK; CAROL CLARK, as Mother and Next Friend of COURTNEY CLARK; ELAINE EDWARDS; MARY SUE EILAND; MEDENA FRIZZEL; MEDENA FRIZZEL, as Mother and Next Friend of KARLA FRIZZELL and BRIANNA YOUGREN; RONNIE & DOROTHY GRIGGS; MIKE & STACEY HAGENS; HOWARD & LISA HARMON; LISA HARMON, as Mother and Next Friend of JUDSON & BRIA HARMON; HAYWARD & NORA JACKSON; MIKE & SHELIA LaMACCHIA; SHELIA LaMACCHIA, as Mother and Next Friend of RUSSELL LaMACCHIA; STANLEY & JACKIE LEDBETTER; TERRY & CAROL LONG; TIM & ADA MANNING; DAVID & JANETTE BAGGETT; JAMES & SHIRLEY PARKER; RANDALL & WANDA PARKER; WANDA PARKER, as Mother and Next Friend of AMBUR & BRANDON PARKER; JEFF & MARIA RICHARDSON; MARIA RICHARDSON, as Mother and Next Friend of NATASHA RICHARDSON; DAVID & AMANDA SUMNER; AMANDA SUMNER, as Mother and Next Friend of TODD SUMNER; LARRY & RITA SUMNER; MARTHA TREADWAY; MARTHA TREADWAY, as Guardian and Next Friend of JASMIN, MICHAEL, HAZEL & JOSEPH KING; BILLY & SHERRY WALLACE; SHERRY WALLACE, as Mother and Next Friend of AARON WALLACE; MICHELE WILKES; SHIRLEY WILSON; BETTY J. PFINGSTON; BETTY J. PFINGSTON, as Guardian and Next Friend of JESSICA PFINGSTON; WONDA BRIGHT; DONNIE SMITH; DAVID & TANYA TANKERSLEY; and KEN & NAOMI SCHWIEKER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **vs.** | ) **Civil Action No.** ) ) **CV-20 02-85** |
| HANSON AGGREGATES SOUTHEAST, INC.; LOUISE YOUNG O'BRIEN; VIRGINIA YOUNG PRIEST; VIRGINIA HART YOUNG; CLAUDE JOHN YOUNG; CHARLES W. GILMER, SR.; ALICE C. GILMER; CHARLES W. GILMER, JR.; KAMMY GILMER; BARBARA GILMER SMITH; GARY SMITH; MATTHEW RUTTLEDGE GILMER; LELIA WILDER GILMER; GILMER PROPERTIES, LTD.; and OLDCASTLE MATERIALS SOUTHEAST, INC., | ) ) ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) |

**FIFTH AMENDED AND RESTATED COMPLAINT**

FILED

DEC 1 0 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

120.    The Plaintiffs re-allege Paragraphs 1-119 inclusive.

121.    The actions by Oldcastle have caused, are causing and will cause a nuisance. This nuisance has damaged, is damaging and will damage the Plaintiffs, their property and/or their homes.

122.    Oldcastle has continued the nuisance by blasting, noise, dust, dewatering the creek and diverting springs and creeks.

123.    The dewatering has caused, is causing and will cause sink holes, dry springs, diverted streams, road failures and soil subsidence.

124.    The noise and dust are worse now with Oldcastle.

125.    Many Plaintiffs have complained about the noise and dust. Oldcastle is generating tons of visible, fugitive dust that collects on Plaintiff's property and in their homes. It is so severe it has aggravated pre-existing medical problems such as asthma.

126.    The blasting has caused and is causing damage to the majority of the homes. No repairs should be done while the blasting continues.

127.    Oldcastle has cleared a large area and exposed the topsoil to washing and blowing.

128.    Oldcastle has expanded and is expanding both the quarry pit and the huge pile of dirt along the southern property line. This has increased dust and flooding. Heavy equipment operates late into the night and on the weekend; sometimes for Forty-eight (48) hours straight. Most Plaintiffs can hear this loud, irritating noise in their homes with all doors and windows shut. Many Plaintiffs work nights or rotating shifts. This loud noise makes it impossible for them to sleep.

Oldcastle purchased and operated the quarry knowing that it was a nuisance and that it was causing and will continue to cause damage. The actions have been and are negligent, willfull and intentional. Despite numerous complaints, Oldcastle has continued to cause these damages.

**Wherefore** Plaintiffs demand judgement against Defendant Oldcastle:(1) enjoining all of the Defendants, including Defendant Oldcastle, from operating this or any quarry on the Youngs' and Gilmer's lands, and for such other legal or equitable relief to which they are entitled; (2) for all

2085

compensatory damages to which they are entitled based upon Defendant Oldcastle's continuation of the nuisance and continued negligent and wanton operation of the quarry; (3) for such punitive damages as the jury deems appropriate to punish and deter Defendant Oldcastle and others similarly situated; and (4) for costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable.


_____
JAMES B. SPRAYBERRY (SPR008)


**OF COUNSEL:**
**For All Plaintiffs:**
LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100
Fax (334) 821-7101

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805
Fax (33) 834-8807

**For Plaintiffs City of Opelika and Water Works Board of the City of Opelika Only:**
Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334)745-6244
Fax (334) 745-6288


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

2080

James A. Byram, Jr.
Dorman Walker
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the ___10th___ day of ___Dec___, 2003.

_____
OF COUNSEL

## ALL PLAINTIFFS DEMAND TRIAL BY JURY IN
## LEE COUNTY, ALABAMA

155-00\5th-Amend-Complaint1.wpd

Faxed copies to Phil Adams
334-749-2800
and Jack Weiss
212-351-5224

Dec 9, 2003

2091

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE DAVIS, et al., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *     CASE NUMBER: CV-02-85 |
| | * |
| HANSON AGGREGATES SOUTHEAST, | * |
| INC., et al. | * |
| Defendants. | * |

### ANSWERS TO OLDCASTLES' FIRST SET OF INTERROGATORIES BY RANDALL, WANDA, and AMBUR PARKER

1.    At the present time, Plaintiffs have retained and expect to testify at trial the same experts previously disclosed in response to Hanson's Interrogatories and Requests for Production. In further answer to this Interrogatory, Plaintiffs identify the following persons, whose depositions have previously been taken by Hanson and whose reports and supplemental reports have previously been provided to Hanson: Tom Aley, David Hicks, Dr. Tom Cooper, Roger Getz, Dr. Warren Styles, Dr. Katherine Nichols, and/or Dr. James Saunders. Summaries of the opinions, qualifications, and bases for opinions of these experts have been previously produced in Plaintiffs' responses to Hanson's Interrogatories and Requests for Production, which are incorporated here by reference. These experts' opinions are expected to be the same—as appropriate—with respect to Defendant Oldcastle. However, if Oldcastle ever meaningfully responds to Plaintiffs' Interrogatories and Requests for Production, then Plaintiffs expect to provide such information to each of the above experts. At that time, if those experts deem it appropriate based on new information, the experts will supplement their opinions. Plaintiffs further reserve the right to supplement the opinions of these experts based upon ongoing discovery.

Plaintiffs have not retained, but expect to call as expert witnesses, those GSA and ADEM employees identified on their Preliminary Witness List for the January 26, 2004, trial, which is adopted here by reference.

2.    (a)    Plaintiffs have observed no significant change in the general process of the operation of the quarry after Oldcastle assumed the operation. However, we and the vast majority of the other plaintiffs have observed significant increases in dust and noise levels. Therefore, all the Plaintiffs' prior interrogatory responses, responses to requests for production, and answers to deposition questions are equally applicable to the problems caused by Oldcastle. In this regard, Plaintiffs have observed that Oldcastle continues to pump discharge water in large quantities believed to equal or exceed the amount pumped by Hanson; Oldcastle continues to generate large amounts of dust on the cleared areas and by the

operation of their mobile equipment and their stationary equipment; Oldcastle continues to create loud and irritating noise from early in the morning (earlier, in fact, than Hanson) and throughout the day and into the night (often later than Hanson); Oldcastle appears to be crushing as much or more rock, and has caused as much and more noise and dust pollution; Oldcastle's pumping of groundwater from the underground aquifers has caused additional sinkholes to form, has caused or will cause additional collapses of land belonging to many of the Plaintiffs, and continues to endanger the motoring public by virtue of the collapses in, on, and under roadways in the area.

(b)    See every person whose deposition has already been taken in this case, as well as every person who was identified on Plaintiffs' Preliminary Witness List for the January 26, 2004, trial. In general, the residents in the area would have such knowledge, Plaintiffs' and Hanson's experts would have knowledge or information, the Plaintiffs and their family members would have such knowledge and the employees of Hanson and Oldcastle would have such knowledge.

3.    (a)    Please see the response to Interrogatory number 2(a) above, which is incorporated here by reference. Oldcastle knew or should have known that a huge area of land was being dewatered by the Quarry pumping. Oldcastle had actual knowledge that litigation was pending and that sinkholes had been caused by the pumping even before Oldcastle purchased the Quarry. Oldcastle knew or should have known that the City of Opelika met with Hanson and commissioned Krebs Engineering to do a study to determine why the spring at Spring Villa had dried up, and Oldcastle also should have known that two (2) of the three (3) dyes injected into the ground by Plaintiff's experts had been detected in the discharge water from the Quarry, proving that the quarry dewatering was damaging us and others in the area. As part of its due diligence, Oldcastle should have reviewed pumping records, pending litigation, geology records, boring data, and other information that was readily available. By knowingly continuing the nuisance with evidence that the nuisance was hurting other people, Oldcastle is acting in a negligent and wanton manner. In general, even though Oldcastle knew, or should have known, that the dewatering is causing a huge problem for many of the plaintiffs and the motoring public, and even though Oldcastle knew or should have known that the noise, dust and blasting are causing problems, Oldcastle continued and continues its operations unabated – and in fact in a manner that is even worse than when Hanson operated the quarry, as the noise is worse, the dust is worse, the problems associated with land collapse are worse, and the spoil pile has been greatly increased in size and is a worse problem for us and others in the area. Moreover, on October 5th or 6th, 2003, there was heavy mud and/or sediment discharge in violation of ADEM regulations that resulted in massive amounts of sediment being pumped out of the holding ponds and into the drainage and onto the Bobby Parker property, causing his irrigation system to pump red mud all over his property (until the mud clogged his system and shut it down).

As noted, the dust is a lot worse than it was, and our house is filling with dust, and the mountain of dirt is worse. Moreover, the noise pollution from the quarry is

worse than ever, and we hear the noise inside our home even louder than ever. The blasting is worse, and the blasts are shaking our home more than before. A very large area has been clear cut with more heavy equipment operating from very early in the morning until late in the evening. Oldcastle continues to flood our pasture because of the dirt, and our farm on Little Uchee Creek has little or no flow in the creek due to the dewatering.

(b)    Please see our answers above, which are incorporated here by reference.

4.    (a)    Please see our answers above, which are incorporated here by reference. Additionally, the clear cut area is much larger than before, more equipment is now operating, the noise is the same or worse under Oldcastle, and the dust is the same or worse under Oldcastle. The trees have been cleared within a few feet of the property lines on the east side and on part of the South side of the property. There is now only a small buffer strip, if any, of trees around part of the Young property. We and many of the Plaintiffs can sit or stand in our own backyards and watch the equipment operate, whereas before it was much less visible. During the month of October, on many mornings, the equipment was cranking up at 5:00 - 5:30 a.m and ran well past dark. For example, on October 20, 2003, Oldcastle's equipment ran until approximately 9:00 p.m.

The pumping of discharged water continues, which in turns continues dewatering of the area. Sinkholes continue to form in the Spring Villa area and now an unnamed tributary of Little Uchee Creek disappears into the ground. Little Uchee Creek, north of Spring Villa Road, disappears into a sinkhole, and all of these problems will continue and will get worse until Oldcastle stops pumping and wasting all the groundwater in the area.

(b)    Please see our answers above, which are incorporated here by reference.

5.    (a)    All of our experts' prior opinions answer this question, as well as our answers and the answers of our co-Plaintiffs to Hanson's discovery responses, all of which are incorporated here by reference. Prior to when Hanson began blasting, our home had no damage. Since Hanson began blasting on such a regular basis, we have had cracks, cracked foundations and other problems caused by the repetitive blasts. As long as the blasting continues, we cannot have our home repaired as, more likely than not, the damage would return in just a short while. Since Oldcastle is blasting just as much as before, and will continue to blast, anyone with a little bit of common sense can tell that Oldcastle's operation is going to continue causing damage to us.

(b)    Please see our answers above, which are incorporated here by reference.

6.    (a)    We can't answer for everyone, except for what we have been told. We understand from discussions with many of the other Plaintiffs that everyone is suffering from continued house shaking, dust problems, noise problems, and traffic problems. Otherwise, please see our prior answers, which are incorporated here by

Page 3 of 7

reference. The combination of all of these problems makes it impossible to enjoy our property or our home.

(b)    We are bothered by the continued, and worse, dust in the air, by dust deposited onto our property and into our homes, by aggravation of our existing medical problems such as asthma, by repetitive shaking and rocking of our house from the blasting, by continuous daily noise from the equipment, and by continuous heavy truck traffic in the area. Most of this is daily, but the blasting is generally once a week or once every two (2) weeks. Some of the damage is not permanent such as noise and dust and will stop when the quarry is put out of business. Some of these problems, like the blasting damage, is not repairable at this time, if the blasting continues. If the blasting stops, then we can repair our house and we believe the continuing damage will stop. Otherwise, what we said in response to Hanson's interrogatories and in response to Hanson's deposition questions, applies to Oldcastle's continued operation. Obviously, what we said about a particular event may not apply, but we have already explained in detail how the noise, dust, traffic, dewatering, and blasting have hurt us, and there is no difference between the way it used to hurt us and the way it hurts us now, except it seems worse and Oldcastle's operation is actually creating more and worse noise, dust, traffic, etc.

Also, our breathing problems are just as bad as ever, and we understand that other Plaintiffs are experiencing medical problems just as bad as, or worse than, when Hanson operated the quarry.

(c)    Please see our answers above, which are incorporated here by reference (especially our Preliminary Witness List).

7.    (a)    Yes.

(b)    Please see our answers to Hanson's discovery and our deposition answers, which are incorporated here by reference. In general, we know that if Oldcastle stops operating, all or almost all of our problems will eventually go away. We contend that Oldcastle's continued operation will give rise to a substantial threat of irreparable injury to our health, our property and our home. This is because of a combination of noise, dust, blasting damage and/or dewatering. The dewatering is continuing to cause sinkholes and if they form on our property or under our home, we believe the damage would be irreparable. Also, Little Uchee Creek and Spring Villa are gone because of the dewatering from the quarry, and Oldcastle is pumping just as much water as Hanson did. When that stops, we hope that the Creek and the Spring will come back, but there is no way to know for sure until someone finally stops Oldcastle.

Also, our health problems continue because of Oldcastle's continued operation of the quarry. These health problems are irreparable, as it is impossible to compensate us for our bad health and inability to breath in our own home.

Page 4 of 7

(c)    Please see our answers above, which are incorporated here by reference (especially our Preliminary Witness List).

8.    (a)    Yes

(b)    Since July 13, 2003, the dust has been the same or worse than when Hanson ran the quarry. This is partly due to the fact that Oldcastle has cleared a very large area and has it exposed with no vegetation and in part because Oldcastle has raised the spoil pile by 25-50 feet or more—none of which is vegetated.

(c)    The increased dust since Oldcastle took over has made Wanda's and Ambur's asthma worse and is causing more problems at night. Wanda's and Ambers' medicine has changed to a stronger medicine and stronger dosages. Wanda and Ambur feel even worse than when Hanson was operating the quarry -- not surprisingly since the dust is much, much worse.  We cannot give you specific dates, as the problems are almost daily—worse on some days than others, but almost always there are some medical problems aggravated by the dust. Moreover, when the wind is blowing in our direction, we cannot even go outside. Finally, you can see the dust clouds coming from the Quarry and you can feel and breath the grit in the air.

(c)    Please see our answers above, which are incorporated here by reference (especially our Preliminary Witness List).

9.    (a)    Yes.

(b)    Please see our answers above, which apply here too.  The dust and noise is almost daily.  Except on Saturday and Sunday, the noise and dust are almost a daily nuisance beginning early in the morning and continuing until late at night. Even then, the dust stays on and lingers until Oldcastle starts operating again the next day. Sometimes on Sunday the dust is not so bad, unless the wind is blowing our way.  The blasting is not as often but it rattles our home, and has caused cracks and our foundation problems get worse. If this isn't a nuisance—"anything that works hurt, inconvenience or damage to another" (to quote the law)—then nothing is.

(c)    Please see our answers above, which are incorporated here by reference (especially our Preliminary Witness List).

10.    (a) - (c).  Please see our answers to all of the above interrogatories, which are incorporated here by reference.

11.    (a) - (c).  Please see our answers to all of the above interrogatories, which are incorporated here by reference.

12.    (a)    Yes.

(b)     It is our understanding that both the Little Uchee Creek and an unnamed branch (a tributary to Little Uchee) have been diverted by the dewatering into sinkholes. Little Uchee was first diverted in the fall of 2002, and the tributary on Ken Schwieker's property was diverted in the late summer or early fall of 2003, after Oldcastle took over. Since Oldcastle began operations, new sinkholes have formed in Little Uchee upstream of the old sinkholes, and the new sinkhole(s) have diverted the surface water into the ground. I do not know the exact dates these things happened. I understand that other plaintiffs have videotape and photographs of these new problems.

(c)     Please see our answers to all of the above interrogatories, which are incorporated here by reference.

I swear or affirm that the answers to the above interrogatories are true and correct and are based on my personal knowledge, information and belief, except as stated otherwise, on this 9 day of Dec , 2003.


_Randall Parker_
RANDALL PARKER, individually and as Father
and Next Friend of Ambur Parker

_Wanda Parker_
WANDA PARKER, individually and as Father
and Next Friend of Ambur Parker


STATE OF ALABAMA    *
COUNTY OF LEE       *

BEFORE ME, a Notary Public in and for said State and County, came RANDALL PARKER, whose name is signed to the foregoing Answer and who is known to me, and acknowledged before me on this date that being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

GIVEN under my hand and official seal this 9th day of December, 2003.


_Sophia S. Benson_
Notary Public

(SEAL)

My Commission Expires: 4-11-06

Page 6 of 7

STATE OF ALABAMA          *
COUNTY OF LEE             *

    BEFORE ME, a Notary Public in and for said State and County, came WANDA PARKER, whose name is signed to the foregoing Answer and who is known to me, and acknowledged before me on this date that being informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

    GIVEN under my hand and official seal this _9th_ day of _December_, 2003.

