IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

1589

MIKE & DONNA DAVIS; MIKE & ANN BROADWATER; )
MITTIE BROADWATER; CITY OF OPELIKA, a Municipal )
Corporation; THE UTILITIES BOARD OF THE CITY OF )
OPELIKA, a public corporation; BEAUREGARD WATER )
AUTHORITY, a public coporation; ANTHONY & CAROL )
CLARK; CAROL CLARK, as Mother and Next Friend of )
COURTNEY CLARK; ELAINE EDWARDS; MARY SUE )
EILAND; MEDENA FRIZZEL; MEDENA FRIZZEL, as )
Mother and Next Friend of KARLA FRIZZELL and )
BRIANNA YOUGREN; RONNIE & DOROTHY GRIGGS; )
MIKE & STACEY HAGENS;  HOWARD & LISA HARMON )
LISA HARMON, as Mother and Next Friend of JUDSON & )
BRIA HARMON; HAYWARD & NORA JACKSON; MIKE & )
SHELIA LaMACCHIA; SHELIA LaMACCHIA, as Mother )
and Next Friend of RUSSELL LaMACCHIA;    STANLEY & )
JACKIE LEDBETTER; TERRY & CAROL LONG; TIM & )
ADA MANNING; DAVID & JANETTE BAGGETT; JAMES )
& SHIRLEY PARKER; RANDALL & WANDA PARKER; )
WANDA PARKER, as Mother and Next Friend of AMBUR )
& BRANDON PARKER; JEFF & MARIA RICHARDSON; )
MARIA RICHARDSON, as Mother and Next Friend of )
NATASHA RICHARDSON; DAVID & AMANDA )
SUMNER; AMANDA SUMNER, as Mother and Next Friend )
of TODD SUMNER; LARRY & RITA SUMNER; MARTHA )
TREADWAY; MARTHA TREADWAY, as Guardian and Next )
Friend of JASMIN, MICHAEL, HAZEL & JOSEPH KING; )
BILLY &  SHERRY WALLACE; SHERRY WALLACE, as )
Mother and Next Friend of AARON WALLACE; )
MICHELE WILKES; SHIRLEY WILSON; BETTY J. )
PFINGSTON; BETTY J. PFINGSTON, as Guardian and )
Next Friend of JESSICA PFINGSTON; and WONDA )
BRIGHT, )
)
)
Plaintiffs, )
)
)                Civil Action No.
vs. )
)                CV-20 02-85
HANSON AGGREGATES SOUTHEAST, INC.; LOUISE )
YOUNG O'BRIEN; VIRGINIA YOUNG PRIEST; VIRGINIA )
HART YOUNG; CLAUDE JOHN YOUNG;CHARLES W. )
GILMER, SR.; ALICE C. GILMER; CHARLES W. GILMER, )
JR.; KAMMY GILMER; BARBARA GILMER SMITH; GARY )
SMITH; MATTHEW RUTTLEDGE GILMER; LELIA )
WILDER GILMER; GILMER PROPERTIES, LTD.; and )
OLDCASTLE MATERIALS SOUTHEAST, INC., )
)
Defendants. )

FILED

AUG 0 1 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

THIRD AMENDED AND RESTATED COMPLAINT

1. Plaintiffs Mike and Donna Davis, who reside at 149 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Davises aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: cracks have formed in the basement and in the fireplace; the tiles in the ceiling of the basement are falling out; their boat and boathouse are forever covered by a thick coat of dust; Donna Davis has developed allergy and sinus problems within the last two years, caused by the Defendants; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

2. Plaintiffs Mike and Ann Broadwater, who reside at 610 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Broadwaters aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: a cracked foundation; cracked ceilings; a cracked fireplace; unlevel floors; Plaintiff Mike Broadwater has had a lung transplant and the never ending dust, noise and shaking of the home have greatly aggravated his condition; and other known and unknown damages.

3. Plaintiff Mittie Broadwater, who resides at 574 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Broadwater avers that as a result of Defendants' actions her home and property have sustained the following damages, among others: the blocks under her mobile home have cracked and are falling apart; the front and back doors of her home are hanging up on the bottom of the doorway; the windows of her home are cracked; and there are other known and unknown problems with her home and property.

4. Plaintiff City of Opelika is a municipal corporation organized under the laws of the state of Alabama, situated in Lee County, Alabama.

5. Plaintiff The Utilities Board of the City of Opelika, is a public corporation that operates a public water supply and distribution system on behalf of the City of Opelika and surrounding areas of Lee County, Alabama.

6. Plaintiff, the Beauregard Water Authority, is a public corporation that operates a public water supply and distribution system on behalf of the Beauregard community and surrounding areas of Lee County, Alabama.

7.   Plaintiffs Anthony and Carol Clark, who reside at 1740 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Clarks aver that as a result of the Defendants' actions their home, property and families have sustained the following damages, among others: cracked walls and ceilings; cracks in the foundation of the home; cracked windshields in their vehicles; sink holes have formed on their property; the allergies and asthma suffered by certain family members have been aggravated and their medical conditions will continue to deteriorate; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

8.   Plaintiff Courtney Clark is a minor citizen of Lee County, Alabama, who resides with his parents Anthony and Carol Clark. Plaintiff Courtney Clark avers that as a result of the Defendants' actions, he has developed asthma, suffers from this disease daily, and will continue to suffer from this condition. He may have other known and unknown damages.

9.   Plaintiff Elaine Edwards, who resides at 3274 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Edwards avers that as a result of the Defendants' actions, her homes and the home of her mother have sustained the following damages, among others: her home vibrates; cracks in the sidewalks; the concrete steps have pulled away from her concrete porch; her renal condition has been aggravated by the constant vibrations and dust; she has incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

10.  Plaintiff Mary Sue Eiland, who resides at 2853 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Eiland avers that as a result of the Defendants' actions her home and property have sustained the following damages, among others: cracked windshields; cracks in the concrete; walls cracked in every room of her home; tiles falling from the bathroom ceilings; and other known and unknown problems with her home and property.

11.  Plaintiff Medena Frizzel, who resides at 3173 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Plaintiff Medena Frizzell avers that as a result of the Defendants' actions her home, property, and family have sustained the following damages: cracked windshield on her vehicle; cracked windows in her home; cracked mirrors; ceiling leaks; cracked ceilings; trim falling off walls; pictures falling off

3

walls; her home is unlevel; the electricity and power blink off and on when blasting occurs; Plaintiff Medena Frizzell has suffered a recurrence of her childhood asthma within the last three years; she has incurred medical expenses; and other known and unknown problems with her home and property.

12.    Plaintiff Karla Frizzel is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Karla Frizzel avers that as a result of the Defendants' actions she has developed an asthmatic condition and will continue to suffer from this condition.

13.    Plaintiff Brianna Yougren is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Brianna Yougren avers that as a result of the Defendants' actions she has has developed an asthmatic condition and will continue to suffer from this condition.

14.    Plaintiffs Ronnie and Dorothy Griggs, who reside at 3256 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Griggs aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages, among others: cracked foundation; cracked sidewalks; cracks in the bathroom tile; flower boxes are pulling away from the walls of the house; Plaintiff Dorothy Griggs has developed allergy and sinus problems due to the constant presence of quarry dust in her home and on her property; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

15.    Plaintiffs Mike and Stacy Hagans, who reside at 1668 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Hagans aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages: cracked windshields on their vehicles; sinkholes have formed on their property; their house is unlevel; cabinets are separating from the walls of their home; cracked windows; the allergies suffered by certain family members have been aggravated; Plaintiff Stacy Hagans suffers from inflamed and infected sinuses; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

16.    Plaintiffs Howard and Lisa Harmon, who reside at 145 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Harmons aver that as a result of the Defendants' actions their home, property, and family have sustained the following damages, among others; their home vibrates during blasting activities; cracked bricks on the exterior of the home; cracks in fireplace; Plaintiff Howard Harmon has developed chronic sinusitis ; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

17.    Plaintiff Judson Harmon is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Lisa Harmon. Plaintiff Judson Harmon avers that as a result of the Defendants' actions he has developed allergic rhinitis and will continue to suffer from this condition.

18.    Plaintiff Bria Harmon is a minor resident citizen of Lee County who resides with her parents, and who brings this action by and through her mother and next friend, Lisa Harmon. Plaintiff Bria Harmon avers that as a result of the Defendants' actions she has developed chronic allergies and sinus problems and she will continue to suffer from this condition.

19.    Plaintiffs Hayward and Nora Jackson, who reside at 1141 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Jacksons aver that as result of the Defendants' actions, their home, property and family have been damaged as follows: mud and water constantly stands on their property inviting the presence of swarms of insects, frogs, snakes and other pests; Plaintiff Nora Jackson has developed chronic bronchitis, inflammatory lung disease, atypical pneumonia, and acute respiratory distress syndrome; the family has incurred medical expenses; and other known and unknown damages.

20.    Plaintiffs Mike and Shelia LaMacchia, who reside at 1355 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The LaMacchias aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: their backyard underground spring has gone dry; the foundation of their home is cracked; they have incurred medical expenses as of result of their child's illnesses; and other known and unknown problems with their home and property.

21.    Plaintiff Russell LaMacchia, is a minor resident citizen of Lee County, Alabama, who resides with his parents, and who brings this action by and through his mother and next friend, Shelia LaMacchia.   Plaintiff Russell LaMacchia avers that as a result of the Defendants' actions, he has developed otitis media and will continue to suffer from this condition.

22.    Plaintiffs Stanley and Jackie Ledbetter, who reside at 1330 Lee Road 166, and also own rental properties located across the street at 1333 Lee Road 166, Lots #2-9, 1377 Lee Road 166, 1332 Lee Road 166, 1334 Lee Road 166, 1336 Lee Road 166, and 1340 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.  The Ledbetters aver that as a result of the Defendants' actions, their homes, properties and family have sustained the following damages, among others: cracked windows; foundation cracks; cracked ceilings; unlevel mobile homes; and other known and unknown problems with their home and properties.

23.    Plaintiffs Terry and Carol Long, who reside at 3379 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.  The Longs aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracks in cement sidewalks; cracks in cement around swimming pool; cracks around windows; cracks in trim work; recent cracks forming in three year old addition to home; and other known and unknown problems with their home and property.

24.    Plaintiffs Tim and Ada Manning, who reside at 3226 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.  The Mannings aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: chipped paint on their vehicles as result of blasting debris landing in their yard; cracked windshields; a cracked foundation on their home; cracks in  driveway and in cement area around their swimming pool; crack in swimming pool; and other known and unknown problems with their home and property.

25.    Plaintiffs David and Janette Baggett, who reside at 1198 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama.  The Baggetts aver that as a result of the Defendants' actions, their homes, property, and family have sustained the following damages, among others: leaks in their ceilings; cracks in

ceilings; cracks in walls; mobile homes are unlevel; Plaintiff Janette Baggett's depression and nervous condition has been greatly aggravated by the constant noise, blasting and shaking that occurs in her home; Plaintiff David Nash has developed allergy and sinus problems within the last two years; they have incurred medical expenses; and other known and unknown problems with their homes and property.

26.    Plaintiffs James and Shirley Parker, who reside at 3039 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. James and Shirley Parker aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: cracked windows; a cracked foundation; cracks in the walls and ceilings of their home; due to the constant presence of quarry dust, Plaintiff Shirley Parker has developed asthma within the last two years; and other known and unknown damages.

27.    Plaintiff Randall and Wanda Parker, who reside at 1229 Lee Road 166, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs' Randall and Wanda Parker are riparian owners south of Spring Villa Park who own part of Little Uchee Creek. Randall and Wanda Parker aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked foundation; cracked chimney; cracked sheet rock; cabinets pulling away from the walls; light fixtures are loose and fall when blasting occurs; Plaintiff Wanda Parker developed asthma approximately 1 year ago; they have incurred medical expenses and will continue to do so; and other known and unknown damages. Furthermore the Randall and Wanda Parker aver that the past and future actions of the Defendants will irreparably harm their family's interests in and to Little Uchee Creek, as well as the interests of many other citizens of Lee County, Alabama, who use the creek as they do.

28.    Plaintiff Ambur Parker is a minor resident citizen of Lee County who resides with her parents James and Wanda Parker, and who brings this action by and through her mother and next friend, Wanda Parker. Plaintiff Ambur Parker avers that as a result of the Defendants' actions, she has developed asthma within the last year and will continue to suffer from this condition.

29.    Plaintiff Brandon Parker is a minor resident citizen of Lee County who resides with his parents James and Wanda Parker, and who brings this action by and through his mother and

7

next friend, Wanda Parker. Plaintiff Brandon Parker avers that as a result of the Defendants' actions, he has developed allergy and sinus problems that include nose bleeds and will continue to suffer from this condition.

30.    Plaintiffs Maria and Jeff Richardson, who reside at 265 Lee Road 705, are over the age of nineteen years and are residents of Lee County, Alabama. The Richardsons aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: cracked foundation; cracks in the ceiling; Plaintiff Jeff Richardson has developed allergic sinus problems; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

31.    Plaintiff Natasha Richardson is a minor resident citizen of Lee County who resides with his parents and who brings this action by and through her mother and next friend, Maria Richardson. Plaintiff Natasha Richardson avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

32.    Plaintiffs David and Amanda Sumner, who reside at 164 Lee Road 148, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. David and Amanda Sumner aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others; cracked foundation; crack in the ceilings; crack in the concrete surrounding the swimming pool; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

33.    Plaintiff Todd Sumner, is a  is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Amanda Sumner. Plaintiff Todd Sumner avers that as a result of the Defendants' actions, he developed asthma at the age of three months and will continue to suffer from this condition.

