## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| KEN and NAOMI SCHWIEKER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| OLDCASTLE MATERIALS SOUTHEAST, ) | Case No.: 3:06-CV-838 |
| INC., ) | |
| ) | |
| Defendant. ) | |

### FIRST AMENDED AND RESTATED COMPLAINT

1.　　Plaintiffs Ken and Naomi Schwieker are adult residents of Lee County, Alabama, and own property situated on the north side of Spring Villa Road.

2.　　Defendant Oldcastle Materials Southeast, Inc. is the operator of the SRM limestone quarry in Lee County between State Highway 169 and Lee Road 166.

3.　　Defendant Oldcastle leases the property from the Young and Gilmer families.

### STATEMENT OF FACTS

4.　　The Plaintiffs' property is on Spring Villa Road north-northeast of the quarry.

5.　　Defendant Oldcastle, as part of its operation of the limestone quarry, has for several years been pumping increasingly large amounts of water from the groundwater. This pumping has caused the depression of the groundwater table throughout the area and, more particularly, including the property belonging to the Plaintiffs.

6.　　As a result of the groundwater withdrawals, the Plaintiffs' land has suffered the formation of numerous sinkholes.

7.　　During the August, 2004-September, 2004 trial of the case *Davis v. Hanson, et al.,* Defendant Oldcastle was adjudicated by the jury to be liable for causing damages to the Schwiekers as a result of the formation of sinkholes on their property.  At that time, the Schwiekers had only about a dozen relatively small sinkholes on their land.  The jury returned a verdict of $75,000.00 against Defendant Oldcastle and specifically found that

Oldcastle was liable for causing the sinkholes. Oldcastle did not appeal and paid the judgment.

8.    Since the trial in 2004, the Schwiekers' farm land has suffered the collapse of numerous very large sinkholes, many of which have formed by the merging of smaller sinkholes into larger ones. There are now somewhere in the vicinity of 50 to 75 sinkholes. Moreover, whole areas of their property, particularly along the Little Uchee Creek and the tributaries to the Little Uchee Creek, are collapsing into giant sinkholes, causing destruction of the property belonging to the Plaintiffs – including large, old healthy trees that have fallen and been destroyed.

9.    Defendant Oldcastle has specific knowledge that these damages are continuing, and has done nothing to stop the damages despite the jury's verdict adjudicating it to be liable for causing sinkholes to the Schwiekers' land.

10.    Defendant Oldcastle's conduct in continuing its operation, and in fact in continuing the operation with ever greater volumes of water pumped out of the groundwater system, has caused extreme damage to the Schwiekers' property, as well as substantial damage to the surrounding landowners' property. In point of fact, Spring Villa Road was forced to close because of the collapse of the roadway into numerous sinkholes.

11.    Defendant Oldcastle has with malice and with conscious and reckless disregard of the Schwiekers' rights, continued to operate its quarry with no regard for the Schwiekers' land or the damages being caused to the Schwiekers or other persons' lands.

12.    The Schwiekers have suffered mental and emotional distress, damages to their land, and have been forced to incur other costs associated with the sinkhole formation caused by Defendant Oldcastle.

## COUNT ONE
### (Private Nuisance)

13.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 12 as if set out here in full.

2

14.     Defendant Oldcastle's quarrying operations have caused and are causing a private nuisance to exist, as described above. The quarrying is harmful to the Schwiekers and any reasonable person would consider it to adversely affect people of ordinary sensibilities.

15.     The Plaintiffs have suffered and continue to suffer hurt, inconvenience, and other damages that are different in kind and degree than the damages suffered by the general population of Lee County. Moreover, the Plaintiffs have suffered damages due to Defendants' conduct that would affect any ordinary, reasonable person, and such damages are not such as would be fanciful or as would affect only a person of fastidious taste. Plaintiffs have the right to file this claim under Alabama Code Sections 6-5-120 et. seq.

16.     Defendant Oldcastle's actions have been repetitive, willful, wanton, reckless, and aggravated.

17.     Defendant Oldcastle has continued to process and manufacture rock and rock by-products. Moreover, Defendant Oldcastle continued its operations with full knowledge of the damages being forced upon the individual Plaintiffs, as well as the public at large, and Defendant has not abated its nuisance despite demand to do so.

