IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **KEN and NAOMI SCHWIEKER,** * | |
| * | |
| **Plaintiff,** * | |
| * | |
| vs. * | Case No. 3:06-CV-838-MEF |
| * | |
| **OLD CASTLE MATERIALS** * | |
| **SOUTHEAST, INC.,** * | |
| * | |
| **Defendant.** * | |

**PLAINTIFFS' MOTION FOR JURY VIEW**

Plaintiffs move this Honorable Court to allow the jury to view Spring Villa Road, the Schwieker property, the Smith-Smith-Dyson properties, the property of Earl Parker on State Road 169, the quarry discharge on Lee Road 166, and the quarry pit.  As grounds for this Motion, Plaintiffs say:

1.  Plaintiffs aver that it is extremely important that the jury see the areas in controversy in this litigation, for themselves, in order to properly consider this matter.  The jury will not be able adequately to understand and appreciate the volume of water being pumped by the quarry, or the serious nature of the problems caused by sinkhole formation and road collapse due to the pumping.  They also need to view the quarry to understand how it pumps water from the ground, as well as the immensity of the quarry pit. Finally, they will not be able adequately to appreciate the significant inconvenience to the Plaintiffs and to the public caused by the closure of Spring Villa Road unless they see it and travel the route around the closed area.

2.  Plaintiffs move this Honorable Court, therefore, to allow the jury to take a view of the following areas: the Schwiekers' property; the Brown Tool & Mold property;

the Sanders' property; the Little Uchee Creek and Alabama Electric Co-op's power line easement thereon; the quarry discharge; the Dixie Pipeline easement where it crosses 166; the quarry pit itself, as well as the sump ponds in the bottom of the pit; the Parker-Lassiter-Furmanek properties on State Highway 169; Spring Villa Road from Highway 169 to the bridge over the Little Uchee; then traveling back down Spring Villa Road, then north and east to Lee Road 151 (which Lee County was forced to pave when Spring Villa Road was closed); then to Spring Villa Road east of the closed portion.

3.  Plaintiffs request this jury view to be taken either after the close of the Plaintiffs' case in chief, or after the close of the case in its entirety, and in any event before receiving jury instructions or closing arguments of counsel.

4.  Plaintiffs propose the following conditions and arrangements for this jury view–and Plaintiffs will agree to any reasonable modifications of the following):

   (1)  The U.S. Marshal's Office shall be in charge of the jury view and shall provide sufficient numbers of vans (either one or two) to transport the jurors in comfort and safety from the courthouse to the areas for this jury view. Only the Judge shall be in the vans with the jury.

   (2)  The parties and their attorneys will not be present in the vehicles to be taken by the jurors. The parties' lawyers, and one representative of each party only, shall be allowed to travel in separate vehicles, behind the Marshal's vans, and must at all times remain not closer than 100 feet to the jurors.

   (3)  The U.S. Marshals will travel first via Interstate 85 to Exit 59, turning southbound on Highway 51. The Marshal's vehicles will then turn left on State Highway 169, and will travel past the tire plant to the junction of Lee Road 166 and State Highway 169. At that point, the viewing parties will turn right on Lee Road 166 and will stop at the quarry discharge. The quarry discharge shall be labeled with a sign (the size candidates for public office commonly use on wooden or metal stakes), stating, in black letters, "Quarry Discharge ➜". The jury will be allowed to get out of the vehicles and view the quarry discharge. Plaintiffs request the Court to order Defendant to pump water from its quarry through at least one of the two twelve-inch discharge pipes and to require the Defendant to pump from at least

one of the two discharge pipes for at least the 24 hours preceding the jury view.

(4) The jury will then travel down Lee Road 166 to the Dixie LP Gas Pipeline crossing of 166. The right-of-way will be marked, with a political party-type sized sign, in black letters only, "Dixie LP Gas Pipeline Crossing". The jury will be allowed to exit the vehicles if they so desire in order to walk a short way down the pipeline easement to the east, where they can look over the fence to see the location of the sinkhole on the Dixie Pipeline that formed on October 4, 2005. After that view, which shall last no more than a few minutes, the jurors shall re-enter the U.S. Marshal's vans.

