IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KEN and NAOMI SCHWIEKER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. 3:06-CV-838-MEF |
| | ) | |
| HANSON AGGREGATES | ) | |
| SOUTHEAST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OLDCASTLE'S FOURTEENTH MOTION IN LIMINE

COMES NOW Defendant Oldcastle Materials Southeast, Inc. ("Oldcastle") and moves this Court to exclude the proposed expert testimony, opinions, and/or reports of Tom Aley. In support of this motion, Oldcastle says and states as follows:

### A. LEGAL STANDARD

### I. Rule 26(a)(2) FRCP

Rule 26(a)(2) of the *Federal Rules of Civil Procedure* provides that a party "shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705." The disclosure must

> be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor: the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of

>    any other cases in which the witness has testified as an expert at trial
>    or by deposition within the preceding four years.

## **II.  *Daubert***

The admissibility of expert testimony, opinions and/or reports is governed by Rule 702 of the Federal Rules of Evidence.[1]  The Supreme Court, in the landmark case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), construed Rule 702 to require that expert scientific evidence "be both reliable and relevant," such that it "appropriately assists the trier of fact." *United States v. Henderson*, 409 F.3d 1293, 1302 (11th Cir. 2005).  The trial court serves as the "gatekeeper" for expert scientific evidence pursuant to *Daubert* and is "charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney, Co.* 475 F.3d 1239, 1250 (11th Cir. 2007).  In performing its gatekeeper function, the trial court should disallow "expert testimony when it will not be helpful to the trier of fact or when it lacks a reliable foundation." *Morris v. Florida Transformer, Inc.*, 455 F. Supp. 2d 1328, 1331 (M.D. Ala. 2006).  "The primary purpose of any *Daubert* inquiry is to determine whether an expert, 'whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Benkwith v. Matrixx Initiatives, Inc.*, 467 F. Supp. 2d 1316, 1321 (M.D. Ala. 2006)(quoting *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1255 (11th Cir. 2005)(quoting in turn *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143

---

[1]Rule 702 states as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.

L. Ed. 2d 238 (1999)).

In order to satisfy its *Daubert* "gatekeeper" obligation, the trial court must "engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated by *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink v. Cheminova, Inc.*, 200 F.3d 1286, 1291-92 (11th Cir. 2005). In conducting an analysis pursuant to *Daubert*, the trial court must focus "on principles and methodology, not on the conclusions they generate." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). In other words, it matters not whether the expert testimony is scientifically correct, but rather whether it is "reliable." "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005).

A witnesses qualifications must correspond to the subject matter of his or her proffered testimony. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999).

To be considered reliable, "an expert's testimony [must] pertain to 'scientific knowledge'" which "implies a grounding in the methods and procedures of science." *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. An expert's "inference or assertion must be derived by the scientific method" and must be "supported by appropriate validation-*i.e.*, 'good grounds,' based on what is known." *Id*. The expert cannot simply rely on conjecture or speculation. *Jones v. Otis Elevator Co.*, 861 F.2d

3

655, 662 (11th Cir. 1988). The *Daubert* Court set forth several factors for consideration in determining reliability: (1) whether the theory or technique "can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known or potential rate of error;" and (4) "general acceptance" in the relevant scientific community. *Id* at 593-94, 2786. "[A]ny step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *McClain*, 401 F.3d at 1245 (quotation and emphasis omitted). In addition, a trial court may "conclude that there is simply too great an analytical gap between the data and the opinion offered." *Benkwith*, 467 F.Supp. at 1322. An expert's conclusions cannot be mere *ipse dixit*, "unsupported subjective opinions grounded in speculation rather than science." *Fisher v. Ciba Specialty Chemicals Corp.*, Slip Copy, 2007 WL 2302470 (S.D. Ala. 2007); *See also McClain*, 401 F.3d at 1253. *Daubert* condemns expert testimony amounting to a scientifically unsupported "leap of faith." *Rink*, 200 F.3d at 1292.