                                    _Sophia S. Benson_
                                    Notary Public

(SEAL)

My Commission Expires:____4-11-06____

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                John V. Denson
Matt Parnell                       Samford, Denson, Horsley, Pettey
Balch & Bingham, LLP                 & Bridges
P.O. Box 78                        P.O. Box 2345
Montgomery, AL 36101               Opelika, AL 36803-2345

H. Wayne Phears                    Phillip E. Adams, Jr.
Phears & Moldovan                  Adams, Umbach, Davidson & White, LLP
Suite 375                          P. O. Box 2069
4725 Peachtree Corner Circle       Opelika, AL 36803-2069
Norcross, GA 30092-3000

by faxing a copy of the same to each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _12th_ day of _November_, 2003.

                                    _C E Vercelli_
                                    OF COUNSEL

155-00\Ans Oldcastle Int.randall parker.5.wpd

Page 7 of 7

F I L E D

DEC 11 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,
     Plaintiff,

v.

HANSON AGGREGATES SOUTHEAST,
INC., et al.
     Defendants.

CASE NUMBER: CV-02-85

## NOTICE OF SERVICE DISCOVERY DOCUMENTS

To:    Clerk of the Lee County Circuit Court
Lee County Justice Center
2311 Gateway Drive, Room 104
Opelika, Alabama 36801.

Please take notice that the Answers to Oldcastles' First Set of Interrogatories By Randall, Wanda and Ambur Parker were served on December 10, 2003.

OF COUNSEL:

CHARLES VERCELLI, JR., (VER004)
*Co-Council for Property Owners*
1019 South Perry Street
Montgomery, AL 36104
(334) 834-8807

JAMES B. SPRAYBERRY (SPR008)
*Co-Council for Property Owners*
Post Office Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

2058

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the _____ day of December, 2003.

James A. Byram, Jr.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

John Denson
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

J.M. (Jack) Weiss
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000



James B. Sprayberry

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**F I L E D**

DEC 11 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVING DISCOVERY

Plaintiffs give notice of the filing of the following discovery in this case:

1.    Plaintiffs' Third Interrogatories and Requests for Production to Defendant

Oldcastle.

_____

**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

OF COUNSEL:
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

2101

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
 & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

J.M. (Jack) Weiss
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

by placing a copy of the same in the United States mail, properly addressed and postage
prepaid, this the _12th_ day of _____Dec____, 2003.

_____
OF COUNSEL

155-00\Not-Serv-Disc 2.wpd

2

2102

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**F I L E D**

DEC 1 2 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF SERVING DISCOVERY

Plaintiffs give notice of the filing of the following discovery in this case:

1. Plaintiffs' Second Interrogatories and Requests for Production to Defendant Oldcastle.

*C E Vercelli*

_____

**CHARLES E. VERCELLI, JR.** (VER003)
One of the Attorneys for the Plaintiffs

OF COUNSEL:
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

2103

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
 & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

J.M. (Jack) Weiss
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

by placing a copy of the same in the United States mail, properly addressed and postage
prepaid, this the 11th day of Dec., 2003.

_____
OF COUNSEL

155-00\Not-Serv-Disc.1.wpd

2

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

2164

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )    Civil Action No. CV-02-0085 |
| | ) |
| HANSON AGGREGATES SOUTHEAST, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

F I L E D
DEC 1 2 2003
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### PLAINTIFFS' MOTION TO SHORTEN TIME TO OBJECT and TO SCHEDULE HEARING ON MOTIONS

Plaintiffs move this Honorable Court to shorten the time in which Defendant Oldcastle may object to Plaintiffs' Second Interrogatories and Requests for Production, and to schedule a hearing date on or around January 5, 2004. As grounds for this Motion, Plaintiffs say:

1.     Plaintiffs filed an Amended Complaint against Oldcastle on August 1, 2003.

2.     At the same time, Plaintiffs issued a deposition notice for Oldcastle's Corporate Representative.

3.     Mr. Adams appeared for Oldcastle on August 15, 2003. At the same time Oldcastle filed a Motion to Continue and for an Alternate Trial Plan.

4.     Plaintiffs issued First Interrogatories and Requests for Production to Oldcastle on September 30, 2003.

5.     By agreement of the parties, the Plaintiffs willingly allowed Defendant Oldcastle to respond to Plaintiffs' First Interrogatories and Requests for Production and to produce the documents therewith on November 10, 2003.

6.     Defendant Oldcastle responded to Plaintiffs' First Interrogatories and Requests for Production on November 6, 2003, essentially objecting to everything and giving to Plaintiffs absolutely no useful information whatsoever. This clearly violated the spirit of Plaintiffs' cooperation, as Plaintiffs were led to believe that Oldcastle would actually produce some documents. None were produced and everything was objected to.

7.     On October 7, 2003, nearly two months after Oldcastle's attorney made an appearance and Moved to Continue the Trial (which was granted), Plaintiffs issued Deposition notices for Oldcastles' Corporate Representative (set for October 22, 2003) and Plant Manager (set for November 5, 2003).

8.     The parties' attorneys thereafter agreed to take the depositions of Oldcastle's Corporate Representatives on either December 3-4 or 9-10, 2003 (later confirmed to be the 9th-10th by Oldcastle), and the Plant Manager for November 20, 2003.   Oldcastle unilaterally cancelled these depositions.

9.     The Court has now allowed Defendant Oldcastle 30 days in which to answer Plaintiffs' Fifth Amended Complaint, which was served upon Defendant Oldcastle on the late afternoon of December 9, 2003. The Court also ordered that Defendant Oldcastle must produce its Corporate Representatives for depositions within 45 days of December 9, 2003. The Court also allowed Defendant Oldcastle 30 days to answer Plaintiffs' discovery requests.

10.     Plaintiffs filed Second Interrogatories and Requests for Production that are identical to, in every respect, the First Interrogatories and Requests for Production. These

2105

were served upon Defendant Oldcastle on December 9, 2003, by fax, in the early evening and are being mailed to Defendant Oldcastle and all other attorneys of record on December 11, 2003. Therefore, Oldcastle will have had these interrogatories and requests in their possession for over 3 months when January 9, 2004, arrives.

11.     Oldcastle filed objections to every single one of Plaintiffs' First Interrogatories and Requests for Production. As explained in Plaintiffs' Motion to Compel responses, there is no legitimate basis for refusing the information requests. Because the Second Interrogatories are identical to the First, there is no doubt that Oldcastle will file objections to the Plaintiffs' Second Interrogatories and Requests, and will wait until January 9, 2004, to do so. Plaintiffs will then be forced to send a letter to Oldcastle to resolve the discovery dispute, wait for a response, and ultimately file another Motion to Compel. That process will take, at a minimum, 7 days. Therefore, if, as is substantially certain, Oldcastle refuses to respond fully, Plaintiffs' next Motion to Compel responses will not be heard by the Court until well after the 45 days in which Oldcastle has been ordered to produce their Corporate Representatives and Plant Manager for depositions.

12.     Given that (1) Defendant Oldcastle has had the First Interrogatories and Requests for Production (which are identical to the Second Interrogatories and Requests for Production), since September 30, 2003, about 2 ½ months already, (2) Defendant Oldcastle already knows exactly what the Plaintiffs are complaining about due to the fact that they had to conduct due diligence before purchasing the quarry, (3) Oldcastle alreadys knew all about the lawsuit before purchasing the quarry (it has a joint defense agreement

3

with Hanson), and (4) it would be entirely unfair and inequitable to the Plaintiffs to allow Defendant Oldcastle, by using the maximum time allowed by law to file objections, to thereafter defeat Plaintiffs' legitimate discovery attempts, the most fair and equitable thing for this Court to do is shorten the time in which Oldcastle may object and to set a date for a hearing on discovery disputes for a date sufficiently in advance of the corporate representative depositions that Plaintiffs will actually receive a meaningful amount of discovery from Oldcastle by the time those depositions are taken.

14.    It will not prejudice Defendant Oldcastle to file any objections within 15 days of today's date, as Oldcastle[1] has already had these same interrogatories and requests for over two months.

WHEREFORE, for good cause shown, Plaintiffs move this Honorable Court to enter an order requiring Defendant Oldcastle to file any objections to Plaintiffs' Second Interrogatories and Requests for Production within 15 days of today's date (by December 26) so that the Plaintiffs will have sufficient time to file a Second Motion to Compel, and so that the Court will be able to have a hearing before the date due for depositions of the Corporate Representatives.  Plaintiffs also move the Court to set a discovery dispute hearing on or around January 5, 2004.

CHARLES E. VERCELLI, JR. (VER003)
One of the Attorneys for the Plaintiffs

---

[1]

Please note that the undersigned will be in a capital murder trial in Montgomery during the week of January 12-16.

4

**OF COUNSEL:**

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
 & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

J.M. (Jack) Weiss
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

by faxing a copy to each and by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the ____ day of December, 2003.

_____
OF COUNSEL

155-00\Ps'Mot Shorten Time to Object.2.wpd

5

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    *
                                       *
          Plaintiff,                   *
                                       *
vs.                                    *        CIVIL ACTION NO. CV 02-085
                                       *
HANSON AGGREGATES                      *
SOUTHEAST, INC., et al,                *
                                       *
          Defendants.                  *

## ORDER

A Status Conference was held on December 9, 2003. Appearing for Plaintiffs were Attorneys, James Sprayberry, Chip Vercelli and Guy Gunter. Appearing for the Defendant, Hanson Aggregates Southeast, was Attorney James Byrum. Appearing for Defendant Old Castle, was Attorney Phillip E. Adams. Appearing for individual Defendants, was Attorney John Denson. At the conclusion of the conference the Court entered the following Orders:

1. The Plaintiffs are to file an Amended Complaint regarding allegations made against Old Castle within thirty (30) days from the date of this Order.

2. Defendant Old Castle is to answer any interrogatories and Motions to Produce within thirty (30) days from the date they receive the Amended Complaint.

3. Defendant Old Castle's Plant Manager and Corporate Representative's depositions are to be taken within forty-five days from the date of this Order. The depositions are to take place in the State of Alabama.

4. The Plaintiffs' experts' depositions are not to be taken until thirty (30) days after Old Castle complies with the "paper discovery" set forth in Paragraph Two above.

5. A Status Conference is set in this case on **MARCH 29, 2004, at 9:00 A.M. in Courtroom Three of the Lee County Justice Center, Opelika, Alabama.**

The Clerk of Court is ordered to mail by ordinary mail or deliver a copy of this Order to the following:

Hon. Jimmy Sprayberry               Hon. Charles Vercelli, Jr.
Post Office Box 2429                1019 S. Perry Street
Auburn, AL 36831-2429              Montgomery, AL 36104

2110

Hon. James Byram, Jr.
Hon. Dorman Walker
Hon. Matt Parnell
Post Office Box 78
Montgomery, AL 36101

Hon. Guy Gunter
Post Office Box 409
Opelika, AL 36803-0409

Hon. John V. Denson
Post Office Box 2345
Opelika, AL 36803-2345

Hon. Phillip E. Adams, Jr.
Post Office Box 2069
Opelika, AL 36803-2069

DONE this the 15th day of December, 2003.

JACOB A. WALKER, III
Circuit Judge

FILED

DEC 1 7 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. CV-02-85 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING APPLICATION FOR ADMISSION TO PRACTICE UNDER RULE VII OF THE RULES GOVERNING ADMISSION TO THE ALABAMA STATE BAR

Upon consideration of the Verified Application for Admission to Practice filed herein by Jack M. Weiss, the Court is of the opinion and ascertains and finds that said Motion is due to be granted. It is, therefore,

ORDERED, ADJUDGED AND DECREED by the Court as follows:

1. That the Application of Jack M. Weiss for admission to practice under Rule VII in the above-styled case be and the same is hereby granted.

2. Jack M. Weiss shall comply with the provisions of The Alabama Rules of Professional Conduct and all other requirements as set forth in Rule VII of the Rules Governing Admission to the Alabama State Bar in the above-styled case.

DONE this the _14th_ day of December, 2003.

_____
CIRCUIT JUDGE

FILED

DEC 2 9 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                         §
          Plaintiff,            §
                    §
v.                                          §    CASE NUMBER: CV-02-85
                    §
HANSON AGGREGATES SOUTHEAST, §
INC., et al.                                §
          Defendants.            §

### NOTICE OF SERVICE DISCOVERY DOCUMENTS

FILED
JAN 0 5 2004
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

To:    Clerk of the Lee County Circuit Court
        Lee County Justice Center
        2311 Gateway Drive, Room 104
        Opelika, Alabama 36801.

Please take notice that the following documents were served on January 2, 2004 to all attorneys of record in the above styled and numbered cause;

1. Plaintiffs' First Contention Interrogatories to Oldcastle
2. Plaintiffs' First Contention Interrogatories to Hanson
3. Plaintiffs' Second Request for Admissions to Oldcastle
4. Plaintiffs' Second Request for Admissions to Hanson

James B. Sprayberry (SPR008)
*One of the Attorneys for Plaintiffs*

OF COUNSEL:

James B. Sprayberry
ATTORNEY AT LAW
P.O. Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, Alabama 36803-0409
(334) 745-6244

2115

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the 5th day of January, 2004.

James A. Byram, Jr.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

John Denson
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

J.M. (Jack) Weiss
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

James B. Sprayberry

IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
        Plaintiffs,                    )
                                       )
vs.                                    )    CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC., et al.,               )
                                       )
        Defendants.                    )

**F I L E D**

JAN 0 9 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

TO:  Circuit Clerk of Lee County:

Please take notice that on the 8th day of January, 2004,

_____ 1.  A notice to take the deposition of __
_____ 2.  Interrogatories
_____ 3.  Request for Admissions
_____ 4.  Request for Production
  X   5.  Answers to Second Interrogatories
_____ 6.  Response to Request for Admissions
  X   7.  Response to Second Request for Production
_____ 8.  Notice of Intent to Serve a Subpoena on a Non-Party
          as follows:

was served on all parties to this cause by the Defendant Oldcastle Materials.

                        ADAMS, UMBACH, DAVIDSON & WHITE, LLP

                        BY: _____
                            PHILLIP E. ADAMS, JR. (ADA025)
                            Attorney for Defendant
                            P. O. Box 2069
                            Opelika, AL 36803-2069
                            Tel. (334) 745-6466

2115

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 8th day of January, 2004:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

_____
Of Counsel

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**FILED**

JAN 1 2 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-02-0085 |
| | ) | |
| HANSON AGGREGATES SOUTHEAST, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' SUPPLEMENTAL WITNESS DISCLOSURE

Plaintiffs supplement their prior Trial Witness List by disclosing the following person as a potential witness at the trial of this case:

68.    Steve Hearn, Lee County Highway Department. Mr. Hearn was present on December 18, 2003, when the sinkhole on Spring Villa Road was being repaired and may be asked to testify regarding that sinkhole and the repair thereof.

_____
**CHARLES E. VERCELLI, JR. (VER003)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

$2117$

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
  & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

J.M. (Jack) Weiss
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _9th_ day of _January_, 2004.

_____
OF COUNSEL

155-00\Ps\SuppWitnessDisc.1.wpd

2

FILED

FEB 0 5 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

IN THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

MIKE DAVIS, *et al.*, §
§
Plaintiffs, §
§
vs. § Civil Action No.: CV-2002-85
§
HANSON AGGREGATES §
SOUTHEAST, INC., *et al.*, §
§
Defendants. §

## NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

To:   Clerk
      Lee County Circuit Court
      Justice Center, Room 104
      2311 Gateway Drive
      Opelika, AL

Please take notice that the following discovery documents have been served on behalf of

defendant Hanson Aggregates Southeast, Inc.:

( X )   Defendant Hanson's Response to Plaintiff's First Contention Interrogatories; and

( X )   Defendant Hanson's Response to Plaintiffs' Second Request for Admissions.

Respectfully submitted this 4th day of February, 2004.

_____
One of the attorneys for Defendant
Hanson Aggregates Southeast, Inc.

OF COUNSEL:

James A. Byram, Jr. (BYR003)
PAUL A. CLARK (CLA076)
BALCH & BINGHAM LLP
P. O. Box 78
Montgomery, AL  36101-0078
(334) 834-6500

141181.1

2119

H. Wayne Phears, Esq.
**PHEARS & MOLDOVAN**
Suite 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092
(770) 446-2116
(770) 263-6715 (fax)

### Certificate of Service

    I hereby certify that on this 4th day of February, 2004, a copy of the foregoing has been served by first-class United States Mail, postage prepaid and properly addressed, upon the following:

James B. Sprayberry, Esq.
P. O. Drawer 2429
Auburn, AL 36830

Charles E. Vercelli, Jr., Esq.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Guy F. Gunter, III, Esq.
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-0404

Phillip E. Adams, Jr., Esq.
Adams, Umbach, Davidson,
  & White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

John V. Denson, Esq.
Samford, Denson, Horsley, Pettey
  & Bridges
P. O. Box 2345
Opelika, AL 36803-2345

Of Counsel

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

2120

MIKE DAVIS, et al.,                      *
                                         *
                  Plaintiff,             *
                                         *
vs.                                      *        CIVIL ACTION NO. CV 02-085
                                         *
HANSON AGGREGATES                        *
SOUTHEAST, INC., et al,                  *
                                         *
                  Defendants.            *

## ORDER

A Status Conference was held the above-styled case on February 4, 2004. Appearing for Plaintiffs were Attorneys, James Sprayberry. Appearing for the Defendant, Hanson Aggregates Southeast, was Attorney Paul Clark. Appearing for Defendant Old Castle, was Attorney Phillip E. Adams. Appearing for Defendants, Gilmer/Young was Attorney John Denson. The Court was updated on a variety of discovery issues. At the conclusion of the hearing it is the Court opinion that the parties should be ordered to mediate this matter. The parties are to select a mediator and evenly split the costs of said mediation. The parties are to notify the Court of the name of the mediator within the next forty-five (45) days. If the parties cannot agree on a mediator, the Court will appoint someone to mediate this case. Mediation is to be completed by July 1, 2004. The parties are reminded that the next Status Conference in this case is set for **MARCH 29, 2004, at 9:00 A.M. in Courtroom Three of the Lee County Justice Center, Opelika, Alabama.**

The Clerk of Court is ordered to mail by ordinary mail or deliver a copy of this Order to the following:

Hon. Jimmy Sprayberry                    Hon. Charles Vercelli, Jr.
Post Office Box 2429                     1019 S. Perry Street
Auburn, AL 36831-2429                    Montgomery, AL 36104


Hon. James Byram, Jr.                    Hon. John V. Denson
Hon. Dorman Walker                       Post Office Box 2345
Hon. Matt Parnell                        Opelika, AL 36803-2345
Post Office Box 78
Montgomery, AL 36101

Hon. Phillip E. Adams, Jr.
Post Office Box 2069
Opelika, AL 36803-2069

Hon. Guy Gunter
Post Office Box 409
Opelika, AL 36803-0409

DONE this the 11ᵗʰ day of February, 2004.