34.    Plaintiffs Larry and Rita Sumner, who reside at 1100 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs Larry and Rita Sumner aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked windshields; house is unlevel; cracked roof; cracked ceilings; cracked walls; slit roof beams; and other known and unknown damages.

35.    Plaintiff Martha Treadway, who resides at 3177 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Treadway avers that as result

of the Defendants' actions, her home, property and family have sustained the following damages, among others: destroyed field lines; cracked ceilings; cabinets pulling away from the walls; she has developed chronic pulmonary disease, a serious problem with her lung, in the last three years; bricks falling off the frame of the house; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

36. Plaintiff Jasmine King, is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Martha Treadway. Plaintiff Jasmine King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

37. Plaintiff Michael King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway. Plaintiff Michael King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

38. Plaintiff Hazel King is a minor resident citizen of Lee County who resides with her grandmother, and who brings this action by and through her grandmother and next friend, Martha Treadway. Plaintiff Hazel King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

39. Plaintiff Joseph King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway. Plaintiff Joseph King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

40. Plaintiffs Billy and Sherry Wallace, who reside at 1692 Lee road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Wallaces aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: pictures are being knocked off walls and destroyed; cracked ceilings; windows knocked out of the home; cracked fireplace stones; cracked windows; their older child suffers from asthma but has been in remission since leaving the family home; Plaintiff Billy Wallace has developed a cavitary lung disease; the family has incurred medical expenses and will continue to do so; and other known and unknown damages.

41.    Plaintiff Aaron Wallace is a minor resident citizen of Lee County who resides with is parents, and who brings this action by and through his mother and next friend, Sherry Wallace. Aaron Wallace avers that as a result of the Defendants' actions he has developed asthma, chronic allegeries, sinuitis; that he is forced to sleep under a cold air humidifer; and will continue to suffer from these conditions, and other known and unknown damages.

42.    Plaintiff Michele Wilkes, who resides at 148 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Wilkes avers that as the result of Defendants' actions, her home and property have sustained the following damages, among others: a cracked foundation; bricks separating from a concrete porch; water leakage in her basement; concrete blocks in basement separating; concrete pad and step s pulling away from the house; she has developed sinus problems in the last three years; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

43.    Plaintiff Shirley Wilson, who resides at 64 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Wilson avers that as a result of the Defendants' actions, her home and property have sustained the following damages, among others: the well located on her property is filling in; cracked walls; cracked foundation; she has developed an allergy to dust that was worsened over the last year; and other known and unknown damages.

44.    Plaintiff Betty J. Pfingston, who resides in one of the mobile homes owned by Stanley Ledbetter off of Highway 166 in Lee County, and is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Pfingston avers that as a result of the Defendants' actions, the mobile home in which she lives has been damaged; she has to put up with the noise, vibration, dust, and other irritations caused by the quarry, to her great inconvenience and harm; and she has suffered other known and unknown damages.

45.    Plaintiff Jessica Pfingston is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Betty J. Pfingston. Jessica Pfingston avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition, and other known and unknown damages.

46.    Plaintiff Wonda Bright resides at 245 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Bright avers that as a result of the Defendants'

actions, she has suffered the following damages: she cannot escape the noise, truck traffic noise, blasting noise and vibration, dust, and her home has suffered cracks on the concrete porches. Additionally, she has developed allergies and must now take allergy medication, and she has been unable to sell her house and move away from the nuisance.

47.    Defendant Hanson Aggregates Southeast, Inc. (hereinafter "Hanson") is a foreign corporation doing business in Lee County, Alabama. It owns and operates a limestone quarry, equipment terminal and an explosives holding area on the property belonging to the Young Defendants and the Gilmer Defendants.

48.    Defendants Louise Young O'Brien, Virginia Young Priest, Virginia Hart Young, and Claude John Young (hereinafter "the Young Defendants") are either members of a limited partnership or a general partnership. The Young Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Opelika Materials, Inc., and ultimately to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Young Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Young Defendants.

49.    Defendants Charles W. Gilmer, Sr., Alice C. Gilmer, Charles W. Gilmer, Jr., Kammy Gilmer, Barbara Gilmer Smith, Gary Smith, Matthew Ruttledge Gilmer, Lelia Wilder Gilmer, and Gilmer Properties, Ltd. (hereinafter "the Gilmer Defendants") are either members of a limited partnership or a general partnership. The Gilmer Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Gilmer Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Gilmer Defendants.

## STATEMENT OF FACTS

50.    The individual Plaintiffs all reside within a mile or so of the Defendants' properties, near Lee County Road 166 and Alabama Highway 169, and all own property that is in close proximity to the quarry owned and/or operated by Defendants Hanson.

51.    The Beauregard Water Authority operates water wells in or near the same "chewacla marble" terrain. The Plaintiff believes the water table has been effected and that this adverse impact will increase in the future if the quarry continues to operate. They also believe the repetitive blasting has caused damage to its water lines and will continue to do so in the future.

52.    The City of Opelika owns Spring Villa Park and swimming pool, and The Utilities Board owns and operates properties surrounding Spring Villa Park, including a natural spring that has flowed, non-stop, for generations. The spring ceased to flow in the spring of 2000, within a few years after the quarry began pumping millions of gallons of water per day out of the quarry pit. The quarry pit and the spring are in the same "chewacla marble" (aka limestone) terrain, which is highly fractured, and through which water migrates easily. Plaintiffs aver that the quarrying activities of the Defendants have in fact caused the spring to go dry.

53.    The Spring Villa Park swimming pool was fed by the spring water, so that the swimming pool is now dry and has been since the spring of 2000. Therefore, both the City of Opelika and The Utilities Board have suffered various damages. Although the Utilities Board does not now rely upon the spring for a source of public drinking water, it may do so in the future, so that the Defendants' actions in drying the spring have and will cause damage to the City and to The Utilities Board. The City of Opelika has also now lost the opportunity to construct a recreational lake on and upon the Spring Villa Park property, for use by the public for recreational purposes. The land owned by the City and The Utilities Board have, therefore, been devalued by the actions of the quarry.

54.    Were the Court to enjoin the quarry from pumping water from the aquifers in the area, and require it to allow the quarry pit to fill, it is probable that the "cone of depression" caused by pumping such large quantities of water from the quarry pit will gradually disappear, and it is probable that the spring would again flow.

55.    The Defendants' operation of a limestone quarry constitutes a nuisance.

56.    The actions of the Defendants have caused a de-watering of the subsoil in a large area surrounding the quarry.

12

57.   The Hanson quarry operation is immediately adjacent to the Dixie Pipeline, a very large transcontinental liquid propane gas pipeline. The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within as little as 100 feet of the pit created by the Defendants' operations.

58.   There is a substantial likelihood that the operations of the Defendants in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry. This result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

59.   An example of one such sinkhole is a 25 feet in diameter, 20 feet deep sinkhole that developed within the last two months, 34 feet east of the pavement of Highway 166, and only 233 feet north of the center of the Dixie Pipeline easement that crosses Highway 166.

60.   Sinkholes have also formed on the Plaintiffs' lands, including a large sinkhole in the driveway of the Clarks, which was filled with many dumptruck loads of dirt. This sinkhole, and others, formed only a few hundred feet south of the Dixie Pipeline easement and within a few hundred feet of the quarry pit.

61.   The operations of the quarry in causing sinkholes to form now and in the future will in fact endanger the viability of the Dixie Pipeline. It is entirely possible, and indeed foreseeable, that if the ground beneath the Dixie Pipeline were to give way, particularly at a welded joint, the Dixie Pipeline would then rupture. A rupture of the pipeline could very well cause an explosion of devastating proportions. An explosion from the Dixie Pipeline could literally incinerate an area hundreds of yards in diameter, including Plaintiffs' homes and/or passing motorists on Highway 166.

62.   Many of the Plaintiffs' homes are located within a few hundred yards of the Dixie Pipeline and the Defendants' quarry.

63.   In recent depositions of Hanson corporate representatives, it was also learned that Hanson has violated several of the terms and conditions of Dixie Pipelines' "blasting guidelines", which Dixie relied upon in granting Hanson permission to blast so close to the pipeline. These violations included using too many pounds of explosives too close to the pipeline and failing to notify Dixie Pipeline personnel of their intentions to blast so that Dixie could

13

reduce the operating pressure on the pipeline–a safety measure designed to protect the integrity of the pipeline and to avoid damage to the pipeline.

64.  Hanson necessarily uses thousands of pounds of explosives each week in blasting at the quarry. The blasting obviously throws thousands of pounds of earth, including rock, dust, and fine particulate, into the air in and around the quarry.

65.  The blasting causes shaking of the earth, shaking of the Plaintiffs' homes, and the throwing of rock, dirt and dust onto and about the lands of the Plaintiffs.

66.  As part of its operations, Hanson necessarily contracts with trucking companies and tractor-trailer and dump-truck operators to remove their product from the quarry site and onto the roads and highways in Lee County, including Highways 169 and 166, among others. This causes from dozens to hundreds of trucks daily to enter and exit from the quarry. These trucks are loaded to weights substantially in excess of the design criteria for the roads and highways, and cause substantial amounts of dust and debris to be deposited on the public roads and upon the lands of many of the plaintiffs.

67.  As part of its operations, Hanson necessarily moves large quantities of overburden to a "spoil pile" area that is immediately adjacent to several of the Plaintiffs' lands, including the Davises, the Harmons, Ms. Wilkes, and the Jacksons.

68.  The quarrying activities from this pit inevitably cause substantial, objectionable, and unceasing noise during most hours of the day and many hours of the night, as the plant generally operates from 6:00 a.m. until 6:00 p.m. and often thereafter. This noise also occurs commonly on the weekends, sometimes including Sundays. This noise comes from rock crushers, explosions, loud machinery operating many hours during the day and night, whistles, backup bells on heavy equipment, large trucks traveling up and down the roads and highways, and other such noises.

69.  The quarrying causes dust and other pollutants to accumulate on the Plaintiffs' property, including inside their homes, and in the air on their property and near their property, thereby causing damage to the Plaintiffs personally and to their real property.

70.  Hanson has, for several years, had actual and constructive knowledge that sediment and erosion floods onto Plaintiff Jackson's lands and onto Plaintiff Randall Parker's lands. Despite requests to stop the erosion and flooding, Hanson has ignored the problem and has failed to take any corrective action whatsoever.

14

71.  The quarrying causes such a constant noise and vibration to the Plaintiffs' property, including their homes, that they cannot peaceably enjoy their land.

72.  Defendants' operations are so loud and annoying that at many times, it is impossible for some of the Plaintiffs to sleep – especially those who work at night and must sleep during the day, such as Mr. Davis.

## COUNT ONE
### (Private and Public Nuisance)

73.  Plaintiffs reallege paragraphs 1 through 70 of the Complaint as if set out here in full.

74.  Defendant Hanson's quarrying operations have caused and are causing a private and/or public nuisance to exist, as described above. The quarrying is harmful to the public and adversely affects people of ordinary sensibilities.

75.  Hanson's operations create unreasonably loud noises, vibrations, dust, and pollution, and cause a tremendous increase in traffic from dangerously loaded heavy trucks. These and other damages alleged in this Complaint harm the public generally.

76.  The Plaintiffs have suffered and continue to suffer hurt, inconvenience, and other damages that are different in kind and degree than the damages suffered by the general population of Lee County. Moreover, the Plaintiffs have suffered damages due to Defendants' conduct that would affect any ordinary, reasonable person, and such damages are not such as would be fanciful or as would affect only a person of fastidious taste. Plaintiffs have the right to file this claim under Alabama Code Sections 6-5-120, 6-5-123, 6-5-124, 6-5-125 and 6-5-127.

77.  The damages caused to the individual Plaintiffs include, but are not limited to:

a.  lack of quiet enjoyment of their property, which includes, at times, a complete inability to use or enjoy their property;

b.  noise generated by machinery operating virtually twenty-four hours per day;

15

c.     pollution of the air by dust generated from blasting, diggings, movement of equipment and operation of heavy machinery and manufacturing plants;

d.     permanent devaluation of the Plaintiffs' land and homes by the above mentioned nuisance;

e.     noise, vibration, and damage to their homes and property caused by the Defendants' use of explosives and the blasting in the quarry;

f.     increase in pollution (air, noise, garbage) caused by the increase in traffic volume of heavy and dangerous trucks;

g.     broken windshields and damaged automobiles caused by the trucks going to and from the quarry at all hours;

h.     mental anguish and mental suffering of these Plaintiffs as they worry about the safety and value of their loved ones, their homes, and their lands; and

i.     Personal injury, including causing some plaintiffs to develop asthma and other breathing/pulmonary problems, and exacerbating other plaintiffs' existing asthmatic and other breathing/pulmonary problems.

78.    Hanson's actions have been repetitive, willful, wanton and aggravated. Hanson has ignored and violated the important "blasting guidelines" of the Dixie Pipeline (which are designed to ensure the integrity of the pipeline, and, therefore, the safety of the community), and Hanson has continued to blast even though inside the Opelika police jurisdiction and even though it was requested by Plaintiffs to refrain from blasting.

79.    Moreover, despite actual knowledge that the spoil pile is sloped very steeply, was never planted with any type of vegetation to arrest erosion and runoff, and that, therefore, large quantities of dirt and sediment migrate onto the Plaintiffs' properties, Hanson has taken

16

absolutely no steps to limit or stop the erosion and continuing trespasses. This conduct justifies the imposition of punitive damages.