18.     Defendant's actions constitute a private nuisance, and its actions can be abated, so that the nuisance created and maintained by Defendant Oldcastle is abatable.

19.     If Oldcastle is allowed to continue pumping water from the quarry pit, further dewatering of the area will occur, the cone of depression will enlarge, and the Schwiekers will suffer additional damages.

**WHEREFORE,** Plaintiffs claim from Defendant Oldcastle compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable, and in addition, Plaintiffs request this Honorable Court to enter injunctive relief preventing all of the Defendants from continuing to cause the damages stated above.

## COUNT TWO
### (Negligence and Wantonness)

20.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 19 as if set out here in full.

21.     Defendant Oldcastle has a duty to operate the quarry in a manner that will not cause unreasonable injury to the Schwieker' property.

22.     Defendant Oldcastle breached its duty by damaging the Plaintiffs as stated above.

23.     As described above, Plaintiffs suffered damages due to the negligent, reckless, and wanton and willful manner in which Defendant Oldcastle operates the quarry.

24.     Defendant Oldcastle has actual knowledge that the manner in which it is operating its quarry was causing the very damages stated above in this Complaint. Despite such actual knowledge, the Defendant continues to cause the damages stated above.

25.     The manner in which Defendant Oldcastle ignored the Plaintiffs' complaints constitutes rude, wanton, outrageous, and/or reckless conduct for which Oldcastle should be punished by the imposition of punitive damages.

**WHEREFORE,** Plaintiffs claim from Defendant Oldcastle compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable, and in addition, request this Honorable Court to enter injunctive relief preventing Defendant Oldcastle from continuing to cause the damages stated above.

## COUNT THREE
### (Injunctive Relief)

26.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 25 as if set out here in full.

27.     The continued operation of the quarry has caused and will continue to cause

the damages stated above.

28.     The actions of Defendant Oldcastle in pumping water from the quarry pit have caused such a substantial de-watering of the area that the spring at Spring Villa has been caused to go dry as a direct result of the pumping of water from the ground from the quarry.

29.     The quarry operations are immediately adjacent to the Dixie Pipeline, a very large transcontinental propane gas pipeline.  The Dixie Pipeline conveys thousands of gallons of propane gas, daily, under 1440 psi pressure, through the pipeline immediately adjacent to and within 200 feet of the pit created by Defendant Oldcastle's operations.

30.     There is a substantial likelihood that the operations of Defendant Oldcastle in pumping out water from the ground in and around the quarry, will cause sinkholes in, near, and even far away from the quarry, and this result is absolutely certain to occur in many places – although exactly which places and which particular spots of ground will be caused to sink cannot be predicted with certainty.

31.     In fact, many very large sinkholes, some 40 or 50 feet in diameter and 50 to 150 feet in length, and 10 to 30 feet deep, have formed in the years since the August, 2004 trial.  These many sinkholes have formed due to Oldcastle's continued  pumping of water from the quarry and the concomitant dewatering of the surrounding area.  In point of fact, and as predicted by Plaintiffs in the first trial, a large sinkhole opened directly under the Dixie LP Gas Pipeline.  The collapse did not cause injury, though the risk of future collapse, and possible injury to others, remains significant.

32.     The dewatering caused Spring Villa Road to collapse and the road to be closed.

33.     The quarry cannot be operated in such a manner as to prevent the serious and continued damages to the Plaintiffs, unless the Court orders it to stop pumping water from the groundwater table.  The quarry can be operated without pumping water out of the

ground.

**WHEREFORE**, the Plaintiffs demand judgment enjoining Defendant Oldcastle from operating this or any quarry on the Youngs' and Gilmer's lands, and for such other legal or equitable relief to which they are entitled.

## COUNT FOUR
### (Statutory Damages for Diversion of Water)

34.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 33 as if set out here in full.

35.     Pursuant to Alabama Code section 33-7-4, Defendant Oldcastle is liable to the Plaintiffs for diversion of water from Little Uchee Creek and from the tributaries feeding Little Uchee Creek.

**WHEREFORE**, the Schwiekers, demand that the Court enjoin Defendant Oldcastle from its pumping operations and to stop diverting and dewatering the Little Uchee Creek and the aquifer feeding the Spring Villa spring, and further demand such compensatory and punitive damages to which they are entitled, together with costs, attorneys fees, interest and such other further relief as the jury finds reasonable.