(5) The jurors will then travel back down Lee Road 166 to State Highway 169, and turn right into the quarry property at the quarry entrance sign. The jurors shall then proceed into the quarry property, where they shall drive down to the bottom of the quarry in the U.S. Marshal's vehicles. They shall take the most direct route thereto through the quarry premises, and all work shall stop at the quarry while the tour of the quarry is being conducted by the jurors. The jurors shall not be permitted to exit their vehicles except as stated herein, and the vehicles shall not be driven to any unsafe location. If Defendant so requests, Plaintiffs agree that the U.S. Marshal's vehicles shall follow a designated quarry vehicle which shall take the jurors to the bottom of the quarry pit. The jurors' vehicles will then park as close as possible to the sump ponds, and so that they can thereafter exit the vehicle only at the bottom of the quarry, away from the ledges, so that there is no possibility of rock or other debris harming anyone. The jurors shall be allowed to get out of the vehicles, near the lowest sump pond, but shall not be allowed to approach that sump or to wander more than 25 feet from the vehicles. The jurors shall be allowed to stay in the bottom of the quarry pit for only a few minutes, after which they shall re-embark in the U.S. Marshal's vehicles.

(6) The jurors will then travel back down Lee Road 166 to State Highway 169, and turn right. They will travel a short distance down State Highway 169 to the Earl Parker/Furmanek driveway, which turns to the right off of State Highway 169. As before, the driveway will be marked only with a candidate-sized sign stating, in black letters, "Earl Parker-Lassiter-Furmanek Properties ➜".

(7) The jurors will then drive down the dirt/gravel driveway stopping at a sign prior to reaching the Furmanek home. As before, the properties will be marked only with candidate-sized signs that will state, in black letters only, "Parker Property", "Lassiter Property" and "Furmanek Property". The jurors will be allowed to exit the vans and walk around the Parker, Furmanek, and Lassiter properties to the extent

    that they desire to do so.  In the yard will be markers -- small orange flags on small wire sticks, indicating piping hole features about which the witnesses will have testified prior to the time of the view.  There will be, in all probability, greater than 150 and perhaps 200 or more such flags, some very close to the Furmanek house.  Upon completion of this view, which shall last no more than 10 or 15 minutes, the jurors shall re-enter the vans.

(8) The jurors will then travel back down the Parker-Furmanek driveway, re-enter Highway 169 turning left, in the direction from which they came, and shall thereafter turn right on Spring Villa Road (Lee Road 148).

(9) The jurors shall then be taken by the vans down Spring Villa Road.  While traveling down Spring Villa Road, the road shall be marked as it currently is and Plaintiff will erect only the following signs (political candidate-sized signs), labeled only in black letters:   (1) at each driveway about which the jurors will have heard testimony, to include "Brown Tool and Mold →", "Sanders →", "Tankersley →", "← Schwieker ", "Shirley Dyson →", "Ronnie Smith →", and "Donnie Smith →".  The area of the Smith-Smith-Dyson repair shall be marked "Smith-Smith-Dyson →", which sign shall be placed approximately halfway through the repair area, but pointing at one of the sinkhole repairs that has failed and about which the jurors will have already heard testimony.  In addition, the roadway itself shall be marked, as it already is and as testimony will show, with orange paint on the pavement indicating station numbers. These station numbers shall be, for example, "STA 41+00", "STA 42+00", and so on, from Stations 30+00 to 66+00.  These station numbers shall be as already marked on the right-of-way, on the middle of the road, and shall be re-painted in orange so that they will be easily readable by the jurors.

(10) The vans will stop at the Sanders property and the jurors will be permitted to follow the signs to the sinkhole in the septic system.  After a few minutes, the jurors will return to the vans to continue the tour/view.

(11) The jurors will be allowed to exit the vehicles when they stop in front of the existing sign closing the road over the bridge.  The jurors will then be allowed to walk on Spring Villa Road in such directions as they choose. There will be surveyor's tape around all known sinkholes on Spring Villa Road so that the jurors would have warnings of sinkholes so that they would not inadvertently stumble into any sinkholes on Spring Villa Road, and to show them where some of the sinkholes are about which they heard testimony.

(12)  All parties and attorneys shall be no closer than 100 feet to the closest juror at any time. If a juror starts walking toward any of those vehicles in which the parties or their attorneys are located, the parties or attorneys shall re-enter their vehicles and "back-up" so that the jurors will have unfettered access to any area they wish to observe. The jurors shall be allowed to walk around the barricade closing the bridge over the Little Uchee Creek, and parts of the barricade shall be removed so that the jurors can remain on the pavement as they view the road up to and including the Little Uchee Creek bridge.