### B.  TOM ALEY'S PROPOSED TESTIMONY

### I.  PLAINTIFFS' EXPERT WITNESS DISCLOSURE FOR TOM ALEY

On September 20, 2007 the Plaintiffs' made the following disclosure for Tom Aley:

> 1. **Tom Aley.** Mr. Aley has not been given additional data from the quarry as requested. He cannot, therefore, supplement his opinions to include specific information regarding well level/water elevation matters since his last report in the case of *Davis vs. Hanson*, Lee County Circuit Court Case No. CV-02-85A. In addition, Mr. Aley was deposed at least six times in the *Davis vs. Hanson and Oldcastle* litigation in Lee County (hereafter "Lee County Litigation"), and he gave expert testimony at the 2004 trial of the case. All of that testimony and the evidence related thereto, including his exhibits, are incorporated herein by reference. With respect to the most recent well level data received from Oldcastle, to the extent it can be understood, he would expect it shows a further, predictable, lowering of the groundwater table in the Spring Villa area, which supports his prior

4

opinions.

## II. TOM ALEY'S PREVIOUS TESTIMONY

In his previous trial and deposition testimony, Aley has opined or attempted to opine on numerous subjects. Some of these subjects include: precipitation averages, historical precipitation amounts, the proper way to repair sinkholes, the proper way to build roads, the existence and non-existence of droughts, the rate of flow of bodies of water, and the historical rates of flow of bodies of water.

## C. ARGUMENT

### I. TOM ALEY SHOULD NOT BE ALLOWED TO TESTIFY BECAUSE THE PLAINTIFFS FAILED TO COMPLY WITH RULE 26

Rule 26 requires an expert who is testifying at trial, among other things, to (1) supply a written report of his proposed testimony; (2) signed by the witness; (3) containing his entire opinion; (4) a list of all data or information considered; (5) a list of all exhibits to be used; (6) the compensation to be paid; and (7) a listing of trial and deposition testimony. Fed. R. Civ. P. 26. The Plaintiffs' expert disclosure for Aley does not include any of the above requirements as the plaintiffs' merely attempt to adopt Aley's previous opinions by reference in an unsigned document with no supplements whatsoever. As such, the Plaintiffs have not complied with Rule 26, and, therefore, the proposed expert testimony, opinions, and/or reports of Tom Aley are due to be excluded.

### II. TOM ALEY SHOULD NOT BE ALLOWED TO TESTIFY BECAUSE HE IS NOT QUALIFIED AS AN EXPERT IN ANY SUBJECT OTHER THAN DYE TRACING

As stated above, the proposed expert testimony, opinions and/or reports of Tom Aley are due to be excluded for the Plaintiffs' non-compliance with Rule 26. However, should this Court rule otherwise, Aley's testimony should be excluded because he lacks the proper qualifications to testify

5

on any matters other than dye tracing.

Tom Aley received B.S. and M.S. degrees in Forestry with emphasis in water issues from the University of California at Berkeley's Department of Geography. He did additional studies at the University of Arizona at Tuscon in the Department of Watershed Management. He also did additional graduate work at Southern Illinois University in the early 1970s. In the Lee County litigation, Aley testified that his specialty is the tracing of water movement using flourescent tracer dyes. He has stated in a prior deposition and at the 2004 trial that he is solely a dye tracing expert. Specifically, he has stated "I don't focus on the rock. I can certainly identify it and I can read the book which says what forms they're in." Reporter's Transcript at p. 2223. However, he has given opinions on rock and other geological subjects in addition to opinions on precipitation averages, historical precipitation amounts, the proper way to repair sinkholes, the proper way to repair roadways, the existence and non-existence of droughts, the rate of flow of bodies of water, and the historical rates of flow of bodies of water. He has done so despite the fact that has not demonstrated that he has the requisite "superior knowledge, skill, experience, or education" to be qualified to give such opinions. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999). Therefore, the proposed expert testimony, opinions and/or reports of Tom Aley are due to be excluded.

### III. TOM ALEY SHOULD NOT BE ALLOWED TO TESTIFY BECAUSE HIS METHODOLOGY IS NOT RELIABLE

Aley's methodology is unreliable. During the 2004 trial in Lee County, Alabama between the parties, Aley testified that his opinion was based on geological survey documents from the 1970s from around Alabaster, Alabama. In essence, he based his opinion on a document that is almost 40 years old and analyzed rock formations in that document that are well over 100 miles away from the

quarry, which is the subject of this lawsuit. Reporter's Transcript at p. 2230. Thus, his opinions should be deemed unreliable. In *Benkwith*, the Court excluded a medical doctor's opinion in an action against the makers of Zicam because he based his opinion on studies on animals instead of humans, performed unsound experiments, relied on other scientists' studies, and relied on irrelevant and unreliable data. *Benkwith*, 467 F. Supp. at 1322. In *Benkwith*, the Court found that the doctor's opinion was based on unreliable data because, in part, his opinion was based on studies on animals instead of humans. In the case at hand, Aley based his opinion on old documents that reflected different areas with different types of rock. Therefore, just as in *Benkwith*, Aley's opinion should be excluded except as to dye tracing.