JACOB A. WALKER, III
Circuit Judge

**FILED**

FEB 1 7 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

2122

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                         §
        Plaintiff,                   §
                               §

v.                                          §    **CASE NUMBER: CV-02-85**
                               §

HANSON AGGREGATES SOUTHEAST,                §
INC., et al.                                §
        Defendants.                  §

### NOTICE OF SERVICE DISCOVERY DOCUMENTS



To:   Clerk of the Lee County Circuit Court
      Lee County Justice Center
      2311 Gateway Drive, Room 104
      Opelika, Alabama 36801.

FILED
MAR 11 2004
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

     Please take notice that the following documents were served on March 11, 2004 to all attorneys of record in the above styled and numbered cause;

     1.   Answers to Oldcastles' First Set of Interrogatories by Donnie Smith
     2.   Answers to Oldcastles' First Set of Interrogatories by Ronnie & Dorothy
           Griggs

                                     James B. Sprayberry (SPR008)
                                     *One of the Attorneys for Plaintiffs*

OF COUNSEL:
James B. Sprayberry                         Charles E. Vercelli, Jr.
ATTORNEY AT LAW                             VERCELLI & ASSOCIATES, P.C.
P.O. Drawer 2429                            1019 S. Perry Street
Auburn, Alabama 36831-2429                  Montgomery, Alabama 36104-5049
(334) 821-7100                              (334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, Alabama 36803-0409
(334) 745-6244

2123

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been provided to the following, by first class mail, on this the 11th day of March, 2004.

James A. Byram, Jr.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

John Denson
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Charles Vercelli, Jr.
*Co-Council for Property Owners*
1019 South Perry Stret
Montgomery, Alabama 36104

Guy Gunter
*Council for City of Opelika/Opelika Water
Board*
P.O. Box 409
Opelika, Alabama 36801

James B. Sprayberry

2124

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NUMBER: CV-00-98 |
| | § | |
| HANSON AGGREGATES SOUTHEAST, | § | |
| INC., et al. | § | |
| Defendants. | § | |

**FILED**
MAR 15 2004
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF SERVICE DISCOVERY DOCUMENTS

To:  Clerk of the Lee County Circuit Court
     Lee County Justice Center
     2311 Gateway Drive, Room 104
     Opelika, Alabama 36801.

Please take notice that the following documents were served on March 15, 2004 to all attorneys of record in the above styled and numbered cause;

1.  Answers to Oldcastles' First Set of Interrogatories by David and Tonya Tankersley

James B. Sprayberry (SPR008)
*One of the Attorneys for Plaintiffs*

**OF COUNSEL:**

James B. Sprayberry
ATTORNEY AT LAW
P.O. Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, Alabama 36803-0409
(334) 745-6244

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document has been provided to the following, by first class mail, on this the 15th day of March, 2004.

James A. Byram, Jr.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

John Denson
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

Charles Vercelli, Jr.
*Co-Council for Property Owners*
1019 South Perry Stret
Montgomery, Alabama 36104

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Guy Gunter
*Council for City of Opelika/Opelika Water Board*
P.O. Box 409
Opelika, Alabama 36801

James B. Sprayberry

2126

## IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
    Plaintiffs,                        )
                                       )
vs.                                    )        CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC., et al.,               )
                                       )
    Defendants.                        )

FILED
MAR 1 7 2004
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

TO:  Circuit Clerk of Lee County:

    Please take notice that on the 16th day of March, 2004,

      __X__  1.  A notice to take the deposition of:
                  Randall and Wanda Parker
                  Ronnie and Dorothy Griggs
                  Anthony and Carol Clark
                  Stan and Jackie Ledbetter
                  Ken and Naomi Schwieker
                  Mike and Ann Broadwater
                  David and Amanda Sumner
                  Donnie Smith
      _____  2.  Interrogatories
      _____  3.  Request for Admissions
      _____  4.  Request for Production
      _____  5.  Answers to Second Interrogatories
      _____  6.  Response to Request for Admissions
      _____  7.  Response to Second Request for Production
      _____  8.  Notice of Intent to Serve a Subpoena on a Non-Party
              as follows:

was served on all parties to this cause by the Defendant Oldcastle Materials.

                ADAMS, UMBACH, DAVIDSON & WHITE, LLP

                BY:_____
                  PHILLIP E. ADAMS, JR. (ADA025)
                  Attorney for Defendant
                  P. O. Box 2069
                  Opelika, AL 36803-2069

2127

## CERTIFICATE OF SERVICE

     This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 16th day of March, 2004:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

Of Counsel

2123

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE DAVIS; DONNA DAVIS; , et al | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    CIVIL ACTION NUMBER: CV-02-085 |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC.; et al. | ) |
| | ) |
| Defendants. | ) |

F I L E D

MAR 1 8 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF DISCOVERY DOCUMENTS

To:        Corinne T. Hurst, Clerk
           Lee County Justice Center
           2311 Gateway Drive
           Opelika, Alabama 36801

Please take notice that the following discovery documents have been filed on behalf of

Defendants, Virginia Young Priest; John Claude Young, c/o Virginia Young Priest, Louise Young

O'Brien; Virginia Hart Young and Gilmer Properties, Ltd, in the above-styled case:

(X)    Response to Plaintiffs' Third Request for Admissions.

DONE    this 18th day of  March ,  2004.

Respectfully submitted,

**OF COUNSEL FOR DEFENDANTS:**
**VIRGINIA YOUNG PRIEST; JOHN CLAUDE**
**YOUNG, C/O VIRGINIA YOUNG PRIEST;**
**LOUISE YOUNG O'BRIEN; VIRGINIA HART**
**YOUNG; AND GILMER PROPERTIES, LTD.**
SAMFORD, DENSON, HORSLEY,
 PETTEY, BRIDGES & HUGHES
P.O. Box 2345
Opelika, AL  36803-2345
(334) 745-3504
FAX (334) 745-3506

JOHN V. DENSON
DEN007

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been served on all Attorneys of Record in the above-styled cause, by mailing the same in U.S. Mail, postage prepaid, on this the _18th_ day of ___March___, 2004, as follows:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101-0078

H. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, GA  30092-3000

Charles E. Vercelli, Jr.
Suite 214, Union Station
300-B Water Street
Montgomery, Alabama 36104

James B. Sprayberry
Post Office Drawer 2429
Auburn, Alabama 36831-2429

J.M. (Jack) Weiss
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON
  & WHITE, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069

Guy F. Gunter, III
MELTON, GUNTER & MELTON
Post Office Box 409
Opelika, Alabama 36803-6244

John V. Denson

2180

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| **MIKE DAVIS; DONNA DAVIS; , et al** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NUMBER: CV-02-085** |
| | ) | |
| **HANSON AGGREGATES** | ) | |
| **SOUTHEAST, INC.; et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## RESPONSE OF YOUNG AND GILMER DEFENDANTS
## TO PLAINTIFFS' THIRD REQUEST
## FOR ADMISSIONS

COMES NOW, the Defendants, Virginia Young Priest, Claude John Young, Louise

Young O'Brian, Virginia Hart Young, (hereinafter referred to **"Young"**) and  Gilmer Properties,

Ltd  (hereinafter referred to as **"Gilmer"**) and  in response to Plaintiffs' Third Request for

Admissions states as follows:

      1.     The **Young** and **Gilmer** Defendants had insufficient information to admit that the

document, bate stamp numbers 2086-2191, is a complete and accurate copy of an official

government publication, and therefore, at this time denies said request.

      2.     Denied.

      3.     Denied.

      4.     The **Young** and **Gilmer** Defendants have insufficient information to admit that

the report, bate stamp numbers 2192-2197, is an accurate copy of an official

government publication, and therefore, at this time denies said request.

1

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NUMBER: CV-02-85 |
| | § | |
| HANSON AGGREGATES SOUTHEAST, | § | |
| INC., et al. | § | |
| Defendants. | § | |

## NOTICE OF SERVICE DISCOVERY DOCUMENTS

**F I L E D**

MAR 1 8 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

To:    Clerk of the Lee County Circuit Court
Lee County Justice Center
2311 Gateway Drive, Room 104
Opelika, Alabama 36801.

Please take notice that the following documents were served on March 18, 2004 to all attorneys of record in the above styled and numbered cause;

1.    Answers to Oldcastles' First Set of Interrogatories by David and Amanda Sumner; and

2.    Answers to Oldcastles' First Set of Interrogatories by Mike and Ann Broadwater.

James B. Sprayberry (SPR008)
*One of the Attorneys for Plaintiffs*

OF COUNSEL:
James B. Sprayberry
ATTORNEY AT LAW
P.O. Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, Alabama 36803-0409
(334) 745-6244

2152

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document has been provided to the following, by first class mail, on this the 18th day of March, 2004.

James A. Byram, Jr.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

John Denson
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

Charles Vercelli, Jr.
*Co-Council for Property Owners*
1019 South Perry Stret
Montgomery, Alabama 36104

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Guy Gunter
*Council for City of Opelika/Opelika Water Board*
P.O. Box 409
Opelika, Alabama 36801

_____
James B. Sprayberry

2133

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE DAVIS, et al., | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| HANSON AGGREGATES SOUTHEAST, | § |
| INC., et al. | § |
| Defendants. | § |

CASE NUMBER: CV-02-85

## NOTICE OF SERVICE DISCOVERY DOCUMENTS

F I L E D

MAR 1 8 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

To:    Clerk of the Lee County Circuit Court
       Lee County Justice Center
       2311 Gateway Drive, Room 104
       Opelika, Alabama 36801.

Please take notice that the following documents were served on March 17, 2004 to all attorneys of record in the above styled and numbered cause;

1.    Answers to Oldcastles' First Set of Interrogatories by Stanley and Jackie Ledbetter.

James B. Sprayberry (SPR008)
*One of the Attorneys for Plaintiffs*

**OF COUNSEL:**
James B. Sprayberry
ATTORNEY AT LAW
P.O. Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, Alabama 36803-0409
(334) 745-6244

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document has been provided to the following, by first class mail, on this the 17th day of March, 2004.

James A. Byram, Jr.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

John Denson
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Charles Vercelli, Jr.
*Co-Council for Property Owners*
1019 South Perry Stret
Montgomery, Alabama 36104

Guy Gunter
*Council for City of Opelika/Opelika Water
Board*
P.O. Box 409
Opelika, Alabama 36801

James B. Sprayberry

2186

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NUMBER: CV-02-85 |
| | § | |
| HANSON AGGREGATES SOUTHEAST, | § | |
| INC., et al. | § | |
| Defendants. | § | |

**F I L E D**

MAR 1 8 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF SERVICE DISCOVERY DOCUMENTS

To:    Clerk of the Lee County Circuit Court
       Lee County Justice Center
       2311 Gateway Drive, Room 104
       Opelika, Alabama 36801.

Please take notice that the following documents were served on March 17, 2004 to all attorneys of record in the above styled and numbered cause;

1. Answers to Oldcastles' First Set of Interrogatories by Ken and Naomi Schwieker.

James B. Sprayberry (SPR008)
*One of the Attorneys for Plaintiffs*

**OF COUNSEL:**
James B. Sprayberry
ATTORNEY AT LAW
P.O. Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, Alabama 36803-0409
(334) 745-6244

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049
(334) 834-8805

2136

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document has been provided to the following, by first class mail, on this the 17th day of March, 2004.

James A. Byram, Jr.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

John Denson
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

Charles Vercelli, Jr.
*Co-Council for Property Owners*
1019 South Perry Stret
Montgomery, Alabama 36104

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Guy Gunter
*Council for City of Opelika/Opelika Water
Board*
P.O. Box 409
Opelika, Alabama 36801

James B. Sprayberry

IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

FILED

MAR 1 8 2004    2187

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| | | |
|---|---|---|
| MIKE DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. CV-02-85 |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

TO: Circuit Clerk of Lee County:

Please take notice that on the 17th day of March, 2004,

_____ 1. A notice to take the deposition of:
_____ 2. Interrogatories
_____ 3. Request for Admissions
_____ 4. Request for Production
_____ 5. Answers to Second Interrogatories
__X__ 6. Response to Third Request for Admissions
_____ 7. Response to Second Request for Production
_____ 8. Notice of Intent to Serve a Subpoena on a Non-Party
         as follows:

was served on all parties to this cause by the Defendant Oldcastle Materials.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

BY:_____
PHILLIP E. ADAMS, JR. (ADA025)
Attorney for Defendant
P. O. Box 2069
Opelika, AL 36803-2069

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 17th day of March, 2004:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

Of Counsel

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**FILED**

MAR 1 9 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, et al.,          )
                             )
            Plaintiffs,      )
                             )
vs.                          )          Civil Action No. CV-02-0085
                             )
HANSON AGGREGATES SOUTHEAST, )
INC., et al.,                )
                             )
            Defendants.      )

## NOTICE OF SERVING DISCOVERY

Plaintiffs give notice of the filing of the following discovery in this case:

1.      Plaintiffs' Third Request for Admissions to All Defendants (dated March 15, 2004); and

2.      Plaintiffs' Supplemental Response to Request for Production of Documents (dated March 15, 2004).

_____
CHARLES E. VERCELLI, JR. (VER003)
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey
  & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

J.M. (Jack) Weiss
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the _17_ day of _____Mnrcl_____, 2004.

_____
OF COUNSEL

155-00\Not-Serv-Disc.3.wpd

2

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NUMBER: CV-02-85 |
| | § | |
| HANSON AGGREGATES SOUTHEAST, | § | |
| INC., et al. | § | |
| Defendants. | § | |

**F I L E D**

MAR 19 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF SERVICE DISCOVERY DOCUMENTS

To:    Clerk of the Lee County Circuit Court
       Lee County Justice Center
       2311 Gateway Drive, Room 104
       Opelika, Alabama 36801.

Please take notice that the following documents were served on March 19, 2004 to all attorneys of record in the above styled and numbered cause;

1.    Answers to Oldcastles' First Set of Interrogatories by Anthony and Carol Clark

James B. Sprayberry (SPR008)
*One of the Attorneys for Plaintiffs*

**OF COUNSEL:**
James B. Sprayberry
ATTORNEY AT LAW
P.O. Drawer 2429
Auburn, Alabama 36831-2429
(334) 821-7100

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, Alabama 36803-0409
(334) 745-6244

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document has been provided to the following, by first class mail, on this the 19th day of March, 2004.

James A. Byram, Jr.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

John Denson
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

Charles Vercelli, Jr.
*Co-Council for Property Owners*
1019 South Perry Stret
Montgomery, Alabama 36104

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Guy Gunter
*Council for City of Opelika/Opelika Water
Board*
P.O. Box 409
Opelika, Alabama 36801

James B. Sprayberry

2143

IN THE CIRCUIT COURT FOR
LEE COUNTY, ALABAMA

F I L E D
MAR 2 6 2004
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, et al.,                )
                                   )
        Plaintiffs,                )
                                   )
vs.                                )      CASE NO. CV-02-85
                                   )
HANSON AGGREGATES                  )
SOUTHEAST, INC. et al.,            )
                                   )
        Defendants.                )

## MOTION OF DEFENDANT, OLDCASTLE MATERIALS SOUTHEAST, INC., FOR AN ORDER GRANTING ENTRY UPON LAND FOR THE PURPOSE OF DRILLING MONITORING WELLS

COMES NOW defendant Oldcastle Materials Southeast, Inc. ("Oldcastle"), a defendant

in the above-styled case, and pursuant to the provisions of Rule 36 of the Alabama Rules of Civil

Procedure, moves this Court for an order granting Oldcastle entry upon Plaintiffs' land for the

purpose of drilling approximately six groundwater monitoring wells. As grounds for said

Motion, Oldcastle shows the Court as Follows:

1.      A central allegation in Plaintiffs' complaint is that the pumping of water from the

pit of the Opelika quarry -- formerly operated by defendant Hanson Aggregates Southeast, Inc.

("Hanson") and currently operated by Oldcastle -- has had a deleterious impact on the water table

in the area of Spring Villa, has caused Little Uchee Creek and the spring at Spring Villa to run

dry, and caused the formation of sinkholes in the vicinity.

2.      The Opelika quarry is approximately 1.5 miles west of Spring Villa. Whether the

pumping at the quarry is having an effect on the water table in the vicinity of Spring Villa

depends on whether there is a hydrogeologic connection between the quarry and Spring Villa. It

is the intent of Oldcastle to (a) determine whether there is a hydrogeologic connection between

the quarry and Spring Villa such that the pumping at the quarry has caused the spring and Little Uchee Creek to run dry and sinkholes to form, and (2) if so, devise the most appropriate water recharge strategy to mitigate the effect of pumping on the water table at Spring Villa.

3.     The most accurate way to determine whether there is a hydrogeologic interconnection between the quarry and Spring Villa is to collect data concerning the structural geology and hydrology in the vicinity of the two locations and at various points in between. This data can only be collected by the drilling of rock cores and the installation of a series of monitoring wells. The drilling and monitoring of such wells would provide direct evidence concerning the lateral extent of the zone of influence of the pumping at the quarry, and help determine whether such pumping is having any influence on the water table at Spring Villa.

4.     In order to have as complete and accurate picture as possible concerning the lateral extent of the zone of influence of the pumping at the quarry, a sufficient number of monitoring wells must be installed at the appropriate locations, and meaningful data must be collected. Oldcastle intends to drill, install and collect data from approximately 6 rock cores and groundwater monitoring wells (at locations and depths to be determined) in the vicinity and to the west of Spring Villa (toward the quarry). Oldcastle plans to monitor the water level and the pressure in these wells at various rates of pumping at the quarry. The extent to which the water level and pressure in the monitoring wells is affected by the quarry pumping will assist in ascertaining whether there is indeed any connection between the quarry and Spring Villa.

5.     The wells that are currently in existence are both too few in number and not properly located to provide adequate data regarding the connectivity between the quarry and Spring Villa. Use of data from these monitoring wells to assess the extent of the hydrogeologic impact of pumping from the quarry is entirely speculative.