80. Hanson has continued to process and manufacture rock and rock by-products. Moreover, the Defendants continued their operations with full knowledge of the damages being forced upon the individual Plaintiffs, as well as the public at large, and Defendants have not abated their nuisance despite demand to do so.

81. Defendants' actions constitute a private and public nuisance, and their actions are or can be abated, so that the nuisance created and maintained by the Defendants is abatable.

82. The damages suffered by the City of Opelika and The Utilities Board of the City of Opelika include loss of public property, recreational uses and benefits to the public generally, loss in value of public property, and loss of water to be used as a backup source of clean drinking water for citizens of Opelika and Lee County.

83. If Hanson is allowed to continue pumping water from the quarry pit, further dewatering of the area will occur, the cone of depression will enlarge, and eventually more private, and quite possibly public, water wells will go dry or be reduced in capacity.

**WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable, and in addition, request this Honorable Court to enter injunctive relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT TWO
### (Negligence and Wantonness)

84. Plaintiffs reallege paragraphs 1 through 81 of the Second Amended and Restated Complaint as if set out here in full.

17

85.    Defendant Hanson has a duty to operate the quarry in a manner that will not cause unreasonable injury to adjacent and/or nearby landowners.

86.    Defendant Hanson breached its duty by damaging the Plaintiffs as stated above.

87.    As described above, Plaintiffs suffered damages due to the negligent and wanton and willful manner in which Defendant Hanson operates the quarry.

88.    Defendant Hanson has actual knowledge that the manner in which it is operating its quarry was causing the very damages (both public and private) stated above in this Complaint. Despite such actual knowledge (made known to them by oral and written notice), the Defendant continues to cause the damages stated above. Moreover, the Plaintiffs from time to time protested the manner in which Defendant operates the quarry, yet Defendants refused to change or alter their practices, all to the continued detriment of the Plaintiffs.

89.    The manner in which Defendant Hanson ignored the Plaintiffs' complaints constitutes rude, wanton, outrageous, and/or reckless conduct for which Hanson should be punished by the imposition of punitive damages.

   **WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable, and in addition, request this Honorable Court to enter injunctive relief preventing all of the Defendants from continuing to cause the damages stated above.

<u>**COUNT THREE**</u>
<u>(Trespass)</u>

90.    Plaintiffs reallege paragraphs 1 through 87 of the Second Amended and Restated Complaint as if set out here in full.

91.    The manner in which Defendant Hanson operates the quarry has caused noxious fumes, dust, particulate matter, and garbage to enter upon Plaintiffs' lands without their consent and

18

despite their repeated objections. Moreover, the repeated, continuous, long-term blasting using high explosives has caused additional unwanted and unconsented-to damages to the Plaintiffs' lands, and possibly to the Dixie Pipeline, thereby endangering the Plaintiffs and the public generally.

92. Plaintiffs lands have been damaged as set forth above.

93. Defendant Hanson operates the quarry as described with full knowledge that its activities were causing trespasses to Plaintiffs' lands, yet continued to engage in such activity despite actual knowledge that the Plaintiffs were being damaged.

94. Defendant Hanson has engaged in repetitive trespasses upon the Plaintiffs' lands, all without Plaintiffs' consent and over their express and frequently communicated objection. Hence, the imposition of punitive damages is appropriate and necessary to punish and deter Defendant Hanson from engaging in such conduct in the future.

WHEREFORE Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable, and injunctive relief requiring Defendant Hanson to take all necessary measures to stop the continuing trespasses and to remedy the prior trespasses.

## COUNT FOUR
### (Injunctive Relief)

95. Plaintiffs reallege paragraphs 1 through 92 of the Complaint as if set out here in full.

96. The continued operation of the quarry has caused and will continue to cause the damages stated above.

97. The actions of Defendant Hanson in pumping water from the quarry pit have caused such a substantial de-watering of the area that the spring at Spring Villa has been caused to go dry as a direct result of the pumping of water from the ground from the quarry.

19

98.  The quarry operations are immediately adjacent to the Dixie Pipeline, a very large transcontinental propane gas pipeline. The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within 200 feet of the pit created by the Defendants' operations.

99.  There is a substantial likelihood that the operations of the Defendants in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry, and this result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

100.  In fact, a large sinkhole, 25 feet in diameter and over 20 feet deep, recently formed only 233 feet from the center of the Dixie Pipeline easement. This sinkhole developed due to Hanson's pumping of water from the quarry and the concomitant dewatering of the surrounding area.

101.  This sinkhole is only 34 feet from the public Highway 166, and Highway 166 now appears to "dip" or sag near the sinkhole, so that there is a real possibility that a sinkhole or sinkholes may be forming under the roadbed.

102.  If the roadbed caves in, members of the traveling public, including the Plaintiffs, may well be in danger of serious injury or death.

103.  The operations of the quarry in causing sinkholes to form now and in the future will in fact endanger the viability of the Dixie Pipeline. It is entirely possible, and indeed foreseeable, that if the ground beneath the Dixie Pipeline were to give way, particularly at a welded joint, the Dixie Pipeline would then rupture. A rupture of the pipeline could very well cause an

20

explosion of devastating proportions. An explosion from the Dixie Pipeline could literally

incinerate an area hundreds of yards in diameter.

104. Several of the Plaintiffs live less than 200 yards from the Dixie Pipeline and, therefore, their

lives are in danger by Hanson's continued operation.

105. It is in the public's best interest to stop the continued operation of the quarry.

106. The quarry cannot be operated in such a manner as to prevent the serious and continued

damages to the public, the Plaintiffs and the Public's interests.

WHEREFORE, the Plaintiffs demand judgment enjoining all of the Defendants from

operating this or any quarry on the Youngs' and Gilmer's lands, and for such other legal or equitable

relief to which they are entitled.

## COUNT FIVE
### (Statutory Damages for Diversion of Water)

107. Plaintiffs adopt by reference the allegations of paragraphs 1-104 above.

108. Pursuant to Alabama Code section 33-7-4, Defendants are liable to the Plaintiffs Randall and

Wanda Parker for diversion of water from Little Uchee Creek, and to the City of Opelika and

The Utilities Board of the City of Opelika for the diversion of water from the underground

aquifers to the surface in and near the Spring Villa spring.

WHEREFORE, Plaintiffs Randall and Wanda Parker, the City of Opelika, and The Utilities

Board of the City of Opelika demand that the Court enjoin all of the Defendants from their pumping

operations and to stop diverting and dewatering the Little Uchee Creek and the aquifer feeding the

Spring Villa spring, and further demand such compensatory and punitive damages to which they are

entitled, together with costs, attorneys fees, interest and such other further relief as the jury finds

reasonable.

## COUNT SIX
### (Claims Against Oldcastle)

109.  Defendant Oldcastle Materials Southeast, Inc. is a foreign corporation organized and existing

under the laws of the state of Delaware, which is qualified to do business in Alabama.

110.  Defendant Oldcastle has assumed control of the Lee County Quarry at issue in this litigation.

Despite request therefor, Defendant Hanson has refused to provide to Plaintiffs the

agreement, sales or assignment documents relating to Oldcastle's assumption of the quarry

operation.

111.  On information and belief, Defendant Oldcastle is intending to and will continue the

operations of the quarry under the same or similar conditions so that each and every cause

of action pleaded against Defendant Hanson is hereby pleaded against Defendant Oldcastle.

112.  Defendant Oldcastle has continued to operate the quarry and will continue to operate the

quarry unless and until restrained by this Court.

113.  Defendant Oldcastle's continued operation will be done in a negligent and wanton manner

causing the damages and continuing damages to the Plaintiffs as stated earlier in this

Complaint.

114.  All damages and harms pleaded in this Complaint will continue if Defendant Oldcastle

continues to operate the quarry.  Moreover, any blasting and discharging of water by

Oldcastle will cause continuing damages to the Plaintiffs as alleged above in this 3rd

Amended and Restated Complaint.

115.  Defendant Oldcastle either purchased or otherwise assumed control of the Lee County

Quarry with the full knowledge and information about this pending lawsuit and with full

knowledge and information about the Plaintiffs' claims and the fact that the quarry is in fact

22

damaging the Plaintiffs, dewatering the community, causing sinkholes, endangering the public highways and the integrity of the pipeline, and destroyed Spring Villa spring and park.

116.    Since assuming control of the quarry Defendant Oldcastle has continued to operate the quarry, continued to dewater, continued to blast, and continued to create, noise and dust problems for the community.

Wherefore Plaintiffs demand judgment against Defendant Oldcastle: (1) enjoining all of the Defendants, including Defendant Oldcastle, from operating this or any quarry on the Youngs' and Gilmer's lands, and for such other legal or equitable relief to which they are entitled; (2) for all compensatory damages to which they are entitled based upon Defendant Oldcastle's continuation of the nuisance and continued negligent and wanton operation of the quarry; (3) for such punitive damages as the jury deems appropriate to punish and deter Defendant Oldcastle and others similarly situated; and (4) for costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable.

_____
CHARLES E. VERCELLI, JR. (VER003)

OF COUNSEL:

For All Plaintiffs:
LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100
Fax (334) 821-7101

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805
Fax (33) 834-8807

For Plaintiffs City of Opelika and Water Works Board of the City of Opelika Only:
Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334)745-6244
Fax (334) 745-6288

23

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Dorman Walker
Matt Parneil
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this the ___/4___ day of August, 2003.

_____
OF COUNSEL

## ALL PLAINTIFFS DEMAND TRIAL BY JURY IN
## LEE COUNTY, ALABAMA

The Clerk is requested to serve this Complaint upon Defendant Oldcastle by Certified Mail, return receipt requested, to its registered agent at The Corporation Company, 2000 Interstate Park Drive, STE 204, Montgomery, AL 36109, and by personal service by William Bradley Neighbors, to be appointed as designated process server.

155-00.3rd-Amend-Complaint1.2.wpd

24

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

1088

MIKE & DONNA DAVIS; MIKE & ANN BROADWATER;      )
MITTIE BROADWATER; CITY OF OPELIKA, a Municipal  )
Corporation; THE UTILITIES BOARD OF THE CITY OF  )
OPELIKA, a public corporation; BEAUREGARD WATER  )
AUTHORITY, a public coporation; ANTHONY & CAROL  )
CLARK; CAROL CLARK, as Mother and Next Friend of )
COURTNEY CLARK; ELAINE EDWARDS; MARY SUE         )
EILAND; MEDENA FRIZZEL; MEDENA FRIZZEL, as       )
Mother and Next Friend of KARLA FRIZZELL and     )
BRIANNA YOUGREN; RONNIE & DOROTHY GRIGGS;        )
MIKE & STACEY HAGENS;  HOWARD & LISA HARMON;     )
LISA HARMON, as Mother and Next Friend of JUDSON &   )
BRIA HARMON; HAYWARD & NORA JACKSON; MIKE &      )
SHELIA LaMACCHIA; SHELIA LaMACCHIA, as Mother    )
and Next Friend of RUSSELL LaMACCHIA; STANLEY &  )
JACKIE LEDBETTER; TERRY & CAROL LONG; TIM &      )
ADA MANNING; DAVID & JANETTE BAGGETT; JAMES      )
& SHIRLEY PARKER; RANDALL & WANDA PARKER;        )
WANDA PARKER, as Mother and Next Friend of AMBUR )
& BRANDON PARKER; JEFF & MARIA RICHARDSON;       )
MARIA RICHARDSON, as Mother and Next Friend of   )
NATASHA RICHARDSON; DAVID & AMANDA               )
SUMNER; AMANDA SUMNER, as Mother and Next Friend )
of TODD SUMNER; LARRY & RITA SUMNER; MARTHA      )
TREADWAY; MARTHA TREADWAY, as Guardian and Next  )
Friend of JASMIN, MICHAEL, HAZEL & JOSEPH KING;  )
BILLY &  SHERRY WALLACE; SHERRY WALLACE, as      )
Mother and Next Friend of AARON WALLACE;         )
MICHELE WILKES; SHIRLEY WILSON; BETTY J.         )
PFINGSTON; BETTY J. PFINGSTON, as Guardian and   )
Next Friend of JESSICA PFINGSTON;  WONDA BRIGHT; )
DONNIE SMITH; DAVID & TANYA TANKERSLEY;          )
and KEN & NAOMI SCHWIEKER,                       )
                                                 )
                    Plaintiffs,                  )
                                                 )
                                                 )  Civil Action No.
vs.                                              )
                                                 )  CV-20 02-85
HANSON AGGREGATES SOUTHEAST, INC.; LOUISE        )
YOUNG O'BRIEN; VIRGINIA YOUNG PRIEST; VIRGINIA   )
HART YOUNG; CLAUDE JOHN YOUNG; CHARLES W.        )
GILMER, SR.; ALICE C. GILMER; CHARLES W. GILMER, )
JR.; KAMMY GILMER; BARBARA GILMER SMITH; GARY    )
SMITH; MATTHEW RUTTLEDGE GILMER; LELIA           )
WILDER GILMER; GILMER PROPERTIES, LTD.; and      )
OLDCASTLE MATERIALS SOUTHEAST, INC.,             )
                                                 )
                    Defendants.                  )

FILED

AUG 2 5 2003

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

FOURTH AMENDED AND RESTATED COMPLAINT

1.   Plaintiffs Mike and Donna Davis, who reside at 149 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Davises aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: cracks have formed in the basement and in the fireplace; the tiles in the ceiling of the basement are falling out; their boat and boathouse are forever covered by a thick coat of dust; Donna Davis has developed allergy and sinus problems within the last two years, caused by the Defendants; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

2.   Plaintiffs Mike and Ann Broadwater, who reside at 610 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Broadwaters aver that as a result of Defendants' actions their home, property and families have sustained the following damages, among others: a cracked foundation; cracked ceilings; a cracked fireplace; unlevel floors; Plaintiff Mike Broadwater has had a lung transplant and the never ending dust, noise and shaking of the home have greatly aggravated his condition; and other known and unknown damages.