## COUNT FIVE
### (Public Nuisance)

36.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 35 as if set out here in full.

37.     The Defendant's operations has caused and is causing a private and/or public nuisance to exist. They operated and/or currently operate a rock quarry that creates unreasonably loud noises, vibrations, dust, and pollution, and causes a tremendous increase in traffic from dangerously loaded heavy trucks.  These and other damages alleged in this Complaint harm the public generally.

38.     The Plaintiffs have suffered and continue to suffer hurt, inconvenience, and

other damages that are different than the damages suffered by the general population of Lee County. Moreover, the Plaintiffs have suffered damages due to Defendant's conduct that would affect any ordinary, reasonable person, and such damages are not such as would be fanciful or as would affect only a person of fastidious taste. Plaintiffs have the right to file this claim under Alabama Code Sections 6-5-120, 6-5-123, 6-5-124, 6-5-125 and 6-5-127.

39.     The damages caused to the Plaintiffs include, but are not limited to:

   a.     lack of quiet enjoyment of their property, which includes, at times, a complete inability to use or enjoy their property;

   b.     sinkholes caused by quarry dewatering;

   c.     damage to Spring Villa from sinkholes, which lead to the road being closed;

   d.     permanent devaluation of the Plaintiffs' land and home by the above mentioned nuisance;

   e.     diversion of the Little Uchee Creek into the ground via sinkholes;

   f.     contamination of the local groundwater by sinkholes forming in Little Uchee Creek and in the Sanders septic system;

   g.     The Alabama Department of Public Health regulations prohibit septic systems within 300 feet of sinkholes, which has and will cause great harm and inconvenience and economic losses to multiple private parties and citizens throughout the Spring Villa community;

   h.     A sinkhole has opened under and around the Dixie LP pipeline;

   i.     Sinkholes caused by the dewatering have opened under large power poles carrying 110,000 volt lines owned by Alabama Electric Co-op. The holes caused these huge poles to lean and resulted in them being relocated to prevent injuries or property damage.

40.     The actions by this Defendant have been repetitive, willful, wanton and aggravated.  The Defendant has continued to process and manufacture rock and rock by-products.  Moreover, the Defendant continued its operations with full knowledge of the damages being forced upon the individual Plaintiffs, as well as the public at large, and Defendant has not abated its nuisance despite demand to do so.  Oldcastle continues to pump approximately 2.19 billion gallons of groundwater per year from the quarry.

41.     Defendant's actions constitute a private and public nuisance, and its actions are or can be abated, so that the nuisance created and maintained by the Defendant is abatable.

**WHEREFORE**, Plaintiffs claim compensatory and punitive damages, costs of this action, attorneys' fees, interest and such other further relief as the jury finds reasonable, and in addition, request this Honorable Court to enter injunctive relief preventing the Defendant from continuing to cause the damages stated above.

Respectfully submitted this the 16th day of November, 2007.


**s/ C. E. Vercelli, Jr.**
**CHARLES E. VERCELLI, JR.** (VER003)
One of the Attorneys for Plaintiffs


**OF COUNSEL:**

LAW OFFICES OF JAMES B. SPRAYBERRY
P.O. Drawer 2429
Auburn, AL 36831-2429
TEL:  (334) 821-7100
FAX:  (334) 821-7101
jsprayberry-spraylaw@charter.net

Charles E. Vercelli, Jr.
VERCELLI & ASSOCIATES, P.C.
1019 S. Perry Street
Montgomery, AL 36104-5049
TEL:   (334) 834-8805
FAX:  (334) 834-8807
cvercelli@vercelli-law.com

8

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2007, I electronically filed the foregoing with the Clerk of the United States District Court for the Middle District of Alabama, using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Phillip E. Adams, Jr.
Rick Davidson
Matthew W. White
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

I also hereby certify that a copy of the foregoing will be served upon:

W. F. Horsley
SAMSON & DENSON, LLP
P. O. Box 2345
Opelika, AL 36803-2345

counsel for the landowners, by placing a copy of the same in the United States Mail, postage prepaid and properly addressed on the 16th day of November, 2007.

/s/ C. E. Vercelli, Jr.
Of Counsel

500-06\1st Amend-Restate Comp.2.wpd

9