(13)  The jurors shall re-enter the vans and shall travel down the Schwieker driveway and field on a path to the right side of the front of the home, around and through a fence on the right side, and down into the Southeast pasture, then up the east side of the property to view the sinkholes by the Little Uchee Creek and then to the north side of the property to the Schwieker tributary to the Little Uchee Creek, then to the west side of the property to view the sinkholes in two locations there. Mr. Schwieker shall drive a vehicle in front of the vans, which the vans will follow. Therefore, the route the jurors will take is in a counter-clockwise direction around the perimeter of the Schwieker property, until they re-enter the Schwieker driveway coming down the west side of the Schwieker property.

(14)  The vans will stop for only 2-5 minutes at each of four areas of sinkholes so the jurors can get out and more closely observe the sinkholes: First, they will stop in the Southeast pasture, where the sinkholes will be clearly marked with surveyors tape. Second, at the Little Uchee where the sinkholes will be "roped off" by surveyors tape". Third, further up the Little Uchee at the area of large sinkholes, where the sinkholes will be "roped off" by surveyors tape. Fourth, at the area of sinkholes on the unnamed tributary (north side of the property), where the sinkholes will be "roped off" by surveyors tape.

(15)  After concluding the jury view of the Schwieker property, the jury shall travel down Spring Villa Road, back to Highway 169, at which time the parties shall turn right on State Highway 169, and shall continue down Highway 169 turning right at the "Y" near the tire plant, and shall take the next right turn on Lee Road 391. The parties shall travel down Lee Road 391 to Lee Road 151, where they shall turn right on the newly paved road. The driver shall state "This is Lee Road 151". They will then continue traveling down Lee Road 151 to Spring Villa Road (Lee Road 148) whereupon they will turn right and shall continue to the point that the road is closed. At that point, the jurors shall exit the vehicles again, and shall walk around the barricade (part of which shall be removed for easy access for the jurors), to the portion of the road failing on the east side of Little Uchee Creek bridge, and shall be permitted to walk down to the Little

        Uchee Creek bridge if they so desire. They shall spend no more than 5 minutes in this area.

    (16)    The jurors shall then re-embark in the vehicles and shall be driven back to the courthouse via Spring Villa Road to 151 (turning left), traveling Lee Road 151 to Lee Road 391, where they will turn left, and where they will travel down Lee Road 391 until it merges with Highway 151, where they will turn right, and re-enter Interstate 85 for the return trip to the courthouse.

5.    No party shall be allowed to take photographs or videotape of this jury view, and no parties' attorneys, witnesses, employees, agents, or others, shall be allowed to say anything to the jurors. Plaintiffs shall contact the homeowners on Spring Villa Road and shall ask them to remain indoors during the time of the jury's visit, and in this regard, the U.S. Marshals shall have sufficient numbers of persons available to ensure that no person approaches the jury or asks them questions or talks to them in any manner.

6.    The jury shall be allowed to take notes, but shall not be allowed to take photographs or retrieve other evidence while on the jury view.

7.    If on the day scheduled for the jury view, the weather is inclement, then the jury view shall be postponed until the weather clears, but in any event, the jury shall be allowed to view the property before closing arguments and jury instructions in this case.

8.    Plaintiffs have traveled the route requested and avers that the jury view should take approximately three hours, depending on how long the jurors spend at each location.

9.    During the 2004 trial of a related case in Lee County, the jury requested a jury view. The view was not allowed. After trial, some of the jurors expressed to Plaintiffs' lawyers that they really wanted to see the quarry and what was going on, for themselves.

10.    There appears to be little Federal case law on the subject of jury views. What we have found includes the cases of *Hecht v. Harrison*, 137 F.2d 687, 688 (D.C. Cir. 1043) (jury view of ramp where injury occurred allowed) ; *Olsen v. North Pacific Lumber Co.*, 106 F. 298, 300-02 (9th Cir. 1901) (jury view of operating sawmill allowed; not abuse of

discretion); *City of Chicago v. Baker*, 98 F. 830, 831 (7th Cir. 1900) (jury view streets without counsel allowed – within discretion of court).