Furthermore, Aley's entire opinion, other than to dye tracing, was based on assumptions and not scientific data. *See Jones*, 861 F.2d at 662 (explaining that an expert may not simply rely on conjecture or speculation). To be considered reliable, "an expert's testimony [must] pertain to 'scientific knowledge'" which "implies a grounding in the methods and procedures of science." *Daubert*, 509 U.S. at 590, 113 S. Ct. 2786. An expert's "inference or assertion must be derived by the scientific method" and must be "supported by appropriate validation-*i.e.*, 'good grounds,' based on what is known." *Id.*

Furthermore, an expert's conclusions cannot be mere *ipse dixit*, "unsupported subjective opinions grounded in speculation rather than science." *Fisher v. Ciba Specialty Chemicals Corp.*, Slip Copy, 2007 WL 2302470 (S.D. Ala. 2007); *See also McClain*, 401 F.3d at 1253. *Daubert* condemns expert testimony amounting to a scientifically unsupported "leap of faith." *Rink*, 200 F.3d at 1292. If there ever was a perfect example of "leap of faith" testimony, it is Aley's. He formed his opinion without performing any tests and he has never even wavered one bit. Aley testified in the Lee

County litigation that he formed his opinion that the quarry was the cause of Spring Villa Spring going dry over the phone during one of his first, if not the first, conversations with Plaintiffs' counsel. *See* Reporter's Transcript at pp. 2212-2412. Aley admitted that "[i]n conjunction with the opinions [he] formulated in this case, [he] assumed that the information relayed to [him] about when the spring started declining and went dry [was] accurate." Again, an expert's "inference or assertion must be derived by the scientific method" and must be "supported by appropriate validation – i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590, 113 S. Ct. 2786. Aley's inferences and assertions are not. Aley relies merely on his own *ipse dixit*.

### IV. TOM ALEY SHOULD NOT BE ALLOWED TO TESTIFY BECAUSE HIS TESTIMONY IS NOT RELEVANT

Aley's testimony is not relevant to this case. This case concerns damage to the Plaintiffs' property. Aley has not done any dye tracing on the Plaintiffs' property. Therefore, all of his testimony is totally irrelevant, and should be excluded. *See* Fed. R. Evid. 401; Fed. R. Evid. 402. Aley testified that he was hired as an expert to perform ground water tracing. Reporter's Transcript at p. 2187. The purpose of his testimony was to determine why the spring at Spring Villa, which is located on the City of Opelika, Alabama's property, no longer discharges water, and secondly to determine why sinkholes were forming around Spring Villa. Reporter's Transcript at pp. 2189-90. All of Aley's testing done at locations other than on the Schwiekers' property is irrelevant to the Schwiekers' claims of negligence, wantonness, and private nuisance. However, Aley purports to draw a conclusion about the entire Spring Villa area. Aley has conducted no additional dye tracing tests since the Lee County litigation. Because Aley has not conducted any tests specifically on the Schwiekers' property, and none since the verdict in the Lee County litigation, his testimony will not be reliable. Therefore, Aley's proposed expert testimony and opinions should be excluded.

8

WHEREFORE, premises considered, Oldcastle respectfully moves this Honorable Court to set this matter for a hearing on the issue of Aley's qualifications to testify as an expert witness at the trial of this matter and at the conclusion of said hearing to issue an order that Aley cannot give expert testimony on matters other than dye tracing.

/s/ Matthew W. White
PHILLIP E. ADAMS, JR. (ASB-9946-D56P)
MATTHEW W. WHITE (ASB-6809-W83M)
Attorneys for Oldcastle Materials
Southeast, Inc.

**OF COUNSEL**
Adams, Umbach, Davidson,
& White, LLP
Post Office Box 2069
Opelika, Alabama 36803-2069
(334) 745-6466

**CERTIFICATE OF SERVICE**

      This is to certify that I have this day served a copy of the foregoing on the following, this the 2nd day of May, 2008:

James B. Sprayberry, Esq.
Post Office Drawer 2429
Auburn, Alabama 36831-2429

Chip Vercelli, Esq.
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

          /s/ Matthew W. White
           Of Counsel