6. Prior to the sale of the quarry to Oldcastle, Hanson installed six monitoring wells on the site. However, these wells were no further than several hundred feet from the quarry pit. While useful, data from these wells is not sufficiently informative of whether pumping from the quarry is having any effect on Spring Villa, which is located approximately 1.5 miles to the east of the quarry. Nor are these wells spaced such that one can determine the lateral extent of the zone of influence of the quarry pumping.

7. The monitoring wells installed in the vicinity of Spring Villa by experts retained by the Plaintiffs are likewise insufficient to determine whether pumping at the quarry is having an effect on the water table at Spring Villa. Only one of these wells is being continuously monitored for data -- monitoring well 2, which is located in the immediate area of the spring. Only sparse data exists from monitoring well 1 (which is right next to monitoring well 2 and thus not very informative) and from monitoring well 5 (which is located about a couple hundred feet to the southwest of monitoring well 2). Significantly, there are no operating monitoring wells in the one and a half mile span between the quarry and the Spring.

8. The installation and monitoring of the groundwater monitoring wells proposed by Oldcastle will provide the subsurface data necessary to permit the preparation of a complete picture of the geologic structure and hydrogeology between the quarry and Spring Villa. To the extent it is determined that there is a hydrogeologic connection between the two sites, the data collected will help determine the process, mechanism and volume capacity of that connection. This information would allow Oldcastle to design the most appropriate water recharge system to mitigate any impact its pumping has on the water table at Spring Villa.

9. Rule 34(a) provides that upon request, a party may be permitted entry upon land in the possession or control of a party litigant "for the purpose of inspection and measuring,

3

surveying, photographing, testing, or sampling the property or any designated object or operation thereon." Al. R. Civ. Proc. 34(a). As set forth above, access to Plaintiffs' property for the purpose of drilling approximately six groundwater monitoring wells is essential to Oldcastle's defense of this case. Granting such access will assist Oldcastle, as well as the Court, by providing it with an empirical and non-speculative basis for determining whether pumping from the Opelika quarry is in fact adversely impacting the water table in the vicinity of Spring Villa, and, if so, developing the appropriate remedial measures.

WHEREFORE, Oldcastle respectfully requests that this Court enter an order granting Oldcastle entry upon Plaintiffs' land for the purpose of drilling groundwater monitoring wells.

Respectfully submitted this the ____ day of March, 2004.

**PHILLIP E. ADAMS, JR.** (ADA025)
Attorney for Defendant, Oldcastle Materials
Southeast, Inc.
P.O. Box 2069
Opelika, AL 36803-2069
Tel. (334) 745-6466

70279448_1.DOC

4

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 26th day of March, 2004:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

_____
Of Counsel

2146

### IN THE CIRCUIT COURT FOR LEE COUNTY, ALABAMA

| | |
|---|---|
| MIKE DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   CASE NO. CV-02-85 |
| | ) |
| HANSON AGGREGATES | ) |
| SOUTHEAST, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**F I L E D**

MAR 2 9 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

TO:  Circuit Clerk of Lee County:

Please take notice that on the 29th day of March, 2004,

_____ 1. A notice to take the deposition of:
_____ 2. Interrogatories
_____ 3. Request for Admissions
_____ 4. Request for Production
_____ 5. Answers to Second Interrogatories
_____ 6. Response to Third Request for Admissions
_____ 7. Response to Second Request for Production
_____ 8. Notice of Intent to Serve a Subpoena on a Non-Party
as follows:
__X__ 9. Other:   Oldcastle Privilege Log

was served on all parties to this cause by the Defendant Oldcastle Materials.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

BY: _Phillip E. Adams Jr._

PHILLIP E. ADAMS, JR. (ADA025)
Attorney for Defendant
P. O. Box 2069
Opelika, AL 36803-2069

2149

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 29th day of March, 2004:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

_____
Of Counsel

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

**FILED**

MAR 3 1 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

MIKE DAVIS, et al.,                           :

     Plaintiffs,                              :

                                             :

v.                                            :    Civil Action No. CV-02-0085

                                             :

HANSON AGGREGATES SOUTHEAST,                  :
INC., et al.,
                                             :

     Defendants.                              :

## VERIFIED APPLICATION OF BRIAN E. DAUGHDRILL
## FOR ADMISSION *PRO HAC VICE*

Comes now BRIAN E. DAUGHDRILL, applicant herein, and respectfully represents the

following:

    1.    Applicant resides at 3223 Northbrook Drive, Atlanta, Georgia 30341;

678-406-9269; 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.

    2.    Applicant is an attorney and a member of the law firm of Phears & Moldovan,

4725 Peachtree Corners Circle, Suite 375, Norcross, Gwinnett County, Georgia 30092, 770-446-

2116.

    3.    Applicant has been retained personally by Hanson Aggregates Southeast, Inc. to

provide legal representation in connection with the above-styled matter now pending before the

above-named court in the State of Alabama.

    4.    Since November of 2000, applicant has been, and presently is, a member in good

standing of the Bar of the highest court of the State of Georgia, where applicant regularly

practices law. (Certificate of Good Standing attached as Exhibit "A".)

1

5.    Applicant has been admitted to practice before the following courts:

a.    all state and federal courts of Georgia, admitted 2000, State Bar of

Georgia

No. 205760

Applicant is presently a member in good standing of the Bars of those courts

listed above.

6.    Applicant presently is not subject to any disbarment proceedings.

7.    Applicant presently is not subject to any suspension proceedings.

8.    Applicant never has been subject to any disbarment proceedings.

9.    Applicant never has been subject to any suspension proceedings.

10.    Applicant never has had any certificate or privilege to appear and practice before

any administrative body suspended or revoked.

11.    Applicant, either by resignation, withdrawal, or otherwise, never has terminated

or attempted to terminate applicant's office as an attorney in order to avoid administrative,

disciplinary, disbarment, or suspension proceedings.

12.    Applicant has not filed an application to appear as counsel under Rule VII during

the past three (3) years.  A member of applicant's firm, H. Wayne Phears,  has filed an

application to appear as counsel under Rule VII during the past three (3) years

13.    Local counsel of record associated with applicant in this matter is James A.

Byram, Jr., who has offices at Balch & Bingham, 2 Dexter Avenue, Montgomery, Montgomery

County, Alabama 36104, 334-834-6500.

14.    Exhibit "B" attached hereto lists accurately the name and address of each party in

2

this matter, and the name and address of each counsel of record who has appeared for each party.

15.     Applicant agrees to comply with the provisions of the Alabama Rules of

Professional Conduct, and applicant consents to the jurisdiction of the courts and the disciplinary

boards of the State of Alabama.

16.     Applicant respectfully requests to be admitted to practice in the above-named

court for this cause only.

DATED this _2lth_ day of _March_ , 2004

PHEARS & MOLDOVAN

By: _____

Brian E. Daughdrill

PHEARS & MOLDOVAN
4725 Peachtree Corners Circle
Suite 375
Norcross, Georgia 30092
770-446-2116

3

STATE OF GEORGIA )

COUNTY OF GWINNETT )

I, Brian E. Daughdrill, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true.

_____
Brian E. Daughdrill

Subscribed and sworn to before me this 30th day of March , 2004.

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rule VII of the Rules Governing Admission to the Alabama State Bar.

DATED this 30th day of March , 2004.

_____
James A. Bryam

NOTICE OF HEARING

This application for admission is set for hearing before the court or administrative agency appearing in the style hereof on the 20th day of April , 2004, at 9:00 a.m.

4

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the Alabama State Bar by mail addressed to: Alabama State Bar, Attn: PHV Admissions, P.O. Box 671, Montgomery, Alabama 36101, accompanied by payment of the $100 filing fee to the Alabama State Bar on this 30th day of March, 2004.

James A. Bryam, Jr.

5

# EXHIBIT "A"

# STATE BAR OF GEORGIA



2155

Mr. Brian E. Daughdrill
Phears & Moldovan
Suite 375
4725 Peachtree Corners Circle
Norcross, GA  30092

**CURRENT STATUS:**    Active Member

**DATE OF ADMISSION TO PRACTICE:**    **11/02/2000**

**Attorney Bar Number:  205760**

Today's Date:    March 24, 2004

Listed below are the disciplinary actions, if any, which have been taken against this member:

| Supreme Court Docket # | State Disciplinary Board Docket # | Disposition |
|---|---|---|
| NA | NA | |

The prerequisites for practicing law in the State of Georgia are as follows:

    -Must be certified by the Office of Bar Admissions (either by exam or on motion)
    -Sworn in to the Superior Court in Georgia
    -Enrolled with the State Bar of Georgia which **is an arm of the Supreme Court of Georgia**

Under the privacy/confidentiality provision of the Bar Rule 4-221(d), any complaint against a member resolved prior to the filing and docketing of a disciplinary case in the Supreme Court is not a matter of public record, and may not be revealed without a waiver from the member.  It is the policy of the State Bar of Georgia to answer any inquiry about a member by disclosing only those complaints that have been docketed in the Supreme Court.  With respect to matters that are currently pending as active, undocketed cases, when an inquiry is received, the State Bar of Georgia shall not disclose the existence of those complaints.  Such non-disclosure should not be construed to confirm the existence of confidential complaints since the vast majority of members in good standing are not the subject of such confidential complaints.

This member is currently in "good standing" as that term is defined by State Bar Rule 1-204.  The member is current in license fees and is not suspended or disbarred as of the date of this letter.

This document hereby certifies that the above-mentioned individual is a registered member of the State Bar of Georgia and is currently in good standing.

**STATE BAR OF GEORGIA**

Brinda Lovvorn
Official Representative of State Bar of Georgia

HEADQUARTERS
104 Marietta Street ■ Suite 100
Atlanta, Georgia 30303 ■ (404) 527-8700
(800) 334-6865 ■ FAX (404) 527-8717

INTERNET ADDRESS
www.gabar.org

SOUTH GEORGIA
244 E. Second Street (Zip 31794) ■ P.O. Box 1390
Tifton, Georgia 31793-1390 ■ (229) 387-0446
(800) 330-0446 ■ FAX (229) 382-7435

# EXHIBIT "B"

2155

## PLAINTIFFS

**Wonda K. Bright**
245 Lee Rd. 166
Opelika, AL 36804

**Mike & Ann Broadwater**
610 Lee Rd. 166
Opelika, AL 36804

**Mittie Mae Broadwater**
574 Lee Rd. 166
Opelika, AL 36804

**Anthony & Carol Clark**
**Courtney Clark (a minor)**
1740 Lee Rd. 147
Opelika, AL 36804

**Michael & Donna Davis**
149 Lee Rd. 166
Opelika, AL 36804

**Edwards, Elaine, Alpha**
3274 Ala. Hwy. 169
3320 Ala. Hwy. 169
Opelika, AL 36804

**Mary Sue Eiland**
2853 Ala. Hwy. 169
Opelika, AL 36804

**Charolyn Medena Frizzell**
**Karla Frizzell (a minor)**
**Brianna Yougren (a minor)**
3173 Ala. Hwy. 169
Opelika, AL 36804

**Ronald & Dorothy Griggs**
3256 Ala. Hwy. 169
Opelika, AL 36804

**Mike & Stacy Hagans**
1668 Lee Road 147
Opelika, AL 36804

PLAINTIFFS (continued)

**Howard & Lisa Harmon**
**Judson Harmon (a minor)**
**Bria Harmon (a minor)**
145 Lee Road 707
Opelika, AL 36804

**Haward & Nora Jackson**
1141 Lee Road 166
Opelika, AL 36804

**Mike & Sheila LaMacchia**
**Russell LaMacchia (a minor)**
1355 Lee Road 147
Opelika, AL 36804

**Stanley & Jackie Ledbetter**
1330 Lee Road 166
Opelika, AL 36084

**Terry & Carol Long**
3379 Ala. Hwy. 169
Opelika, AL 36864

**Timothy & Adalene Manning**
3226 Ala. Hwy. 169
Opelika, AL 36804

**David & Cynthia Nash &**
**Jeanette Baggett**
1198 Lee Road 147
Opelika, AL 36804

**James & Shirley Parker**
3039 Ala. Hwy. 169
Opelika, AL 36804

**Randall & Wanda Parker**
**Ambur Parker (a minor)**
**Brandon Parker (a minor)**
1229 Lee Rd. 166
Opelika, AL 36804

**Pfingston, Betty**
**Jessica Pfingston (a minor)**
(no address provided by plaintiffs)

**PLAINTIFFS** (continued)

**Jeffrey & Maria Richardson**
**Natasha Richardson (a minor)**
265 Lee Rd. 705
Opelika, AL 36804

**David & Julie Sumner**
**Todd Sumner (a minor)**
164 Ala. Hwy. 148
Opelika, AL 36804

**Larry & Rita Sumner**
1100 Lee Rd. 147
Opelika, AL 36804

**Martha Ann Treadway**
**Jasmin King (a minor)**
**Hazel King (a minor)**
**Michael King (a minor)**
**Joseph King (a minor)**
3177 Ala. Hwy. 169
Opelika, AL 36804

**Billy Gene & Sherry Wallace**
**Aaron Wallace (a minor)**
1692 Lee Rd. 147
Opelika, AL 36804

**Michele "Mickie" Wilkes**
148 Lee Rd. 707
Opelika, AL 36804

**Shirley Wilson**
64 Lee Rd. 707
Opelika, AL 36804

**City of Opelika**
P. O. Box 390
Opelika, Alabama 36803

**The Utilities Board of the City of Opelika**
502 Geneva Street
Opelika, Alabama 36801

**PLAINTIFFS** (continued)

**Beauregard Water Authority**
P. O. Box 271
Opelika, Alabama 36801

**DEFENDANTS:**

**Hanson Aggregates Southeast, Inc.**
100 Crescent Centre Parkway
Suite 1240
Tucker, Georgia 30084

**Virginia Young Priest**
414 Charing Loop
Auburn, Alabama 36830

**Claude John Young**
c/o North Ridge Nursing Home
Opelika, Alabama 36801

**Louise Young O'Brian**
416 Charing Loop
Auburn, Alabama 36830

**Virginia Hart Young**
HC3 Box 4-C
Port St. Joe, Florida 32456

**Charles W. Gilmer, Sr.**
575 Lee Road 166
Opelika, Alabama 36801

**Alice C. Gilmer**
575 Lee Road 166
Opelika, Alabama 36801

**Charles W. Gilmer, Jr.**
7800 Lee Road 175
Salem, Alabama 36874

2160

**DEFENDANTS** (continued)

**Kammy Gilmer**
7800 Lee Road 175
Salem, Alabama 36874

**Barbara  Gilmer Smith**
1401 Lee Road 47
Opelika, Alabama 36804

**Gary Smith**
1401 Lee Road 47
Opelika, Alabama 36804

**Matthew Ruttledge Gilmer**
Lee Road 166
Opelika, Alabama 36804

**Lelia Wilder Gilmer**
Lee Road 166
Opelika, Alabama 36084

**ATTORNEYS**

**James B. Sprayberry**
P. O. Drawer 2429
Auburn, AL  36830

*(attorney for all individual plaintiffs and
plaintiffs City of Opelika, Utilities Board of the
City of Opelika, and Beauregard Water Authority)*

**Charles E. Vercelli, Jr.**
Vercelli & Associates, P.C.
1019 South Perry Street
Montgomery, AL  36104-5049

*(attorney for all individual plaintiffs and
plaintiffs City of Opelika, Utilities Board of the
City of Opelika and Beauregard Water Authority)*

2161

**ATTORNEYS** (Continued)

**Guy F. Gunter, III**
Melton, Gunter & Melton
P.O. Box 409
Opelika, AL 36803-0409

*(Attorney for plaintiffs, City of Opelika and
Utilities Board of the City of Opelika)*

**John V. Denson**
**Josh J. Jackson**
Samford, Denson, Horsley,
 Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

*(attorneys for defendants Virginia Young Priest,
Claude John Young, Louise Young O'Brian,
Virginia Hart Young, Charles W. Gilmer, Sr.,
Alice C. Gilmer, Charles W. Gilmer, Jr.,
Kammy Gilmer, Barbara Gilmer Smith,
Gary Smith, Matthew Ruttledge Gilmer, and
Lelia Wilder Gilmer)*

**James A. Byram, Jr.**
**Paul A. Clark**
Balch & Bingham LLP
2 Dexter Avenue
Montgomery, Alabama 36104

**H. Wayne Phears**
**Brian E. Daughdrill**
Phears & Moldovan
Suite 375
Norcross, Georgia 30092

*(attorneys for defendant Hanson Aggregates
Southeast, Inc.)*



# ALABAMA STATE BAR

415 Dexter Avenue • Post Office Box 671 • Montgomery, Alabama 36101
Telephone: 334 / 269-1515 • Fax: 334 / 261-6310
www.alabar.org

## STATEMENT

The following information, in response to the application of petitioner, is furnished in compliance with Rule VII, Rules Governing Admission to the Alabama State Bar *(Pro Hac Vice):*

**PETITIONER:**     Mr. Brian E. Daughdrill
Phears & Moldovan
4725 Peachtree Corners Cir. #375
Norcross, GA     30092-0000

**CURRENT APPLICATION:**

| | |
|---|---|
| Date Application Received: | March 31, 2004 |
| Case No.: | CV02-0085 |
| Style: | Mike Davis, et al. vs. Hanson Aggregates Southeast, Inc., et al. |
| Court/Agency: | Circuit Court of Lee County |
| Date of Hearing: | April 20, 2004 |

**LOCAL COUNSEL:**     Mr. James Asberry Byram Jr.
Balch & Bingham LLP
PO Box 78
Montgomery, AL     36101-0078

APPLICATIONS FOR RULE VII ADMISSION HAVE BEEN MADE BY ABOVE PETITIONER OR OTHER ATTORNEY MEMBERS OF PETITIONER'S FIRM IN THE PRECEDING 365 DAYS AS LISTED:

See Attached

*Emily Nainters*
PHV Admissions
March 31, 2004

# FILED
## APR 0 1 2004
**IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK**



### LAWYERS RENDER SERVICE

# Phears & Moldovan
## Dates reported: April 01,2001 - March 31,2004

| licant | Date App Received | Case | Court | G/D/P/M |
|---|---|---|---|---|
| Phears, H. Wayne | | | | |
| | 06/20/2003 | CV02-0085 | Circuit Court of Lee County | G |

FILED

APR 0 1 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    §
      Plaintiff,                      §
                                §
v.                                     §     CASE NUMBER: CV-02-85
                                §
HANSON AGGREGATES SOUTHEAST,           §
INC., et al.                           §
      Defendants.                     §

## NOTICE OF SERVICE DISCOVERY DOCUMENTS

To:    Clerk of the Lee County Circuit Court
       Lee County Justice Center
       2311 Gateway Drive, Room 104
       Opelika, Alabama 36801.