3.   Plaintiff Mittie Broadwater, who resides at 574 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Broadwater avers that as a result of Defendants' actions her home and property have sustained the following damages, among others: the blocks under her mobile home have cracked and are falling apart; the front and back doors of her home are hanging up on the bottom of the doorway; the windows of her home are cracked; and there are other known and unknown problems with her home and property.

4.   Plaintiff City of Opelika is a municipal corporation organized under the laws of the state of Alabama, situated in Lee County, Alabama.

5.  Plaintiff The Utilities Board of the City of Opelika, is a public corporation that operates a public water supply and distribution system on behalf of the City of Opelika and surrounding areas of Lee County, Alabama.

6.  Plaintiff, the Beauregard Water Authority, is a public corporation that operates a public water supply and distribution system on behalf of the Beauregard community and surrounding areas of Lee County, Alabama.

7.  Plaintiffs Anthony and Carol Clark, who reside at 1740 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Clarks aver that as a result of the Defendants' actions their home, property and families have sustained the following damages, among others: cracked walls and ceilings; cracks in the foundation of the home; cracked windshields in their vehicles; sink holes have formed on their property; the allergies and asthma suffered by certain family members have been aggravated and their medical conditions will continue to deteriorate; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with their home and property.

8.  Plaintiff Courtney Clark is a minor citizen of Lee County, Alabama, who resides with his parents Anthony and Carol Clark. Plaintiff Courtney Clark avers that as a result of the Defendants' actions, he has developed asthma, suffers from this disease daily, and will continue to suffer from this condition. He may have other known and unknown damages.

9.  Plaintiff Elaine Edwards, who resides at 3274 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Edwards avers that as a result of the Defendants' actions, her homes and the home of her mother have sustained the following damages, among others: her home vibrates; cracks in the sidewalks; the concrete steps have pulled away from her concrete porch; her renal condition has been aggravated by the constant vibrations and dust; she has incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

3

1638

10.  Plaintiff Mary Sue Eiland, who resides at 2853 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Eiland avers that as a result of the Defendants' actions her home and property have sustained the following damages, among others: cracked windshields; cracks in the concrete; walls cracked in every room of her home; tiles falling from the bathroom ceilings; and other known and unknown problems with her home and property.

11.  Plaintiff Medena Frizzel, who resides at 3173 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Plaintiff Medena Frizzell avers that as a result of the Defendants' actions her home, property, and family have sustained the following damages: cracked windshield on her vehicle; cracked windows in her home; cracked mirrors; ceiling leaks; cracked ceilings; trim falling off walls; pictures falling off walls; her home is unlevel; the electricity and power blink off and on when blasting occurs; Plaintiff Medena Frizzell has suffered a recurrence of her childhood asthma within the last three years; she has incurred medical expenses; and other known and unknown problems with her home and property.

12.  Plaintiff Karla Frizzel is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Karla Frizzel avers that as a result of the Defendants' actions she has developed an asthmatic condition and will continue to suffer from this condition.

13.  Plaintiff Brianna Yougren is a minor resident citizen of Lee County, Alabama, who resides with her mother and next friend, Medina Frizzell. Plaintiff Brianna Yougren avers that as a result of the Defendants' actions she has has developed an asthmatic condition and will continue to suffer from this condition.

14.  Plaintiffs Ronnie and Dorothy Griggs, who reside at 3256 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Griggs aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages, among others: cracked foundation; cracked sidewalks; cracks in the bathroom tile; flower boxes are pulling away from the walls of the house; Plaintiff Dorothy Griggs has developed

4

1689

allergy and sinus problems due to the constant presence of quarry dust in her home and on her property; they have incurred medical expenses and will continue to do so; and there are other known and unknown problems with her homes and property.

15.   Plaintiffs Mike and Stacy Hagans, who reside at 1668 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Hagans aver that as a result of the Defendants' actions, their home, property and families have sustained the following damages: cracked windshields on their vehicles; sinkholes have formed on their property; their house is unlevel; cabinets are separating from the walls of their home; cracked windows; the allergies suffered by certain family members have been aggravated; Plaintiff Stacy Hagans suffers from inflamed and infected sinuses; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

16.   Plaintiffs Howard and Lisa Harmon, who reside at 145 Lee Road 707, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Harmons aver that as a result of the Defendants' actions their home, property, and family have sustained the following damages, among others; their home vibrates during blasting activities; cracked bricks on the exterior of the home; cracks in fireplace; Plaintiff Howard Harmon has developed chronic sinusitis ; the family has incurred medical expenses and will continue to do so; and other known and unknown problems with their home and property.

17.   Plaintiff Judson Harmon is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Lisa Harmon. Plaintiff Judson Harmon avers that as a result of the Defendants' actions he has developed allergic rhinitis and will continue to suffer from this condition.

18.   Plaintiff Bria Harmon is a minor resident citizen of Lee County who resides with her parents, and who brings this action by and through her mother and next friend, Lisa Harmon. Plaintiff Bria Harmon avers that as a result of the Defendants' actions she

5

1640

has developed chronic allergies and sinus problems and she will continue to suffer from this condition.

19.    Plaintiffs Hayward and Nora Jackson, who reside at 1141 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Jacksons aver that as result of the Defendants' actions, their home, property and family have been damaged as follows: mud and water constantly stands on their property inviting the presence of swarms of insects, frogs, snakes and other pests; Plaintiff Nora Jackson has developed chronic bronchitis, inflammatory lung disease, atypical pneumonia, and acute respiratory distress syndrome; the family has incurred medical expenses; and other known and unknown damages.

20.    Plaintiffs Mike and Shelia LaMacchia, who reside at 1355 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The LaMacchias aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: their backyard underground spring has gone dry; the foundation of their home is cracked; they have incurred medical expenses as of result of their child's illnesses; and other known and unknown problems with their home and property.

21.    Plaintiff Russell LaMacchia, is a minor resident citizen of Lee County, Alabama, who resides with his parents, and who brings this action by and through his mother and next friend, Shelia LaMacchia. Plaintiff Russell LaMacchia avers that as a result of the Defendants' actions, he has developed otitis media and will continue to suffer from this condition.

22.    Plaintiffs Stanley and Jackie Ledbetter, who reside at 1330 Lee Road 166, and also own rental properties located across the streetat 1333 Lee Road 166, Lots #2-9, 1377 Lee Road 166, 1332 Lee Road 166, 1334 Lee Road 166, 1336 Lee Road 166, and 1340 Lee Road 166, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Ledbetters aver that as a result of the Defendants' actions, their homes, properties and family have sustained the following damages, among others: cracked windows; foundation cracks; cracked

6

ceilings; unlevel mobile homes; and other known and unknown problems with their home and properties.

23.     Plaintiffs Terry and Carol Long, who reside at 3379 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Longs aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracks in cement sidewalks; cracks in cement around swimming pool; cracks around windows; cracks in trim work; recent cracks forming in three year old addition to home; and other known and unknown problems with their home and property.

24.     Plaintiffs Tim and Ada Manning, who reside at 3226 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Mannings aver that as a result of the Defendants' actions their home and property have sustained the following damages, among others: chipped paint on their vehicles as result of blasting debris landing in their yard; cracked windshields; a cracked foundation on their home; cracks in driveway and in cement area around their swimming pool; crack in swimming pool; and other known and unknown problems with their home and property.

25.     Plaintiffs David and Janette Baggett, who reside at 1198 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Baggetts aver that as a result of the Defendants' actions, their homes, property, and family have sustained the following damages, among others: leaks in their ceilings; cracks in ceilings; cracks in walls; mobile homes are unlevel; Plaintiff Janette Baggett's depression and nervous condition has been greatly aggravated by the constant noise, blasting and shaking that occurs in her home; Plaintiff David Nash has developed allergy and sinus problems within the last two years; they have incurred medical expenses; and other known and unknown problems with their homes and property.

26.     Plaintiffs James and Shirley Parker, who reside at 3039 Alabama Highway 169, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. James and Shirley Parker aver that as a result of the Defendants'

actions, their home, property and family have sustained the following damages, among others: cracked windows; a cracked foundation; cracks in the walls and ceilings of their home; due to the constant presence of quarry dust, Plaintiff Shirley Parker has developed asthma within the last two years; and other known and unknown damages.

27. Plaintiff Randall and Wanda Parker, who reside at 1229 Lee Road 166, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs' Randall and Wanda Parker are riparian owners south of Spring Villa Park who own part of Little Uchee Creek. Randall and Wanda Parker aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked foundation; cracked chimney; cracked sheet rock; cabinets pulling away from the walls; light fixtures are loose and fall when blasting occurs; Plaintiff Wanda Parker developed asthma approximately 1 year ago; they have incurred medical expenses and will continue to do so; and other known and unknown damages. Furthermore the Randall and Wanda Parker aver that the past and future actions of the Defendants will irreparably harm their family's interests in and to Little Uchee Creek, as well as the interests of many other citizens of Lee County, Alabama, who use the creek as they do.

28. Plaintiff Ambur Parker is a minor resident citizen of Lee County who resides with her parents James and Wanda Parker, and who brings this action by and through her mother and next friend, Wanda Parker. Plaintiff Ambur Parker avers that as a result of the Defendants' actions, she has developed asthma within the last year and will continue to suffer from this condition.

29. Plaintiff Brandon Parker is a minor resident citizen of Lee County who resides with his parents James and Wanda Parker, and who brings this action by and through his mother and next friend, Wanda Parker. Plaintiff Brandon Parker avers that as a result of the Defendants' actions, he has developed allergy and sinus problems that include nose bleeds and will continue to suffer from this condition.

30. Plaintiffs Maria and Jeff Richardson, who reside at 265 Lee Road 705, are over the age of nineteen years and are residents of Lee County, Alabama. The Richardsons

8

aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: cracked foundation; cracks in the ceiling; Plaintiff Jeff Richardson has developed allergic sinus problems; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

31.     Plaintiff Natasha Richardson is a minor resident citizen of Lee County who resides with his parents and who brings this action by and through her mother and next friend, Maria Richardson. Plaintiff Natasha Richardson avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

32.     Plaintiffs David and Amanda Sumner, who reside at 164 Lee Road 148, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. David and Amanda Sumner aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others; cracked foundation; crack in the ceilings; crack in the concrete surrounding the swimming pool; they have incurred medical expenses and will continue to do so; and other known and unknown damages.

33.     Plaintiff Todd Sumner, is a  is a minor resident citizen of Lee County who resides with his parents, and who brings this action by and through his mother and next friend, Amanda Sumner. Plaintiff Todd Sumner avers that as a result of the Defendants' actions, he developed asthma at the age of three months and will continue to suffer from this condition.

34.     Plaintiffs Larry and Rita Sumner, who reside at 1100 Lee Road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. Plaintiffs Larry and Rita Sumner aver that as a result of the Defendants' actions, their home and property have sustained the following damages, among others: cracked windshields; house is unlevel; cracked roof; cracked ceilings; cracked walls; slit roof beams; and other known and unknown damages.

35.     Plaintiff Martha Treadway, who resides at 3177 Alabama Highway 169, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Treadway

1644

avers that as result of the Defendants' actions, her home, property and family have sustained the following damages, among others: destroyed field lines; cracked ceilings; cabinets pulling away from the walls; she has developed chronic pulmonary disease, a serious problem with her lung, in the last three years; bricks falling off the frame of the house; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

36.   Plaintiff Jasmine King, is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Martha Treadway. Plaintiff Jasmine King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

37.   Plaintiff Michael King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway. Plaintiff Michael King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

38.   Plaintiff Hazel King is a minor resident citizen of Lee County who resides with her grandmother, and who brings this action by and through her grandmother and next friend, Martha Treadway. Plaintiff Hazel King avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition.

39.   Plaintiff Joseph King is a minor resident citizen of Lee County who resides with his grandmother, and who brings this action by and through his grandmother and next friend, Martha Treadway. Plaintiff Joseph King avers that as a result of the Defendants' actions, he has developed asthma and will continue to suffer from this condition.

40.   Plaintiffs Billy and Sherry Wallace, who reside at 1692 Lee road 147, are husband and wife, are over the age of nineteen years and are residents of Lee County, Alabama. The Wallaces aver that as a result of the Defendants' actions, their home, property and family have sustained the following damages, among others: pictures

10

1645

are being knocked off walls and destroyed; cracked ceilings; windows knocked out of the home; cracked fireplace stones; cracked windows; their older child suffers from asthma but has been in remission since leaving the family home; Plaintiff Billy Wallace has developed a cavitary lung disease; the family has incurred medical expenses and will continue to do so; and other known and unknown damages.

41.    Plaintiff Aaron Wallace is a minor resident citizen of Lee County who resides with is parents, and who brings this action by and through his mother and next friend, Sherry Wallace. Aaron Wallace avers that as a result of the Defendants' actions he has developed asthma, chronic allegeries, sinuitis; that he is forced to sleep under a cold air humidifer; and will continue to suffer from these conditions, and other known and unknown damages.

42.    Plaintiff Michele Wilkes, who resides at 148 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Wilkes avers that as the result of Defendants' actions, her home and property have sustained the following damages, among others: a cracked foundation; bricks separating from a concrete porch; water leakage in her basement; concrete blocks in basement separating; concrete pad and step s pulling away from the house; she has developed sinus problems in the last three years; she has incurred medical expenses and will continue to do so; and other known and unknown damages.