11.     There is a good bit of authority from Alabama. The Alabama authorities are well summarized at McElroy's Alabama Evidence, § 208.01, a copy of which is attached hereto for the Court's convenience. As noted in McElroy's, and in the Federal cases we found, it is within the sound discretion of the trial Judge to allow the jury to inspect a relevant place or object outside the courtroom. The question appears to be whether the viewing will aid the jury in understanding the facts–or appreciating the problem in our case. The Alabama Supreme Court has consistently upheld the trial court's allowance of jury views in situations such as this. *Rutledge v. Brilliant Coal Co.*, 22 So. 2d 428 (Ala. 1945). See also *Morris v. Corona Coal Co.,* 109 So. 278 (Ala. 1926), *White v. Thorington*, 120 So. 914 (Ala. 1929) and *Watt v. Lee*,191 So. 628 (Ala. 1939).

12.     Attached hereto is a copy of Alabama Pattern Jury Instruction 1.17. Plaintiffs propose that the Court shall instruct the jury as indicated therein. In addition, Plaintiffs believe it appropriate for the Court to detail the essence of this tour to the jurors prior to beginning the jury view so that they will understand where they are going and what they are and are not allowed to do. Either the Court can read the conditions set forth above in their entirety, or the Court can, if it deems appropriate, abbreviate the conditions listed above so that the jury will understand the purpose of the visit and where they are going.

13.     In conclusion, Plaintiffs aver that a view is important for the jurors to understand the magnitude of the problem caused by the quarry and to ensure that the jurors understand the evidence that they have heard respecting this area. Mere photographs and videotape, which will be admitted into evidence, Plaintiffs contend, do not sufficiently describe for the jury the magnitude of the problem with sinkholes and road closure in the Spring Villa Road and quarry areas. A view is important for the jurors to understand this case.

**WHEREFORE,** for good cause shown, Plaintiffs move this Honorable Court to allow the jurors to view certain areas of the litigation as stated in this Motion.

Respectfully submitted this the 7th day of April, 2008.

s/ C E Vercelli, Jr.
**Charles E. Vercelli, Jr.**
One of the Attorneys for Plaintiffs

**OF COUNSEL:**

| | |
|---|---|
| LAW OFFICES OF JAMES B. SPRAYBERRY | Charles E. Vercelli, Jr. |
| P.O. Drawer 2429 | VERCELLI & ASSOCIATES, P.C. |
| Auburn, AL 36831-2429 | 1019 S. Perry Street |
| TEL: (334) 821-7100 | Montgomery, AL 36104-5049 |
| FAX: (334) 821-7101 | TEL: (334) 834-8805 |
| jsprayberry-spraylaw@charter.net | FAX: (334) 834-8807 |
| | cvercelli@vercelli-law.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of April, 2008, I electronically filed the foregoing with the Clerk of the United States District Court for the Middle District of Alabama, using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Phillip E. Adams, Jr.
Rick Davidson
Matthew W. White
ADAMS, UMBACH, DAVIDSON & WHITE, LLP
P. O. Box 2069
Opelika, AL 36803-2069

**s/C. E. Vercelli, Jr.**

500-06\Mot-Jury-View.3.wpd

R. Evid. 403. *See herein* § 21.01; Brown v. Billy Marlar Chevrolet, Inc., 381 So. 1980) (implying that such may be precluded if unduly inflammatory, offensive or tends rouse juror sympathy or prejudice).

Fed. R. Evid. 403 advisory committee's note; *herein* § 21.01.

Fed. R. Evid. 403 advisory committee's note; Brown v. State, 481 So. 2d 1191, 1195 App. 1985) (citing this treatise; no abuse of discretion in not allowing murder laiming self-defense, to exhibit scars to jury of old injuries sustained in a previous unknown third-party); Brown v. Billy Marlar Chevrolet, Inc., 381 So. 2d 191, 193 (citing this treatise; no abuse of discretion where plaintiff had already been allowed to to the jury how artificial leg functioned).