      Please take notice that the following documents were served on March 31, 2004 to all attorneys of record in the above styled and numbered cause;

      1.    Notice of Taking Deposition of Malcom C. LeBron.

                                                 _____
                                      James B. Sprayberry (SPR008)
                                      *One of the Attorneys for Plaintiffs*

OF COUNSEL:
James B. Sprayberry                    Charles E. Vercelli, Jr.
ATTORNEY AT LAW                        VERCELLI & ASSOCIATES, P.C.
P.O. Drawer 2429                       1019 S. Perry Street
Auburn, Alabama 36831-2429            Montgomery, Alabama 36104-5049
(334) 821-7100                         (334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, Alabama 36803-0409
(334) 745-6244

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document has been provided to the following, by first class mail, on this the 31st day of March, 2004.

James A. Byram, Jr.
Balch & Bingham, LLP
P.O. Box 78
Montgomery, Alabama 36101-0078

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

John Denson
Samford, Denson, Horsley, Pettey
& Bridges
P.O. Box 2345
Opelika, Alabama 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Charles Vercelli, Jr.
*Co-Council for Property Owners*
1019 South Perry Stret
Montgomery, Alabama 36104

Guy Gunter
*Council for City of Opelika/Opelika Water
Board*
P.O. Box 409
Opelika, Alabama 36801

James B. Sprayberry

# IN THE CIRCUIT COURT FOR
# LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
    Plaintiffs,                        )
                                       )
vs.                                    )    CASE NO. CV-02-85
                                       )
HANSON AGGREGATES                      )
SOUTHEAST, INC. et al.,                )
                                       )
    Defendants.                        )

FILED

APR 0 2 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## EXPERT WITNESS DISCLOSURE OF DEFENDANT,
## OLDCASTLE MATERIALS SOUTHEAST, INC.

Defendant Oldcastle Materials Southeast, Inc. ("Oldcastle"), by counsel, respectfully

submit this Disclosure of Expert Witnesses pursuant to Rule 26 of the Alabama Rules of Civil

Procedure.

## INTRODUCTORY STATEMENT AND RESERVATIONS

A.    This Expert Witnesses Disclosure ("Disclosure") sets forth the subject matter(s)

on which each expert is expected to testify in the trial of this matter.  Should Plaintiffs desire

further discovery of the findings and opinions to which these experts are expected to testify at

trial, Oldcastle will make all such witnesses available for deposition.

B.    To date, discovery is not completed in this case and Oldcastle's experts have not

completed their investigations.  Oldcastle reserves the right to supplement this Disclosure to

more fully set forth the substance of the experts' respective findings and opinions and a summary

of the grounds for each opinion.  Oldcastle also reserves the right to provide additional areas of

testimony, additional opinions, and additional grounds for opinions based on continuing

discovery in this matter.  Supplementation may take the form of amendments to this Disclosure,

a supplemental Disclosure, written report, deposition testimony or any other form sufficient to apprise Plaintiffs of the substance of and bases for the respective experts' opinions and/or additional areas of testimony, additional opinions, or additional grounds for opinions.

       C.      Oldcastle reserves the right to produce rebuttal opinion testimony upon completion of the depositions of Plaintiffs' expert witnesses and review of materials that were available to Plaintiffs' expert witnesses in formulating their opinions.

       D.      This Disclosure applies only to experts retained by Oldcastle in connection with this litigation. To the extent that other witnesses have developed opinions independent of this litigation, Oldcastle reserves the right to elicit these opinions at time of trial.

## EXPERT WITNESS DISCLOSURE

A.      Charles R. Faust, Ph.D.
           Geotrans, Inc.,
           46050 Manikin Plaza
           Sterling, VA 20166

       1.      Oldcastle expects to call Charles R. Faust, Ph.D., as an expert witness at trial.

       2.      The qualifications of Dr. Faust are summarized in the curriculum vitae attached as Exhibit A.

       3.      Dr. Faust is expected to testify concerning the hydrogeology in the area of the Opelika quarry and Spring Villa and whether there is hydrogeologic connection between the Opelika quarry and Spring Villa.

       4.      Oldcastle will supplement this designation with a written report setting forth the opinions of Dr. Faust and the bases for such opinions as soon as said report is available.

B.      Maria Zufall, Ph.D.
           Trinity Consultants
           6600 Peachtree Dunwoody Rd
           600 Embassy Row Suite 350
           Atlanta, GA 30328

1.     Oldcastle expects to call Maria Zufall, Ph.D., as an expert witness at trial.

2.     The qualifications of Dr. Zufall are summarized in the curriculum vitae attached as Exhibit B.

3.     Dr. Zufall is expected to testify concerning the atmospheric dispersion of fugitive dust emissions from the Opelika quarry.

4.     Oldcastle will supplement this designation with a written report setting forth the opinions of Dr. Zufall and the bases for such opinions as soon as said report is available.

C.     Kenneth Kaliski, P.E., Q.E.P.
       Resource Systems Group, Inc.
       331 Olcott Dr.
       White River Junction, VT 05001

1.     Oldcastle expects to call Kenneth Kaliski, P.E., Q.E.P., as an expert witness at trial.

2.     The qualifications of Mr. Kaliski are summarized in the curriculum vitae attached as Exhibit C.

3.     Mr. Kaliski is expected to testify concerning the cumulative noise impacts from the operations of the crushing plant and related equipment at the Opelika quarry any mitigating impact on noise emanating from the Opelika quarry.

4.     Oldcastle will supplement this designation with a written report setting forth the opinions of Mr. Kaliski's and the bases for such opinions as soon as said report is available.

D.     McRoy Sauls
       Sauls Seismic, Inc.
       3710 4th Avenue South
       Birmingham, AL 35222

1.     Oldcastle expects to call McRoy Sauls as an expert witness at trial.

2.      The qualifications of Mr. Sauls are summarized in the curriculum vitae attached as Exhibit D.

3.      Mr. Sauls is expected to testify concerning the extent to which blasting at the Opelika quarry is having any adverse impact on Plaintiffs' properties in the form of fugitive noise, vibrations and/or air concussions.

4.      Oldcastle will supplement this designation with a written report setting forth the opinions of Mr. Sauls and the bases for such opinions as soon as said report is available.

Respectfully submitted this the _1ST_ day of April, 2004.

**PHILLIP E. ADAMS, JR.** (ADA025)
Attorney for Defendant, Oldcastle Materials
Southeast, Inc.
P.O. Box 2069
Opelika, AL 36803-2069
Tel. (334) 745-6466

70279948_1.DOC

4

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing by placing a copy of same in the United States Mail, first class postage prepaid, and properly addressed to the following, this the 1st day of April, 2004:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama  36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama  36104-5049

Guy F. Gunter, III, Esq.
Melton, Gunter & Melton
P. O. Box 409
Opelika, AL  36803-0409

John Denson, Esq.
Samford, Denson, Horsley,
Pettey, Bridges & Hughes
P. O. Box 2345
Opelika, Alabama  36803-2345

James A. Byram, Jr., Esq.
Paul A. Clark, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama  36101

H. Wayne Phears, Esq.
Phears & Moldovan, Ste. 375
4725 Peachtree Corner Circle
Norcross, Georgia 30092

_____
Of Counsel



**CHARLES R. FAUST, PH.D., P.G.**
*PRESIDENT, PRINCIPAL HYDROGEOLOGIST*

2171

**Education:**

Ph.D., Geology, The Pennsylvania State University, 1976
B.S., Geology, Department of Geosciences, The Pennsylvania State University, 1967

**Professional Experience:**

GeoTrans, Inc., Sterling, Virginia, (1996-Present), *President and Principal Hydrogeologist*
GeoTrans, Inc., Sterling, Virginia (1979-1996), *Vice President and Principal Hydrogeologist*
U.S. Geological Survey, Water Resources Division, Northeastern Region, Reston, Virginia, (1971-1979), *Hydrologist/Geologist*
Department of Geosciences, The Pennsylvania State University, (1972-1974), *Graduate Research Assistant*

More than 25 years of experience in aquifer parameter estimation; well test design and analysis; numerical simulation; multi-phase flow; solute and heat transport; statistical applications to geology; flow in fractured media; hazardous and radioactive waste management; and geothermal reservoir analysis.

**Relevant Project Experience:**

DNAPL Contaminated Site, Buffalo, New York – Principal Investigator for a PRP funded RI/FS at a former manufactured gas plant site. Delineated contamination in soils, groundwater, and surface water; designed and evaluated alternative remedial measures; and provided expert witness and negotiation support with the State of New York and non-participating PRPs.

Superfund Landfill, Missouri – Project Manager for groundwater modeling, hydrogeologic analysis, and expert testimony for remediation activities. Performed innovative and detailed assessment of the flow relationships between an aquifer and river using three-dimensional flow and transport models.

Love Canal, Niagara Falls, New York – Principal Investigator for modeling and analysis of DNAPL flow and transport at the Love Canal Superfund Site. Modeling supported analysis of remedial alternatives, including consideration of slurry and concrete barrier walls, clay and synthetic membrane landfill covers, and French drain leachate collection systems.

DNAPL Contaminated Site, West Virginia – Principal Investigator supporting a comprehensive remedial site investigation, contaminated soil removal action, baseline risk assessment, and preparation of a project closure strategy based on identified risk to human health and groundwater remediation technical impracticability.

Industrial Facility, southeastern Pennsylvania – Principal Investigator for design of a groundwater recovery system at a RCRA regulated facility. Supervised field studies (well installation, surface geophysics, aquifer testing, and sampling). Designed extraction system and wrote supporting documents for submittal to USEPA, the Pennsylvania DER, and the Delaware River Basin Commission. System is operating at design capacity.

Confidential Client, Delaware – Principal Investigator for a RCRA Facility Investigation (RFI) and Corrective Measures Study (CMS). The RFI activities included well installation, sampling, soil gas surveys, tracer tests, aquifer tests, and groundwater modeling. The CMS evaluated soil and groundwater remediation alternatives. A "no action" with monitoring alternative was recommended. The RFI and CMS reports were approved by USEPA, and the "no action" with monitoring plan was adopted by USEPA for the site.

DOE's Savannah River Site, South Carolina – Developed a three-dimensional groundwater flow and solute transport code called FTWORK. This code simulates groundwater flow through large, complex, multilayered, fully-saturated, porous hydrogeologic systems. Transport mechanisms include advection, dispersion, adsorption, and decay. We documented the model, and have extensively applied it at this site and elsewhere. The model is in the public domain and is used by other consultants and engineering companies.

---

*GeoTrans, Inc.*

# EXHIBIT A



CHARLES R. FAUST, PH.D., P.G.
PRESIDENT, PRINCIPAL HYDROGEOLOGIST

Confidential Client – Developed SWANFLOW (Simultaneous Water And Non Aqueous Phase Flow), a finite-difference model that simulates the flow of water and an immiscible non-aqueous phase liquid (NAPL) in and below the vadose zone. This model was constructed for applications such as: hazardous waste migration analyses, groundwater restoration, and fuel spills and leaks. We documented the model for USEPA and support the model through a users group.

Whitmoyer Laboratories Site, Pennsylvania – Principal Investigator for a PRP funded Remedial Design/Remedial Action for the groundwater operable unit. The groundwater remedy will address arsenic contamination in a limestone and dolomite aquifer.

Superfund Site, Michigan – Principal Investigator for the design of a groundwater extraction system at a NPL site. The design of the system was based on the site Consent Order concept. A groundwater flow model was calibrated to site hydrogeological conditions and used to optimize the location, size and depths of drains and recharge trenches.

Two Superfund Site, southern New Jersey – Principal Investigator for groundwater investigations in the Pinelands area. Among other activities, numerical models for flow and solute transport were used to evaluate the potential for future contamination migration. The computer models were also used to evaluate groundwater pumping strategies.

NPL Site, Medley, Florida – Principal Investigator for stabilization of PCB and lead impacted soil and the analysis of the effectiveness of this remedy. Work included oversight of USEPA's RI/FS contractor on behalf of a PRP. A groundwater model was developed to establish monitoring action levels for the selected remedy (stabilization of PCB and lead contaminated soil). The model derived action levels were incorporated in the consent order for the site. The remedy was implemented and continued monitoring conducted by GeoTrans has shown the remedy to be effective.

Consolidated Edison, New York – Project Manager for modeling and analysis of the effects of a hypothetical nuclear reactor core melt-down. This included analysis of groundwater flow, heat transport, and radionuclide migration.

Confidential Client, Qatif Area, Saudi Arabia – Principal Investigator for groundwater and solute transport modeling to assess irrigation improvements. Groundwater modeling was used to define impacts including future water levels and consequent effects on well and spring production, pump settings, and migration of poor-quality groundwater.

Confidential Client, Jemez Mountains, New Mexico – Project Manager for computer modeling for impact assessment of the hydrologic impact of geothermal energy development, including estimates and prediction of geothermal reservoir history and effects on groundwater outflow to downstream users.

IBM Corporation, Manassas, Virginia – Conducted a groundwater contamination investigation and remedial program. The purpose of the study was to characterize the fracture flow system underlying the area and to assess the extent of groundwater and soil-water contamination by VOCs, primarily TCE. Performed groundwater modeling to assess the transport time and areal extent of contamination and to predict future temporal and spatial migration of the plume.

BCM, Inc., Lipari Landfill, New Jersey – Principal Investigator for conceptual design analysis of various remedial measures. Provided support to PRP for negotiation and litigation activities with the USEPA. Numerical groundwater models were applied to help interpret and predict the behavior of groundwater flow and convective contaminant transport. The results were incorporated into the engineering decisions regarding remedial measures.

Confidential Client, New Jersey – Principal Investigator for an owner-funded Remedial Investigation/Feasibility Study under a consent order and ECRA. Soil and groundwater contamination from volatile chemicals and mercury are the primary concerns at the site.

Confidential Client, Washington D.C. – Principal Investigator for groundwater/remedial action study at a former manufactured gas site. This project includes characterization of shallow and deep flow systems, design of a recovery well system, and localized soil sampling and analysis for PCB. The results of this investigation will be used to implement remediation and treatment of contaminated groundwater.

---

**GeoTrans, Inc.**

CHARLES R. FAUST, PH.D., P.G.
*PRESIDENT, PRINCIPAL HYDROGEOLOGIST*

**Professional Certification:**

Certified Professional Geologist, VA
Certified Professional Geologist, PA

**Awards:**

Honor Societies and Awards:
ASCE 1985 Wesley W. Horner Award
P.D. Krynine Research Fund Award
Phi Kappa Phi
Fellow Geological Society of America
U.S. Navy Achievement Medal

**Publications:**

*Articles in Refereed Journals:*

1. Faust, C.R., J.H. Guswa, J.W. Mercer, 1989. Simulation of three-dimensional flow of immiscible fluids within and below the unsaturated zone, *Water Resources Research*, 25(12): 2449-2464.

2. Cohen, R.M., R.R. Rabold, C.R. Faust, J.O. Rumbaugh, and J. Bridge, 1987. Investigation and hydraulic containment of chemical migration at four landfills in Niagara Falls, New York, *Civil Engineering Practice*, 2(1):33-58.

3. Mercer, J.W., C.R. Faust, R.M. Cohen, P.F. Andersen, and P.S. Huyakorn, 1985. Remedial action assessment for hazardous waste sites via numerical simulation, *Water Management and Research*, 3:377-387.

4. Faust, C.R., 1985. Transport of immiscible fluids within and below the unsaturated zone: A numerical model, *Water Resources Research*, 21(4):487-596.

5. Faust, C.R., J.W. Mercer, S.D. Thomas, and W.P. Balleau, 1984. Quantitative analysis of existing conditions and production strategies for the Baca geothermal system, New Mexico, *Water Resources Research*, 20(5):601-618.

6. Andersen, P.F., C.R. Faust, and J.W. Mercer, 1984. Analysis of conceptual designs for remedial measures at Lipari Landfill, New Jersey, *Ground Water*, 22(2):176-190.

7. Faust, C.R., and J. W. Mercer, 1984. Evaluation of slug tests in wells containing a finite-thickness skin, *Water Resources Research*, 20(4):504-506.

8. Mercer, J.W., L.R. Silka, and C.R. Faust, 1983. Modeling groundwater flow at Love Canal, New York, *Journal of Environmental Engineering*, ASCE, 109(4):924-942.

9. Huyakorn, P.S., B.H. Lester, and C.R. Faust, 1983. Finite-element techniques for modeling groundwater flow in fractured aquifers, *Water Resources Research*, 19(4):1019-1035.

10. Voight, B., and C.R. Faust, 1982. Frictional heat and strength loss in some rapid landslides, *Geotechnique*, 32(1):43-54.

11. Maddock, T., J.W. Mercer, and C.R. Faust, 1982. Management model for power production from a geothermal field: 1. Hot water reservoir and power plant model, *Water Resources Research*, 18(3):499-512.

**GeoTrans, Inc.**

CHARLES R. FAUST, PH.D., P.G.
*PRESIDENT, PRINCIPAL HYDROGEOLOGIST*

2174

12. Faust, C.R., L.R. Silka, and J.W. Mercer, 1981. Computer modeling and groundwater protection, Guest Editorial, *Ground Water*, 19(4):362-365.

13. Faust, C.R., and J.W. Mercer, 1980. Ground water modeling: Recent developments, *Ground Water*, 18(6):596-577.

14. Mercer, J.W., and C.R. Faust, 1980. Ground water modeling: Applications, *Ground Water*, 18(5):486-497.

15. Mercer, J.W., S.P. Larson, and C.R. Faust, 1980. Simulation of saltwater interface motion, *Ground Water*, 18(4):374-385.

16. Faust, C.R., and J.W. Mercer, 1980. Ground water modeling: Numerical models, *Ground Water*, 18(4):395-409.

17. Mercer, J.W., and C.R. Faust, 1980. Ground water modeling: Mathematical models, *Ground Water*, 18(3):212-227.

18. Mercer, J.W., and C.R. Faust, 1980. Ground water modeling: An overview, *Ground Water*, 18(2):108-115.

19. Mercer, J.W., and C.R. Faust, 1979. Geothermal reservoir simulation 3: Application of liquid and vapor dominated hydrothermal modeling techniques to Wairakei, New Zealand, *Water Resources Research*, 15(3):653-671.

20. Mercer, J.W., and C.R. Faust, 1979. A review of numerical simulation of hydrothermal systems, *Hydrological Sciences Bulletin*, 24(3):335-343.