43.    Plaintiff Shirley Wilson, who resides at 64 Lee Road 707, is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Wilson avers that as a result of the Defendants' actions, her home and property have sustained the following damages, among others: the well located on her property is filling in; cracked walls; cracked foundation; she has developed an allergy to dust that was worsened over the last year; and other known and unknown damages.

44.    Plaintiff Betty J. Pfingston, who resides in one of the mobile homes owned by Stanley Ledbetter off of Highway 166 in Lee County, and is over the age of nineteen years and is a resident of Lee County, Alabama. Ms. Pfingston avers that as a result of the Defendants' actions, the mobile home in which she lives has been damaged; she has to put up with the noise, vibration, dust, and other irritations caused by the

11

quarry, to her great inconvenience and harm; and she has suffered other known and unknown damages.

45.   Plaintiff Jessica Pfingston is a minor resident citizen of Lee County who resides with her grandmother and who brings this action by and through her grandmother and next friend, Betty J. Pfingston.   Jessica Pfingston avers that as a result of the Defendants' actions, she has developed asthma and will continue to suffer from this condition, and other known and unknown damages.

46.   Plaintiff Wonda Bright resides at 245 Lee Road 166, is over the age of nineteen years and is a resident of Lee County, Alabama.   Ms. Bright avers that as a result of the Defendants' actions, she has suffered the following damages: she cannot escape the noise, truck traffic noise, blasting noise and vibration, dust, and her home has suffered cracks on the concrete porches.   Additionally, she has developed allergies and must now take allergy medication, and she has been unable to sell her house and move away from the nuisance.

47.   Defendant Hanson Aggregates Southeast, Inc. (hereinafter "Hanson") is a foreign corporation doing business in Lee County, Alabama.   It owns and operates a limestone quarry, equipment terminal and an explosives holding area on the property belonging to the Young Defendants and the Gilmer Defendants.

48.   Defendants Louise Young O'Brien, Virginia Young Priest, Virginia Hart Young, and Claude John Young (hereinafter "the Young Defendants") are either members of a limited partnership or a general partnership.   The Young Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Opelika Materials, Inc., and ultimately to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Young Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Young Defendants.

12

49.  Defendants Charles W. Gilmer, Sr., Alice C. Gilmer, Charles W. Gilmer, Jr., Kammy Gilmer, Barbara Gilmer Smith, Gary Smith, Matthew Ruttledge Gilmer, Lelia Wilder Gilmer, and Gilmer Properties, Ltd. (hereinafter "the Gilmer Defendants") are either members of a limited partnership or a general partnership. The Gilmer Defendants leased their land in Lee County south of Highway 169 and East of Highway 166 to Defendant Hanson Aggregates Southeast, Inc. for use as its quarry site. This land is near all the named Plaintiffs. The Gilmer Defendants have a direct financial interest in the Hanson Quarry as they are believed to receive royalty payments on the aggregate mined from the premises, so that their presence in the suit is required as necessary parties to any injunctive relief that might be obtained by the Plaintiffs. Plaintiffs do not seek money damages from the Gilmer Defendants.

## STATEMENT OF FACTS

50.  The individual Plaintiffs all reside within a mile or so of the Defendants' properties, near Lee County Road 166 and Alabama Highway 169, and all own property that is in close proximity to the quarry owned and/or operated by Defendants Hanson.

51.  The Beauregard Water Authority operates water wells in or near the same "chewacla marble" terrain. The Plaintiff believes the water table has been effected and that this adverse impact will increase in the future if the quarry continues to operate. They also believe the repetitive blasting has caused damage to its water lines and will continue to do so in the future.

52.  The City of Opelika owns Spring Villa Park and swimming pool, and The Utilities Board owns and operates properties surrounding Spring Villa Park, including a natural spring that has flowed, non-stop, for generations. The spring ceased to flow in the spring of 2000, within a few years after the quarry began pumping millions of gallons of water per day out of the quarry pit. The quarry pit and the spring are in the same "chewacla marble" (aka limestone) terrain, which is highly fractured, and through which water migrates easily. Plaintiffs aver that the quarrying activities of the Defendants have in fact caused the spring to go dry.

13

53.  The Spring Villa Park swimming pool was fed by the spring water, so that the swimming pool is now dry and has been since the spring of 2000. Therefore, both the City of Opelika and The Utilities Board have suffered various damages. Although the Utilities Board does not now rely upon the spring for a source of public drinking water, it may do so in the future, so that the Defendants' actions in drying the spring have and will cause damage to the City and to The Utilities Board. The City of Opelika has also now lost the opportunity to construct a recreational lake on and upon the Spring Villa Park property, for use by the public for recreational purposes. The land owned by the City and The Utilities Board have, therefore, been devalued by the actions of the quarry.

54.  Were the Court to enjoin the quarry from pumping water from the aquifers in the area, and require it to allow the quarry pit to fill, it is probable that the "cone of depression" caused by pumping such large quantities of water from the quarry pit will gradually disappear, and it is probable that the spring would again flow.

55.  The Defendants' operation of a limestone quarry constitutes a nuisance.

56.  The actions of the Defendants have caused a de-watering of the subsoil in a large area surrounding the quarry.

57.  The Hanson quarry operation is immediately adjacent to the Dixie Pipeline, a very large transcontinental liquid propane gas pipeline. The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within as little as 100 feet of the pit created by the Defendants' operations.

58.  There is a substantial likelihood that the operations of the Defendants in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry. This result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

59.  An example of one such sinkhole is a 25 feet in diameter, 20 feet deep sinkhole that developed within the last two months, 34 feet east of the pavement of Highway 166,

14

1649

and only 233 feet north of the center of the Dixie Pipeline easement that crosses Highway 166.

60.    Sinkholes have also formed on the Plaintiffs' lands, including a large sinkhole in the driveway of the Clarks, which was filled with many dumptruck loads of dirt. This sinkhole, and others, formed only a few hundred feet south of the Dixie Pipeline easement and within a few hundred feet of the quarry pit.

61.    The operations of the quarry in causing sinkholes to form now and in the future will in fact endanger the viability of the Dixie Pipeline. It is entirely possible, and indeed foreseeable, that if the ground beneath the Dixie Pipeline were to give way, particularly at a welded joint, the Dixie Pipeline would then rupture. A rupture of the pipeline could very well cause an explosion of devastating proportions. An explosion from the Dixie Pipeline could literally incinerate an area hundreds of yards in diameter, including Plaintiffs' homes and/or passing motorists on Highway 166.

62.    Many of the Plaintiffs' homes are located within a few hundred yards of the Dixie Pipeline and the Defendants' quarry.

63.    In recent depositions of Hanson corporate representatives, it was also learned that Hanson has violated several of the terms and conditions of Dixie Pipelines' "blasting guidelines", which Dixie relied upon in granting Hanson permission to blast so close to the pipeline. These violations included using too many pounds of explosives too close to the pipeline and failing to notify Dixie Pipeline personnel of their intentions to blast so that Dixie could reduce the operating pressure on the pipeline—a safety measure designed to protect the integrity of the pipeline and to avoid damage to the pipeline.

64.    Hanson necessarily uses thousands of pounds of explosives each week in blasting at the quarry. The blasting obviously throws thousands of pounds of earth, including rock, dust, and fine particulate, into the air in and around the quarry.

65.    The blasting causes shaking of the earth, shaking of the Plaintiffs' homes, and the throwing of rock, dirt and dust onto and about the lands of the Plaintiffs.

15

1600

66. As part of its operations, Hanson necessarily contracts with trucking companies and tractor-trailer and dump-truck operators to remove their product from the quarry site and onto the roads and highways in Lee County, including Highways 169 and 166, among others. This causes from dozens to hundreds of trucks daily to enter and exit from the quarry. These trucks are loaded to weights substantially in excess of the design criteria for the roads and highways, and cause substantial amounts of dust and debris to be deposited on the public roads and upon the lands of many of the plaintiffs.

67. As part of its operations, Hanson necessarily moves large quantities of overburden to a "spoil pile" area that is immediately adjacent to several of the Plaintiffs' lands, including the Davises, the Harmons, Ms. Wilkes, and the Jacksons.

68. The quarrying activities from this pit inevitably cause substantial, objectionable, and unceasing noise during most hours of the day and many hours of the night, as the plant generally operates from 6:00 a.m. until 6:00 p.m. and often thereafter. This noise also occurs commonly on the weekends, sometimes including Sundays. This noise comes from rock crushers, explosions, loud machinery operating many hours during the day and night, whistles, backup bells on heavy equipment, large trucks traveling up and down the roads and highways, and other such noises.

69. The quarrying causes dust and other pollutants to accumulate on the Plaintiffs' property, including inside their homes, and in the air on their property and near their property, thereby causing damage to the Plaintiffs personally and to their real property.

70. Hanson has, for several years, had actual and constructive knowledge that sediment and erosion floods onto Plaintiff Jackson's lands and onto Plaintiff Randall Parker's lands. Despite requests to stop the erosion and flooding, Hanson has ignored the problem and has failed to take any corrective action whatsoever.

71. The quarrying causes such a constant noise and vibration to the Plaintiffs' property, including their homes, that they cannot peaceably enjoy their land.

16

1651

72.   Defendants' operations are so loud and annoying that at many times, it is
      impossible for some of the Plaintiffs to sleep – especially those who work at night
      and must sleep during the day, such as Mr. Davis.

## COUNT ONE
### (Private and Public Nuisance)

73.   Plaintiffs reallege paragraphs 1 through 70 of the Complaint as if set out here in full.

74.   Defendant Hanson's quarrying operations have caused and are causing a private
      and/or public nuisance to exist, as described above. The quarrying is harmful to the
      public and adversely affects people of ordinary sensibilities.

75.   Hanson's operations create unreasonably loud noises, vibrations, dust, and
      pollution, and cause a tremendous increase in traffic from dangerously loaded
      heavy trucks. These and other damages alleged in this Complaint harm the public
      generally.

76.   The Plaintiffs have suffered and continue to suffer hurt, inconvenience, and other
      damages that are different in kind and degree than the damages suffered by the
      general population of Lee County. Moreover, the Plaintiffs have suffered damages
      due to Defendants' conduct that would affect any ordinary, reasonable person, and
      such damages are not such as would be fanciful or as would affect only a person of
      fastidious taste. Plaintiffs have the right to file this claim under Alabama Code
      Sections 6-5-120, 6-5-123, 6-5-124, 6-5-125 and 6-5-127.

77.   The damages caused to the individual Plaintiffs include, but are not limited to:

      a.    lack of quiet enjoyment of their property, which includes, at times, a
            complete inability to use or enjoy their property;

      b.    noise generated by machinery operating virtually twenty-four hours per day;

17

1332

c.     pollution of the air by dust generated from blasting, diggings, movement of equipment and operation of heavy machinery and manufacturing plants;

d.     permanent devaluation of the Plaintiffs' land and homes by the above mentioned nuisance;

e.     noise, vibration, and damage to their homes and property caused by the Defendants' use of explosives and the blasting in the quarry;

f.     increase in pollution (air, noise, garbage) caused by the increase in traffic volume of heavy and dangerous trucks;

g.     broken windshields and damaged automobiles caused by the trucks going to and from the quarry at all hours;

h.     mental anguish and mental suffering of these Plaintiffs as they worry about the safety and value of their loved ones, their homes, and their lands; and

i.     Personal injury, including causing some plaintiffs to develop asthma and other breathing/pulmonary problems, and exacerbating other plaintiffs' existing asthmatic and other breathing/pulmonary problems.

78.     Hanson's actions have been repetitive, willful, wanton and aggravated. Hanson has ignored and violated the important "blasting guidelines" of the Dixie Pipeline (which are designed to ensure the integrity of the pipeline, and, therefore, the safety of the community), and Hanson has continued to blast even though inside the Opelika police jurisdiction and even though it was requested by Plaintiffs to refrain from blasting.

18

79. Moreover, despite actual knowledge that the spoil pile is sloped very steeply, was never planted with any type of vegetation to arrest erosion and runoff, and that, therefore, large quantities of dirt and sediment migrate onto the Plaintiffs' properties, Hanson has taken absolutely no steps to limit or stop the erosion and continuing trespasses. This conduct justifies the imposition of punitive damages.

80. Hanson has continued to process and manufacture rock and rock by-products. Moreover, the Defendants continued their operations with full knowledge of the damages being forced upon the individual Plaintiffs, as well as the public at large, and Defendants have not abated their nuisance despite demand to do so.

81. Defendants' actions constitute a private and public nuisance, and their actions are or can be abated, so that the nuisance created and maintained by the Defendants is abatable.

82. The damages suffered by the City of Opelika and The Utilities Board of the City of Opelika include loss of public property, recreational uses and benefits to the public generally, loss in value of public property, and loss of water to be used as a backup source of clean drinking water for citizens of Opelika and Lee County.

83. If Hanson is allowed to continue pumping water from the quarry pit, further dewatering of the area will occur, the cone of depression will enlarge, and eventually more private, and quite possibly public, water wells will go dry or be reduced in capacity.

**WHEREFORE,** Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the

1654

jury finds reasonable, and in addition, request this Honorable Court to enter injunctive relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT TWO
### (Negligence and Wantonness)

84. Plaintiffs reallege paragraphs 1 through 81 of the Second Amended and Restated Complaint as if set out here in full.

85. Defendant Hanson has a duty to operate the quarry in a manner that will not cause unreasonable injury to adjacent and/or nearby landowners.