### § 208.01 View by the jury of places or objects outside the courtroom

It is within the sound discretion of the trial judge to allow the jury to inspect a relevant place or object outside the courtroom.[1] The trial judge likewise has the discretionary authority to disallow the jury to go outside the courtroom to inspect and view places or objects. There are several factors that may motivate the judge to refuse the request for a view. The judge may decide that the view will be of no aid to the jury and will constitute a waste of time.[2] It may be the judge's position that this loss of time could be avoided by the taking of a photograph of the place or thing which the petitioning party desires the jury to see.[3] A material change in conditions of the place or thing is also a proper factor to be considered by the judge in determining whether to allow an out-of-court view.[4] The judge may, on the other hand, simply decide that the view will complicate matters and cause more problems than it would solve. When this latter broad ground is the basis for denying the view, one must keep in mind that this is a discretionary matter and the trial judge will not be reversed unless there is an abuse of the discretion.[5]

It is improper for jurors to make an out-of-court view except under an order of the trial court.[6] Usually, the sheriff, his deputy or a court bailiff acts as a shower for the jury in the course of the view. A shower may not point to a tree and say, "This is the hickory tree at which Dan McGraw was standing when he got shot." However, the shower may ask the jury to observe landmarks and physical objects, *e.g.*, "Observe the location of this tree and the distance between it and the barn." Even this should not be done by the shower, however, unless both parties or their counsel are at the view. If counsel for any party plans to be absent from the view, the better practice would be for all counsel to state in open court what landmarks or other objects they wish the jury to observe. A view is limited to a mere inspection of the place or thing stipulated and no testimony may be taken at an out-of-court view.[7] It is improper for the parties, witnesses or anyone, other than

1030

---

the designated shower, to t view.[8] The observations of case.[9] Because the view tak accused and the trial judge prosecution.[10] In civil actio judge be present at the site

When the jury is allow arises is whether they must observe its operation. In br be permitted to see an exp courtroom. This has not be but the majority in this co circumstances.[12]

1. Macon County Comm'n v So. 2d 248, 252 (Ala. Crim. App.) defendant's request for demonstrat local police academy), *cert. denied* 291 So. 2d 301 (1974) (trial court's v. State, 52 Ala. App. 184, 290 murder defendant the right to have v. Millis, 286 Ala. 681, 246 So. 2 White Roofing Co. v. Wheeler, 39 orders a view by himself); Pacific suicide, view allowed of room from v. State, 255 Ala. 495, 52 So. 2d allowed); Rutledge v. Brilliant Co damaged by coal dust and debris p 219, 198 So. 350 (1940) (view of Lumber Co., 232 Ala. 116, 166 S when his auto collided with traile allow jury to view the trailer and t *Criminal Case as to Permitting or* A.L.R. 841 (1940).

2. *See* Ala. R. Evid. 403 relevancy is substantially outwei cumulativeness).

3. Kohn v. Johnson, 565 S defectively constructed addition to

4. Bates v. State, 24 Ala. /

5. Kohn v. Johnson, 565 S discretion in denying defendant co homeowner claimed was defectiv defects); Jones v. State, 52 Ala. /

6. Arrington v. State, 23 Al 130 So. 2d 194 (1961); W.M. Mc *Jury in Criminal Case as Ground J*

the designated shower, to talk to a jury or to each other at the place of the view.[8] The observations of the jury at the view constitute evidence in the case.[9] Because the view takes on this importance, it is believed that both the accused and the trial judge must be present at a view allowed in a criminal prosecution.[10] In civil actions, it is advisable, although not essential, that the judge be present at the site of the view.[11]

When the jury is allowed to view an object, the question which naturally arises is whether they must view it in an inactive state or whether they may observe its operation. In broader terms, the question is whether the jury may be permitted to see an experiment or demonstration at a place outside the courtroom. This has not been confronted by the appellate courts of this state but the majority in this country seem to favor allowing it under regulated circumstances.[12]