21. Faust, C.R., and J.W. Mercer, 1979. Geothermal reservoir simulation 2: Numerical solution techniques for liquid and vapor dominated hydrothermal systems, *Water Resources Research*, 15(1):31-46.

22. Faust, C.R., and J.W. Mercer, 1979. Geothermal reservoir simulation 1: Mathematical models for liquid and vapor dominated hydrothermal systems, *Water Resources Research*, 15(1):23-30.

23. Yotsukura, N., A.P. Jackman, and C.R. Faust, 1973. Approximation of Heat Exchange at the Air Water Interface: *Water Resources Research*, 9(1):118-128.

*Conference or Symposium Proceedings:*

1. Faust, C.R., S.J. Wamback, and C.P. Spalding, 1990. Characteristics of the migration of immiscible fluids in glacial deposits and dolomite in Niagara Falls, New York, *Proceedings of IAH Conference Calgary '90* (April 1620, 1990), Calgary, Alberta, Canada.

2. Faust, C.R., R.R. Rabold, and J.W. Mercer, 1988. Modeling remedial actions at S-Area, Niagara Falls, NY, *Proceedings of the Seminar on Impact of Hazardous Waste Facilities on Water Utilities*, American Water Works Association Annual Conference, Orlando, FL.

3. Mercer, J.W., C.R. Faust, R.M. Cohen, P.F. Andersen, and P.S. Huyakorn, 1984. Remedial Action Assessment for Hazardous Waste Sites Via Numerical Simulation, Seventh Annual Madison Waste Conference on Municipal & Industrial Waste, University of Wisconsin, Madison, Wisconsin.

4. Huyakorn, O.S., D.E. Dougherty, and C.R. Faust, 1983. An improved finite-element model for simulating subsurface heat storage, International Conference on Subsurface Heat Storage in Theory and Practice (June 6-8), Stockholm, Sweden.

5. Hoyakorn, P.S., D.E. Dougherty, and C.R. Faust, 1982. Numerical simulation of thermal energy storage problems, *Proceedings of the 19th IMACS Congress on System Simulation and Scientific Computation* (August 8-13), Montreal, 2:296-298.

---

**Geo**Trans, Inc.

CHARLES R. FAUST, PH.D., P.G.
*PRESIDENT, PRINCIPAL HYDROGEOLOGIST*

2170

6.  Faust, C.R., 1982. The Use of Modeling in Monitoring Network Design, *Proceedings of the Second National Symposium on Aquifer Restoration and Ground Water Monitoring*, National Water Well Association, pp. 156-162.

7.  Faust, C.R., and J.W. Mercer, 1982. Preliminary analysis of groundwater development and brackish water upconing at Virginia Beach, Virginia, Special Publications: No. 1, *Georgia Southwestern College Studies of the Hydrogeology of the Southeastern United States*, B.F. Beck, (ed.), pp. 30-37.

8.  Faust, C.R., J.W. Mercer, and W.J. Miller, 1980. The DOE code comparison study: Summary of results for problem 1, Presented at the Sixth Workshop on Geothermal Reservoir Engineering (December 17), Stanford, California.

9.  Mercer, J.W., and C.R. Faust, 1979. Reservoir engineering and evaluation, Presented at the Geothermal Resources Council Symposium on Geothermal Energy and its Direct Uses in the Eastern United States, Roanoke, Virginia.

10. Li, T.M.C., J.W. Mercer, C.R. Faust, and R.J. Greenfield, 1978. Simulation of geothermal reservoirs including changes in porosity and permeability due to silica-water reactions, Presented at the Fourth Workshop on Geothermal Reservoir Engineering, Stanford University, Stanford, California.

11. Huyakorn, P.S., G.F. Pinder, C.R. Faust, and J.W. Mercer, 1978. Finite-element simulation of two-phase flows in porous media: Computational Techniques for Interface Problems, American Society of Mechanical Engineers Applied Mechanics Division, 30:19-43.

12. Mercer, J.W., and C.R. Faust, 1976. The application of finite-element techniques to immiscible flow in porous media, *Proceedings, International Conference on Finite Elements in Water Resources* (July 1216), Princeton University, Pentech Press, pp. 121-157.

13. Faust, C.R., and J.W. Mercer, 1976. An analysis of finite-difference and finite-element techniques for geothermal reservoir simulation, *Proceedings of the Fourth SPE Symposium on Numerical Simulation of Reservoir Performance* (February 19-20), Los Angeles, California, pp. 337-354.

14. Mercer, J.W., and C.R. Faust, 1975. Simulation of water and vapor-dominated hydrothermal reservoirs, Paper SPE 5520 presented at 50th Annual Fall Meeting of the Society of Petroleum Engineers of AIME (September 28October 1), Dallas, Texas.

15. Faust, C.R., and J.W. Mercer, 1975. Mathematical modeling of geothermal systems, *Proceedings of the Second United Nations Symposium on the Development and Use of Geothermal Resources*, (May 20-29), San Francisco, California, 3:1633-1642.

16. Mercer, J.W., C.R. Faust, and G.F. Pinder, 1974. Geothermal reservoir simulation, *Proceedings of National Science Foundation Conference on Research for the Development of Geothermal Energy Resources* Pasadena, California, pp. 256-257.

Technical Reports:

1.  Cohen, R.M., A.H. Vincent, J.W. Mercer, C.R. Faust, and C.P. Spalding, 1993. *Methods for Monitoring Pump-and-Treat Performance*, USEPA Robert S. Kerr Environmental Research Laboratory, Ada, Oklahoma, 114 pp.

2.  Faust, C.R., P.N. Sims, C.P. Spalding, and P.F. Andersen, 1989. FTWORK: Groundwater flow and solute transport in three-dimensions, GeoTrans, Inc. WSRC-RP-89-1085 prepared for United States Department of Energy, Westinghouse, Savannah River Plant, Aiken, South Carolina.



CHARLES R. FAUST, PH.D., P.G.
*PRESIDENT, PRINCIPAL HYDROGEOLOGIST*

3.  Faust, C.R., and J.O. Rumbaugh, III, 1986. SWANFLOW: Simultaneous Water, Air, and Nonaqueous Phase Flow, Prepared by GeoTrans, Inc., Herndon, Virginia, for the United States Environmental Protection Agency, Washington, DC.

4.  Mercer, J.W., C.R. Faust, W.J. Miller, III, and F.J. Pearson, Jr., 1981. Review of simulation techniques for aquifer thermal energy storage, ATES, Pacific Northwest Laboratory Report, PNL3769, 183 pp.

5.  Mercer, J.W., S.P. Larson, and C.R. Faust, 1980. Finite-difference model to simulate the areal flow of saltwater and freshwater separated by an interface, U.S. Geological Survey Open File Report 80407, 88pp.

6.  Maddock, T., III, J.W. Mercer, C.R. Faust, and E.D. Attanasi, 1979. Management model for electrical power production from a hot-water geothermal reservoir, Reports on Natural Resources Systems No. 34, University of Arizona, Tucson, Arizona, 114 pp.

7.  Faust, C.R., and J.W. Mercer, 1977. Finite-difference model of two-dimensional single and two-phase heat transport in a porous medium: Version I, U.S. Geological Survey Open-File Report 77234.

8.  Wells, R.B., C.R. Faust, and J.W. Mercer, 1976. A cross-section plotting program (CSPP) for Gridded (Map) Data, U.S. Geological Survey Open File Report 76689.

*Abstracts for Papers not Listed:*

1.  Faust, C.R., and N. Shifrin, 1986. Use of risk assessment in determining groundwater remedies for the Hyde Park Landfill, in the Town of Niagara, New York: Hydrogeology and fate of chemicals (Abstract), 1986 AGU Fall Meeting/ASLO Winter Meeting, San Francisco, California.

2.  Faust, C.R., and B. Voight, 1979. Heat-induced fluid pressure enhancement mechanism in seismic faulting (Abstract), Annual Spring Meeting of the American Geophysical Union, Washington, DC.

3.  Faust, C.R., and J.W. Mercer, 1977. Mathematical models as an aid to understanding the geohydrology of hydrothermal systems (Abstract), Geological Society of America Annual Meeting, Seattle, Washington.

*Books and Book Chapters:*

1.  Mercer, J.W., C.R. Faust, W.J. Miller, and F.J. Pearson, Jr., 1982. Review of simulation techniques for aquifer thermal energy storage (ATES), in Advances in Hydroscience, Academic Press, New York, 13:11-29.

2.  Mercer, J.W., and C.R. Faust, 1981. Ground Water Modeling: National Water Well Association, Columbus, Ohio, 60 pp.

3.  Mercer, J.W., and C.R. Faust, 1980. The physics of fluid flow and heat transport in geothermal systems, in Sourcebook on the production of electricity from geothermal energy, Joseph Kestin (ed.), U.S. Department of Energy DOE/RA/40511, pp. 121-135.

*Miscellaneous:*

1.  Mercer, J.W., C.R. Faust, and L.R. Silka, 1984. Groundwater flow modeling study of the Love Canal area, New York, *Ground Water Contamination*, J.D. Bredehoeft and T.M. Usselman (eds.), National Research Council, pp. 109-119.

2.  Faust, C.R., 1976. Numerical simulation of fluid flow and energy transport in liquid and vapor-dominated hydrothermal systems, Ph.D. Thesis, The Pennsylvania State University, 163 pp.

2147

# Maria J. Zufall, Ph.D.

6600 Peachtree Dunwoody Road

600 Embassy Row, Suite 350

Atlanta, Georgia 30328

Phone: (770) 394-4001    Fax: (770) 394-3610    E-mail: mzufall@trinityconsultants.com

## EDUCATION

**Carnegie Mellon University,** Pittsburgh, PA
Ph.D., Department of Civil and Environmental Engineering, August 1998
Thesis Title: *Dry Deposition of Aerosols to Water Surfaces: Effects of Hygroscopic Growth and Wave Interactions*

**Carnegie Mellon University,** Pittsburgh, Pennsylvania
M.S., Department of Civil and Environmental Engineering, May 1995
Thesis Title: *Dry Deposition of Atmospheric Contaminants to Lake Michigan*

**Cornell University,** Ithaca, NY
B.S. with Distinction, Department of Civil and Environmental Engineering, May 1993

## EXPERIENCE

**Trinity Consultants,** Atlanta, Georgia
*Project Supervisor (2002 – present).* Propose, manage, and implement air quality consulting projects at environmental consulting firm. Projects include environmental regulatory evaluations for industrial facilities, air quality permitting, air dispersion modeling, and litigation support services. Serve as instructor for courses on air quality permitting and dispersion modeling.

*Consultant(2000 – 2002).* Provide consulting services to industrial clients to assure facilities are in compliance with air quality regulations. Includes development of construction permit applications, facility audits, and air dispersion modeling. Conduct detailed dispersion modeling analyses for near-field and far-field impacts.

**U. S. Environmental Protection Agency,** Research Triangle Park, North Carolina
*Environmental Scientist, Human Exposure Analysis Branch (1998 – 2000).* Modeled human exposure to airborne particulate matter using indoor and outdoor air quality models and human activity patterns. Conducted multimedia assessment of children's exposure to pesticides.

**Carnegie Mellon University,** Pittsburgh, Pennsylvania
*Research Assistant, Department of Civil and Environmental Engineering (1994 – 1998).* Investigated dry deposition of atmospheric aerosols to water surfaces through mathematical modeling, wind tunnel experiments, and field studies.

*Course Instructor, Department of Civil and Environmental Engineering (1997).* Designed curriculum, tests, and assignments and delivered lectures for a senior/graduate level course in air quality engineering.

# EXHIBIT B

SELECTED PUBLICATIONS AND PRESENTATIONS

Zufall, M. J., Bailey, R. B., Simonsen, S. L. 2001. Regulatory Applications of CALPUFF Modeling. Presented at 2001 Air and Waste Management Association Annual Conference, June 28, 2001.

Burke, J. M., Zufall, M. J. and Ozkaynak, H. 2001. "A Population Exposure Model for Particulate Matter: Case Study Results for PM$_{2.5}$ in Philadelphia, PA," *Journal of Exposure Analysis & Environmental Epidemiology* 11(6), 470-489.

Rea, A. W., Zufall, M. J., Williams, R. W., Sheldon, L., Howard-Reed C. 2001. "The influence of human activity patterns on personal PM exposure: A comparative analysis of filter-based and continuous particle measurements." *Journal of the Air and Waste Management Association.* 51:1271-1279.

Howard-Reed, C., Rea, A. W., Zufall, M. J., Burke, J. M., Williams, R. W., Suggs, J. C., Williams, L. S., Walsh, D. and Kwok, R. 2000. "Use of a continuous nephelometer to measure personal exposure to particles during the U.S. Environmental Protection Agency Baltimore and Fresno studies". *Journal of the Air and Waste Management Association.* 50:1125 – 1132..

Zufall, M.J., H. Ozkaynak, M. Brauer, W. Ott, and J. Spengler. 1999. "Particulate Matter Concentrations in Non-Residential Microenvironments: A Review" presented at the 1999 Joint Annual Meetings of the International Society of Exposure Analysis and the International Society for Environmental Epidemiology, September 5 to 8, 1999, Athens, Greece.

Zufall, M. J., Dai, W., Davidson, C. I., and Etyemezian, V. 1999. "Effects of waves on dry deposition rates of atmospheric aerosols to natural water surfaces: I. Mathematical Modeling." *Atmospheric Environment,* 33:4273-4281

Zufall, M. J., Dai, W., and Davidson, C. I. 1999. "Effects of waves on dry deposition rates of atmospheric aerosols to natural water surfaces: II. Wind Tunnel Studies."*Atmospheric Environment,* 33:4283-4290

Zufall, M. J., Davidson, C. I., Caffrey, P. F. and Ondov, J. M. 1998 "Airborne concentrations and dry deposition fluxes of particulate chemical species to southern Lake Michigan." *Environmental Science and Technology* 32: 1623-1628.

Zufall, M. J. and Davidson, C. I. 1998. "Dry deposition of particles." *In* R. M. Harrison and R. Van Grieken, eds. *Atmospheric Particles.* John Wiley and Sons. New York. pp. 426-473.

Zufall, M. J., Bergin, M. H., and Davidson, C. I. 1998. "Effects of hygroscopic growth on dry deposition of (NH$_4$)$_2$SO$_4$ to water surfaces -- a non-equilibrium approach." *Environmental Science and Technology.* 32: 584-590.

Zufall, M. J. and Davidson, C. I. 1997. "Dry deposition of particles to water surfaces." *In* J. Baker, ed. *Atmospheric Deposition of Contaminants to the Great Lakes and Coastal Waters.* Pergamon Press. New York. pp. 1-16.



# KENNETH H. KALISKI P.E., Q.E.P., INCE BRD. CERT.
## DIRECTOR OF ENVIRONMENTAL SERVICES

### EDUCATION, LICENSES, AND CERTIFICATIONS

B.E. Engineering, Dartmouth College

B.A. Biological Sciences and Environmental Studies, Dartmouth College

Qualified Environmental Professional, Inst. of Professional Environmental Practice

Licensed Professional Engineer, Vermont and New Hampshire

Board Certified, Institute of Noise Control Engineering

### EXPERIENCE

Mr. Kaliski is the Director of Resource Systems Group's Environmental division. He has been with the firm since its founding in 1987. He manages projects and has served as an expert witness in the areas of community noise, air pollution, and traffic impacts. His projects include work in Vermont, New Hampshire, Massachusetts, Maine, New York, Connecticut, New Jersey, Alabama and Florida. In addition to developing the firm's air pollution and noise programs, he has authored much of the firm's traffic, air, and noise software, some of which is commercially available.

### RESPONSIBILITIES & RELEVANT PROJECTS (PARTIAL LIST)

*Noise Impact Evaluation of a Snowmaking System*—performed noise modeling of a proposed snowmaking system at the Viking Ski Touring Center in Londonderry, Vermont. Evaluated effectiveness of noise barriers in reducing noise levels.

*Sandbar Aggregate Quarry Noise Evaluation*—developed noise level estimates at nearby residences from a quarrying and crushing operation proposed for Milton, Vermont. Modeled the noise attenuation due to natural earth berms, hills, and man-made barriers. Proposed additional noise attenuation strategies to meet local and national guidelines.

*Hookset Truck Depot Noise Impact Analysis*—evaluated existing and predicted future noise levels after expansion of a truck depot. Data collection included measuring background automobile speeds and noise levels on highway, and measuring idling and accelerating truck noise levels, and modeling impact of noise from depot at various times of day.

*Bennington, Vermont By-Pass Environmental Impact Study*—analyzed noise impacts of the proposed US 7 By-pass around Bennington, Vermont. Monitored existing noise levels and updated noise and traffic levels for use in noise modeling. Submitted report as part of a Federal Environmental Impact Statement.

*C&S Wholesale Grocer's Expansion Noise Impact Study*—forecasted noise levels at nearby residences and motels. Modeled each of 24 hours using various traffic counts, estimates of truck trip generation, FHWA's highway noise prediction computer model, and RSG's own model for idling truck noise attenuation. Modeled the effectiveness of barriers and terrain features in reducing noise levels. Prepared testimony for local and Act 250 hearings.

331 Olcott Drive, White River Junction, Vermont 05001
TEL 802.295.4999 • FAX 802.295.1006 • www.rsginc.com

# EXHIBIT C

Kenneth H. Kaliski                                                      Resource Systems Group, Inc.

Director of Environmental Services                                                          page 2

*Noise Impacts of a Landfill Gas Power Plant*—determined noise levels at neighboring residences from a landfill gas-fired electric power generator in Burlington, Vermont. Modeled noise attenuation due to atmospheric loss and topographic features using RSG's *NTerrain* noise modeling software package.

*Review of the White Rock Point Noise Impact Evaluation*—critiqued analysis of a drilling, blasting, and hauling operation in a residential neighborhood of South Burlington, Vermont. Performed modeling of point source construction noise, background airport noise, and traffic noise to assess projects compliance with local and national guidelines.

*Noise Forecasting for a Wind Turbine Demonstration Project*—conducted noise measurements and modeling for a proposed 12-tower wind turbine project by the Green Mountain Power Company in Searsburg, Vermont. Used the NTerrain model to quantify the effects of atmospheric loss, vegetation, wind, and terrain features on octave-band noise levels in the area.

*Noise Mitigation for Wood Kilns* – conducted an assessment of the noise generated by large wood drying kilns in Springfield, New Hampshire and made recommendations to reduce the impact of nighttime noise at neighboring properties.