86. Defendant Hanson breached its duty by damaging the Plaintiffs as stated above.

87. As described above, Plaintiffs suffered damages due to the negligent and wanton and willful manner in which Defendant Hanson operates the quarry.

88. Defendant Hanson has actual knowledge that the manner in which it is operating its quarry was causing the very damages (both public and private) stated above in this Complaint. Despite such actual knowledge (made known to them by oral and written notice), the Defendant continues to cause the damages stated above. Moreover, the Plaintiffs from time to time protested the manner in which Defendant operates the quarry, yet Defendants refused to change or alter their practices, all to the continued detriment of the Plaintiffs.

89. The manner in which Defendant Hanson ignored the Plaintiffs' complaints constitutes rude, wanton, outrageous, and/or reckless conduct for which Hanson should be punished by the imposition of punitive damages.

WHEREFORE, Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the

1655

jury finds reasonable, and in addition, request this Honorable Court to enter injunctive relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT THREE
### (Trespass)

90.    Plaintiffs reallege paragraphs 1 through 87 of the Second Amended and Restated Complaint as if set out here in full.

91.    The manner in which Defendant Hanson operates the quarry has caused noxious fumes, dust, particulate matter, and garbage to enter upon Plaintiffs' lands without their consent and despite their repeated objections. Moreover, the repeated, continuous, long-term blasting using high explosives has caused additional unwanted and unconsented-to damages to the Plaintiffs' lands, and possibly to the Dixie Pipeline, thereby endangering the Plaintiffs and the public generally.

92.    Plaintiffs lands have been damaged as set forth above.

93.    Defendant Hanson operates the quarry as described with full knowledge that its activities were causing trespasses to Plaintiffs' lands, yet continued to engage in such activity despite actual knowledge that the Plaintiffs were being damaged.

94.    Defendant Hanson has engaged in repetitive trespasses upon the Plaintiffs' lands, all without Plaintiffs' consent and over their express and frequently communicated objection. Hence, the imposition of punitive damages is appropriate and necessary to punish and deter Defendant Hanson from engaging in such conduct in the future.

**WHEREFORE** Plaintiffs claim from Defendant Hanson compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the

21

1688

jury finds reasonable, and injunctive relief requiring Defendant Hanson to take all necessary measures to stop the continuing trespasses and to remedy the prior trespasses.

## COUNT FOUR
### (Injunctive Relief)

95.  Plaintiffs reallege paragraphs 1 through 92 of the Complaint as if set out here in full.

96.  The continued operation of the quarry has caused and will continue to cause the damages stated above.

97.  The actions of Defendant Hanson in pumping water from the quarry pit have caused such a substantial de-watering of the area that the spring at Spring Villa has been caused to go dry as a direct result of the pumping of water from the ground from the quarry.

98.  The quarry operations are immediately adjacent to the Dixie Pipeline, a very large transcontinental propane gas pipeline. The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within 200 feet of the pit created by the Defendants' operations.

99.  There is a substantial likelihood that the operations of the Defendants in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry, and this result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

100.  In fact, a large sinkhole, 25 feet in diameter and over 20 feet deep, recently formed only 233 feet from the center of the Dixie Pipeline easement. This sinkhole

22

developed due to Hanson's pumping of water from the quarry and the concomitant dewatering of the surrounding area.

101.   This sinkhole is only 34 feet from the public Highway 166, and Highway 166 now appears to "dip" or sag near the sinkhole, so that there is a real possibility that a sinkhole or sinkholes may be forming under the roadbed.

102.   If the roadbed caves in, members of the traveling public, including the Plaintiffs, may well be in danger of serious injury or death.

103.   The operations of the quarry in causing sinkholes to form now and in the future will in fact endanger the viability of the Dixie Pipeline. It is entirely possible, and indeed foreseeable, that if the ground beneath the Dixie Pipeline were to give way, particularly at a welded joint, the Dixie Pipeline would then rupture. A rupture of the pipeline could very well cause an explosion of devastating proportions. An explosion from the Dixie Pipeline could literally incinerate an area hundreds of yards in diameter.

104.   Several of the Plaintiffs live less than 200 yards from the Dixie Pipeline and, therefore, their lives are in danger by Hanson's continued operation.

105.   It is in the public's best interest to stop the continued operation of the quarry.

106.   The quarry cannot be operated in such a manner as to prevent the serious and continued damages to the public, the Plaintiffs and the Public's interests.

WHEREFORE, the Plaintiffs demand judgment enjoining all of the Defendants from operating this or any quarry on the Youngs' and Gilmer's lands, and for such other legal or equitable relief to which they are entitled.

23

1658

## COUNT FIVE
### (Statutory Damages for Diversion of Water)

107.    Plaintiffs adopt by reference the allegations of paragraphs 1-104 above.

108.    Pursuant to Alabama Code section 33-7-4, Defendants are liable to the Plaintiffs Randall and Wanda Parker for diversion of water from Little Uchee Creek, and to the City of Opelika and The Utilities Board of the City of Opelika for the diversion of water from the underground aquifers to the surface in and near the Spring Villa spring.

**WHEREFORE,** Plaintiffs Randall and Wanda Parker, the City of Opelika, and The Utilities Board of the City of Opelika demand that the Court enjoin all of the Defendants from their pumping operations and to stop diverting and dewatering the Little Uchee Creek and the aquifer feeding the Spring Villa spring, and further demand such compensatory and punitive damages to which they are entitled, together with costs, attorneys fees, interest and such other further relief as the jury finds reasonable.

## COUNT SIX
### (Claims Against Oldcastle)

109.    Defendant Oldcastle Materials Southeast, Inc. is a foreign corporation organized and existing under the laws of the state of Delaware, which is qualified to do business in Alabama.

110.    Defendant Oldcastle has assumed control of the Lee County Quarry at issue in this litigation. Despite request therefor, Defendant Hanson has refused to provide to Plaintiffs the agreement, sales or assignment documents relating to Oldcastle's assumption of the quarry operation.

24

cause of action pleaded against Defendant Hanson is hereby pleaded against Defendant Oldcastle.

112. Defendant Oldcastle has continued to operate the quarry and will continue to operate the quarry unless and until restrained by this Court.

113. Defendant Oldcastle's continued operation will be done in a negligent and wanton manner causing the damages and continuing damages to the Plaintiffs as stated earlier in this Complaint.

114. All damages and harms pleaded in this Complaint will continue if Defendant Oldcastle continues to operate the quarry. Moreover, any blasting and discharging of water by Oldcastle will cause continuing damages to the Plaintiffs as alleged above in this 3rd Amended and Restated Complaint.

115. Defendant Oldcastle either purchased or otherwise assumed control of the Lee County Quarry with the full knowledge and information about this pending lawsuit and with full knowledge and information about the Plaintiffs' claims and the fact that the quarry is in fact damaging the Plaintiffs, dewatering the community, causing sinkholes, endangering the public highways and the integrity of the pipeline, and destroyed Spring Villa spring and park.

**Wherefore** Plaintiffs demand judgment against Defendant Oldcastle: (1) enjoining all of the Defendants, including Defendant Oldcastle, from operating this or any quarry on the Youngs' and Gilmer's lands, and for such other legal or equitable relief to which they

25

1500

are entitled; (2) for all compensatory damages to which they are entitled based upon Defendant Oldcastle's continuation of the nuisance and continued negligent and wanton operation of the quarry; (3) for such punitive damages as the jury deems appropriate to punish and deter Defendant Oldcastle and others similarly situated; and (4) for costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable.

## COUNT SEVEN
### (Additional Parties Plaintiff)

116.  Plaintiffs incorporate by reference the allegations of paragraphs 1 through 115.

117.  Plaintiffs add as a Plaintiff, pursuant to authorization from the Court, Mr. Donnie Smith. Mr. Smith owns the property adjacent to Spring Villa Road and on the south side thereof next to the Utility Board property and very close to Spring Villa spring. Sinkholes are forming on Mr. Smith's property in numerous places. His property is no longer safe, sinkholes have formed in several places in his fields, and he has two ponds that have dried up due to sinkhole development. The Smith property is, therefore, unsafe, has suffered a depreciation in value, and, therefore, Mr. Smith seeks compensatory and punitive damages against the Defendants.

118.  Plaintiffs add as Plaintiffs, pursuant to authorization from the Court, David Tankersley and his wife, Tanya. The Tankersleys own land on the south side of Spring Villa Road and reside at 756 Lee Road 148, Opelika, Alabama 36804. Numerous sinkholes have formed on the Tankersleys' property as a result of Defendants' actions. Their property is no longer safe, has been devalued, their well has gone dry, and the 12" slab in Mr. Tankersley's shop/barn has cracked

damages from the Defendants.

119.   Plaintiffs add as a Plaintiff, pursuant to authorization from the Court, Mr. Ken Schwieker, and his wife, Naomi Schwieker. The Schwiekers own the property north of Spring Villa Road and adjacent to the Utilities Board property and Little Uchee Creek in the vicinity of the sinkholes that have formed at Little Uchee Creek. Defendants' expert, Tom Joiner & Associates (specifically Mr. Wood) has already examined the Schwiekers' property.   Numerous sinkholes have formed on the Schwiekers' property, and they do not now feel that their fields are safe to bushhog or to enjoy in any respect. They are afraid that if they take horses on their property, the horses' legs will be broken and people may fall and be severely hurt.   The Schwiekers claim damages of the Defendants for the loss and value of their property, for the formation of the sinkholes that have devalued and made their property dangerous, and for sinkholes that have formed causing a cracking of the foundation on their old family farmhouse foundation. The Tankersleys also seek punitive damages for Defendants' wrongful conduct.

**Wherefore** Plaintiffs Smith, Tankersley, and Schwieker demand damages against the Defendants for the devaluation of their land, for the formation of sinkholes on their land, and the costs to repair and replace all sinkholes forming on their land, for any damages to structures on their premises, and for all such other damages to which they are entitled, including punitive damages.

27

1002

_CE Vercelly_

**CHARLES E. VERCELLI, JR. (VER003)**

OF COUNSEL:
**For All Plaintiffs:**
LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
(334) 821-7100
Fax (334) 821-7101

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
(334) 834-8805
Fax (33) 834-8807

**For Plaintiffs City of Opelika and Water
Works Board of the City of Opelika
Only:**
Guy F. Gunter, III
MELTON, GUNTER & MELTON
P.O. Box 409
Opelika, AL 36803-0409
(334)745-6244
Fax (334) 745-6288

1663

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon:

James A. Byram, Jr.
Dorman Walker
Matt Parnell
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

John V. Denson
Samford, Denson, Horsley, Pettey & Bridges
P.O. Box 2345
Opelika, AL 36803-2345

H. Wayne Phears
Phears & Moldovan
Suite 375
4725 Peachtree Corner Circle
Norcross, GA 30092-3000

Phillip E. Adams, Jr.
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069

by placing a copy of the same in the United States mail, properly addressed and postage
prepaid, this the __21st__ day of __August__, 2003.

_C E Vucelf_

OF COUNSEL

## ALL PLAINTIFFS DEMAND TRIAL BY JURY IN LEE COUNTY, ALABAMA

155-00\4th-Amend-Complaint1.3.wpd

29

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,

    Plaintiff,

vs.

HANSON AGGREGATES SOUTHEAST,
INC., and OLDCASTLE, et al.,

    Defendants.

CIVIL ACTION NO. CV 02-085

## VERDICT

I.    **PLAINTIFFS - RANDALL PARKER, WANDA PARKER and AMBUR PARKER**

A.    We, the jury, find that the Plaintiffs, **RANDALL PARKER, WANDA PARKER and AMBUR PARKER**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.**, and award Compensatory Damages in the amount of $ 472,000 .

FOREPERSON

B.    We, the jury, find that the Plaintiffs, **RANDALL PARKER, WANDA PARKER and AMBUR PARKER**, have met their burden of clear and convincing evidence as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.** and award Punitive Damages in the amount of $750,000 .

FOREPERSON

C.    We, the jury, find that the Plaintiffs, **RANDALL PARKER, WANDA PARKER and AMBUR PARKER,** have failed to meet their burden of proof and find Defendant, **HANSON AGGREGATES SOUTHEAST, INC.,** Not Liable.

FOREPERSON

D.    We, the jury, find that the Plaintiffs, **RANDALL PARKER, WANDA PARKER and AMBUR PARKER**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.**, and award Compensatory Damages in the amount of $ 18,000 .

FOREPERSON

E.    We, the jury, find that the Plaintiffs, **RANDALL PARKER and WANDA PARKER**, have met their burden of proof by clear and convincing evidence as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.**, and award Punitive Damages in the amount of $ 150,000 .

FOREPERSON

F.    We, the jury, find that the Plaintiffs, **RANDALL PARKER, WANDA PARKER and AMBUR PARKER,** have failed to meet their burden of proof and find Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** Not Liable.

FOREPERSON

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | | |
|---|---|---|
| MIKE DAVIS, et al., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. CV 02-085 |
| | * | |
| HANSON AGGREGATES | * | |
| SOUTHEAST, INC., and | * | |
| OLDCASTLE, et al., | * | |
| | * | |
| Defendants. | * | |

## VERDICT

I.    **PLAINTIFFS - MIKE BROADWATER and ANN BROADWATER**

A.    We, the jury, find that the Plaintiffs, **MIKE BROADWATER and ANN BROADWATER**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.,** and award Compensatory Damages in the amount of $_____.

_____
FOREPERSON

B.    We, the jury, find that the Plaintiffs, **MIKE BROADWATER and ANN BROADWATER**, have met their burden of clear and convincing evidence as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.** and award Punitive Damages in the amount of $_____.