---

1. Macon County Comm'n v. Sanders, 555 So. 2d 1054 (Ala. 1990); Voudrie v. State, 387 So. 2d 248, 252 (Ala. Crim. App.) (citing this treatise in support of trial judge who did not allow defendant's request for demonstration of hair trigger on murder weapon performed before jury at local police academy), cert. denied, 387 So. 2d 256 (Ala. 1980); Moody v. Stanfield, 292 Ala. 185, 291 So. 2d 301 (1974) (trial court's discretion upheld for disallowing view of real property); Jones v. State, 52 Ala. App. 184, 290 So. 2d 251 (1974) (holding trial court correct in disallowing murder defendant the right to have jury view the jail cell to understand why he escaped); Barnett v. Millis, 286 Ala. 681, 246 So. 2d 78 (1971) (view of land in adverse possession suit allowed); White Roofing Co. v. Wheeler, 39 Ala. App. 662, 106 So. 2d 658 (1957) (judge in a nonjury case orders a view by himself); Pacific Mut. Life Ins. Co. v. Yeldell, 36 Ala. 805 (1953) (in issue of suicide, view allowed of room from which insured fell on twelfth floor of office building); Townsell v. State, 255 Ala. 495, 52 So. 2d 186 (1951) (view of scene where charged murder took place allowed); Rutledge v. Brilliant Coal Co., 247 Ala. 40, 22 So. 2d 428 (1945) (view of farm land damaged by coal dust and debris put in a creek); Johnson v. Louisville & Nashville R.R., 244 Ala. 219, 198 So. 350 (1940) (view of railroad crossing where accident occurred); Nelson v. Belcher Lumber Co., 232 Ala. 116, 166 So. 808 (1936) (wrongful death action in which decedent killed when his auto collided with trailer attached to a truck; holding that trial judge had discretion to allow jury to view the trailer and truck). See H.A. Wood, Annotation, Discretion of Trial Court in Criminal Case as to Permitting or Denying View of Premises Where Crime Was Committed, 124 A.L.R. 841 (1940).

2. See ALA. R. EVID. 403 (recognizing power of trial court to exclude evidence when its relevancy is substantially outweighed by considerations of undue delay, waste of time or cumulativeness).

3. Kohn v. Johnson, 565 So. 2d 165, 169 (Ala. 1990) (citing this treatise; photographs of defectively constructed addition to house held properly considered as basis for denying jury view).

4. Bates v. State, 24 Ala. App. 606, 139 So. 879 (1932).

5. Kohn v. Johnson, 565 So. 2d 165, 169 (Ala. 1990) (citing this treatise; no abuse of discretion in denying defendant contractor's request to allow jury to view addition to room plaintiff homeowner claimed was defectively constructed where plaintiff had supplied photographs of defects); Jones v. State, 52 Ala. App. 184, 290 So. 2d 251 (1974).

6. Arrington v. State, 23 Ala. App. 201, 123 So. 99 (1929); Allman v. Beam, 272 Ala. 110, 130 So. 2d 194 (1961); W.M. Moldoff, Annotation, Unauthorized View of Premises by Juror or Jury in Criminal Case as Ground for Reversal, New Trial, or Mistrial, 58 A.L.R.2d 1147 (1958).

1031

7. Kilgore v. State, 19 Ala. App. 181, 95 So. 906 (1923); B. Finberg, Annotation, *Place of Holding Sessions of Trial Court as Affecting Validity of Its Proceedings*, 18 A.L.R. 3D 572 (1968); L.S.E., Annotation, *Place of Holding Sessions of Trial Court as Affecting Validity of Its Proceedings*, 43 A.L.R. 1516, 1538 (1926).

8. Macon County Comm'n v. Sanders, 555 So. 2d 1054, 1057 (Ala. 1990) (citing this treatise; holding that any error in judge's having lawyers stand in the road, where their respective clients claimed the impact occurred, was rendered nonprejudicial because testimony had already been given as to the point of impact); Manning v. Atlanta, Birmingham & Atl. R.R., 206 Ala. 629, 91 So. 446 (1921) (because of such talk the court granted a new trial). *See* W.C. Crais III, Annotation, *Prejudicial Effect of Unauthorized View by Jury in Civil Case of Scene of Accident or Premises in Question*, 11 A.L.R. 3D 918 (1967); W.J. Dunn, Annotation, *Prejudicial Effect of Misconduct by One Other Than Juror During Authorized View by Jury in Civil Case*, 45 A.L.R.2D 1128 (1956).

9. Western Ry. v. Still, 352 So. 2d 1092, 1097 (Ala. 1977) (citing this treatise; knowledge the jury may have acquired while it viewed scene of the accident, though unreported, is proper evidence); Pappas v. Alabama Power Co., 270 Ala. 472, 119 So. 2d 899 (1960); State v. Carter, 267 Ala. 347, 101 So. 2d 550 (1958); Whaley v. Sloss-Sheffield Steel & Iron Co., 164 Ala. 216, 51 So. 419 (1909).