## MEMBERSHIPS/AFFILIATIONS

Institute of Noise Control Engineering
Acoustical Society of America
Air and Waste Management Association
Institute of Professional Environmental Practice
Institute of Transportation Engineers
Tau Beta Pi Engineering Society

## PUBLICATIONS

Ray, R. R., Collier, R. D., and Kaliski, K. H., *Optimization of Stability and Performance of LMS Filters for Feedforward Active Noise Reduction in Communications Headsets*, ACTIVE 02, The 2002 International Symposium on Active Control of Sound and Vibration, July 2002.

Collier, R. D., and Kaliski, K. H., and Ray, R. R.,, *Experimental Techniques for Evaluation of Active Noise Reduction Communication Headsets with the Thayer Low Frequency Acoustic Test Cell*, Proceedings of the 2003 Institute of Noise Control Engineers NOISECON 2003.

Kaliski, K. H., Mills-Tettey, A., Seitaridou, E., Collier, R., *Low-Complexity Continuous Noise Monitoring System for Communities, Small Airports, and Remote Areas*, Proceedings of the 2001 Institute of Noise Control Engineers NOISECON 2001.

Marshal, N.L., Kaliski, K.H., Rimmer, L.L., Lawe, J.C., *Estimating Network Model Parameters from Mail Survey Data*, Proceedings of ASCE 4th International Conf. on Microcomputers in Transportation, Baltimore MD, July, 1992

Kaliski K, *Integrating Network Modeling and Air Pollution Modeling to Determine $NO_2$ Contributions from Motor Vehicles*, Proceedings of the 3rd National Conference on Transportation Solutions for Small and Medium-Sized Areas, Transportation Research Board, October, 1991..

**SAULS**
**SEISMIC, INC.**

3710 4th Avenue South
Birmingham, AL 35222-2420
U.S.A.
www.saulsseismic.com
E-mail: sales@saulsseismic.com

Phone: 205-592-2466
Fax: 205-592-2477
Watts: 800-749-2477
 Ext. 110

## McROY SAULS

## RESUME

PREVIOUS WORK EXPERIENCE:

10/80 to PRESENT:

      President - Sauls Seismic, Inc.
      Birmingham, Alabama, USA

      President - NOMIS Seismographs
      Birmingham, Alabama, USA.

1/78 to 10/80:

      VME-Nitro Consult, Inc.
      Regional Manager - Alabama Office
      Jasper, Alabama

6/73 to 12/77:

      AETNA Life & Casualty Company
      Engineering Department
      Birmingham, Alabama

12/72 to 5/73:

      Assistant Golf Pro
      Indies Inn & Yacht Club
      Duck Key, Florida Keys

6/68 to 12/72:

      Clemson University
      B.S. - Engineering
      Clemson, South Carolina

**Birmingham,AL/Atlanta,GA/Chapmanville,WV/Charlotte,NC/Louisville,KY/Nashville,TN**
**Knoxville,TN/Columbus,OH**

EXHIBIT D

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                        )
                                           )
          Plaintiffs,           )
                                           )
vs.                                        )          Civil Action No. CV-20 02-85
                                           )
HANSON AGGREGATES SOUTHEAST,               )
INC., et al.,                              )
                                           )
          Defendants.           )

**COPY**

**FILED**

APR 0 8 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### NOTICE OF TAKING DEPOSITION

TO:   James A. Byram, Jr.          John V. Denson
          BALCH & BINGHAM, LLP     SAMFORD, DENSON, HORSLEY,
          P.O. Box 78               PETTEY & BRIDGES
          Montgomery, AL 36101      P.O. Box 2345
                                   Opelika, AL 36803-2345

          H. Wayne Phears          Phillip E. Adams, Jr.
          PHEARS & MOLDOVAN      ADAMS, UMBACH, DAVIDSON
          Suite 375                & WHITE, LLP
          4725 Peachtree Corner Circle  P. O. Box 2069
          Norcross, GA 30092-3000    Opelika, AL 36803-2069

Please take notice that on April 16, 2004, at 9:00 a.m., at the offices of ADAMS, UMBACH,

DAVIDSON & WHITE, LLP, Opelika, Alabama, the Plaintiffs will take the deposition of **Malcom C.**

**LeBron, Rt. 2, Box 29, Rockford, Alabama 35136,** for the purposes of discovery and impeachment

at trial upon oral examination before a Court Reporter or some other officer authorized by law to

administer oaths.

To testify as to the following matters and produce for inspection the **ORIGINALS** of all

documents requested as follows:

1.      Any and all Notices of Violations or environmental problems relating to the Lee
County quarry when operated by Hanson or Oldcastle. This would include but not be limited to fuel

2185

spills, illegal discharges, dust problems or occasions when Hanson or Oldcastle violated or alleged to have violated their permits from ADEM.

    2.     Copies of e-mails, memos or other documents to or from (a) Oldcastle Materials; (b) SRM; (c) Brian Fowler and/or North American Reserves; (d) Hanson; (including any employee of these companies).

    3.     Any and all e-mails, correspondence or documents to or from any source relating to the Hanson/Oldcastle, Lee County quarry.

    4.     Any and all e-mails, correspondence or documents to or from ADEM relating to the Hanson/Oldcastle, Lee County quarry.

    5.     Any and all e-mails, correspondence, records, computations, notes or other documents relating to your letter in the Fall of 2003 to ADEM relating to an increase of pumping discharge to ten million gallons per day.

    6.     Your entire file, including electronically stored data (including but not limited to e-mails), on this quarry.

    The deposition may be continued from time to time until completed. You are invited to attend and cross-examine the witnesses.

**JAMES B. SPRAYBERRY** (SPR008)
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

2184

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
SAMFORD, DENSON, HORSLEY, PETTEY
 & BRIDGES
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the 7TH day of _____April_____, 2004.

OF COUNSEL

\\Front door\C:\My Document\WPDocs\JBS\CIVIL\Hanson\Pleadings\Deposition\Notice of Depo Lebron 3-29-04.wpd

2185

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    )
                                       )
        Plaintiffs,                    )
                                       )
vs.                                    )        Civil Action No. CV-20 02-0085
                                       )
HANSON AGGREGATES SOUTHEAST,           )        F I L E D
INC., et al.,                          )
                                       )        APR 0 9 2004
        Defendants.                    )
                                                IN OFFICE
                                                CORINNE T. HURST
                                                CIRCUIT CLERK

### PLAINTIFFS' MOTION FOR DEFENDANTS TO PAY COST OF SECOND MEDIATION

The Plaintiffs would show this court that:

1.    The first mediation in this case was held May 21, 2003.  Mediation lasted over one-half (½) of a day and cost approximately $1,700.00, with the Plaintiffs paying one-half (½) of the cost.

2.    The rules of mediation require privacy and confidentiality.  However, from the discovery documents and depositions taken since the last mediation, it is the Plaintiffs position that Hanson could not have mediated a successful settlement because it had ongoing negotiations and later a buy-sell agreement with Oldcastle.  The buy-sell agreement was dated July 11, 2003 and was for the sell and/or swap six (6) or eight (8) quarries, including the Opelika quarry.

3.    The Lee County quarry sold on July 13, 2003, based on these negotiations which had begun in October or November, 2002.  These negotiations included site visits by the Oldcastle management and contract geologist (Brian Fowler) in 2003.  The site visit was to visually examine for safety, environmental concerns, and confirmation of estimated mineral reserves.

2185

4.   Without disclosing the mediation discussions, it would have been (virtually) impossible to mediate a settlement due to the negotiations and pending sale/swap of the Opelika quarry.

5.   Since the Plaintiffs were never informed of the negotiations and/or pending sale, even though they had repeatedly asked, and did not learn of the transaction until approximately July 15, 2003.

6.   Accordingly, the Plaintiffs should not have to pay for a second mediation.  As the Plaintiffs entered the first mediation in good faith and without full knowledge of the circumstances surrounding Hansons inability to fully and fairly negotiate.

WHEREFORE, the Plaintiffs move this Court for an Order that would order the Defendants to pay the full cost of the second mediation.

Respectfully submitted,


**JAMES B. SPRAYBERRY (SPR008)**
One of the Attorneys for the Plaintiffs


**OF COUNSEL:**

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

James B. Sprayberry
ATTORNEY AT LAW
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

2187

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
SAMFORD, DENSON, HORSLEY, PETTEY
 & BRIDGES
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the ___ day of ___ April ___, 2004.

OF COUNSEL

\\Front door\C\My Documents\WPDocs\JBS\CIVIL\Hanson\Pleadings\Motions\Motion for Defendants to Pay Cost of 2nd Mediation.wpd

2186

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                          )
                                             )
                Plaintiffs,                  )
                                             )
vs.                                          )        Civil Action No. CV-20 02-0085
                                             )
HANSON AGGREGATES SOUTHEAST,                 )
INC., et al.,                                )
                                             )        **FILED**
                Defendants.                  )
                                             )        APR 0 9 2004

                                                      IN OFFICE
                                                      CORINNE T. HURST

## PLAINTIFFS' SECOND MOTION FOR ORDER COMPELLING PRODUCTION

The Plaintiffs move the Court for an order requiring defendant, Oldcastle, to produce and

to permit plaintiffs to inspect and to copy each of documents in Plaintiffs' First and Second

Request for Production as well as Notice of Depositions that are not yet produced, as set out in a

letter of March 30, 2004 to Mr. Adams:

Plaintiff did previously serve upon the defendant, Oldcastle, the following:

1.    Plaintiffs' First Interrogatories and Requests for Production to Defendant

      Oldcastle on the 30th day of September, 2003 (a copy of which has been

      previously filed).

2.    Plaintiffs' Motion to Compel Oldcastle to Respond to Plaintiffs' First

      Interrogatories and Requests for production filed with the Court on the 2nd day of

      December, 2003, which is incorporated and adopted herein by reference.

3.    Plaintiffs Second Interrogatories and Request for Production served 11th day of

      December, 2003.

4.  Notice of Deposition of Frank Heisterkamp (a copy of which is attached as Exhibit A).

5.  Notice of Deposition of Brian Fowler (a copy of which is attached as Exhibit B).

6.  Letter to Phil Adams dated March 30, 2004 (a copy of which is attached as Exhibit C), requesting documents.

7.  Notice of Deposition of Ted Reynolds (a copy of which is attached as Exhibit D).

8.  Selected pages of Heisterkamp deposition (copies of which are attached as Exhibit E) which discuss documents, privilege and related issues.

9.  Oldcastle Privilege Log (a copy of which is attached as Exhibit F).

10. Selected pages of Fowler deposition (Copies of which are attached as Exhibit G).

11. Selected pages of Reynolds deposition (Copies of which are attached as Exhibit H).

The parties have attempted to resolve the discovery disputes but are unable to do so. Some documents have been promised but have never been produced. The existence of other documents simply was not revealed until the deposition of Heisterkamp and Fowler and the production of the "Privilege Log" by Oldcastle. Documents and e-mails from early 2002 and earlier should be produced since Mr. Heisterkamp testified that the earliest contact was Fall, 2002. Other documents involve "due diligence" in relation to the purchase on July 13, 2003 and should be produced since it shows Oldcastle deliberate decision to close the deal even though it knew that this lawsuit made very serious allegations.

**WHEREFORE,** for good cause shown, Plaintiffs move this Honorable Court to compel Oldcastle to produce the documents requested in the letter to Mr. Adams dated March 30, 2004 and, further, to award the Plaintiffs' attorneys costs for the necessity of filing a Motion to Compel. Oldcastle's objections were invalid under Alabama law. To object is clearly a delaying tactic on Oldcastle's part designed to impede Plaintiffs' discovery in this case and to delay the litigation. Plaintiffs therefore move for an award of attorneys' fees in this case situation based on Rule 26, Rule 33 and Rule 37.

Respectfully submitted,

**JAMES B. SPRAYBERRY (SPR008)**
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

James B. Sprayberry
ATTORNEY AT LAW
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

2191

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
BALCH & BINGHAM, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
SAMFORD, DENSON, HORSLEY, PETTEY
 & BRIDGES
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the ___9___ day of ___April___, 2004.

OF COUNSEL

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

2192

MIKE DAVIS, et al.,                        )
                                           )
                    Plaintiffs,            )
                                           )
vs.                                        )        Civil Action No. CV-20 02-85
                                           )
HANSON AGGREGATES SOUTHEAST,               )
INC., et al.,                              )
                                           )
                    Defendants.            )

### RE-NOTICE OF TAKING DEPOSITION

TO:   James A. Byram, Jr.              John V. Denson
      Balch & Bingham, LLP            Samford, Denson, Horsley,
      P.O. Box 78                     Pettey & Bridges
      Montgomery, AL 36101            P.O. Box 2345
                                      Opelika, AL 36803-2345


      H. Wayne Phears                 Phillip E. Adams, Jr.
      Phears & Moldovan               Adams, Umbach, Davidson
      Suite 375                         & White, LLP
      4725 Peachtree Corner Circle    P. O. Box 2069
      Norcross, GA 30092-3000         Opelika, AL 36803-2069

Please take notice that on March 1 and March 2, 2004, commencing at 9:00 a.m. each

day, at the offices of Phillip E. Adams, Jr., Opelika, Alabama, the Plaintiffs will take the

depositions of the Corporate Representatives of Oldcastle Materials Southeast, Inc., for

the purposes of discovery and impeachment at trial upon oral examination before a Court

Reporter or some other officer authorized by law to administer oaths.

In accordance with Rule 30(b)(6), Defendant Oldcastle is requested to designate one

or more persons with knowledge to testify as to the following matters and to produce for

inspection the ORIGINALS of all documents requested on Exhibit A attached hereto:

2103

1.    The negotiation for the purchase or other transfer of the Hanson Aggregates Southeast, Inc., Lee County quarry to Oldcastle Materials Southeast, Inc.

2.    The terms and conditions of any agreements or other documents of any type or description related to the purchase, transfer, or other assumption of the Hanson Aggregates Southeast, Inc., Lee County quarry to or by Oldcastle Materials Southeast, Inc.

3.    Any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Gilmer Defendants.

4.    Any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Young Defendants.

5.    All documents requested in Plaintiffs' First and Second Interrogatories and Requests for Production to Defendant Oldcastle.

6.    All documents regarding any changes to the manner of operation of the Lee County quarry whether such changes have been implemented or plan to be implemented in the future.

7.    All documents related in any way to any violations of Oldcastle's ADEM permits with respect to the Lee County quarry.

8.    All mining plans and any document related in any way to a mining plan.

9.    All documents related in any way to dust control activities or problems at the Lee County quarry.

10.    All documents related to discharging of water from the Oldcastle Lee County quarry.

11.    All documents related to sales of materials from the Lee County quarry.

12.    All documents evidencing the number of hours worked by Oldcastle Lee County quarry employees from the date of acquisition to the date of this deposition.

13.    All correspondence with ADEM with respect to the Lee County quarry.

14.    All internal memoranda, e-mails, or written documentation of any character relating to complaints by surrounding property owners, the investigation of such complaints, and the resolution, if any, of such complaints.

2104

15.    All ADEM applications and/or all ADEM permits for this Defendant.

16.    All ADEM reports, including but not limited to, monthly water quality reports.

17.    All hydrogeology and engineering reports and/or studies and related documents.

18.    All environmental reports or studies of any type or description prepared on this Defendant's behalf or on behalf of its predecessor and which this Defendant relies upon in any manner for any purpose.

19.    Any and all written or verbal complaints made by any entity against this Defendant as well as against Hanson. Complaints include, but are not limited to, complaints about noise, dust, blasting, water, trucks, and/or the operation of the quarry in general.

20.    Any and all pre-quarry and/or pre-purchase property inspections whether prepared on your behalf of on behalf of your predecessor, private property owners, or insurance companies. Please include in your response any and all photographs and any related documents.

21.    All sales tax reports and/or quarry mining tax reports filed in Lee County for the years 1999 through the present.

22.    All licenses, agreements, contracts, correspondence or other documents that relate to this Defendant's relationship with Dixie Pipeline or any other pipeline company in Lee County, Alabama.

23.    Any and all reports, studies, complaints, correspondence or other documents concerning or related to sinkholes in and around the Hanson Lee County Quarry. This would include, but not be limited to, the possibility of sinkholes forming, sinkholes that have formed, and/or the repair of sinkholes.

24.    The knowledge or information known to Oldcastle regarding the likelihood of sinkhole formation in or around its limestone quarries generally, as well as the formation of sinkholes in and around other Oldcastle quarries in karst terrain.

25.    Any and all studies, reports, complaints, correspondence or other documents relating to Spring Villa. This would include, but not be limited to, the dewatering of Spring Villa, the diversion of Spring Villa water into your quarry and/or the interbasin transfer of water from Spring Villa into your quarry or Chewacla Creek.

3

2195

26.    All documents relating to environmental problems, hazards, or concerns relating to the Opelika quarry.

27.    Any and all maps, drawings, plats, surveys, or other similar documents of the quarry or the leased property.

28.    Any and all blasting reports and blasting activities at the quarry since Oldcastle assumed control of the quarry.

29.    Any and all permits for blasting obtained by or on behalf of Oldcastle or any company performing blasting services for Oldcastle at its Lee County quarry.

30.    And and all "pre-blast" inspections of home and/or any knowledge gained by Oldcastle regarding any preexisting pre-blast inspections of homes relating in any way to damages allegedly caused by blasting at the quarry.

31.    Any and all information known to Oldcastle regarding the neighbors' complaints of blasting damage.

32.    Any and all information known to Oldcastle regarding noise, dust and medical complaints of people in the area surrounding the quarry.

33.    Any and all information known to Oldcastle regarding any adverse health effects to humans from breathing any dust or by-product of the quarry operation.

34.    Any Complaints and/or Notices of Violations (together with any sanctions or penalties imposed, if any) by any governmental regulatory body.

35.    The relocation of the plant equipment at the Lee County Quarry.

36.    The replacement of equipment (fixed or mobile) at the Lee County Quarry.

37.    All equipment and all equipment component parts (whether fixed or mobile) moved to or placed into service at the Lee County Quarry, including the place or places from which each piece of equipment was obtained or transferred.

38.    All information regarding the amount of dust generated by each piece of equipment (and/or component part thereof), whether fixed or mobile, at the Lee County Quarry.

2195

39.    Applications or correspondence to any regulatory agency relating to Oldcastle's intended, actual, or proposed relocation of the plant; the discharge area; or to increase the amount of water pumped from the quarry.

40.    Oldcastle's knowledge of and response, if any, to the June 26, 2003, and to the January 26, 2004, settlement letters from Plaintiffs' attorneys to Hanson's attorneys (including without limitation, whether Oldcastle received such documents and what it did after receiving such documents).