_____
FOREPERSON

C.    We, the jury, find that the Plaintiffs, **MIKE BROADWATER and ANN BROADWATER,** have **failed to meet their burden of proof and find Defendant, HANSON AGGREGATES SOUTHEAST, INC.,** Not Liable.

_____
FOREPERSON

D.    We, the jury, find that the Plaintiffs, **MIKE BROADWATER and ANN BROADWATER,** have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** and award Compensatory Damages in the amount of $_____.

_____
FOREPERSON

E.    We, the jury, find that the Plaintiffs, **MIKE BROADWATER and ANN BROADWATER,** have **failed to meet their burden of proof and find Defendant, OLDCASTLE MATERIALS SOUTHEAST, INC.,** Not Liable.

_____
FOREPERSON

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                      *
                                         *
            Plaintiff,                   *
                                         *
vs.                                      *        CIVIL ACTION NO. CV 02-085
                                         *
HANSON AGGREGATES                        *
SOUTHEAST, INC., and                     *
OLDCASTLE, et al.,                       *
                                         *
            Defendants.                  *

## VERDICT

II.    **PLAINTIFFS - ANTHONY CLARK, CAROL CLARK and COURTNEY CLARK**

A.     We, the jury, find that the Plaintiffs, **ANTHONY CLARK, CAROL CLARK and COURTNEY CLARK**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.,** and award Compensatory Damages in the amount of $_____.

_____
FOREPERSON

B.     We, the jury, find that the Plaintiffs, **ANTHONY CLARK, CAROL CLARK and COURTNEY CLARK**, have met their burden of clear and convincing evidence as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.** and award Punitive Damages in the amount of $_____.

_____
FOREPERSON

C.     We, the jury, find that the Plaintiffs, **ANTHONY CLARK, CAROL CLARK and COURTNEY CLARK**, have failed to meet their burden of proof and find Defendant, **HANSON AGGREGATES SOUTHEAST, INC.,** Not Liable.

_____
FOREPERSON

D.     We, the jury, find that the Plaintiffs, **ANTHONY CLARK, CAROL CLARK and COURTNEY CLARK**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** and award Compensatory Damages in the amount of $_____.

_____
FOREPERSON

E.     We, the jury, find that the Plaintiffs, **ANTHONY CLARK, CAROL CLARK and COURTNEY CLARK**, have failed to meet their burden of proof and find Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** Not Liable.

_____
FOREPERSON

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                          *
                                             *
                    Plaintiff,               *
                                             *
vs.                                          *          CIVIL ACTION NO. CV 02-085
                                             *
HANSON AGGREGATES                            *
SOUTHEAST, INC., and                         *
OLDCASTLE et al.,                            *
                                             *
                    Defendants.              *

## VERDICT

III.    **PLAINTIFFS - RONNIE GRIGGS and DOROTHY GRIGGS**

A.      We, the jury, find that the Plaintiffs, **RONNIE GRIGGS and DOROTHY GRIGGS**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.,** and award Compensatory Damages in the amount of $_____.

_____
FOREPERSON

B.      We, the jury, find that the Plaintiffs, **RONNIE GRIGGS and DOROTHY GRIGGS**, have met their burden of clear and convincing evidence as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.** and award Punitive Damages in the amount of $_____.

_____
FOREPERSON

C.      We, the jury, find that the Plaintiffs, **RONNIE GRIGGS and DOROTHY GRIGGS,** have failed to meet their burden of proof and find Defendant, **HANSON AGGREGATES SOUTHEAST, INC., Not Liable.**

_____
FOREPERSON

D.      **We, the jury, find that the Plaintiffs, RONNIE GRIGGS and DOROTHY GRIGGS, have met** their burden of proof by preponderance of the evidence, as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** and award Compensatory Damages in the amount of $_____.

_____
FOREPERSON

E.      We, the jury, find that the Plaintiffs, **RONNIE GRIGGS and DOROTHY GRIGGS,** have failed to meet their burden of proof and find Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC., Not Liable.**

_____
FOREPERSON

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                                    *
                                                       *
                    Plaintiff,                         *
                                                       *
vs.                                                    *        CIVIL ACTION NO. CV 02-085
                                                       *
HANSON AGGREGATES                                      *
SOUTHEAST, INC., and                                   *
OLDCASTLE, et al.,                                     *
                                                       *
                    Defendants.                        *

## VERDICT

IV.    **PLAINTIFFS - STANLEY LEDBETTER and JACKIE LEDBETTER**

A.    We, the jury, find that the Plaintiffs, **STANLEY LEDBETTER and JACKIE LEDBETTER**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.,** and award Compensatory Damages in the amount of $_____.

_____
FOREPERSON

B.    We, the jury, find that the Plaintiffs, **STANLEY LEDBETTER and JACKIE LEDBETTER**, have met their burden of clear and convincing evidence as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.** and award Punitive Damages in the amount of $_____.

_____
FOREPERSON

C.    We, the jury, find that the Plaintiffs, **STANLEY LEDBETTER and JACKIE LEDBETTER**, have failed to meet their burden of proof and find Defendant, **HANSON AGGREGATES SOUTHEAST, INC.,** Not Liable.

_____
FOREPERSON

D.    We, the jury, find that the Plaintiffs, **STANLEY LEDBETTER and JACKIE LEDBETTER**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** and award Compensatory Damages in the amount of $_____.

_____
FOREPERSON

E.    We, the jury, find that the Plaintiffs, **STANLEY LEDBETTER and JACKIE LEDBETTER**, have failed to meet their burden of proof and find Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** Not Liable.

_____
FOREPERSON

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                     *
                                        *
            Plaintiff,                  *
                                        *
vs.                                     *        CIVIL ACTION NO. CV 02-085
                                        *
HANSON AGGREGATES                       *
SOUTHEAST, INC., and                    *
OLDCASTLE, et al.,                      *
                                        *
            Defendants.                 *

## VERDICT

VI.   **PLAINTIFFS - DAVID SUMNER, JULIE SUMNER and TODD SUMNER**

   A.   We, the jury, find that the Plaintiffs, **DAVID SUMNER, JULIE SUMNER and TODD SUMNER**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.**, and award Compensatory Damages in the amount of $_____.

   _____
   FOREPERSON

   B.   We, the jury, find that the Plaintiffs, **DAVID SUMNER, JULIE SUMNER and TODD SUMNER**, have met their burden of clear and convincing evidence as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.** and award Punitive Damages in the amount of $_____.

   _____
   FOREPERSON

   C.   We, the jury, find that the Plaintiffs, **DAVID SUMNER, JULIE SUMNER and TODD SUMNER**, have failed to meet their burden of proof and find Defendant, **HANSON AGGREGATES SOUTHEAST, INC.**, Not Liable.

   _____
   FOREPERSON

   D.   We, the jury, find that the Plaintiffs, **DAVID SUMNER, JULIE SUMNER and TODD SUMNER**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.**, and award Compensatory Damages in the amount of $_____.

   _____
   FOREPERSON

   E.   We, the jury, find that the Plaintiffs, **DAVID SUMNER, JULIE SUMNER and TODD SUMNER**, have failed to meet their burden of proof and find Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.**, Not Liable.

   _____
   FOREPERSON

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                          *
                                             *
                 Plaintiff,                  *
                                             *
vs.                                          *        CIVIL ACTION NO. CV 02-085
                                             *
HANSON AGGREGATES SOUTHEAST,                 *
INC., and OLDCASTLE, et al.,                 *
                                             *
                 Defendants.                 *

**VERDICT**

VII.   **PLAINTIFFS - KEN SCHWEIKER and NAOMI SCHWEIKER**

A.   We, the jury, find that the Plaintiffs, **KEN SCHWEIKER and NAOMI SCHWEIKER**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.**, and award Compensatory Damages in the amount of $ _75,000_ .

                                                      _____
                                                      FOREPERSON

B.   We, the jury, find that the Plaintiffs, **KEN SCHWEIKER and NAOMI SCHWEIKER**, have met their burden of clear and convincing evidence as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.** and award Punitive Damages in the amount of $ _____.

                                                      _____
                                                      FOREPERSON

C.   We, the jury, find that the Plaintiffs, **KEN SCHWEIKER and NAOMI SCHWEIKER**, have failed to meet their burden of proof and find Defendant, **HANSON AGGREGATES SOUTHEAST, INC.**, Not Liable.

                                                      _____
                                                      FOREPERSON

D.   We, the jury, find that the Plaintiffs, **KEN SCHWEIKER and NAOMI SCHWEIKER**, have met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.**, and award Compensatory Damages in the amount of $ _75,000_ .

                                                      _____
                                                      FOREPERSON

E.   We, the jury, find that the Plaintiffs, **KEN SCHWEIKER and NAOMI SCHWEIKER**, have met their burden of proof by clear and convincing evidence as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.**, and award Punitive Damages in the amount of $ _____.

                                                      _____
                                                      FOREPERSON

F.   We, the jury, find that the Plaintiffs, **KEN SCHWEIKER and NAOMI SCHWEIKER**, have failed to meet their burden of proof and find Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.**, Not Liable.

                                                      _____
                                                      FOREPERSON

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                     *
                                        *
              Plaintiff,                *
                                        *
vs.                                     *          CIVIL ACTION NO. CV 02-085
                                        *
HANSON AGGREGATES SOUTHEAST,            *
INC., and OLDCASTLE, et al.,            *
                                        *
              Defendants.               *

## VERDICT

### VIII.   PLAINTIFF - DONNIE SMITH

A.  We, the jury, find that the Plaintiff, **DONNIE SMITH**, has met his burden of proof by preponderance of the evidence, as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.**, and award Compensatory Damages in the amount of $_____.

                                        _____
                                        FOREPERSON

B.  We, the jury, find that the Plaintiff, **DONNIE SMITH**, has met his burden of clear and convincing evidence as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.** and award Punitive Damages in the amount of $_____.

                                        _____
                                        FOREPERSON

C.  We, the jury, find that the Plaintiff, **DONNIE SMITH**, has failed to meet his burden of proof and find Defendant, **HANSON AGGREGATES SOUTHEAST, INC.**, Not Liable. A

                                        _____
                                        FOREPERSON

D.  We, the jury, find that the Plaintiff, **DONNIE SMITH**, has met his burden of proof by preponderance of the evidence, as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.**, and award Compensatory Damages in the amount of $_____.

                                        _____
                                        FOREPERSON

E.  We, the jury, find that the Plaintiff, **DONNIE SMITH**, has met his burden of proof by clear and convincing evidence as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.**, and award Punitive Damages in the amount of $_____.

                                        _____
                                        FOREPERSON

F.  We, the jury, find that the Plaintiff, **DONNIE SMITH**, has failed to meet his burden of proof and find Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.**, Not Liable.

                                        _____
                                        FOREPERSON

vs.                                            *          CIVIL ACTION NO. CV 02-085
                                               *
HANSON AGGREGATES SOUTHEAST,                   *
INC., and OLDCASTLE, et al.,                   *
                                               *
           Defendants.                         *
                                        **VERDICT**

IX.     **PLAINTIFF - CITY OF OPELIKA**

A.     We, the jury, find that the Plaintiff, **CITY OF OPELIKA**, has met their burden of proof by
       preponderance of the evidence, as it pertains to Defendant, **HANSON AGGREGATES
       SOUTHEAST, INC.,** and award Compensatory Damages in the amount of
       $ 0         .

                                                              **FOREPERSON**

B.     **We, the jury, find that the Plaintiff, CITY OF OPELIKA, has met their burden of clear and
       convincing evidence as it pertains to Defendant, HANSON AGGREGATES SOUTHEAST,
       INC. and award Punitive Damages in the amount of $          .**

       _____
                                                              **FOREPERSON**

C.     We, the jury, find that the Plaintiff, **CITY OF OPELIKA**, has failed to meet their burden of proof
       and find Defendant, **HANSON AGGREGATES SOUTHEAST, INC.,** Not Liable.

       _____
                                                              **FOREPERSON**

D.     We, the jury, find that the Plaintiff, **CITY OF OPELIKA**, has met their burden of proof by
       preponderance of the evidence, as it pertains to Defendant, **OLDCASTLE MATERIALS
       SOUTHEAST, INC.,** and award Compensatory Damages in the amount of $ 0         .

       _____
                                                              **FOREPERSON**

E.     **We, the jury, find that the Plaintiff, CITY OF OPELIKA, has met their burden of proof by clear
       and convincing evidence as it pertains to Defendant, OLDCASTLE MATERIALS
       SOUTHEAST, INC.,** and award Punitive Damages in the amount of $          .

       _____
                                                              **FOREPERSON**

F.     We, the jury, find that the Plaintiff, **CITY OF OPELIKA,** has failed to meet their burden of proof
       and find Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** Not Liable.

       _____
                                                              **FOREPERSON**

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                          *
                                             *
              Plaintiff,                      *
                                             *
vs.                                          *        CIVIL ACTION NO. CV 02-085
                                             *
HANSON AGGREGATES SOUTHEAST,                 *
INC., and OLDCASTLE, et al.,                 *
                                             *
              Defendants.                     *

## VERDICT

X.    **PLAINTIFF - CITY OF OPELIKA UTILITIES BOARD**

A.    We, the jury, find that the Plaintiff, **CITY OF OPELIKA UTILITIES BOARD**, has met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.**, and award Compensatory Damages in the amount of $ 0 .

                                             _____
                                             FOREPERSON

B.    We, the jury, find that the Plaintiff, **CITY OF OPELIKA UTILITIES BOARD**, has met their burden of clear and convincing evidence as it pertains to Defendant, **HANSON AGGREGATES SOUTHEAST, INC.** and award Punitive Damages in the amount of $_____.