10. C.R. McCorkle, Annotation, *Necessity for Presence of Judge at View by Jury in Criminal Case*, 47 A.L.R.2D 1227 (1956); A.S.F., Annotation, *Presence of Accused During View by Jury*, 90 A.L.R. 597 (1934); M.B., Annotation, *Presence of Accused During View by Jury*, 30 A.L.R. 1357 (1924).

11. Morris v. Corona Coal Co., 215 Ala. 47, 109 So. 278 (1926) (sheriff allowed to supervise the view).

12. *See* G.R.B., Annotation, *May Demonstration Before Jury, Otherwise Proper, be Permitted Outside of Court Room?* 60 A.L.R. 574 (1929).

### § 208.02　View by the judge in a nonjury case of the place or thing outside the courtroom

In a nonjury case, the trial judge has the discretion to make an out-of-court view.[1] There is no absolute requirement that the judge give the parties notice of an intent to make the out-of-court view or to afford them an opportunity to be present at the view. However, as a matter of judicial propriety, the judge ought not to make an out-of-court view without affording all parties an opportunity to be present.[2] An out-of-court view by the trial judge is reviewable the same as if it were made by a jury and the verdict will only be disturbed if it is plainly wrong.[3]

1. Hamilton v. Town of Vincent, 468 So. 2d 145, 147 (Ala. 1985) (citing this treatise in holding that trial judge did not err in viewing site of proposed lounge seeking liquor license); Thurman v. Thurman, 454 So. 2d 995, 998 (Ala. Civ. App. 1984) (citing this treatise; pre-trial inspection to determine which items of personalty were in dispute as to ownership not error); Hubbard v. Williamson, 404 So. 2d 690, 691 (Ala. Civ. App. 1981) (citing this treatise; no abuse of discretion for not viewing damaged automobile involved in negligence suit, where evidence was already in the record as to extent of damage to automobile); Monroe Bond & Mortgage Co. v. State ex rel. Hybart, 254 Ala. 278, 48 So. 2d 431 (1950).

GENERAL INSTRUCTION—TRIAL        APJI CIVIL 1.17

## APJI 1.17

### INSTRUCTIONS BEFORE VISITING SCENE

Ladies and gentlemen of the jury, the Court is going to permit you to visit the (property) (scene) so that you may see it first hand. The purpose of permitting you to visit the (property) (scene) is to allow you to see the general conditions existing there to aid you to better understand some of the testimony you have heard. At the (property) (scene) you will not ask anyone any questions or talk about or discuss what you may see or observe there. Bear in mind there may have been some changes in its general appearance since (date of occurrence) or (filing the petition).

#### Notes on Use

This charge may be used in any case where the court allows a jury to visit the scene or the property.

#### References

The Alabama Supreme Court has held consistently that it is within the discretion of the trial court to allow or refuse to allow a jury to visit a scene or property during trial.

"The court has the inherent right to permit the jury to view the locus in quo provided this is done under proper protection against undue influence or parol testimony not given under sanction of the oath of the court."

Morris v Corona Coal Co., 215 Ala 47, 109 So 278 (1926).
White v Thorington, 219 Ala 101, 120 So 914 (1929).
Watt v Lee, 238 Ala 451, 191 So 628 (1939).
Rutledge v Brilliant Coal Co., 247 Ala 40, 22 So 2d 428 (1945).

27

APJI CIVIL 1.16          GENERAL INSTRUCTION—TRIAL

upon its propriety. It is also a good practice for the court to require questions by jurors to be submitted in writing.

The trial court is vested with discretion to control questioning by jurors. It is a practice which should not be encouraged because usually it serves no worthwhile purpose and disrupts orderly trial procedure.

### References

In Prather v Nashville Bridge Co., 286 Ala 3, 236 So 2d 322 (1970), 130 questions were asked by jurors. The Alabama Supreme Court in a split decision affirmed stating that counsel should object in order to have questions reviewed on appeal.

7 Ala L Rev (1959).

Ala Digest, Witnesses, Key No. 246(1).

53 Am Jur, Trial (1st ed) § 852.

Propriety of jurors asking questions in open court during course of trial. 31 ALR3d 872.