41.    All efforts undertaken by Oldcastle to ascertain the basis for, the truthfulness of, or the validity of the Plaintiffs' claims in the litigation, prior to assuming control of the quarry from Hanson.

42.    The knowledge or information known to Oldcastle regarding the likelihood of sinkhole formation in or around its limestone quarry in Lee County, Alabama.

The deponents are requested to bring with them and testify as to the documents and

things requested on Exhibit "A" attached hereto.

The deposition may be continued from time to time until completed. You are invited

to attend and cross-examine the witnesses.

_C E Vercelli_

CHARLES E. VERCELLI, JR. (VER003)
One of the Attorneys for the Plaintiffs

OF COUNSEL:
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

5

2197

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.                    John V. Denson
Matt Parnell                           Samford, Denson, Horsley, Pettey
Balch & Bingham, LLP                     & Bridges
P.O. Box 78                            P.O. Box 2345
Montgomery, AL 36101                   Opelika, AL 36803-2345

H. Wayne Phears                        Phillip E. Adams, Jr.
Phears & Moldovan                      Adams, Umbach, Davidson & White, LLP
Suite 375                              P. O. Box 2069
4725 Peachtree Corner Circle           Opelika, AL 36803-2069
Norcross, GA 30092-3000

by placing a copy of the same in the United States mail, properly addressed and postage
prepaid, this the 12ᵗʰ day of February , 2004.

_C E Vincent_
_____

OF COUNSEL

155-00\ Re-Not-Depo--corp.rep-OC.4.wpd

6

2198

## EXHIBIT "A"

In the following requests, the term "document" or "documents" shall mean every original and every non-identical copy (including blind copies) of each and every paper, writing, picture, photograph, slide, movie, film, visual or audio description, video tape, sound recording, microfilm, data stored or recorded by mechanical, electronic, electrical, or magnetic means (including, without limitation, data stored or recorded on or in punched cards, computer tapes, discs, reels, floppy disks, CD-ROMS, computer source codes, or other devices for business machines or any other means of storing and/or transmitting human intelligence), or any other printed materials readable by humans or machines. To be included, without limitation, in this definition of "document" are every invoice, statement, ledger sheet, recommendation, endorsement, order, direction, letter, telegram, teletype, report, memorandum (including, but without limitation, every intra-office memorandum, file memorandum, work memorandum, and memorandum of telephone conversations), interview, schedule, graph, chart, note (including, but without limitation, notes used to prepare any letter, memorandum, reports or other documents as herein defined)   contract, agreement, form, worksheet, timesheet, expense ledger, check (canceled or otherwise), checkstub, voucher receipts, witness (including potential witness) statement, transcript, interview, sound recording or sound recording transcription, video tape, computer printout, book of account, payroll records, minutes, diaries (both office and personal), calendar, log, file card, raw data, notes and/or travel reports, data evidence, statement of expenses incurred, report of investigation, report of interview, record, brochure, book, exhibit, draft, certificate, table, price list, and any other tangible item or thing of readable or visual material of whatever nature and each and every file, folder, or other container in which the above items are stored, filed, or maintained.

The deponents are  requested to bring with them to the deposition, and to give testimony as to the following documents and things:

1.    All documents related to the negotiation of the purchase or other transfer of the Hanson Aggregates Southeast, Inc., Lee County quarry to Oldcastle Materials Southeast, Inc.

2.    All documents relating to the terms and conditions of any agreements or other documents of any type or description related to the purchase, transfer, or other assumption of the Hanson Aggregates Southeast, Inc., Lee County quarry to Oldcastle Materials Southeast, Inc.

3.    All documents related to any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Gilmer Defendants.

4.    All documents related to any and all negotiations, discussions, or other agreements between Oldcastle Materials Southeast, Inc. and any representative of the Young Defendants.

5.    All documents responsive to Plaintiffs' First **AND SECOND** Interrogatories and Requests for Production to Oldcastle.

2199

6.    All documents regarding any changes to the manner of operation of the Lee County quarry whether such changes have been implemented or plan to be implemented in the future.

7.    All documents related in any way to any violations of any of Oldcastle's ADEM permits with respect to the Lee County quarry.

8.    All documents related to all mining plans and any document related in any way to a mining plan.

9.    All documents related in any way to dust control activities or problems at the Lee County quarry.

10.    All documents related to discharging of water from the Oldcastle Lee County quarry.

11.    All documents related to sales of materials from the Lee County quarry.

12.    All documents evidencing the number of hours worked by Oldcastle Lee County quarry employees from the date of acquisition to the date of this deposition notice.

13.    All correspondence with ADEM with respect to the Lee County quarry.

14.    All internal memoranda, e-mails, or written documentation of any character relating to complaints by surrounding property owners, the investigation of such complaints, and the resolution, if any, of such complaints.

15.    Please produce all ADEM applications and/or all ADEM permits for this Defendant.

16.    Please produce any and all ADEM reports, including but not limited to, monthly water quality reports

17.    Please produce any and all hydrogeology and engineering reports and/or studies and related documents.

18.    Please produce all environmental reports or studies of any type or description prepared on this Defendant's behalf or on behalf of its predecessor.

19.    All documents related to any and all written or verbal complaints made by any entity against this Defendant. Complaints include, but or not limited to, complaints about noise, dust, blasting, water, trucks, and/or the operation of the quarry in general.

20.    All documents related to any and all pre-quarry and/or pre-purchase property inspections whether prepared on your behalf of on behalf of your predecessor, private property owners, or insurance companies. Please include in your response any and all photographs and any related documents.

21.    All documents related to all sales tax reports and/or quarry mining tax reports filed in Lee County for the years 1999 through the present.

22.    All documents related to all licenses, agreements, contracts, correspondence or other documents that relate to this Defendant's relationship with Dixie Pipeline or any other pipeline company in Lee County, Alabama.

23.    All documents related to any and all reports, studies, complaints, correspondence or other documents concerning or related to sinkholes. This would include, but not be limited to, the possibility of sinkholes forming, sinkholes that have formed, and/or the repair of sinkholes.

24.    All documents related to any and all maps, drawings, plats, surveys, or other similar documents of the quarry or the leased property.

25.    All documents related to any and all studies, reports, complaints, correspondence or other documents relating to Spring Villa. This would include, but not be limited to, the dewatering of Spring Villa, the diversion of Spring Villa water into your quarry and/or the interbasin transfer of water from Spring Villa into your quarry or Chewacla Creek.

26.    All documents related to any actual or alleged environmental problems, hazards, or concerns relating to the Opelika quarry.

27.    All documents related to blasting reports and blasting activities at the quarry since Oldcastle assumed control of the quarry.

28.    All documents related to any and all permits for blasting obtained by or on behalf of Oldcastle or any company performing blasting services for Oldcastle at its Lee County quarry.

29.    All documents related to any "pre-blast" inspections of home and/or any knowledge gained by Oldcastle regarding any preexisting pre-blast inspections of homes relating in any way to damages allegedly caused by blasting at the quarry.

30.    All documents related to any and all information known to Oldcastle regarding the neighbors' complaints of blasting damage.

31.    All documents related to information known to Oldcastle regarding noise, dust and medical complaints of people in the area surrounding the quarry before Oldcastle purchased the quarry and since Oldcastle purchased the quarry.

32.    Any and all information known to Oldcastle regarding any adverse health effects to humans from breathing any dust or by-product of the quarry operation.

33.    All documents related to the receipt by Oldcastle of copies of (or summaries of) the two settlement letters (dated June 26, 2003 and January 26, 2004) from Plaintiffs' lawyers to Hanson's lawyers, which letters were FAXED to the office of Phillip Adams on the late afternoon of February 11, 2004.

34.    All documents related to the actions or other analysis of or consideration of the two settlement letters referenced in the immediately preceding paragraph.

2202

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,         )
                                    )

        Plaintiffs,      )
                                    )

vs.                      )     Civil Action No. CV-20 02-85
                                    )

HANSON AGGREGATES SOUTHEAST,   )
INC., et al.,                  )
                                  )

        Defendants.    )

## NOTICE OF TAKING DEPOSITION

TO:    James A. Byram, Jr.        John V. Denson
        BALCH & BINGHAM, LLP    SAMFORD, DENSON, HORSLEY,
        P.O. Box 78               PETTEY & BRIDGES
        Montgomery, AL 36101      P.O. Box 2345
                                 Opelika, AL 36803-2345


        H. Wayne Phears          Phillip E. Adams, Jr.
        PHEARS & MOLDOVAN      ADAMS, UMBACH, DAVIDSON
        Suite 375                & WHITE, LLP
        4725 Peachtree Corner Circle  P. O. Box 2069
        Norcross, GA 30092-3000    Opelika, AL 36803-2069

Please take notice that on Thursday, March 11, 2004 at 9:00 A.M., at the offices of

Phillip E. Adams, Jr., Opelika, Alabama, the Plaintiffs will take the deposition of the **one of**

**the remaining Corporate Representative of Oldcastle Materials Southeast, Inc. (Brian**

**Fowler)**, for the purposes of discovery and impeachment at trial upon oral examination

before a Court Reporter or some other officer authorized by law to administer oaths.

In accordance with Rule 30(b)(6), Defendant Oldcastle is requested to designate one

or more persons with knowledge to testify as to the following matters and to produce for

inspection the **ORIGINALS** of all documents (as defined below) requested as follows:

2203

1. Any information in your possession or subject to your control relating to any other lawsuits against Oldcastle for blasting, dewatering, sinkholes, noise or dust since 1980 in any state in the United States.

2. Knowledge of sinkholes or dewatering claims or problems at any other quarry owned and operated by Oldcastle.

3. The entire file on the Lee County quarry.

4. Any documents, correspondence or e-mails from or to Hanson or any of its Experts relating to the Lee County quarry.

5. Any documents, correspondence or e-mails from or to Oldcastle or any of their Experts relating to the Lee County quarry.

6. Any computer printouts, computer searches, site visits, calculations, photographs, investigatory or other documents relating to the Lee County quarry concerning:

   (a) mineable reserves and/or a mining plan;
   (b) depth of mining needed for this quarry or planned for this quarry;
   (c) pumping or dewatering and volumes or calculations related thereto;
   (d) changes in operation or methods of operation;
   (e) due diligence efforts and documents (whether before or after the sale);
   (f) the request to increase pumping to 10 mgd;
   (g) MSDS sheets on silica or other hazards at the Lee County quarry;
   (h) North American Reserve's list of "Red Flags" in its report of June 30, 2003;
   (i) all hydrogeology and/or engineering reports, studies or documents;
   (j) the dye traces on-going at the Lee County quarry;
   (k) sinkhole problems or formations at the Lee County quarry and the Spring Villa area;
   (l) Spring Villa, the spring at Spring Villa and/or dewatering of this spring; and
   (m) All information (oral or written) and all documents reviewed by you (and all generated by you) in connection with your assistance to Oldcastle in deciding to purchase this quarry (including documents received from any attorneys, from Hanson, or from any other source whatsoever).

2204

7.   The documents and things requested in the Re-Notice of Corporate Representative Deposition attached as Plaintiff's Exhibit 124 to the Heisterkamp deposition.

8.   A current resume or CV.

The term "document" or "documents" shall mean every original and every non-identical copy (including blind copies) of each and every paper, writing, picture, photograph, slide, movie, film, visual or audio description, video tape, sound recording, microfilm, data stored or recorded by mechanical, electronic, electrical, or magnetic means (including, without limitation, data stored or recorded on or in punched cards, computer tapes, discs, reels, floppy disks, CD-ROMS, computer source codes, or other devices for business machines or any other means of storing and/or transmitting human intelligence), or any other printed materials readable by humans or machines.  To be included, without limitation, in this definition of "document" are every invoice, statement, ledger sheet, recommendation, endorsement, order, direction, letter, telegram, teletype, report, memorandum (including, but without limitation, every intra-office memorandum, file memorandum, work memorandum, and memorandum of telephone conversations), interview, schedule, graph, chart, note (including, but without limitation, notes used to prepare any letter, memorandum, reports or other documents as herein defined)  contract, agreement, form, worksheet, timesheet, expense ledger, check (canceled or otherwise), checkstub, voucher receipts, witness (including potential witness) statement, transcript, interview, sound recording or sound recording transcription, video tape, computer printout, book of account, payroll records, minutes, diaries (both office and personal), calendar, log, file card, raw data, notes and/or travel reports, data evidence, statement of expenses incurred, report of investigation, report of interview, record, brochure, book, exhibit, draft, certificate, table, price list, and any other tangible item or thing of readable or visual material of whatever nature and each and every file, folder, or other container in which the above items are stored, filed, or maintained.

The deposition may be continued from time to time until completed. You are invited to attend and cross-examine the witnesses.

C E Vercelli

Charles E. Vercelli, Jr. (VER003)
One of the Attorneys for the Plaintiffs

**OF COUNSEL:**
Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805

Law Offices of James B. Sprayberry
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100

Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334) 745-6244

2288

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Matt Parnell
BALCH & BINGHAM, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
SAMFORD, DENSON, HORSLEY, PETTEY
  & BRIDGES
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
PHEARS & MOLDOVAN
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the 5th day of MARCH , 2004.

_____
OF COUNSEL

Notice of Deposition-Brian Fowler.3.wpd

Page 4 of  4

# JAMES B. SPRAYBERRY
ATTORNEY AT LAW
P.O. DRAWER 2429
AUBURN, ALABAMA 36831-2429
(334) 821-7100
FAX (334) 821-7101

March 30, 2004

Phillip E. Adams, Jr
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
205 South 9th Street
P.O. Box 2069
Opelika, AL 36803

   *Re:* *Davis, et al vs. Hanson/Oldcastle*

Dear Phil:

   We have discussed and/or requested the documents that I have listed below. They fall within the request for production and deposition notices that we have filed. The items we would like are:

1. The Oldcastle Code of Conduct referred to in the depositions;
2. The Silica MSDS sheets and testing results from Oldcastle;
3. Seismograph results/summaries for the Griggs and the Edwards property (I previously wrote and asked for those a short while ago);
4. 3 ½ inch binder from Skelly and Loy and related documents that Brian Fowler reviewed prior to the purchase;
5. The Fowler "notes" that he wrote while on his site visit to Opelika;
6. Fowler's billing for his project number 800-26;
7. The amount of money to be paid by Hanson to Oldcastle if restrictions are put on the operation. This is set out in the Joint Defense Agreement (JDA);
8. Documents from the "Privilege Log" of Oldcastle;
  Page 1 - 10/23/2003 e-mail from Fowler to Heisterkamp
  Page 2 - None
  Page 3 - 10/9/2003 e-mail from Syr to Heisterkamp
      10/8/2003 e-mail from Fowler to Heisterkamp

1 - Atty. Corresp.
1 - Privilege Log
1 -

2207

Phil Adams, Esq.
March 30, 2004
Page 2

| | |
|---|---|
| Page 4 - | 9/28/2003 e-mail from Heisterkamp to Towe |
| | 9/21/2003 e-mail from Fowler to Heisterkamp |
| | 9/19/2003 e-mail from Heisterkamp to Fowler |
| | 9/17/2003 e-mail from Heisterkamp to Fowler |
| | 9/15/2003 e-mail from Brian Fowler to Bishop |
| | 9/10/2003 e-mail from Heisterkamp to Bishop |
| Page 5 - | 9/3/2003 two e-mails, Heisterkamp to Fowler, Fowler to Heisterkamp |
| Page 6 - | 7/12/2003 e-mail from Ward Nye to Heisterkamp |
| | 7/11/2003 e-mail from Heisterkamp to Bishop & Towe, re: Hanson Closing |
| | 7/11/2003 e-mail from Brian Fowler to Heisterkamp |
| | 7/10/2003 e-mail from Heisterkamp to Hill, re: Hanson deal, Ward Nye |
| | 7/10/2003 e-mail from Fowler to Kochian and Morris Bishop |
| Page 7 - | 7/15/2003 e-mail from John Gillan to Heisterkamp |
| | 7/15/2003 e-mail from Ward Nye to Heisterkamp |
| | 7/15/2003 e-mail from Heisterkamp to Gillan |
| Page 8 - | 7/14/2003 e-mail from Heisterkamp to Bishop, re: Joint Defense |
| | 7/14/2003 e-mail from Gillan to Heisterkamp, re: Joint Defense |
| | 10/16/2003 e-mail from Heisterkamp to Glenn Culpepper and Towe |
| Page 9 - | 7/11/2003 e-mail from Heisterkamp to Bishop and Towe |
| | 7/11/2003 e-mail from Tom Hill to Glenn Culpepper, Fw: Hanson deal - Ward Nye |
| | 7/11/2003 e-mail from Hill to Heisterkamp, re: Hanson deal - Ward Nye |
| | 7/10/2003 e-mail from Heisterkamp to Hill |
| Page 10 - | Undated spreadsheet by Heisterkamp, re: Hanson quarries 2002 (two of these are listed on page 10) |
| Page 11 - | Three undated spreadsheets by Heisterkamp, Hanson deal structure, Hanson quarries 2002 and asset swaps |
| Page 12 - | None |
| Page 13 - | Undated spreadsheet by Heisterkamp on Hanson quarries 2002 |
| Page 14 - | Undated spreadsheet by Heisterkamp shown as Hanson-GAT quarries |
| Page 15 - | All spreadsheets except the first one called "Dodge Forecast" |
| Page 16 - | Undated spreadsheet by Heisterkamp called Hanson-GAT Quarries |
| | 9/19/2003 Fowler to Heisterkamp fax, re: Opelika Dye Test Opinion |
| Page 17 - | Undated spreadsheet by Heisterkamp shown as Hanson Quarries 2002 |

2208

Phil Adams, Esq.
March 30, 2004
Page 3

Page 18 -    9/18/2002 Heisterkamp to Bishop fax
9/30/2002 Murphy to Heisterkamp letter
9/26/2002 Heisterkamp spreadsheet, Hanson Building Materials
reserve bank information
1/18/2002 Heisterkamp spreadsheet Opelika Summary Profit &
Loss

Page 19 -    The first five spreadsheets on that page dated 1/15/2002,
6/27/2001, 3/30/2000, 9/25/2002, 9/25/2002

Page 20 -    10/22/2002 Heisterkamp facsimile to Bishop, re: Hanson History

Please have those documents to us by April 9, 2004. If you decline to produce them, we
will have no choice but to file a Motion to Compel which we would rather not file since these
appear to be documents to which we are entitled.

Very truly yours,

James B. Sprayberry

JBS/ch

cc:    Chip Vercelli, Esq.
Guy Gunter, Esq.
Jim Byrum, Esq.
John V. Denson, Esq.
H. Wayne Phears, Esq.