                                             _____
                                             FOREPERSON

C.    We, the jury, find that the Plaintiff, **CITY OF OPELIKA UTILITIES BOARD,** has failed to meet their burden of proof and find Defendant, **HANSON AGGREGATES SOUTHEAST, INC.,** Not Liable.

                                             _____
                                             FOREPERSON

D.    We, the jury, find that the Plaintiff, **CITY OF OPELIKA UTILITIES BOARD,** has met their burden of proof by preponderance of the evidence, as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** and award Compensatory Damages in the amount of $ 0 .

                                             _____
                                             FOREPERSON

E.    We, the jury, find that the Plaintiff, **CITY OF OPELIKA UTILITIES BOARD,** has met their burden of proof by clear and convincing evidence as it pertains to Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** and award Punitive Damages in the amount of $_____.

                                             _____
                                             FOREPERSON

F.    We, the jury, find that the Plaintiff, **CITY OF OPELIKA UTILITIES BOARD,** has failed to meet their burden of proof and find Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** Not Liable.

                                             _____
                                             FOREPERSON

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

MIKE DAVIS, et al.,                    *
                                       *
          Plaintiffs,                  *
                                       *
vs.                                    *          CIVIL ACTION NO. CV02-085
                                       *
HANSON AGGREGATES SOUTHEAST,           *
INC., and OLDCASTLE, et al.,           *
                                       *
          Defendants.                  *

## ADDITIONAL VERDICT FORM

We, the jury, in this matter, find:

*Please complete the following:*

**I.      NUISANCE**

Do you find that Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.'S,** operation of the quarry constitutes a nuisance?

_____ Yes

___✓___ No

**II.     TRESPASS**

Do you find that, during Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.'S,** operation of the quarry, Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** trespassed on the Parker's property?

___✓___ Yes

_____ No

**III.    NEGLIGENCE**

Do you find that Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.,** negligently operated the quarry as to any Plaintiff?

___✓___ Yes

_____ No

FOREPERSON

Dated: 09/03/04

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEN and NAOMI SCHWIEKER, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CASE NO.: 3:06-CV-838-MEF** |
| | ) | |
| OLDCASTLE MATERIALS | ) | |
| SOUTHEAST, INC. | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now Defendant Oldcastle Materials Southeast, Inc. (hereinafter referred to as "Oldcastle"), by and through the undersigned counsel, and respectfully submits this Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, and says and states as follows:

**BRIEF STATEMENT OF FACTS**

Plaintiffs, along with numerous other individuals and governmental entities, sued Oldcastle in August of 2003 in the Circuit Court of Lee County, Alabama, adding Oldcastle as a defendant in their already existing lawsuit against the previous owner of the quarry in question.  *See* Third Amended Complaint, attached hereto as Exhibit 1.[1]  That lawsuit sought damages and injunctive relief against Oldcastle for its operation of the quarry.  Specifically, the Schwiekers brought claims for negligence and wantonness, public nuisance, private nuisance, statutory diversion of water, and injunctive relief.  *See* Fourth Amended Complaint.

In August of 2004, the Schwiekers' claims, along with the claims of several other individuals,

---

[1]  The Schwiekers joined the lawsuit on August 25, 2003.  *See* Fourth Amended Complaint, attached hereto as Exhibit 2.

the City of Opelika, and the Utilities Board of Opelika, proceeded to trial.  On September 4, 2004, the jury returned ten general verdicts and answered three special interrogatories.  The jury awarded the Schwiekers $75,000.00 to be paid by Oldcastle.  *See* Verdicts, attached hereto as Exhibit 3.  However, the jury found in favor of Oldcastle on six of the other individuals' claims, and the jury clearly and pointedly found that Oldcastle's operation of the quarry was not a nuisance.  *See id.*  Specifically, the jury answered "No" to the following question contained in the Additional Verdict Form:

> Do you find that Defendant, **OLDCASTLE MATERIALS SOUTHEAST, INC.'S**, operation of the quarry constitutes a nuisance?

The defense verdicts rendered included defense verdicts on plaintiffs' claims, similar to the Schwiekers, who had sinkholes on their property that they alleged to have been caused by Oldcastle.  *See* Verdict in favor of Oldcastle on the claims of Donnie Smith.  On September 8, 2004, the Circuit Court of Lee County, Alabama entered judgment based on the verdicts.  Oldcastle then satisfied the Schwiekers' judgment.

In September of 2006, the Schwiekers filed this lawsuit against Oldcastle making claims for private nuisance,[2] negligence and wantonness, injunctive relief, and statutory damages for diversion of water.  *See* Complaint.  Oldcastle removed the lawsuit to federal court.  Plaintiffs then filed their Motion for Partial Summary Judgment on September 6, 2007.

---

[2]  In their Motion for Summary Judgment, Plaintiffs state that they are alleging that Oldcastle's "quarry operation is a public and private nuisance that should be enjoined from further operation."  Motion for Summary Judgment at ¶ 12.  However, Plaintiffs only sued Oldcastle for private nuisance, not public nuisance.  *See* Complaint at Count 1.

**ARGUMENT**

**Neither the Doctrine of Res Judicata or Collateral Estoppel Entitles the Plaintiffs to Summary Judgment on the Plaintiffs' Claims of Negligence.**

The Plaintiffs incorrectly assert that the verdicts returned in the 2004 trial between the Schwiekers and Oldcastle act as res judicata on the issue of liability for negligence against Oldcastle, leaving for trial only the question of the Schwiekers' damages. Res judicata does not act as bar to re-litigating mere portions of claims, which is what the Plaintiffs seek from this Court in their Motion for Partial Summary Judgment. "The doctrine of 'res judicata' is intended to provide consistency and continuity in the law." *Owen v. Miller*, 414 So. 2d 889, 890 (Ala. 1981) (quoting *Reed v. Allen*, 286 U.S. 191, 198-99 (1932)). Res judicata includes both claim preclusion, which is often referred to simply as res judicata, and issue preclusion, which is often referred to as collateral estoppel. *See Owen*, 414 So. 2d at 890. Plaintiffs argue that both issue preclusion and claim preclusion allow for them to only have to prove their damages at this trial. In fact, neither theory requires that summary judgment be entered as to a portion, the so-called "liability" portion, of the Plaintiffs' claim for negligence.

The mere filing of this lawsuit clearly indicates that the Plaintiffs are alleging new causes of action against Oldcastle, even if the names of the causes of action are the same. The Plaintiffs could not file a new lawsuit alleging negligence, and any other claims, on the part of Oldcastle unless new facts and new evidence came into existence after the 2004 verdict. If no new facts and evidence exist demonstrating all of the elements of negligence, rather than just damages, Oldcastle is entitled to the preclusive bar of the doctrine of res judicata on all claims. If allowed to file and maintain a lawsuit against Oldcastle based on the same duty, breach of duty, proximate cause, which is

3

essentially what Plaintiffs are asking the Court to do in their motion for summary judgment (i.e.

Plaintiffs ask that this Court allow them to only prove one element – damages – of their claim),

Plaintiffs would be receiving a recovery for the same conduct on which they have already received

a recovery.  *See Kerns v. Sealy*, 496 F. Supp. 2d 1306, 1314 (S.D. Ala. 2007) (explaining that "[t]o

prevail on a claim of negligence under Alabama law, a plaintiff must prove: '(1) a duty to a

foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury'")

(quoting *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994)).  Plaintiffs may not receive new or

additional damages based on the same conduct for which they have already recovered monetary

damages.

Res judicata bars a plaintiff from "relitigating any matter that could have been litigated in the

prior action, regardless of whether the matter was actually presented."  *Owen*, 414 So. 2d at 890;

*See Campbell v. Campbell*, 561 So. 2d 1060, 1061 (Ala. 1990) (explaining that the elements of res

judicata are that: (1) the prior judgment must have been rendered by a court of competent

jurisdiction; (2) the judgment must have been rendered on the merits; (3) the cause of action must

be identical; and (4) the parties or those in privity with them must be substantially identical).  Quite

simply, despite Plaintiffs' arguments to the contrary, the causes of action in this case are not identical

to those in the earlier litigation.  Although the Plaintiffs filed a negligence claim against Oldcastle

in 2003, and have filed a negligence claim in the instant matter, the descriptive name of the claim

does not make the causes of action identical.  The evidence underlying the claim must be the same

for the causes of action to be identical.  *See Hughes v. Martin,* 533 So. 2d 188, 191 (Ala. 1988) ("It

is considered the same cause of action when the same evidence is applicable in both actions.");  *Geer*

*Bros., Inc. v. Crump*, 349 So. 2d 577, 580-82 (Ala. 1977) (explaining that a cause of action was the

same as one already tried because the same evidence substantially supported both actions). As stated earlier, if Plaintiffs are allowed to recover damages based solely on the same evidence as presented to a jury in 2004, those damages would amount to a double recovery. The Plaintiffs have already been compensated for their alleged loss in 2004. The jury awarded them damages based on its finding of negligence. In the instant matter, Plaintiffs must prove all of the elements of their claim based on new evidence, rather than old evidence.

Moreover, res judicata acts to operate as a bar to re-litigation of an entire claim, not merely elements of a claim. Plaintiffs seek a summary judgment order from this Court, which would allow them to only prove the damages portion of their claim. However, damages are an element of a negligence claim. *See Edmonson v. Cooper Cameron Corp.*, 374 F. Supp. 2d 1103, 1106 (M.D. Ala. 2005). Without damages, a negligence claim must fail. Res judicata should not be used as a means to divide up a claim. The doctrine of res ipsa loquitur is the proper means by doing what the Plaintiffs seek to do, and that doctrine has not been raised and is not applicable in this lawsuit[3].

Likewise, the doctrine of collateral estoppel does not operate to allow Plaintiffs to only prove

---

[3] The doctrine of res ipsa loquitur is used to create a rebuttable inference of negligence. *See Khirieh v. State Farm Mut. Auto. Ins. Co.*, 594 So. 2d 1220, 1223 (Ala.1992). The elements of res ipsa loquitur are generally stated as:

(1) [T]he defendant must have had full management and control of the instrumentality which caused the injury; (2) the circumstances must be such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the management had not been negligent; (3) the plaintiff's injury must have resulted from the accident.

*Id.* (citations omitted). Given that the jury returned six defense verdicts at the 2004 trial, the damages claimed by Plaintiffs could have reasonably occurred without negligence on the part of Oldcastle.

that they have suffered some damages. The elements of collateral estoppel are that: (1) an issue exists that is identical to one involved in a previous suit; (2) the issue was actually presented in the prior action; (3) the resolution of the issue was necessary to the prior judgment; and (4) the same parties, or those in privity with them, are involved in the two actions. *Smith v. Union Bank & Trust Co.*, 653 So. 2d 933, 934 (Ala. 1995). The issue in the instant matter is not identical to that in the 2004 trial. The Plaintiffs have pled and testified to facts and circumstances that have occurred well after the conclusion of the 2004 trial. Thus, this is an entirely different lawsuit and the Plaintiffs must prove all of the elements of their negligence claim using evidence of facts that occurred after the September 2004 recovery.

Finally, summary judgment is inappropriate in this matter for the simple matter that Plaintiffs must prove causation of their damages based on facts occurring since the 2004 trial, and "'summary judgment is rarely appropriate in negligence actions, which almost always present factual issues of causation and of the standard of care that should have been exercised.'" *Kerns*, 496 F. Supp. 2d at 1314 (quoting *Ex parte Mobile Power and Light Co.*, 810 So. 2d 756, 759 (Ala. 2001)).[4] The facts of Plaintiffs' current claim against Oldcastle must support a finding by a jury of duty, breach of that duty, proximate cause, and damages. The past finding of negligence by a jury in 2004 does not

---

[4] Additionally, Plaintiffs must prove all of the elements of their other claims including wantonness, nuisance, and diversion of water. With regard to their wantonness claim specifically, Plaintiffs must prove "the conscious doing of some act or the omission of some duty, while *knowing* of the existing conditions and *being conscious* that, from doing or omitting to do an act, injury will likely or probably result." *Hooper v. Columbus Regional Healthcare Sys., Inc.*, 956 So. 2d 1135, 1140 (Ala. 2006) (citation omitted). While the special interrogatories answered by the jury in the 2004 trial may indicate that the Schwiekers' verdict was based on negligence, it does not indicate that the verdict was based on wantonness. Under Alabama law, "[n]egligence and wantonness are two distinct tort concepts of actionable culpability; consequently, they are defined by differing elements." *S.B. v. Saint James School*, 959 So. 2d 72, 89 n.7 (Ala. 2006).

suffice to satisfy the Plaintiffs' burden of proving that the breach of duty found in 2004 in any way caused the damages that they now allege because the facts necessary to support the Plaintiffs' current cause of action were not presented to the 2004 jury. Therefore, the causes of action are not the same, even though they are both negligence causes of action. Accordingly, res judicata does not apply.

## CONCLUSION

Based on the foregoing arguments and authorities, Oldcastle requests this Honorable Court to deny Plaintiffs' Motion for Summary Judgment.

Respectfully submitted this 31st day of October, 2007.

/s/ Matthew W. White
PHILLIP E. ADAMS, JR. (ADA025)
PATRICK C. (RICK) DAVIDSON (DAV025)
MATTHEW W. WHITE (WHI086)
Attorney for Defendant,
Oldcastle Materials Southeast, Inc.

**OF COUNSEL**
Adams, Umbach, Davidson,
& White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069
(334) 745-6466

7

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the above and foregoing upon the following, this the 31st day of October, 2007:


James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049


　/s/Matthew W. White　　　　　　　
Of Counsel